Nos. 23-1438

# United States Court of Appeals for the Federal Circuit

PROVISUR TECHNOLOGIES, INC.,

*Plaintiff-Appellant*

v.

WEBER, INC., TEXTOR, INC., WEBER MASCHINENBAU GMBH BREIDENBACH, TEXTOR MASCHINENBAU GMBH, WEBER MASCHINENBAU GMBH NEUBRANDENBURG,

*Defendants-Appellants*

Appeal from the United States District Court for the Western District of Missouri in *Provisur Technologies, Inc., v. Weber, Inc.*, 5:19-cv-06021-SRB

## WEBER'S REPLY BRIEF

Daniel E. Yonan
Donald Banowit
William H. Milliken
Kristina Caggiano Kelly
Richard A. Crudo
**STERNE KESSLER GOLDSTEIN & FOX PLLC**
1101 K Street, NW, 10th Floor
Washington, DC  20005
(202) 371-2600

*Counsel for Defendants-Appellants*

Dated: September 1, 2023

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## <u>CERTIFICATE OF INTEREST</u>

| | |
|---|---|
| **Case Number** | 2023-1438 |
| **Short Case Caption** | Provisur Technologies, Inc. v. Weber, Inc. |
| **Filing Party/Entity** | WEBER, INC., TEXTOR, INC., WEBER MASCHINENBAU GMBH BREIDENBACH, TEXTOR MASCHINENBAU GMBH, WEBER MASCHINENBAU GMBH NEUBRANDENBURG |

> **Instructions:** Complete each section of the form. In answering items 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance. **Please enter only one item per box; attach additional pages as needed and check the relevant box**. Counsel must immediately file an amended Certificate of Interest if information changes. Fed. Cir. R. 47.4(b).

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: <u>9/01/2023</u>

Signature: <u>/s/ William H. Milliken</u>

Name: <u>William H. Milliken</u>

| 1. Represented Entities. Fed. Cir. R. 47.4(a)(1). | 2. Real Party in Interest. Fed. Cir. R. 47.4(a)(2). | 3. Parent Corporations and Stockholders. Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities.<br><br>☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.<br><br>☐ None/Not Applicable |
| Weber, Inc. | | Weber Maschinenbau GmbH Neubrandenburg |
| Weber Maschinenbau GmbH Neubrandenburg | | |
| Textor, Inc. | | |
| Weber Maschinenbau GmbH Breidenbach | | |
| Textor Maschinenbau GmbH | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐    Additional pages attached

**4. Legal Representatives.**  List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities.  Do not include those who have already entered an appearance in this court.  Fed. Cir. R. 47.4(a)(4).

☐  None/Not Applicable          ☑  Additional pages attached

| | | |
|---|---|---|
| Michael M. Tamburini<br>Levy Craig Law Firm | Paul A. Overbee<br>Levy Craig Law Firm | Jason S. Leiker<br>Levy Craig Law Firm |
| Deirdre M. Wells<br>Sterne, Kessler, Goldstein & Fox P.L.L.C. | Daniel S. Block<br>Sterne, Kessler, Goldstein & Fox P.L.L.C. | Jonathan Tuminaro<br>Sterne, Kessler, Goldstein & Fox P.L.L.C. |
| Kyle E. Conklin<br>Sterne, Kessler, Goldstein & Fox P.L.L.C. | Brooke McLain<br>Sterne, Kessler, Goldstein & Fox P.L.L.C. | See Appendix A |

**5. Related Cases.**  Provide the case titles and numbers of any case known to be pending in this court or any other court or agency that will directly affect or be directly affected by this court's decision in the pending appeal.  Do not include the originating case number(s) for this case.  Fed. Cir. R. 47.4(a)(5).  See also Fed. Cir. R. 47.5(b).

☐  None/Not Applicable          ☐  Additional pages attached

| | | |
|---|---|---|
| Weber, Inc. v. Provisur Technologies, Inc.<br>2022-1751, 2022-1813 | | |
| Provisur Technologies, Inc. v. Weber, Inc. et al,<br>Case No. 5:21-cv-06113 (W.D. Mo.) | | |
| | | |

**6. Organizational Victims and Bankruptcy Cases**.  Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees).  Fed. Cir. R. 47.4(a)(6).

☑  None/Not Applicable          ☐  Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |

# Appendix A

**4.Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected toappear in this court for the entities. Do not include those who have alreadyentered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

| Attorney Name | Firm |
|---|---|
| Paige Cloud | Sterne, Kessler, Goldstein & Fox P.L.L.C. |
| Steven Pappas | Sterne, Kessler, Goldstein & Fox P.L.L.C. |
| Tyler J. Dutton | Sterne, Kessler, Goldstein & Fox P.L.L.C. |

## TABLE OF CONTENTS

INTRODUCTION ...............................................................................................1

ARGUMENT ...................................................................................................3

I.  The district court should have granted JMOL of non-infringement. ..............3

    A.  The accused slicers do not infringe the '812 and '436 patents
        under the construction of "disposed over" that Provisur
        successfully urged in the IPRs. ............................................................3

        1.  Provisur is judicially estopped from making its appellate
            argument that the ball-screw actuator is not part of the
            feed apparatus. ...........................................................................3

        2.  Provisur's attempts to rewrite the IPR record should be
            rejected. .....................................................................................8

        3.  Provisur was able to take inconsistent positions across the
            proceedings based on the district court's refusal to
            instruct the jury as to what "lateral alignment" means. ............11

    B.  The accused SmartLoader does not infringe claim 14 of the
        '936 patent under the proper construction. .........................................12

        1.  Vorst did not testify as Provisur asserts....................................12

        2.  The district court's jury instruction failed to specify that
            the conveyor must advance *while filling* ...................................17

II.  The district court should have granted JMOL of no willfulness. ...................18

    A.  White's testimony was statutorily barred and irrelevant. ...................19

        1.  Patentees cannot circumvent 35 U.S.C. § 298 by
            avoiding the word "counsel."....................................................19

        2.  White's opinion on Weber's intent was not the proper
            subject of expert testimony. .....................................................21

    B.  There is no evidence of "concealment." .............................................22

C.   The patent matrix is indisputably irrelevant to Weber's knowledge of infringement. .................................................24

D.   At the very least, Weber is entitled to a new trial on willfulness. ......26

III.   The jury's damages award is legally insupportable. .....................................27

A.   Provisur's damages theory violated the entire-market-value rule. .....27

1.   The district court should have excluded Provisur's expert testimony on damages. ...............................................29

2.   The evidence the jury heard was legally insufficient to support the damages award. ......................................31

B.   The district court's jury instructions on damages misstated the law. ..................................................................33

CONCLUSION .......................................................................33

# TABLE OF AUTHORITIES

**Cases**

*Alyus Networks, Inc. v. Apple Inc.*,
856 F.3d 1353 (Fed. Cir. 2017) .......................................................................... 1

*Amazon.com, Inc. v. Barnesandnoble.com, Inc.*,
239 F.3d 1343 (Fed. Cir. 2001) ........................................................................... 6

*Gustafson v. Bi-State Dev. Agency*,
29 F.4th 406 (8th Cir. 2022) ............................................................................... 4

*Heidelberg Harris, Inc. v. Mitsubishi Heavy Indus., Ltd.*,
1996 WL 732522 (N.D. Ill. Dec. 9, 1996) ......................................................... 23

*Intel Corp. v. XMTT, Inc.*,
2022 WL 1152312 (Fed. Cir. 2022) .................................................................... 3

*LaserDynamics, Inc. v. Quanta Comput., Inc.*,
694 F.3d 51 (Fed. Cir. 2012) ........................................................................ 27, 29

*Minnesota Min. & Mfg. Co. v. Johnson & Johnson Orthopaedics, Inc.*,
976 F.2d 1559 (Fed. Cir. 1992) ......................................................................... 20

*Moba, B.V. v. Diamond Automation, Inc.*,
325 F.3d 1306 (Fed. Cir. 2003) .................................................................... 11, 13

*New Hampshire v. Maine*,
532 U.S. 742 (2001) ........................................................................................... 3

*Northpeak Wireless, LLC v. 3COM Corp.*,
674 F. App'x 982 (Fed. Cir. 2016) ...................................................................... 1

*Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*,
904 F.3d 965 (Fed. Cir. 2018) ..................................................................... *passim*

*Provisur Techs., Inc. v. Weber, Inc.*,
2022 WL 17688071 (Fed. Cir. Dec. 15, 2022) .................................................. 18

*In re Queen's Univ. at Kingston*,
820 F.3d 1287 (Fed. Cir. 2016) ......................................................................... 19

*SRI Int'l, Inc. v. Cisco Sys., Inc.*,
  930 F.3d 1295 (Fed. Cir. 2019) ...................................................................19, 25

*SSL Servs., LLC v. Citrix Sys., Inc.*,
  769 F.3d 1073 (Fed. Cir. 2014) .........................................................................19

*Trustees in Bankr. of N. Am. Rubber Thread Co. v. United States*,
  593 F.3d 1346 (Fed. Cir. 2010) .......................................................................3, 4

*Uniloc USA, Inc. v. Microsoft Corp.*,
  632 F.3d 1292 (Fed. Cir. 2011) .........................................................................29

*United States v. St. Clair*,
  855 F.2d 518 (8th Cir. 1988) .............................................................................27

*Weber, Inc. v. Provisur Technologies, Inc.*,
  IPR2020-01556 (P.T.A.B.) ...............................................................................1, 9

**Statutes**

35 U.S.C. § 298 ....................................................................................2, 18, 19, 26

# INTRODUCTION

At Provisur's urging, the district court committed numerous legal errors that led to an insupportable jury verdict. Those errors are so indefensible that Provisur does not even try to justify them on appeal. Instead, Provisur tries to rewrite history.

**The '812 and '436 patents.** Provisur asserts (at 20-22 & n.2) that it never argued, and the Board never found, that the accused slicers' ball-screw actuator is part of the feed apparatus. That is false. Provisur made *exactly* that argument in the IPRs, *see Weber, Inc. v. Provisur Technologies, Inc.*, IPR2020-01556, EX2019 at 51 (P.T.A.B. Jun. 29, 2021) [hereinafter "Howard Decl."] ("[t]he 'food article feed apparatus' of the 904 [slicer]…*includes a ball screw*"); the Board agreed with it, *see* Appx59357; and the Board—on that basis—found that Weber's prior-art slicer does not satisfy the claims' "disposed over" limitation, *see id.*[1] As a matter of law, then, the identically configured accused slicers cannot infringe.

**The '936 patent.** Provisur asserts (at 30) that its expert Vorst testified that he was able to configure the accused SmartLoader to advance to fill, as required by

---

[1] The IPR record is part of the patents' file histories and thus can be considered here. *Alyus Networks, Inc. v. Apple Inc.*, 856 F.3d 1353, 1361-63 (Fed. Cir. 2017); *cf. Northpeak Wireless, LLC v. 3COM Corp.*, 674 F. App'x 982, 986 n.1 (Fed. Cir. 2016). Provisur's arguments in the two IPRs were the same. For simplicity, this brief cites only to the record in IPR2020-01556.

claim 14. That is false. On the contrary, Provisur's argument to the jury and in post-trial briefing was that Vorst was "unable to configure the SmartLoader to advance to fill." Appx43386. Provisur thus presented no evidence of infringement under a proper claim construction—only baseless and legally improper accusations of evidence spoliation.

**Willfulness.** Provisur asserts (at 41) that its lawyer-expert White did not violate § 298 because, when he said Weber should have sought a freedom-to-operate opinion, he did not mean that Weber should have gotten it from a lawyer. That is false (not to mention absurd). White was clear that freedom-to-operate opinions are—and should be—done by lawyers, as Provisur admitted during *Daubert* motion practice. Appx26685. White's testimony was therefore barred by the statute.

**Damages.** Provisur argues (at 52) that its invocation of the entire-market-value rule was proper because Vorst "testified that the predicate for application of the…rule was satisfied." That is false. Vorst admitted that many features—other than the patented ones—drive demand for Weber's food-processing lines. Appx41488(962:2-4). Those admissions preclude application of the entire-market-value rule as a matter of law.

Provisur cannot rewrite history. And the errors below cannot stand uncorrected. This Court should reverse.

# ARGUMENT

## I.     The district court should have granted JMOL of non-infringement.

### A.     The accused slicers do not infringe the '812 and '436 patents under the construction of "disposed over" that Provisur successfully urged in the IPRs.

Provisur concedes that, under the district court's and Board's construction of "disposed over," the claimed slicer's feed apparatus must be laterally aligned with the loading apparatus. Dkt. 23 ("RBr.") 13. Provisur does not dispute, moreover, that the accused slicers' ball-screw actuator is *not* so aligned. Dkt. 15 ("BBr.") 38-40. Rather, Provisur argues that the ball-screw actuator is "not a part of the 'feed apparatus.'" RBr.28. That is wrong. The ball-screw actuator *is* part of the feed apparatus, and Provisur is judicially estopped from arguing otherwise.

#### 1.     Provisur is judicially estopped from making its appellate argument that the ball-screw actuator is not part of the feed apparatus.

Judicial estoppel is an equitable doctrine that prohibits a party who takes one position in a legal proceeding "and succeeds in maintaining that position" from later assuming a contrary position "simply because his interests have changed." *New Hampshire v. Maine*, 532 U.S. 742, 748 (2001). Judicial estoppel can arise from arguments successfully made in administrative tribunals just as it does for arguments made in court. *Trustees in Bankr. of N. Am. Rubber Thread Co. v. United States*, 593 F.3d 1346, 1354 (Fed. Cir. 2010); *Intel Corp. v. XMTT, Inc.*, 2022 WL 1152312, at *1 (Fed. Cir. 2022). In deciding whether judicial estoppel is

3

appropriate, courts consider (1) whether the positions in question are "clearly inconsistent," (2) whether the party successfully persuaded the earlier tribunal to accept its prior position, and (3) whether the party would derive an unfair advantage from taking inconsistent positions. *Gustafson v. Bi-State Dev. Agency*, 29 F.4th 406, 410 (8th Cir. 2022); *Trustees*, 593 F.2d at 1354.

Each element is satisfied here.

*First*, Provisur's argument to this Court that the ball-screw actuator "is not part of the 'feed apparatus,'" RBr.28, is clearly inconsistent with its prior argument to the Board. In the IPRs, Provisur argued that "the food article feed apparatus includes those components connected to and necessary to drive the food article grippers." Howard Decl.(¶102). Provisur's expert Howard testified that in Weber's prior-art 904 slicer, the gripper-driving mechanism is a ball-screw actuator. *Id.* ¶¶102-109. Accordingly, Howard concluded (and devoted an entire sub-section of his declaration to showing) that "[t]he 'food article feed apparatus' of the 904 [slicer]...*includes a ball screw*." *Id.* at 51 (emphasis added); *see id.* ¶122 (stating that the feed apparatus "includes a ball screw offset from the feed path"); *id.* ¶123 (similar).[2]

---

[2] Not only did Howard say that the ball-screw actuator *is* part of the feed apparatus, he also testified that the product guide—the very component that Provisur argued at trial had to be aligned—is *not* part of the feed apparatus and thus is irrelevant to the disposed-over limitation. Howard Decl.(¶129); *accord*

4

Precisely because Weber's ball-screw actuator (orange) is laterally offset from the loading apparatus (blue), Howard testified that the slicer does not have "a feed apparatus disposed over the loading apparatus":



*Id.* ¶121 (emphasis deleted); *see id.* ¶¶127-129. Not only did Provisur "endorse" such reasoning, *contra* RBr.21 & n.2, Provisur championed Howard's testimony in its arguments to the Board, *see* Appx61729-61741.

*Second*, Provisur prevailed on that argument. The Board unequivocally found that the ball-screw actuator is "part of the feed apparatus":

> From Figure 1 of the 2006 904 Operating Manual, *supra*, it is clear that *the ball screw actuator (part of the feed apparatus)* for the product holder (food article gripper) is not "positioned above and in vertical and lateral alignment with" the product conveyor (part of the loading apparatus), but is instead laterally offset when the slicer is viewed from above.

---

Appx61846. This is exactly *opposite* of the position that Provisur took at trial and now takes on appeal. *See* RBr.14.

Appx59357 (second emphasis added); *see* Appx59347 ("Dr. Howard's testimony establishes that the ball screw actuator which drives the product holder, is off to the side of the product holder and its feed path."); Appx59344-59358. It was on that basis that the Board upheld the claims. *See* Appx59357-59358 (finding that, because the 904 slicer's ball-screw actuator is "laterally offset" from the product conveyor, "the Petition does not show that limitation [1.2] of claim 1 would be satisfied"). In fact, the Board faulted Weber for "ignor[ing]" the "ball screw drive systems." Appx59356. Thus, Provisur's assertion (at 28) that "the location of the ball-screw actuator *could be ignored* in determining infringement" squarely contradicts its own successful arguments to the Board.

*Third*, Provisur would derive an unfair advantage if permitted to take inconsistent positions. Provisur successfully defeated Weber's patentability challenge by pointing to the offset ball-screw actuator, yet to defend the jury's infringement verdict Provisur asks this Court to ignore that same component. Permitting Provisur's doublespeak would perpetuate a legally impermissible result: a product configuration found not to invalidate will have nonetheless been found to infringe. *See Amazon.com, Inc. v. Barnesandnoble.com, Inc.*, 239 F.3d 1343, 1351 (Fed. Cir. 2001) (patent may not "be twisted one way to avoid [invalidity] and another to find infringement").

Provisur suggests that the accused slicers and the prior-art 904 slicer are different because the accused slicers have independent grippers whereas the prior-art slicer does not. RBr.25-26. But this difference is immaterial *to the disposed-over limitation*. The critical point is that the accused slicers and the 904 slicer are identical vis-à-vis the configuration of their ball-screw actuator, BBr.38-40, which Provisur concedes, *See* RBr.8, 25; Appx61637.

Provisur also attempts to rationalize its inconsistent positions by pointing to a different claim term ("upper conveyor assembly") and asserting that the court's construction of *that* term "permitted" Provisur to focus on a different component (the "product guide"), which *is* laterally aligned with the loading apparatus. RBr.13-17, 22-25, *see supra* n.2. But the district court's construction of "upper conveyor assembly" in no way changes the Board's subsequent construction of "disposed over" (which the court adopted at summary judgment) or the Board's patentability analysis based on that construction.

The bottom line is that Provisur, its expert, and the Board all agreed that the ball-screw actuator must be laterally aligned. That argument allowed Provisur's patents to survive IPR. Provisur cannot now argue otherwise. Given that Provisur presents this issue as dispositive, RBr.28, the Court should reverse.

## 2. Provisur's attempts to rewrite the IPR record should be rejected.

Recognizing that the Board's analysis—which the district court adopted—precludes infringement, Provisur spends many pages laboring to explain it away. RBr.17-25. In Provisur's telling, even though the Board *said* that the ball-screw actuator is "part of the feed apparatus," it did not *hold* as much, but instead was merely "restating" Weber's position. *Id.* at 20-21 & n.2. These assertions are demonstrably false.

*Provisur*, not Weber, argued that the ball-screw actuator is part of the feed apparatus. *Compare* Appx61945-61950; Appx61956-61958, *with* Appx61728-61741. Rather, as Provisur acknowledges (at 22-23), Weber's obviousness theory was that a skilled artisan "would have been motivated to locate Lindee's belt drive system *directly above* the loading apparatus" in the 904 slicer. As explained above, Provisur asserted in response that the ball-screw actuator's lateral offset did not satisfy the disposed-over requirement. In particular, Provisur and its expert argued that if a skilled artisan were to put Lindee's gripper-driving belt in the 904 slicer, he would do so in the location of the 904 slicer's ball-screw actuator (the corresponding gripper-driving mechanism in the 904 slicer):



**Hypothetical Schematic**
**904 Manual + Lindee + Independent Feed**

| Carriage Housing | Timing Belt |
| Support Rail | Product Holders |
| Product Conveyor | |

Appx61728-61741; *see* Howard Decl.(¶¶102-129); Appx59355 (summarizing Provisur's expert's testimony); *supra* Section I.A.1. Far from endorsing that view, Weber challenged it at every turn. *See* IPR2020-01556, Paper 30, Petitioner's Reply 15 (P.T.A.B. Oct. 5, 2021); *see generally id.* 9-19.

Nor was the Board merely "restating" party allegations in the passage quoted above. On the contrary, the Board expressly agreed with Provisur's position that the lateral offset of the ball-screw actuator precluded a finding that the disposed-over limitation is satisfied. Appx59357; *see* Appx59351-59357; *supra* Section I.A.1. In fact, Provisur *admitted* to the district court that "the PTAB *found*" that the ball-screw actuator is "part of the feed apparatus." Appx61633. The district court noted that this point was undisputed. Appx64382. Thus, Provisur's assertion to *this* Court (at 20-21) that the Board did not make a "pronouncement about what

components comprise the claimed 'feed apparatus'" is both false and inconsistent with Provisur's statements below.

Provisur's other attempts to downplay the Board's decision likewise fail. *First*, Provisur argues that the Board did not mention the ball-screw actuator in the claim-construction section of its analysis. RBr.18, 21-22, 24. That is irrelevant; it was not then and is not now a claim-construction dispute. The Board made clear that the drive mechanism is part of the feed apparatus and therefore must satisfy the definition of lateral alignment provided in the Board's construction of "disposed over." Appx59315 (agreeing with Provisur that the '436 patent's drive mechanism must be laterally aligned with the loading apparatus); Appx59351 (applying the disposed-over construction to require the drive mechanism to be "'positioned above and in vertical and lateral alignment with' the food article loading apparatus"). The 904 slicer and the accused slicers' drive mechanism is a ball-screw actuator, which therefore must be laterally aligned under the Board's construction. Appx59343-59358.

*Second*, Provisur emphasizes that the Board addressed a prior-art *combination* involving the 904 slicer and Lindee rather than the 904 slicer alone. RBr.22-23. This, too, is irrelevant. As Provisur acknowledges (at 23), the *reason* the Board found that Weber's prior-art combination did not satisfy the disposed-over limitation is because Lindee's drive mechanism would have been placed in

the location of the 904 slicer's ball-screw actuator, which is laterally offset. Thus, the offset of the ball-screw actuator precluded a finding of unpatentability. That same offset in the accused slicers precludes a finding of infringement.

### 3. Provisur was able to take inconsistent positions across the proceedings based on the district court's refusal to instruct the jury as to what "lateral alignment" means.

Provisur was able to take inconsistent positions across the IPRs and the jury trial because the district court failed to instruct the jury on the meaning of "lateral alignment." BBr.40-43. Had it done so, Provisur's expert Vorst would have been forced to walk through the requirements of that construction, identify the "feed apparatus" and "loading apparatus" in the accused slicers, and show their alignment from overhead. Had he done that, he could not have maintained a credible infringement opinion. Vorst previously admitted that the feed apparatus's drive mechanism is offset from the loading apparatus in the accused slicers. *See* Appx59472(101:10-103:4); Appx59472-59473(104:19-106:13).

Thus, by failing to provide the jury with a complete claim construction, the district court allowed Provisur to ignore the offset ball-screw actuator of the feed apparatus (and the lateral-alignment requirement) entirely in its infringement analysis. This was prejudicial error. *See Moba, B.V. v. Diamond Automation, Inc.*, 325 F.3d 1306, 1313 (Fed. Cir. 2003) (district court cannot leave critical aspects of its claim construction "undetermined" in a jury instruction, as such an omission

improperly permits the jury to make findings foreclosed by the construction);

BBr.42-43.

Accordingly, the Court should reverse, or at least remand for a new trial with

a proper claim-construction jury instruction.

### B. The accused SmartLoader does not infringe claim 14 of the '936 patent under the proper construction.

Provisur's appeal argument centers on its assertion that Vorst testified he

reconfigured the SmartLoader to advance to fill. RBr.30. False. Instead, Provisur

(wrongly) argued during and after trial that Weber *prevented* Vorst from

reconfiguring the SmartLoader to advance to fill. Vorst testified only that the

accused conveyer advances during operation (as opposed to advances *to fill*),

Appx41396-41397(910:24-911:2, 911:22-25); Appx41397(911:3-8);

Appx41404(918:13-19), which is insufficient to satisfy claim 14.

#### 1. Vorst did not testify as Provisur asserts.

**a.** The SmartLoader is a *retract*-to-fill conveyor—a well-known type of

loader (referred to in the art as a "flying carpet" conveyor) that fills packages with

food by pulling the conveyer "out from under the food and letting it drop down."

BBr.11, 45-46. Provisur agrees that claim 14 of the '936 patent requires a conveyor

that *advances* to fill, and *not* retracts to fill. RBr.29. Advance-to-fill conveyors do

not exist in the market; the operation recited in claim 14 is purely conceptual.

Appx41613(1127:10-23). Provisur proffered no evidence that any customer ever

used the SmartLoader to advance to fill. Indeed, Vorst admitted that he had no such evidence. Appx41443(957:21-25); Appx41763(1277:15-17). Thus, it is undisputed that the SmartLoader was designed and is used by customers to operate exactly opposite of what claim 14 requires.

Provisur defends the infringement verdict based solely on a few sentences of Vorst's testimony in which (according to Provisur) Vorst said he entered certain parameters in the SmartLoader's interface that caused the machine to advance to fill. RBr.30 (citing Appx41397-41398(911:25-912:1)). Provisur asserts (at 30)—without citation—that Vorst saw the SmartLoader advance to fill "with his own eyes."

In other words, Provisur's entire infringement argument now hangs on its unsupported assertion that Vorst is the only person ever to have witnessed the SmartLoader advancing to fill.

Provisur gives no citation because Vorst said no such thing. On the contrary, as Provisur argued to the district court, Vorst said "he was *unable* to configure the SmartLoader to advance to fill." Appx43386 (emphasis added); *see id.* (stating that Vorst testified about "his observations (*or lack thereof*) and the reasons therefore [*sic*]") (emphasis added). Instead, Provisur used Vorst's *failure* to observe the SmartLoader advancing to fill to (improperly) argue to the jury that Weber prevented him from obtaining evidence of infringement. BBr.51-53. Provisur's

13

counsel emphasized this point during closing, telling the jury (baselessly) that Weber "wouldn't even let [Vorst] *try to reprogram the SmartLoader*" to make it advance to fill. Appx42542(2056:19-22) (emphasis added). Clearly, Provisur understood Vorst to be saying that he did not actual*y* observe the SmartLoader advancing to fill.

At most, the portion of Vorst's testimony on which Provisur relies on appeal establishes that Vorst configured the SmartLoader to "advance" (consistent with the district court's improper jury instruction). He said nothing about seeing the SmartLoader advance *to fill*, as claim 14 actually requires. RBr.30 (citing Appx41397(911:22-25) ("So you can create a new program….[W]e can advance it or retract it.")). Vorst's testimony was consistent on this score. *See* Appx41396-41397(910:24-911:2) ("[Y]ou can go in and you can manipulate the HMI or the interface to advance or retract, and that's what we did…."); Appx41397(911:3-6) ("Q. Are the accused products configured to work as an advancing conveyor by programming the start and the end positions and the circulation speed of the belt? A. Yes, sir."); Appx41404(918:13-19).

The only "evidence" Vorst had of the SmartLoader advancing *to fill* was the animation he created showing what such a configuration would hypothetically look like. BBr.47-48; *see* RBr.38. But Vorst said that he would have to reprogram the

machine to make it function as the animation showed—something he was unable to do. BBr.47-48; *see* Appx41443(957:8-11); Appx43386.

**b.** Even if Vorst *had* claimed to see the SmartLoader advance to fill, his testimony would not support the infringement verdict. As Provisur admits (at 38), Vorst (inexplicably) took no photographs or videos showing the SmartLoader in operation, despite this being a critical aspect of Provisur's infringement case. Appx41443(957:1-16); *see* BBr.48-49. Nor did Vorst identify the parameters that could allegedly make the machine advance to fill. While he mentioned changing the front and rear positions and circulation speed of the conveyor, he did not say what numerical values would cause the machine to advance to fill, or how or why. *See* Appx41396-41398(910:1-912:6). As Weber's source-code expert testified (and Provisur's source-code expert admitted during deposition), there are no such parameters: the HMI parameters merely change how far downstream the conveyor starts before retracting and how far upstream it ends after retracting. BBr.48-49; Appx41898-41901(1412:10-1415:25); Appx24554(112:6-12).[3]

On the other side of the ledger was overwhelming evidence contradicting Vorst's *ipse dixit*, including not only Weber's source-code expert's testimony but

---

[3] Provisur notes (at 32) that a product may be "configured to" perform a claimed function even if the user must adjust software parameters to do so. But the bottom line is that there are no such parameters that could be adjusted in the SmartLoader to make it advance to fill. BBr.48.

also Weber's technical expert and employee testimony that the SmartLoader could only be used as a retract-to-fill conveyor. BBr.48-50. No reasonable juror could have found infringement based on Vorst's unsupported testimony alone. *Id.* at 47-51 (collecting cases).

    **c.**    Given that Vorst had no evidence of infringement, Provisur's trial strategy for the '936 patent was clear: falsely paint Weber as a bad actor who prevented Provisur from obtaining such evidence. BBr.51-53. On appeal, Provisur does not dispute that its accusations of discovery misconduct were baseless, or that its decision to level those accusations for the first time before the jury was procedurally improper. Instead, Provisur tries to distance itself from its trial strategy. Provisur says that Weber somehow invited the accusations and assures the Court that they did not prejudice Weber. RBr.35-37.

    But the trial transcript speaks for itself: the thrust of Provisur's argument all along was that Provisur could not show the SmartLoader advancing to fill because Weber allegedly concealed it. BBr.25-26, 51-53, 59-61 (collecting citations). Contrary to Provisur's argument (at 36), Vorst's baseless spoliation accusations were not first "elicited by *Weber's own cross-examination*." Vorst—over Weber's objections—volunteered them on direct. *See* Appx41399-41400(913:12-914:1); Appx41404(918:2-12). Provisur then used these arguments to improperly invite the jury "to make inferences" of infringement in the absence of evidence. Appx42545-

42546(2059:18-2060:2). Because Provisur presented no actual evidence of infringement, the Court should reverse.

> **2.    The district court's jury instruction failed to specify that the conveyor must advance *while filling*.**

Provisur does not dispute that the district court's "advancing conveyor" jury instruction is significantly broader than the court's claim construction requiring an advance-*to-fill* conveyor. BBr.53-54; Appx30862. Instead, Provisur asserts that the instruction was not prejudicial because Vorst's testimony supports the verdict under the correct construction. RBr.37.

But Vorst's testimony shows just how prejudicial the court's jury instruction was. As explained above, Vorst testified only that he configured the SmartLoader to *advance* (not advance to fill) and showed the jury stock videos depicting the machine advancing *after* filling. BBr.54. Provisur speculates (at 38) that "the jury surely would not have relied on" such videos given that Vorst acknowledged he had no videos of his own showing the SmartLoader advancing while filling. This makes no sense. Provisur presented the videos in support of its infringement position. Appx42121-42123(1635:6-1637:12); Appx42133(1647:11-19). And the only way the jury could have found infringement based on such evidence and Vorst's testimony was to take the district court's jury instruction at face value— i.e., to interpret it to require that the conveyor advance at any point in time (rather than only while filling). BBr.53-55.

Contrary to Provisur's assertion (at 37-38), the issue is not whether the jury instruction was as detailed as Weber would have liked. Rather, the court erred because its instruction omitted a material part of the claim construction specifying that the conveyor must advance *while filling*. The materiality could hardly be more evident: this feature of the claim 14 is *the* reason it survived IPR. *See Provisur Techs., Inc. v. Weber, Inc.*, 2022 WL 17688071, at *5 (Fed. Cir. Dec. 15, 2022). Because of this omission, the jury could interpret claim 14 to mean exactly opposite of what the court (and the Board and this Court) said it means. That error warrants reversal or, at the very least, a new trial. BBr.53-54 (citing cases).

## II.    The district court should have granted JMOL of no willfulness.

Provisur's purported "mountain of evidence of deliberate and willful infringement," RBr.40, amounts to (i) "expert" testimony that Weber willfully infringed because it did not obtain an opinion of counsel (which is inadmissible under 35 U.S.C. § 298), (ii) baseless and procedurally improper allegations of discovery misconduct and concealment (which are refuted by the record), and (iii) a document that shows that Weber knew about Provisur's patents (which was undisputed since early in fact discovery). No reasonable jury could have found willfulness on that evidence.[4]

---

[4] Provisur repeats (at 7) the district court's statement that Weber "intentionally copied Plaintiff's patented ideas." Appx77. To be clear: there was zero evidence of copying, and the district court cited none. White's contrary

### A. White's testimony was statutorily barred and irrelevant.

#### 1. Patentees cannot circumvent 35 U.S.C. § 298 by avoiding the word "counsel."

Under § 298, an accused infringer's "decision not to seek an advice-of-counsel defense is legally irrelevant." *SRI Int'l, Inc. v. Cisco Sys., Inc.*, 930 F.3d 1295, 1309 (Fed. Cir. 2019). White's testimony that Weber willfully infringed because it did not engage a "third party" to conduct a patent-landscape search and render a freedom-to-operate opinion violated § 298. BBr.55-57. The district court should have excluded it.

In response, Provisur asserts (at 41-42 & n.7) that White's reference to "third parties" did not mean "lawyers." That is absurd. A non-lawyer providing a non-infringement or invalidity opinion would be engaged in "the unauthorized practice of law." *In re Queen's Univ. at Kingston*, 820 F.3d 1287, 1302 n.8 (Fed. Cir. 2016). In any event, such advice would be useless as a defense to willful infringement: "beliefs formed by a lay person" about whether a patent is infringed or invalid are of "little probative value." *SSL Servs., LLC v. Citrix Sys., Inc.*, 769 F.3d 1073, 1092 (Fed. Cir. 2014) (affirming exclusion of testimony from defendant's non-lawyer chief engineer that defendant had good-faith non-

---

assertion relied solely on his legally incorrect statement that "[i]nfringement is sort of copying." BBr.60 (quoting Appx41161(675:16-19)). Weber pointed this out in its opening brief, *id.*; Provisur has no response.

infringement belief); *cf. Minnesota Min. & Mfg. Co. v. Johnson & Johnson Orthopaedics, Inc.*, 976 F.2d 1559, 1580 (Fed. Cir. 1992) (rejecting party's reliance on oral opinion from its in-house counsel as a defense to willfulness because such an opinion was not "competent legal advice").

Provisur's assertion (at 41) that White "testified that the actions required to comply with industry standards do not require lawyers" lacks citation for a reason: it is not true. White never provided such testimony.

In fact, he said the opposite. In his expert report, White acknowledged that landscape searches and freedom-to-operate analyses "are typically reviewed by a qualified patent attorney who is licensed to practice in the relevant jurisdiction," and that the attorney would then provide "'opinions' as to which patents may be problematic" from an infringement or invalidity perspective. Appx9040-9041(¶57). Elsewhere, White criticized Weber for failing to "s[eek] advice from outside counsel…for issues pertaining to Provisur's patents," claiming, wrongly, that the failure to produce evidence of such advice was relevant to willfulness. Appx9041-9042(¶¶59-60); Appx9047(¶74); *see* Appx9047-9048(¶75); Appx9061-9062(¶115).

Thus, even accepting Provisur's implausible assertions (at 9, 41-42) that the types of analyses White discussed do not *have* to be performed by lawyers, it is beyond cavil that *White* believed they *would* be performed by lawyers. Moreover,

Provisur knew that the reason Weber did not produce evidence of a freedom-to-operate investigation or similar analysis was because Weber withheld such evidence as subject to *attorney-client privilege*. Appx35826-35829. Provisur's suggestion (at 42-43) that White's trial testimony was referring to non-lawyer "third parties" is not made in good faith.[5]

In short, White's contention that "industry standards required Weber to have *somebody* analyze [Provisur's] patents," RBr.41, is *exactly* the sort of testimony § 298 forbids. Provisur's position—that such testimony is admissible so long as the witness does not say the "somebody" is a lawyer—would render the statute a dead letter. This Court should reject it.

### 2. White's opinion on Weber's intent was not the proper subject of expert testimony.

White's remaining testimony consisted of conclusions about Weber's knowledge and intent. Such conclusions are not a proper subject of expert testimony. BBr.57-58. Provisur does not challenge this legal principle, but instead

---

[5] Provisur asserts (at 41-42 & n.7) that, when White referred to providing this type of analysis "in the firm that [he] used to operate," he was referring to a "patent search company." In fact, White testified that he practiced law at Cushman Darby and ran "both a patent law firm" *and* a "patent research" firm before becoming a litigation consultant. Appx9023(¶7); Appx41084(599:2-24). And, regardless of which "firm" he was referring to, White was referring to services that he himself—*a patent lawyer*—used to provide to his clients. Appx41084(599:2-24) (stating that he has "been giving advice on how to avoid infringement since 1987," which is "what a patent attorney does").

contends (at 43) that White's selective narration of the evidence was "offered merely to provide the factual background for his opinion that Weber had failed to follow industry standards." That contention is belied by the record and by Provisur's own arguments elsewhere.

For example, much of White's testimony was spent narrating the patent matrix, a document White admitted he did not understand, Appx41115(629:1-6). Provisur purports (at 43 n.8) to dispute this. But, tellingly, the best testimony Provisur can cite for the proposition that White understood the ratings states, in effect, that three is higher than zero. Appx41115(629:1-3). The *only* reason to have White talk about the patent matrix was therefore to mislead the jury into drawing an unsupported inference about Weber's subjective intent in rating patents.

Moreover, Provisur admits (at 44) that it elicited White's testimony about Weber employees' deposition testimony in an effort to have the jury "infer[] that [those] witnesses lied in their deposition." This, too, makes it clear that White was simply a mouthpiece for Provisur's theories about Weber's and its employees' state of mind—nothing more.

## B.    There is no evidence of "concealment."

Provisur's related contentions (at 5, 9-10, 40, 46-48) that the jury could have found willfulness because Weber "sought to conceal its knowledge of the patents" flatly mischaracterize the record. Here is the truth:

As an initial (and dispositive) matter, Weber admitted in August 2021—months before fact depositions began—that it was aware of Provisur's patents during the entire damages window. Appx30898-30899; Appx31387-31388; Appx30546-30548. Provisur's assertion that Weber tried to hide its knowledge of the patents is therefore demonstrably false.

Provisur's insinuation that Weber improperly withheld the patent matrix is also unfounded and misleading. Weber did not initially produce documents related to its PATOffice system because Weber believed (and still believes) those documents are subject to attorney-client privilege. Such documents were created under the direction of Weber's German patent attorneys. *See Heidelberg Harris, Inc. v. Mitsubishi Heavy Indus., Ltd.*, 1996 WL 732522, at *8 (N.D. Ill. Dec. 9, 1996).

Following motion practice, the district court "acknowledged…case law that supported both parties' arguments on the privilege issue," Appx31389, but ultimately ordered Weber to produce some of the requested discovery, Appx8970. To be clear, the matrix was not an existing document in Weber's files that Weber had "conceal[ed]." *Contra* RBr.47-48. Weber, by order of the court, asked its PATOffice service provider to *create* the document, and then Weber produced it. Withholding discovery based on a legitimate claim of privilege is not concealment.

There is likewise no merit to Provisur's assertion (at 46) that "Weber's deposition witnesses took advantage of the fact that Weber had withheld the patent matrix to deny knowledge of Provisur's patents under oath." Setting aside the fact that the patent matrix *did not exist* when these depositions occurred, Weber's witnesses, when presented with Provisur's patents, said they did not remember seeing them before. *See, e.g.*, Appx47680(Ex. 52.1, 0:01-0:22); Appx47680(Ex. 52.4, 0:01-0:35). The data in the PATOffice system indicates that the witnesses had reviewed the patents years prior to the depositions, Appx91084-91086, Appx92793-92821, so it is not surprising that the witnesses, who review hundreds of patents each year, would not remember them. And, given that Weber admitted *months earlier* in verified interrogatory responses that it knew of the patents during the entire damages window, the notion that these witnesses were attempting to "conceal" Weber's knowledge of the patents is nonsensical.

## C. The patent matrix is indisputably irrelevant to Weber's knowledge of infringement.

Provisur's treatment of the patent matrix is an exercise in obfuscation. The patent matrix is relevant *only* to the (undisputed) fact that Weber knew about Provisur's patents. It has no relevance to Weber's knowledge of infringement.

Provisur repeatedly observes (at 5, 9-10, 39, 43-46) that a "3" "was the highest score available" and that the "3" ratings assigned to Provisur's patents indicated that they were "'relevant' to Weber's business." As Weber's CEO

explained, however, "relevant" simply meant that the patent related to the same field in which Weber operates. Appx41618(1132:1-5). A "3" thus "didn't indicate any risk of infringement." Appx41618-41619(1132:25-1133:1). *There is no contrary evidence*. No reasonable jury could have found the patent matrix probative of knowledge of infringement (as opposed to simply knowledge of the patents). It contributes nothing to Provisur's willfulness case.

The evidence showed, moreover, that Weber designed the accused functionalities long before Provisur applied for the asserted patents (and therefore long before Weber knew about them). Appx41591(1105:9-16); Appx41601-41602(1115:22-1116:20). BBr.6-11. That further reinforces the irrelevance of the patent matrix to knowledge of infringement. *See SRI*, 930 F.3d at 1309-10 (overturning jury verdict of willfulness where defendant "independently developed the accused systems and first sold them" before knowing about the patents).

*     *     *

Provisur, in short, has no legally relevant evidence of willfulness. It therefore tries to shift the burden to Weber, asserting (at 40) that Weber "does not cite *a single shred of evidence* that it actually believed that its products did not infringe." But willfulness was *Provisur's* burden to prove, and Provisur failed to adduce any evidence that Weber believed its products *did* infringe. *Supra* Section II.A-C. The jury's willfulness finding lacks any evidentiary foundation.

**D.    At the very least, Weber is entitled to a new trial on willfulness.**

Because Provisur adduced no competent evidence of willful infringement, the proper remedy is reversal. At minimum, however, the Court should order a new trial—a trial in which Provisur is not permitted to violate § 298 or introduce "expert" testimony from a lawyer about Weber's state of mind. BBr.61.

Provisur's response (at 49)—that White's testimony could only have been prejudicial if Weber had presented evidence of "investigation or analysis by *non-legal* personnel"—makes no sense. Provisur argued that Weber "did not offer evidence of *any* investigation of Provisur's patents," RBr.49—investigation that, in White's own words, would have been undertaken by lawyers, Appx9040-9041(¶57).

Provisur's quibbles (at 49-51) regarding whether Weber preserved its objections to Provisur's comments in closing misunderstand Weber's argument. Regardless whether those comments alone would be sufficient to warrant a new trial, Provisur's assertion to the jury that Weber was "dishonest" because it failed to "get a freedom-to-operate opinion," Appx42613(2127:9-18), illustrates the magnitude of prejudice Provisur's violation of § 298 caused. If White's testimony about Weber's failure to seek an opinion of counsel were as benign as Provisur now suggests (at 49, 51), Provisur's counsel would not have featured it in his

summation as "dishonest conduct," Appx42613(2127:18); *see* BBr.23-25, 55-56, 61.

These inflammatory statements, in turn, refute Provisur's argument (at 51) that the jury instructions rendered admission of White's testimony harmless error. Provisur's counsel told the jury it could infer that Weber was dishonest because it had not obtained a freedom-to-operate opinion. No instruction could cure the resulting prejudice. *See, e.g.*, *United States v. St. Clair*, 855 F.2d 518, 523 (8th Cir. 1988) (curative instruction is insufficient to cure prejudice from improper testimony that goes to a "vital" issue in the case). That is particularly so given that White (and Provisur's counsel) studiously avoided the words "lawyer" and "legal," thus incorrectly implying to the jury that a freedom-to-operate opinion and a "legal opinion" are somehow different. They are not. Weber is entitled to JMOL or at least a new trial.

## III. The jury's damages award is legally insupportable.

### A. Provisur's damages theory violated the entire-market-value rule.

The entire-market-value rule is a "narrow exception" to the rule that restricts a patentee's royalty base to the smallest saleable unit embodying the invention. *LaserDynamics, Inc. v. Quanta Comput., Inc.*, 694 F.3d 51, 67 (Fed. Cir. 2012). It applies if—but only if—the patentee can show that "the patented feature was the sole driver of consumer demand, i.e., that it alone motivated consumers to buy the

accused products." *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 904 F.3d 965, 979-80 (Fed. Cir. 2018). If the accused products have "other valuable features" that "cause consumers to purchase the product," application of the entire-market-value rule is foreclosed. *Id.* at 979.

Provisur utterly failed to make that showing here. Vorst admitted that the patented features here do *not* solely drive consumer demand. BBr.64-68, 70-71 (citing testimony). On the contrary, Vorst dismissed as "silly" the idea that a customer would buy an entire food-processing line—which consists of myriad machines, including "scales, slicers, scanners, loading conveyers, and pick-and-place robots," RBr.2—solely to obtain the patented features. Appx33698(137:7-20). Provisur's entire-market-value theory thus should have never gone to the jury and cannot support the damages award in any event.



Provisur's Royalty for '436 and '812 Patents

End-of-Line | Packaging | Automation | 905/906/S6 Slicer | Preparation

Accused Product

Entire Food-Processing Line: ~ $3 Million
• Provisur's royalty base and rate
• No base or rate apportionment

Patented feature
(feed mechanism with alleged infringing configuration)
Slicer separately priced and saleable
$500,000 - $1,500,000



Provisur's Royalty for '936 Patent

Provisur's rebuttal largely amounts to an assertion (e.g., at 52) that Weber's critiques go to weight, not admissibility. But *Power Integrations* and *LaserDynamics* demonstrate otherwise. In both cases, this Court overturned a jury's damages verdict and granted a new trial because there—as here—the patentee failed to show that the patented features solely drive demand. *Power Integrations*, 904 F.3d at 979-80; *LaserDynamics*, 694 F.3d at 68; *see also Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1320 (Fed. Cir. 2011) (improper admission of entire-market-value-rule theory requires vacatur because it "cannot help but skew the damages horizon for the jury"). This is not a question of weight; it is a question of legal error.

### 1. The district court should have excluded Provisur's expert testimony on damages.

Provisur's damages theory should never have gone to the jury for three reasons. BBr.64-68. *First*, Vorst never offered any opinion that the patented features within the accused products alone drove demand for Weber's entire food-processing lines. *Second*, even assuming Vorst focused on the patented features, he

stated only that they were generally important and could factor into purchasing decisions—but that sort of general importance does not satisfy the entire-market-value rule. *Third*, Vorst admitted that Weber's food-processing lines include many machines besides the accused products that also drive demand. Any one of these flaws independently rendered Provisur's reliance on the entire-market-value rule legally impermissible under *Power Integrations*.

Provisur does not respond to the second and third arguments. *See* RBr.51-55. The Court can—and should—vacate the damages award on that basis alone. To reiterate: Vorst admitted that customers base their purchasing decisions on many features other than the patented ones. BBr.66 (quoting Appx33698(137:7-20)). That should be the end of the matter.

Provisur's responses to Weber's first argument (at 54) are wrong. Weber's *Daubert* motion squarely argued that Vorst's opinions were inadmissible because he offered conclusory testimony that certain Weber sales were "driven by the accused product" and did not attempt to show that the *patented features* solely drove demand (indeed, he expressly admitted they did not). Appx33188-33189. This argument was preserved. *Contra* RBr.54. And just because Weber's briefing correctly stated the law on the required factual predicate for application of the entire-market-value rule (i.e., "that the patented features drive demand for the

entire slicing line") does not somehow mean that Vorst applied the correct standard. *Contra id.* He did not.

## 2. The evidence the jury heard was legally insufficient to support the damages award.

At trial, Vorst admitted—repeatedly—that the patented features did not solely drive demand for Weber's entire food-processing lines. Appx41488(962:2-4) ("Q. There are things besides the patented features that influence customers' purchasing decisions? A. Yes, sir."); *see* Appx41449(963:24-964:2); Appx41457(971:14-20); BBr.69-71. That is dispositive.

Provisur does not directly address Vorst's admissions. Instead, Provisur vaguely suggests (at 54) that Weber is merely pointing to "inconsistencies" that go to weight, not admissibility. The problem for Provisur is that there are no "inconsistencies": Vorst *never testified* that the patented features solely drive demand for Weber's entire food-processing lines. Provisur does not argue otherwise. Instead, it relies (at 5-6, 53-54) on a mere eight lines of trial testimony for the proposition that Vorst showed that application of the entire-market-value rule is warranted in this case. That testimony reads, *in its entirety*, as follows:

> Q. Okay. In general, what is your opinion as to what drove the demand or substantially created the value for each customer of the accused products slicing lines in this case?
>
> A. It was the patented features identified in the Provisur patent.
>
> Q. And are you aware of any other features of the accused slicing lines that substantially created the value—

A. No. sir.

Appx41310-41311(824:17-24).

Those eight lines of testimony cannot constitute substantial evidence for the damages award for two reasons. *First*, the testimony is utterly conclusory. If a patentee could invoke the entire-market-value rule by simply having an expert answer a leading question that (inaccurately) paraphrases *Power Integrations*, this Court's "demanding" constraints on the use of the rule, 904 F.3d at 977-78, would be rendered a nullity. *Second*, even setting aside the conclusory nature of Vorst's testimony, on its face it says only that the patented features created substantial value. It does *not* say that the patented features *solely* drove demand for Weber's entire food-processing lines, as required by law. *See id.* at 979-80. As just explained, Vorst admitted they do not. Appx41448(962:2-4).

It bears repeating, moreover, that Provisur's damages theory not only contravenes the law; it defies common sense. That theory led to the irrational result that "Weber would have been willing to pay a multiple of its profit margin on the accused machines to license the patents." BBr.74. That conclusion is untethered from the facts of this case, given that Provisur's own witnesses admitted that customers would not care about the patented features. *Id.* at 66-67, 70-71. It is particularly illogical for the '936 patent, given the *undisputed* fact that *no Weber customer has ever used the SmartLoader to practice claim 14*. *Id.* at 3, 73-74;

32

*supra* Section I.B.1. No rational company would pay five times its profits to license a patent on a feature no customer uses.

Provisur does not even attempt to justify this incongruity. Provisur simply ignores the point altogether.

## B. The district court's jury instructions on damages misstated the law.

Provisur's defense of the district court's jury instructions (at 55-57) boils down to the contention that a patentee can invoke the entire-market-value rule by simply showing that the patented features create some "substantial" (but unspecified) amount of value. Incorrect. *Power Integrations* is clear: the patentee must "show that the patented feature was the sole driver of consumer demand, i.e., that it alone motivated consumers to buy the accused products," and that the products' "other features do not cause consumers to purchase the product." 904 F.3d at 979-80. The jury instructions did not accurately capture that principle because they—like Provisur's briefing—state that the rule applies simply if the patented features contribute some unspecified value to some unspecified components. BBr.68-69. The instruction thus allowed Provisur to seek, and the jury to award, an insupportable damages figure.

## CONCLUSION

The Court should reverse the district court's denial of JMOL of non-infringement or, alternatively, vacate the judgment and remand for a new trial.

Dated: September 1, 2023

Respectfully submitted,

 /s/ *William H. Milliken*
Daniel E. Yonan
Donald Banowit
William H. Milliken
Kristina Caggiano Kelly
Richard A. Crudo
**STERNE KESSLER GOLDSTEIN & FOX
PLLC**
1101 K Street, NW, 10th Floor
Washington, DC 20005
(202) 371-2600

*Counsel for Defendants-Appellants*

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## <u>CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATIONS</u>

**Case Number:** 2023-1438

**Short Case Caption:** Provisur Technologies, Inc. v. Weber, Inc.

> **Instructions:** When computing a word, line, or page count, you may exclude any items listed as exempted under Fed. R. App. P. 5(c), Fed. R. App. P. 21(d), Fed. R. App. P. 27(d)(2), Fed. R. App. P. 32(f), or Fed. Cir. R. 32(b)(2).

The foregoing filing complies with the relevant type-volume limitation of the Federal Rules of Appellate Procedure and Federal Circuit Rules because it meets one of the following:

☑ the filing has been prepared using a proportionally-spaced typeface and includes  6,988  words.

☐ the filing has been prepared using a monospaced typeface and includes _____ lines of text.

☐ the filing contains _____ pages / _____ words / _____ lines of text, which does not exceed the maximum authorized by this court's order (ECF No. _____).

Date: 09/01/2023

Signature: /s/ William H. Milliken

Name: William H. Milliken