# United States Court of Appeals
# for the Federal Circuit

PROVISUR TECHNOLOGIES, INC.,

*Plaintiff-Appellee,*

*v.*

WEBER, INC., TEXTOR, INC., WEBER MASCHINENBAU GMBH BREIDENBACH, TEXTOR MASCHINENBAU GMBH, WEBER MASCHINENBAU GMBH NEUBRANDENBURG,

*Defendants-Appellants.*

Appeal from the United States District Court for the Western District of
Missouri in No. 5:19-cv-06021-SRB

## NONCONFIDENTIAL JOINT APPENDIX

| | |
|---|---|
| Craig C. Martin | Daniel E. Yonan |
| Michael Babbitt | Donald Banowit |
| Ren-How Harn | William H. Milliken |
| Sara Tonnies Horton | Kristina Caggiano Kelly |
| Henry Cross Thomas | Richard A. Crudo |
| WILLKIE FARR & GALLAGHER LLP | STERNE KESSLER GOLDSTEIN & FOX PLLC |
| 300 N LaSalle Drive | 1101 K Street, NW, 10th Floor |
| Chicago, IL 60654 | Washington, DC 20005 |
| (312) 728-9000 | (202) 371-2600 |
| | |
| *Counsel for Plaintiff-Appellee* | *Counsel for Defendants-Appellants* |

Dated: September 15, 2023

# Joint Appendix Table of Contents

*Orders Appealing*

**VOLUME I**

| Date Filed | # | Docket Text | Appx |
|---|---|---|---|
| 07/13/2022 | 341 | ORDER granting in part and denying in part 285 Defendants' Motion to Excludethe Improper Expert Opinions of White and McGuire. Signed on 7/13/2022 by District Judge Stephen R. Bough | Appx1-10 |
| 09/30/2022 | 441 | ORDER granting in part and denying in part 408 Sealed Motion.; granting in part and denying in part 419 Sealed Motion.; denying 379 Sealed Motion.; denying 380 Sealed Motion.; denying 383 Sealed Motion. Signed on 9/30/2022 by District Judge Stephen R. Bough | Appx11-13 |
| 10/28/2022 | 485 | JURY INSTRUCTIONS GIVEN | Appx14-59 |
| 10/28/2022 | 489 | JURY VERDICT | Appx60-67 |
| 10/28/2022 | 490 | CLERK'S JUDGMENT | Appx68 |
| 01/09/2023 | 537 | ORDER denying 501 motion for judgment as a matter of law; denying 503 motion for new trial. Signed on 1/9/2023 by District Judge Stephen R. Bough | Appx69-72 |
| 01/09/2023 | 538 | It is hereby ORDERED that Plaintiff's Motion for Willful Infringement Enhanced Damages (Doc. #497) is GRANTED. Plaintiff is awarded enhanced damages of double the jury's verdict on the '436, '812, and '936 patents | Appx73-86 |
| 01/09/2023 | 539 | ORDER granting in part and denying in part 499 Motion for Supplemental Damages, Pre- and Post-Judgment Interest, and an Ongoing Royalty. Signed on 1/9/2023 by District Judge Stephen R. Bough | Appx87-98 |
| 02/22/2019 | 1-3 | Exhibit C - U.S. Patent No. 7,065,936 | Appx99-109 |
| 05/06/2020 | 1-1 | Exhibit A – U.S. Patent No. 10,625,436 | Appx110-139 |
| 05/06/2020 | 1-2 | Exhibit B – U.S. Patent No. 10,639,812 | Appx133-169 |
|  |  | Weber 1 Docket Sheet | Appx170-248 |
|  |  | Weber 2 Docket Sheet | Appx249-293 |

| Date Filed | # | Docket Text | Appx |
|---|---|---|---|
| 02/22/2019 | 1 | COMPLAINT *FOR PATENT INFRINGEMENT* against All Defendants filed by Jeffrey J. Simon on behalf of Provisur Technologies, Inc. Filing fee $400, receipt number AMOWDC-6187152. Service due by 5/23/2019 unless otherwise directed by the court. (Attachments: # 2 Exhibit B - U.S Patent No. 9,399,531, , # 4 Exhibit D - U.S. Patent No. 7,533,513, # 5 Exhibit E - U.S. Patent No. 6,669,005, , # 7 Exhibit G - U.S. Patent No. 6,320,141, # 8 Civil Cover Sheet) | Appx300-379 |
| 08/12/2019 | 35 | NOTICE of filing *Pendency of Post-Grant Proceedings* by Textor Maschinenbau GmbH, Textor, Inc., Weber Maschinenbau GmbH Breidenbach, Weber Maschinenbau GmbH Neubrandenburg, Weber, Inc. (Attachments: # 1 Exhibit 1 - IPR2019-01461, # 2 Exhibit 2 - IPR2019-01462, # 3 Exhibit 3 - IPR2019-01463, # 4 Exhibit 4 - IPR2019-01464, # 5 Exhibit 5 - IPR2019-01465, # 6 Exhibit 6 - IPR2019-01466, # 7 Exhibit 7 - IPR2019-01467, # 8 Exhibit 8 - IPR2019-01468) | Appx575-1263 |
| 02/24/2021 | 116 | STATUS REPORT *Post-Grant Proceedings* by Textor Maschinenbau GmbH, Textor, Inc., Weber Maschinenbau GmbH Breidenbach, Weber Maschinenbau GmbH Neubrandenburg, Weber, Inc. (Attachments: # 1 Exhibit Exhibit 1) | Appx2127-2129 |
| 03/22/2021 | 125 | NOTICE (SEALED) by Provisur Technologies, Inc. re 122 Suggestions in Support of Motion, *Notice of Filing SEALED Exhibits* (Attachments: # 1 Exhibit 1 - SEALED, # 2 Exhibit 2 - SEALED) | Appx2172-2598 |
| 06/30/2021 | 150 | NOTICE of filing *Plaintiff Provisur Technologies, Inc.'s Responsive Claim Construction Brief* by Provisur Technologies, Inc. re 147 Notice of filing, (Attachments: # 1 Exhibit A - 2019.08.09 (Paper No. 02) Petition for Inter Partes Review of U.S. Patent No. 7,065,936, # 2 Exhibit B - 2019.08.09 Exhibit 1003 - Declaration of Claire Koelsch | Appx3816-5116 |

| | | | |
|---|---|---|---|
| | | Sand, # 3 Exhibit C - 2019.08.09 Exhibit 1002 - File History for US Patent 7,065,936, # 4 Exhibit D - 2020.04.09 (Paper No. 08) Petitioner_s Request for Rehearing, # 5 Exhibit E - Manual of Patent Examining Procedure § 2173.02, # 6 Exhibit F - 019.08.09 (Paper No. 02) Petition for Inter Partes Review of U.S. Patent No. 6,669,005, # 7 Exhibit G - 2019.08.06 Exhibit 1002 - File History for US Patent 6,997,089, # 8 Exhibit H - 2019.08.09 Exhibit 1002 - US 7,533,513 File History, # 9 Exhibit I - 2021.02.24 (Paper No. 34) Final Written Decision) | |
| 02/28/2022 | 255 | NOTICE (SEALED) by Textor Maschinenbau GmbH, Textor, Inc., Weber Maschinenbau GmbH Breidenbach, Weber Maschinenbau GmbH Neubrandenburg, Weber, Inc. re 247 Order, 253 Order on Motion to Seal Document, (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F, # 7 Exhibit G, # 8 Exhibit H, # 9 Exhibit I, # 10 Exhibit J, # 11 Exhibit K, # 12 Exhibit L, # 13 Exhibit M, # 14 Exhibit N, # 15 Exhibit O) | Appx8204-8804 |
| 03/22/2022 | 264 | DISCOVERY ORDER. Signed on 3/22/2022 by District Judge Stephen R. Bough | Appx8970-8971 |
| 05/06/2022 | 286 | NOTICE (SEALED) by Textor Maschinenbau GmbH, Textor, Inc., Weber Maschinenbau GmbH Breidenbach, Weber Maschinenbau GmbH Neubrandenburg, Weber, Inc. *Defendants' Suggestions in Support of their Motion to Exclude the Improper Opinions of White and McGuire (Doc. 285)* (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5, # 6 Exhibit 6, # 7 Exhibit 7, # 8 Exhibit 8)(Leiker, Jason) | Appx8989-9263 |
| 05/06/2022 | 289 | SUGGESTIONS in support (SEALED) re 281 motion for summary judgment filed by Jason Scott Leiker on behalf of All Defendants. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5, # 6 Exhibit 6, # 7 Exhibit 7, # 8 Exhibit 8, # 9 Exhibit 9, # 10 Exhibit 10, # 11 Exhibit 11, | Appx21405-23652 |

| | | | |
|---|---|---|---|
| | | # 12 Exhibit 12, # 13 Exhibit 13, # 14 Exhibit 14, # 15 Exhibit 15, # 16 Exhibit 16, # 17 Exhibit 17, # 18 Exhibit 18, # 19 Exhibit 19, # 20 Exhibit 20, # 21 Exhibit 21, # 22 Exhibit 22, # 23 Exhibit 23, # 24 Exhibit 24, # 25 Exhibit 25, # 26 Exhibit 26, # 27 Exhibit 27, # 28 Exhibit 28, # 29 Exhibit 29, # 30 Exhibit 30) | |
| 05/06/2022 | 290 | SUGGESTIONS in support (SEALED) re 282 MOTION for summary judgment *of non-infringement for all asserted claims of U.S. Patent Nos. 7,065,936 (the 936 patent) and 6,669,005 (the 005 patent)* filed by Jason Scott Leiker on behalf of Defendants Textor Maschinenbau GmbH, Textor, Inc., Weber Maschinenbau GmbH Breidenbach, Weber Maschinenbau GmbH Neubrandenburg, Weber, Inc. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5, # 6 Exhibit 6, # 7 Exhibit 7, # 8 Exhibit 8, # 9 Exhibit 9, # 10 Exhibit 10, # 11 Exhibit 11, # 12 Exhibit 12, # 13 Exhibit 13, # 14 Exhibit 14, # 15 Exhibit 15, # 16 Exhibit 16, # 17 Exhibit 17, # 18 Exhibit 18, # 19 Exhibit 19, # 20 Exhibit 20, # 21 Exhibit 21, # 22 Exhibit 22, # 23 Exhibit 23, # 24 Exhibit 24, # 25 Exhibit 25, # 26 Exhibit 26, # 27 Exhibit 27, # 28 Exhibit 28) | Appx23653-25344 |
| 05/26/2022 | 309 | ELECTRONIC TRANSCRIPT of Discovery Dispute held May 25, 2022, before Judge Stephen R. Bough | Appx26582-26669 |
| 05/27/2022 | 314 | SUGGESTIONS in opposition (SEALED) re 285 MOTION to exclude filed by Michael Babbitt on behalf of Plaintiff Provisur Technologies, Inc. (Attachments: # 1 Exhibit 1) | Appx26670-26694 |
| 06/30/2022 | 336 | SUGGESTIONS in support (SEALED) re 335 MOTION for Order (SEALED) *Plaintiff Provisur Technologies, Inc.'s Motion for Sanctions Against Defendants (Under Seal)* filed by Jeffrey J. Simon on behalf of Plaintiff Provisur Technologies, Inc. (Attachments: # 1 Exhibit A, # 2 Exhibit AA, # 3 Exhibit B, # 4 Exhibit C, # 5 Exhibit D, # 6 Exhibit E, # 7 Exhibit F, # 8 Exhibit G, # 9 Exhibit H, | Appx30385-30836 |

| | | | |
|---|---|---|---|
| | | # 10 Exhibit I, # 11 Exhibit J, # 12 Exhibit K, # 13 Exhibit L, # 14 Exhibit M, # 15 Exhibit N, # 16 Exhibit O, # 17 Exhibit P, # 18 Exhibit Q, # 19 Exhibit R, # 20 Exhibit S, # 21 Exhibit T, # 22 Exhibit U, # 23 Exhibit V, # 24 Exhibit W, # 25 Exhibit X, # 26 Exhibit Y, # 27 Exhibit Z) | |
| 07/14/2022 | 343 | SUGGESTIONS in opposition (SEALED) re 335 MOTION for Order (SEALED) *Plaintiff Provisur Technologies, Inc.'s Motion for Sanctions Against Defendants (Under Seal)* filed by Jason Scott Leiker on behalf of Defendants Textor Maschinenbau GmbH, Textor, Inc., Weber Maschinenbau GmbH Breidenbach, Weber Maschinenbau GmbH Neubrandenburg, Weber, Inc. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5, # 6 Exhibit 6) | Appx30894-31179 |
| 07/28/2022 | 358 | ORDER denying 335 Motions for Sanctions. Signed on 7/28/2022 by District Judge Stephen R. Bough | Appx31383-31390 |
| 08/29/2022 | 381 | SUGGESTIONS in support (SEALED) re 379 MOTION for Order (SEALED) *Motion to Exclude Expert Opinions of Ms. Julie L. Davis* filed by Jason Scott Leiker on behalf of Defendants Textor Maschinenbau GmbH, Textor, Inc., Weber Maschinenbau GmbH Breidenbach, Weber Maschinenbau GmbH Neubrandenburg, Weber, Inc. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5, # 6 Exhibit 6, # 7 Exhibit 7, # 8 Exhibit 8, # 9 Exhibit 9, # 10 Exhibit 10, # 11 Exhibit 11, # 12 Exhibit 12, # 13 Exhibit 13, # 14 Exhibit 14, # 15 Exhibit 15, # 16 Exhibit 16, # 17 Exhibit 17, # 18 Exhibit 18, # 19 Exhibit 19, # 20 Exhibit 20) | Appx31672-32528 |
| | | **VOLUME II** | |
| 08/29/2022 | 384 | SUGGESTIONS in support (SEALED) re 383 MOTION for Order (SEALED) *Motion to Exclude Improper Expert Opinions of Dr. Keith Vorst* filed by Jason Scott Leiker on behalf of | Appx33170-34048 |

| | | | |
|---|---|---|---|
| | | Defendants Textor Maschinenbau GmbH, Textor, Inc., Weber Maschinenbau GmbH Breidenbach, Weber Maschinenbau GmbH Neubrandenburg, Weber, Inc. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F, # 7 Exhibit G, # 8 Exhibit H, # 9 Exhibit I, # 10 Exhibit J, # 11 Exhibit K, # 12 Exhibit L, # 13 Exhibit M, # 14 Exhibit N, # 15 Exhibit O, # 16 Exhibit P, # 17 Exhibit Q, # 18 Exhibit R, # 19 Exhibit S, # 20 Exhibit T, # 21 Exhibit U, # 22 Exhibit V) | |
| 09/16/2022 | 408 | MOTION for Order (SEALED) *Defendants' Motion in Limine* filed by Jason Scott Leiker on behalf of All Defendants. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5, # 6 Exhibit 6, # 7 Exhibit 7, # 8 Exhibit 8, # 9 Exhibit 9, # 10 Exhibit 10, # 11 Exhibit 11, # 12 Exhibit 12, # 13 Exhibit 13, # 14 Exhibit 14, # 15 Exhibit 15, # 16 Exhibit 16, # 17 Exhibit 17, # 18 Exhibit 18, # 19 Exhibit 19, # 20 Exhibit 20, # 21 Exhibit 21) | Appx34727-35218 |
| 09/16/2022 | 420 | SUGGESTIONS in support (SEALED) re 419 MOTION for Order (SEALED) *(PLAINTIFF PROVISUR TECHNOLOGIES, INC.'S MOTIONS IN LIMINE)* filed by Craig C. Martin on behalf of Plaintiff Provisur Technologies, Inc. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5, # 6 Exhibit 6, # 7 Exhibit 7, # 8 Exhibit 8, # 9 Exhibit 9, # 10 Exhibit 10, # 11 Exhibit 11, # 12 Exhibit 12) | Appx35821-35951 |
| 10/10/2022 | 452 | ELECTRONIC TRANSCRIPT of Pretrial Conference held September 30, 2022, before Judge Stephen R. Bough | Appx39122-39187 |
| 11/25/2022 | 497 | MOTION to alter judgment *(PLAINTIFF PROVISUR TECHNOLOGIES, INC.S MOTION FOR WILLFUL INFRINGEMENT ENHANCED DAMAGES)* filed by Craig C. Martin on behalf of Provisur Technologies, Inc. | Appx39430-39432 |

| 11/25/2022 | 498 | SUGGESTIONS in support re 497 MOTION to alter judgment *(PLAINTIFF PROVISUR TECHNOLOGIES, INC.S MOTION FOR WILLFUL INFRINGEMENT ENHANCED DAMAGES)* filed by Craig C. Martin on behalf of Plaintiff Provisur Technologies, Inc. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5, # 6 Exhibit 6, # 7 Exhibit 7, # 8 Exhibit 8, # 9 Exhibit 9, # 10 Exhibit 10, # 11 Exhibit 11, # 12 Exhibit 12, # 13 Exhibit 13, # 14 Exhibit 14, # 15 Exhibit 15, # 16 Exhibit 16, # 17 Exhibit 17, # 18 Exhibit 18, # 19 Exhibit 19, # 20 Exhibit 20, # 21 Exhibit 21, # 22 Exhibit 22, # 23 Exhibit 23, # 24 Exhibit 24, # 25 Exhibit 25, # 26 Exhibit 26, # 27 Exhibit 27, # 28 Exhibit 28, # 29 Exhibit 29, # 30 Exhibit 30, # 31 Exhibit 31, # 32 Exhibit 32, # 33 Exhibit 33, # 34 Exhibit 34, # 35 Exhibit 35, # 36 Exhibit 36, # 37 Exhibit 37, # 38 Exhibit 38, # 39 Exhibit 39, # 40 Exhibit 40, # 41 Exhibit 41, # 42 Exhibit 42) | Appx39433-40053 |
| --- | --- | --- | --- |
| 11/25/2022 | 502 | SUGGESTIONS in support re 501 MOTION for judgment as a matter of law filed by Jason Scott Leiker on behalf of Defendants Textor Maschinenbau GmbH, Textor, Inc., Weber Maschinenbau GmbH Breidenbach, Weber Maschinenbau GmbH Neubrandenburg, Weber, Inc. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5) | Appx40133-40209 |
| 11/25/2022 | 504 | SUGGESTIONS in support re 503 MOTION for new trial filed by Jason Scott Leiker on behalf of Defendants Textor Maschinenbau GmbH, Textor, Inc., Weber Maschinenbau GmbH Breidenbach, Weber Maschinenbau GmbH Neubrandenburg, Weber, Inc. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5, # 6 Exhibit 6, # 7 Exhibit 7, # 8 Exhibit 8) | Appx40217-40372 |
| 11/29/2022 | 505 | ELECTRONIC TRANSCRIPT of Voir Dire held on October 14, 2022, before Judge Stephen R. Bough | Appx40373-40486 |

| | | | |
|---|---|---|---|
| 11/29/2022 | 506 | ELECTRONIC TRANSCRIPT of Jury Trial - Volume 1 held October 17, 2022, before Judge Stephen R. Bough | Appx40487-40782 |
| 11/29/2022 | 507 | ELECTRONIC TRANSCRIPT of Jury Trial - Volume 2 held October 18, 2022, before Judge Stephen R. Bough | Appx40783-41070 |
| 11/29/2022 | 508 | ELECTRONIC TRANSCRIPT of Jury Trial- Volume 3 held October 19, 2022, before Judge Stephen R. Bough | Appx41071-41323 |
| 11/29/2022 | 509 | ELECTRONIC TRANSCRIPT of Jury Trial - Volume 4 held October 20, 2022, before Judge Stephen R. Bough | Appx41324-41469 |
| 11/29/2022 | 510 | ELECTRONIC TRANSCRIPT of Jury Trial - Volume 5 held October 24, 2022, before Judge Stephen R. Bough | Appx41470-41689 |
| **VOLUME III** | | | |
| 11/29/2022 | 511 | ELECTRONIC TRANSCRIPT of Jury Trial - Volume 6 held October 25, 2022, before Judge Stephen R. Bough | Appx41690-41973 |
| 11/29/2022 | 512 | ELECTRONIC TRANSCRIPT of Jury Trial - Volume 7 held October 26, 2022, before Judge Stephen R. Bough | Appx41974-42251 |
| 11/29/2022 | 513 | ELECTRONIC TRANSCRIPT of Jury Trial - Volume 8 held October 27, 2022, before Judge Stephen R. Bough | Appx42252-42528 |
| 11/29/2022 | 514 | ELECTRONIC TRANSCRIPT of Jury Trial - Volume 9 held October 28, 2022, before Judge Stephen R. Bough | Appx42529-42617 |
| 12/15/2022 | 519 | SUGGESTIONS in support (SEALED) re 518 MOTION for Order (SEALED) filed by Jason Scott Leiker on behalf of Defendants Textor Maschinenbau GmbH, Textor, Inc., Weber Maschinenbau GmbH Breidenbach, Weber Maschinenbau GmbH Neubrandenburg, Weber, Inc. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F, # 7 Exhibit G) | Appx42630-43112 |

| | | | |
|---|---|---|---|
| 12/20/2022 | 528 | SUGGESTIONS in opposition re 503 MOTION for new trial *(PLAINTIFF PROVISUR TECHNOLOGIES, INC.S SUGGESTIONS IN OPPOSITION TO DEFENDANTS RULE 59 MOTION FOR A NEW TRIAL)* filed by Craig C. Martin on behalf of Plaintiff Provisur Technologies, Inc. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5, # 108 Exhibit 6, # 109 Exhibit 7, # 110 Exhibit 8, # 111 Exhibit 9, # 112 Exhibit 10, # 113 Exhibit 11, # 114 Exhibit 12) | Appx43365-45681 |
| 12/20/2022 | 529 | SUGGESTIONS in opposition re 501 MOTION for judgment as a matter of law filed by Sara T Horton on behalf of Plaintiff Provisur Technologies, Inc. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5, # 6 Exhibit 6 part 1 of 2, # 7 Exhibit 6 part 2 of 2, # 8 Exhibit 7, # 10 Exhibit 8, # 12 Exhibit 9, # 15 Exhibit 10, # 16 Exhibit 11, # 17 Exhibit 12, # 18 Exhibit 13, # 19 Exhibit 14, # 20 Exhibit 15, # 21 Exhibit 16, # 22 Exhibit 17, # 23 Exhibit 18, # 24 Exhibit 19, # 25 Exhibit 20, # 26 Exhibit 21, # 27 Exhibit 22, # 31 Exhibit 23, # 35 Exhibit 24, # 36 Exhibit 25, # 37 Exhibit 26, # 38 Exhibit 27, # 40 Exhibit 28, # 41 Exhibit 29, # 42 Exhibit 30, # 43 Exhibit 31, # 44 Exhibit 32, # 45 Exhibit 33, # 46 Exhibit 34, # 47 Exhibit 35, # 48 Exhibit 36, # 49 Exhibit 37, # 50 Exhibit 38, # 51 Exhibit 39, # 52 Exhibit 40, # 53 Exhibit 41, # 54 Exhibit 42, # 55 Exhibit 43, # 56 Exhibit 44, # 57 Exhibit 45, # 58 Exhibit 46, # 59 Exhibit 47, # 60 Exhibit 48, # 61 Exhibit 49, # 62 Exhibit 50, # 63 Exhibit 51, # 64 Exhibit 52) | Appx45682-49791 |
| 01/06/2023 | 536 | REPLY SUGGESTIONS to motion re 503 MOTION for new trial filed by Jason Scott Leiker on behalf of Defendants Textor Maschinenbau GmbH, Textor, Inc., Weber Maschinenbau GmbH Breidenbach, Weber Maschinenbau GmbH Neubrandenburg, Weber, Inc. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C) | Appx50199-50228 |

| Date | # | | Appx |
|------|-----|-----|------|
| 01/19/2023 | 540 | NOTICE OF APPEAL by Textor Maschinenbau GmbH, Textor, Inc., Weber Maschinenbau GmbH Breidenbach, Weber Maschinenbau GmbH Neubrandenburg, Weber, Inc. Filing fee $ 505, receipt number AMOWDC-8286319 | Appx50229-50230 |
| 01/30/2023 | 548 | AFFIDAVIT re 546 Proposed Bill of Costs, 547 Notice of filing DECLARATION OF MICHAEL G. BABBITT REGARDING BILL OF COSTS) by Provisur Technologies, Inc. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5, # 6 Exhibit 6, # 7 Exhibit 7, # 8 Exhibit 8, # 9 Exhibit 9, # 10 Exhibit 10, # 11 Exhibit 11, # 12 Exhibit 12) | Appx50277-50717 |

### Docket for 5:20-cv-06069

| Date Filed | # | Docket Text | Appx |
|------------|-----|-------------|------|
| 05/06/2020 | 1 | COMPLAINT *Complaint for Patent Infringement* against All Defendants filed by Jeffrey J. Simon on behalf of Provisur Technologies, Inc. Filing fee $400, receipt number AMOWDC-6847932. Service due by 8/4/2020 unless otherwise directed by the court. (Attachments:, # 2 B, # 3 Civil Cover Sheet) | Appx51000-51084 |
| 09/17/2020 | 28 | NOTICE of filing *Pendency of Post-Grant Proceedings* by Textor Maschinenbau GmbH, Textor, Inc., Weber Maschinenbau GmbH Breidenbach, Weber Maschinenbau GmbH Neubrandenburg, Weber, Inc. (Attachments: # 1 Exhibit 1-IPR2020-01556, # 2 Exhibit 2-IPR2020-01557) | Appx51139-51333 |
| 08/03/2021 | 95 | ORDER: The Court ORDERS the constructions of the disputed terms as described herein. Signed on 8/3/2021 by District Judge Stephen R. Bough. (Entered: 08/03/2021) | Appx53114-53134 |
| 03/01/2022 | 186 | NOTICE of filing *Status Update of Post-Grant Proceedings* by Provisur Technologies, Inc. | Appx54916-54918 |
| 03/17/2022 | 194 | STATUS REPORT *of Post-Grant Proceedings* by Provisur Technologies, Inc. | Appx54948-54949 |

| | | | | |
|---|---|---|---|---|
| 05/06/2022 | 217 | SUGGESTIONS in support (SEALED) re 209 MOTION for summary judgment *of non-infringement for all asserted claims of U.S. Patent Nos. 10,625,436 (the 436 patent) and 10,639,812 (the 812 patent)* filed by Jason Scott Leiker on behalf of Defendants Textor Maschinenbau GmbH, Textor, Inc., Weber Maschinenbau GmbH Breidenbach, Weber Maschinenbau GmbH Neubrandenburg, Weber, Inc. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F, # 7 Exhibit G, # 8 Exhibit H, # 9 Exhibit I, # 10 Exhibit J, # 11 Exhibit K, # 12 Exhibit L, # 13 Exhibit M, # 14 Exhibit N, # 15 Exhibit O, # 16 Exhibit P) | Appx58804-59824 |
| 05/27/2022 | 246 | SUGGESTIONS in opposition (SEALED) re 209 MOTION for summary judgment *of non-infringement for all asserted claims of U.S. Patent Nos. 10,625,436 (the 436 patent) and 10,639,812 (the 812 patent)* filed by Michael Babbitt on behalf of Plaintiff Provisur Technologies, Inc.. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5, # 6 Exhibit 6, # 7 Exhibit 7, # 8 Exhibit 8, # 9 Exhibit 9, # 10 Exhibit 10, # 11 Exhibit 11, # 16 Exhibit 12, # 17 Exhibit 13, # 18 Exhibit 14, # 19 Exhibit 15, # 20 Exhibit 16, # 21 Exhibit 17, # 22 Exhibit 18, # 23 Exhibit 19, # 24 Exhibit 20, # 25 Exhibit 21, # 26 Exhibit 22, # 27 Exhibit 23, # 28 Exhibit 24, # 29 Exhibit 25, # 30 Exhibit 26, # 31 Exhibit 27, # 32 Exhibit 28, # 33 Exhibit 29, # 34 Exhibit 30, # 35 Exhibit 31) | Appx61622-62817 |
| 06/30/2022 | 266 | SUGGESTIONS in support (SEALED) re 264 MOTION for Order (SEALED) *Plaintiff Provisur Technologies, Inc.'s Motion for Sanctions Against Defendants (Under Seal) Plaintiff Provisur Technologies, Inc.'s Suggestions In Support of Its Motion for Sanctions Against Defendants (Under Seal)* filed by Jeffrey J. Simon on behalf of Plaintiff Provisur Technologies, Inc. (Attachments: # 1 Exhibit A, # 2 Exhibit AA, # 3 Exhibit B, # 4 Exhibit C, # 5 Exhibit D, # 6 Exhibit E, # 7 Exhibit F, | Appx63265-63717 |

| | | # 8 Exhibit G, # 9 Exhibit H, # 10 Exhibit I, # 11 Exhibit J, # 12 Exhibit K, # 13 Exhibit L, # 14 Exhibit M, # 15 Exhibit N, # 16 Exhibit O, # 17 Exhibit P, # 18 Exhibit Q, # 19 Exhibit R, # 20 Exhibit S, # 21 Exhibit T, # 22 Exhibit U, # 23 Exhibit V, # 24 Exhibit W, # 25 Exhibit X, # 26 Exhibit Y, # 27 Exhibit Z) | |
| 07/13/2022 | 268 | ORDERED that Defendants' Motion for Summary Judgment of Non-Infringement of the '436 and '812 Patents (Doc. #209) is DENIED. Signed on 7/13/2022 by District Judge Stephen R. Bough | Appx64375-64389 |

*Trial Admitted Exhibits*

| Exhibit | Description | Appx |
|---|---|---|
| DTX-0215 | Online Video of Accused Loader Products | Appx66993 |
| DTX-0242 | WCS Operating Video | Appx67852 |
| DTX-0279 | Textor Operating Manual - SmartLoader TL660 | Appx68114-68283 |
| DTX-0673 | Weber Sales Spreadsheet | Appx70417-70441 |
| DTX-0937 | Great Lakes Cheese Purchase Order, PO No. 7100285779 | Appx84075-84181 |
| DTX-0943 | Great Lakes Hiram S6 Complete Cheese Line Final Spreadsheet | Appx84609-85024 |
| PX-0120 | 6/17/2020 Email from J. Smith to J. McCarroll and K. Duesterhaus re First 904/905 vario machine in US; Attachment: Copy of Equipment Install Date Report 6/17/2020 (Duesterhaus Ex. 15) - 30 pages | Appx86678-86707 |
| PX-0240 | 10/19/2017 Weber Operating Manual Slicer S6 (Duesterhaus Ex. 14) - 330 pages | Appx87036-87365 |
| PX-0374 | 12/21/2021 (Native Video) Inspection Video (Textor SmartLoader) | Appx87661 |
| PX-0388 | (Native Video) Online Video of Accused Loader Products (SmartLoader-feed belt) | Appx87666 |

| PX-0676 | 5/28/2019 Schenk Packing Purchase Order No. 2335 for Smartloader TL660-Textor - 9 pages | Appx89392-89400 |
| --- | --- | --- |
| PX-0677 | 8/16/2018 Textor Quotation for TS700 Textor Snack Tray Solution (WBS 3297+3451) for Ollie Salumeria - 21 pages | Appx89401-89421 |
| PX-0893 | 6/16/2022 (Native Spreadsheet) Spreadsheet of Updated Internal Patent Scoring Matrix And Certified Translation of PX-0893 | Appx91084-91086 |
| PX-0903 | 6/16/2020 Weber Quotation for Weber S6 with Streamloader (4715) for Biery Cheese Company - 30 pages | Appx91120-91149 |
| PX-1038A | 8/19/2020 Provisur Technologies, Inc., v. Weber, Inc., et al. (5:19-cv-06021) Defendant' Responses and Objections to Plaintiff's Second Set of Interrogatories (Nos. 8-13) (Verified) - 13 pages | Appx91517-91529 |
| PX-1038C | 1/27/2022 Provisur Technologies, Inc., v. Weber, Inc., et al. (5:19-cv-06021) Defendants' Second Supplemental Responses and Objections to Plaintiff's First Set of Interrogatories (No. 11) (Verified) - 7 pages | Appx91536-91542 |
| PX-1038F | 02/4/2021 Provisur Technologies, Inc., v. Weber, Inc., et al. (5:20-cv-06069) Defendants' Responses and Objections to Plaintiff's Second Set of Interrogatories to Defendants (Nos. 8-14) (Verified)- 14 pages | Appx91543-91556 |
| PX-1038i | 1/27/2022 Provisur Technologies, Inc., v. Weber, Inc., et al. (5:20-cv-06069) Defendants' Second Supplemental Responses and Objections to Plaintiff's Interrogatories (No. 10) (Verified) - 6 pages | Appx91569-91573 |
| PX-0893 | Spreadsheet of Updated Internal Patent Scoring Matrix And Certified Translation of PX-0893 | Appx92793-92821 |

*Trial Demonstratives*

| Exhibit | Description | Appx |
|---------|-------------|------|
| DDX-4 | Reinholtz Demonstrative | Appx93098-93209 |
| PDX7 | Vorst 4363 and 812 Demonstrative | Appx93668-93727 |
| PDX9 | Vorst 936 Demonstrative | Appx93760-93787 |

\* \* \*

## CONFIDENTIAL MATERIAL OMITTED

The information deleted from pages Appx23199–23201, Appx24553–24555, Appx33188–33189, Appx33604–33605, Appx33622–33624, Appx33771–33772, Appx42929, Appx42945–42947, Appx70417, Appx70427-70429, Appx70438-70440, Appx84075–84077, Appx84609, and Appx84799–84801 relates to certain confidential business information of the parties that was subject to a protective order in the district court.

IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
ST. JOSEPH DIVISION

| | |
|---|---|
| PROVISUR TECHNOLOGIES, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )    Case No. 19-cv-06021-SRB |
| | ) |
| WEBER, INC., et al., | ) |
| | ) |
| Defendants. | ) |

## ORDER

Before the Court is Defendant Weber, Inc., Textor Inc., Weber Maschinenbau

GmbH Breidenbach, Textor Maschinenbau GmbH, and Weber Maschinenbau GmbH

Neubrandenburg's ("Defendants") Motion to Exclude the Improper Expert Opinions of White

and McGuire.[1]  (Doc. #285.)  As set forth below, the motion is GRANTED IN PART and

DENIED IN PART.

### I.  FACTUAL BACKGROUND

The facts of this patent infringement case are discussed in prior Orders and in the parties'

briefs, and will not be repeated herein.  The following is a brief summary.  Plaintiff Provisur

Technologies, Inc. ("Plaintiff") designs, makes, and sells commercial food processing

technologies.  Plaintiff owns four patents that are at issue in this case (the "Patents-at-Issue"):

United States Patent Nos. 8,322,537 ("the '537 Patent"), 7,065,936 ("the '936 Patent"),

6,669,005 ("the '005 Patent"), and 6,997,089 ("the '089 Patent").  Defendants design,

manufacture, and sell commercial food processing machinery to their customers.

---

[1] Defendants are interrelated corporate entities and subsidiaries.  The Court acknowledges the differences between
these entities.  However, for purposes of clarity and consistency, this Order collectively refers to Defendants.

Appx1

The machinery underling this lawsuit generally involves a high-speed industrial slicing and packaging machine comprised of a series of belts, conveyors, scanners, sensors, and machine parts. Bulk food items—such as loaves or blocks of meat or cheese, referred to generally as food articles or products—are loaded into the slicer, sliced, and transported down the line for additional processing, sorting, weighing, and packaging. The Patents-at-Issue involve different mechanical components that play distinct roles in this overall conveyor and packaging system.

On February 22, 2019, Plaintiff filed this patent-infringement lawsuit against Defendants.[2] Plaintiff alleges that Defendants manufacture and sell commercial slicing machines that infringe the Patents-at-Issue. Plaintiff further alleges that Defendants willfully infringed the Patents-at-Issue which warrants a trebling of "any and all damages" under 35 U.S.C. § 284. (Doc. #15, pp. 38-39.)[3]

Plaintiff has retained two experts to offer testimony on the topic of willful infringement: John White and Mary-Rose McGuire. Mr. White has over thirty years of experience with patents, and "currently run[s] the PCT Learning Center that provides consulting and educational services regarding international property practice." (Doc. #286-3, p. 5.) According to Plaintiff, Mr. White "will explain how Defendants failed to meet industry standards for preventing infringement of a competitor's patents." (Doc. #314, p. 5.) This explanation will allegedly assist the jury in understanding "industry standards for managing patent portfolios and avoiding patent infringement, and how Defendants' behavior measures against those standards." (Doc. #314, p. 5.)

---

[2] Plaintiff also filed two separate but related patent-infringement cases against Defendants. *See Provisur Technologies, Inc. v. Weber, Inc., et al.*, Case No. 20-cv-06069 (W.D. Mo.) (Bough, J. presiding); *Provisur Technologies, Inc. v. Weber, Inc., et al.*, Case No. 21-cv-06113-SRB (W.D. Mo.) (Bough, J. presiding). All three cases remain pending.

[3] All page numbers refer to the pagination automatically generated by CM/ECF.

Ms. McGuire is a professor of intellectual property at the University of Osnabrück in Germany.  Because some of the Defendants are German companies, Ms. McGuire will allegedly "explain that Defendants' lack of IP-risk management and lack of respect for existing patents is contrary to custom and practice with respect to German compliance for German companies operating domestically and internationally."  (Doc. #314, p. 6.)  According to Plaintiff, Ms. McGuire's "testimony will provide additional context for the jury to aid in evaluating the foreign standards of an industry to which they otherwise would not have access."  (Doc. #314, p. 6.)

Defendants now move to exclude Mr. White and Ms. McGuire from testifying at trial. Defendants argue their opinions are inadmissible under Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).  Plaintiff opposes the motion, and the parties' arguments are addressed below.

## II.  LEGAL STANDARD

Federal Rule of Evidence 702 governs the admissibility of expert testimony.  *See* Fed. R. Evid. 702; *Wagner v. Hesston Corp.*, 450 F.3d 756, 758 (8th Cir. 2006).  Rule 702 provides that a witness who is qualified as an expert may offer testimony if:

> (a) the expert's . . . specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702(a)-(d).  Federal Rule of Evidence 703 further provides in part that "[a]n expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed."  Fed. R. Evid. 703.

To fulfill its "gatekeeping" role, a court faced with a proffer of expert testimony must determine at the outset whether the evidence "both rests on a reliable foundation and is relevant

to the task at hand." *Daubert*, 509 U.S. at 597. *Daubert* emphasized that the inquiry required by Rule 702 is intended to be flexible. *Id.* at 594. "The proponent of the expert testimony must prove its admissibility by a preponderance of the evidence." *Lauzon v. Senco Prods., Inc.*, 270 F.3d 681, 686 (8th Cir. 2001).

Due to the liberalization of expert testimony admission standards signaled by *Daubert* and its progeny, and the codification of this trend in Rule 702, the Eighth Circuit has held that expert testimony should be liberally admitted. *Johnson v. Mead Johnson & Co., LLC*, 754 F.3d 557, 562 (8th Cir. 2014) ("*Daubert* and Rule 702 thus greatly liberalized what had been the strict . . . standards for admission of expert scientific testimony."); *Robinson v. GEICO Gen. Ins. Co.*, 447 F.3d 1096, 1100 (8th Cir. 2006) ("A review of the caselaw after *Daubert* shows that the rejection of expert testimony is the exception rather than the rule.") (citations and quotations omitted). As long as the expert testimony "rests upon good grounds, based on what is known, it should be tested by the adversary process with competing expert testimony and cross-examination, rather than excluded by the court at the outset." *Johnson*, 754 F.3d at 562 (citations and quotations omitted). The exclusion of expert testimony is proper "only if it is so fundamentally unsupported that it can offer no assistance to the jury[.]" *Wood v. Minn. Mining & Mfg. Co.*, 112 F.3d 306, 309 (8th Cir. 1997) (citations and quotations omitted).

### III. DISCUSSION

"A patent owner may seek enhanced damages (up to three times the amount found or assessed) under 35 U.S.C. § 284 when an infringer has willfully infringed the patent." *Sudenga Indus., Inc. v. Global Indus., Inc.*, Case No. 2:18-cv-02498-HLT, 2021 WL 916630, at *9 (D. Kan. Mar. 10, 2021). An award of enhanced damages is limited "to egregious cases of misconduct beyond typical infringement." *Halo Elec., Inc. v. Pulse Elec., Inc.*, 579 U.S. 93, 110

4

(2016). This determination depends on "the totality of the circumstances," and may include whether the alleged infringer "acted consistently with the standards of behavior for its industry." *Comark Commc'n, Inc. v. Harris Corp.*, 156 F.3d 1182, 1190 (Fed. Cir. 1998); FCBA Model Patent Jury Insr. B.3.10(1).

In general, "willful infringement is a question for the jury, and several courts have found expert testimony on the ultimate issue of willfulness inappropriate." *Bombardier Recreational Prods. Inc. v. Arctic Cat Inc.*, Civil No. 12–2706 (JRT/LIB), 2017 WL 758335, at *4 (D. Minn. Feb. 24, 2017). However, an expert may testify on topics that bear on the issue of willfulness. For example, expert testimony may be admissible if it "interpret[s] technical data and provid[es] context for the jury's decision regarding willfulness." *Id.* at *5.

## A. Mr. White's Opinions

Mr. White has years of experience in patent infringement issues, including industry standards for avoiding patent infringement. He has served as the Director of Patent Professional Development at Practicing Law Institute, is the principal author for a patent bar exam review course, has served as general patent counsel for various companies, and is a professor on patent courses at the University of Virginia Law School and John Marshall Law School.

Mr. White has authored an Expert Report and Disclosure in this case. Among other things, Mr. White describes the industry standards, practices, and customs for avoiding patent infringement. Based on his experience and review of this case, Mr. White opines in part that "despite clear knowledge of [Plaintiff's] patents, Defendants failed to meet industry standards and practices for preventing infringement of them." (Doc. #314, p. 7.)

Defendants argue that Mr. White's opinions are inadmissible for several reasons. Defendants contend that Mr. White will improperly attempt to explain to the jury case law on the

issue of willful infringement, improperly "select[s] certain facts and pieces of evidence in the record and present[s] a narration suggesting Defendants' state of mind regarding infringement," and is not qualified to offer opinions on the standard of care in the food-product slicing industry. (Doc. #286, pp. 12-16; Doc. #324, pp. 7-12.)  Defendants further contend that Mr. White "improperly concludes that Defendants willfully infringed based in part on their failure to present evidence of advice of counsel with respect to the allegedly infringed patents," in violation of 35 U.S.C. § 298.  (Doc. #286, p. 14.)

Upon review, the Court finds that Mr. White's opinions on industry standards and practices to avoid infringement—and how Defendants' conduct compared to those standards—are admissible.  First, the Court finds Mr. White is qualified to offer such opinions.  Even assuming Mr. White does not have experience in the food-product slicing industry, Mr. White testified that the standard of care to avoid patent infringement does not vary by industry.  Based on that testimony and Mr. White's overall experience and knowledge, the Court cannot conclude that he is unqualified to offer his opinions in this case.

Second, it does not appear that Mr. White is attempting to instruct the jury on relevant case law.  Instead, as explained by Plaintiff, "Mr. White's Report cites to law only to explain the framework of how he performed his analysis and arrived at his conclusions, which he is permitted to do."  (Doc. #314, p. 14 n.2.)  Third, Mr. White's report does not contain an improper narrative of the facts and background of this case.  Under Federal Rule of Evidence 703, an "expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed."  Fed. R. Evid. 703.  Mr. White's report contains alleged facts and data that he has been made aware of in order to form an opinion.  Under Rule 703, he may use that information to lay the foundation for his opinions.

For these reasons, the Court denies Defendants' motion to exclude Mr. White from testifying about standards and practices to avoid patent infringement, and how Defendants' conduct compared to those standards. On the current record, Mr. White is qualified, his opinions appear to be relevant, and those opinions are likely to assist the trier of fact. Defendants' arguments are more suited for cross-examination, not exclusion.

However, the Court agrees with Defendants that Mr. White may not offer legal conclusions or opine on Defendants' subjective state of mind. Mr. White's expert report contains impermissible opinions and testimony which will not be permitted at trial. For example, Mr. White will not be permitted to testify that:

> • Defendants' directions to their employees were "reckless."
>
> • "[Defendants'] . . . outright corporate espionage . . . intended harm to [Plaintiff], great harm[.]"
>
> • "Defendants' conduct has been deliberate and intended. They have, and had, no reasonable basis to believe that their conduct would not infringe[.]"
>
> • "Defendants intended harm, considerable harm, to [Plaintiff]."
>
> • "[I]t is clear that Defendants ha[d] no intention of allowing fact discovery as to any steps they ever undertook to avoid infringement."
>
> • "My opinion is that Defendants engaged in the intentional conduct of selling their machinery in the U.S. . . . and did commit willful infringement.

(Doc. #286-3, ¶¶ 119-121, 123-24.)

The foregoing examples are not exhaustive. At trial, Plaintiff's counsel is precluded from eliciting legal conclusions or opinions about Defendants' subjective state of mind. *See Trading Techs. Int'l, Inc. v. IBG LLC*, No. 10-715, 2020 WL 12309206, *1-2 (N.D. Ill. Oct. 21, 2020) ("The jurors do not need a patent attorney to tell them whether to believe witnesses when they

say they had no intent to infringe or to determine for them what to infer from the evidence about [the defendant's] intentions.").

Finally, the Court also agrees with Defendants that Mr. White may not offer testimony regarding Defendants' alleged failure to obtain the advice of counsel. Under 35 U.S.C. § 298, "[t]he failure of an infringer to obtain the advice of counsel with respect to any allegedly infringed patent, or the failure of the infringer to present such advice to the court or jury, may not be used to prove that the accused infringer willfully infringed the patent or that the infringer intended to induce infringement of the patent." 35 U.S.C. § 298. Under this statute, an alleged infringer's "decision not to seek an advice-of-counsel defense is legally irrelevant[.]" *SRL Int'l, Inc. v. Cisco Sys., Inc.*, 930 F.3d 1295, 1309 (Fed. Cir. 2019).

Plaintiff argues that Mr. White's advice of counsel opinion does not violate § 298. According to Plaintiff, *Halo Elec., Inc. v. Pulse Elec., Inc.*, 579 U.S. 93 (2016) "clarified that Congress did not entirely prohibit consideration of whether a party sought [] advice of counsel in adopting § 298, but merely corrected the [Federal Circuit's] prior decision in *Underwater Devices v. Morrison-Knudsen Co.*, 717 F. 2d 1380 (1983), 'which had imposed an affirmative duty to obtain advice of counsel.'" (Doc. #314, p. 16.) The Court disagrees with Plaintiff's interpretation. *Halo* did not attempt to rewrite or otherwise limit the plain language of § 298. Indeed, the Federal Circuit Court of Appeals subsequently recognized that advice of counsel is "legally irrelevant" under § 298. *SRL, Int'l*, 930 F.3d at 1309. For these reasons, Mr. White is precluded from testifying regarding whether Defendants sought advice of counsel on the issue of possible infringement.

8

Appx8

## B. Ms. McGuire

As stated above, Ms. McGuire is a professor of intellectual property at the University of Osnabrück in Germany. Ms. McGuire has research experience with respect to patent management and infringement issues. According to Plaintiff, Ms. McGuire:

> sets forth the German standards, practices, and customs in the industry for an international company seeking to avoid patent infringement risks. Much of [the] conduct at issue here took place in Germany. Several defendants in this case are German entities . . . [a]pplying Defendants' conduct to these standards, [Ms.] McGuire opines that Defendants' lack of IP-risk management and lack of respect for existing patents is contrary to custom and practice with respect to German compliance for German companies operating domestically and internationally.

(Doc. #314, p. 8.)

Defendants argue these opinions should be excluded at trial. In particular, Defendants contend that "Ms. McGuire is a professor of law in Germany who is admittedly unqualified to offer opinions on U.S. patent law, let alone the concept of willfulness under U.S. law." (Doc. #286, p. 16.) According to Defendants, "every statement and opinion in her report relates to theoretical German legal concepts and her own subjective beliefs regarding a hypothetical standard of care in Germany—a standard that courts in Germany have never applied . . . and is completely irrelevant to any issue in this case." (Doc. #286, p. 16-18.)

Upon review, the Court finds that Ms. McGuire's opinions are not relevant to any issue in this case. The claims asserted by Plaintiff in this case arise under United States, not German law. The law of the United States similarly applies to whether Defendants willfully infringed any of the Patents-at-Issue. *See* 35 U.S.C. § 284. Indeed, Ms. McGuire agrees that "German law doesn't apply in the U.S." (Doc. #286-6, p. 10.) Ms. McGuire acknowledges that "[w]hether Defendants' behavior constitutes willful infringement under U.S. patent law is governed by U.S. law" and that she will "provide no opinions about U.S. patent law[.]" (Doc. #286-4, p. 22.) Ms.

9

McGuire further testified that the concept of willfulness under United States law is "beyond her expertise" and that German law does not provide for triple damages upon a showing of willful infringement. (Doc. #286-6, p. 12.)

Under these circumstances, Ms. McGuire's opinions about German law and German standards of care are irrelevant to any issue in this case. Whether or not Defendants' conduct met or fell below German law and German standards will not "help the trier of fact to understand the evidence or to determine a fact in issue[.]" Fed. R. Evid. 702(a). Even if Ms. McGuire's opinions were relevant, the introduction of German law and standards into a case governed by United States law would result in "jury confusion [that] far outweighs any probative value" of such opinions. (Doc. #324, p. 13.) For these reasons, the Court provisionally grants Defendants' motion to exclude Ms. McGuire from testifying at trial. If warranted, the Court will *sua sponte* reconsider this ruling at a later date.

### IV. CONCLUSION

For the foregoing reasons, it is hereby ORDERED that Defendants' Motion to Exclude the Improper Expert Opinions of White and McGuire (Doc. #285) is GRANTED IN PART and DENIED IN PART. The motion is GRANTED insofar as Mr. White is precluded from testifying about Defendants' state of mind, from offering legal conclusions, and from offering testimony regarding the advice of counsel. The motion is PROVISIONALLY GRANTED insofar as Ms. McGuire is precluded from testifying at trial. The motion is DENIED in all other respects.

**IT IS SO ORDERED.**

/s/ Stephen R. Bough
STEPHEN R. BOUGH
UNITED STATES DISTRICT JUDGE

Dated: July 13, 2022

10

# IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF MISSOURI
## ST. JOSEPH DIVISION

PROVISUR TECHNOLOGIES, INC.,     )
                                       )
                 Plaintiff,           )
                                       )
          v.                     )     Case No. 19-CV-06021-SRB
                                       )
WEBER, INC., et al.,             )
                                       )
              Defendants.      )

## ORDER

On September 30, 2022, the Court presided over a pretrial conference with the parties.  For the reasons stated on the record, it is hereby **ORDERED** that:

(1)  Defendants' Motion to Exclude the Expert Opinions of Ms. Julie L. Davis (Doc. #379) is **DENIED**;

(2) Plaintiff's Motion to Exclude Opinion of Vincent A. Thomas (Doc. #380) is **DENIED**;

(3) Defendants' Motion to Exclude the Improper Expert Opinions of Dr. Keith Vorst (Doc. #383) is **DENIED**;

(4) Defendants' Motion in Limine (Doc. #408) is **GRANTED IN PART** and **DENIED IN PART**.

Defendants' motion is **GRANTED** on the following topics:

Motion to Exclude Reference to Discovery Disputes, Motions, or Court Orders;

Motion to Preclude Provisur Attorneys or Witnesses From Arguing that the PTAB Found the Asserted Patent Claims to be Valid; and

Motion to Preclude Provisur From Seeking Damages on Sales of the weSLICE 9500.

Defendants' motion is **DENIED** on the following topics:

Motion to Exclude Evidence of Weber's "Pillage and Protect" Marketing Plan;

Motion to Exclude Evidence of Weber's Competitive Intelligence Gathering;

Motion to Exclude Evidence of Knowledge of the Asserted and Other Provisur Patents;

Motion to Exclude Certain Arguments Under the Doctrine of Equivalents;

Motion to Exclude Untimely New Theories or Evidence of Infringement;

Motion to Exclude Evidence of Design Changes and Argument that Such Changes Suggest a Belief of Infringement;

Motion to Preclude Provisur from Seeking Additional Damages under a Provisional Rights Theory.

Finally, Defendants' Motion to Exclude Evidence of European Patents and Proceedings is **GRANTED IN PART** and **DENIED IN PART** as follows. The motion is denied insofar as evidence of the European patents and evidence of the parties' patent litigation in Germany will be admitted. The motion is otherwise granted.

(5) Plaintiff's Motion in Limine (Doc. #419) is **GRANTED IN PART** and **DENIED IN PART**.

Plaintiff's motion is **GRANTED** on the following topics:

Bar Defendants from Presenting Testimony, Argument, and Evidence at Trial on Any Subject Where Defendants Invoked Privilege to Prevent Discovery;

Bar Defendants from Presenting Any Advice of Counsel Defense to Willful Infringement;

Bar Defendants from Presenting Testimony, Argument, and Evidence Regarding Unrelated Employment Litigation Between Scott Scriven and His Former Employer Robert Reiser & Company;

Bar Defendants from Using Cumulative and Confusing Product Documentation from Defendants' Unsuccessful IPRs;

Bar Defendants from Presenting Undisclosed Expert Testimony regarding Priority Dates and Invalidity on § 101 and § 112 Non-Prior Art Grounds;

Bar Defendants from Presenting Testimony, Argument, and Evidence Relating to Validity and Infringement of Unasserted Claims;

Bar Defendants from Presenting Defendants' Fact Witness Testimony Regarding Provisur's Patent Claims, Infringement, or Invalidity; and

Bar Matthias Leistner from Testifying.

Plaintiff's motion is **DENIED** on the following topics:

Bar Defendants from Presenting Testimony, Argument, and Evidence Regarding a Decade-Old Listeria Outbreak at Facilities of Third-Party Maple Leaf, Inc.;

Bar Defendants from Presenting Testimony, Argument, and Evidence Regarding Non-Parties CCI Industries, Inc., Henry Crown and Company, and their Associated Companies;

Bar Defendants from Presenting Testimony, Argument, and Evidence Regarding Patent Invalidity Evidence that Relies on More Than Defendants' Court-Ordered List of References;

Bar Defendants from Presenting Testimony, Argument, and Evidence Regarding the Expiration of the '089 and '936 Patents;

Bar Defendants from Presenting Testimony, Argument, and Evidence that Provisur Does Not Practice the Asserted Patents. However, the attorneys and witnesses shall not use the terms "patent troll" or "pirate" at trial; and

Bar All Attorneys from Referring to Themselves as "Patent" Counsel and or "Patent" Law Firms.

The parties may consult the transcript for further details and/or clarification.

**IT IS SO ORDERED.**

/s/ Stephen R. Bough
STEPHEN R. BOUGH
UNITED STATES DISTRICT JUDGE

Dated:  September 30, 2022

3

**Appx13**

## INSTRUCTION NO. 1

Members of the Jury Panel, we are about to begin the process of selecting which of you will be the jury that tries this case. In that process you will be asked questions by me or by the attorneys or by both that touch on your qualifications to sit as jurors in this case. You will be placed under oath or asked to affirm that you will truthfully and completely answer these questions put to you.

During this jury selection process and during the trial, it is important that all the information you receive about the case comes from the courtroom. So, from now on until you are discharged from the case you may not discuss this case with anyone and that includes the other potential jurors, except during deliberations if you are selected as a juror. However, you may tell your family, close friends, and other people about your participation in this trial, but only so they will know when you are required to be in court. If you do that, please warn them not to ask you about this case or try to tell you anything they know or think they know about it, or discuss this case in your presence.

Also, just as importantly, you must not communicate any information at all about the case to anyone by any means, directly or indirectly, in face-to-face conversation or by any digital media.

If you discuss the case with someone other than the other jurors during deliberations, you may be influenced in your verdict by the opinions of people other than the other jurors. That would not be fair to the parties and it would result in a verdict that is not based entirely on the evidence in court and the law the court gives you.

It is very important that you abide by these rules. Failure to follow these instructions, and indeed any instructions the court gives you during the trial could result in the case having to be

retried. And failure to follow these and the court's other instructions could result in you being held in contempt of court and punished accordingly.

Those of you who are selected to try this case will receive similar instructions as we go through the trial.

# INSTRUCTION NO. 2

During this recess, and every other recess, do not discuss this case among yourselves or with anyone else, including your family and friends. Do not allow anyone to discuss the case with you or within your hearing. "Do not discuss" also means do not e-mail, send text messages, blog or engage in any other form of written, oral or electronic communication, as I instructed you earlier.

You must decide this case only from the evidence received by the court here in the courtroom and the instructions on the law that I give you.

Do not read any newspaper or other written account, watch any televised account or streamed video account, or listen to any streamed internet or radio program on the subject of this trial.

Do not conduct any Internet research or consult with any other sources about this case, the people involved in the case, its general subject matter, or the law.

You must keep your mind open and free of outside information. Only in this way will you be able to decide the case fairly, based solely on the evidence received in court and my instructions on the law. If you decide this case on anything else, you will have done an injustice. It is very important that you follow these instructions.

I might not repeat these things to you before every recess, but keep them in mind until you are discharged.

# INSTRUCTION NO. 3

Members of the Jury: I am now going to give you some instructions about this case and about your duties as jurors. At the end of the trial I will give you more instructions. I may also give you instructions during the trial. All instructions - those I give you now and those I give you later - whether they are in writing or given to you orally – are equally important and you must follow them all.

You must leave your cell phone, PDA, smart phone, iPhone, tablet computer, and any other wireless communication devices in the jury room during the trial and may only use them during breaks. However, you are not allowed to have those devices in the jury room during your deliberations. You may give them to the Courtroom Deputy for safekeeping just before you start to deliberate. They will be returned to you when your deliberations are complete.

This case is what is known as a patent infringement case in which the Plaintiff contends that the Defendants infringed four of Plaintiff's patents. The Plaintiff is Provisur Technologies, Inc. ("Provisur" or "Plaintiff"). There are five defendants in this case: Weber Maschinenbau GmbH Breidenbach, Weber Maschinenbau GmbH Neubrandenburg, Weber, Inc., Textor Maschinenbau GmbH, and Textor, Inc. (collectively, "Weber" or "Defendants").

In this case, Provisur contends that Weber willfully infringed four Provisur patents relating to technology used in industrial food slicing products and components. Provisur seeks monetary damages.

Weber denies that it infringed, or willfully infringed, any of Provisur's patents, contends that the patents are invalid, and contends Weber owes no damages.

It will be your duty to decide from the evidence whether Provisur is entitled to a verdict against Weber.

Your duty is to decide what the facts are from the evidence. You are allowed to consider the evidence in the light of your own observations and experiences. After you have decided what the facts are, you will have to apply those facts to the law that I give you in these and in my other instructions. That is how you will reach your verdict. Only you will decide what the facts are. However, you must follow my instructions, whether you agree with them or not. You have taken an oath to follow the law that I give you in my instructions.

In deciding what the facts are, you may have to decide what testimony you believe and what testimony you do not believe. You may believe all of what a witness says, or only part of it, or none of it.

In deciding what testimony to believe, consider the witnesses' intelligence, their opportunity to have seen or heard the things they testify about, their memories, any reasons they might have to testify a certain way, how they act while testifying, whether they said something different at another time, whether their testimony is generally reasonable, and how consistent their testimony is with other evidence that you believe.

Do not let sympathy, or your own likes or dislikes, influence you. The law requires you to come to a just verdict based only on the evidence, your common sense, and the law that I give you in my instructions, and nothing else.

Nothing I say or do during this trial is meant to suggest what I think of the evidence or I think your verdict should be.

# INSTRUCTION NO. 4

When I use the word "evidence," I mean the testimony of witnesses, documents, and other things I receive as exhibits, facts that I tell you the parties have agreed are true, and any other facts that I tell you to accept as true.

Some things are not evidence. I will tell you now what is not evidence:

1. Lawyers' statements, arguments, questions, and comments are not evidence.

2. Documents or other things that might be in court or talked about, but that I do not receive as exhibits are not evidence.

3. Objections are not evidence. Lawyers have a right – and sometimes a duty – to object when they believe something should not be a part of the trial. Do not be influenced one way or the other by objections. If I sustain a lawyer's objection to a question or an exhibit, that means the law does not allow you to consider that information. When that happens, you have to ignore the question or the exhibit, and you must not try to guess what the information might have been.

4. Testimony and exhibits that I strike from the record, or tell you to disregard, are not evidence, and you must not consider them.

5. Anything you see or hear about this case outside the courtroom is not evidence, and you must not consider it unless I specifically tell you otherwise.

Also, I might tell you that you can consider a piece of evidence for one purpose only, and not for any other purpose. If that happens, I will tell you what purpose you can consider the evidence for and what you are not allowed to consider it for. You need to pay close attention when I give an instruction about evidence that you can consider for only certain purposes, because you might not have that instruction in writing later in the jury room.

Some of you may have heard the terms "direct evidence" and "circumstantial evidence." You should not be concerned with those terms, since the law makes no distinction between the weight to be given to direct and circumstantial evidence.

## INSTRUCTION NO. 5

During the trial, I will sometimes need to talk privately with the lawyers. I may talk with them here at the bench while you are in the courtroom, or I may call a recess and let you leave the courtroom while I talk with the lawyers. Either way, please understand that while you are waiting, we are working. We have these conferences to make sure that the trial is proceeding according to the law and to avoid confusion or mistakes. We will do what we can to limit the number of these conferences and to keep them as short as possible.

# INSTRUCTION NO. 6

At the end of the trial, you will have to make your decision based on what you recall of the evidence. You will not have a written copy of the testimony to refer to. Because of this, you must pay close attention to the testimony and other evidence as it is presented here in the courtroom.

If you wish, however, you may take notes to help you remember what witnesses say. If you do take notes, do not show them to anyone until you and your fellow jurors go to the jury room to decide the case after you have heard and seen all of the evidence. And do not let taking notes distract you from paying close attention to the evidence as it is presented. The Courtroom Deputy will provide each of you with a pad of paper and a pen or pencil. At each recess, leave them in your seat.

When you leave at night, your notes will be locked up and will not be read by anyone. When the trial is over your notes will be destroyed. They will not be read by anyone other than you.

# INSTRUCTION NO. 7

Jurors, to make sure this trial is fair to all parties, you must follow these rules:

*First*, do not talk or communicate among yourselves about this case, or about anyone involved with it, until the end of the trial when you go to the jury room to consider your verdict.

*Second*, do not talk with anyone else about this case, or about anyone involved with it, until the trial has ended and you have been discharged as jurors.

*Third*, when you are outside the courtroom, do not let anyone tell you anything about the case, or about anyone involved with it until the trial has ended and your verdict has been accepted by me. If someone tries to talk to you about the case during the trial, please report it to the Courtroom Deputy.

*Fourth*, during the trial, do not talk with or speak to any of the parties, lawyers, or witnesses in this case – not even to pass the time of day. It is important not only that you do justice in this case, but also that you act accordingly. If a person from one side of the lawsuit sees you talking to a person from the other side – even if it is just about the weather – that might raise a suspicion about your fairness. So, when the lawyers, parties and witnesses do not speak to you in the halls, on the elevator or the like, please understand that they are not being rude. They know they are not supposed to talk to you while the trial is going on, and they are just following the rules.

*Fifth*, you may need to tell your family, close friends, and other people that you are a part of this trial. You can tell them when you have to be in court. But you must warn them not to ask you about this case, tell you anything they know or think they know about this case, or talk about this case in front of you. Remember: You must not communicate with anyone in any manner about anything or anyone, including the court, related to this case.

You must not tell anyone anything about the jury's deliberations in this case until after I accept your verdict or until I give you specific permission to do so. If you talk about the case with someone besides the other jurors during deliberations, it looks as if you might already have decided the case or that you might be influenced in your verdict by their opinions. That would not be fair to the parties, and it might result in the verdict being thrown out and the case having to be tried over again.

During the trial, while you are in the courthouse and after you leave for the day, do not give any information to anyone, by any means, about this case.

*Sixth*, do not do any research or investigate the case facts or the law-- on the Internet, in libraries, newspapers, dictionaries or otherwise. Do not visit or view any place discussed in this case, and do not use the Internet or other means to search for or view any place discussed in the testimony.

*Seventh*, do not read or otherwise receive any information, including any news stories or Internet articles or blogs that are about the case, or about anyone involved with it. Do not listen to any radio or television reports, or digital streaming, about the case or about anyone involved with it. I do not know whether there will be news reports about this case, but if there are, you might accidentally find yourself reading or listening to something about the case. If you want, you can have someone collect information or clip out any stories and set them aside to give to you after the trial is over. I assure you, that by the time you have heard all the evidence in this case, you will know what you need to return a just verdict.

The parties have a right to have you decide their case based only on evidence admitted here in court. If you research, investigate, or experiment on your own, or get information from other sources, your verdict might be influenced by inaccurate, incomplete, or misleading

information. Witnesses here in court take an oath to tell the truth, and the accuracy of their testimony is tested through cross-examination. All of the parties are entitled to a fair trial before an impartial jury, and you have to conduct yourselves in a way that assures the integrity of the trial process. If you decide a case based on information not admitted in court, you will deny the parties a fair trial. You will deny them justice. Remember, you have taken an oath to follow the rules, and you must do so.

*Eighth*, do not make up your mind during the trial about what your verdict should be. Keep an open mind until after you and your fellow jurors have discussed all the evidence.

# INSTRUCTION NO. 8

The trial will proceed in the following manner. First, the plaintiff's lawyer may make an opening statement. Next, the defendants' lawyer may make an opening statement. An opening statement is not evidence, but it is a summary of the evidence the lawyers expect you will see and hear during the trial.

There are two standards of proof that you will apply to the evidence, depending on the issue you are deciding. On some issues, you must decide whether certain facts have been proven by a preponderance of the evidence. A preponderance of the evidence means that the fact that is to be proven is more likely true than not, that is, that the evidence in favor of that fact being true is sufficient to tip the scale, even if slightly, in its favor. On other issues that I will identify for you, you must use a higher standard and decide whether the fact has been proven by clear and convincing evidence, that is, that you have been left with a clear conviction that the fact has been proven.

These standards are different from what you may have heard about in criminal proceedings where a fact must be proven beyond a reasonable doubt. On a scale of these various standards of proof, as you move from preponderance of the evidence, where the proof need only be sufficient to tip the scale in favor of the party proving the fact, to beyond a reasonable doubt, where the fact must be proven to a very high degree of certainty, you may think of clear and convincing evidence as being between the two standards.

After the opening statements, Provisur will present its evidence in support of its contention that the claims of the Asserted Patents have been infringed by Weber and that the infringement has been willful. To prove infringement of any claim, Provisur must persuade you that it is more likely than not that Weber has infringed that claim. To persuade you that any infringement was willful, Provisur must also prove that it is more likely than not that the infringement was willful.

**Appx26**

Weber will then present its evidence that the claims of the Asserted Patents are invalid. To prove invalidity of any claim, Weber must persuade you by clear and convincing evidence that the claim is invalid. In addition to presenting its evidence of invalidity, Weber will put on evidence responding to Provisur's evidence of infringement and willfulness.

Provisur may then put on additional evidence responding to Weber's evidence that the claims of the Asserted Patents are invalid, and to offer any additional evidence of infringement and willfulness. This is referred to as "rebuttal" evidence. Provisur's "rebuttal" evidence may respond to any evidence offered by Weber.

Finally, Weber may have the option to put on its "rebuttal" evidence to support its contentions as to the validity of the claims of the Asserted Patent by responding to any evidence offered by Provisur on that issue.

After you have seen and heard all of the evidence from both sides, the lawyers will make closing arguments that summarize and interpret the evidence. Just as with opening statements, closing arguments are not evidence. Before the closing arguments, I will instruct you further on the law. After the lawyers' arguments and after the court's instructions you will go to the jury room to deliberate and decide on your verdict.

# INSTRUCTION NO. 7

I have already determined the meaning of the claims of the Asserted Patents. Specifically, I have made the following determinations:

*First*, for the '436 and '812 patents, the phrase "food article grippers" has been construed by the Court to mean "a device that closes and opens to seize and release an end of the food product."

*Second*, for the '436 and '812 patents, the phrase "upper conveyor assembly" has been construed by the Court to mean an "overhead conveyor system positioned over the food article loading apparatus."

*Third*, for the '436 and '812 patents, the phrase "food article stop gate" has been construed by the Court to mean a "single movable structure that provides the three positions: (1) gate, (2) bridge, and (3) door."

*Fourth*, for the '436 and '812 patents, the phrase "disposed over" has been construed by the Court to mean "positioned above and in vertical and lateral alignment with."

*Fifth*, for the '089 patent, the phrase "top slice" has been construed by the Court to mean "the topmost already cut slice."

*Sixth*, for the '089 patent, the phrase "input into said memory section a two-dimensional pixel field corresponding to an image captured of a surface area of a top slice of said stack of slices located on said conveyor" has been construed by the Court to mean "input into said memory section a two-dimensional pixel field corresponding to an image captured of a surface area of a topmost already cut slice of said stack of slices located on said conveyor."

*Seventh*, for the '936 patent, the phrase "a first row and a longitudinally displaced second row" has been construed by the Court to mean "a first row and a lengthwise second row."

*Eighth*, for the '936 patent, the phrase "food product drafts" has been construed by the Court to mean "sliced foods or sliced food product."

*Ninth*, for the '936 patent, "claim 14 is construed as requiring an advancing conveyor."

For any and all claim terms for which I have not provided you with a definition, you should apply the ordinary meaning of that term in the field of the patent.

**INSTRUCTION NO. 10**

Members of the jury, the instructions I gave at the beginning of the trial and during the trial are still in effect. Now I am going to give you additional instructions.

You have to follow all of my instructions – the ones I gave you earlier, as well as those I give you now. Do not single out some instructions and ignore others, because they are all important. This is true even though I am not going to repeat some of the instructions I gave you at the beginning of the trial.

You will have copies of all of the instructions in the jury room. Remember, you have to follow all instructions, no matter when I give them, whether or not you have written copies.

# INSTRUCTION NO. 11

Certain summaries and charts may be admitted in evidence. You may use those summaries and charts as evidence, even though the underlying documents and records are not available for your review.

**INSTRUCTION NO. 12**

Certain charts and summaries were shown to you in order to help explain the facts disclosed by the books, records, or other underlying evidence in the case. Those charts or summaries are used for convenience. They are not themselves evidence or proof of any facts. If they do not correctly reflect the facts shown by the evidence in the case, you should disregard these charts and summaries and decide the facts from the books, records or other underlying evidence.

# INSTRUCTION NO. 13

In deciding what the facts are, you may have to decide what testimony you believe and what testimony you do not believe. You may believe all of what a witness said, or only part of it, or none of it.

You are instructed that you are the sole judges of the credibility of the witnesses and of the weight and value to be given to their testimony. In determining such credibility and weight you will take into consideration the character of the witness, his or her demeanor on the stand, his or her interest, if any, in the result of the trial, his or her relation to or feeling toward the parties to the trial, the probability or improbability of his or her statements as well as all the other facts and circumstances given in evidence.

You may also consider a witness's intelligence; the opportunity the witness had to see or hear the things testified about; a witness's memory, knowledge, education, and experience; any reasons a witness might have for testifying a certain way; how a witness acted while testifying; whether a witness said something different at another time; whether a witness's testimony sounded reasonable; and whether or to what extent a witness's testimony is consistent with other evidence you believe.

In deciding whether to believe a witness, remember that people sometimes hear or see things differently and sometimes forget things. You will have to decide whether a contradiction is an innocent misrecollection, or a lapse of memory, or an intentional falsehood. That may depend on whether it has to do with an important fact or only a small detail.

## INSTRUCTION NO. 14

Testimony was presented to you in the form of a deposition. A deposition is the recorded answers a witness made under oath to questions asked by lawyers before trial. The deposition testimony to be offered was electronically video recorded and that recording was played for you. You should consider the deposition testimony, and judge its credibility, as you would that of any witness who testifies here in person.

**INSTRUCTION NO. 15**

You heard testimony from expert witnesses who testified to opinions and the reasons for the opinions. This opinion testimony is allowed because of the education or experience of this witness.

You should judge this opinion testimony just as you would any other testimony. You may accept it or reject it and give it the weight as you think it deserves, considering the witness's education and experience, the reasons given for the opinion, and all other evidence in this case.

# INSTRUCTION NO. 16

I have not intended to suggest what I think your verdicts should be by any of my rulings or comments during the trial.

## INSTRUCTION NO. 17

Evidence was presented to you in the form of answers of one of the parties to written interrogatories submitted by the other side. These answers were given in writing and under oath before the trial in response to questions that were submitted under established court procedures. You should consider the answers, insofar as possible, in the same way as if they were made from the witness stand.

A party who has responded to an interrogatory has a duty to supplement or correct its response in a timely manner if the party learns that in some material respect the response is incomplete or incorrect.

# INSTRUCTION NO. 18

As you have heard from the parties, Provisur contends that Weber has infringed four of Provisur's patents, specifically claims 9, 10, 11, 12, and 16 of U.S. Patent No. 10,625,436; claims 1, 7 and 8 of U.S. Patent No. 10,639,812; claim 12 of U.S. Patent No. 6,997,089; and, claim 14 of U.S. Patent No. 7,065,936. Provisur contends that Weber's infringement of these four patents was willful, and that Provisur is entitled to damages.

Provisur contends that the following Weber products meet the limitations, literally or equivalently, of the asserted claims of the '436 and '812 patents: Weber's S6, 905, 906, and 908 products made, used, offered for sale, sold, or imported into the United States, since April 11, 2019.

Provisur contends that the following Weber products meet the limitations, literally or equivalently, of the asserted claim of the '089 patent: Any Weber high speed slicing apparatus, combined with any quality grading device (such as a COW).

Provisur contends that the following Weber products meet the limitations, literally or equivalently of the asserted claim of the '936 patent: Weber/Textor SmartLoader.

I will now provide you with detailed instructions.

**INSTRUCTION NO.** 19

In order to show patent infringement, Provisur bears the burden of proof by a preponderance of the evidence, that is, that it is more likely than not that patent infringement has been proven.

# INSTRUCTION NO. 20

There are two types of patent infringement relevant to this case. Provisur contends that Weber directly infringes its patents, first, by literal patent infringement and, second, by doctrine of equivalents patent infringement. I will now explain each of these types of infringement in more detail.

## INSTRUCTION NO. 21

As I stated, the first type of patent infringement is known as literal infringement. For literal infringement, Provisur must prove that Weber made, used, sold, offered for sale within, or imported into the United States a product that meets all of the requirements of a claim and did so without the permission of Provisur during the time the Asserted Patents were in force. You must compare the product with each and every one of the requirements of a claim to determine whether all of the requirements of that claim are met.

Provisur is not required to prove that Weber intended to infringe or had actual knowledge of the patent.

# INSTRUCTION NO. 22

The second type of patent infringement is known as the doctrine of equivalents. Under the doctrine of equivalents, an accused product infringes the asserted claims if the accused product contains elements that literally meet or are equivalent to each and every element of the claim. You may find that an element or step is equivalent to an element of a claim that is not met literally if a person having ordinary skill in the field of technology of the patent would have considered the differences between them to be "insubstantial" or would have found that the structure or action performs substantially the same function and works in substantially the same way to achieve substantially the same result as the element of the claim.

In considering patent infringement under the doctrine of equivalents, you may also consider whether people of ordinary skill in the art believed that the structure of the accused product and the requirement recited in the patent claim were interchangeable at the time of the alleged patent infringement. The proper time for evaluating equivalency—and thus knowledge of interchangeability between requirements—is the time of infringement, not the time the patent was issued. Thus, the inventor need not have foreseen, and the patent need not describe, all potential equivalents to the invention covered by the claims. Also, changes in technique or improvements made possible by technology developed after the patent application is filed may still be equivalent for the purposes of the doctrine of equivalents.

# INSTRUCTION NO. 23

If you find that Weber has infringed, you must consider whether the patent infringement was willful. In order to establish willful patent infringement, Provisur must show, by a preponderance of the evidence, that Weber knew or should have known of, and intentionally infringed, one or more of Provisur's patents.

To determine whether Weber acted willfully, consider all facts and assess Weber's knowledge at the time of the challenged conduct. Facts that may be considered include, but are not limited, to:

*First,* whether Weber acted consistently with the standards of behavior for its industry;

*Second,* whether Weber intentionally copied a product of Provisur's that is covered by the asserted patent claims;

*Third,* whether Weber reasonably believed it did not infringe or that the patent was invalid;

*Fourth,* whether Weber made a good-faith effort to avoid infringing the any of patents, for example, whether Weber attempted to design around the asserted patents; and

*Fifth,* whether Weber tried to cover up its patent infringement.

You may not assume that merely because Weber did not obtain a legal opinion about whether it infringed the Asserted Patents that the opinion would have been unfavorable. The absence of a legal opinion may not be used by you to find that Weber acted willfully.

**INSTRUCTION NO. 24**

I will now instruct you about the measure of damages. If you find that Weber infringed any valid claim of Provisur's patents, then Provisur is entitled to damages, and you must consider what amount of damages to award Provisur. Provisur must prove damages by a preponderance of evidence. The measure of damages Provisur seeks is a reasonable royalty.

# INSTRUCTION NO. 25

In determining a damages base, you may use the value of an entire multi-component product if the patented feature is either (1) the sole driver of customer demand, or (2) substantially creates the value of the component parts.

If the claimed patented features are not the sole driver of customer demand for the accused infringing product, or substantially creates the value of the component parts, then you must perform what is called apportionment. When damages are apportioned, the amount you find as damages should be based on the value attributable to the patented invention, as distinct from unpatented features of the accused product or other factors such as marketing or advertising, or Provisur's size or market position.

# INSTRUCTION NO. 26

The damages you may award Provisur shall be in the form of a reasonable royalty. A reasonable royalty is the amount that Weber would have agreed to pay Provisur in exchange for the right to use Provisur's patents. In considering this hypothetical negotiation, you must assume that both parties believed the patent was valid and infringed, and that both parties were reasonable in their negotiations and willing to enter into an agreement.

In determining the reasonable royalty, you should consider all the facts known and available to the parties at the time the patent infringement began. Some of the kinds of factors that you may consider, known as the *Georgia-Pacific* factors, in making your determination are:

Factor no. 1 – The royalties received by the patentee for the licensing of the patent in suit, proving or tending to prove an established royalty.

Factor no. 2 – The rates paid by the licensee for the use of other patents comparable to the patent in suit.

Factor no. 3 – The nature and scope of the license, as exclusive or non-exclusive; or as restricted or non-restricted in terms of territory or with respect to whom the manufactured product may be sold.

Factor no. 4 – The licensor's established policy and marketing program to maintain his patent monopoly by not licensing others to use the invention or by granting licenses under special conditions designed to preserve that monopoly.

Factor no. 5 – The commercial relationship between the licensor and licensee, such as, whether they are competitors in the same territory in the same line of business; or whether they are inventor and promoter.

Factor no. 6 – The effect of selling the patented specialty in promoting sales of other products of the licensee; that existing value of the invention to the licensor as a generator of sales of his non-patented items; and the extent of such derivative or convoyed sales.

Factor no. 7 – The duration of the patent and the term of the license.

Factor no. 8 – The established profitability of the product made under the patent; its commercial success; and its current popularity.

Factor no. 9 – The utility and advantages of the patent property over the old modes or devices, if any, that had been used for working out similar results.

Factor no. 10 – The nature of the patented invention; the character of the commercial embodiment of it as owned and produced by the licensor; and the benefits to those who have used the invention.

Factor no. 11 – The extent to which the infringer has made use of the invention; and any evidence probative of the value of that use.

Factor no. 12 – The portion of the profit or of the selling price that may be customary in the particular business or in comparable businesses to allow for the use of the invention or analogous inventions.

Factor no. 13 – The portion of the realizable profit that should be credited to the invention as distinguished from non-patented elements, the manufacturing process, business risks, or significant features or improvements added by the infringer.

Factor no. 14 – The opinion testimony of qualified experts.

Factor no. 15 – The amount that a licensor (such as the patentee) and a licensee (such as the infringer) would have agreed upon (at the time the patent infringement began) if both had been reasonably and voluntarily trying to reach an agreement; that is, the amount which a prudent licensee—who desired, as a business proposition, to obtain a license to manufacture and sell a

particular article embodying the patented invention— would have been willing to pay as a royalty and yet be able to make a reasonable profit and which amount would have been acceptable by a prudent patentee who was willing to grant a license.

No one factor is dispositive and you can and should consider the evidence that has been presented to you in this case on each of these factors. You may also consider any other factors which in your mind would have increased or decreased the royalty the alleged infringer would have been willing to pay and the patent holder would have been willing to accept, acting as normally prudent business people.

# INSTRUCTION NO. 27

I will now instruct you on the rules you must follow in deciding whether or not Weber has proven that the asserted claims of the Asserted Patents are invalid. The law presumes each claim of the asserted patents to be valid. To prove that any claim of a patent is invalid, Weber must persuade you by clear and convincing evidence, that is, you must be left with a clear conviction that the claim is invalid. Clear and convincing is a higher burden of proof than preponderance of the evidence standard.

# INSTRUCTION NO. 28

In order for someone to be entitled to a patent, the invention must actually be "new" and not obvious over what came before, which is referred to as the prior art. Weber contends that the following is prior art to the '089 patent:

1. U.S. Patent No. 3,846,958 to Divan ("Divan")

2. Cognex In-Sight 2000 ("Cognex")

3. U.S. Patent No. 5,267,168 to Antonissen ("Antonissen")

You must determine whether the above references are prior art that can be considered in determining whether claim 12 of the '089 patent is anticipated or obvious. There are different types of prior art, and I will instruct you on the relevant types that you need to consider.

Weber contends that each of the above-listed references is prior art because each was known to or used by others in the United States or patented or described in a printed publication anywhere in the world before the date of invention, June 25, 2002. An invention is known when the information about it was reasonably accessible to the public on that date.

Weber contends that the following is prior art to the '936 patent:

1. U.S. Patent No. 7,021,450 to Jones ("Jones")

2. Weber WCS Machine

You must determine whether the above references are prior art that can be considered in determining whether claim 14 of the '936 patent is anticipated or obvious. There are different types of prior art, and I will instruct you on the relevant types that you need to consider.

Weber contends that Jones is prior art because it was known to or used by others in the United States or patented or described in a printed publication anywhere in the world before the date of invention, Dec. 18, 2002. An invention is known when the information about it was reasonably accessible to the public on that date.

Weber contends that the Weber WCS Machine is prior art because it was publicly used, sold, or offered for sale in the United States more than one year before Dec. 18, 2002, which is the effective filing date of the application for the '936 patent. An invention was publicly used when it was either accessible to the public or commercially exploited. An invention was sold or offered for sale when it was offered commercially and what was offered was ready to be patented, i.e., it was reduced to practice or it had been described such that a person having ordinary skill in the field of the technology could have made and used the claimed invention, even if it was not yet reduced to practice or publicly disclosed.

Weber contends that each of the following is prior art to the '436 and '812 patents:

1. Weber 904 Slicing Machine

2. Weber 905 Slicing Machine

3. PowerMax4000 Slicing Machine

You must determine whether above references are prior art that can be considered in determining whether claims 9, 10, 11, 12, and 16 of the '436 patent and claims 1, 7, and 8 of the '812 patent are anticipated or obvious. There are different types of prior art, and I will instruct you on the relevant types that you need to consider.

Weber contends that the Weber 904 Slicing Machine, Weber 905 Slicing Machine, and PowerMax4000 Slicing Machine are prior art because each was publicly used, sold, or offered for sale in the United States more than one year before the effective filing date of the application for the '436 patent or more than one year before the effective filing date of the application for the '812 patent. An invention was publicly used when it was either accessible to the public or commercially exploited. An invention was sold or offered for sale when it was offered commercially and what was offered was ready to be patented, i.e., it was reduced to practice or it had been described such that a

person having ordinary skill in the field of the technology could have made and used the claimed invention, even if it was not yet reduced to practice or publicly disclosed.

## INSTRUCTION NO. 29

In order for someone to be entitled to a patent, the invention must actually be "new." Weber contends that claims 9, 10, 11, 12, and 16 of the '436 patent and claims 1, 7, and 8 of the '812 patent are invalid because the claimed invention is anticipated by the Weber 904 Slicing Machine. Weber must convince you of this by clear and convincing evidence, i.e., that the evidence highly probably demonstrates that the claims are invalid.

Anticipation must be determined on a claim-by-claim basis. Weber must prove by clear and convincing evidence that all of the requirements of a claim are present in a single piece of prior art. To anticipate the invention, the prior art does not have to use the same words as the claim, but all of the requirements of the claim must have been disclosed and arranged as in the claim. The claim requirements may either be disclosed expressly or inherently—that is, necessarily implied—such that a person having ordinary skill in the art in the technology of the invention, looking at that one reference, could make and use the claimed invention.

If a dependent claim is anticipated by the prior art, then the claims from which it depends are necessarily anticipated as well.

INSTRUCTION NO. 30

Even though an invention may not have been identically disclosed or described before it was made by an inventor, in order to be patentable, the invention must also not have been obvious to a person of ordinary skill in the field of technology of the patent at the time the invention was made.

Weber may establish that a patent claim is invalid by proving, by clear and convincing evidence, that the claimed invention would have been obvious to persons having ordinary skill in the art at the time the invention was made in the field of industrial meat slicing machines. In determining whether a claimed invention is obvious, you must consider the level of ordinary skill in the field of the invention that someone would have had at the time the invention was made, the scope and content of the prior art, any differences between the prior art and the claimed invention, and, if present, so-called objective evidence or secondary considerations, which I will describe shortly. Do not use hindsight; consider only what was known at the time the invention was made.

Keep in mind that the existence of each and every element of the claimed invention in the prior art does not necessarily prove obviousness. Most, if not all, inventions rely on building blocks of prior art. In considering whether a claimed invention is obvious, you should consider whether, at the time the invention was made, there was a reason that would have prompted a person having ordinary skill in the field of the invention to combine the known elements in the prior art in a way the claimed invention does, taking into account such factors as (1) whether the claimed invention was merely the predictable result of using prior art elements according to their known function(s); (2) whether the claimed invention provides an obvious solution to a known problem in the relevant field; (3) whether the prior art teaches or suggests the desirability of combining elements claimed in the invention; (4) whether the prior art teaches away from combining elements in the claimed invention; (5) whether it would have been obvious to try the combinations of elements, such as when there is a design incentive or market pressure to solve a problem and there are a finite number of identified,

predictable solutions. To find it rendered the claimed invention obvious, you must find that the prior art provided a reasonable expectation of success. Obvious to try is not sufficient in unpredictable technologies.

In determining whether the claimed invention is obvious, you should take into account any objective evidence (sometimes called "secondary considerations") that may shed light on whether or not the claimed invention is obvious, such as:

a. Whether the claimed invention was commercially successful as a result of the merits of the claimed invention (rather than the result of design needs or market-pressure advertising or similar activities);

b. Whether the claimed invention satisfied a long-felt need;

c. Whether others had tried and failed to make the claimed invention;

d. Whether others invented the claimed invention at roughly the same time;

e. Whether others copied the claimed invention;

f. Whether there were changes or related technologies or market needs contemporaneous with the claimed invention;

g. Whether the claimed invention achieved unexpected results;

h. Whether others in the field praised the claimed invention;

i. Whether persons having ordinary skill in the art of the invention expressed surprise or disbelief regarding the claimed invention;

j. Whether others sought or obtained rights to the patent from the patent holder; and

k. Whether the inventor proceeded contrary to accepted wisdom in the field.

In determining whether the claimed invention was obvious, consider each claim separately, but understand that if a dependent claim is obvious, then the claims from which it depends are necessarily obvious as well.

# INSTRUCTION NO. 3|

In deciding what the level of ordinary skill in the field of the invention in the Asserted Patents is, you should consider all the evidence introduced at trial, including but not limited to: (1) the levels of education and experience of the inventor and other persons actively working in the field; (2) the types of problems encountered in the field; (3) prior art solutions to those problems; (4) the rapidity with which innovations are made; and (5) the sophistication of the technology.

# INSTRUCTION NO. 32

Weber contends that all of the asserted claims of the '089 patent are invalid as being directed to patent ineligible subject matter. You must decide if the elements in each of these claims, taken individually or as a combination, involve well-understood, routine, and conventional activity previously engaged in by researchers in the field, or well-understood, routine, and conventional activities or components previously known to the industry as of June 25, 2002. Whether a particular technology was well-understood, routine, and conventional goes beyond what was simply known in the prior art. The mere fact that something was disclosed in a piece of prior art, for example, does not mean it was well-understood, routine, and conventional. At the same time, a lack of invalidating prior art does not mean that the elements of a claim are not well-understood, routine, and conventional. The specification of the Asserted Patents may also be such evidence where it admits that a part of a claim was well-understood, routine, and conventional.

# INSTRUCTION NO. 33

There are rules you must follow when you go to the jury room to deliberate and return with your verdict.

*First*, you will select a foreperson. That person will preside over your discussions and speak for you here in court.

*Second*, it is your duty, as jurors, to discuss this case with one another in the jury room. You should try to reach agreement, if you can do this without going against what you believe to be true because all jurors have to agree on the verdict.

Each of you must come to your own decision, but only after you have considered all the evidence, discussed the evidence fully with your fellow jurors, and listened to the views of your fellow jurors.

Do not be afraid to change your mind if the discussion persuades you that you should. But, do not come to a decision just because other jurors think it is right, or just to reach a verdict. Remember you are not for or against any party. You are judges – judges of the facts. Your only job is to study the evidence and decide what is true.

*Third*, during your deliberations, including during any recess taken during deliberations, you must not, directly or indirectly, communicate with or provide any information to anyone by any means or by any medium, about anything relating to this case, until I accept your verdict and discharge you from further service in this case.

*Fourth*, as stated in my instructions at the beginning of the trial, you may not in any manner seek out or receive any information about the case from any source other than the evidence received by the court and the law of the case I have provided to you.

You are only permitted to discuss the case with your fellow jurors during deliberations because they have seen and heard the same evidence you have. In our judicial system, it is

important that you are not influenced by anything or anyone outside of this courtroom. Otherwise, your decision may be based on information known only by you and not your fellow jurors or the parties in the case. This would unfairly and adversely impact the judicial process.

*Fifth*, if you need to communicate with me during your deliberations, send me a note signed by one or more of you. Give the note to the Courtroom Deputy and I will answer you as soon as I can, either in writing or here in court. While you are deliberating, do not tell anyone - including me - how many jurors are voting for any side.

*Sixth*, nothing I have said or done was meant to suggest what I think your verdict should be. The verdict is entirely up to you.

*Finally*, the verdict form is your written decision in this case. You will take these forms to the jury room, and when you have all agreed on the verdicts, your foreperson will fill in the forms, sign and date them, and tell the Courtroom Deputy that you are ready to return to the courtroom.

## VERDICT FORM

When answering the following questions and filling out this Verdict Form, please follow the directions provided throughout the form. Your answer to each question must be unanimous. Some of the questions contain legal terms that are defined and explained in detail in the Jury Instructions. Please refer to the Jury Instructions if you are unsure about the meaning or usage of any legal term that appears in the questions below.

We, the jury, unanimously agree to the answers to the following questions and return them under the instructions of this court as our verdict in this case.

# I. INFRINGEMENT

**Question 1a:** Has Provisur Technologies, Inc. ("Provisur") proven, by a preponderance of the evidence, that Weber, Inc., Textor, Inc., Weber Maschinenbau GmbH Breidenbach, Weber Maschinenbau GmbH Neubrandenburg, and Textor Maschinenbau GmbH ("Weber") have infringed the following claim of the '089 patent?

| | YES (for Provisur) | NO (for Weber) |
|---|---|---|
| Claim 12 | | ✓ |

**Question 1b:** Has Provisur proven, by a preponderance of the evidence, that Weber has infringed the following claim of the '936 patent?

| | YES (for Provisur) | NO (for Weber) |
|---|---|---|
| Claim 14 | ✓ | |

**Question 1c:** Has Provisur proven, by a preponderance of the evidence, that Weber has infringed the following claims of the '436 patent?

| | YES (for Provisur) | NO (for Weber) |
|---|---|---|
| Claim 9 | ✓ | |
| Claim 10 | ✓ | |
| Claim 11 | ✓ | |
| Claim 12 | ✓ | |
| Claim 16 | ✓ | |

**Question 1d:** Has Provisur proven, by a preponderance of the evidence, that Weber has infringed the following claims of the '812 patent?

| | YES (for Provisur) | NO (for Weber) |
|---|---|---|
| Claim 1 | ✓ | |
| Claim 7 | ✓ | |
| Claim 8 | ✓ | |

## II.   WILLFUL INFRINGEMENT

If you answer 'YES' for any patent claim in **Section I**, you should answer the following questions about those patent claims:

**Question 2a:** Has Provisur proven, by a preponderance of the evidence, that Weber willfully infringed a claim of the '089 patent?

| Yes (for Provisur) | No (for Weber) |
|---|---|
|  | ✓ |

**Question 2b:** Has Provisur proven, by a preponderance of the evidence, that Weber willfully infringed a claim of the '936 patent?

| Yes (for Provisur) | No (for Weber) |
|---|---|
| ✓ |  |

**Question 2c:** Has Provisur proven, by a preponderance of the evidence, that Weber willfully infringed a claim of the '436 patent?

| Yes (for Provisur) | No (for Weber) |
|---|---|
| ✓ |  |

**Question 2d:** Has Provisur proven, by a preponderance of the evidence, that Weber willfully infringed a claim of the '812 patent?

| Yes (for Provisur) | No (for Weber) |
|---|---|
| ✓ |  |

## III.    DAMAGES

If you answer 'YES' for any patent claim in **Section I**, you should answer the following questions about those patent claims:

**Question 3a:**  For the '089 patent, we find damages in the amount of:

$ _____0_____

**Question 3b:**  For the '936 patent, we find damages in the amount of:

$ 3,013,068

**Question 3c:**  For the '436 patent, we find damages in the amount of:

$ 3,747,046.50

**Question 3d:**  For the '812 patent, we find damages in the amount of:

$ 3,747,046.50

## IV.  INVALIDITY

**Question 4:** Has Weber proven, by clear and convincing evidence, that the following claim of the '089 patent would have been invalid as obvious under 35 U.S.C. § 103 to a person of ordinary skill in the art on June 25, 2002?

|  | YES (for Weber) | NO (for Provisur) |
|---|---|---|
| Claim 12 |  | ✓ |

     If you answered NO (for Provisur), you need not fill in anything below; however, if you answered YES (for Weber) for the claim above, please list the combination of references that show that the respective claim would have been obvious to a person of ordinary skill in the art:

_____

_____

**Question 5:** Has Weber proven, by clear and convincing evidence, from the perspective of a person of ordinary skill in the art, the following claim of the '089 patent is invalid under 35 U.S.C. § 101 as not directed to patent eligible subject matter?

|  | YES (for Weber) | NO (for Provisur) |
|---|---|---|
| Claim 12 |  | ✓ |

**Question 6:** Has Weber proven, by clear and convincing evidence, that the following claim of the '936 patent would been invalid as obvious under 35 U.S.C. § 103 to a person of ordinary skill in the art on December 18, 2002?

| | YES (for Weber) | NO (for Provisur) |
|---|---|---|
| Claim 14 | | ✓ |

   If you answered NO (for Provisur), you need not fill in anything below; however, if you answered YES (for Weber) for the claim above, please list the combination of references that show that the respective claim would have been obvious to a person of ordinary skill in the art:

_____

_____

**Question 7:** Has Weber proven, by clear and convincing evidence, that the following claims of the '436 patent would have been invalid as anticipated under 35 U.S.C. § 102?

| | YES (for Weber) | NO (for Provisur) |
|---|---|---|
| Claim 9 | | ✓ |
| Claim 10 | | ✓ |
| Claim 11 | | ✓ |
| Claim 12 | | ✓ |
| Claim 16 | | ✓ |

   If you answered NO (for Provisur), you need not fill in anything below; however, if you answered YES (for Weber) for any claims above, please list the combination of references that show that the respective claim would have been obvious to a person of ordinary skill in the art:

_____

_____

**Question 8:** Has Weber proven, by clear and convincing, that the following claims of the '436 patent would been invalid as obvious under 35 U.S.C. § 103 as obvious to a person of ordinary skill in the art on May 1, 2010?

|  | YES (for Weber) | NO (for Provisur) |
|---|---|---|
| Claim 9 |  | ✓ |
| Claim 10 |  | ✓ |
| Claim 11 |  | ✓ |
| Claim 12 |  | ✓ |
| Claim 16 |  | ✓ |

If you answered NO (for Provisur), you need not fill in anything below; however, if you answered YES (for Weber) for any claims above, please list the combination of references that show that the respective claim would have been obvious to a person of ordinary skill in the art:

_____

_____

**Question 9:** Has Weber proven, by clear and convincing evidence, that the following claims of the '812 patent would have been invalid as anticipated under 35 U.S.C. § 102?

|  | YES (for Weber) | NO (for Provisur) |
|---|---|---|
| Claim 1 |  | ✓ |
| Claim 7 |  | ✓ |
| Claim 8 |  | ✓ |

If you answered NO (for Provisur), you need not fill in anything below; however, if you answered YES (for Weber) for any claims above, please list the combination of references that show that the respective claim would have been obvious to a person of ordinary skill in the art:

**Question 10:** Has Weber proven, by clear and convincing evidence, that the following claims of the '812 patent would been invalid as obvious under 35 U.S.C. § 103 as obvious to a person of ordinary skill in the art on May 1, 2010?

| | YES (for Weber) | NO (for Provisur) |
|---|---|---|
| Claim 1 | | ✓ |
| Claim 7 | | ✓ |
| Claim 8 | | ✓ |

If you answered NO (for Provisur), you need not fill in anything below; however, if you answered YES (for Weber) for any claims above, please list the combination of references that show that the respective claim would have been obvious to a person of ordinary skill in the art:

Note: All jurors who agree to the above findings must sign below.

| | |
|---|---|
| *Thomas Lull* | *Dalley McDaniel* |
| *Nora Hildreth* | *Hallie Vath* |
| *B. L.* | |
| *Dan Smith* | |
| *Marlene McClellan* | |
| *Kadi Boyer* | |

Case 5:19-cv-06021-SRB   Document 489   Filed 10/28/22   Page 8 of 8

Appx67

**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF MISSOURI**
**ST. JOSEPH DIVISION**

<u>**JUDGMENT IN A CIVIL CASE**</u>

PROVISUR TECHNOLOGIES, INC.,     )
         )
        Plaintiff,     )
         )     Case No.: 19-cv-06021-SRB
v.         )
         )
WEBER, INC., et al.,     )
         )
        Defendants.     )

  **X** **Jury Verdict**.   This action came before the Court for a trial by jury.   The issues have been tried and the jury has rendered its verdict.

  **Decision by Court.**   This action came before the Court.   The issues have been determined and a decision has been rendered.

**IT IS ORDERED AND ADJUDGED** pursuant to the verdict returned on October 28, 2022 that the jury finds:

In favor of Plaintiff Provisur Technologies, Inc. in the amount of; $3,013,068 for the '936 patent, $3,747,046.50 for the '436 patent, and $3,747,046.50 for the '812 patent.

October 28, 2022                  Paige Wymore-Wynn
Date                           Clerk of Court

                           /s/ Tracey L. Richard
                           (by) Deputy Clerk

## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF MISSOURI
## ST. JOSEPH DIVISION

PROVISUR TECHNOLOGIES, INC.,           )
                                       )
            Plaintiff,                 )
                                       )
    v.                                 )          Case No. 19-cv-06021-SRB
                                       )
WEBER, INC., et al.,                   )
                                       )
            Defendants.                )

## ORDER

Before the Court are Defendant Weber, Inc., Textor Inc., Weber Maschinenbau GmbH Breidenbach, Textor Maschinenbau GmbH, and Weber Maschinenbau GmbH Neubrandenburg's ("Defendants") (1) Rule 50(b) Motion for Judgment as a Matter of Law (Doc. #501); and (2) Rule 59 Motion for a New Trial (Doc. #503).[1] Plaintiff Provisur Technologies, Inc. ("Plaintiff") has filed briefs in opposition to both motions. Upon review, Defendants' motions are DENIED.

The facts of this case have been exhaustively discussed in the Court's prior Orders and in the parties' briefs. They will not be repeated herein. This Order assumes familiarity with the facts and law applicable to the claims and defenses asserted in this case.

Federal Rule of Civil Procedure 50(b) allows a party that has previously moved for judgment as a matter of law to renew that motion no later than 28 days after the entry of judgment. Fed. R. Civ. P. 50(b). When reviewing a motion under Rule 50(b), a court must "affirm the jury's verdict unless, viewing the evidence in the light most favorable to the

---

[1] Defendants are interrelated corporate entities and subsidiaries. The Court acknowledges the differences between these entities. However, for purposes of clarity and consistency, this Order collectively refers to Defendants.

prevailing party, . . . a reasonable jury could not have found for that party." *Hite v. Vermeer Mfg. Co.*, 446 F.3d 858, 865 (8th Cir. 2006) (citation omitted). The court should "review all of the evidence in the record," and "draw all reasonable inferences in favor of the nonmoving party," without making credibility determinations or weighing the evidence. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000) (citations omitted). "Judgment as a matter of law is proper only when there is a complete absence of probative facts to support the conclusion reached so that no reasonable jury could have found for the nonmoving party." *Foster v. Time Warner Entm't Co.*, 250 F.3d 1189, 1194 (8th Cir. 2001).

In this case, Defendants' Rule 50(b) motion raises numerous arguments. Defendants' primary arguments are as follows: there is no evidence that the SmartLoader can operate as an advancing conveyor as properly construed; Plaintiff's accusations of spoliation and concealing evidence cannot support an infringement verdict as a matter of law; the SmartLoader alone cannot satisfy the web of advancing film limitation as a matter of law; the TS750 and the 908 Slicers do not infringe the '436/'812 patents as a matter of law; the accused 900-Series slicers do not infringe the '436/'812 patents as a matter of law; Defendants do not infringe the '436/'812 patents as a matter of law; and Defendants did not willfully infringe any patent as a matter of law.

Upon review of the record and the parties' arguments, the Court finds that Defendants are not entitled to judgment as a matter of law. For the reasons stated in Plaintiff's opposition brief, in the Court's prior Orders, and by the Court at trial, Defendants' arguments are rejected. A reasonable jury could have found for Plaintiff under the evidence and applicable law. *Foster*, 250 F.3d at 1194. Therefore, Defendants' Rule 50(b) motion for judgment as a matter of law is denied.

Defendants also move for a new trial under Federal Rule of Civil Procedure 59. Rule 59 "confirms the trial court's historic power to grant a new trial based on its appraisal of the fairness of the trial and the reliability of the jury's verdict." *Gray v. Bicknell*, 86 F.3d 1472, 1480 (8th Cir. 1996). "A new trial is appropriate when the first trial, through a verdict against the weight of the evidence, an excessive damage award, or legal errors at trial, resulted in a miscarriage of justice." *Id.* When ruling on a motion for a new trial, the court has broad discretion. *Innovative Home Health Care, Inc. v. P.T.-O.T. Assocs. of the Black Hills*, 141 F.3d 1284, 1286 (8th Cir. 1998). However, a Rule 59 motion serves the "limited function of correcting manifest errors of law or fact or to present newly discovered evidence." *Id.*

In this case, Defendants present numerous arguments in support of their motion for a new trial. Defendants' primary arguments are as follows: Plaintiff misrepresented discovery disputes and European proceedings which misled and prejudiced the jury; Plaintiff misrepresented the law on willful infringement that tainted the jury on willfulness and infringement; the Court wrongly precluded Defendants from offering testimony about its patent monitoring program; the Court erroneously instructed the jury on claim construction; the Court erred by preventing Defendants from introducing evidence in support of their invalidity defenses; Defendants were wrongly prevented from presenting deposition testimony of Plaintiff's employees; and the jury's damages verdict was excessive, against the great weight of the evidence, and based on erroneous jury instructions.

Upon review of the record and the parties' arguments, the Court finds that Defendants are not entitled to a new trial. For the reasons stated in Plaintiff's opposition brief, in the Court's prior Orders, and by the Court at trial, Defendants' arguments are rejected. Therefore, Defendants' motion for a new trial under Rule 59 is denied.

Accordingly, it is hereby ORDERED that:

(1) Defendants' Rule 50(b) Motion for Judgment as a Matter of Law (Doc. #501) is DENIED; and

(2) Defendants' Rule 59 Motion for a New Trial (Doc. #503) is DENIED.

**IT IS SO ORDERED.**

/s/ Stephen R. Bough
STEPHEN R. BOUGH
UNITED STATES DISTRICT JUDGE

Dated: January 9, 2023

4

# IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF MISSOURI
## ST. JOSEPH DIVISION

PROVISUR TECHNOLOGIES, INC.,     )
    )
            Plaintiff,     )
    )
       v.     )     Case No. 19-cv-06021-SRB
    )
WEBER, INC., et al.,     )
    )
            Defendants.     )

## ORDER

Before the Court is Plaintiff Provisur Technologies, Inc.'s ("Plaintiff" or "Provisur")

Motion for Willful Infringement Enhanced Damages. (Doc. #497.) For the reasons set forth

below, the motion is GRANTED.

## I. FACTUAL BACKGROUND

The Court's prior Orders and the parties' briefs have exhaustively discussed the facts of

this case. This Order assumes familiarity with the facts and law applicable to all claims and

defenses. Only those facts and issues necessary to resolve the pending motion are discussed

herein. The following is a brief factual summary. Additional facts relevant to the pending

motion are set forth in Section III.

Plaintiff designs, makes, and sells commercial food processing technologies. Plaintiff

owns four patents that are at issue in this case (the "Patents-at-Issue"): United States Patent

Nos. 6,997,089 ("the '089 Patent"), 7,065,936 ("the '936 Patent"), 10,625,436 ("the '436

Patent") and 10,639,812 ("the '812 Patent"). Defendants Weber, Inc., Textor Inc., Weber

Maschinenbau GmbH Breidenbach, Textor Maschinenbau GmbH, and Weber Maschinenbau

GmbH Neubrandenburg ("Defendants" or "Weber") design, manufacture, and sell commercial food processing machinery to their customers.[1]

On February 22, 2019, Plaintiff filed this lawsuit against Defendants for patent infringement.[2]  Plaintiff alleged that Defendants manufacture and sell commercial slicing machines that infringe the Patents-at-Issue.  The machinery at issue generally involves a high-speed industrial slicing and packaging machine comprised of a series of belts, conveyors, scanners, sensors, and packaging parts.  Bulk food items—such as loaves or blocks of meat or cheese, referred to generally as food articles or products—are loaded into the slicer, sliced, and transported down the line for additional processing, sorting, weighing, and packaging.  The Patents-at-Issue involve different mechanical components that play distinct roles in this overall conveyor and packaging system.

On October 14, 2022, a nine-day jury trial commenced in this case.  On October 28, 2022, the jury returned its verdict.  The jury found that Defendants infringed all nine asserted claims of the '936, '436, and '812 patents.  The jury found that Defendants did not infringe the '089 patent.  The jury also found that the Patents-at-Issue were valid and that Defendants willfully infringed the '936, '436, and '812 patents.  The jury awarded Plaintiff $3,013,068 for Defendants' infringement of the '936 patent, $3,747,046.50 for Defendants' infringement of the '436 patent, and $3,747,046.50 for Defendants' infringement of the '812 patent.  Therefore, the total damages award in favor of Plaintiff was $10,507,161.  On October 28, 2022, the Court entered judgment in favor of Plaintiff.

---

[1] Defendants are interrelated corporate entities and subsidiaries.  The Court acknowledges the differences between these entities.  However, for purposes of clarity and consistency, this Order collectively refers to "Defendants" or "Weber."

[2] Plaintiff filed a subsequent lawsuit against Defendants for patent infringement, Case No. 20-cv-06069-SRB.  In an Order dated July 28, 2022, the Court consolidated the two cases and ordered that all future filings should be made in Case No. 19-cv-06021-SRB.

2

Plaintiff now moves for enhanced damages under 35 U.S.C. § 284. In particular, Plaintiff "moves the Court to treble the damages found by the jury for Defendants' infringements of [the] '436, '812, and '936 Patents." (Doc. #497, p. 1.)[3] Defendants oppose the motion, and the parties' arguments are addressed below.

## II. LEGAL STANDARD

Under 35 U.S.C. § 284, "the court may increase the damages up to three times the amount found or assessed" for patent infringement. 35 U.S.C. § 284. "A party seeking enhanced damages under § 284 bears the burden of proof by a preponderance of the evidence." *WBIP, LLC v. Kohler Co.*, 829 F.3d 1317, 1339 (Fed. Cir. 2016). If a jury finds willful infringement, the court "enjoy[s] discretion in deciding whether to award enhanced damages, and in what amount." *Halo Elec., Inc. v. Pulse Elec., Inc.*, 579 U.S. 93, 104 (2016); *see also Transclean Corp. v. Bridgewood Servs., Inc.*, 290 F.3d 1364, 1377 (Fed. Cir. 2002) (recognizing that a verdict of willful infringement "authorizes but does not mandate" enhanced damages). "The sort of conduct warranting enhanced damages has been variously described . . . as willful, wanton, malicious, bad-faith, deliberate, consciously wrongful, flagrant, or—indeed— characteristic of a pirate." *Halo Elec.*, 579 U.S. at 103-04.

## III. DISCUSSION

To determine "whether enhanced damages are appropriate, courts should consider the overall circumstances of the case." *Presidio Components, Inc. v. Am. Tech. Ceramics Corp.*, 875 F.3d 1369, 1382 (Fed. Cir. 2017). The following non-exclusive factors guide the analysis:

> (1) whether the infringer deliberately copied the ideas of another; (2) whether the infringer, when he knew of the other's patent protection, investigated the scope of the patent and formed a good-faith belief that it was invalid or that it was not infringed; (3) the infringer's behavior as a party to the litigation;

---

[3] Plaintiff states that it "does not seek enhanced damages related to the '089 patent, which the jury found valid but not infringed." (Doc. #498, p. 24 n.9.) All page numbers refer to the pagination automatically generated by CM/ECF.

3

> (4) the defendant's size and financial condition; (5) the closeness of the case; (6) the duration of the defendant's misconduct; (7) remedial action by the defendant; (8) the defendant's motivation for harm; and (9) whether the defendant attempted to conceal its misconduct.

*Georgetown Rail Equip. Co. v. Holland LP*, 867 F.3d 1229, 1244-45 n.6 (Fed. Cir. 2017)

(quotation marks and alterations omitted) (citing *Read Corp. v. Portec, Inc.*, 970 F.2d 816, 827

(Fed. Cir. 1992). "An award need not rest on any particular factor, and not all relevant factors

need to weigh in favor of an enhanced award." *Stryker Corp. v. Zimmer, Inc.*, Case No.

1:10–CV–1223, 2017 WL 4286412, at *3 (W.D. Mich. July 12, 2017), *aff'd*, 745 F. App'x 167

(Fed. Cir. 2018). These factors and other relevant considerations are discussed below.

### 1. Whether Defendants Intentionally Copied Plaintiff's Patented Ideas

The first factor considers "whether the infringer intentionally copied the ideas of

another." *Stryker Corp. v. Intermedics Ortho., Inc.*, 96 F.3d 1409, 1414 (Fed. Cir. 1996).

Plaintiff argues the evidence at trial "showed—at a minimum—circumstantial evidence of

[Defendants'] copying of [Plaintiff's] patents." (Doc. #498, p. 8.) Defendants claim the

evidence shows that they "did not copy [Plaintiff's] patented ideas or designs." (Doc. #524,

p. 8.)[4] Upon review of the record and the parties' arguments, the Court finds this factor weighs

in favor of enhanced damages.

In particular, the Court finds that Plaintiff presented evidence showing that Defendants:

> monitor[ed] and rat[ed] . . . the asserted patents and later s[old] . . . the same ideas and designs. [Defendants'] chief technology officer, Joerg Schmeiser, told his subordinates that [Defendants] would do '[w]hatever it takes' to compete with [Plaintiff]. He collected detailed notes on the designs of Formax's machines from [Defendants'] employees.

---

[4] Defendants' opposition brief argues that the pending motion "relies on the jury's erroneous willfulness finding and therefore should be mooted by Weber's post-trial motions seeking to correct that error." (Doc. #524, p. 6.) In a companion Order, the Court denied Defendants' motion for a new trial and motion for judgment as a matter of law. The pretrial and trial errors alleged by Defendants are unpersuasive and do not weigh against an award of enhanced damages.

(Doc. #498, p. 8) (citations omitted).  In addition, the evidence supports a finding—and the jury found—that Defendants developed products that embodied Plaintiff's patented technology. Consequently, the first factor supports enhanced damages because the evidence shows that Defendants intentionally copied Plaintiff's patented ideas.

### 2.  Whether Defendants Had a Good Faith Belief that the Patents-at-Issue Were Invalid or Not Infringed

The second factor considers, in part, whether the infringer "properly investigate[d] the scope of the patents and form[ed] a good-faith belief that the patents were invalid and/or not infringed." *Arctic Cat Inc. v. Bombardier Rec. Prods., Inc.*, 198 F. Supp. 3d 1343, 1350 (S.D. Fla. 2016).  Plaintiff argues this factor "strongly favors enhancing damages."  (Doc. #498, p. 8.) Plaintiff contends the evidence showed that Defendants "failed to undertake any invalidity or non-infringement investigation, despite its extensive tracking, analysis, and rating of [Plaintiff's] patents."  (Doc. #498, p. 8.)  Defendants respond in part that their "purported failure to produce evidence of an investigation does not support enhanced damages" and that Plaintiff failed to carry its burden of showing "intentional and deliberate infringement."  (Doc. #524, p. 11.)

Upon review of the record and the parties' arguments, the Court finds this factor weighs in favor of enhanced damages.  As explained by Plaintiff:

> John White, one of the country's foremost intellectual property management experts, testified how Weber was plainly aware of Provisur's patents but did nothing else.  Weber did not conduct a landscape search, a background search, a state of the art search, or a freedom to operate analysis regarding the patents.   Weber did not attempt to design around, license, or file an IPR of the patents, all of which are standard industry practices to avoid infringement risks . . . [n]ot a single Weber employee testified about any belief of invalidity or non-infringement of the asserted patents.

(Doc. #498, pp. 8-9) (citations omitted).  For these reasons, the second factor supports an award of enhanced damages.

### 3. Whether Defendants' Behavior During Litigation Supports Enhanced Damages

The third factor considers whether enhanced damages are warranted based on the infringer's litigation conduct. "Many varieties of [litigation] misconduct can support a district court's finding of enhanced damages." *Metso Minerals, Inc. v. Powerscreen Int'l Distrib. Ltd.*, 833 F. Supp. 2d 333, 339 (E.D.N.Y. 2011). However, "[l]itigation misconduct generally involves unethical or unprofessional conduct by a party or his attorneys during the course of adjudicative proceedings." *Id.* at 338. Such conduct includes, but is not limited to, purchasing the silence of a potential witness, destroying relevant documents, and displaying "a lack of regard for the judicial system." *Id.* at 338-39 (collecting Federal Circuit case law).

Plaintiff argues that Defendants' litigation and trial conduct "weigh[] heavily in favor of enhancing damages." (Doc. #498, p. 10.) Specifically, Plaintiff contends that Defendants: "(1) changed fact witness testimony at trial; (2) violated the Court's evidentiary rulings; (3) refused to timely limit its prior art references for trial as the Court ordered, and (4) hid and obfuscated key evidence throughout the case." (Doc. #498, pp. 10-16.) Defendants respond that "[n]othing about [their] litigation and trial conduct evidences willful infringement." (Doc. #524, p. 11.) Defendants further claim that "if anything, it was Provisur who filled its time at trial with distractions, conjecture, and theater." (Doc. #524, p. 12.)

Upon review, the Court finds the third factor is neutral and does not weigh in favor of enhanced damages. Throughout this case, Plaintiff and Defendants have repeatedly accused each other of wrongdoing. The parties' briefs on factor three is the latest example of this. Among other things, Plaintiff claims that Defendants "lied in their interrogatory responses and withheld the truth during two years of discovery." (Doc. #498, p. 14.) Defendants respond that Plaintiff's

accusation is "baseless and false," and that Plaintiff "deliberately" misled the jury. (Doc. #524, pp. 13, 15.)

The parties' arguments on this factor raise many of the same or similar disputes that were previously resolved by the Court, either before or during trial.[5]  In addition, Defendants have provided plausible explanations for their discovery and trial conduct.  Viewing the record as a whole, the Court cannot conclude that Defendants' litigation and trial conduct supports enhanced damages.  Consequently, this factor is neutral.

### 4. Whether Defendants' Size and Financial Condition Supports Enhanced Damages

The fourth factor considers the infringer's size and financial condition.  If the infringer is a large company, an enhancement may be warranted "to deter infringing conduct." *Stryker Corp.*, 2017 WL 4286412, at *5.  Plaintiff argues that enhancement is necessary "to serve the intended deterrent function" because Defendants' annual revenue "in a single, global pandemic year" was "approximately $100 million." (Doc. #498, p. 17.)  Plaintiff also argues that damages should be enhanced because Defendants failed to use their financial resources to develop a non-infringing alternative.

Defendants respond that this factor "is given weight only *against* enhancement or to inform the amount." (Doc. #524, p. 18) (emphasis in original).  Defendants further contend that "[t]o the extent size matters at all, Weber is actually smaller than Provisur." (Doc. #524, p. 18.) According to Defendants, this difference in size "is likely one of the reasons Provisur is trying to bully Weber with multiple successive lawsuits and other litigation costs." (Doc. #524, p. 18.)

---

[5] By way of one example, the Court denied Plaintiff's motion for sanctions which alleged discovery misconduct by Defendants. (Doc. #358.)

Upon review, the Court finds this factor weighs in favor of Plaintiff. Factor four "is often given weight against enhancement in situations where, for instance, the other . . . factors strongly support enhancement but the infringer is in such perilous financial condition that an award of enhanced damages might put it out of business." *See Idenix Pharm. LLC v. Gilead Sciences, Inc.*, 271 F. Supp. 3d 694, 701 (D. Del. 2017). But that general rule is not applicable here. Weber is a large company with significant revenue. Defendants' opposition brief "never claims an inability to pay" enhanced damages, or that enhanced damages "could be equivalent to an organizational death sentence." (Doc. #534, p. 11); *Idenix Pharm. LLC*, 271 F. Supp. 3d at 701 (citations omitted). Finally, Defendants did not use their substantial resources, financial or otherwise, to develop a non-infringing alternative. Under these circumstances, and "[t]o deter infringing conduct," the Court finds that Defendants' size and financial condition supports enhanced damages. *Stryker Corp.*, 2017 WL 4286412, at *5 (focusing only on the size of the infringer without discussing the relative size of the parties).

**5. Whether this Case Involved Close Issues**

Plaintiff contends the fifth factor weighs in favor of enhanced damages because this case did not involve close issues. Plaintiff argues that the jury and the United States Patent and Trademark Office rejected Defendants' validity arguments on each asserted claim of the '936, '436, and '812 patents. Plaintiff also emphasizes that the jury found infringement on all asserted claims of the '936, '436, and '812 patents, and "fully adopted the damages calculated" by Plaintiff's expert. (Doc. #498, p. 20.)

Defendants believe the issues were close, and that they should have obtained a complete victory. Specifically, Defendants argue they "did not prevail on validity at trial because the Court gutted [their] prior-art defenses on the eve of opening statements." (Doc. #524, p. 19.)

8

Defendants believe that "Provisur only prevailed on infringement, validity, and damages for the SmartLoader and slicers based on the numerous prejudicial errors discussed in Weber's post-trial motions. It was not because the evidence actually favored Provisur." (Doc. #524, p. 19.)[6]

Overall, the Court finds this case did not involve close issues. Although Defendants obtained a verdict of non-infringement on the '089 patent, the remaining issues were not close. The jury rejected all of Defendants' validity arguments, found infringement of the '936, '436, and '812 patents, and awarded Plaintiff the full amount of damages on those patents. The jury also needed less than four hours to reach their verdicts. *See Jiaxing Super Lighting Elec. Appliance Co. v. CH Lighting Tech Co., Ltd.*, 6:20-cv-00018-ADA, 2022 WL 3371630, at *6 (W.D. Tex. Aug. 16, 2022) (recognizing that "courts have enhanced damages based in part on the length of the jury's deliberations and the asymmetry of the outcome.").

Based on the entire record, the Court finds this case did not involve close issues on validity, infringement, or damages. Consequently, the fifth factor supports enhanced damages.

### 6. Whether the Duration of Defendants' Misconduct Supports Enhanced Damages

"The sixth factor looks at the duration of the infringer's misconduct or the duration of infringement when the defendant had knowledge of the patent." *Canon, Inc. v. Color Imaging, Inc.*, 292 F. Supp. 3d 1357, 1366-67 (N.D. Ga. 2018). Plaintiff argues the duration of Defendants' infringement weighs in favor of enhanced damages. Defendants respond that this factor supports enhanced damages "only where the defendant continues to infringe after a judicial finding of infringement." (Doc. #524, p. 20.) Defendants also contend in part that they

---

[6] Defendants also note that, at the summary judgment stage, the Court found some of their non-infringement positions persuasive. But the Court's summary judgment orders were entered prior to trial, and without the full presentation of live witnesses and all other evidence.

9

"only learned of the asserted '436 and '812 patents within days of Provisur bringing this action." (Doc. #524, p. 21.)

Upon review, the Court finds that the duration of Defendants' conduct supports enhanced damages. As an initial matter, the Court rejects Defendants' legal argument that this factor is limited to an infringer's post-judgment conduct. "Although a handful of district courts have interpreted the sixth . . . factor in this narrow manner, this interpretation remains a minority view." *EagleView Tech., Inc. v. Xactware Sol., Inc.*, 522 F. Supp. 3d 40, 53 (D.N.J. 2021). Post-judgment conduct may be relevant, but such conduct is not exclusive. *See id.*

The duration of misconduct begins when the infringer first learned of the patent. *Milwaukee Electric Tool Corp. v. Snap-On Inc.*, 288 F. Supp. 3d 872, 903 (E.D. Wisc. 2017). Plaintiff argues—and the Court agrees—that Defendants had been aware of the '936 patent since at least March 17, 2014. (Doc. #498, p. 20.) Plaintiff has also shown that Defendants "learned of the '436 and '812 patent applications—which the jury found to be substantially identical to the issued patents—on April 30, 2019 and November 21, 2018, respectively." (Doc. #534, p. 12.) Because Defendants' infringement continued into 2021 and 2022, the duration of Defendants' misconduct weighs in favor of enhanced damages. *See Apple Inc. v. Samsung Elec. Co., Ltd.*, 258 F. Supp. 3d 1013, 1015 (N.D. Cal. 2017) (finding that a "10 to 12 month period of infringement [may] weigh[] in favor of enhanced damages"); *I-Flow Corp. v. Apex Med. Tech., Inc.*, No. 07cv1200 DMS (NLS), 2010 WL 114005, at *3 (S.D. Cal. Jan. 6, 2010) ("Six years of misconduct is substantial, and thus this factor weighs in favor of an award of enhanced damages.")

## 7. Whether Defendants Engaged in Remedial Action

With respect to factor seven, Plaintiff argues that Defendants failed to take any remedial action. Instead, Defendants "continued selling infringing products through 2022 while, simultaneously, hiding evidence of infringement and willfulness." (Doc. #498, p. 21.) Defendants respond that they "took no remedial action because [they] saw no need." (Doc. #524, p. 21.)

Upon review, the Court finds this factor weighs in favor of enhanced damages. Despite significant evidence supporting Plaintiff's validity and infringement arguments, Defendants concede they took no remedial action. Defendants "readily admit[] here that [they] did not attempt to design-around the patents in this case because [they] saw no possibility of infringing any valid Provisur claim." (Doc. #524, p. 22.) Based on these concessions, and the record as a whole, Defendants' failure to engage in remedial action supports an award of enhanced damages.

## 8. Whether Defendants Had Motivation to Harm Plaintiff

The eighth factor considers whether the infringer was motivated to harm the plaintiff. *Read Corp.*, 970 F.2d at 827. In general, mere competition between the parties does not show a motivation to harm. *Sunoco Partners Mktg. & Terminals L.P. v. Powder Springs Logistics, LLC*, No. 17-1390-RGA, 2022 WL 3973499, at *2 (D. Del. Aug. 31, 2022) ("[O]rdinary competition driven by a profit motive does not constitute . . . motivation to harm."). However, "infringement by a direct competitor in a small market mitigates in favor of enhanced damages." *Jiaxing Super Lighting*, 2022 WL 3371630, at *9 (alterations and citation omitted). This is particularly true when the competition is "fierce," and the parties are "rivals." *Id.*

Plaintiff argues this factor weighs in favor of enhanced damages because the parties are "fierce competitors" and "two of the few participants in the industrial food slicing equipment

11

market." (Doc. #498, p. 22.)  Defendants contend that the parties are garden-variety competitors, and that Plaintiff has not produced evidence sufficient to support this factor.

Upon review, the Court finds that factor eight weighs in favor of Plaintiff.  The parties agree they are competitors in the relatively small industrial food slicing market.  In addition, and as explained by Plaintiff:

> The jury saw evidence of Weber wanting to 'beat the shit out of Formax.'  Mr. McCarroll struggled to identify the boundary for competition, saying that Weber would not 'hold someone hostage.'  The trial evidence showed Weber instructing employees to take 'whatever it takes' and '[n]othing's off limits' approaches to competing with Provisur, and Mr. McCarroll hiring a former Provisur employee and asking him for a copy of Provisur's confidential customer list.

(Doc. #498, p. 22) (citations omitted).  Based on this evidence, along with evidence showing willful infringement, Plaintiff has shown that Defendants had a motivation to harm.  Therefore, this factor weighs in favor of enhanced damages.

### 9. Whether Defendants Attempted to Conceal their Misconduct

For the final factor, Plaintiff argues that Defendants concealed important evidence and witnesses during discovery and at trial.  Defendants respond that "[t]here is no evidence—and indeed no allegation—that Weber concealed its allegedly infringing machines from Provisur." (Doc. #524, p. 23.)  Defendants argue that Plaintiff's "other arguments continue its misrepresentations of the discovery record and the parties' discovery disputes." (Doc. #524, pp. 23-24.)

Upon review, the Court finds this factor is neutral.  As discussed above, both parties have accused each other of misconduct throughout this litigation.  Both parties have filed motions for sanctions, both motions were denied.  Plaintiff has failed to show that Defendants attempted to

conceal misconduct in such a way that would support enhanced damages. Consequently, this factor is neutral.

### IV. This Case Warrants Enhanced Damages of Double the Jury's Verdict

As discussed above, factors 1, 2, 4, 5, 6, 7, and 8 weigh in favor of enhanced damages. Based on those factors—and after reviewing the entire record—the Court finds that Defendants' conduct was an "egregious case[] of misconduct beyond typical infringement." *Halo Elec.*, 579 U.S. at 103-04, 110. As explained by Plaintiff, enhanced damages are warranted because Defendants' "systemic misconduct transcended that of a garden-variety infringer." (Doc. #534, p. 5.)

Plaintiff argues that triple damages should be awarded because all nine factors weigh in its favor. However, the Court found that factors 3 and 9 are neutral. In addition, Defendants were not completely defeated at trial; the jury found non-infringement of the '089 patent.

Although enhanced damages are warranted, the circumstances of this case "are not so clear to justify treble damages either." *Probatter Sports, LLC v. Sports Tutor, Inc.*, 586 F. Supp. 3d 80, 120 (D. Conn. 2022). The Court therefore exercises its discretion and awards Plaintiff enhanced damages of double the jury's verdict. *See Halo Elec.*, 579 U.S. at 104 (recognizing that the district court "enjoy[s] discretion in deciding whether to award enhanced damages, and in what amount"); *Del Mar Avionics, Inc. v. Quinton Instr. Co.*, 836 F.2d 1320, 1329 (Fed. Cir. 1987) (holding no abuse of discretion "in doubling the damage award" and stating that "[a] trial court's exercise of discretion in such circumstances is informed by the court's familiarity with the matter in litigation and the interest of justice").

13

**V. CONCLUSION**

Accordingly, it is hereby ORDERED that Plaintiff's Motion for Willful Infringement Enhanced Damages (Doc. #497) is GRANTED. Plaintiff is awarded enhanced damages of double the jury's verdict on the '436, '812, and '936 patents.

**IT IS SO ORDERED.**

/s/ Stephen R. Bough
STEPHEN R. BOUGH
UNITED STATES DISTRICT JUDGE

Dated: January 9, 2023

IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
ST. JOSEPH DIVISION

| | | |
|---|---|---|
| PROVISUR TECHNOLOGIES, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 19-cv-06021-SRB |
| | ) | |
| WEBER, INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

Before the Court is Plaintiff Provisur Technologies, Inc.'s ("Plaintiff" or "Provisur")

Motion for Supplemental Damages, Pre- and Post-Judgment Interest, and an Ongoing Royalty.

(Doc. #499.)  For the reasons set forth below, the motion is GRANTED IN PART and DENIED

IN PART.

### I.  FACTUAL BACKGROUND

The Court's prior Orders and the parties' briefs have exhaustively discussed the facts of

this case.  This Order assumes familiarity with the facts and law applicable to all claims and

defenses.  Only those facts and issues necessary to resolve the pending motion are discussed

herein.  The following is a brief factual summary.  Additional facts relevant to the pending

motion are set forth in Section III.

Plaintiff designs, makes, and sells commercial food processing technologies.  Plaintiff

owns four patents that are at issue in this case (the "Patents-at-Issue"):  United States Patent

Nos. 6,997,089 ("the '089 Patent"), 7,065,936 ("the '936 Patent"), 10,625,436 ("the '436

Patent") and 10,639,812 ("the '812 Patent").  Defendants Weber, Inc., Textor Inc., Weber

Maschinenbau GmbH Breidenbach, Textor Maschinenbau GmbH, and Weber Maschinenbau

GmbH Neubrandenburg ("Defendants" or "Weber") design, manufacture, and sell commercial food processing machinery to their customers.[1]

On February 22, 2019, Plaintiff filed this lawsuit against Defendants for patent infringement.[2] Plaintiff alleged that Defendants manufacture and sell commercial slicing machines that infringe the Patents-at-Issue. The machinery at issue generally involves a high-speed industrial slicing and packaging machine comprised of a series of belts, conveyors, scanners, sensors, and packaging parts. Bulk food items—such as loaves or blocks of meat or cheese, referred to generally as food articles or products—are loaded into the slicer, sliced, and transported down the line for additional processing, sorting, weighing, and packaging. The Patents-at-Issue involve different mechanical components that play distinct roles in this overall conveyor and packaging system.

On October 14, 2022, a nine-day jury trial commenced in this case. On October 28, 2022, the jury returned its verdict. The jury found that Defendants infringed all nine asserted claims of the '936, '436, and '812 patents. The jury found that Defendants did not infringe the '089 patent. The jury also found that the Patents-at-Issue were valid and that Defendants willfully infringed the '936, '436, and '812 patents. The jury awarded Plaintiff $3,013,068 for Defendants' infringement of the '936 patent, $3,747,046.50 for Defendants' infringement of the '436 patent, and $3,747,046.50 for Defendants' infringement of the '812 patent. Therefore, the

---

[1] Defendants are interrelated corporate entities and subsidiaries. The Court acknowledges the differences between these entities. However, for purposes of clarity and consistency, this Order collectively refers to "Defendants" or "Weber."

[2] Plaintiff filed a subsequent lawsuit against Defendants for patent infringement, Case No. 20-cv-06069-SRB. In an Order dated July 28, 2022, the Court consolidated the two cases and ordered that all future filings should be made in Case No. 19-cv-06021-SRB.

total damages award in favor of Plaintiff was $10,507,161.  On October 28, 2022, the Court entered judgment in favor of Plaintiff.

Plaintiff now moves for supplemental damages, pre- and post-judgment interest, and an ongoing royalty.  Defendants oppose the motion.  The parties' arguments are addressed below.

## II.  DISCUSSION

### A.  Supplemental Damages

Under 35 U.S.C. § 284, "[w]hen the damages are not found by a jury, the court shall assess them." 35 U.S.C. § 284.  In general, a court may award supplemental damages for periods of infringement that were not considered by the jury.  *See Finjan, Inc. v. Secure Computing Corp.*, 626 F.3d 1197, 1212-13 (Fed. Cir. 2010); *Itron, Inc. v. Benghiat*, No. Civ. 99–501 (JRT/FLN), 2003 WL 22037710, at *15-16 (D. Minn. Aug. 29, 2003).

Here, Plaintiff moves for an award of supplemental damages.  In particular, Plaintiff argues that "Defendants did not produce records of any product sales or offers of sale after June 6, 2022," and that "[i]f Defendants made infringing sales or offers of sale after June 6, 2022, the jury was unable to compensate Provisur."  (Doc. #500, p. 9.)[3]  As a result, Plaintiff requests an order requiring "Defendants to provide a Supplemental Damages Accounting," and supplemental damages "[t]o the extent additional infringing sales or offers of sale exist."  (Doc. #500, p. 9.)

Upon review, the Court finds that Plaintiff is not entitled to a supplemental damages accounting or supplemental damages between June 6, 2022, and the judgment entered on October 28, 2022.  The Court agrees with Defendants that:

> Provisur failed to present this [damages] argument during trial and tellingly does not point to any trial testimony in its motion to justify the award of supplemental damages.  Instead, Provisur's representations to the jury, the jury instructions, and the verdict form all told the jury that its award would constitute full damages.

---

[3] All page numbers refer to the pagination automatically generated by CM/ECF.

3

(Doc. #527, p. 7.)  Supplemental damages are not warranted under these circumstances.  *See ABT Sys., LLC v. Emerson Elec. Co.*, No. 4:11CV00374 AGF, 2013 WL 3243372, at * 2 (E.D. Mo. June 26, 2013) ("Plaintiffs had ample opportunity prior to trial to seek relief with regard to any tardy disclosures.  If Defendant's sales evidence was not clear, the time to clarify it was before or even during trial, not after the jury returned its verdict.")

Consequently, Plaintiff's request for a supplemental damages accounting and supplemental damages is denied.

### B. Pre-Judgment Interest

Under 35 U.S.C. § 284, "the court shall award the claimant damages adequate to compensate for the infringement, . . . together with interest and costs as fixed by the court." 35 U.S.C. § 284.  "The award of pre-judgment interest is the rule, not the exception."  *Energy Transp. Grp., Inc. v. William Demant Holding A/S*, 697 F.3d 1342, 1358  (Fed. Cir. 2012).  As such, "prejudgment interest should be awarded under § 284 absent some justification for withholding such an award."  *GM Corp. v. Devex Corp.*, 461 U.S. 648, 657 (1983).

In this case, the parties raise three primary issues relating to pre-judgment interest.  Those issues are: (1) whether pre-judgment interest should be awarded; (2) the pre-judgment interest time period; and (3) the pre-judgment interest rate, and whether it should be compounded quarterly or annually.  Each issue is addressed in turn.

First, Plaintiff argues an award of pre-judgment interest is warranted to compensate it for "the foregone use of money between Defendants' infringement and the date of judgment." (Doc. #500, p. 12.)  Defendants oppose any award of pre-judgment interest.  Defendants argue the "jury's damages award was more than 'generous enough' to compensate Provisur without any prejudgment interest."  (Doc. #527, p. 8.)  Defendants also argue that pre-judgment interest

should not be awarded on the '936 patent because "Plaintiff unduly delayed in asserting the '936 patent against Weber's accused SmartLoader." (Doc. #527, p. 10.)

Upon review, the Court finds that Plaintiff is entitled to pre-judgment interest under § 284. Pre-judgment interest is warranted to adequately compensate Plaintiff for the foregone use of royalty payments and to make it whole for Defendants' infringement. The Court rejects Defendants' argument that pre-judgment interest should be denied for the '936 patent because Plaintiff delayed filing this lawsuit. Any delay in bringing suit based on "[l]aches cannot be interposed as a defense against damages where the infringement occurred within the [statute of limitations]." *SCA Hygiene Prods. Aktiebolag v. First Quality Baby Prods., LLC*, 580 U.S. 328, 346 (2017). Defendants have also failed to show that Plaintiff unreasonably delayed filing suit as a "litigation tactic" or to "pad its bottom line." (Doc. #533, p. 12.) Under the facts of this case, the Court finds no exceptional circumstances or justification for denying pre-judgment interest. *GM Corp.*, 461 U.S. at 657; *Sensonics, Inc. v. Aerosonic Corp.*, 81 F.3d 1566, 1574 (Fed. Cir. 1996).

Second, the parties dispute when Plaintiff's pre-judgment interest should begin to run. "Prejudgment interest runs from the earliest date of infringement for any patent issued at the time of the hypothetical negotiation." *Comcast IP Holdings I LLC v. Sprint Commc'ns Co., L.P.*, 850 F.3d 1302, 1315 (Fed. Cir. 2017). Upon review of the record, Plaintiff has shown that November 9, 2015 is the earliest date of infringement for the '936 patent, and that August 29, 2019 is the earliest date of infringement for the '436 and '812 patents. (Doc. #500-1) (first infringing sale regarding the '936 patent); (Doc. #500-5) (showing first infringing sale regarding the '436 and '812 patents. Consequently, pre-judgment interest is awarded from November 9, 2015 through

October 28, 2022 for the '936 patent.  Pre-judgment interest is awarded from August 29, 2019 through October 28, 2022 for the '436 and '812 patents.

Third, the parties dispute the applicable pre-judgment interest rate and whether pre-judgment interest should be compounded quarterly or annually.  "The rate of prejudgment interest and whether it should be compounded or uncompounded are matters left largely to the discretion of the district court."  *Bio-Rad Labs., Inc. v. Nicolet Instrument Corp.*, 807 F.2d 964, 969 (Fed. Cir. 1986).  Here, Plaintiff requests the prime rate compounded quarterly.  Defendants argue pre-judgment interest should be based on the average 52-week U.S. Treasure Bill ("T-Bill") rate compounded annually.

Upon review of the parties' arguments and applicable law, the Court agrees with Plaintiff.  Courts have recognized that "the prime rate, compounded quarterly, is a conservative, middle-of-the road approach that takes into account normal market fluctuations."  *NTP, Inc. v. Research in Motion, Ltd.*, 270 F. Supp. 2d 751, 763 (E.D. Va. 2003); *see also Lam, Inc. v. Johns-Manville Corp.*, 718 F.2d 1056, 1066 (Fed. Cir. 1983) (finding no abuse of discretion in pre-judgment interest rate at or above prime).  Under the facts of this case, the Court finds the prime rate—compounded quarterly—is warranted "to ensure that the patent owner is placed in as good a position as he would have been had the infringer entered into a reasonable royalty agreement."  *Bio-Rad Labs.*, 807 F.2d at 969 (Fed. Cir. 1986).

Defendants' arguments to the contrary are not persuasive.  In part, Defendants contend the prime rate is not warranted because Plaintiff failed to show it "borrowed any money to cover 'lost funds' or . . . would have invested at a better rate than the T-Bill rate[.]"  (Doc. #527, p. 13.) But the Federal Circuit does not require "an 'affirmative demonstration,' i.e., proof of borrowing at or above prime, for a plaintiff to be entitled to an award of prejudgment interest at the prime

rate." *Studiengesellschaft Kohle, m.b.H. v. Dart Indus., Inc.*, 862 F.2d 1564, 1579-80 (Fed. Cir. 1988). Consequently, the Court will award Plaintiff pre-judgment interest at the prime rate compounded quarterly.

Based on the foregoing rulings, the Court must determine the amount of pre-judgment interest. Plaintiff has submitted a declaration from Julie Davis that calculates pre-judgment interest. Ms. Davis is a Managing Director at Stout Risius Ross, LLC, and she provides audit and financial consulting services.

Ms. Davis calculated pre-judgment interest based on "the quarterly average prime rate, compounded quarterly and using a mid-period convention beginning to accrue on November 9, 2015 for the '936 patent and August 29, 2019 for the '436 and '812 patents." (Doc. #500-4, p. 4 ¶ 9.) Ms. Davis calculated pre-judgment interest as "$356,653 through October 28, 2022 for the '936 patent and $426,425 through October 28, 2022 for the '436 and '812 patents, for a total of $783,078 through October 28, 2022." (Doc. #500-4, p. 4 ¶ 10.) Ms. Davis's methodology and calculations are in accordance with the rulings set forth above.

Consequently, the Court awards Plaintiff pre-judgment interest as follows: $356,653 through October 28, 2022 for the '936 patent, and $426,425 through October 28, 2022 for the '436 and '812 patents, for a total of $783,078 through October 28, 2022.[4] The total award of $783,078 represents pre-judgment interest at the prime rate, compounded quarterly on the $10,507,161 in damages awarded by the jury.

---

[4] Plaintiff also requests pre-judgment interest for any supplemental infringing sales from June 6, 2022 through October 28, 2022. For the reasons set forth above, that request is denied.

7

### C. Post-Judgment Interest

Under 28 U.S.C. § 1961(a), post-judgment interest "shall be allowed on any money judgment in a civil case recovered in a district court." 28 U.S.C. § 1961(a). Post-judgment interest is calculated "from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield . . . for the calendar week preceding the date of the judgment." *Id.* Post-judgment interest is computed daily and compounded annually. 28 U.S.C. § 1961(b).

Here, Plaintiff requests that "upon the Court's resolution of pre-judgment interest, enhanced damages, and attorneys' fees and costs . . . the Court award post-judgment interest on the total money judgment—inclusive of pre-judgment interest and enhanced damages—at the rate provided by 28 U.S.C. § 1961." (Doc. #500, p. 17.) Defendants state that "if the Court enters final judgment for Provisur, Weber does not dispute that the Court should include post-judgment interest at the statutory rate to be determined at a later date." (Doc. #527, p. 17.)

Pursuant to § 1961, and based on the parties' briefs, Plaintiff's request for post-judgment interest is granted. Plaintiff is awarded post-judgment interest on the total money judgment ultimately entered in this case—inclusive of pre-judgment interest and enhanced damages—at the rate provided by 28 U.S.C. § 1961.[5]

### D. Royalties for Future Sales of Infringing Products

Upon a finding of infringement, a court may award ongoing royalties to compensate the plaintiff for continuing infringement. *ActiveVideo Networks, Inc. v. Verizon Commc'ns, Inc.*, 694 F.3d 1312, 1343 (Fed. Cir. 2012). To determine the ongoing royalty rate, a court may

---

[5] On November 4, 2022, the Court granted Plaintiff's motion for an extension of time to file a motion for attorneys' fees and costs. Pursuant to that extension, Plaintiff's motion for attorneys' fees and costs is due twenty-one days after the Court has resolved all merits-based post-trial motions.

consider the amount of damages awarded by the jury, any change in the parties' bargaining positions based on the finding of infringement, and "any other post-verdict factor that would impact what a hypothetical negotiation would look like" post-verdict.  *XY, LLC v. Trans Ova Genetics, LP*, 890 F.3d 1282, 1297 (Fed. Cir. 2018) (quotation marks omitted); *Amado v. Microsoft Corp.*, 517 F.3d 1353, 1360 (Fed. Cir. 2008).

Here, Plaintiff requests an ongoing royalty of 36% for the entire line of any post-judgment infringing sales and offers of sale that Defendants make after the judgment date for the '436 and '812 patents.[6]  The '436 patent expires on May 2, 2031, and the '812 patent expires on September 6, 2031.  In addition, "[t]o ensure Defendants do not continue infringing these patents, [Plaintiff] requests that the Court order Defendants to provide [Plaintiff], on an 'Attorneys' Eyes Only' basis, a quarterly accounting until the expiration of the '436 and '812 patents of all sales, purchase orders, invoices, CAD files, product manuals, factory order confirmations relating to any line that includes a Weber Slicer S6, 905, 906, and 908 made, used, offered for sale, sold, or imported into the United States."  (Doc. #500, pp. 19-20.)

In response, Defendants argue that Plaintiff is not entitled to an ongoing royalty. Defendants contend such relief is not warranted because "Provisur has never requested an injunction—nor would one be proper—because Provisur does not practice the asserted patents and Provisur only sought monetary damages.  The parties have not negotiated or discussed a post-trial royalty amount, different than the cases relied upon by Provisur."  (Doc. #527, p. 18.) Defendants also argue that Plaintiff's proposed royalty rate of 36% is excessive and "represents a rate three times higher than the 12% rate awarded by the jury."  (Doc. #527, p. 18.)  Finally, Defendants contend they should not be compelled to produce "a large volume of documentation

---

[6] The '936 Patent expired in December 2022, and Plaintiff does not seek an ongoing royalty for that patent.

such as highly-confidential CAD files and voluminous product manuals." (Doc. #527, p. 20.) Instead, Defendants state that if the Court awards an ongoing royalty, it will "provide an accounting for any future sales" of infringing products. (Doc. #527, p. 20.)

Upon review of the record and the parties' arguments, the Court finds that Plaintiff should receive an ongoing royalty to account for any continued infringement. *Telcordia Tech., Inc. v. Cisco Sys., Inc.*, 612 F.3d 1365, 1379 (Fed. Cir. 2010) (recognizing that an ongoing royalty is appropriate if the plaintiff has not been compensated for ongoing infringement). An ongoing royalty is appropriate in lieu of additional litigation between the parties and/or an injunction in this case. *Apple, Inc. v. Samsung Elec. Co.*, Case No.: 12–CV–00630–LHK, 2014 WL 6687122, at * 9 (N.D. Cal. Nov. 25, 2014) ("Multiple district courts have . . . awarded ongoing royalties in lieu of an injunction.").

With respect to the royalty rate, the Court agrees with Defendants that "the maximum ongoing royalty rate, if any, should be the 12% rate determines by the jury." (Doc. #527, p. 19 n.5). In particular, the Court finds that a 12% ongoing royalty rate is in accordance with the jury's verdict and all other circumstances of this case. *Apple, Inc.*, 2014 WL 6687122, at *14 ("Generally, the jury's damages award is a starting point for evaluating ongoing royalties."). Plaintiff has failed to show that a 36% ongoing royalty rate is warranted in light of the jury's verdict, or in light of any other "post-verdict factor." *XY, LLC*, 890 F.3d at 1297. The 12% ongoing royalty shall apply to the entire line of any infringing sales and offers of sale by Defendants of a line that includes a Weber Slicer S6, 905, 906, and 908, and which occurs post-judgment until the expiration of the '436 patent (May 2, 2031) and the '812 patent (September 6, 2031).

Finally, the Court rejects Plaintiff's request that Defendants provide an ongoing production of technical documents. Instead, Defendants shall provide Plaintiff an accounting for royalties the fifteenth day after the close of each calendar quarter and shall make payment within 30 days after the close of each calendar quarter. *See Broadcom Corp. v. Emulex Corp.*, SACV 09–1058 JVS (ANx), 2012 WL 13036855, at *9 (C.D. Cal. Mar. 16, 2012) (ordering the same relief for ongoing royalties).

### III. CONCLUSION

Accordingly, it is hereby ORDERED that Plaintiff's Motion for Supplemental Damages, Pre- and Post-Judgment Interest, and an Ongoing Royalty (Doc. #499) is **GRANTED IN PART** and **DENIED IN PART**.

The motion is **GRANTED** as follows:

(1) Plaintiff is awarded the following in pre-judgment interest: $356,653 through October 28, 2022 for the '936 patent, and $426,425 through October 28, 2022 for the '436 and '812 patents, for a total of $783,078 through October 28, 2022; and

(2) Plaintiff is awarded post-judgment interest on the total money judgment ultimately entered in this case—inclusive of pre-judgment interest and enhanced damages—at the rate provided by 28 U.S.C. § 1961; and

(3) Plaintiff is awarded a 12% ongoing royalty rate for the '436 and '812 patents. The 12% ongoing royalty applies to the entire line of any infringing sales and offers of sale by Defendants of a line that includes a Weber Slicer S6, 905, 906, and 908, and which occurs post-judgment until the expiration of the '436 patent (May 2, 2031) and the '812 patent (September 6, 2031); and

11

(4)  With respect to any ongoing royalties, Defendants shall provide Plaintiff an accounting for royalties the fifteenth day after the close of each calendar quarter and shall make payment within 30 days after the close of each calendar quarter.

The motion is **DENIED** as follows:

(1)  Plaintiff is not awarded a supplemental damages accounting or supplemental damages for the period between June 6, 2022 and October 28, 2022; and

(2) Other the accounting ordered above, Defendants are not required to produce an ongoing production of technical documents to Plaintiff; and

(3) To the extent Plaintiff requests relief not expressly granted herein.

**IT IS SO ORDERED.**

/s/ Stephen R. Bough_____
STEPHEN R. BOUGH
UNITED STATES DISTRICT JUDGE

Dated:  January 9, 2023

# Exhibit C



US007065936B2

(12) **United States Patent**
Lindee et al.

(10) Patent No.: **US 7,065,936 B2**
(45) Date of Patent: **Jun. 27, 2006**

(54) **FILL AND PACKAGING APPARATUS**

(75) Inventors: **Scott A. Lindee**, Mokena, IL (US);
**Glenn Sandberg**, New Lenox, IL (US);
**James E. Pasek**, Tinley Park, IL (US)

(73) Assignee: **Formax, Inc.**, Mokena, IL (US)

( * ) Notice: Subject to any disclaimer, the term of this
patent is extended or adjusted under 35
U.S.C. 154(b) by 0 days.

(21) Appl. No.: **10/323,618**

(22) Filed: **Dec. 18, 2002**

(65) **Prior Publication Data**
US 2004/0118084 A1    Jun. 24, 2004

(51) **Int. Cl.**
**B65B 3/04**    (2006.01)

(52) **U.S. Cl.** ........................... **53/251**; 53/247; 53/252;
53/258; 53/260; 53/517

(58) **Field of Classification Search** ................. 53/527,
53/539, 247, 540, 251, 252, 158, 543, 246,
53/257, 258, 259, 260, 261
See application file for complete search history.

(56) **References Cited**

U.S. PATENT DOCUMENTS

| | | | | |
|---|---|---|---|---|
| 3,080,033 | A | * | 3/1963 | Graeme et al. ............... 193/23 |
| 3,354,613 | A | * | 11/1967 | Anderson et al. ............. 53/251 |
| 3,475,184 | A | * | 10/1969 | La Mers et al. .............. 53/440 |
| 3,821,913 | A | * | 7/1974 | Bajcar et al. .................. 83/92 |
| 3,846,958 | A | * | 11/1974 | Divan ......................... 53/502 |
| 3,932,982 | A | * | 1/1976 | Klapp ......................... 53/244 |
| 4,018,326 | A | * | 4/1977 | Hardy ..................... 198/418.9 |
| 4,051,652 | A | * | 10/1977 | Hirano et al. ................ 57/270 |
| 4,057,951 | A | | 11/1977 | Schneider |
| 4,233,799 | A | * | 11/1980 | Caille ......................... 53/154 |
| 4,236,855 | A | | 12/1980 | Wagner et al. |
| 4,416,103 | A | | 11/1983 | Ewer et al. |
| 4,474,092 | A | | 10/1984 | Mally et al. |
| 4,478,024 | A | | 10/1984 | Vedvik et al. |
| 4,597,704 | A | | 7/1986 | Vedvik et al. |
| 4,645,400 | A | | 2/1987 | Mally et al. |
| 4,648,237 | A | | 3/1987 | Total |
| 4,667,953 | A | * | 5/1987 | Hirakawa et al. ........... 271/280 |
| 4,709,535 | A | | 12/1987 | Mahaffy et al. |
| 4,960,198 | A | * | 10/1990 | Hogenkamp ............. 198/419.2 |

(Continued)

FOREIGN PATENT DOCUMENTS

EP    1 243 386 A2    9/2002

*Primary Examiner*—Stephen F. Gerrity
*Assistant Examiner*—Thanh Truong
(74) *Attorney, Agent, or Firm*—The Law Office of Randall
T. Erickson, P.C.

(57) **ABSTRACT**

An apparatus is provided for filling food product drafts into
packages. A supply of open top containers are arranged in
rows and carried by an elongated web of film and are
movable by the web into a fill station. A shuttle conveyor has
a retractable and extendable conveying surface, the convey-
ing surface arranged above the fill station and having an end
region extendable to a position arranged to deposit food
product drafts into the containers of the first row by circula-
tion of the conveying surface. The conveying surface is
retractable, or extendable, to reposition the end to a position
arranged to deposit food product drafts carried on the
conveying surface into the containers of the second row and
each subsequent row. A tamping apparatus is carried by the
conveyor to retract or extend with the conveying surface
end. The tamping apparatus has vertically reciprocal tamp-
ing elements arranged above the respective row being filled
with food product drafts, the tamping elements actuated to
press the food product drafts into the containers.

**21 Claims, 3 Drawing Sheets**



**Appx100**

U.S. PATENT DOCUMENTS

4,984,677 A  *  1/1991  Prakken ................... 198/418.6
5,051,268 A  *  9/1991  Mally ......................... 426/420
5,054,266 A    10/1991  Mello et al.
5,095,684 A  *  3/1992  Walker et al. ................ 53/443

5,327,704 A    7/1994  Hoekzema et al.
5,692,362 A  *  12/1997  Hoyland ...................... 53/473
5,720,149 A  *  2/1998  Stimpfl ........................ 53/244
6,622,848 B1 *  9/2003  Lattimer et al. ......... 198/418.9

* cited by examiner



*FIG. 1*

Case 5:19-cv-06021-SRB   Document 1-3   Filed 02/22/19   Page 4 of 11

Appx102

*FIG. 2*



Case 5:19-cv-06021-SRB   Document 1-3   Filed 02/22/19   Page 5 of 11

*FIG. 3*



Case 5:19-cv-06021-SRB Document 1-3 Filed 02/22/19 Page 6 of 11

1

**FILL AND PACKAGING APPARATUS**

TECHNICAL FIELD OF THE INVENTION

The invention relates to fill and packaging apparatus. Particularly, the invention relates to an apparatus that slices and packages food products.

BACKGROUND OF THE INVENTION

In a typical fill and package apparatus for sliced food products, a slicer delivers groups of slices or "drafts" onto a conveyor. The drafts are conveyed spaced-apart in a stream to a staging conveyor where the stream is converted to lateral rows of drafts. Such a staging conveyor is described in U.S. Pat. No. 5,810,149 and is commercially available as the A*180 Autoloader from Formax, Inc. of Mokena, Ill., U.S.A.

The rows of drafts are delivered by the staging conveyor to a packaging machine where the rows are deposited sequentially into pockets formed in a moving lower web of film. The rows are deposited while the film is advancing to a dwell position. At the dwell position, the packaging machine stops the motion of the lower web. During the dwell time period, at a downstream sealing station, downstream according to a direction of movement of the lower web of film, the packaging machine seals an upper web of film to the lower web of film after the drafts are placed in the pockets, and then trims the completed packages from the webs. Upstream of the sealing station, upstream according to a direction of movement of the lower web of film, the packaging machine also forms another group of empty pockets during the dwell time period. After the dwell time period is over the lower web of film is advanced and new drafts are deposited into new pockets as the lower web advances to a new dwell position. The dwell time period is longer than the film advance time period for a typical operating cycle, approximately 80% dwell time period compared to 20% film advance time period.

Loading stacks or drafts into the pockets during the advance time period is a time efficient way to load the pockets. Once the row of drafts is staged up onto the end of the staging conveyor, the advancement of the staging conveyor is synchronized with the packaging machine film advance to deposit the drafts into the pockets row-by-row.

However, the present inventors have recognized that "fluff" or "bunch" type products sometimes need to be re-collected correctly in the pockets of the lower web to ensure a neat and compact filling. These products are thin sliced "piles" that resemble hand produced deli portions. They do not "stage" well, as the piles produced by the slicer can tend to elongate during transportation on the conveyors from the slicing machine to the packaging machine.

The present inventors have recognized that it would be desirable to provide a filling and packaging apparatus that neatly and economically fills and packages drafts of thin sliced food product.

SUMMARY OF THE INVENTION

The present invention provides an apparatus that effectively "tightens-up" drafts of thin-sliced piles of food product to fit neatly into packages.

According to the invention, an apparatus is provided for filling food product drafts into packages, comprising:

a supply of open top containers arranged in rows and carried by an elongated web of film and movable by the web into a fill station; and

2

a shuttle conveyor having a retractable and extendable conveying surface, the conveying surface arranged above the fill station and having an end region extendable to a position arranged to deposit the food product drafts into the containers of the first row, the conveying surface then being retractable to reposition the end region to a position arranged to deposit food product drafts carried on the conveying surface into the containers of the second row.

The apparatus of the invention can also include a tamping apparatus carried by the conveyor to retract or extend with the conveying surface end region and having vertically reciprocal tamping elements arranged above the respective first or second row being filled with food product drafts, particularly drafts in the form of bunches, groups or piles of food product. The tamping elements are configured to travel downward to press the food product drafts into the containers.

The apparatus can further comprise a rotatable slicing blade, a conveying assembly, and a support for holding a loaf in a cutting path of the rotatable slicing blade. The rotatable slicing blade is arranged to rotate in the cutting path to slice drafts from the loaf, the drafts being plural slices formed in a pile on the conveying assembly. The conveying assembly includes a staging conveyor that includes a row staging conveyor that forms the piles into rows and transports the rows toward the conveying surface of the shuttle conveyor. The staging conveyor can include one or more in line conveyors for transporting the rows to the shuttle conveyor.

The shuttle conveyor can be configured to fill a group of rows of containers while the web is stationary in the fill station. The shuttle conveyor is configured to advance from a retracted position where the last row of the group is filled to an extended position toward a downstream end of the fill station, simultaneously with advancement of the web to locate a succeeding group of rows of containers in the fill station.

According to an exemplary embodiment of the invention, rows of pockets formed in a web of film are spaced below a shuttle conveyor. During a dwell time period of the packaging machine, when the web of film is stopped, at a fill station, the first row of pockets is filled with the drafts and the drafts are tamped into the pockets. The second row of pockets is then filled and tamped. The steps are repeated, until all the rows in the fill station are filled and tamped during the dwell time period. When the dwell time period is over, the web of film is advanced such that new rows of empty pockets are presented at the fill station.

According to an exemplary embodiment of the invention, the shuttle conveyor is used to fill the first row of pockets with drafts and then retracted to fill the second row of pockets with drafts, and then retracted to fill each subsequent row of pockets with drafts until all of the rows of the group are filled. After the dwell time period is over, at the same time the packaging film advances to a new dwell position, the shuttle conveyor will also advance in order to repeat the cycle for the next group of pocket rows.

Alternatively, the shuttle conveyor could fill the groups of rows in a reverse order to that just described, wherein the first filled row of pockets is the row furthest upstream in the web moving direction, and the shuttle conveyor advances to fill the second row, then advances again to fill the third row, etc. After the group of rows is filled during the dwell period, the web of film advances to present an empty new group of rows of pockets and the shuttle conveyor retracts to be in a starting position to fill the new first row.

Advantageously, to assist in tightening up the drafts in the pocket, the shuttle conveyor is arranged to deposit the drafts into the pocket in an almost vertical attitude.

According to the exemplary embodiment of the invention, each group of pockets includes four rows by four lanes for 16 pockets. Each group of pockets is filled and packaged per dwell cycle of the packaging machine. At 6 cycles per minute (96 packages per minute), there is approximately 8 seconds to fill the pockets (2 seconds to fill and tamp each row) and 2 seconds for the shuttle to return and be ready for the next group of 4 rows of 4 pockets.

Numerous other advantages and features of the present invention will be become readily apparent from the following detailed description of the invention and the embodiments thereof, from the claims and from the accompanying drawings.

## BRIEF DESCRIPTION OF THE DRAWINGS

FIG. 1 is a schematic elevational view of a slicing and packaging line that incorporates the invention;

FIG. 2 is an enlarged, schematic elevational view from FIG. 1 of a pocket-filling apparatus of the invention in a first stage of operation; and

FIG. 3 is an enlarged, schematic elevational view of the pocket-filling apparatus of FIG. 2 in a second stage of operation.

## DETAILED DESCRIPTION OF THE PREFERRED EMBODIMENTS

While this invention is susceptible of embodiment in many different forms, there are shown in the drawings, and will be described herein in detail, specific embodiments thereof with the understanding that the present disclosure is to be considered as an exemplification of the principles of the invention and is not intended to limit the invention to the specific embodiments illustrated.

A system according to the invention includes a slicing machine 20 which cuts slices from a loaf and deposits the slices on an output conveyor assembly 30, forming shingled or stacked drafts A. The drafts can be piles, bunches or groups of thin sliced product. The slicing machine can be of a type as described in U.S. Pat. Nos. 5,649,463; 5,704,265; and 5,974,925; as well as patent publications EP0713753 and WO99/08844, herein incorporated by reference. The slicing machine can also be a commercially available FOR-MAX FX180 machines, available from Formax, Inc. of Mokena, Ill., U.S.A.

The conveyor assembly 30 includes a check weight conveyor, wherein unacceptable drafts can be rejected and diverted. Acceptable drafts A are moved from the conveyor assembly 30 onto a staging conveyor 44 that includes a row staging conveyor 45 wherein a single file stream of drafts is rearranged in laterally extending rows. Such a staging conveyor 44 is described in U.S. Pat. No. 5,810,149 and is commercially available as the A*180 Autoloader from Formax, Inc. of Mokena, Ill., U.S.A.

The staging conveyor 44 can include an output conveyor 46 and a ramp conveyor 48. The row staging conveyor 45 delivers rows of drafts to the output conveyor 46. The output conveyor delivers the rows of drafts to the ramp conveyor 48. The ramp conveyor delivers the rows of drafts onto a shuttle conveyor 52.

The conveyors 46, 48, 52 are arranged above a packaging machine 60, such as a Multivac R530, available from Multivac, Inc. of Kansas City, Mo., U.S.A. At a fill station

61, the shuttle conveyor 52 delivers rows of drafts into containers in the form of a group of rows of pockets 62 formed in a lower web of film 63 by the packaging machine 60. Downstream of the fill station 61, in the direction D, the pockets 62, filled with product, are sealed by an upper web of film.

FIGS. 2 and 3 illustrate that the shuttle conveyor 52 includes an endless belt 80. The belt 80 forms a top conveying region 84 and a bottom region 88. The belt 80 is wrapped around a stationary belt drive roller 89, an upper forward roller 90, an end roller 91, a bottom forward roller 92, an idler roller 93, a stationary bottom roller 94, and a stationary bottom back roller 95a. The rollers 90, 91, 92, 93 are rotationally mounted on front end sideplates 95 (only one shown) to be translated back and forth together. The bottom region 88 of the belt, being wrapped around the movable idler roller 93 and the stationary bottom roller 94, effectively creates a belt accumulation region 96 between these rollers 93, 94. Controlled translation of the sideplates 95 holding the rollers 90, 91, 92, 93 controls the extension or retraction of the top region 84 of the belt 80, and the position of an end region 100 of the top region 84.

Two spaced-apart, sideby-side carriages 97 are provided. Each carriage 97 is connected to a corresponding front end sideplate 95. The rollers 90, 91, 92, 93 are effectively connected to the side-by-side carriages 97 (only one shown), via the front end sideplates 95. The carriages 97 are connected to a parallel pair of endless positioning belts 98 (only one shown). A servomotor 112 is operatively connected to the positioning belts 98, via drive pulleys 99, to drive an upper surface 98a of the belts 98 in either an advancing direction (downstream direction of the web of film movement) or a retracting direction (upstream direction of the web of film movement). The servomotor 112 thus controls the retraction and extension of the end region 100 via movement of the carriages 97. Another servomotor 114 is operatively connected to the drive roller 89 and controls the circulation speed of the conveying belt 80. A more detailed description of a shuttle conveyor and servomotor drive components is presented in U.S. patent application Ser. No. 10/201,047, filed Jul. 23, 2002, and is herein incorporated by reference.

A controller 150, such as a programmable logic controller (PLC), a microprocessor, a CPU or other control device, is signal connected to the servomotors 112, 114. The controller 150 synchronizes movement of the end region 100 of the conveyor 80 via the servomotor 112, and the speed of the belt 80 via the servomotor 114, with the movement of the web of film 63.

A tamping apparatus 156 is provided adjacent to the end 100 of the conveyor belt 80. The tamping apparatus 156 includes a row of tamping mechanism 160 (only one shown). The tamping mechanisms 160 are carried by plates 161 (only one shown) that are mechanically connected to the front end conveyor sideplates 95 to move with the end region 100 when the end region 100 is retracted or advanced. The mechanisms 160 each include a tamp plate 162 mounted on a rod 164. The tamp plate 162 is shown in an elevated position in FIG. 3, and in both an elevated and depressed (shown dashed) position in FIG. 2. The rod 164 is partially fit within, and actuated by, a pneumatic cylinder 166. When the rod 164 is extended, and the tamp plate 162 is depressed, the draft A is packed more tightly into a respective pocket 62a. The row of tamping mechanisms 160 correspond in number to the number of pockets in each row, i.e., each pocket within each row would be filled together and then tamped together by a corresponding tamping mechanism

5

160. Vertical supports 163 (shown schematically) connected to the plates 161 can be used to mount the pneumatic cylinders 166.

The pneumatic cylinder 166 is activated to raise or lower the rod 164 by a solenoid valve 170 that is signal-connected to the controller 150. An optical sensor (or sensors) 174 can be used to sense the presence or absence of a draft A on the ramp conveyor region 180. The optical sensor 174 is signal-connected to the controller 150. The synchronization of the tamping mechanisms 160 with the filling of the pockets 62 can be accomplished using the optical sensor 174 and/or information of the conveyor speed from the servomotor 114.

FIG. 3 illustrates that the movable rollers 90, 91, 92, 93, operatively carried by the front end sideplates 95, have been driven to the right by the carriages 97, that are driven by the servomotor 112, by an incremental distance x. The distance x is demonstrated in FIG. 3 by the change in position of the roller 93. The end region 100 is now in position to deposit the next row of drafts A into the second row of pockets 62b. The tamping mechanisms 160 are also shifted to be above the second row of pockets 62b and the process of depositing drafts A and tamping the drafts is repeated. The process is then repeated for each subsequent row 62c, 62d.

The end region 100 of the conveyor belt 80, is part of a ramp conveyor region 180 of the conveyor belt 80. The ramp conveyor region 180 is angled downwardly toward the rows of pockets 62 in order to controllably deposit drafts into the pockets. The ramp conveyor region 180 has a steep inclination which assists in tightening the drafts A entering the pockets 62.

The group of rows of pockets is preferably filled while the web of film 63 is stationary at the fill station 61, i.e., during the dwell period of the packaging operation. After the group is filled and the dwell period is over, the web of film 63 is moved in the direction D to reveal a new group of rows of pockets for filing. Preferably as the web of film 63 is moved the shuttle conveyor is advanced to be in a position to fill the first row of the new group.

Alternatively, the shuttle conveyor could fill the groups of rows in a reverse order to that just described, wherein the first filled row of pockets is the row furthest upstream in the web moving direction D, and the shuttle conveyor advances to fill the second row, then advances again to fill the third row, etc. After the group of rows is filled during the dwell period, the web of film advances to present an empty new group of rows of pockets and the shuttle conveyor retracts to be in a starting position to fill the new first row.

From the foregoing, it will be observed that numerous variations and modifications may be effected without departing from the spirit and scope of the invention. It is to be understood that no limitation with respect to the specific apparatus illustrated herein is intended or should be inferred. It is, of course, intended to cover by the appended claims all such modifications as fall within the scope of the claims.

The invention claimed is:

**1.** An apparatus for filling food product drafts into packages, comprising:

    a supply of open top container portions arranged in rows that are displaced along a longitudinal direction and having a first row and a longitudinally displaced second row and carried by an elongated web of film and movable by said web along said longitudinal direction into a fill station; and

    a shuttle conveyor having a conveying surface, said shuttle conveyor comprises a device to retract and to extend said conveying surface, said conveying surface arranged above said fill station and having an end

6

region longitudinally movable to a first position arranged to deposit food product drafts into said container portions of said first row by said conveying surface, and while said web remains stationary, said device retracts or extends said conveying surface to reposition said end region to a second position arranged to deposit food product drafts carried on said conveying surface into said container portions of said second row.

**2.** The apparatus according to claim **1**, further comprising a tamping apparatus carried by said conveyor to be repositioned with said conveying surface end region and having vertically reciprocal tamping elements arranged above the respective first or second row being filled with food product drafts, said tamping elements actuatable to press said food product drafts into said container portions.

**3.** The apparatus according to claim **2**, wherein said apparatus further comprises a rotatable slicing blade, a conveying assembly, and a support for holding a loaf in a cutting path of said rotatable slicing blade, said slicing blade arranged to rotate in said cutting path to slice drafts from said loaf, said drafts being plural slices formed in a pile on said conveying assembly, said conveying assembly including a staging conveyor that forms the piles into rows and transports said rows onto said conveying surface of said shuttle conveyor.

**4.** The apparatus according to claim **1**, wherein said shuttle conveyor is configured to advance from a retracted position to an extended position to fill a new first row of a succeeding group of empty rows of container portions while said web advances to locate said succeeding group of empty rows of container portions in said fill station.

**5.** The apparatus according to claim **1**, wherein said shuttle conveyor is configured to fill plural rows of container portions while said web is stationary in said fill station, and said shuffle conveyor is configured to retract from an extended position to a retracted position to fill a new first row of a succeeding group of empty rows of container portions while said web advances to locate said succeeding group of empty rows of container portions in said fill station.

**6.** The apparatus according to claim **1**, wherein said container portions comprise concave formed portions of said web.

**7.** The apparatus according to claim **1**, wherein said apparatus further comprises a sealing station downstream of said fill station, said sealing station arranged to apply a cover to said container portions to close said container portions.

**8.** The apparatus according to claim **1**, wherein said apparatus further comprises a container portion-forming station upstream of said fill station, arranged to form container portions of said web.

**9.** The apparatus according to claim **1**, wherein said container portions comprise concave formed portions of said web;

    wherein said apparatus further comprises a sealing station downstream of said fill station, said sealing station arranged to apply a cover to said container portions to close said container portions; and

    wherein said apparatus further comprises a container portion-forming station upstream of said fill station, configured to form said container portions of said web.

**10.** An apparatus for filling food product drafts into pockets formed into an elongated web of film, said pockets having open tops and arranged in rows that are displaced along a longitudinal direction and having at least a first row and a longitudinally displaced second row and movable with said web along said longitudinal direction, comprising:

a fill station and a mechanism for moving said pockets longitudinally into said fill station; and

a shuttle conveyor having an endless belt conveying surface, said shuttle conveyor comprises a device to retract and to extend said conveying surface longitudinally, said conveying surface arranged above said fill station and having an end longitudinally movable to a first position arranged to deposit food product drafts into said pockets of said first row by said conveying surface, and while said web remains stationary, said device retracts or extends said conveying surface to longitudinally reposition said end to a second position arranged to deposit food product drafts carried on said conveying surface into said pockets of said second row.

**11**. The apparatus according to claim **10**, further comprising a tamping apparatus carried by said conveyor to be longitudinally repositioned with said conveying surface end and having a row of vertically reciprocal tamping elements arranged above the respective first or second row being filled with food product drafts, said tamping elements actuatable to press said food product drafts into said pockets.

**12**. The apparatus according to claim **11**, wherein said apparatus further comprises a rotatable slicing blade, a conveying assembly, and a support for holding a loaf in a cutting path of said rotatable slicing blade, said slicing blade arranged to rotate in said cutting path to slice drafts from said loaf, said drafts being plural slices formed in a pile on said conveying assembly, said conveying assembly including a staging conveyor that forms the piles into rows and transport said rows onto said conveying surface of said shuttle conveyor.

**13**. The apparatus according to claim **1**, wherein said shuttle conveyor is configured to fill plural rows of pockets while said web is stationary in said fill station, and said shuttle conveyor is configured to advance from a retracted position to an extended position to fill a new first row of a group of empty pockets while said web advances to locate a succeeding plural row of pockets in said fill station.

**14**. The apparatus according to claim **10**, wherein said shuttle conveyor is configured to fill plural rows of pockets while said web is stationary in said fill station, and said shuttle conveyor is configured to retract from an extended position to a retracted position to fill a new first row of a group of empty pockets while said web advances to locate a succeeding plural row of pockets in said fill station.

**15**. The apparatus according to claim **10**, wherein said apparatus further comprises a sealing station downstream of

said fill station, said sealing station arranged to apply a cover to said pockets to close said pockets.

**16**. The apparatus according to claim **10**, wherein said apparatus further comprises a pocket-forming station upstream of said fill station, arranged to form said pockets of said web.

**17**. The apparatus according to claim **10**, wherein said apparatus further comprises a sealing station downstream of said fill station, said sealing station configured to apply a cover to said container portions to close said container portions; and

wherein said apparatus further comprises a pocket-forming station upstream of said fill station, arranged to form said pockets of said web.

**18**. The apparatus according to claim **17**, further comprising a tamping apparatus carried by said conveyor to be longitudinally repositioned with said conveying surface end and having a row of vertically reciprocal tamping elements arranged above the respective first or second row being filled with food product drafts, said tamping elements actuatable to press said food product drafts into said pockets.

**19**. The apparatus according to claim **18**, wherein said apparatus further comprises a rotatable slicing blade, a conveying assembly, and a support for holding a loaf in a cutting path of said rotatable slicing blade, said slicing blade arranged to rotate in said cutting path to slice drafts from said loaf, said drafts being plural slices formed in a pile on said conveying assembly, said conveying assembly including a staging conveyor that forms the piles into rows and transport said rows onto said conveying surface of said shuttle conveyor.

**20**. The apparatus according to claim **19**, wherein said shuttle conveyor is configured to fill plural rows of pockets while said web is stationary in said fill station, and said shuttle conveyor is configured to advance from a retracted position to an extended position to fill a new first row of a group of empty pockets while said web advances to locate a succeeding plural row of pockets in said fill station.

**21**. The apparatus according to claim **19**, wherein said shuttle conveyor is configured to fill plural rows of pockets while said web is stationary in said fill stalion, and said shuttle conveyor is configured to retract from an extended position to a retracted position to fill a new first row of a group of empty pockets while said web advances to locate a succeeding plural row of pockets in said fill station.

\*  \*  \*  \*  \*

UNITED STATES PATENT AND TRADEMARK OFFICE
# CERTIFICATE OF CORRECTION

PATENT NO.          : 7,065,936 B2                                    Page 1 of 1
APPLICATION NO.  : 10/323618
DATED                   : June 27, 2006
INVENTOR(S)         : Scott A. Lindee and Glenn Sandberg

It is certified that error appears in the above-identified patent and that said Letters Patent is hereby corrected as shown below:

At column 7, line 30, change "transport" to --transports--.

At column 7, line 32, change "1" to --10--.

At column 8, line 30, change "transport" to --transports--.

At column 8, line 41, change "stalion" to --station--.

Signed and Sealed this

Seventeenth Day of October, 2006



JON W. DUDAS
*Director of the United States Patent and Trademark Office*

# EXHIBIT A



US010625436B2

(12) **United States Patent**　(10) **Patent No.:** **US 10,625,436 B2**
Lindee et al.　(45) **Date of Patent:** *Apr. 21, 2020

(54) **HIGH SPEED SLICING MACHINE**

(71) Applicant: **PROVISUR TECHNOLOGIES, INC.,** Chicago, IL (US)

(72) Inventors: **Scott A. Lindee**, Mokena, IL (US); **James E. Pasek**, Tinley Park, IL (US); **David Hancock**, Morris, IL (US); **Thomas C. Wolcott**, LaGrange, IL (US)

(73) Assignee: **PROVISUR TECHNOLOGIES, INC.,** Chicago, IL (US)

( * ) Notice: Subject to any disclaimer, the term of this patent is extended or adjusted under 35 U.S.C. 154(b) by 0 days.

This patent is subject to a terminal disclaimer.

(21) Appl. No.: **16/210,583**

(22) Filed: **Dec. 5, 2018**

(65) **Prior Publication Data**

US 2019/0105794 A1　Apr. 11, 2019

**Related U.S. Application Data**

(60) Continuation of application No. 16/017,346, filed on Jun. 25, 2018, which is a division of application No. 13/099,325, filed on May 2, 2011.

(Continued)

(51) **Int. Cl.**
*B26D 7/32*　(2006.01)
*B26D 7/22*　(2006.01)
(Continued)

(52) **U.S. Cl.**
CPC ............... *B26D 7/32* (2013.01); *B26D 7/225* (2013.01); *B26D 5/00* (2013.01); *B26D 7/0683* (2013.01);
(Continued)

(58) **Field of Classification Search**
CPC ........ B26D 7/06; B26D 7/0625; B26D 7/225; B26D 7/0683; B26D 7/30; B26D 7/32;
(Continued)

(56) **References Cited**

U.S. PATENT DOCUMENTS

2,047,400 A　7/1936　Walter
4,226,176 A *　10/1980　Macchi ............... A47J 37/0857
198/728
(Continued)

FOREIGN PATENT DOCUMENTS

DE　2912446　10/1980
DE　3912446　10/1990
(Continued)

OTHER PUBLICATIONS

International Search Report dated Jan. 27, 2012.
(Continued)

*Primary Examiner* — Phong H Nguyen
(74) *Attorney, Agent, or Firm* — Klintworth & Rozenblat IP LLP

(57) **ABSTRACT**

A food article slicing machine includes a food article loading apparatus with a lift tray assembly for moving food articles from a staging position to an elevated position at a beginning of a food article feed path, a food article feed apparatus disposed over the food article loading apparatus having an upper conveyor assembly with an independently driven endless conveyor belt used in cooperation with a food article gripper for moving the food articles along the food article feed path, a food article stop gate that forms part of the food article feed path and opens to drop food article end portions, and a slicing station at an end of the food article feed path with a knife for slicing the food articles.

**16 Claims, 21 Drawing Sheets**



### Related U.S. Application Data

(60) Provisional application No. 61/343,551, filed on May 1, 2010.

(51) **Int. Cl.**
| | |
|---|---|
| **B26D 5/00** | (2006.01) |
| **B26D 7/06** | (2006.01) |
| **B26D 7/01** | (2006.01) |
| **B26D 7/30** | (2006.01) |

(52) **U.S. Cl.**
CPC .......... *B26D 7/30* (2013.01); *B26D 2007/011* (2013.01); *B26D 2210/02* (2013.01); *Y10T 83/2074* (2015.04); *Y10T 83/654* (2015.04)

(58) **Field of Classification Search**
CPC .. B26D 2210/00; B26D 2210/02; B26D 5/00; B26D 2007/011; B65G 15/00; B65G 15/10; B65G 15/12; B65G 15/14; B65G 15/16; B65G 15/30; B65G 15/50; Y10S 83/932; Y10T 83/6668; Y10T 83/202; Y10T 83/2192; Y10T 83/2194; Y10T 83/4531; Y10T 83/463; Y10T 83/647; Y10T 83/6502; Y10T 83/6504; Y10T 83/6505; Y10T 83/6537; Y10T 83/6945; Y10T 83/654; Y10T 83/9377; Y10T 83/9379; Y10T 83/9403
USPC .................................................. 198/804, 831
See application file for complete search history.

(56) **References Cited**

#### U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 4,583,435 A | 4/1986 | Fessler | |
| 4,934,232 A | 6/1990 | Weber et al. | |
| 5,191,820 A * | 3/1993 | Hartmann | B26D 7/01 |
| | | | 83/277 |
| 5,628,237 A | 5/1997 | Lindee et al. | |
| 5,974,925 A | 11/1999 | Lindee et al. | |
| 6,415,698 B1 * | 7/2002 | Haas | A21C 11/10 |
| | | | 83/255 |
| 2004/0016331 A1 * | 1/2004 | Wolcott | B26D 7/32 |
| | | | 83/23 |
| 2004/0031363 A1 | 2/2004 | Lindee et al. | |

| | | | |
|---|---|---|---|
| 2004/0055439 A1 | 3/2004 | Lindee et al. | |
| 2004/0139706 A1 | 7/2004 | Drebing et al. | |
| 2005/0082147 A1 | 4/2005 | Mol | |
| 2005/0132855 A1 | 6/2005 | Weber | |
| 2005/0199111 A1 | 9/2005 | Sandberg et al. | |
| 2006/0289281 A1 | 12/2006 | Sandberg et al. | |
| 2007/0214969 A1 | 9/2007 | Mueller et al. | |
| 2008/0185095 A1 | 8/2008 | Gutknecht | |
| 2008/0250944 A1 | 10/2008 | Pryor et al. | |
| 2009/0120256 A1 * | 5/2009 | Pasek | B26D 7/18 |
| | | | 83/446 |

#### FOREIGN PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| DE | 4235985 | | 4/1994 |
| DE | 102008020248 | | 5/1994 |
| DE | 3912445 | | 8/1996 |
| DE | 19518583 | | 11/1996 |
| DE | 19518595 | | 11/1996 |
| DE | 195 25 742 | * | 1/1997 |
| DE | 10353114 | | 5/2005 |
| EP | 0398602 | | 11/1990 |
| EP | 0547389 | | 6/1993 |
| EP | 00547389 | * | 6/1993 |
| EP | 0713753 | A2 | 5/1996 |
| EP | 2566670 | | 7/2016 |
| FR | 2677573 | * | 12/1992 |
| JP | 2000-288983 | A | 10/2000 |
| WO | 89/06588 | | 7/1989 |
| WO | 0230635 | | 4/2002 |
| WO | 2005/037501 | | 4/2005 |
| WO | 2010011237 | | 1/2010 |
| WO | 2011/139996 | | 11/2011 |

#### OTHER PUBLICATIONS

European search Report for European Patent Application No. EP 11 77 8126 dated Jan. 26, 2015, 3 pages.
Machine translation of DE102008020248.
Machine translation of DE10353114.
Machine translation of DE2912446.
Machine translation of DE4235985.
Machine translation of WO2005037501.
U.S. Appl. No. 61/343,551, entitled "High Speed Slicing Machine," filed May 1, 2010, 39 pages.
Machine translation of JP2000-288983.

* cited by examiner



Fig. 1

Case 5:20-cv-06069-SRB    Document 1-1    Filed 05/06/20    Page 4 of 30



# Fig. 1A



**Fig. 1B**



Fig. 2

Case 5:20-cv-06069-SRB   Document 1-1   Filed 05/06/20   Page 7 of 30



Fig. 2A

Case 5:20-cv-06069-SRB   Document 1-1   Filed 05/06/20   Page 8 of 30

Appx117



Fig. 3

Case 5:20-cv-06069-SRB   Document 1-1   Filed 05/06/20   Page 9 of 30

Appx118



Fig. 5

Fig. 4

Case 5:20-cv-06069-SRB   Document 1-1   Filed 05/06/20   Page 10 of 30



Fig. 6

Case 5:20-cv-06069-SRB  Document 1-1  Filed 05/06/20  Page 11 of 30



Fig. 7

Case 5:20-cv-06069-SRB   Document 1-1   Filed 05/06/20   Page 12 of 30



Fig. 7A

Case 5:20-cv-06069-SRB Document 1-1 Filed 05/06/20 Page 13 of 30

Appx122



Fig. 7B



Fig. 7C

Case 5:20-cv-06069-SRB   Document 1-1   Filed 05/06/20   Page 15 of 30

**Appx124**



Fig. 7D



1013,1015,1017

1013a,1015a,1017a

992,994,998

1002,1004,1008

1130

1056

1003,1005,1007

1003a,1005a,1007a

**Fig. 7E**

Case 5:20-cv-06069-SRB    Document 1-1    Filed 05/06/20    Page 17 of 30



**Fig. 7F**



## Fig. 8



Fig. 9



Fig. 10



Fig. 11

Case 5:20-cv-06069-SRB   Document 1-1   Filed 05/06/20   Page 22 of 30



Fig. 12

Case 5:20-cv-06069-SRB   Document 1-1   Filed 05/06/20   Page 23 of 30



Fig. 13A

Fig. 13B

Fig. 13C

Fig. 13D

Case 5:20-cv-06069-SRB   Document 1-1   Filed 05/06/20   Page 24 of 30

# HIGH SPEED SLICING MACHINE

## CROSS-REFERENCE TO RELATED APPLICATIONS

This application is a continuation application of U.S. Ser. No. 16/017,346, filed Jun. 25, 2018, which is a divisional application of U.S. Ser. No. 13/099,325, filed on May 2, 2011, which claims the benefit of U.S. Provisional Application No. 61/343,551, filed May 1, 2010, the contents of which are incorporated herein in their entirety.

## BACKGROUND OF THE INVENTION

Many different kinds of food articles or food products, such as food slabs, food bellies, or food loaves are produced in a wide variety of shapes and sizes. There are meat loaves made from various meats, including ham, pork, beef, lamb, turkey, and fish. The meat in the food loaf may be in large pieces or may be thoroughly comminuted. These meat loaves come in different shapes (round, square, rectangular, oval, etc.) and in different lengths up to six feet (183 cm) or even longer. The cross-sectional sizes of the loaves are quite different; the maximum transverse dimension may be as small as 1.5 inches (4 cm) or as large as ten inches (25.4 cm). Loaves of cheese or other foods come in the same great ranges as to composition, shape, length, and transverse size.

Typically, the food loaves are sliced, the slices are grouped in accordance with a particular weight requirement, and the groups of slices are packaged and sold at retail. The number of slices in a group may vary, depending on the size and consistency of the food article and the desire of the producer, the wholesaler, or the retailer. For some products, neatly aligned stacked slice groups are preferred. For others, the slices are shingled or folded so that a purchaser can see a part of every slice through a transparent package.

Food articles can be sliced on high speed slicing machines such as disclosed in Published Patent Document WO 2010/011237 A1 or U.S. Pat. No. 5,628,237 or 5,974,925; or as commercially available as the Power Max 4000™ or FX180® slicers available from Formax, Inc. of Mokena, Ill., USA.

The FX180® machine can be configured as an automatically loaded, continuous feed machine, or an automatically loaded, back-clamp or gripper type machine.

For an automatically loaded, continuous feed machine, side-by-side upper and lower conveyor pairs drive food articles into the cutting plane. A gate is located in front of the conveyors. The initial food articles are loaded with leading ends abutting the gate. The gate is lowered and the food articles proceed into the conveyors. When the initial food articles are sliced to the extent that the trailing ends of the food articles clear the gate, the gate is raised and new food articles are loaded in the feed paths, held back by the gate. Shortly thereafter the gate is lowered and new food articles slide down to where lead ends of the new food articles abut trailing ends of the initial food articles being sliced. The new food articles are driven into the cutting plane trailing the initial food articles. Food articles are sequentially and continuously loaded in this manner, lead end-to-trailing end, in abutting contact with the preceding food articles.

U.S. Pat. No. 5,628,237 and European patent EP 0 713 753 describe a back-clamp or gripper type slicing machine. According to this type of slicing machine, food articles are loaded onto a lift tray and the lift tray is raised to a ready-to-sweep position. Loaf grippers are retracted after the previous food articles are sliced. During retraction of the

loaf grippers, loaf-to-slicing blade gate doors are closed and ends of the previous food articles are dropped through a loaf end door. After the grippers have reached the retracted position or "home position" remote from the slicing blade, a loaf sweep mechanism is activated, moving the food articles laterally together into the slicing position. A spacing mechanism moves down and spaces the food articles apart. The grippers then advance after it has been determined that the loaf sweep mechanism has moved the food articles to the slicing position. The grippers have onboard sensing mechanisms that are triggered by contact with the food articles. After sensing and gripping the food articles, the food articles are retracted slightly, and the loaf-to-slicing blade gate doors are opened and the food articles are advanced to the slicing plane of the slicing blade. The loaf sweep mechanism retracts and the loaf lift tray lowers, ready for the next reload cycle. According to this design, in practice, the reload cycle is accomplished in about eight seconds. In a high-volume slicing operation, reload cycle time can be a significant limitation to optimum production efficiency.

The machine disclosed in WO 2010/011237 A1 provides an automated, food article tray loading method and apparatus wherein food articles can be loaded into the lift tray into designated and separated lanes which automatically assume a preload condition, and after the food articles are loaded, food article separation is maintained on the lift tray. A food article transfer receives the food articles on the lift tray in their separated positions and transfers the food articles into the slicing feed paths while maintaining the separated positions. A food article end disposal system utilizes a transport that laterally moves end portions outside of the feed path and ejects the end portions as the transport is moved back into the feed path to receive the subsequent end portions. The machine utilizes food article grippers that are fixed onto conveyor belts which support and drive the food articles in the feed paths.

The present inventors have recognized that it would be desirable to slice plural food articles with independent feeding and weighing capabilities, with hygienic and operational enhancements.

## SUMMARY OF THE INVENTION

The invention provides a mechanism and method for slicing multiple food articles with independency of feed rate and the ability to weigh each product group from each food article respectively to achieve optimal weight control and yield of each food article.

The present invention provides a high-speed slicing apparatus and a weighing and classifying conveyor combination that provides plural advantages in machine cost, productivity, food hygiene, and operation.

The invention provides a lift tray that is located in line with the food article feed paths and is lowered to receive food articles and raised into the feed paths. There is no need for lateral shifting of food articles into the feed paths. Food article grippers are driven along the feed paths by an overhead conveyor. A laser food article end detection system is employed in each feed path to detect the terminal end of the food article to control the positioning of the gripper for that path.

The invention provides the use of an automatic debris or scrap removal conveyor that also provides for end portion removal.

The invention provides an automated cleanup position wherein the elevated food article feed mechanism can be collapsed to a more convenience plane or maintenance

3                                              4

position, and the blade cover is automatically pivoted to a cleanup position. The combination provides for enhanced portion control and yield. A food article feed mechanism ensures accurate feeding by the use of servo driven and controlled feed belts and grippers. The slicing mechanism includes three independent drives for slicing multiple food articles simultaneously.

An improved food article stop gate is provided that also serves as a door for the removal of food article end portions.

A horizontally radiating laser intrusion detector is used to shut down systems when an unwanted intrusion by an operator is detected.

An automated, food article tray loading method and apparatus is provided wherein food articles can be loaded into the lift tray into designated and separated lanes which automatically assume a preload condition, and after the food articles are loaded, food article separation is maintained on the lift tray.

Numerous other advantages and features of the present invention will become readily apparent from the following detailed description of the invention and the embodiments thereof, and from the accompanying drawings.

BRIEF DESCRIPTION OF THE DRAWINGS

FIG. 1 is a near side elevational view of a slicing machine and a weighing and classifying conveyor combination of the present invention;

FIG. 1A is an enlarged fragmentary view taken from FIG. 1;

FIG. 1B is a perspective view of the slicing machine of FIG. 1 in a clean-up configuration;

FIG. 2 is a plan view of the combination of FIG. 1 with some panels and parts removed or made transparent illustrating some underlying components;

FIG. 2A is a bottom perspective view of a portion of FIG. 2;

FIG. 3 is a sectional view taken generally along line 3-3 of FIG. 2 with some panels and parts removed or made transparent and underlying components revealed;

FIG. 4 is a schematic, sectional view taken generally along line 4-4 of FIG. 6 with some panels and parts removed or made transparent and underlying components revealed;

FIG. 5 is a schematic, sectional view taken generally along line 5-5 of FIG. 6 with some panels and parts removed or made transparent and underlying components revealed;

FIG. 6 is a sectional view taken generally along line 6-6 of FIG. 3 with some panels and parts removed or made transparent and underlying components revealed;

FIG. 7 is a fragmentary elevational view taken generally along line 7-7 of FIG. 2 with some panels and parts removed or made transparent and underlying components revealed;

FIG. 7A is a fragmentary perspective view of a portion of FIG. 7;

FIG. 7B is an enlarged fragmentary view of apportion of FIG. 7A;

FIG. 7C is an enlarged rear perspective view of a portion of FIG. 7;

FIG. 7D is a top perspective view of a portion of FIG. 7;

FIG. 7E is an enlarged fragmentary view of a portion of FIG. 7;

FIG. 7F is an enlarged fragmentary view of an alternate embodiment of a lower conveyor.

FIG. 8 is a fragmentary rear perspective view of the apparatus of FIG. 7;

FIG. 9 is a far side perspective view of the apparatus of FIG. 1 with a lift tray in a lowered position;

FIG. 10 is a top perspective rear view of the lift tray of FIG. 9 with a tray platform removed;

FIG. 11 is an enlarged, fragmentary near side perspective view of a portion of the slicing machine of FIG. 1;

FIG. 12 is an enlarged, fragmentary far side perspective view with a door removed to show underlying components;

FIG. 13A is a schematic diagram of the loaf feed apparatus in a first stage of operation;

FIG. 13B is a schematic diagram of the loaf feed apparatus in a second stage of operation;

FIG. 13C is a schematic diagram of the loaf feed apparatus in a third stage of operation; and

FIG. 13D is a schematic diagram of the loaf feed apparatus taken generally along line 13D-13D of FIG. 13C.

DESCRIPTION OF THE PREFERRED EMBODIMENTS

While this invention is susceptible of embodiment in many different forms, there are shown in the drawings, and will be described herein in detail, specific embodiments thereof with the understanding that the present disclosure is to be considered as an exemplification of the principles of the invention and is not intended to limit the invention to the specific embodiments illustrated.

Published Patent Application No. WO 2010/011237 and U.S. Pat. No. 5,628,237 are herein incorporated by reference.

Overall Description

FIGS. 1-3 illustrate a high-speed slicing apparatus 100 and a weighing and classifying conveyor or output conveyor 102 according to a preferred embodiment of the invention. The slicing apparatus 100 includes a base section 104, a collapsible frame 105, an automatic food article loading apparatus 108 that receives food articles 110 to-be-sliced, a food article feed apparatus 120, a food article end and scrap removal conveyor 122 (FIGS. 13C and 13D), a laser safety guard system 123, a slicing head apparatus 124, and a slice receiving conveyor 130. The slicing head apparatus includes a slicing blade 125 that defines a slicing plane and an orifice plate or slicing block 126 that guides food articles into the slicing plane, the blade cutting closely to the orifice plate. The slicing apparatus also includes a computer display touch screen 131 that is pivotally mounted on and supported by a support 132.

Base Section

The base section 104 includes a compartment 136 having side walls 138a, 138b, a bottom wall 140, and an inclined top wall 142. The apparatus 100 is supported on four adjustable feet 144. The compartment 136 has a tapered side profile from back to front wherein the top wall 142 slants down from back to front. The slanted orientation of the top wall 142 ensures water drainage off the top of the compartment 136. The compartment is supported on adjustable feet 144.

The compartment 136 includes a near side door 152, a far side door 156 (FIG. 9), and a rear door 162 that permit access into the compartment or to modules normally held within the compartment 136. The compartment 136 typically affords an enclosure for a computer, motor control equipment, a low voltage supply, and a high voltage supply and other mechanisms as described below. The compartment may also include a pneumatic supply or a hydraulic supply, or both (not shown).

Collapsible Frame and Elevated Housings

The base section 104 supports the collapsible frame 105 as shown in FIGS. 1, 1B and 9. The collapsible frame 105

includes a foldable support mechanism **174** that supports a food article feed mechanism **190**.

The foldable support mechanism **174** includes a servomotor **175** that drives a gear reducer **176** having a drive shaft **178** that extends out of far side of the compartment **136** (FIG. **9**). The drive shaft **178** is rotationally fixed to parallel levers **180***a*, **180***b* which swing out with a turning of the drive shaft **178**. The levers **180***a*, **180***b* are pivotally connected to a column **182** via a rotary connection **184**. The column **182** is pivotally connected at a pivot connection **192** to the frame **190** which supports the food article feed apparatus **120**.

For cleaning and maintenance purposes, the collapsible frame **105** is collapsed down by actuating the servomotor **175** and gear reducer **176** to rotate the levers **180***a*, **180***b*, which draws down the column **182** as shown in FIG. **1**B. The frame **190**, and all equipment supported thereby, is lowered for more convenient maintenance and cleaning as illustrated in FIG. **1**B. In some cases, this eliminates the need for ladders or platforms when servicing the slicing apparatus **100**.

The slicing head apparatus **124** is covered by a guard **119** that is attached to the frame **190** such that when the frame is pivoted down as shown in FIG. **1**B, the guard **119** is pivoted away from a slicing head base **117** to expose the slicing blade **125** and internals for cleaning and maintenance.

Additionally, the elevation of the food article feed apparatus can be adjusted by using the servomotor to selectively pivot the levers **180***a*, **180***b* and lower the rear of the frame **190**. At a front, the frame **190** is supported on a cross shaft **193** that is eccentrically fixed at each end to a round cam **194** (FIG. **1**A). The cam is journaled in a round opening **195** in side supports **197***a*, **197***b* and the cam is fixed for non-rotation to the respective side support by fasteners **199**. The far side is shown in FIG. **1**A, with the understanding that the near side is mirror image identical across the longitudinal vertical center plane of the machine. As shown in FIG. **1**A, because the dimension "a" is smaller than the dimension "b", the shaft ends can be temporarily loosened by removing the fasteners and the shaft and cams can be rotated 180 degrees about a centerline of the shaft, and the cams can be re-fastened to be fixed to the side supports. The elevation will be different between the two 180-degree adjustable positions. Thus, the machine will accommodate two different height settings for different types of food articles.

### Food Article Feed Apparatus

An upper conveyor assembly **530** of the food article feed apparatus **120** is shown in FIG. **2**. The conveyor assembly **530** includes three independently driven endless conveyor belts **802**, **804**, **806**. Each belt **802**, **804**, **806** is identically driven so only the drive for the belt **802** will be described.

The belt **802** is wrapped around a toothed front drive roller or pulley **812** and a back-idler roller or pulley **816**. The belt **802** preferably has teeth that engage teeth of the two rollers **812**, **816**. Each drive roller **812** includes a toothed outer diameter **812***a* and a toothed, recessed diameter **812***b*.

An endless drive belt **820** wraps around the recessed diameter **812***b*. The drive belt **820** also wraps around a drive roller **824** that is fixed to a drive shaft **828**. The drive shaft **828** extends transversely to the belt **802** and is journaled for rotation within a bearing **830** mounted to a near side frame member **836**.

The drive shaft **828** penetrates a far side frame member **838** and extends to a bearing **843**, coupled to a gear reducer

**842** mounted to a support frame **854**. The gear reducer **842** is coupled to a servomotor **850** that is mounted to the support frame **854**.

The servomotor **850** drives the drive shaft **828** which turns the roller **824** which circulates the belt **820** which rotates the roller **812** which circulates the belt **802**.

Three servomotors **850** are mounted to the support frame **854** and all are located within an upper compartment **855** that is supported by the frame **190**.

The idler rollers **816** are provided with a pair of mirror image identical adjustable cam belt tension adjustment mechanisms **882***a*, **882***b*. As shown in FIG. **7**A, each mechanism **882***a*, **882***b* includes a fork **885** that is braced from the respective side frame member **836**, **838** by an adjustable cam **883**. The fork **885** is guided by upper and lower pins **886***a*, **886***b* so as to slide rearward and forward and has an end **891** that captures an axle **889** that rotationally supports the idle rollers **816**. For adjustment, the cam fastener **883***a* is loosened so as to be rotatable on the respective side frame member **836**, **838**, rotated to achieve the desired belt tension, and then the cam fastener is tightened to hold the cam fixed.

FIG. **7**B illustrates a gripper **894** used in cooperation with the belt **802**. The gripper **894** is mounted to a bottom run of the belt **802** and is translated along the food article path by the belt **802**. The gripper **894** is clamped to a belt joint and guide assembly **896** by a fixture **901** that engages the assembly **896** and is fixed thereto by a clamping set screw **897**. The assembly **896** comprises a pair of upper members **899** and a lower member **900**. The upper members **899** can include teeth **899***a* that mesh engage the teeth of the belt **802** once the members **899**, **900** are fastened together to splice the free ends **802***e*, **802***f* of the belt **802** (FIG. **7**D). For clamping, fasteners **902**, **904** (FIG. **7**D) are provided which are inserted from above the members **899** through plain holes in the members **899** and tightly threaded into threaded holes in the member **900**.

The lower member **900** includes guides **906**, **907** that contain slide bearings **906***a*, **907***a* composed of friction reducing material. The slide bearings **906***a*, **907***a* partly surround longitudinal rails **912**, **913** that are in parallel with, and straddle the belt **802**. The rails **912**, **913** support the gripper along its working run from a retracted position to a fully forward position near to the slicing plane.

For each gripper there are two rails **912**, **913** to support and guide that gripper. Thus, there are two rails that straddle the belt **804** and two rails that straddle the belt **806**.

The gripper **894** is connected to the fixture **901** by a front plate **920** having a predominant lateral face and a rear plate **922** having a predominant longitudinal face. Each gripper **894** is provided with two air lines **930**, **932** for two-way pneumatic gripper open-and-close operability.

The air lines **930**, **932** are guided through lower rings **940** and upper rings **942** to an air tube storage area **950** above the food article feed apparatus **120** (FIG. **7**D). The air tube lines are routed around weighted rollers or slides **951** that are guided by longitudinal slots **952** and extend to a source of pressurized air. Thus, the movement of the rollers or slides along the slots under force of gravity, will take up slack in the air tubes when the grippers **894** are moving toward, and when in, the retracted position.

The gripper **894** travels from the retracted home position shown in FIG. **7**A to the advanced, forward position approaching the slicing plane.

The grippers **894** are as described in Published Patent Application No. WO 2010/011237, herein incorporated by reference.

Lower Conveyor

As illustrated in FIGS. **3**, **6**, **7**, and **7**E at a front end of the food article feed apparatus **120**, are three lower feed conveyors **992**, **994**, **998**, having endless belts **1002**, **1004**, **1008**, respectively. The endless belts **1002**, **1004** **1008** are independently driven and are directly opposed to presser plates **1003**, **1005**, **1007** respectively.

FIG. **6** shows the conveyor **992** has a drive roller **1010** having a central hub **1012** with a central bore **1014**. The drive roller **1010** has tubular stub axles **1016**, **1018** extending from opposite ends of the central hub **1012**. The tubular stub axles **1016**, **1018** are journaled for rotation by bearings **1020**, **1022** that are fastened to carrier blocks **1023**a.

The conveyor **994** includes a drive roller **1038** having a central hub **1042** with a bore **1044**. The drive roller **1038** has tubular stub axles **1046** and **1048** extending from opposite ends of the central hub **1042**. The tubular stub axles **1046**, **1040** are journaled by bearings **1050**, **1052** respectively that are attached to carrier blocks **1023**b.

A motor housing **1054**, including a base plate **1054**b and a cover **1054**a, is mounted to an end of an upper conveyor support bar **1056**. The base plate **1054**b of each side of the machine is fastened to a linear actuator, such as a pneumatic cylinder **1055**a and **1055**b respectively. The cylinders **1055**a, **1055**b are connected together by the support bar **1056**. Each cylinder slides on a fixed vertical rod **1057**a, **1057**b respectively. Thus, controlled air to the cylinders **1055**a, **1055**b can be used to uniformly raise or lower the near side housing **1054** and the far side housing **1054** uniformly.

A spindle **1060** extends through the motor housing **1054**, through a sleeve **1064**, through a coupling **1065**, through the tubular stub axle **1016**, through the central bore **1014**, through the tubular stub axle **1018**, through the tubular stub axle **1046**, and partly into the bore **1044**. The spindle **1060** has a hexagonal cross-section base region **1070**, a round cross-section intermediate region **1072**, and a hexagonal cross-section distal region **1074**. The hexagonal cross-section base region **1070** is locked for rotation with a surrounding sleeve **1071** to rotate therewith.

The intermediate region **1072** is sized to pass through the sleeve **1064**, through the tubular stub axle **1016**, through the central bore **1014**, and through the tubular stub axle **1018** to be freely rotatable therein. The distal region **1074** is configured to closely fit into a hexagonal shaped central channel **1078** of the tubular stub axle **1046** to be rotationally fixed with the tubular stub axle **1046** and the drive roller **1038**.

The sleeve **1064** includes a hexagonal perimeter end **1064**a that engages a hexagonal opening **1065**a of the coupling **1065**. The coupling **1065** includes an opposite hexagonal opening **1065**a that engages a hexagonal perimeter end **1016**a of the tubular stub axle **1016**. The coupling **1065** couples the sleeve **1064** and the stub axle **1016** for mutual rotation such that the sleeve **1064** and the drive roller **1010** are locked for rotation together, i.e., turning of the sleeve **1064** turns the drive roller **1010**.

Within the motor housing **1054** are two servomotors **1090**, **1092** mounted to the housing by fasteners. As shown in FIGS. **4** and **6**, the servomotor **1090** has a vertically oriented output shaft **1096** that rotates about a vertical axis connected to a worm gear **1098** that is enmesh with and drives a drive gear **1100** that rotates about a horizontal axis. The drive gear **1100** drives the sleeve **1071** that drives the region **1070** of the spindle to rotate the spindle **1060**. Rotation of the spindle **1060** rotates the drive roller **1038** via the hexagonal cross-section distal end region **1074**.

Adjacent to the servomotor **1090** is the servomotor **1092**. The servomotor **1092** is configured substantially identically with the servomotor **1090** except the worm gear **1098**, as shown in schematic form in FIG. **5**, of the servomotor **1092** drives a drive gear **1100** that drives the sleeve **1064** to rotate. The sleeve **1064** rotates independently of the round cross-section region **1072** of the spindle **1060**, and drives a stub axle **1016** to rotate, which rotates the drive roller **1010**.

The sleeves **1071** and **1064** are journaled for rotation by bearings. The drive gears **1100**, **1100** are fastened to the respective sleeve **1071**, **1064** using fasteners **1116**.

Each conveyor belt **1002**, **1004**, **1008** is wrapped around the respective drive roller and a front idle roller **1134**, **1135**, **1136** that is supported by respective side frames **1131**, **1132**.

Also, as shown in FIGS. **7**, **7**E, and **13**A-**13**C, the underside of the support bar **1056** carries pneumatic cylinders **1130**. Each pneumatic cylinder **1130** is supplied with a preselected air pressure to extend a piston rod **1013**, **1015**, **1017** to press down on presser plates **1003**, **1005**, **1007** to lightly press down on a top of the product below, clamping the food article between the presser plates **1003**, **1005**, **1007** and the belts **1002**, **1004**, **1008**. Piston rods **1013**a, **1015**a, **1017**a in their extended position and presser plates **1003**, **1005**, **1007**, in their depressed position **1003**a, **1005**b, **1007**a are illustrated in FIG. **7**E. The conveyor belts **1002**, **1004**, **1008** drive the food articles through corresponding orifices in the slicing block and into the slicing plane.

FIG. **7**F illustrates an alternate embodiment of the lower conveyor. The same reference signs indicate similar parts as described above. In the embodiment illustrated in FIG. **7**F, the lower conveyor **992**a, **994**a, **998**a is pivotable about an axis A parallel to the central axis of a drive roller **1010**a. Each conveyor belt **1002**, **1004**, **1008** is wrapped around the respective drive roller and a front idle roller **1134**, **1135**, **1136** that is supported by respective side frames **1131**, **1132**. Side frames **1131**, **1132** may be connected to a transverse bottom surface or bar **1133** which provides at least a region of contact for at least one piston rod **1137** disposed below the top surface of the conveyors. A support bar **1058** below the lower conveyors carries one or more pneumatic cylinders **1139**, such as three pneumatic cylinders, supplied with a pre-selected air pressure, each of which extends a piston rod to pivot the lower conveyor about the pivot axis. Extension of the piston rods tilts the lower conveying surface towards presser plates **1003**, **1005**, **1007** to provide pressure in grasping the food product between the presser plates **1003**, **1005**, **1007** and the lower conveyor **992**a, **994**a, **998**a. The tilt or pivot of the lower conveyor can be adjustable over a variable angular distance, such as 7 degrees. The lower conveyor **992**b, **994**b, **998**b is illustrated in is lowered position.

The drive roller **1010**a can be driven by a hexagonal shaft **1011** connected to a motor (not shown in FIG. **7**F). Hexagonal shaft **1011** comprises a circular channel **1009** which allows the hexagonal shaft, and accordingly the drive roller **1010**a, to pivot about the axis A of the circular channel **1009**. A combination of multiple concentric hexagonal shafts with a circular channel for coupling about a circular shaft can be used to drive adjacent lower conveyors.

Side frames **1131**, **1132** comprises an opening **1021** in the shape of an arc, which accommodates the cross-sectional dimensions of a support or alignment bar **1019**, which can extend across the span of lower conveyors and intersect the side frames of each lower conveyor. The angular angle of the arc corresponds to the degree of angular movement of the lower conveyor.

### Feed Paths

The illustrated apparatus provides three feed paths, although any number of paths are encompassed by the invention. The near side feed path is defined by the gripper **394** driven by the belt **802** which feeds the near side food article into the space between the conveyor belt **998** and presser plate **1007**. The middle feed path is defined by the gripper **394** driven by the belt **804** which feeds the middle food article into the space between the conveyor **994** and the presser plate **1005**. The far side fed path is defined by the gripper **394** driven by the belt **806** which feeds the far side food article into the space between the conveyor **992** and the presser plate **1003**.

### Food Article Loading Apparatus

As illustrated in FIG. **1**, the automatic food article loading apparatus **108** includes a lift tray assembly **220**, and a lift tray positioning apparatus **228**. The lift tray assembly **220** receives food articles to-be-sliced. The tray positioning apparatus **228** pivots the tray assembly **220** to be parallel with, and below the food article feed apparatus **120** in a staging position.

### Lift Tray Positioning Apparatus

FIGS. **8-10** illustrate the food article lift tray assembly **220** includes a frame **290** that supports movable food article support tray **302**. The tray **302** is removed in FIG. **10**. The frame **290** includes an end plate **291**. Food article are loaded onto the tray **302** until they abut the end plate **291**. The tray **302** includes four spaced-apart guard rails **303** that define three lanes corresponding to three feed paths for the slicing machine.

As illustrated in FIGS. **1** and **10**, the frame **290** is connected by a rear connection **330** and a front connection **332** to a lever **336**. The lever **336** is pivotally mounted onto the shaft **193**.

The tray positioning apparatus **228** includes a pneumatic or hydraulic, extendable cylinder **350** that has a rod **352** pivotally connected to the lever **336** or the frame **290** at a connection **353**, and a cylinder body **354** pivotally connected to the bottom wall **140** at a connection **356**. Extension or retraction of the rod **352** pivots the lever **336** and frame **290** about the connection **342**.

### Lift Tray Assembly

As shown in FIG. **10**, an inner frame **375** supports the tray **302** within the frame **290**. The inner frame **375** is movable vertically with respect to the frame **290**. The inner frame **375** is liftable by pneumatic cylinders **380** to an elevated position above the staging position below the feed paths to lift the food articles to be in the food paths and to be gripped by the grippers. The cylinders **380** have rods connected to cross members of the frame **375** and cylinder bodies fastened to cross members of the frame **290**. In the elevated position, the tray top surface **302**a is just above the top of the end plate **291** so the food articles can be moved longitudinally off the tray **302**.

### Food Article Gate

As illustrated in FIG. **13A-13D** a food article gate **2020** is operable to be used as a gate, to be used as a floor for supporting the food article, and to be used as a trap door to drop a food article remainder end through the trap door against a baffle **2022** and onto the scrap removal conveyor **122**. The scrap removal conveyor **122** is also located below the cutting plane to dispose of shaving scrap caused by the blade on the food article during idle dwell periods.

The scrap removal conveyor **122** can be continuously circulated by use of a drum motor on one of the rollers. The

conveyor delivers scrap to a discharge chute **2030** (FIGS. **13**D and **9**) where the scrap can be collected in a bucket or other means.

The gate **2020** can be operated to be positioned according to FIG. **13A-13C** by a linear actuator such as a servomotor actuator or a pneumatic cylinder, as shown in FIGS. **11** and **12**. A servomotor actuator **2036** is pivotally connected to the upper compartment **855** at a pivot point **2038** and has an actuator rod **2040** pivotally connected to a lever **2042** which is fixedly connected to an axle rod **2044**. The axle rod **2044** sealing penetrates through the cabinet wall as shown in FIG. **11**. The axle rod **2044** is fixed to the gate **2020**. The axle rod **2044** is journaled at an opposite end to a bracket **2048**. By extension or retraction of the rod **2044** the gate **2020** can be selectively pivoted by machine control.

### Laser Detectors

A separate food article end detector is used for each of the three illustrated food paths. Preferably, the detectors are laser distance sensors **2002**, **2004**, **2006**. Once the food articles are pivoted by the tray positioning apparatus **228** to the staging position below the feed paths, the sensors **2002**, **2004**, **2006** sense the ends of each food article in the three lanes on the tray **302**, and communicate that information to the machine control. The machine control uses this information to control the servomotors **850** to control the positioning of the grippers to the ends of each food article and also controls the actuation of each gripper. By knowing the exact end of the food article, the grippers know when to be activated to seize the food article.

### Slicing Head Section

The slicing head section is as described in WO 2010/011237, herein incorporated by reference.

The slicing block with orifices is also as described in WO 2010/011237, herein incorporated by reference.

The jump conveyor can also be configured as described in U.S. Ser. No. 11/449,574 filed Jun. 8, 2006 or WO 2010/011237, herein incorporated by reference.

### Laser Safety Guard System

The laser safety guard system **123** is illustrated in FIGS. **1** and **8**. The system comprises a central sensor that projects a horizontal fan beam approximately 360 degrees or as much of an angle as needed. If an obstruction is sensed, such as an operator's arm, one or more machine operations are halted by the machine control. The machine operations, such as the lift tray positioning apparatus, may be halted by machine controls when an obstruction in the fan beam is sensed. Other operations such as the slicing movement of the slicing blade, or the food article feeding apparatus, may also be halted with the laser safety guard system.

From the foregoing, it will be observed that numerous variations and modifications may be effected without departing from the spirit and scope of the invention. It is to be understood that no limitation with respect to the specific apparatus illustrated herein is intended or should be inferred.

The invention claimed is:

1. A food article slicing machine, comprising:

a food article loading apparatus with a lift tray assembly for moving food articles from a staging position to an elevated position at a beginning of a food article feed path;

a food article feed apparatus disposed over the food article loading apparatus having an upper conveyor assembly with a driven endless conveyor belt used in cooperation with a food article gripper for moving the food articles along the food article feed path;

a slicing station at an end of the food article feed path with a knife for slicing the food articles; and

a food article stop gate disposed upstream of the slicing station that forms a portion of the food article feed path,

wherein the food articles are supported in position along the food article feed path by at least the food article stop gate when the lift tray assembly is moved when in its elevated position, and

wherein the food article stop gate also opens to drop food article end portions.

**2**. The food article slicing machine of claim **1**, wherein movement of the conveyor belt is coordinated with movement of the food article gripper.

**3**. The food article slicing machine of claim **1**, wherein conveyor belt is used in cooperation with the food article gripper for moving the food articles along the food article feed path when the gripper seizes a food article.

**4**. The food article slicing machine of claim **1**, wherein food article gripper is driven and controlled when the gripper seizes a food article.

**5**. The food article slicing machine of claim **1**, wherein the conveyor belt is mechanically connected to the food article gripper.

**6**. The food article slicing machine of claim **1**, wherein food article gripper is mounted to a bottom run of the conveyor belt.

**7**. The food article slicing machine of claim **1**, wherein the food article gripper is clamped to a belt joint and guide assembly by a fixture.

**8**. The food article slicing machine of claim **1**, wherein food article stop gate is configured to pivot.

**9**. A food article slicing machine, comprising:

a slicing station comprising a knife blade and a knife blade drive driving the blade along a cutting path in a cutting plane;

a food article loading apparatus including a lift tray assembly moveable between a staging position and an elevated position, the elevated position being a position where food articles disposed within the lift tray assembly are in a food article feed path;

a food article feed apparatus disposed over said food article loading apparatus and having a conveyor assembly with independently driven endless conveyor belts,

wherein each of the conveyor belts is used in cooperation with an independently driven and controlled food article gripper for moving a food article along the food article feed path, and

wherein the conveyor assembly is an upper conveyor assembly; and

a food article stop gate disposed upstream of the slicing station that forms a portion of the food article feed path,

wherein the food articles are supported in position along the food article feed path by at least the food article stop gate when the lift tray assembly is moved when in its elevated position, the food articles passing over the food article stop gate when the food articles move along the food article feed path, and

wherein the food article stop gate also serves as a door for the removal of food article end portions.

**10**. The food article slicing machine of claim **9**, wherein movement of each of the conveyor belts is coordinated with movement of the food article gripper.

**11**. The food article slicing machine of claim **9**, wherein each of the conveyor belts is used in cooperation with the food article gripper for moving the food articles along the food article feed path when the gripper is in a closed position in which the gripper seizes a food article.

**12**. The food article slicing machine of claim **9**, wherein the food article gripper is independently driven and controlled when the gripper is in a closed position in which the gripper seizes a food article.

**13**. The food article slicing machine of claim **9**, wherein at least one of the conveyor belts is mechanically connected to the food article gripper.

**14**. The food article slicing machine of claim **9**, wherein the food article gripper is mounted to a bottom run of the conveyor belts.

**15**. The food article slicing machine of claim **9**, wherein the food article gripper is clamped to a belt joint and guide assembly by a fixture.

**16**. The food article slicing machine of claim **9**, wherein the food article stop gate is configured to pivot.

\* \* \* \* \*

# EXHIBIT B



US010639812B2

(12) **United States Patent**
    Lindee et al.

(10) Patent No.: **US 10,639,812 B2**
(45) Date of Patent: **May 5, 2020**

(54) **HIGH SPEED SLICING MACHINE**

(71) Applicant: **FORMAX, INC.**, Mokena (IL)

(72) Inventors: **Scott A. Lindee**, Mokena, IL (US);
**James E. Pasek**, Tinley Park, IL (US);
**David Hancock**, Morris, IL (US);
**Thomas C. Wolcott**, LaGrange, IL (US)

(73) Assignee: **PROVISUR TECHNOLOGIES, INC.**,
Chicago, IL (US)

( * ) Notice: Subject to any disclaimer, the term of this patent is extended or adjusted under 35 U.S.C. 154(b) by 127 days.

(21) Appl. No.: **16/017,346**

(22) Filed: **Jun. 25, 2018**

(65) **Prior Publication Data**

US 2018/0311853 A1     Nov. 1, 2018

**Related U.S. Application Data**

(62) Division of application No. 13/099,325, filed on May 2, 2011.

(Continued)

(51) **Int. Cl.**
**B26D 7/22**     (2006.01)
**B26D 7/01**     (2006.01)
(Continued)

(52) **U.S. Cl.**
CPC ............... **B26D 7/32** (2013.01); **B26D 7/225** (2013.01); **B26D 5/00** (2013.01); **B26D 7/0683** (2013.01);
(Continued)

(58) **Field of Classification Search**
CPC ........ B26D 7/06; B26D 7/0625; B26D 7/225; B26D 7/0683; B26D 7/30; B26D 7/32;
(Continued)

(56) **References Cited**

U.S. PATENT DOCUMENTS

2,047,400 A     7/1936   Walter
4,226,176 A     10/1980  Macchi
(Continued)

FOREIGN PATENT DOCUMENTS

DE     2912446     10/1980
DE     3912446     10/1990
(Continued)

OTHER PUBLICATIONS

Machine translation of DE19525742.
(Continued)

*Primary Examiner* — Phong H Nguyen
(74) *Attorney, Agent, or Firm* — Klintworth & Rozenblat IP LLP

(57)     **ABSTRACT**

A high-speed food article slicing machine with a slicing station, a moveable frame supporting a food article feed mechanism frame, a food article gate, and a safety guard system for detecting an intrusion into the machine. Food articles are loaded onto a lift tray and raised to a staging position where food articles are in contact with a food article gate. The lift tray is located in line with the food article feed paths such that lateral shifting of food articles into the feed paths is not needed. Food article grippers, individually driven along feed paths by an overhead conveyor, move food articles over the food article gate towards the slicing station. The food article gate functions to assist in removal of food article end portions. The slicing machines utilizes a horizontally radiating laser intrusion detector to shut down systems when an unwanted intrusion is sensed.

**11 Claims, 21 Drawing Sheets**



Case 5:20-cv-06069-SRB   Document 1-2   Filed 05/06/20   Page 2 of 30

### Related U.S. Application Data

(60) Provisional application No. 61/343,551, filed on May 1, 2010.

(51) **Int. Cl.**

| | |
|---|---|
| *B26D 7/32* | (2006.01) |
| *B26D 5/00* | (2006.01) |
| *B26D 7/06* | (2006.01) |
| *B26D 7/30* | (2006.01) |

(52) **U.S. Cl.**
CPC .......... *B26D 7/30* (2013.01); *B26D 2007/011* (2013.01); *B26D 2210/02* (2013.01); *Y10T 83/2074* (2015.04); *Y10T 83/654* (2015.04)

(58) **Field of Classification Search**
CPC ............... B26D 7/0608; B26D 7/0633; B26D 2210/00; B26D 2210/02; B26D 5/00; B26D 2007/011; B65G 15/00; B65G 15/10; B65G 15/12; B65G 15/14; B65G 15/16; B65G 15/30; B65G 15/50; Y10S 83/932; Y10T 83/6668; Y10T 83/202; Y10T 83/2192; Y10T 83/2194; Y10T 83/463; Y10T 83/647; Y10T 83/6504; Y10T 83/6505; Y10T 83/6537; Y10T 83/654; Y10T 83/9377; Y10T 83/2074
See application file for complete search history.

(56) **References Cited**

#### U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 4,583,435 | A | 4/1986 | Fessler |
| 4,934,232 | A | 6/1990 | Weber et al. |
| 5,191,820 | A | 3/1993 | Hartmann |
| 5,628,237 | A | 5/1997 | Lindee et al. |
| 5,974,925 | A | 11/1999 | Lindee et al. |
| 6,415,698 | B1 | 7/2002 | Haas et al. |
| 2004/0016331 | A1 | 1/2004 | Wolcott et al. |
| 2004/0031363 | A1 | 2/2004 | Lindee et al. |
| 2004/0055439 | A1 | 3/2004 | Lindee et al. |
| 2004/0139706 | A1 | 7/2004 | Drebing et al. |

| | | | |
|---|---|---|---|
| 2005/0082147 | A1 | 4/2005 | Mol |
| 2005/0132855 | A1 | 6/2005 | Weber |
| 2005/0199111 | A1 | 9/2005 | Sandberg et al. |
| 2006/0289281 | A1 | 12/2006 | Sandberg et al. |
| 2007/0214969 | A1 | 9/2007 | Mueller et al. |
| 2008/0185095 | A1 | 8/2008 | Gutknecht |
| 2008/0250944 | A1 | 10/2008 | Pryor et al. |
| 2009/0120256 | A1 | 5/2009 | Pasek |

#### FOREIGN PATENT DOCUMENTS

| | | |
|---|---|---|
| DE | 4235985 | 4/1994 |
| DE | 102008020248 | 5/1994 |
| DE | 3912445 | 8/1996 |
| DE | 19518583 | 11/1996 |
| DE | 19518595 | 11/1996 |
| DE | 195 25 742 A1 | 1/1997 |
| DE | 10353114 | 5/2005 |
| DE | DE2912446 | |
| EP | 0398602 | 11/1990 |
| EP | 00547389 | 6/1993 |
| EP | 0713753 A2 | 5/1996 |
| EP | 2566670 | 7/2016 |
| FR | 2677573 A1 | 12/1992 |
| JP | 2000-288983 A | 10/2000 |
| WO | 89/06588 | 7/1989 |
| WO | 0230635 | 4/2002 |
| WO | 2005/037501 | 4/2005 |
| WO | 2010011237 | 1/2010 |
| WO | 2011/139996 | 11/2011 |

#### OTHER PUBLICATIONS

Machine translation of FR2677573.
Machine translation of JP2000-288983.
International Search Report dated Jan. 27, 2012.
European search Report for European Patent Application No. EP 11 77 8126 dated Jan. 26, 2015, 3 pages.
Machine translation of DE102008020248.
Machine translation of DE10353114.
Machine translation of DE2912446.
Machine translation of DE4235985.
Machine translation of WO2005037501.
U.S. Appl. No. 61/343,551, entitled "High Speed Slicing Machine," filed May 1, 2010, 39 pages.



Fig. 1

Case 5:20-cv-06069-SRB    Document 1-2    Filed 05/06/20    Page 4 of 30



# Fig. 1A



Fig. 1B

Case 5:20-cv-06069-SRB   Document 1-2   Filed 05/06/20   Page 6 of 30

Appx145



Fig. 2

Case 5:20-cv-06069-SRB   Document 1-2   Filed 05/06/20   Page 7 of 30



Fig. 2A



Fig. 3



Fig. 5

Fig. 4

Case 5:20-cv-06069-SRB   Document 1-2   Filed 05/06/20   Page 10 of 30



Fig. 6

Case 5:20-cv-06069-SRB   Document 1-2   Filed 05/06/20   Page 11 of 30



Fig. 7



Fig. 7A



Fig. 7B



Fig. 7C

Case 5:20-cv-06069-SRB   Document 1-2   Filed 05/06/20   Page 15 of 30

Appx154



Fig. 7D

Case 5:20-cv-06069-SRB   Document 1-2   Filed 05/06/20   Page 16 of 30

Appx155



Fig. 7E

Case 5:20-cv-06069-SRB   Document 1-2   Filed 05/06/20   Page 17 of 30



**Fig. 7F**

Case 5:20-cv-06069-SRB   Document 1-2   Filed 05/06/20   Page 18 of 30



Fig. 8



Fig. 9

Case 5:20-cv-06069-SRB   Document 1-2   Filed 05/06/20   Page 20 of 30



Fig. 10

Case 5:20-cv-06069-SRB   Document 1-2   Filed 05/06/20   Page 21 of 30



Fig. 11



Fig. 12

Case 5:20-cv-06069-SRB   Document 1-2   Filed 05/06/20   Page 23 of 30

Appx162



Fig. 13A

Fig. 13B

Fig. 13C

Fig. 13D

1

# HIGH SPEED SLICING MACHINE

## CROSS-REFERENCE TO RELATED APPLICATIONS

This application claims the benefit of U.S. Provisional Application No. 61/343,551, filed May 1, 2010, and is a divisional application of U.S. Ser. No. 13/099,325, filed on May 2, 2011, the contents of which are incorporated herein in their entirety.

## BACKGROUND OF THE INVENTION

Many different kinds of food articles or food products, such as food slabs, food bellies, or food loaves are produced in a wide variety of shapes and sizes. There are meat loaves made from various meats, including ham, pork, beef, lamb, turkey, and fish. The meat in the food loaf may be in large pieces or may be thoroughly comminuted. These meat loaves come in different shapes (round, square, rectangular, oval, etc.) and in different lengths up to six feet (183 cm) or even longer. The cross-sectional sizes of the loaves are quite different; the maximum transverse dimension may be as small as 1.5 inches (4 cm) or as large as ten inches (25.4 cm). Loaves of cheese or other foods come in the same great ranges as to composition, shape, length, and transverse size.

Typically, the food loaves are sliced, the slices are grouped in accordance with a particular weight requirement, and the groups of slices are packaged and sold at retail. The number of slices in a group may vary, depending on the size and consistency of the food article and the desire of the producer, the wholesaler, or the retailer. For some products, neatly aligned stacked slice groups are preferred. For others, the slices are shingled or folded so that a purchaser can see a part of every slice through a transparent package.

Food articles can be sliced on high speed slicing machines such as disclosed in Published Patent Document WO 2010/011237 A1 or U.S. Pat. No. 5,628,237 or 5,974,925; or as commercially available as the Power Max 4000™ and FX180® slicers available from Formax, Inc. of Mokena, Ill., USA.

The FX180® machine can be configured as an automatically loaded, continuous feed machine, or an automatically loaded, back-clamp or gripper type machine.

For an automatically loaded, continuous feed machine, side-by-side upper and lower conveyor pairs drive food articles into the cutting plane. A gate is located in front of the conveyors. The initial food articles are loaded with leading ends abutting the gate. The gate is lowered and the food articles proceed into the conveyors. When the initial food articles are sliced to the extent that the trailing ends of the food articles clear the gate, the gate is raised and new food articles are loaded in the feed paths, held back by the gate. Shortly thereafter the gate is lowered and new food articles slide down to where lead ends of the new food articles abut trailing ends of the initial food articles being sliced. The new food articles are driven into the cutting plane trailing the initial food articles. Food articles are sequentially and continuously loaded in this manner, lead end-to-trailing end, in abutting contact with the preceding food articles.

U.S. Pat. No. 5,628,237 and European patent EP 0 713 753 describe a back-clamp or gripper type slicing machine. According to this type of slicing machine, food articles are loaded onto a lift tray and the lift tray is raised to a ready-to-sweep position. Loaf grippers are retracted after the previous food articles are sliced. During retraction of the loaf grippers, loaf-to-slicing blade gate doors are closed and

2

ends of the previous food articles are dropped through a loaf end door. After the grippers have reached the retracted position or "home position" remote from the slicing blade, a loaf sweep mechanism is activated, moving the loaf articles laterally together into the slicing position. A spacing mechanism moves down and spaces the food articles apart. The grippers then advance after it has been determined that the loaf sweep mechanism has moved the food articles to the slicing position. The grippers have onboard sensing mechanisms that are triggered by contact with the food articles. After sensing and gripping the food articles, the food articles are retracted slightly, and the loaf-to-slicing blade gate doors are opened and the food articles are advanced to the slicing plane of the slicing blade. The loaf sweep mechanism retracts and the loaf lift tray lowers, ready for the next reload cycle. According to this design, in practice, the reload cycle is accomplished in about eight seconds. In a high-volume slicing operation, reload cycle time can be a significant limitation to optimum production efficiency.

The machine disclosed in WO 2010/011237 A1 provides an automated, food article tray loading method and apparatus wherein food articles can be loaded into the lift tray into designated and separated lanes which automatically assume a preload condition, and after the food articles are loaded, food article separation is maintained on the lift tray. A food article transfer receives the food articles on the lift tray in their separated positions and transfers the food articles into the slicing feed paths while maintaining the separated positions. A food article end disposal system utilizes a transport that laterally moves end portions outside of the feed path and ejects the end portions as the transport is moved back into the feed path to receive the subsequent end portions. The machine utilizes food article grippers that are fixed onto conveyor belts which support and drive the food articles in the feed paths.

The present inventors have recognized that it would be desirable to slice plural food articles with independent feeding and weighing capabilities, with hygienic and operational enhancements.

## SUMMARY OF THE INVENTION

The invention provides a mechanism and method for slicing multiple food articles with independency of feed rate and the ability to weigh each product group from each food article respectively to achieve optimal weight control and yield of each food article.

The present invention provides a high-speed slicing apparatus and a weighing and classifying conveyor combination that provides plural advantages in machine cost, productivity, food hygiene, and operation.

The invention provides a lift tray that is located in line with the food article feed paths and is lowered to receive food articles and raised into the feed paths. There is no need for lateral shifting of food articles into the feed paths. Food article grippers are driven along the feed paths by an overhead conveyor. A laser food article end detection system is employed in each feed path to detect the terminal end of the food article to control the positioning of the gripper for that path.

The invention provides the use of an automatic debris or scrap removal conveyor that also provides for end portion removal.

The invention provides an automated cleanup position wherein the elevated food article feed mechanism can be collapsed to a more convenience plane or maintenance position, and the blade cover is automatically pivoted to a

cleanup position. The combination provides for enhanced portion control and yield. A food article feed mechanism ensures accurate feeding by the use of servo driven and controlled feed belts and grippers. The slicing mechanism includes three independent drives for slicing multiple food articles simultaneously.

An improved food article stop gate is provided that also serves as a door for the removal of food article end portions.

A horizontally radiating laser intrusion detector is used to shut down systems when an unwanted intrusion by an operator is detected.

An automated, food article tray loading method and apparatus is provided wherein food articles can be loaded into the lift tray into designated and separated lanes which automatically assume a preload condition, and after the food articles are loaded, food article separation is maintained on the lift tray.

Numerous other advantages and features of the present invention will become readily apparent from the following detailed description of the invention and the embodiments thereof, and from the accompanying drawings.

BRIEF DESCRIPTION OF THE DRAWINGS

FIG. 1 is a near side elevational view of a slicing machine and a weighing and classifying conveyor combination of the present invention;

FIG. 1A is an enlarged fragmentary view taken from FIG. 1;

FIG. 1B is a perspective view of the slicing machine of FIG. 1 in a clean-up configuration;

FIG. 2 is a plan view of the combination of FIG. 1 with some panels and parts removed or made transparent illustrating some underlying components;

FIG. 2A is a bottom perspective view of a portion of FIG. 2;

FIG. 3 is a sectional view taken generally along line 3-3 of FIG. 2 with some panels and parts removed or made transparent and underlying components revealed;

FIG. 4 is a schematic, sectional view taken generally along line 4-4 of FIG. 6 with some panels and parts removed or made transparent and underlying components revealed;

FIG. 5 is a schematic, sectional view taken generally along line 5-5 of FIG. 6 with some panels and parts removed or made transparent and underlying components revealed;

FIG. 6 is a sectional view taken generally along line 6-6 of FIG. 3 with some panels and parts removed or made transparent and underlying components revealed;

FIG. 7 is a fragmentary elevational view taken generally along line 7-7 of FIG. 2 with some panels and parts removed or made transparent and underlying components revealed;

FIG. 7A is a fragmentary perspective view of a portion of FIG. 7;

FIG. 7B is an enlarged fragmentary view of apportion of FIG. 7A;

FIG. 7C is an enlarged rear perspective view of a portion of FIG. 7;

FIG. 7D is a top perspective view of a portion of FIG. 7;

FIG. 7E is an enlarged fragmentary view of a portion of FIG. 7;

FIG. 7F is an enlarged fragmentary view of an alternate embodiment of a lower conveyor.

FIG. 8 is a fragmentary rear perspective view of the apparatus of FIG. 1;

FIG. 9 is a far side perspective view of the apparatus of FIG. 1 with a lift tray in a lowered position;

FIG. 10 is a top perspective rear view of the lift tray of FIG. 9 with a tray platform removed;

FIG. 11 is an enlarged, fragmentary near side perspective view of a portion of the slicing machine of FIG. 1;

FIG. 12 is an enlarged, fragmentary far side perspective view with a door removed to show underlying components;

FIG. 13A is a schematic diagram of the loaf feed apparatus in a first stage of operation;

FIG. 13B is a schematic diagram of the loaf feed apparatus in a second stage of operation;

FIG. 13C is a schematic diagram of the loaf feed apparatus in a third stage of operation; and

FIG. 13D is a schematic diagram of the loaf feed apparatus taken generally along line 13D-13D of FIG. 13C.

DESCRIPTION OF THE PREFERRED
EMBODIMENTS

While this invention is susceptible of embodiment in many different forms, there are shown in the drawings, and will be described herein in detail, specific embodiments thereof with the understanding that the present disclosure is to be considered as an exemplification of the principles of the invention and is not intended to limit the invention to the specific embodiments illustrated.

Published Patent Application No. WO 2010/011237 and U.S. Pat. No. 5,628,237 are herein incorporated by reference.

Overall Description

FIGS. 1-3 illustrate a high-speed slicing apparatus 100 and a weighing and classifying conveyor or output conveyor 102 according to a preferred embodiment of the invention. The slicing apparatus 100 includes a base section 104, a collapsible frame 105, an automatic food article loading apparatus 108 that receives food articles 110 to-be-sliced, a food article feed apparatus 120, a food article end and scrap removal conveyor 122 (FIGS. 13C and 13D), a laser safety guard system 123, a slicing head apparatus 124, and a slice receiving conveyor 130. The slicing head apparatus includes a slicing blade 125 that defines a slicing plane and an orifice plate or slicing block 126 that guides food articles into the slicing plane, the blade cutting closely to the orifice plate. The slicing apparatus also includes a computer display touch screen 131 that is pivotally mounted and supported by a support 132.

Base Section

The base section 104 includes a compartment 136 having side walls 138a, 138b, a bottom wall 140, and an inclined top wall 142. The apparatus 100 is supported on four adjustable feet 144. The compartment 136 has a tapered side profile from back to front wherein the top wall 142 slants down from back to front. The slanted orientation of the top wall 142 ensures water drainage off the top of the compartment 136. The compartment is supported on adjustable feet 144.

The compartment 136 includes a near side door 152, a far side door 156 (FIG. 9), and a rear door 162 that permit access into the compartment or to modules normally held within the compartment 136. The compartment 136 typically affords an enclosure for a computer, motor control equipment, a low voltage supply, and a high voltage supply

5

and other mechanisms as described below. The compartment may also include a pneumatic supply or a hydraulic supply, or both (not shown).

## Collapsible Frame and Elevated Housings

The base section **104** supports the collapsible frame **105** as shown in FIGS. **1**, **1B** and **9**. The collapsible frame **105** includes a foldable support mechanism **174** that supports a food article feed mechanism frame **190**.

The foldable support mechanism **174** includes a servomotor **175** that drives a gear reducer **176** having a drive shaft **178** that extends out of far side of the compartment **136** (FIG. **9**). The drive shaft **178** is rotationally fixed to parallel levers **180***a*, **180***b* which swing out with a turning of the drive shaft **178**. The levers **180***a*, **180***b* are pivotally connected to a column **182** via a rotary connection **184**. The column **182** is pivotally connected at a pivot connection **192** to the frame **190** which supports the food article feed apparatus **120**.

For cleaning and maintenance purposes, the collapsible frame **105** is collapsed down by actuating the servomotor **175** and gear reducer **176** to rotate the levers **180***a*, **180***b*, which draws down the column **182** as shown in FIG. **1B**. The frame **190**, and all equipment supported thereby, is lowered for more convenient maintenance and cleaning as illustrated in FIG. **1B**. In some cases, this eliminates the need for ladders or platforms when servicing the slicing apparatus **100**.

The slicing head **124** is covered by a guard **119** that is attached to the frame **190** such that when the frame is pivoted down as shown in FIG. **1B**, the guard **119** is pivoted away from a slicing head base **117** to expose the slicing blade **125** and internals for cleaning and maintenance.

Additionally, the elevation of the food article feed apparatus can be adjusted by using the servomotor to selectively pivot the levers **180***a*, **180***b* and lower the rear of the frame **190**. At a front, the frame **190** is supported on a cross shaft **193** that is eccentrically fixed at each end to a round cam **194** (FIG. **1A**). The cam is journaled in a round opening **195** in side supports **197***a*, **197***b* and the cam is fixed for non-rotation to the respective side support by fasteners **199**. The far side is shown in FIG. **1A**, with the understanding that the near side is mirror image identical across the longitudinal vertical center plane of the machine. As shown in FIG. **1A**, because the dimension "a" is smaller than the dimension "b", the shaft ends can be temporarily loosened by removing the fasteners and the shaft and cams can be rotated 180 degrees about a centerline of the shaft, and the cams can be re-fastened to be fixed to the side supports. The elevation will be different between the two 180-degree adjustable positions. Thus, the machine will accommodate two different height settings for different types of food articles.

## Food Article Feed Apparatus

An upper conveyor assembly **530** of the food article feed apparatus **120** is shown in FIG. **2**. The conveyor assembly **530** includes three independently driven endless conveyor belts **802**, **804**, **806**. Each belt **802**, **804**, **806** is identically driven so only the drive for the belt **802** will be described.

The belt **802** is wrapped around a toothed front drive roller or pulley **812** and a back-idler roller or pulley **816**. The belt **802** preferably has teeth that engage teeth of the two rollers **812**, **816**. Each drive roller **812** includes a toothed outer diameter **812***a* and a toothed, recessed diameter **812***b*.

6

An endless drive belt **820** wraps around the recessed diameter **812***b*. The drive belt **820** also wraps around a drive roller **824** that is fixed to a drive shaft **828**. The drive shaft **828** extends transversely to the belt **802** and is journaled for rotation within a bearing **830** mounted on a near side frame member **836**.

The drive shaft **828** penetrates a far side frame member **838** and extends to a bearing **843**, coupled to a gear reducer **842** mounted to a support frame **854**. The gear reducer **842** is coupled to a servomotor **850** that is mounted to the support frame **854**.

The servomotor **850** drives the drive shaft **828** which turns the roller **824** which circulates the belt **820** which rotates the roller **812** which circulates the belt **802**.

Three servomotors **850** are mounted to the support frame **854** and all are located within an upper compartment **855** that is supported by the frame **190**.

The idler rollers **816** are provided with a pair of mirror image identical adjustable cam belt tension adjustment mechanisms **882***a*, **882***b*. As shown in FIG. **7A**, each mechanism **882***a*, **882***b* includes a fork **885** that is braced from the respective side frame member **836**, **838** by an adjustable cam **883**. The fork **885** is guided by upper and lower pins **886***a*, **886***b* so as to slide rearward and forward and has an end **891** that captures an axle **889** that rotationally supports the idle rollers **816**. For adjustment, the cam fastener **883***a* is loosened so as to be rotatable on the respective side frame member **836**, **838**, rotated to achieve the desired belt tension, and then the cam fastener is tightened to hold the cam fixed.

FIG. **7B** illustrates a gripper **894** used in cooperation with the belt **802**. The gripper **894** is mounted to a bottom run of the belt **802** and is translated along the food article path by the belt **802**. The gripper **894** is clamped to a belt joint and guide assembly **896** by a fixture **901** that engages the assembly **896** and is fixed thereto by a clamping set screw **897**. The assembly **896** comprises a pair of upper members **899** and a lower member **900**. The upper members **899** can include teeth **899***a* that mesh engage the teeth of the belt **802** once the members **899**, **900** are fastened together to splice the free ends **802***e*, **802***f* of the belt **802** (FIG. **7D**). For clamping, fasteners **902**, **904** (FIG. **7D**) are provided which are inserted from above the members **899** through plain holes in the members **899** and tightly threaded into threaded holes in the member **900**.

The lower member **900** includes guides **906**, **907** that contain slide bearings **906***a*, **907***a* composed of friction reducing material. The slide bearings **906***a*, **907***a* partly surround longitudinal rails **912**, **913** that are in parallel with, and straddle the belt **802**. The rails **912**, **913** support the gripper along its working path from a retracted position to a fully forward position near to the slicing plane.

For each gripper there are two rails **912**, **913** to support and guide that gripper. Thus, there are two rails that straddle the belt **804** and two rails that straddle the belt **806**.

The gripper **894** is connected to the fixture **901** by a front plate **920** having a predominant lateral face and a rear plate **922** having a predominant longitudinal face. Each gripper **894** is provided with two air lines **930**, **932** for two-way pneumatic gripper open-and-close operability.

The air lines **930**, **932** are guided through lower rings **940** and upper rings **942** to an air tube storage area **950** above the food article feed apparatus **120** (FIG. **7D**). The air tube lines are routed around weighted rollers or slides **951** that are guided by longitudinal slots **952** and extend to a source of pressurized air. Thus, the movement of the rollers or slides along the slots under force of gravity, will take up slack in

the air tubes when the grippers **894** are moving toward, and when in, the retracted position.

The gripper **894** travels from the retracted home position shown in FIG. **7**A to the advanced, forward position approaching the slicing plane.

The grippers **894** are as described in Published Patent Application No. WO 2010/011237, herein incorporated by reference.

Lower Conveyor

As illustrated in FIGS. **3**, **6**, **7**, and **7**E at a front end of the food article feed apparatus **120**, are three lower feed conveyors **992**, **994**, **998**, having endless belts **1002**, **1004**, **1008**, respectively. The endless belts **1002**, **1004** **1008** are independently driven and are directly opposed to presser plates **1003**, **1005**, **1007** respectively.

FIG. **6** shows the conveyor **992** has a drive roller **1010** having a central hub **1012** with a central bore **1014**. The drive roller **1010** has tubular stub axles **1016**, **1018** extending from opposite ends of the central hub **1012**. The tubular stub axles **1016**, **1018** are journaled for rotation by bearings **1020**, **1022** that are fastened to carrier blocks **1023**a.

The conveyor **994** includes a drive roller **1038** having a central hub **1042** with a bore **1044**. The drive roller **1038** has tubular stub axles **1046** and **1048** extending from opposite ends of the central hub **1042**. The tubular stub axles **1046**, **1040** are journaled by bearings **1050**, **1052** respectively that are attached to carrier blocks **1023**b.

A motor housing **1054**, including a base plate **1054**b and a cover **1054**a, is mounted to an end of an upper conveyor support bar **1056**. The base plate **1054**b of each side of the machine is fastened to a linear actuator, such as a pneumatic cylinder **1055**a and **1055**b respectively. The cylinders **1055**a, **1055**b are connected together by the support bar **1056**. Each cylinder slides on a fixed vertical rod **1057**a, **1057**b respectively. Thus, controlled air to the cylinders **1055**a, **1055**b can be used to uniformly raise or lower the near side motor housing **1054** and the far side motor housing **1054** uniformly.

A spindle **1060** extends through the motor housing **1054**, through a sleeve **1064**, through a coupling **1065**, through the tubular stub axle **1016**, through the central bore **1014**, through the tubular stub axle **1018**, through the tubular stub axle **1046**, and partly into the bore **1044**. The spindle **1060** has a hexagonal cross-section base region **1070**, a round cross-section intermediate region **1072**, and a hexagonal cross-section distal end region **1074**. The hexagonal cross-section base region **1070** is locked for rotation with a surrounding sleeve **1071** to rotate therewith.

The intermediate region **1072** is sized to pass through the sleeve **1064**, through the tubular stub axle **1016**, through the central bore **1014**, and through the tubular stub axle **1018** to be freely rotatable therein. The distal region **1074** is configured to closely fit into a hexagonal shaped central channel **1078** of the tubular stub axle **1046** to be rotationally fixed with the tubular stub axle **1046** and the drive roller **1038**.

The sleeve **1064** includes a hexagonal perimeter end **1064**a that engages a hexagonal opening **1065**a of the coupling **1065**. The coupling **1065** includes an opposite hexagonal opening **1065**a that engages a hexagonal perimeter end **1016**a of the tubular stub axle **1016**. The coupling **1065** couples the sleeve **1064** and the stub axle **1016** for mutual rotation such that the sleeve **1064** and the drive roller **1010** are locked for rotation together, i.e., turning of the sleeve **1064** turns the drive roller **1010**.

Within the motor housing **1054** are two servomotors **1090**, **1092** mounted to the housing by fasteners. As shown in FIGS. **4** and **6**, the servomotor **1090** has a vertically oriented output shaft **1096** that rotates about a vertical axis connected to a worm gear **1098** that is enmesh with and drives a drive gear **1100** that rotates about a horizontal axis. The drive gear **1100** drives the sleeve **1071** that drives the region **1070** of the spindle to rotate the spindle **1060**. Rotation of the spindle **1060** rotates the drive roller **1038** via the hexagonal cross-section distal end region **1074**.

Adjacent to the servomotor **1090** is the servomotor **1092**. The servomotor **1092** is configured substantially identically with the servomotor **1090** except the worm gear **1098**, as shown in schematic form in FIG. **5**, of the servomotor **1092** drives a drive gear **1100** that drives the sleeve **1064** to rotate. The sleeve **1064** rotates independently of the round cross-section region **1072** of the spindle **1060**, and drives a stub axle **1016** to rotate, which rotates the drive roller **1010**.

The sleeves **1071** and **1064** are journaled for rotation by bearings. The drive gears **1100**, **1100** are fastened to the respective sleeve **1071**, **1064** using fasteners **1116**.

Each conveyor belt **1002**, **1004**, **1008** is wrapped around the respective drive roller and a front idle roller **1134**, **1135**, **1136** that is supported by respective side frames **1131**, **1132**.

Also, as shown in FIGS. **7**, **7E**, and **13A-13C**, the underside of the support bar **1056** carries pneumatic cylinders **1130**. Each pneumatic cylinder **1130** is supplied with a preselected air pressure to extend a piston rod **1013**, **1015**, **1017** to press down on presser plates **1003**, **1005**, **1007** to lightly press down on a top of the product below, clamping the food article between the presser plates **1003**, **1005**, **1007** and the belts **1002**, **1004**, **1008**. Piston rods **1013**a, **1015**a, **1017**a in their extended position and presser plates **1003**, **1005**, **1007**, in their depressed position **1003**a, **1005**b, **1007**a are illustrated in FIG. **7**E. The conveyor belts **1002**, **1004**, **1008** drive the food articles through corresponding orifices in the slicing block and into the slicing plane.

FIG. **7**F illustrates an alternate embodiment of the lower conveyor. The same reference signs indicate similar parts as described above. In the embodiment illustrated in FIG. **7**F, the lower conveyor **992**a, **994**a, **998**a is pivotable about an axis A parallel to the central axis of a drive roller **1010**a. Each conveyor belt **1002**, **1004**, **1008** is wrapped around the respective drive roller and a front idle roller **1134**, **1135**, **1136** that is supported by respective side frames **1131**, **1132**. Side frames **1131**, **1132** may be connected to a transverse bottom surface or bar **1133** which provides at least a point of contact for at least one piston rod **1137** disposed below the top surface of the conveyors. A support bar **1058** below the lower conveyors carries one or more pneumatic cylinders **1139**, such as three pneumatic cylinders, supplied with a pre-selected air pressure, each of which extends a piston rod to pivot the lower conveyor about the pivot axis. Extension of the piston rods tilts the lower conveying surface towards presser plates **1003**, **1005**, **1007** to provide pressure in grasping the food product between the presser plates **1003**, **1005**, **1007** and the lower conveyor **992**a, **994**a, **998**a. The tilt or pivot of the lower conveyor can be adjustable over a variable angular distance, such a 7 degrees. The lower conveyor **992**b, **994**b, **998**b is illustrated in is lowered position.

The drive roller **1010**a can be driven by a hexagonal shaft **1011** connected to a motor (not shown in FIG. **7**F). Hexagonal shaft **1011** comprises a circular channel **1009** which allows the hexagonal shaft, and accordingly the drive roller **1010**a, to pivot about the axis A of the circular channel **1009**. A combination of multiple concentric hexagonal shafts with

a circular channel for coupling about a circular shaft can be used to drive adjacent lower conveyors.

Side frames **1131**, **1132** comprises an opening **1021** in the shape of an arc, which accommodates the cross-sectional dimensions of a support or alignment bar **1019**, which can extend across the span of lower conveyors and intersect the side frames of each lower conveyor. The angular angle of the arc corresponds to the degree of angular movement of the lower conveyor.

### Feed Paths

The illustrated apparatus provides three feed paths, although any number of paths are encompassed by the invention. The near side feed path is defined by the gripper **394** driven by the belt **802** which feeds the near side food article into the space between the conveyor belt **998** and presser plate **1007**. The middle feed path is defined by the gripper **394** driven by the belt **804** which feeds the middle food article into the space between the conveyor **994** and the presser plate **1005**. The far side fed path is defined by the gripper **394** driven by the belt **806** which feeds the far side food article into the space between the conveyor **992** and the presser plate **1003**.

### Food Article Loading Apparatus

As illustrated in FIG. **1**, the automatic food article loading apparatus **108** includes a lift tray assembly **220**, and a lift tray positioning apparatus **228**. The lift tray assembly **220** receives food articles to-be-sliced. The tray positioning apparatus **228** pivots the tray assembly **220** to be parallel with, and below the food article feed apparatus **120** in a staging position.

### Lift Tray Positioning Apparatus

FIGS. **8-10** illustrate the food article lift tray assembly **220** includes a frame **290** that supports movable food article support tray **302**. The tray **302** is removed in FIG. **10**. The frame **290** includes an end plate **291**. Food article are loaded onto the tray **302** until they abut the end plate **291**. The tray **302** includes four spaced-apart guard rails **303** that define three lanes corresponding to three feed paths for the slicing machine.

As illustrated in FIGS. **1** and **10**, the frame **290** is connected by a rear connection **330** and a front connection **332** to a lever **336**. The lever **336** is pivotally mounted onto the shaft **193**.

The tray positioning apparatus **228** includes a pneumatic or hydraulic, extendable cylinder **350** that has a rod **352** pivotally connected to the lever **336** or the frame **290** at a connection **353**, and a cylinder body **354** pivotally connected to the floor **140** at a connection **356**. Extension or retraction of the rod **352** pivots the lever **336** and frame **290** about the connection **342**.

### Lift Tray Assembly

As shown in FIG. **10**, an inner frame **375** supports the tray **302** within the frame **290**. The inner frame **375** is movable vertically with respect to the frame **290**. The inner frame **375** is liftable by pneumatic cylinders **380** to an elevated position above the staging position below the feed paths to lift the food articles to be at the feed paths and to be gripped by the grippers. The cylinders **380** have rods connected to cross members of the frame **375** and cylinder bodies fastened to cross members of the frame **290**. In the elevated position, the tray top surface **302**$a$ is just above the top of the end plate **291** so the food articles can be moved longitudinally off the tray **302**.

### Food Article Gate

As illustrated in FIG. **13A-13D** a food article gate **2020** is operable to be used as a gate, to be used as a floor for supporting the food article, and to be used as a trap door to drop a food article remainder end through the trap door against a baffle **2022** and onto the scrap removal conveyor **122**. The scrap removal conveyor **122** is also located below the cutting plane to dispose of shaving scrap caused by the blade on the food article during idle dwell periods.

The scrap removal conveyor **122** can be continuously circulated by use of a drum motor on one of the rollers. The conveyor delivers scrap to a discharge chute **2026** (FIGS. **13**D and **9**) where the scrap can be collected in a bucket or other means.

The gate **2020** can be operated to be positioned according to FIG. **13A-13C** by a linear actuator such as a servomotor actuator or a pneumatic cylinder, as shown in FIGS. **11** and **12**. A servomotor actuator **2036** is pivotally connected to the upper compartment **855** at a pivot point **2038** and has an actuator rod **2040** pivotally connected to a lever **2042** which is fixedly connected to an axle rod **2044**. The axle rod **2044** sealing penetrates through the cabinet wall as shown in FIG. **11**. The axle rod **2044** is fixed to the gate **2020**. The axle rod **2044** is journaled at an opposite end to a bracket **2048**. By extension or retraction of the rod **2044** the gate **2020** can be selectively pivoted. By machine control.

### Laser Detectors

A separate food article end detector is used for each of the three illustrated feed paths. Preferably, the detectors are laser distance sensors **2002**, **2004**, **2006**. Once the food articles are pivoted by the tray positioning apparatus **228** to the staging position below the feed paths, the sensors **2002**, **2004**, **2006** sense the ends of each food article in the three lanes on the tray **302**, and communicate that information to the machine control. The machine control uses this information to control the servomotors **850** to control the positioning of the grippers to the ends of each food article and also controls the actuation of each gripper. By knowing the exact end of the food article, the grippers know when to be activated to seize the food article.

### Slicing Head Section

The slicing head section is as described in WO 2010/011237, herein incorporated by reference.

The slicing block with orifices is also as described in WO 2010/011237, herein incorporated by reference.

The jump conveyor can also be configured as described in U.S. Ser. No. 11/449,574 filed Jun. 8, 2006 or WO 2010/011237, herein incorporated by reference.

### Laser Safety Guard System

The laser safety guard system **123** is illustrated in FIGS. **1** and **8**. The system comprises a central sensor that projects a horizontal fan beam approximately 360 degrees or as much of an angle as needed. If an obstruction is sensed, such as an operator's arm, one or more machine operations are halted by the machine control. The machine operations, such as the

11

lift tray positioning apparatus, may be halted by machine controls when an obstruction in the fan beam is sensed. Other operations such as the slicing movement of the slicing blade, or the food article feeding apparatus, may also be halted with the laser safety guard system.

From the foregoing, it will be observed that numerous variations and modifications may be effected without departing from the spirit and scope of the invention. It is to be understood that no limitation with respect to the specific apparatus illustrated herein is intended or should be inferred.

The invention claimed is:

1. A food article slicing machine comprising:
   a) a slicing station comprising a knife blade and a knife blade drive driving the blade along a cutting path in a cutting plane;
   b) a food article loading apparatus;
   c) a food article feed apparatus disposed over said food article loading apparatus,
   d) said food article feed apparatus having a conveyor assembly with independently driven endless conveyor belts,
   e) wherein each of the conveyor belts is connected to a food article gripper for moving a food article along a food article feed path,
   f) the conveyor assembly is an upper conveyor assembly,
   g) a food article stop gate disposed upstream of the slicing station forms a portion of the food article feed path,
   h) wherein the food article loading apparatus includes a lift tray assembly moveable between a staging position and an elevated position, said elevated position being a position wherein the food articles disposed within the lift tray assembly are in the food article feed path,
   i) the food articles are supported in position along the food article feed path by at least the food article stop gate when the lift tray assembly is moved from its elevated position,
   j) wherein the food article stop gate also serves as a door for the removal of food article end portions.

12

2. The food article slicing machine of claim 1, wherein the food article feed path comprise lanes within a lift tray.

3. The food article slicing machine of claim 1, wherein the food article feed path feeds the food article between a front lower conveyor and an upper presser plate upstream of the slicing station.

4. The food article slicing machine of claim 3, wherein the lower conveyor pivots between a first position which decreases a distance between the upper presser plate and the lower conveyor, and a second position which increases the distance between the upper presser plate and the lower conveyor.

5. The food article slicing machine of claim 1, wherein each independently driven endless conveyor belt is wrapped around a drive roller; the drive roller having a toothed outer diameter for engaging with the endless conveyor belt and a toothed recessed diameter for engaging with a drive belt.

6. The food article slicing machine of claim 5, wherein the drive belt is connected to a drive shaft connected to a servomotor.

7. The food article slicing machine of claim 6, wherein each endless conveyor belt is driven independently by a servomotor; each servomotor arranged on the same side of the endless conveyor belts.

8. The food article slicing machine of claim 1, wherein each independently driven endless conveyor belt can be timed to move food articles towards the slicing station at the same rate.

9. The food article slicing machine of claim 1, wherein movement of each conveyor belt is in a plane parallel to the food article feed path.

10. The food article slicing machine of claim 1, wherein a plane defined by a surface of each conveyer belt is parallel to the food article feed path.

11. The food article slicing machine of claim 1, wherein the lift tray assembly pivots between the staging position and the elevated position.

* * * * *

**Query    Reports    Utilities    Help    Log Out**

APPEAL,CLOSED,MAPJ,PHV,STAYED,USPTO

# U.S. District Court
# Western District of Missouri (St. Joseph)
# CIVIL DOCKET FOR CASE #: 5:19-cv-06021-SRB

| | |
|---|---|
| Provisur Technologies, Inc. v. Weber, Inc. et al | Date Filed: 02/22/2019 |
| Assigned to: District Judge Stephen R. Bough | Date Terminated: 10/28/2022 |
| Case in other court: Federal Circuit Court of Appeals, 23-01438 | Jury Demand: Both |
|                 Federal Circuit Court of Appeals, 23-01476 | Nature of Suit: 830 Patent |
| Cause: 35:271 Patent Infringement | Jurisdiction: Federal Question |

**Plaintiff**

**Provisur Technologies, Inc.**                          represented by  **Carla J Baumel**
Colorado Department of Law
1300 Broadway
10th Floor
Denver, CO 80203
720-508-6235
Email: carla.baumel@coag.gov
*TERMINATED: 04/20/2020*
*LEAD ATTORNEY*
*PRO HAC VICE*

**Craig C. Martin**
Willkie Farr & Gallagher LLP
300 N. LaSalle Dr.
Ste 50th Floor
Chicago, IL 60654
312-728-9040
Fax: 312-728-9199
Email: cmartin@willkie.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Heather M Schneider**
Willkie Farr & Gallagher LLP
787 Seventh Ave.
New York, NY 10019
212-728-8685
Email: hschneider@willkie.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Henry C. Thomas**
300 N. LaSalle
Chicago, IL 60654

**Appx170**

(312) 728-9021
Email: hthomas@willkie.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Michael Babbitt**
Willkie Farr & Gallagher LLP
300 N. LaSalle Dr.
Ste 50th Floor
Chicago, IL 60654
312-728-9070
Fax: 312-728-9199
Email: mbabbitt@willkie.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Mitchell Feldhake**
Willkie Farr & Gallagher, LLP
300 North LaSalle
Chicago, IL 60654
312-728-9051
Email: mfeldhake@willkie.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Ren-How H. Harn**
300 North La Salle Street
Chicago, IL 60654
312-728-9000
Email: rharn@willkie.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Sara T Horton**
Willkie Farr & Gallagher LLP
300 N. LaSalle Dr.
Ste 50th Floor
Chicago, IL 60654
312-728-9040
Fax: 312-728-9199
Email: shorton@willkie.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Timothy Barron**
Jenner & Block - Chicago
353 N. Clark Street
Chicago, IL 60654
312-923-8309

Email: tbarron@jenner.com
*TERMINATED: 04/20/2020*
*LEAD ATTORNEY*
*PRO HAC VICE*

**W. Patrick Conlon**
Willkie Farr & Gallagher, LLP
300 N. La Salle Dr.
Chicago, IL 60653
312-728-9063
Email: pconlon@willkie.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Matt D. Basil**
Willkie Farr & Gallagher, LLP
300 North LaSalle Dr.
Chicago, IL 60654
312-728-9020
Email: mbasil@willkie.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Taylor Brooke Concannon Hausmann**
Husch Blackwell LLP - KCMO
4801 Main Street
Suite 1000
Kansas City, MO 64112-2551
816-983-8000
Fax: 816-983-8080
Email:
taylor.hausmann@huschblackwell.com
*ATTORNEY TO BE NOTICED*

**Tessa K. Jacob**
Husch Blackwell LLP - KCMO
4801 Main Street
Suite 1000
Kansas City, MO 64112-2551
816-983-8233
Fax: 816/983-8080
Email: tessa.jacob@huschblackwell.com
*ATTORNEY TO BE NOTICED*

**Jeffrey J. Simon**
Husch Blackwell LLP - KCMO
4801 Main Street
Suite 1000
Kansas City, MO 64112-2551
816-329-4711
Fax: 816-983-8080
Email: jeff.simon@huschblackwell.com
*ATTORNEY TO BE NOTICED*

**Appx172**

V.

**Defendant**

**Weber, Inc.**                    represented by **Daniel S Block**
Sterne Kessler Goldstein & Fox
1100 New York Ave NW
Suite 600
Washington, DC 20005
202-772-8557
Email: dblock@sternekessler.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Daniel E Yonan**
1100 New York Avenue NW
Suite 600
Washington, DC 20005
202-371-2600
Email: dyonan@sternekessler.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Deirdre M Wells**
1100 New York Avenue NW
Suite 600
Washington, DC 20005
202-371-2600
Email: dwells@sternekessler.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Donald R Banowit**
1100 New York Avenue NW
Suite 600
Washington, DC 20005
202-371-2600
Email: dbanowit@sternekessler.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Jason Scott Leiker**
Levy Craig Law Firm
4520 Main Street
Suite 1600
Kansas City, MO 64111
(816) 460-1835
Fax: (816) 382-6606
Email: jleiker@levycraig.com
*LEAD ATTORNEY*

*ATTORNEY TO BE NOTICED*

**Jonathan Tuminaro**
1100 New York Avenue N.W.
Suite 600
Washington, DC 20005
(202) 772-8967
Email: jtuminar@sternekessler.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Kristina Caggiano Kelly**
1100 New York Avenue, N.W.
Suite 600
Washington, DC 20005
202-772-8524
Email: kckelly@sternekessler.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Kyle E Conklin**
1100 New York avenue NW
Suite 600
Washington, DC 20005
202-371-2600
Email: kconklin@sternekessler.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Brooke McLain**
1100 New York Avenue, N.W.
Suite 600
Washington, DC 20005
202-772-8887
Email: bmclain@sternekessler.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Matthew Zuziak**
1100 New York Avenue, N.W.
Suite 600
Washington, DC 20005
(202) 772-8893
Email: mzuziak@sternekessler.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Michael M. Tamburini**
Levy Craig Law Firm, PC - MainSt
4520 Main Street
Suite 1600

**Appx174**

Kansas City, MO 64111
(816) 474-8181
Fax: 816-382-6606
Email: mtamburini@levycraig.com
*ATTORNEY TO BE NOTICED*

**Paige Cloud**
1100 New York Avenue, N.W.
Suite 600
Washington, DC 20005
202-941-0853
Email: pcloud@sternekessler.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Paul Arthur Overbee**
Levy Craig Law Firm, PC - MainSt
4520 Main Street
Suite 1600
Kansas City, MO 64111
816-474-8181
Fax: 816-382-6606
Email: poverbee@levycraig.com
*ATTORNEY TO BE NOTICED*

**Steven Pappas**
1100 New York Avenue, N.W.
Suite 600
Washington, DC 20005
202-772-8719
Email: spappas@sternekessler.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Tyler J. Dutton**
1100 New York Avenue
Suite 600
Washington, DC 20005
202-772-8982
Email: tdutton@sternekessler.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Textor, Inc.**                          represented by **Daniel S Block**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Daniel E Yonan**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*

**Appx175**

*ATTORNEY TO BE NOTICED*

**Deirdre M Wells**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Donald R Banowit**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Jason Scott Leiker**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jonathan Tuminaro**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Kristina Caggiano Kelly**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Kyle E Conklin**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Brooke McLain**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Matthew Zuziak**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Michael M. Tamburini**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Paige Cloud**
(See above for address)
*PRO HAC VICE*

*ATTORNEY TO BE NOTICED*

**Paul Arthur Overbee**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Steven Pappas**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Tyler J. Dutton**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Weber Maschinenbau GmbH**              represented by  **Daniel S Block**
**Breidenbach**                                        (See above for address)
                                                       *LEAD ATTORNEY*
                                                       *PRO HAC VICE*
                                                       *ATTORNEY TO BE NOTICED*

**Daniel E Yonan**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Deirdre M Wells**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Donald R Banowit**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Jonathan Tuminaro**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Kristina Caggiano Kelly**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Kyle E Conklin**

**Appx177**

(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Brooke McLain**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Matthew Zuziak**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Michael M. Tamburini**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Paige Cloud**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Paul Arthur Overbee**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Steven Pappas**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Tyler J. Dutton**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Jason Scott Leiker**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Textor Maschinenbau GmbH**               represented by **Daniel S Block**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Daniel E Yonan**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Appx178**

**Deirdre M Wells**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Donald R Banowit**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Jonathan Tuminaro**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Kristina Caggiano Kelly**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Kyle E Conklin**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Brooke McLain**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Matthew Zuziak**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Michael M. Tamburini**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Paige Cloud**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Paul Arthur Overbee**
(See above for address)
*ATTORNEY TO BE NOTICED*

Appx179

**Steven Pappas**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Tyler J. Dutton**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Jason Scott Leiker**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Weber Maschinenbau GmbH
Neubrandenburg**                     represented by    **Daniel S Block**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Daniel E Yonan**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Deirdre M Wells**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Donald R Banowit**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Jonathan Tuminaro**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Kristina Caggiano Kelly**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Kyle E Conklin**
(See above for address)
*LEAD ATTORNEY*

Appx180

*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Brooke McLain**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Matthew Zuziak**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Michael M. Tamburini**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Paige Cloud**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Paul Arthur Overbee**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Steven Pappas**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Tyler J. Dutton**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Jason Scott Leiker**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Counter Claimant**

**Weber Maschinenbau GmbH**          represented by  **Kristina Caggiano Kelly**
**Neubrandenburg**                                    (See above for address)
                                                      *LEAD ATTORNEY*
                                                      *PRO HAC VICE*
                                                      *ATTORNEY TO BE NOTICED*

                                                      **Brooke McLain**
                                                      (See above for address)
                                                      *PRO HAC VICE*
                                                      *ATTORNEY TO BE NOTICED*

                                                      **Paige Cloud**
                                                      (See above for address)

**Appx181**

*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Steven Pappas**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Tyler J. Dutton**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Jason Scott Leiker**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Counter Claimant**

**Weber, Inc.**                    represented by **Jason Scott Leiker**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Kristina Caggiano Kelly**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Brooke McLain**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Paige Cloud**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Steven Pappas**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Tyler J. Dutton**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Counter Claimant**

**Weber Maschinenbau GmbH**        represented by **Kristina Caggiano Kelly**
**Breidenbach**                    (See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*

*ATTORNEY TO BE NOTICED*

**Brooke McLain**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Paige Cloud**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Steven Pappas**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Tyler J. Dutton**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Jason Scott Leiker**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Counter Claimant**

**Textor, Inc.**                    represented by **Jason Scott Leiker**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Kristina Caggiano Kelly**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Brooke McLain**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Paige Cloud**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Steven Pappas**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Tyler J. Dutton**

**Appx183**

(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Counter Claimant**

**Textor Maschinenbau GmbH**                    represented by    **Kristina Caggiano Kelly**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Brooke McLain**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Paige Cloud**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Steven Pappas**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Tyler J. Dutton**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Jason Scott Leiker**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Counter Defendant**

**Provisur Technologies, Inc.**                    represented by    **Carla J Baumel**
(See above for address)
*TERMINATED: 04/20/2020*
*LEAD ATTORNEY*
*PRO HAC VICE*

**Craig C. Martin**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Michael Babbitt**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Ren-How H. Harn**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Sara T Horton**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Timothy Barron**
(See above for address)
*TERMINATED: 04/20/2020*
*LEAD ATTORNEY*
*PRO HAC VICE*

**Jeffrey J. Simon**
(See above for address)
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 02/22/2019 | 1 | COMPLAINT *FOR PATENT INFRINGEMENT* against All Defendants filed by Jeffrey J. Simon on behalf of Provisur Technologies, Inc.. Filing fee $400, receipt number AMOWDC-6187152. Service due by 5/23/2019 unless otherwise directed by the court. (Attachments: # 1 Exhibit A - U.S. Patent No. 8,322,537, # 2 Exhibit B - U.S Patent No. 9,399,531, # 3 Exhibit C - U.S. Patent No. 7,065,936, # 4 Exhibit D - U.S. Patent No. 7,533,513, # 5 Exhibit E - U.S. Patent No. 6,669,005, # 6 Exhibit F - U.S. Patent No. 6,997,089, # 7 Exhibit G - U.S. Patent No. 6,320,141, # 8 Civil Cover Sheet)(Simon, Jeffrey) (Entered: 02/22/2019) |
| 02/22/2019 | 2 | DISCLOSURE OF CORPORATE INTERESTS *AND CERTIFICATE OF INTERESTED PARTIES* filed by Jeffrey J. Simon on behalf of Plaintiff Provisur Technologies, Inc.. (Simon, Jeffrey) (Entered: 02/22/2019) |
| 02/25/2019 | 3 | Report on the filing of an action regarding patent number(s) 8,322,537 9,399,531 7,065,936 7,533,513, 6,669,005 6,997,089 6,320,141.<br><br>Plaintiff(s): Provisur Technologies, Inc.<br>Lead Attorney for Plaintiff(s): Jeffrey J. Simon<br><br>Defendant(s): Weber, Inc., Textor, Inc., Weber Maschinenbau GmbH Breidenbach, Textor Maschinenbau GmbH, Weber Maschinenbau GmbH Neubrandenburg<br>The civil complaint is attached.<br><br>(Woods, Gloria) (Additional attachment(s) added on 10/4/2019: # 1 Form AO-120 - page 1, # 2 Form AO-120 page 2) (Woods, Gloria). (Entered: 02/25/2019) |

**Appx185**

| 02/25/2019 | 4 | **NOTICE OF INCLUSION FOR MEDIATION AND ASSESSMENT PROGRAM (MAP). REVIEW NOTICE AND MAP GENERAL ORDER CAREFULLY FOR IMPORTANT CHANGES, DEADLINES AND REQUIREMENTS.**<br><br>**Notice of MAP assignment to United States Magistrate Judge Lajuana M. Counts.** (Attachments: # 1 MAP General Order)(Woods, Gloria) (Entered: 02/25/2019) |
| 02/25/2019 | | SUMMONS ISSUED as to Textor, Inc., Weber, Inc.. (Woods, Gloria) (Entered: 02/25/2019) |
| 02/28/2019 | 5 | Motion to allow Timothy J. Barron, Sr. to appear pro hac vice (Pro Hac fee $100 receipt number AMOWDC-6196505) filed by Jeffrey J. Simon on behalf of Provisur Technologies, Inc.. (Simon, Jeffrey) (Entered: 02/28/2019) |
| 02/28/2019 | 6 | Motion to allow Michael Babbitt to appear pro hac vice (Pro Hac fee $100 receipt number AMOWDC-6196901) filed by Jeffrey J. Simon on behalf of Provisur Technologies, Inc.. (Simon, Jeffrey) (Entered: 02/28/2019) |
| 02/28/2019 | 7 | Motion to allow Sara T. Horton to appear pro hac vice (Pro Hac fee $100 receipt number AMOWDC-6196914) filed by Jeffrey J. Simon on behalf of Provisur Technologies, Inc.. (Simon, Jeffrey) (Entered: 02/28/2019) |
| 02/28/2019 | 8 | Motion to allow Craig C. Martin to appear pro hac vice (Pro Hac fee $100 receipt number AMOWDC-6196925) filed by Jeffrey J. Simon on behalf of Provisur Technologies, Inc.. (Simon, Jeffrey) (Entered: 02/28/2019) |
| 02/28/2019 | 9 | Motion to allow Carla J. Baumel to appear pro hac vice (Pro Hac fee $100 receipt number AMOWDC-6196927) filed by Jeffrey J. Simon on behalf of Provisur Technologies, Inc.. (Simon, Jeffrey) (Entered: 02/28/2019) |
| 03/01/2019 | 10 | ORDER granting 5 6 7 8 9 motion to appear pro hac vice entered by Clerk of Court. Attorney Carla J Baumel, Timothy Barron, Michael Babbitt, Sara Horton, Craig Martin for Provisur Technologies, Inc. allowed to appear pro hac vice. This entry will serve as authorization for the pro hac participation by the attorney.<br><br>Western District of Missouri Local Rule 5.1 requires documents to be filed electronically. If pro hac vice counsel has not already done so, counsel is directed to immediately register for a WDMO e-filing account for NextGen CM/ECF. This will enable counsel to electronically file documents and receive electronic notification of filings. Register for a WDMO e-filing account at PACER. This is a TEXT ONLY ENTRY. No document is attached. (Russel, Jeri) (Entered: 03/01/2019) |
| 03/18/2019 | 11 | RETURN OF SERVICE of complaint executed by Provisur Technologies, Inc.. Textor, Inc. served on 2/28/2019, answer due 3/21/2019. (Simon, Jeffrey) (Entered: 03/18/2019) |
| 03/18/2019 | 12 | RETURN OF SERVICE of complaint executed by Provisur Technologies, Inc.. Weber, Inc. served on 2/28/2019, answer due 3/21/2019. (Simon, Jeffrey) (Entered: 03/18/2019) |
| 03/20/2019 | 13 | Consent MOTION for extension of time to file answer re 1 Complaint,, filed by Jason Scott Leiker on behalf of Textor, Inc., Weber, Inc.. Suggestions in opposition/response due by 4/3/2019 unless otherwise directed by the court. (Related document(s) 1 ) (Attorney Jason Scott Leiker added to party Textor, Inc.(pty:dft), Attorney Jason Scott Leiker added to party Weber, Inc.(pty:dft))(Leiker, Jason) (Entered: 03/20/2019) |
| 03/21/2019 | 14 | Before this Court is Defendants Weber, Inc. and Textor, Inc.'s Unopposed Motion for Extension of Time to Answer or Otherwise Plead. (Doc. #13). For good cause stated the motion is granted. Defendants Weber, Inc. and Textor, Inc. are granted an extension of time until and including May 6, 2019, to file their answer or otherwise respond to |

Appx186

| | | Plaintiff's complaint. Signed on 3/21/19 by District Judge Stephen R. Bough. This is a TEXT ONLY ENTRY. No document is attached. (Diefenbach, Tracy) (Entered: 03/21/2019) |
|---|---|---|
| 04/26/2019 | 15 | AMENDED COMPLAINT *FOR PATENT INFRINGEMENT* against Textor Maschinenbau GmbH, Textor, Inc., Weber Maschinenbau GmbH Breidenbach, Weber Maschinenbau GmbH Neubrandenburg, Weber, Inc. filed by Craig C. Martin on behalf of Provisur Technologies, Inc.. (Attachments: # 1 Exhibit A - U.S. Patent No. 8,322,537, # 2 Exhibit B - U.S. Patent No. 9,399,531, # 3 Exhibit C - U.S. Patent No. 7,065,936, # 4 Exhibit D - U.S. Patent No. 7,533,513, # 5 Exhibit E - U.S. Patent No. 6,669,005, # 6 Exhibit F - U.S. Patent No. 6,997,089, # 7 Exhibit G - U.S. Patent No. 6,320,141)(Martin, Craig) (Entered: 04/26/2019) |
| 05/10/2019 | 16 | Motion to allow Kyle E. Conklin to appear pro hac vice (Pro Hac fee $100 receipt number AMOWDC-6308919) filed by Jason Scott Leiker on behalf of Textor, Inc., Weber, Inc.. (Leiker, Jason) (Main Document 16 replaced on 5/15/2019) (Russel, Jeri). (Entered: 05/10/2019) |
| 05/10/2019 | 17 | Motion to allow Donald R. Banowit to appear pro hac vice (Pro Hac fee $100 receipt number AMOWDC-6308950) filed by Jason Scott Leiker on behalf of Textor, Inc., Weber, Inc.. (Leiker, Jason) (Main Document 17 replaced on 5/15/2019) (Russel, Jeri). (Entered: 05/10/2019) |
| 05/10/2019 | 18 | Motion to allow Deirdre M. Wells to appear pro hac vice (Pro Hac fee $100 receipt number AMOWDC-6308961) filed by Jason Scott Leiker on behalf of Textor, Inc., Weber, Inc.. (Leiker, Jason) (Main Document 18 replaced on 5/15/2019) (Russel, Jeri). (Entered: 05/10/2019) |
| 05/10/2019 | 19 | Motion to allow Daniel S. Block to appear pro hac vice (Pro Hac fee $100 receipt number AMOWDC-6308979) filed by Jason Scott Leiker on behalf of Textor, Inc., Weber, Inc.. (Leiker, Jason) (Main Document 19 replaced on 5/15/2019) (Russel, Jeri). (Entered: 05/10/2019) |
| 05/10/2019 | 20 | Motion to allow Daniel E. Yonan to appear pro hac vice (Pro Hac fee $100 receipt number AMOWDC-6308989) filed by Jason Scott Leiker on behalf of Textor, Inc., Weber, Inc.. (Leiker, Jason) (Main Document 20 replaced on 5/15/2019) (Russel, Jeri). (Entered: 05/10/2019) |
| 05/10/2019 | 21 | ANSWER to 15 Amended Complaint,, , COUNTERCLAIM against Provisur Technologies, Inc. on behalf of Weber Maschinenbau GmbH Neubrandenburg, Weber, Inc., Weber Maschinenbau GmbH Breidenbach, Textor, Inc., Textor Maschinenbau GmbH.(Attorney Jason Scott Leiker added to party Textor Maschinenbau GmbH(pty:dft), Attorney Jason Scott Leiker added to party Weber Maschinenbau GmbH Breidenbach(pty:dft), Attorney Jason Scott Leiker added to party Weber Maschinenbau GmbH Neubrandenburg(pty:dft))(Leiker, Jason) (Entered: 05/10/2019) |
| 05/15/2019 | 22 | ORDER granting 17 20 motion to appear pro hac vice entered by Clerk of Court. Attorney Daniel E Yonan and Donald Banowit for Textor Maschinenbau GmbH, Textor, Inc., Weber Maschinenbau GmbH Breidenbach, Weber Maschinenbau GmbH Neubrandenburg,and Weber, Inc. allowed to appear pro hac vice. This entry will serve as authorization for the pro hac participation by the attorney.<br><br>Western District of Missouri Local Rule 5.1 requires documents to be filed electronically. If pro hac vice counsel has not already done so, counsel is directed to immediately register for a WDMO e-filing account for NextGen CM/ECF. This will enable counsel to electronically file documents and receive electronic notification of filings. Register for a |

| | | |
|---|---|---|
| | | WDMO e-filing account at PACER. This is a TEXT ONLY ENTRY. No document is attached. (Russel, Jeri) (Entered: 05/15/2019) |
| 05/15/2019 | 23 | ORDER granting 16 18 19 motion to appear pro hac vice entered by Clerk of Court. Attorney Deirdre M Wells, Kyle Conklin, and Daniel Block for Textor Maschinenbau GmbH, Textor, Inc., Weber Maschinenbau GmbH Breidenbach, Weber Maschinenbau GmbH Neubrandenburg,and Weber, Inc., allowed to appear pro hac vice. This entry will serve as authorization for the pro hac participation by the attorney.<br><br>Western District of Missouri Local Rule 5.1 requires documents to be filed electronically. If pro hac vice counsel has not already done so, counsel is directed to immediately register for a WDMO e-filing account for NextGen CM/ECF. This will enable counsel to electronically file documents and receive electronic notification of filings. Register for a WDMO e-filing account at PACER. This is a TEXT ONLY ENTRY. No document is attached. (Russel, Jeri) (Entered: 05/15/2019) |
| 05/17/2019 | 24 | RULE 16 NOTICE. Proposed scheduling order due by 8/1/2019. Scheduling Conference set for 8/15/2019 10:00 AM in Courtroom 7B, Kansas City (SRB) before District Judge Stephen R. Bough. Signed on 5/17/19 by District Judge Stephen R. Bough. (Diefenbach, Tracy) (Entered: 05/17/2019) |
| 05/29/2019 | 25 | ORAL ORDER MAP Mediation Conference set for 9/26/2019 at 09:30 AM in Courtroom 6E, Kansas City (LMC) before Magistrate Judge Lajuana M. Counts. The parties are directed to review Judge Counts' Standing Order for MAP Mediations and Settlement Conferences located on the Court's website at https://www.mow.uscourts.gov/judges/counts and comply with its directives. Furthermore, the parties are directed to review the MAP General Order found on the Mediation and Assessment Program section of the Court's website. The parties are directed to contact chambers forthwith if they believe the mediation conference will exceed half-a-day. Signed on May 29, 2019 by Magistrate Judge Lajuana M. Counts. This is a TEXT ONLY ENTRY. No document is attached. (Clinton, Erica) (Entered: 05/29/2019) |
| 05/31/2019 | 26 | ANSWER to Counterclaim on behalf of Provisur Technologies, Inc..(Martin, Craig) (Entered: 05/31/2019) |
| 06/03/2019 | 27 | DISCLOSURE OF CORPORATE INTERESTS filed by Jason Scott Leiker on behalf of Defendants Textor Maschinenbau GmbH, Textor, Inc., Weber Maschinenbau GmbH Breidenbach, Weber Maschinenbau GmbH Neubrandenburg, Weber, Inc..(Leiker, Jason) (Entered: 06/03/2019) |
| 07/15/2019 | 28 | CERTIFICATE OF SERVICE by Provisur Technologies, Inc. filed by Timothy Barron on behalf of Plaintiff Provisur Technologies, Inc..(Barron, Timothy) (Entered: 07/15/2019) |
| 08/01/2019 | 29 | CERTIFICATE OF SERVICE by All Defendants *Rule 26(a) Initial Disclosures* filed by Jason Scott Leiker on behalf of Defendants Textor Maschinenbau GmbH, Textor, Inc., Weber Maschinenbau GmbH Breidenbach, Weber Maschinenbau GmbH Neubrandenburg, Weber, Inc..(Leiker, Jason) (Entered: 08/01/2019) |
| 08/01/2019 | 30 | CERTIFICATE OF SERVICE OF INITIAL RULE 26 DISCLOSURES filed by Timothy Barron on behalf of Plaintiff Provisur Technologies, Inc..(Barron, Timothy) (Entered: 08/01/2019) |
| 08/01/2019 | 31 | REPORT of Rule 26(f) planning meeting. (Martin, Craig) (Entered: 08/01/2019) |
| 08/01/2019 | 32 | NOTICE of filing - *Joint Proposed Protective Order with Identification of Parties' Disputes* by Provisur Technologies, Inc. (Martin, Craig) (Entered: 08/01/2019) |

| 08/02/2019 | | NOTICE OF DOCKET MODIFICATION. A modification has been made to the document filed on 8/1/19 as Document No. 32, NOTICE of filing - Joint Proposed Protective Order with Identification of Parties' Disputes. Counsel did not file a Motion for Protective Order. The proposed Order has been deleted. Per Administrative Procedures any proposed orders are to be emailed to the Courtroom Deputy in Word format. Counsel should file a request for Protective Order and email the Proposed Order to Courtroom Deputy. This is a text entry only - no document is attached. (Ellis, Lindsey) (Entered: 08/02/2019) |
|---|---|---|
| 08/02/2019 | [33](#) | Joint MOTION for protective order *and Suggestions in Support* filed by Craig C. Martin on behalf of Provisur Technologies, Inc.. Suggestions in opposition/response due by 8/16/2019 unless otherwise directed by the court. (Martin, Craig) (Entered: 08/02/2019) |
| 08/05/2019 | [34](#) | PROTECTIVE ORDER Signed on 8/5/19 by District Judge Stephen R. Bough. (Diefenbach, Tracy) (Additional attachment(s) added on 10/4/2021: # [1](#) ADDENDUM TO PROTECTIVE ORDER per Order entered on 10/4/2021) (Richard, Tracey). (Entered: 08/05/2019) |
| 08/12/2019 | [35](#) | NOTICE of filing *Pendency of Post-Grant Proceedings* by Textor Maschinenbau GmbH, Textor, Inc., Weber Maschinenbau GmbH Breidenbach, Weber Maschinenbau GmbH Neubrandenburg, Weber, Inc. (Attachments: # [1](#) Exhibit 1 - IPR2019-01461, # [2](#) Exhibit 2 - IPR2019-01462, # [3](#) Exhibit 3 - IPR2019-01463, # [4](#) Exhibit 4 - IPR2019-01464, # [5](#) Exhibit 5 - IPR2019-01465, # [6](#) Exhibit 6 - IPR2019-01466, # [7](#) Exhibit 7 - IPR2019-01467, # [8](#) Exhibit 8 - IPR2019-01468)(Leiker, Jason) (Entered: 08/12/2019) |
| 08/14/2019 | [36](#) | MOTION to stay *All Proceedings Pending Inter Partes Review* filed by Jason Scott Leiker on behalf of All Defendants. Suggestions in opposition/response due by 8/28/2019 unless otherwise directed by the court. (Leiker, Jason) (Entered: 08/14/2019) |
| 08/14/2019 | [37](#) | SUGGESTIONS in support re [36](#) MOTION to stay *All Proceedings Pending Inter Partes Review* filed by Jason Scott Leiker on behalf of Defendants Textor Maschinenbau GmbH, Textor, Inc., Weber Maschinenbau GmbH Breidenbach, Weber Maschinenbau GmbH Neubrandenburg, Weber, Inc.. (Attachments: # [1](#) Exhibit A - Provisur's First Request for Production)(Related document(s) [36](#) ) (Leiker, Jason) (Entered: 08/14/2019) |
| 08/15/2019 | [38](#) | SUGGESTIONS in opposition re [36](#) MOTION to stay *All Proceedings Pending Inter Partes Review* filed by Craig C. Martin on behalf of Plaintiff Provisur Technologies, Inc.. Reply suggestions due by 8/29/2019 unless otherwise directed by the court. (Attachments: # [1](#) Exhibit 1, # [2](#) Exhibit 2)(Related document(s) [36](#) ) (Martin, Craig) (Entered: 08/15/2019) |
| 08/15/2019 | 39 | Minute Entry. Proceedings held before District Judge Stephen R. Bough: SCHEDULING CONFERENCE held on 8/15/2019. Scheduling order to be entered. Counsel appearing for Plaintiff(s): Craig Martin, Michael Babbitt, Sara Horton and Jeffrey Simon. Counsel appearing for Defendant(s): Jason Leiker, Donald Banowit and Daniel Yonan. Time in court: 10:00 am to 10:45 am. This is a TEXT ONLY ENTRY. No document is attached. (Diefenbach, Tracy) (Entered: 08/15/2019) |
| 08/20/2019 | [40](#) | INITIAL PATENT SCHEDULING ORDER. Claim Construction Hearing set for 4/2/2020 09:00 AM in Courtroom 7B, Kansas City (SRB) before District Judge Stephen R. Bough. Signed on 8/20/19 by District Judge Stephen R. Bough. (Diefenbach, Tracy) (Entered: 08/20/2019) |
| 08/22/2019 | [41](#) | REPLY SUGGESTIONS to motion re [36](#) MOTION to stay *All Proceedings Pending Inter Partes Review* filed by Jason Scott Leiker on behalf of Counter Claimants Textor Maschinenbau GmbH, Textor, Inc., Weber Maschinenbau GmbH Breidenbach, Weber Maschinenbau GmbH Neubrandenburg, Weber, Inc., Defendants Textor Maschinenbau |

| | | GmbH, Textor, Inc., Weber Maschinenbau GmbH Breidenbach, Weber Maschinenbau GmbH Neubrandenburg, Weber, Inc.. (Attachments: # 1 Exhibit A - Products Covered by Patent)(Related document(s) 36 ) (Leiker, Jason) (Entered: 08/22/2019) |
|---|---|---|
| 08/28/2019 | 42 | CERTIFICATE OF SERVICE by Textor Maschinenbau GmbH, Textor, Inc., Weber Maschinenbau GmbH Breidenbach, Weber Maschinenbau GmbH Neubrandenburg, Weber, Inc. *Answers and Objections to First Interrogatories, Responses and Objections to First Requests for Production* filed by Jason Scott Leiker on behalf of Counter Claimants Textor Maschinenbau GmbH, Textor, Inc., Weber Maschinenbau GmbH Breidenbach, Weber Maschinenbau GmbH Neubrandenburg, Weber, Inc., Defendants Textor Maschinenbau GmbH, Textor, Inc., Weber Maschinenbau GmbH Breidenbach, Weber Maschinenbau GmbH Neubrandenburg, Weber, Inc..(Leiker, Jason) (Entered: 08/28/2019) |
| 08/29/2019 | 43 | ORDER granting in part 36 motion to stay. Signed on 8/29/19 by District Judge Stephen R. Bough. (Diefenbach, Tracy) (Entered: 08/29/2019) |
| 09/16/2019 | | NOTICE OF HEARING CANCELLATION - The Settlement Conference scheduled for Thursday, September 26, 2019 at 9:30am with US Magistrate Judge Lajuana M. Counts has been cancelled due to the stay in the case. The parties are directed to contact Judge Counts chambers once the stay has been lifted so that we may then schedule the mediation. This is a TEXT ONLY ENTRY. No document is attached. (Chorny, Traci) (Entered: 09/16/2019) |
| 10/28/2019 | 44 | STATUS REPORT by Textor Maschinenbau GmbH, Textor, Inc., Weber Maschinenbau GmbH Breidenbach, Weber Maschinenbau GmbH Neubrandenburg, Weber, Inc.. (Leiker, Jason) (Entered: 10/28/2019) |
| 12/26/2019 | 45 | STATUS REPORT *Second Joint Status Report* by Textor Maschinenbau GmbH, Textor, Inc., Weber Maschinenbau GmbH Breidenbach, Weber Maschinenbau GmbH Neubrandenburg, Weber, Inc.. (Leiker, Jason) (Entered: 12/26/2019) |
| 02/19/2020 | 46 | STATUS REPORT *Of Post-Grant Proceedings* by Textor Maschinenbau GmbH, Textor, Inc., Weber Maschinenbau GmbH Breidenbach, Weber Maschinenbau GmbH Neubrandenburg, Weber, Inc.. (Attachments: # 1 Exhibit Ex. 1-IPR2019-01461, Paper No. 9, # 2 Exhibit Ex. 2 - IPR2019-01467, Paper No. 7)(Leiker, Jason) (Entered: 02/19/2020) |
| 02/20/2020 | 47 | STATUS REPORT *of Post-Grant Proceeding* by Textor Maschinenbau GmbH, Textor, Inc., Weber Maschinenbau GmbH Breidenbach, Weber Maschinenbau GmbH Neubrandenburg, Weber, Inc.. (Attachments: # 1 Exhibit 1-Decision IPR2019-01464, # 2 Exhibit 2-Decision IPR2019-01465)(Leiker, Jason) (Entered: 02/20/2020) |
| 02/27/2020 | 48 | STATUS REPORT *of Post-Grant Proceedings* by Textor Maschinenbau GmbH, Textor, Inc., Weber Maschinenbau GmbH Breidenbach, Weber Maschinenbau GmbH Neubrandenburg, Weber, Inc.. (Attachments: # 1 Exhibit 1-Ex 1 IPR2019-01462 Paper 9, # 2 Exhibit 2-Ex 2 IPR2019-01468 Paper 12, # 3 Exhibit 3-Ex 3 IPR2019-01594 Paper 12)(Leiker, Jason) **Modified on 2/28/2020:** Main document replaced at request of filing counsel. NEF regenerated. (Melvin, Greg) (Entered: 02/27/2020) |
| 02/27/2020 | 49 | STATUS REPORT *Third Joint Status Report Regarding Status of IPR Petitions* by Textor Maschinenbau GmbH, Weber Maschinenbau GmbH Breidenbach, Weber Maschinenbau GmbH Neubrandenburg, Weber, Inc.. (Leiker, Jason) (Entered: 02/27/2020) |
| 02/27/2020 | 50 | MOTION to stay re 43 Order on Motion to Stay *Unopposed Motion to Extend Stay and Suggestions in Support* filed by Jason Scott Leiker on behalf of Textor Maschinenbau GmbH, Textor, Inc., Weber Maschinenbau GmbH Breidenbach, Weber Maschinenbau GmbH Neubrandenburg, Weber, Inc.. Suggestions in opposition/response due by |

**Appx190**

| | | |
|---|---|---|
| | | 3/12/2020 unless otherwise directed by the court. (Related document(s) 43 ) (Leiker, Jason) (Entered: 02/27/2020) |
| 02/27/2020 | 51 | DOCUMENT WITHDRAWN PURSUANT TO ORDER #54 <br><br> STATUS REPORT *First Amended Status Update of Post-Grant Proceeding* by Textor Maschinenbau GmbH, Textor, Inc., Weber Maschinenbau GmbH Breidenbach, Weber Maschinenbau GmbH Neubrandenburg, Weber, Inc.. (Attachments: # 1 Exhibit 1 IPR2019-01462 Paper 9, # 2 Exhibit 2 IPR2019-01468 Paper 12, # 3 Exhibit 2 IPR2019-01468 Paper 12)(Leiker, Jason) Modified on 3/2/2020 (Diefenbach, Tracy). (Entered: 02/27/2020) |
| 02/28/2020 | 52 | Before the Court is Unopposed Motion to Extend Stay and Suggestions in Support. (Doc. #50). For good cause stated the motion is granted. The stay in this case is extended until and including March 30, 2020. Signed on 2/28/20 by District Judge Stephen R. Bough. This is a TEXT ONLY ENTRY. No document is attached. (Diefenbach, Tracy) (Entered: 02/28/2020) |
| 02/28/2020 | 53 | Consent MOTION to withdraw document 51 Status Report, filed by Jason Scott Leiker on behalf of Textor Maschinenbau GmbH, Textor, Inc., Weber Maschinenbau GmbH Breidenbach, Weber Maschinenbau GmbH Neubrandenburg, Weber, Inc.. Suggestions in opposition/response due by 3/13/2020 unless otherwise directed by the court. (Related document(s) 51 ) (Leiker, Jason) (Entered: 02/28/2020) |
| 03/02/2020 | 54 | Before the Court is an Unopposed Motion to Withdraw Document #51. (Doc. #53). For good cause stated the motion is granted. The Clerk of the Court is hereby directed to withdraw Document Number #51, which was filed in error on February 28, 2020. Signed on 3/2/20 by District Judge Stephen R. Bough. This is a TEXT ONLY ENTRY. No document is attached. (Diefenbach, Tracy) (Entered: 03/02/2020) |
| 03/11/2020 | 55 | STATUS REPORT *of Post-Grant Proceedings* by Textor Maschinenbau GmbH, Textor, Inc., Weber Maschinenbau GmbH Breidenbach, Weber Maschinenbau GmbH Neubrandenburg, Weber, Inc.. (Attachments: # 1 Exhibit 1 - 2020.03.10 - IPR2019-01466 - Decision Instituting Review, # 2 Exhibit 2 - 2020.03.10 - IPR2019-01463 - Decision Denying Institution)(Leiker, Jason) (Entered: 03/11/2020) |
| 03/20/2020 | | NOTICE OF HEARING CANCELLATION - The Claim Construction Hearing scheduled for 4/2/20 at 9:00 a.m. has been cancelled. This matter is currently stayed. This is a TEXT ONLY ENTRY. No document is attached. (Diefenbach, Tracy) (Entered: 03/20/2020) |
| 03/27/2020 | 56 | Joint MOTION for extension of time *to Extend Stay and Suggestions in Support* filed by Jason Scott Leiker on behalf of Textor Maschinenbau GmbH, Textor, Inc., Weber Maschinenbau GmbH Breidenbach, Weber Maschinenbau GmbH Neubrandenburg, Weber, Inc.. Suggestions in opposition/response due by 4/10/2020 unless otherwise directed by the court. (Leiker, Jason) (Entered: 03/27/2020) |
| 03/30/2020 | 57 | Before the Court is Joint Motion to Extend Stay and Suggestions in Support. (Doc. #56). For good cause stated the motion is granted. The stay in this case is continued until and including April 27, 2020. Signed on 3/30/20 by District Judge Stephen R. Bough. This is a TEXT ONLY ENTRY. No document is attached. (Diefenbach, Tracy) (Entered: 03/30/2020) |
| 04/10/2020 | 58 | NOTICE of change of address by Jeffrey J. Simon (Simon, Jeffrey) (Entered: 04/10/2020) |
| 04/13/2020 | 59 | Motion to allow Ren-How Harn to appear pro hac vice (Pro Hac fee $100 receipt number AMOWDC-6817566) filed by Jeffrey J. Simon on behalf of Provisur Technologies, Inc.. (Simon, Jeffrey) (Entered: 04/13/2020) |

| 04/13/2020 | 60 | ORDER granting 59 motion to appear pro hac vice entered by Clerk of Court. Attorney Ren-How H. Harn for Provisur Technologies, Inc. and Provisur Technologies, Inc. allowed to appear pro hac vice. This entry will serve as authorization for the pro hac participation by the attorney.<br><br>Western District of Missouri Local Rule 5.1 requires documents to be filed electronically. If pro hac vice counsel has not already done so, counsel is directed to immediately register for a WDMO e-filing account for NextGen CM/ECF. This will enable counsel to electronically file documents and receive electronic notification of filings. Register for a WDMO e-filing account at PACER. This is a TEXT ONLY ENTRY. No document is attached. (Berner, Crystal) (Entered: 04/13/2020) |
| --- | --- | --- |
| 04/20/2020 | 61 | MOTION to withdraw as attorney filed by Timothy Barron on behalf of Provisur Technologies, Inc.. Suggestions in opposition/response due by 5/4/2020 unless otherwise directed by the court. (Barron, Timothy) (Entered: 04/20/2020) |
| 04/20/2020 | 62 | Before the Court is Timothy J. Barron's and Carla J. Baumel's Motion to Withdraw as Counsel. (Doc. #61). For good cause stated the motion is granted. Attorneys Timothy J. Barron and Carla J. Baumel of Jenner & Block LLP are hereby removed as counsel of record for Plaintiff Provisur Technologies, Inc. Signed on 4/20/20 by District Judge Stephen R. Bough. This is a TEXT ONLY ENTRY. No document is attached. (Diefenbach, Tracy) (Entered: 04/20/2020) |
| 04/27/2020 | 63 | MOTION to stay *Motion to Extend Stay of all proceedings Pending Inter Partes Review* filed by Jason Scott Leiker on behalf of Textor Maschinenbau GmbH, Textor, Inc., Weber Maschinenbau GmbH Breidenbach, Weber Maschinenbau GmbH Neubrandenburg, Weber, Inc.. Suggestions in opposition/response due by 5/11/2020 unless otherwise directed by the court. (Leiker, Jason) (Entered: 04/27/2020) |
| 04/27/2020 | 64 | SUGGESTIONS in support re 63 MOTION to stay *Motion to Extend Stay of all proceedings Pending Inter Partes Review* filed by Jason Scott Leiker on behalf of Defendants Textor Maschinenbau GmbH, Textor, Inc., Weber Maschinenbau GmbH Breidenbach, Weber Maschinenbau GmbH Neubrandenburg, Weber, Inc.. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2)(Related document(s) 63 ) (Leiker, Jason) (Entered: 04/27/2020) |
| 04/30/2020 | 65 | Joint MOTION to stay re 57 Order on Motion for Extension of Time, filed by Jason Scott Leiker on behalf of Textor Maschinenbau GmbH, Textor, Inc., Weber Maschinenbau GmbH Breidenbach, Weber Maschinenbau GmbH Neubrandenburg, Weber, Inc.. Suggestions in opposition/response due by 5/14/2020 unless otherwise directed by the court. (Related document(s) 57 ) (Leiker, Jason) (Entered: 04/30/2020) |
| 05/01/2020 | 66 | Before the Court is a Joint Motion to Temporarily Extend Stay and Suggestions in Support. (Doc. #65). For good cause stated the Motion is granted. The stay in this case is continued until and including May 29, 2020. Signed on 5/1/20 by District Judge Stephen R. Bough. This is a TEXT ONLY ENTRY. No document is attached. (Diefenbach, Tracy) (Entered: 05/01/2020) |
| 05/11/2020 | 67 | SUGGESTIONS in opposition re 63 MOTION to stay *Motion to Extend Stay of all proceedings Pending Inter Partes Review* filed by Craig C. Martin on behalf of Plaintiff Provisur Technologies, Inc.. Reply suggestions due by 5/26/2020 unless otherwise directed by the court. (Attachments: # 1 Exhibit A)(Related document(s) 63 ) (Martin, Craig) (Entered: 05/11/2020) |
| 05/26/2020 | 68 | REPLY SUGGESTIONS to motion re 63 MOTION to stay *Motion to Extend Stay of all proceedings Pending Inter Partes Review* filed by Jason Scott Leiker on behalf of Counter Claimants Textor Maschinenbau GmbH, Textor, Inc., Weber Maschinenbau |

| | | |
|---|---|---|
| | | GmbH Breidenbach, Weber Maschinenbau GmbH Neubrandenburg, Weber, Inc., Defendants Textor Maschinenbau GmbH, Textor, Inc., Weber Maschinenbau GmbH Breidenbach, Weber Maschinenbau GmbH Neubrandenburg, Weber, Inc.. (Related document(s) 63 ) (Leiker, Jason) (Entered: 05/26/2020) |
| 06/03/2020 | 69 | Defendants' Motion to Extend Stay of All Proceedings Pending Inter PartesReview (Doc. #63) is DENIED. Signed on 6/3/20 by District Judge Stephen R. Bough. (Diefenbach, Tracy) (Entered: 06/03/2020) |
| 06/08/2020 | 70 | NOTICE OF HEARING - This is the official notice for this hearing. This is a TEXT ONLY ENTRY. No document is attached. Telephone Conference set for 6/12/2020 11:00 AM before District Judge Stephen R. Bough. (Diefenbach, Tracy) (Entered: 06/08/2020) |
| 06/12/2020 | 71 | Minute Entry. Proceedings held before District Judge Stephen R. Bough: TELEPHONE SCHEDULING CONFERENCE held on 6/12/2020. Scheduling order to be entered. Time in court: 11:00 am to 11:10 am. To order a transcript of this hearing please contact Gayle Wambolt, 816-512-5641, gayle_wambolt@mow.uscourts.gov. This is a TEXT ONLY ENTRY. No document is attached. (Diefenbach, Tracy) (Entered: 06/12/2020) |
| 06/12/2020 | 72 | AMENDED PATENT SCHEDULING ORDER. Signed on 6/12/20 by District Judge Stephen R. Bough. (Diefenbach, Tracy) (Entered: 06/12/2020) |
| 06/12/2020 | | Claim Construction Hearing set for 4/28/2021 10:00 AM in Courtroom 7B, Kansas City (SRB) before District Judge Stephen R. Bough. (Diefenbach, Tracy) (Entered: 06/12/2020) |
| 06/12/2020 | 73 | SECOND AMENDED PATENT SCHEDULING ORDER. Signed on 6/12/20 by District Judge Stephen R. Bough. (Diefenbach, Tracy) (Entered: 06/12/2020) |
| 06/30/2020 | 74 | CERTIFICATE OF SERVICE by Textor Maschinenbau GmbH, Textor, Inc., Weber Maschinenbau GmbH Breidenbach, Weber Maschinenbau GmbH Neubrandenburg, Weber, Inc. filed by Jason Scott Leiker on behalf of Defendants Textor Maschinenbau GmbH, Textor, Inc., Weber Maschinenbau GmbH Breidenbach, Weber Maschinenbau GmbH Neubrandenburg, Weber, Inc..(Leiker, Jason) (Entered: 06/30/2020) |
| 07/07/2020 | 75 | CERTIFICATE OF SERVICE by Textor Maschinenbau GmbH, Textor, Inc., Weber Maschinenbau GmbH Breidenbach, Weber Maschinenbau GmbH Neubrandenburg, Weber, Inc. *First Supplemental Responses and Objections to Plaintiffs First Set of Interrogatories (NOS. 1-2)* filed by Jason Scott Leiker on behalf of Defendants Textor Maschinenbau GmbH, Textor, Inc., Weber Maschinenbau GmbH Breidenbach, Weber Maschinenbau GmbH Neubrandenburg, Weber, Inc..(Leiker, Jason) (Entered: 07/07/2020) |
| 07/07/2020 | 76 | CERTIFICATE OF SERVICE by Provisur Technologies, Inc. *regarding service of its Disclosure of Asserted Claims and Infringement Contentions and first production of documents* filed by Jeffrey J. Simon on behalf of Plaintiff Provisur Technologies, Inc.. (Simon, Jeffrey) (Entered: 07/07/2020) |
| 07/10/2020 | 77 | ORAL ORDER MAP Mediation Conference set for 11/19/2020 at 09:30 AM in Courtroom 6E, Kansas City (LMC) before Magistrate Judge Lajuana M. Counts. The parties are directed to review Judge Counts' Standing Order for MAP Mediations and Settlement Conferences located on the Court's website at https://www.mow.uscourts.gov/judges/counts and comply with its directives. Furthermore, the parties are directed to review the MAP General Order found on the Mediation and Assessment Program section of the Court's website. The parties are directed to contact chambers forthwith if they believe the mediation conference will exceed half-a-day. Signed on July 10, 2020 by Magistrate Judge Lajuana M. Counts. This |

Appx193

| | | |
|---|---|---|
| | | is a TEXT ONLY ENTRY. No document is attached. (Clinton, Erica) (Entered: 07/10/2020) |
| 07/15/2020 | 78 | CERTIFICATE OF SERVICE by All Defendants *of Defendants First Set of Interrogatories to Plaintiff (Nos. 1-12) and Defendants First Set of Requests for Production and Inspection to Plaintiff (Nos. 1-74)* filed by Jason Scott Leiker on behalf of Defendants Textor Maschinenbau GmbH, Textor, Inc., Weber Maschinenbau GmbH Breidenbach, Weber Maschinenbau GmbH Neubrandenburg, Weber, Inc..(Leiker, Jason) (Entered: 07/15/2020) |
| 07/16/2020 | 79 | ELECTRONIC TRANSCRIPT of Teleconference held June 12, 2020, before Judge Stephen R. Bough. Court Reporter: Gayle Wambolt, 816-512-5641, gayle_wambolt@mow.uscourts.gov. Number of pages: 8. NOTICE RE: REDACTION OF TRANSCRIPTS: Within 7 calendar days of this filing, each party shall inform the Court, by filing a Notice of Redaction, of the parties' intent to redact personal data identifiers from the electronic transcript of the court proceeding. The policy is located on our website at www.mow.uscourts.gov. Please read this policy carefully. **NOTICE: Attorneys must contact the court reporter for copies during this 90 day period. If necessary, Notice of Intent to Redact is due by 7/23/2020 unless otherwise directed by the court. Release of Transcript Restriction set for 10/14/2020. NOTICE: Attorneys must contact the court reporter for copies during this 90 day period.** <br><br>(Wambolt, Gayle) (Entered: 07/16/2020) |
| 07/20/2020 | 80 | CERTIFICATE OF SERVICE by Provisur Technologies, Inc. filed by Jeffrey J. Simon on behalf of Plaintiff Provisur Technologies, Inc..(Simon, Jeffrey) (Entered: 07/20/2020) |
| 08/19/2020 | 81 | CERTIFICATE OF SERVICE by All Defendants *service of Defendants Responses and Objections to Plaintiffs Second Set of Interrogatories (Nos. 8-13) and Defendants Responses and Objections to Plaintiffs Second Set of Requests for Production and Things (Nos. 23-69)* filed by Jason Scott Leiker on behalf of Defendants Textor Maschinenbau GmbH, Textor, Inc., Weber Maschinenbau GmbH Breidenbach, Weber Maschinenbau GmbH Neubrandenburg, Weber, Inc..(Leiker, Jason) (Entered: 08/19/2020) |
| 08/21/2020 | 82 | CERTIFICATE OF SERVICE by Provisur Technologies, Inc. filed by Jeffrey J. Simon on behalf of Plaintiff Provisur Technologies, Inc..(Simon, Jeffrey) (Entered: 08/21/2020) |
| 09/15/2020 | 83 | CERTIFICATE OF SERVICE by Textor Maschinenbau GmbH, Textor, Inc., Weber Maschinenbau GmbH Breidenbach, Weber Maschinenbau GmbH Neubrandenburg, Weber, Inc. filed by Jason Scott Leiker on behalf of Defendants Textor Maschinenbau GmbH, Textor, Inc., Weber Maschinenbau GmbH Breidenbach, Weber Maschinenbau GmbH Neubrandenburg, Weber, Inc..(Leiker, Jason) (Entered: 09/15/2020) |
| 09/29/2020 | 84 | CERTIFICATE OF SERVICE by All Defendants *Defendants Proposed List of Claim Terms for Construction* filed by Jason Scott Leiker on behalf of Defendants Textor Maschinenbau GmbH, Textor, Inc., Weber Maschinenbau GmbH Breidenbach, Weber Maschinenbau GmbH Neubrandenburg, Weber, Inc..(Leiker, Jason) (Entered: 09/29/2020) |
| 09/29/2020 | 85 | CERTIFICATE OF SERVICE by Provisur Technologies, Inc. re 73 Scheduling Order filed by Jeffrey J. Simon on behalf of Plaintiff Provisur Technologies, Inc.. Related document: 73 Scheduling Order.(Simon, Jeffrey) (Entered: 09/29/2020) |
| 10/19/2020 | 87 | Joint MOTION for extension of time *of a certain deadline in the Second Amended Patent Scheduling Order (Doc. 73)* filed by Jason Scott Leiker on behalf of All Defendants. Suggestions in opposition/response due by 11/2/2020 unless otherwise directed by the court. (Leiker, Jason) (Entered: 10/19/2020) |

| 10/19/2020 | 88 | Before the Court is a Joint Motion for Extension of a Certain Deadline in the Second Amended Patent Scheduling Order. (Doc. #87.) For good cause stated, the motion is granted. Accordingly, the deadline to Exchange Preliminary Claim Constructions and Extrinsic Evidence is hereby extended until and including November 13, 2020. Signed on 10/19/20 by District Judge Stephen R. Bough. This is a TEXT ONLY ENTRY. No document is attached. (Diefenbach, Tracy) (Entered: 10/19/2020) |
|---|---|---|
| 11/13/2020 | 89 | NOTICE of filing by Textor Maschinenbau GmbH, Textor, Inc., Weber Maschinenbau GmbH Breidenbach, Weber Maschinenbau GmbH Neubrandenburg, Weber, Inc. (Leiker, Jason) (Entered: 11/13/2020) |
| 11/16/2020 | 90 | NOTICE of appearance by Taylor Brooke Concannon Hausmann on behalf of Provisur Technologies, Inc. (Attorney Taylor Brooke Concannon Hausmann added to party Provisur Technologies, Inc.(pty:pla))(Concannon Hausmann, Taylor) (Entered: 11/16/2020) |
| 11/16/2020 | 91 | CERTIFICATE OF SERVICE by Provisur Technologies, Inc. filed by Jeffrey J. Simon on behalf of Plaintiff Provisur Technologies, Inc..(Simon, Jeffrey) (Entered: 11/16/2020) |
| 11/19/2020 | 92 | Minute Entry for SETTLEMENT CONFERENCE Proceedings held before Magistrate Judge Lajuana M. Counts on 11/19/2020: Parties did not settle at this time.<br><br>Counsel appearing for Plaintiff(s): Craig Martin, Sara Tonnies Horton, Michael Babbitt, Jeff Simon, Matthias Meyer, Daniel Misch, various attorneys from the von Bezod Law Firm, Jason Green and Scott Scriven (representative of Prvisur Techonolgies). Counsel appearing for Defendant(s): Jason Leiker, Daniel Yonan, Donald Banowit, Ulrich Blumenroder, Sebastian Ochs, Felix Kahr and Jorg Schmeiser (Weber, Inc's Chief Technology Officer). Time in court: 9:30am to 11:30am. This is a TEXT ONLY ENTRY. No document is attached. (Chorny, Traci) (Entered: 11/19/2020) |
| 12/08/2020 | 93 | NOTICE of filing JOINT CLAIM CONSTRUCTION STATEMENT by Provisur Technologies, Inc. (Martin, Craig) (Entered: 12/08/2020) |
| 12/10/2020 | 94 | MOTION for leave to file excess pages filed by Jason Scott Leiker on behalf of Textor Maschinenbau GmbH, Textor, Inc., Weber Maschinenbau GmbH Breidenbach, Weber Maschinenbau GmbH Neubrandenburg, Weber, Inc.. Suggestions in opposition/response due by 12/24/2020 unless otherwise directed by the court. (Leiker, Jason) (Entered: 12/10/2020) |
| 12/11/2020 | 95 | Before the Court is Defendants Motion to File Briefs in Excess of Page Limit. (Doc. #94.) For good cause stated the Motion is granted. The number of pages permitted for each forthcoming brief is set as follows: (1) Defendants opening brief shall be 30 pages; (2) Plaintiffs responsive brief shall be 30 pages; and (3) Defendants reply brief shall be 20 pages. Signed on 12/11/2020 by District Judge Stephen R. Bough. This is a TEXT ONLY ENTRY. No document is attached. (Houston, Kiambu) (Entered: 12/11/2020) |
| 12/15/2020 | 96 | NOTICE OF HEARING - This is the official notice for this hearing. This is a TEXT ONLY ENTRY. No document is attached. Discovery Dispute Telephone Conference set for 12/18/2020 at 11:30 AM in Chambers before District Judge Stephen R. Bough. (Richard, Tracey) (Entered: 12/15/2020) |
| 12/17/2020 | 97 | CERTIFICATE OF SERVICE by All Defendants of Remote Deposition of Plaintiffs Expert Witness Dr. William S. Howard filed by Jason Scott Leiker on behalf of Defendants Textor Maschinenbau GmbH, Textor, Inc., Weber Maschinenbau GmbH Breidenbach, Weber Maschinenbau GmbH Neubrandenburg, Weber, Inc..(Leiker, Jason) (Entered: 12/17/2020) |

Appx195

| 12/18/2020 | 98 | Minute Entry. Proceedings held before District Judge Stephen R. Bough: DISCOVERY DISPUTE TELEPHONE CONFERENCE held on 12/18/2020; Order to be entered. Time in court: 11:30 a.m. to 12:00 p.m. To order a transcript of this hearing please contact Gayle Wambolt, 816-512-5641, gayle_wambolt@mow.uscourts.gov. This is a TEXT ONLY ENTRY. No document is attached. (Richard, Tracey) (Entered: 12/18/2020) |
|---|---|---|
| 12/18/2020 | 99 | On December 18, 2020, the Court presided over a discovery dispute teleconference between the parties. For the reasons stated during that teleconference, Defendants are ORDERED to fully respond to Plaintiff's Interrogatory No. 8. The Court additionally directs the parties to meet and confer regarding the manner and timeline for Defendants to respond to Plaintiff's Interrogatory No. 8. The parties shall notify the Court within seven days regarding the details of their agreement and advise if further resolution is required. Signed on 12/18/2020 by District Judge Stephen R. Bough. This is a TEXT ONLY ENTRY. No document is attached. (Richard, Tracey) (Entered: 12/18/2020) |
| 12/18/2020 | 100 | CERTIFICATE OF SERVICE by Textor Maschinenbau GmbH, Textor, Inc., Weber Maschinenbau GmbH Breidenbach, Weber Maschinenbau GmbH Neubrandenburg, Weber, Inc. filed by Jason Scott Leiker on behalf of Defendants Textor Maschinenbau GmbH, Textor, Inc., Weber Maschinenbau GmbH Breidenbach, Weber Maschinenbau GmbH Neubrandenburg, Weber, Inc..(Leiker, Jason) (Entered: 12/18/2020) |
| 12/24/2020 | 101 | Joint MOTION for extension of time filed by Jason Scott Leiker on behalf of Textor Maschinenbau GmbH, Textor, Inc., Weber Maschinenbau GmbH Breidenbach, Weber Maschinenbau GmbH Neubrandenburg, Weber, Inc.. Suggestions in opposition/response due by 1/7/2021 unless otherwise directed by the court. (Leiker, Jason) (Entered: 12/24/2020) |
| 12/28/2020 | 102 | Before the Court is the parties' Joint Motion for Extension of Certain Deadlines in the Second Amended Patent Scheduling Order. (Doc. #101.) For good cause shown, the motion is GRANTED. The Opening Claim Construction Brief deadline is extended to March 1, 2021. The Responsive Claim Construction Brief deadline is extended to March 22, 2021. The Reply Claim Construction Brief deadline is extended to April 5, 2021. Signed on 12/28/2020 by District Judge Stephen R. Bough. This is a TEXT ONLY ENTRY. No document is attached. (Richard, Tracey) (Entered: 12/28/2020) |
| 12/31/2020 | 103 | CERTIFICATE OF SERVICE by Textor Maschinenbau GmbH, Textor, Inc., Weber Maschinenbau GmbH Breidenbach, Weber Maschinenbau GmbH Neubrandenburg, Weber, Inc. filed by Jason Scott Leiker on behalf of Counter Claimants Textor Maschinenbau GmbH, Textor, Inc., Weber Maschinenbau GmbH Breidenbach, Weber Maschinenbau GmbH Neubrandenburg, Weber, Inc..(Leiker, Jason) (Entered: 12/31/2020) |
| 01/11/2021 | 104 | ELECTRONIC TRANSCRIPT of Teleconference held December 18, 2020, before Judge Stephen R. Bough. Court Reporter: Gayle Wambolt, 816-512-5641, gayle_wambolt@mow.uscourts.gov. Number of pages: 18. NOTICE RE: REDACTION OF TRANSCRIPTS: Within 7 calendar days of this filing, each party shall inform the Court, by filing a Notice of Redaction, of the parties' intent to redact personal data identifiers from the electronic transcript of the court proceeding. The policy is located on our website at www.mow.uscourts.gov. Please read this policy carefully. NOTICE: Attorneys must contact the court reporter for copies during this 90 day period. If necessary, Notice of Intent to Redact is due by 1/19/2021 unless otherwise directed by the court. Release of Transcript Restriction set for 4/12/2021. NOTICE: Attorneys must contact the court reporter for copies during this 90 day period.<br><br>(Wambolt, Gayle) (Entered: 01/11/2021) |

Appx196

| 01/20/2021 | 105 | CERTIFICATE OF SERVICE by Provisur Technologies, Inc. *of Response to Defendants Second Set of Interrogatories (No. 13)* filed by Jeffrey J. Simon on behalf of Plaintiff Provisur Technologies, Inc..(Simon, Jeffrey) (Entered: 01/20/2021) |
|---|---|---|
| 01/29/2021 | 106 | CERTIFICATE OF SERVICE by All Defendants *Third Supplemental Responses and Objections to Plaintiffs First Set of Interrogatories (No. 2)* filed by Jason Scott Leiker on behalf of Defendants Textor Maschinenbau GmbH, Textor, Inc., Weber Maschinenbau GmbH Breidenbach, Weber Maschinenbau GmbH Neubrandenburg, Weber, Inc..(Leiker, Jason) (Entered: 01/29/2021) |
| 02/02/2021 | 107 | CERTIFICATE OF SERVICE by All Defendants *Supplemental Responses and Objections to Plaintiffs Second Set of Interrogatories (No. 8)* filed by Jason Scott Leiker on behalf of Defendants Textor Maschinenbau GmbH, Textor, Inc., Weber Maschinenbau GmbH Breidenbach, Weber Maschinenbau GmbH Neubrandenburg, Weber, Inc..(Leiker, Jason) (Entered: 02/02/2021) |
| 02/10/2021 | 108 | STATUS REPORT *of Post-Grant Proceedings* by Textor Maschinenbau GmbH, Textor, Inc., Weber Maschinenbau GmbH Breidenbach, Weber Maschinenbau GmbH Neubrandenburg, Weber, Inc.. (Attachments: # 1 Exhibit 1 - Final Written Decision IPR2019-01461, # 2 Exhibit 2 - Final Written Decision IPR2019-01467)(Leiker, Jason) (Entered: 02/10/2021) |
| 02/16/2021 | 109 | NOTICE OF HEARING - This is the official notice for this hearing. This is a TEXT ONLY ENTRY. No document is attached. Discovery Dispute Telephone Conference set for 2/19/2021 at 9:00 AM before District Judge Stephen R. Bough. (Richard, Tracey) (Entered: 02/16/2021) |
| 02/18/2021 | 110 | STATUS REPORT *of Post-Grant Proceedings* by Textor Maschinenbau GmbH, Textor, Inc., Weber Maschinenbau GmbH Breidenbach, Weber Maschinenbau GmbH Neubrandenburg, Weber, Inc.. (Attachments: # 1 Exhibit 1-Final Written Decision IPR2019-01464, # 2 Exhibit 2-Final Written Decision IPR2019-01465)(Leiker, Jason) (Entered: 02/18/2021) |
| 02/19/2021 | 111 | Minute Entry. Proceedings held before District Judge Stephen R. Bough: Discovery Dispute TELEPHONE CONFERENCE held on 2/19/2021. Parties to submit a proposed Order to the Court on February 22, 2021. Time in court: 9:00 a.m. to 9:50 a.m. To order a transcript of this hearing please contact Gayle Wambolt, 816-512-5641, gayle_wambolt@mow.uscourts.gov. This is a TEXT ONLY ENTRY. No document is attached. (Richard, Tracey) (Entered: 02/19/2021) |
| 02/19/2021 | 112 | CERTIFICATE OF SERVICE by Provisur Technologies, Inc. *for its Supplemental Response to Defendants' First Set of Requests for Production* filed by Taylor Brooke Concannon Hausmann on behalf of Plaintiff Provisur Technologies, Inc..(Concannon Hausmann, Taylor) (Entered: 02/19/2021) |
| 02/23/2021 | 113 | On February 19, 2021, the Court presided over a discovery dispute and status teleconference between the parties. For the reasons stated during that teleconference, the case will be stayed with respect to asserted claims found to be unpatentable in a Final Written Decision by the PTAB. The parties are further ORDERED as follows: By March 17, 2021, Provisur will serve on Defendants a list identifying no more than 10 claims per patent and no more than 20 claims overall that Provisur is asserting, as described in N.D.Ill. L.P.R. 3.1. By March 31, 2021, Defendants will serve on Provisur a list identifying no more than 25 prior art references total and no more than four (4) prior art grounds per claim and four (4) non-prior art grounds per claim that it will rely on in this case, as described in N.D.Ill. L.P.R. 3.1. Amendments to the parties' lists of asserted claims and prior art will be permitted according to rules for Amendment to Contentions set forth in Western District of Missouri Patent Local Rule 3.5. Signed on 2/23/2021 by |

| | | |
|---|---|---|
| | | District Judge Stephen R. Bough. This is a TEXT ONLY ENTRY. No document is attached. (Richard, Tracey) (Entered: 02/23/2021) |
| 02/23/2021 | 114 | Upon request by the parties, the Court hereby amends the operative scheduling order as follows: (1) the Opening Claim Construction Brief deadline is extended to March 26, 2021; (2) the Responsive Claim Construction Brief deadline is extended to April 7, 2021; (3) the Reply Claim Construction Brief deadline is extended to April 16, 2021; and (4) the Final Claim Construction Chart deadline is extended to April 21, 2021. Signed on 2/23/2021 by District Judge Stephen R. Bough. This is a TEXT ONLY ENTRY. No document is attached. (Richard, Tracey) (Entered: 02/23/2021) |
| 02/24/2021 | 115 | ELECTRONIC TRANSCRIPT of Teleconference held February 19, 2021, before Judge Stephen R. Bough. Court Reporter: Gayle Wambolt, 816-512-5641, gayle_wambolt@mow.uscourts.gov. Number of pages: 31. NOTICE RE: REDACTION OF TRANSCRIPTS: Within 7 calendar days of this filing, each party shall inform the Court, by filing a Notice of Redaction, of the parties' intent to redact personal data identifiers from the electronic transcript of the court proceeding. The policy is located on our website at www.mow.uscourts.gov. Please read this policy carefully. **NOTICE: Attorneys must contact the court reporter for copies during this 90 day period.** If necessary, Notice of Intent to Redact is due by 3/3/2021 unless otherwise directed by the court. Release of Transcript Restriction set for 5/25/2021. **NOTICE: Attorneys must contact the court reporter for copies during this 90 day period.**<br><br>(Wambolt, Gayle) (Entered: 02/24/2021) |
| 02/24/2021 | 116 | STATUS REPORT *Post-Grant Proceedings* by Textor Maschinenbau GmbH, Textor, Inc., Weber Maschinenbau GmbH Breidenbach, Weber Maschinenbau GmbH Neubrandenburg, Weber, Inc.. (Attachments: # 1 Exhibit Exhibit 1)(Leiker, Jason) (Entered: 02/24/2021) |
| 02/26/2021 | 117 | THIRD AMENDED PATENT SCHEDULING ORDER: Signed on 2/26/2021 by District Judge Stephen R. Bough. (Richard, Tracey) (Entered: 02/26/2021) |
| 03/08/2021 | 118 | STATUS REPORT *of Post-Grant Proceedings* by Textor Maschinenbau GmbH, Textor, Inc., Weber Maschinenbau GmbH Breidenbach, Weber Maschinenbau GmbH Neubrandenburg, Weber, Inc.. (Attachments: # 1 Exhibit 1-Final Written Decision in IPR2019-01466)(Leiker, Jason) (Entered: 03/08/2021) |
| 03/17/2021 | 119 | CERTIFICATE OF SERVICE by Provisur Technologies, Inc. re 113 Order,,,, 117 Amended Scheduling Order *of its Modified Patent Claim List and Response to Defendants' Invalidity Contentions (Interrogatory No. 13)* filed by Taylor Brooke Concannon Hausmann on behalf of Plaintiff Provisur Technologies, Inc.. Related document: 113 Order,,,, 117 Amended Scheduling Order.(Concannon Hausmann, Taylor) (Entered: 03/17/2021) |
| 03/19/2021 | 120 | MOTION for leave to file *Exhibits UNDER SEAL* filed by Taylor Brooke Concannon Hausmann on behalf of Provisur Technologies, Inc.. Suggestions in opposition/response due by 4/2/2021 unless otherwise directed by the court. (Concannon Hausmann, Taylor) (Entered: 03/19/2021) |
| 03/19/2021 | 121 | MOTION for leave to file *Supplemental Infringement Contentions* filed by Taylor Brooke Concannon Hausmann on behalf of Provisur Technologies, Inc.. Suggestions in opposition/response due by 4/2/2021 unless otherwise directed by the court. (Concannon Hausmann, Taylor) (Entered: 03/19/2021) |
| 03/19/2021 | 122 | SUGGESTIONS in support re 120 MOTION for leave to file *Exhibits UNDER SEAL*, 121 MOTION for leave to file *Supplemental Infringement Contentions* filed by Taylor |

| | | Brooke Concannon Hausmann on behalf of Plaintiff Provisur Technologies, Inc.. (Attachments: # 1 Exhibit 1 - SEALED, # 2 Exhibit 2 - SEALED)(Related document(s) 120 , 121 ) (Concannon Hausmann, Taylor) (Entered: 03/19/2021) |
|---|---|---|
| 03/22/2021 | 123 | Before the Court is Plaintiff Provisur Technologies, Inc.s Motion for Leave to File Exhibits Under Seal. (Doc. #120). For good cause stated, the motion is granted. Provisur may file under seal Exhibit 1 (Doc. #122-1) and Exhibit 2 (Doc. #122-2) to its Supporting Suggestions for its Motion for Leave to Supplement Initial Patent Infringement Contentions. Signed on 3/22/2021 by District Judge Stephen R. Bough. This is a TEXT ONLY ENTRY. No document is attached. (Houston, Kiambu) (Entered: 03/22/2021) |
| 03/22/2021 | 124 | NOTICE OF HEARING - This is the official notice for this hearing. This is a TEXT ONLY ENTRY. No document is attached. Discovery Dispute Telephone Conference set for 3/23/2021 at 12:00 p.m. before District Judge Stephen R. Bough. (Richard, Tracey) (Entered: 03/22/2021) |
| 03/22/2021 | 125 | NOTICE (SEALED) by Provisur Technologies, Inc. re 122 Suggestions in Support of Motion, *Notice of Filing SEALED Exhibits* (Attachments: # 1 Exhibit 1 - SEALED, # 2 Exhibit 2 - SEALED)(Concannon Hausmann, Taylor) (Entered: 03/22/2021) |
| 03/23/2021 | 126 | Minute Entry. Proceedings held before District Judge Stephen R. Bough: Discovery Dispute TELEPHONE CONFERENCE held on 3/23/2021. Order to be entered. Time in court: 12:00 p.m. to 12:38 p.m. To order a transcript of this hearing please contact Gayle Wambolt, 816-512-5641, gayle_wambolt@mow.uscourts.gov. This is a TEXT ONLY ENTRY. No document is attached. (Richard, Tracey) (Entered: 03/23/2021) |
| 03/23/2021 | 127 | Before the Court is Plaintiff Provisur Technologies, Inc.'s Motion for Leave to Supplement Infringement Contentions. (Doc. #121). On March 23, 2021, the Court presided over a teleconference between the parties regarding Provisur's motion. For the reasons stated during that call, the Court ORDERS the following expedited briefing scheduling: (1) Defendants shall file their response in opposition by 3/30/2021; and (2) Provisur shall file its reply brief by 4/2/2021. It is FURTHER ORDERED that the claim construction hearing set for 4/28/2021 is cancelled and all claim construction deadlines in this case are hereby suspended pending resolution of the instant motion. If the Court ultimately grants Provisur's motion, the parties should jointly file a proposed amended patent scheduling order within seven days of the Court's ruling. Signed on 3/23/2021 by District Judge Stephen R. Bough. This is a TEXT ONLY ENTRY. No document is attached. (Richard, Tracey) (Entered: 03/23/2021) |
| 03/30/2021 | 128 | SUGGESTIONS in opposition re 121 MOTION for leave to file *Supplemental Infringement Contentions* filed by Jason Scott Leiker on behalf of Defendants Textor Maschinenbau GmbH, Textor, Inc., Weber Maschinenbau GmbH Breidenbach, Weber Maschinenbau GmbH Neubrandenburg, Weber, Inc.. Reply suggestions due by 4/13/2021 unless otherwise directed by the court. (Attachments: # 1 Exhibit, # 2 Exhibit, # 3 Exhibit, # 4 Exhibit)(Related document(s) 121 ) (Leiker, Jason) (Entered: 03/30/2021) |
| 04/02/2021 | 129 | REPLY SUGGESTIONS to motion re 121 MOTION for leave to file *Supplemental Infringement Contentions* filed by Craig C. Martin on behalf of Plaintiff Provisur Technologies, Inc.. (Related document(s) 121 ) (Martin, Craig) (Entered: 04/02/2021) |
| 04/08/2021 | 130 | ORDER granting 121 Provisur's Motion for Leave to Supplement Infringement Contentions. Signed on 4/8/2021 by District Judge Stephen R. Bough. (Richard, Tracey) (Entered: 04/08/2021) |
| 04/08/2021 | 131 | NOTICE OF HEARING - This is the official notice for this hearing. This is a TEXT ONLY ENTRY. No document is attached. Status Conference set for 4/19/2021 at 1:30 PM in Courtroom 7B, Kansas City (SRB) before District Judge Stephen R. Bough, to discuss |

| | | the dates put forth in the parties' forthcoming proposed amended patent scheduling order. (Richard, Tracey) (Entered: 04/08/2021) |
|---|---|---|
| 04/13/2021 | 132 | CERTIFICATE OF SERVICE by Provisur Technologies, Inc. filed by Taylor Brooke Concannon Hausmann on behalf of Plaintiff Provisur Technologies, Inc..(Concannon Hausmann, Taylor) (Entered: 04/13/2021) |
| 04/15/2021 | 133 | ELECTRONIC TRANSCRIPT of Teleconference held March 23, 2021, before Judge Stephen R. Bough. Court Reporter: Gayle Wambolt, 816-512-5641, gayle_wambolt@mow.uscourts.gov. Number of pages: 25. NOTICE RE: REDACTION OF TRANSCRIPTS: Within 7 calendar days of this filing, each party shall inform the Court, by filing a Notice of Redaction, of the parties' intent to redact personal data identifiers from the electronic transcript of the court proceeding. The policy is located on our website at www.mow.uscourts.gov. Please read this policy carefully. **NOTICE: Attorneys must contact the court reporter for copies during this 90 day period. If necessary, Notice of Intent to Redact is due by 4/22/2021 unless otherwise directed by the court. Release of Transcript Restriction set for 7/14/2021. NOTICE: Attorneys must contact the court reporter for copies during this 90 day period.**<br><br>(Wambolt, Gayle) (Entered: 04/15/2021) |
| 04/15/2021 | 134 | Joint PROPOSED SCHEDULING ORDER *(JOINT MOTION FOR ENTRY OF PROPOSED FOURTH AMENDED PATENT SCHEDULING ORDER AND SUPPORTING SUGGESTIONS)* by Provisur Technologies, Inc.. (Babbitt, Michael) (Entered: 04/15/2021) |
| 04/15/2021 | 135 | Joint PROPOSED SCHEDULING ORDER *(JOINT MOTION FOR ENTRY OF PROPOSED FOURTH AMENDED PATENT SCHEDULING ORDER AND SUPPORTING SUGGESTIONS)* by Provisur Technologies, Inc.. (Attachments: # 1 Exhibit A - Proposed Fourth Amended Scheduling Order)(Babbitt, Michael) (Entered: 04/15/2021) |
| 04/16/2021 | | NOTICE OF DOCKET MODIFICATION. A modification has been made to the document filed on 4/15/2021 as Document No. 135, Joint PROPOSED SCHEDULING ORDER. The document has been deleted as it was a duplicate filing of Document No. 134. This is a text entry only - no document is attached. (Houston, Kiambu) (Entered: 04/16/2021) |
| 04/19/2021 | 136 | FOURTH AMENDED PATENT SCHEDULING ORDER: Claim Construction hearing set for 8/3/2021 at 1:00 PM in Courtroom 7B, Kansas City (SRB) before District Judge Stephen R. Bough. Signed on 4/19/2021 by District Judge Stephen R. Bough. (Richard, Tracey) (Entered: 04/19/2021) |
| 04/19/2021 | 137 | Minute Entry. Proceedings held before District Judge Stephen R. Bough: SCHEDULING CONFERENCE held on 4/19/2021. Amended Scheduling Order entered. Time in court: 1:30 p.m. to 2:30 p.m. To order a transcript of this hearing please contact Gayle Wambolt, 816-512-5641, gayle_wambolt@mow.uscourts.gov. This is a TEXT ONLY ENTRY. No document is attached. (Richard, Tracey) (Entered: 04/19/2021) |
| 04/27/2021 | 138 | ELECTRONIC TRANSCRIPT of Scheduling Conference held April 19, 2021, before Judge Stephen R. Bough. Court Reporter: Gayle Wambolt, 816-512-5641, gayle_wambolt@mow.uscourts.gov. Number of pages: 36. NOTICE RE: REDACTION OF TRANSCRIPTS: Within 7 calendar days of this filing, each party shall inform the Court, by filing a Notice of Redaction, of the parties' intent to redact personal data identifiers from the electronic transcript of the court proceeding. The policy is located on our website at www.mow.uscourts.gov. Please read this policy carefully. **NOTICE: Attorneys must contact the court reporter for copies during this 90 day period. If** |

Appx200

|  |  | necessary, **Notice of Intent to Redact is due by 5/4/2021 unless otherwise directed by the court. Release of Transcript Restriction set for 7/26/2021. NOTICE: Attorneys must contact the court reporter for copies during this 90 day period.**<br><br>(Wambolt, Gayle) (Entered: 04/27/2021) |
|---|---|---|
| 04/30/2021 | 139 | NOTICE of filing by Textor Maschinenbau GmbH, Textor, Inc., Weber Maschinenbau GmbH Breidenbach, Weber Maschinenbau GmbH Neubrandenburg, Weber, Inc. (Attachments: # 1 Exhibit Subpoena to Testify at a Deposition in a Civil Action issued to Raque Food Systems LLC, # 2 Exhibit Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action issued to Raque Food Systems LLC, # 3 Exhibit Subpoena to Testify at a Deposition in a Civil Action issued to Dorner Manufacturing Corporation, # 4 Exhibit Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action issued to Dorner Manufacturing Corporation, # 5 Exhibit Subpoena to Testify at a Deposition in a Civil Action issued to ABB Group, # 6 Exhibit Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action issued to ABB Group, # 7 Exhibit Subpoena to Testify at a Deposition in a Civil Action issued to Rheon U.S.A., # 8 Exhibit Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action issued to Rheon U.S.A.)(Leiker, Jason) (Entered: 04/30/2021) |
| 05/03/2021 | 140 | NOTICE of filing by Textor Maschinenbau GmbH, Textor, Inc., Weber Maschinenbau GmbH Breidenbach, Weber Maschinenbau GmbH Neubrandenburg, Weber, Inc. (Attachments: # 1 Exhibit Subpoena to Testify at a Deposition in a Civil Action issued to ABB, Inc., # 2 Exhibit Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action issued to ABB, Inc.)(Leiker, Jason) (Entered: 05/03/2021) |
| 05/07/2021 | 141 | CERTIFICATE OF SERVICE by Provisur Technologies, Inc. filed by Taylor Brooke Concannon Hausmann on behalf of Plaintiff Provisur Technologies, Inc..(Concannon Hausmann, Taylor) (Entered: 05/07/2021) |
| 05/10/2021 | 142 | CERTIFICATE OF SERVICE by All Defendants re 140 Notice of filing, 139 Notice of filing,,,, *Service of Subpoenas to Non-Parties* filed by Jason Scott Leiker on behalf of Defendants Textor Maschinenbau GmbH, Textor, Inc., Weber Maschinenbau GmbH Breidenbach, Weber Maschinenbau GmbH Neubrandenburg, Weber, Inc.. Related document: 140 Notice of filing, filed by Textor, Inc., Weber Maschinenbau GmbH Breidenbach, Weber, Inc., Textor Maschinenbau GmbH, Weber Maschinenbau GmbH Neubrandenburg, 139 Notice of filing,,,, filed by Textor, Inc., Weber Maschinenbau GmbH Breidenbach, Weber, Inc., Textor Maschinenbau GmbH, Weber Maschinenbau GmbH Neubrandenburg.(Leiker, Jason) (Entered: 05/10/2021) |
| 05/12/2021 | 143 | CERTIFICATE of counsel by Jason Scott Leiker on behalf of Textor Maschinenbau GmbH, Textor, Inc., Weber Maschinenbau GmbH Breidenbach, Weber Maschinenbau GmbH Neubrandenburg, Weber, Inc. (Leiker, Jason) (Entered: 05/12/2021) |
| 05/26/2021 | 144 | NOTICE of filing *Joint Claim Construction Statement for All Remaining Terms* by Provisur Technologies, Inc. (Simon, Jeffrey) (Entered: 05/26/2021) |
| 05/26/2021 | 145 | CERTIFICATE OF SERVICE by All Defendants *service of Defendants Supplemental Responses and Objections to Plaintiffs First Set of Interrogatories (No. 2-3)* filed by Jason Scott Leiker on behalf of Defendants Textor Maschinenbau GmbH, Textor, Inc., Weber Maschinenbau GmbH Breidenbach, Weber Maschinenbau GmbH Neubrandenburg, Weber, Inc..(Leiker, Jason) (Entered: 05/26/2021) |

| 06/02/2021 | 146 | CERTIFICATE OF SERVICE by Provisur Technologies, Inc. *of its service of its Response to Defendants' Supplemental Invalidity Contentions Pursuant to Defendants' Interrogatory No. 13* filed by Taylor Brooke Concannon Hausmann on behalf of Plaintiff Provisur Technologies, Inc..(Concannon Hausmann, Taylor) (Entered: 06/02/2021) |
|---|---|---|
| 06/09/2021 | 147 | NOTICE of filing *Opening Claim Construction Brief* by Textor Maschinenbau GmbH, Textor, Inc., Weber Maschinenbau GmbH Breidenbach, Weber Maschinenbau GmbH Neubrandenburg, Weber, Inc. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F, # 7 Exhibit G, # 8 Exhibit H, # 9 Exhibit I, # 10 Exhibit J, # 11 Exhibit K, # 12 Exhibit L, # 13 Exhibit M, # 14 Exhibit N, # 15 Exhibit O, # 16 Exhibit P, # 17 Exhibit Q, # 18 Exhibit R, # 19 Exhibit S, # 20 Exhibit T, # 21 Exhibit U, # 22 Exhibit V, # 23 Exhibit W, # 24 Exhibit X, # 25 Exhibit Y, # 26 Exhibit Z) (Leiker, Jason) (Entered: 06/09/2021) |
| 06/14/2021 | 148 | NOTICE to take deposition of Weber, Inc., Textor, Inc. Weber Maschinenbau GMBH Breidenbach, Weber Maschinenbau GMBH Neubrandenburg, and Textor Maschinenbau GMBH filed by Jeffrey J. Simon on behalf of Plaintiff Provisur Technologies, Inc.. (Simon, Jeffrey) (Entered: 06/14/2021) |
| 06/14/2021 | 149 | CERTIFICATE OF SERVICE by Provisur Technologies, Inc. re 148 Notice to Take Deposition, filed by Jeffrey J. Simon on behalf of Plaintiff Provisur Technologies, Inc.. Related document: 148 Notice to Take Deposition, filed by Provisur Technologies, Inc.. (Simon, Jeffrey) (Entered: 06/14/2021) |
| 06/30/2021 | 150 | NOTICE of filing *Plaintiff Provisur Technologies, Inc.'s Responsive Claim Construction Brief* by Provisur Technologies, Inc. re 147 Notice of filing,, (Attachments: # 1 Exhibit A - 2019.08.09 (Paper No. 02) Petition for Inter Partes Review of U.S. Patent No. 7,065,936, # 2 Exhibit B - 2019.08.09 Exhibit 1003 - Declaration of Claire Koelsch Sand, # 3 Exhibit C - 2019.08.09 Exhibit 1002 - File History for US Patent 7,065,936, # 4 Exhibit D - 2020.04.09 (Paper No. 08) Petitioner_s Request for Rehearing, # 5 Exhibit E - Manual of Patent Examining Procedure § 2173.02, # 6 Exhibit F - 019.08.09 (Paper No. 02) Petition for Inter Partes Review of U.S. Patent No. 6,669,005, # 7 Exhibit G - 2019.08.06 Exhibit 1002 - File History for US Patent 6,997,089, # 8 Exhibit H - 2019.08.09 Exhibit 1002 - US 7,533,513 File History, # 9 Exhibit I - 2021.02.24 (Paper No. 34) Final Written Decision)(Babbitt, Michael) (Entered: 06/30/2021) |
| 07/08/2021 | 151 | CERTIFICATE OF SERVICE by All Plaintiffs filed by Taylor Brooke Concannon Hausmann on behalf of Plaintiff Provisur Technologies, Inc..(Concannon Hausmann, Taylor) (Entered: 07/08/2021) |
| 07/08/2021 | 152 | CERTIFICATE OF SERVICE by All Plaintiffs filed by Taylor Brooke Concannon Hausmann on behalf of Plaintiff Provisur Technologies, Inc..(Concannon Hausmann, Taylor) (Entered: 07/08/2021) |
| 07/08/2021 | | NOTICE OF DOCKET MODIFICATION. A modification has been made to the document filed on 7/08/2021 as Document No. 152, Certificate of Service. At the filer's request, the document has been deleted as it was filed in the incorrect case. This is a text entry only - no document is attached. (Keller, Jeanne) (Entered: 07/08/2021) |
| 07/09/2021 | 153 | Joint MOTION for discovery *Entry of Stipulated Order Regarding E-Discovery and Suggestions In Support* filed by Taylor Brooke Concannon Hausmann on behalf of All Plaintiffs. Suggestions in opposition/response due by 7/23/2021 unless otherwise directed by the court. (Attachments: # 1 Exhibit Exhibit A)(Concannon Hausmann, Taylor) (Entered: 07/09/2021) |
| 07/12/2021 | 154 | STIPULATED ORDER REGARDING E-DISCOVERY. Signed on 7/12/2021 by District Judge Stephen R. Bough. (Richard, Tracey) (Entered: 07/12/2021) |

| 07/14/2021 | 155 | CERTIFICATE OF SERVICE by All Defendants *Defendants Fifth Supplemental Response and Objections to Plaintiffs First Set of Interrogatories (NO. 2)* filed by Jason Scott Leiker on behalf of Defendants Textor Maschinenbau GmbH, Textor, Inc., Weber Maschinenbau GmbH Breidenbach, Weber Maschinenbau GmbH Neubrandenburg, Weber, Inc..(Leiker, Jason) (Entered: 07/14/2021) |
|---|---|---|
| 07/14/2021 | 156 | CERTIFICATE OF SERVICE by All Defendants *Defendants Responses and Objections to Plaintiff's Third Set of Interrogatories (NOS. 14-15)* filed by Jason Scott Leiker on behalf of Defendants Textor Maschinenbau GmbH, Textor, Inc., Weber Maschinenbau GmbH Breidenbach, Weber Maschinenbau GmbH Neubrandenburg, Weber, Inc..(Leiker, Jason) (Entered: 07/14/2021) |
| 07/14/2021 | 157 | CERTIFICATE OF SERVICE by All Defendants *Defendants Third Supplemental Response and Objections to Plaintiffs Second Set of Interrogatories (NO. 8)* filed by Jason Scott Leiker on behalf of Defendants Textor Maschinenbau GmbH, Textor, Inc., Weber Maschinenbau GmbH Breidenbach, Weber Maschinenbau GmbH Neubrandenburg, Weber, Inc..(Leiker, Jason) (Entered: 07/14/2021) |
| 07/14/2021 | 158 | NOTICE of filing *Reply Claim Construction Brief* by Textor Maschinenbau GmbH, Textor, Inc., Weber Maschinenbau GmbH Breidenbach, Weber Maschinenbau GmbH Neubrandenburg, Weber, Inc. (Attachments: # 1 Exhibit 1 - California Expanded Metal - Plaintiff's Opening Markman Brief, # 2 Exhibit 2 - Omax Corp - Plaintiff's Opening Markman Brief)(Leiker, Jason) (Entered: 07/14/2021) |
| 07/15/2021 | 159 | NOTICE of filing *Final Claim Construction Chart* by Provisur Technologies, Inc. re 136 Amended Scheduling Order, Set Hearings (Babbitt, Michael) (Entered: 07/15/2021) |
| 07/15/2021 | 160 | CERTIFICATE OF SERVICE by Provisur Technologies, Inc. filed by Taylor Brooke Concannon Hausmann on behalf of Plaintiff Provisur Technologies, Inc..(Concannon Hausmann, Taylor) (Entered: 07/15/2021) |
| 07/21/2021 | 161 | Motion to allow Kristina Caggiano Kelly to appear pro hac vice (Pro Hac fee $100 receipt number AMOWDC-7504577) filed by Jason Scott Leiker on behalf of Textor Maschinenbau GmbH, Textor, Inc., Weber Maschinenbau GmbH Breidenbach, Weber Maschinenbau GmbH Neubrandenburg, Weber, Inc.. (Leiker, Jason) (Entered: 07/21/2021) |
| 07/21/2021 | 162 | ORDER granting 161 motion to appear pro hac vice entered by Clerk of Court. Attorney Kristina Caggiano Kelly for Textor Maschinenbau GmbH, Textor, Inc., Weber Maschinenbau GmbH Breidenbach, and Weber, Inc., allowed to appear pro hac vice. This entry will serve as authorization for the pro hac participation by the attorney.<br><br>Western District of Missouri Local Rule 5.1 requires documents to be filed electronically. If pro hac vice counsel has not already done so, counsel is directed to immediately register for a WDMO e-filing account for NextGen CM/ECF. This will enable counsel to electronically file documents and receive electronic notification of filings. Register for a WDMO e-filing account at PACER. This is a TEXT ONLY ENTRY. No document is attached. (Warren, Melissa) (Entered: 07/21/2021) |
| 08/03/2021 | 163 | Minute Entry. Proceedings held before District Judge Stephen R. Bough: CLAIM CONSTRUCTION HEARING held on 8/3/2021. Time in court: 12:56 p.m. to 3:39 p.m. To order a transcript of this hearing please contact Gayle Wambolt, 816-512-5641, gayle_wambolt@mow.uscourts.gov. This is a TEXT ONLY ENTRY. No document is attached. (Richard, Tracey) (Entered: 08/03/2021) |
| 08/09/2021 | 164 | CERTIFICATE OF SERVICE by Textor Maschinenbau GmbH, Textor, Inc., Weber Maschinenbau GmbH Breidenbach, Weber Maschinenbau GmbH Neubrandenburg, |

Appx203

| | | Weber, Inc. filed by Jason Scott Leiker on behalf of Defendants Textor Maschinenbau GmbH, Textor, Inc., Weber Maschinenbau GmbH Breidenbach, Weber Maschinenbau GmbH Neubrandenburg, Weber, Inc..(Leiker, Jason) (Entered: 08/09/2021) |
|---|---|---|
| 08/12/2021 | 165 | ORDER: The Court ORDERS the constructions of the disputed terms as described herein. Signed on 8/12/2021 by District Judge Stephen R. Bough. (Richard, Tracey) (Entered: 08/12/2021) |
| 08/13/2021 | 166 | NOTICE OF HEARING - This is the official notice for this hearing. This is a TEXT ONLY ENTRY. No document is attached. Scheduling Conference set for 10/6/2021 at 9:00 a.m. in Courtroom 7B, Kansas City (SRB) before District Judge Stephen R. Bough. Proposed scheduling order due by September 24, 2021. (Richard, Tracey) (Entered: 08/13/2021) |
| 08/20/2021 | 167 | CERTIFICATE OF SERVICE by All Defendants *Defendants Third Supplemental Responses and Objections to Plaintiff's First Set of Interrogatories (NO. 1)* filed by Jason Scott Leiker on behalf of Defendants Textor Maschinenbau GmbH, Textor, Inc., Weber Maschinenbau GmbH Breidenbach, Weber Maschinenbau GmbH Neubrandenburg, Weber, Inc..(Leiker, Jason) (Entered: 08/20/2021) |
| 08/25/2021 | 168 | ELECTRONIC TRANSCRIPT of Claim Construction Hearing held August 3, 2021, before Judge Stephen R. Bough. Court Reporter: Gayle Wambolt, 816-512-5641, gayle_wambolt@mow.uscourts.gov. Number of pages: 106. NOTICE RE: REDACTION OF TRANSCRIPTS: Within 7 calendar days of this filing, each party shall inform the Court, by filing a Notice of Redaction, of the parties' intent to redact personal data identifiers from the electronic transcript of the court proceeding. The policy is located on our website at www.mow.uscourts.gov. Please read this policy carefully. **NOTICE: Attorneys must contact the court reporter for copies during this 90 day period.** If necessary, Notice of Intent to Redact is due by 9/1/2021 unless otherwise directed by the court. Release of Transcript Restriction set for 11/23/2021. **NOTICE: Attorneys must contact the court reporter for copies during this 90 day period.** <br><br> (Wambolt, Gayle) (Entered: 08/25/2021) |
| 08/26/2021 | 169 | CERTIFICATE OF SERVICE by Textor Maschinenbau GmbH, Textor, Inc., Weber Maschinenbau GmbH Breidenbach, Weber Maschinenbau GmbH Neubrandenburg, Weber, Inc. filed by Jason Scott Leiker on behalf of Defendants Textor Maschinenbau GmbH, Textor, Inc., Weber Maschinenbau GmbH Breidenbach, Weber Maschinenbau GmbH Neubrandenburg, Weber, Inc..(Leiker, Jason) (Entered: 08/26/2021) |
| 09/09/2021 | 170 | CERTIFICATE OF SERVICE by Provisur Technologies, Inc. filed by Taylor Brooke Concannon Hausmann on behalf of Plaintiff Provisur Technologies, Inc..(Concannon Hausmann, Taylor) (Entered: 09/09/2021) |
| 09/24/2021 | 171 | Supplemental PROPOSED SCHEDULING ORDER *(JOINT) for Remaining Deadlines after Filing of Court's Claim Construction Orders* by Provisur Technologies, Inc.. (Simon, Jeffrey) (Entered: 09/24/2021) |
| 09/29/2021 | 172 | CERTIFICATE OF SERVICE by Provisur Technologies, Inc. *of its Notice of Inspection Pursuant to Federal Rule of Civil Procedure 34(a)* filed by Taylor Brooke Concannon Hausmann on behalf of Plaintiff Provisur Technologies, Inc..(Concannon Hausmann, Taylor) (Entered: 09/29/2021) |
| 10/01/2021 | 173 | Joint MOTION for protective order *Addendum* filed by Jason Scott Leiker on behalf of All Defendants. Suggestions in opposition/response due by 10/15/2021 unless otherwise directed by the court. (Attachments: # 1 Exhibit Proposed Addendum to Protective Order) (Leiker, Jason) (Entered: 10/01/2021) |

Appx204

| 10/04/2021 | 174 | Motion to allow Heather M. Schneider to appear pro hac vice (Pro Hac fee $100 receipt number AMOWDC-7610679) filed by Taylor Brooke Concannon Hausmann on behalf of Provisur Technologies, Inc. (Concannon Hausmann, Taylor) (Entered: 10/04/2021) |
| --- | --- | --- |
| 10/04/2021 | 175 | ORDER granting 174 motion to appear pro hac vice entered by Clerk of Court. Attorney Heather M Schneider for Provisur Technologies, Inc. allowed to appear pro hac vice. This entry will serve as authorization for the pro hac participation by the attorney.<br><br>Western District of Missouri Local Rule 5.1 requires documents to be filed electronically. If pro hac vice counsel has not already done so, counsel is directed to immediately register for a WDMO e-filing account for NextGen CM/ECF. This will enable counsel to electronically file documents and receive electronic notification of filings. Register for a WDMO e-filing account at PACER. This is a TEXT ONLY ENTRY. No document is attached. (Warren, Melissa) (Entered: 10/04/2021) |
| 10/04/2021 | 176 | ORDER granting 173 motion for addendum to protective order. Signed on 10/4/2021 by District Judge Stephen R. Bough. (Richard, Tracey) (Entered: 10/04/2021) |
| 10/06/2021 | 177 | Minute Entry. Proceedings held before District Judge Stephen R. Bough: SCHEDULING CONFERENCE held on 10/6/2021. Scheduling Order to be entered. Time in court: 9:00 a.m. to 9:43 a.m. This is a TEXT ONLY ENTRY. No document is attached. (Richard, Tracey) (Entered: 10/06/2021) |
| 10/06/2021 | 178 | RULES OF Jury TRIAL. Signed on 10/6/2021 by District Judge Stephen R. Bough. (Richard, Tracey) (Entered: 10/06/2021) |
| 10/06/2021 | 179 | SCHEDULING ORDER: Discovery due by 12/22/2021. Dispositive Motions due by 4/22/2022. Pretrial Conference set for 8/12/2022 at 1:30 PM Courtroom 7B, Kansas City (SRB) before District Judge Stephen R. Bough. Jury Trial set for 9/12/2022 at 9:00 AM in Courtroom 7B, Kansas City (SRB) before District Judge Stephen R. Bough. Signed on 10/6/2021 by District Judge Stephen R. Bough. (Richard, Tracey) (Entered: 10/06/2021) |
| 10/07/2021 | 180 | NOTICE of filing *Notice of Service of Amended Invalidity Contentions* by Textor Maschinenbau GmbH, Textor, Inc., Weber Maschinenbau GmbH Breidenbach, Weber Maschinenbau GmbH Neubrandenburg, Weber, Inc. (Leiker, Jason) (Entered: 10/07/2021) |
| 10/12/2021 | 181 | NOTICE OF HEARING - This is the official notice for this hearing. This is a TEXT ONLY ENTRY. No document is attached. Telephonic Status Conferences are set for 11/3/2021 at 1:30 p.m., 11/17/2021 at 9:00 a.m., 12/1/2021 at 9:30 a.m. and 12/15/2021 at 11:00 a.m. before District Judge Stephen R. Bough. (Richard, Tracey) (Entered: 10/12/2021) |
| 10/13/2021 | 182 | NOTICE of appearance by Tessa K. Jacob on behalf of Provisur Technologies, Inc. (Attorney Tessa K. Jacob added to party Provisur Technologies, Inc.(pty:pla))(Jacob, Tessa) (Entered: 10/13/2021) |
| 10/26/2021 | 183 | MOTION for leave to file *Exhibits Under Seal* filed by Jason Scott Leiker on behalf of All Defendants. Suggestions in opposition/response due by 11/9/2021 unless otherwise directed by the court. (Leiker, Jason) (Entered: 10/26/2021) |
| 10/26/2021 | 184 | MOTION for partial summary judgment filed by Jason Scott Leiker on behalf of All Defendants. Suggestions in opposition/response due by 11/16/2021 unless otherwise directed by the court. (Leiker, Jason) (Entered: 10/26/2021) |
| 10/26/2021 | 185 | SUGGESTIONS in support re 184 MOTION for partial summary judgment filed by Jason Scott Leiker on behalf of Defendants Textor Maschinenbau GmbH, Textor, Inc., Weber Maschinenbau GmbH Breidenbach, Weber Maschinenbau GmbH |

Appx205

| | | Neubrandenburg, Weber, Inc.. (Attachments: # 1 Exhibit 1 - SEALED, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5, # 6 Exhibit 6, # 7 Exhibit 7, # 8 Exhibit 8 - SEALED, # 9 Exhibit 9, # 10 Exhibit 10, # 11 Exhibit 11, # 12 Exhibit 12, # 13 Exhibit 13)(Related document(s) 184 ) (Leiker, Jason) (Entered: 10/26/2021) |
|---|---|---|
| 10/27/2021 | 186 | Before the Court is Defendants' Motion for Leave to File Exhibits Under Seal and Suggestions in Support. (Doc. #183.) For good cause shown the motion is GRANTED. Defendants may file Exhibits 1 and 8 to their Motion for Partial Summary Judgment of Non-Infringement and Suggestions in Support under seal. Signed on 10/27/2021 by District Judge Stephen R. Bough. This is a TEXT ONLY ENTRY. No document is attached. (Richard, Tracey) (Entered: 10/27/2021) |
| 10/27/2021 | 187 | NOTICE (SEALED) by Textor Maschinenbau GmbH, Textor, Inc., Weber Maschinenbau GmbH Breidenbach, Weber Maschinenbau GmbH Neubrandenburg, Weber, Inc. re 185 Suggestions in Support of Motion,, (Attachments: # 1 Exhibit 1 SEALED, # 2 Exhibit 8 SEALED)(Leiker, Jason) (Entered: 10/27/2021) |
| 10/27/2021 | 188 | CERTIFICATE OF SERVICE by All Defendants *Supplemental Rule 26(a)(1) Initial Disclosures* filed by Jason Scott Leiker on behalf of Defendants Textor Maschinenbau GmbH, Textor, Inc., Weber Maschinenbau GmbH Breidenbach, Weber Maschinenbau GmbH Neubrandenburg, Weber, Inc..(Leiker, Jason) (Entered: 10/27/2021) |
| 10/28/2021 | 189 | Motion to allow Jonathan Tuminaro, Ph.D. to appear pro hac vice (Pro Hac fee $100 receipt number AMOWDC-7648403) filed by Jason Scott Leiker on behalf of All Defendants. (Leiker, Jason) (Entered: 10/28/2021) |
| 10/29/2021 | 190 | ORDER granting 189 motion to appear pro hac vice entered by Clerk of Court. Attorney Jonathan Tuminaro for Textor Maschinenbau GmbH, Textor, Inc., Weber Maschinenbau GmbH Breidenbach and Weber, Inc. allowed to appear pro hac vice. This entry will serve as authorization for the pro hac participation by the attorney.<br><br>Western District of Missouri Local Rule 5.1 requires documents to be filed electronically. If pro hac vice counsel has not already done so, counsel is directed to immediately register for a WDMO e-filing account for NextGen CM/ECF. This will enable counsel to electronically file documents and receive electronic notification of filings. Register for a WDMO e-filing account at PACER. This is a TEXT ONLY ENTRY. No document is attached. (Berner, Crystal) (Entered: 10/29/2021) |
| 10/29/2021 | 191 | CERTIFICATE OF SERVICE by All Defendants filed by Jason Scott Leiker on behalf of Defendants Textor Maschinenbau GmbH, Textor, Inc., Weber Maschinenbau GmbH Breidenbach, Weber Maschinenbau GmbH Neubrandenburg, Weber, Inc..(Leiker, Jason) (Entered: 10/29/2021) |
| 11/03/2021 | 192 | Minute Entry. Proceedings held before District Judge Stephen R. Bough: Monthly Telephonic STATUS CONFERENCE held on 11/3/2021. Order to be entered. Time in court: 1:30 p.m. to 1:40 p.m. To order a transcript of this hearing please contact Gayle Wambolt, 816-512-5641, gayle_wambolt@mow.uscourts.gov. This is a TEXT ONLY ENTRY. No document is attached. (Richard, Tracey) (Entered: 11/03/2021) |
| 11/03/2021 | 193 | On November 3, 2021, the Court presided over a telephone conference with the parties. For the reasons stated during the telephone conference, it is hereby ORDERED that: (1) on or before November 10, 2021, Defendants shall file a motion for protective order; (2) on or before November 15, 2021, Plaintiff shall file a response; (3) the parties' briefs shall not exceed 15 pages in length; and (4) oral argument on the motion for protective order shall be heard during the telephone conference set for November 17, 2021, at 9:00 a.m. Signed on 11/3/2021 by District Judge Stephen R. Bough. This is a TEXT ONLY ENTRY. No document is attached. (Richard, Tracey) (Entered: 11/03/2021) |

| 11/05/2021 | 194 | CERTIFICATE OF SERVICE by All Defendants *Defendants Third Set of Interrogatories to Plaintiff (Nos. 14-16)* filed by Jason Scott Leiker on behalf of Defendants Textor Maschinenbau GmbH, Textor, Inc., Weber Maschinenbau GmbH Breidenbach, Weber Maschinenbau GmbH Neubrandenburg, Weber, Inc..(Leiker, Jason) (Entered: 11/05/2021) |
|---|---|---|
| 11/10/2021 | 195 | MOTION for protective order filed by Jason Scott Leiker on behalf of Textor Maschinenbau GmbH, Textor, Inc., Weber Maschinenbau GmbH Breidenbach, Weber Maschinenbau GmbH Neubrandenburg, Weber, Inc.. Suggestions in opposition/response due by 11/24/2021 unless otherwise directed by the court. (Attachments: # 1 Exhibit A-Protective Order)(Leiker, Jason) (Entered: 11/10/2021) |
| 11/10/2021 | 196 | SUGGESTIONS in support re 195 MOTION for protective order filed by Jason Scott Leiker on behalf of Defendants Textor Maschinenbau GmbH, Textor, Inc., Weber Maschinenbau GmbH Breidenbach, Weber Maschinenbau GmbH Neubrandenburg, Weber, Inc.. (Attachments: # 1 Exhibit B, # 2 Exhibit C, # 3 Exhibit D, # 4 Exhibit E, # 5 Exhibit F, # 6 Exhibit G, # 7 Exhibit H, # 8 Exhibit I, # 9 Exhibit J, # 10 Exhibit K, # 11 Exhibit L, # 12 Exhibit M, # 13 Exhibit N, # 14 Exhibit O, # 15 Exhibit P, # 16 Exhibit Q, # 17 Exhibit R, # 18 Exhibit S, # 19 Exhibit T, # 20 Exhibit U, # 21 Exhibit V, # 22 Exhibit W, # 23 Exhibit X, # 24 Exhibit Y, # 25 Exhibit Z, # 26 Exhibit AA, # 27 Exhibit BB)(Related document(s) 195 ) (Leiker, Jason) (Entered: 11/10/2021) |
| 11/11/2021 | 197 | CERTIFICATE OF SERVICE by All Defendants *Notice of Intent to Issue Subpoena* filed by Jason Scott Leiker on behalf of Defendants Textor Maschinenbau GmbH, Textor, Inc., Weber Maschinenbau GmbH Breidenbach, Weber Maschinenbau GmbH Neubrandenburg, Weber, Inc..(Leiker, Jason) (Entered: 11/11/2021) |
| 11/15/2021 | 198 | CERTIFICATE OF SERVICE by All Defendants filed by Jason Scott Leiker on behalf of Defendants Textor Maschinenbau GmbH, Textor, Inc., Weber Maschinenbau GmbH Breidenbach, Weber Maschinenbau GmbH Neubrandenburg, Weber, Inc..(Leiker, Jason) (Entered: 11/15/2021) |
| 11/15/2021 | 199 | MOTION for leave to file *Plaintiff's Response to Defendants' Suggestions in Support of Motion for Protective Order, Declaration of M. Babbitt and Its Exhibits Under Seal* filed by Jeffrey J. Simon on behalf of Provisur Technologies, Inc.. Suggestions in opposition/response due by 11/29/2021 unless otherwise directed by the court. (Simon, Jeffrey) (Entered: 11/15/2021) |
| 11/16/2021 | 200 | Before the Court is Plaintiff's Motion for Leave to File Plaintiff's Response to Defendants' Suggestions in Support of Motion for Protective Order, Declaration of Michael G. Babbit, and its Exhibits Under Seal. (Doc. #199.) For good cause shown the motion is GRANTED. Signed on 11/16/2021 by District Judge Stephen R. Bough. This is a TEXT ONLY ENTRY. No document is attached. (Richard, Tracey) (Entered: 11/16/2021) |
| 11/16/2021 | 201 | SUGGESTIONS in opposition (SEALED) re 195 MOTION for protective order filed by Jeffrey J. Simon on behalf of Plaintiff Provisur Technologies, Inc.. Reply suggestions due by 11/30/2021 unless otherwise directed by the court. (Attachments: # 1 Affidavit FILED UNDER SEAL-Declaration of Michael G. Babbitt, # 2 Exhibit A - FILED UNDER SEAL, # 3 Exhibit B - FILED UNDER SEAL, # 4 Exhibit C - FILED UNDER SEAL, # 5 Exhibit D - FILED UNDER SEAL, # 6 Exhibit E - FILED UNDER SEAL, # 7 Exhibit F - FILED UNDER SEAL, # 8 Exhibit G - FILED UNDER SEAL, # 9 Exhibit H - FILED UNDER SEAL, # 10 Exhibit I - FILED UNDER SEAL)(Related document(s) 195 ) (Simon, Jeffrey) (Entered: 11/16/2021) |
| 11/16/2021 | 202 | SUGGESTIONS in opposition re 184 MOTION for partial summary judgment *of Non-Infringement* filed by Michael Babbitt on behalf of Plaintiff Provisur Technologies, Inc.. Reply suggestions due by 11/30/2021 unless otherwise directed by the court. |

Appx207

| | | |
|---|---|---|
| | | (Attachments: # 1 Exhibit A - Declaration of Michael G. Babbitt, # 2 Exhibit B - Filed Under Seal, # 3 Exhibit C)(Related document(s) 184 ) (Babbitt, Michael) (Entered: 11/16/2021) |
| 11/16/2021 | 203 | MOTION for leave to file *Exhibit Under Seal and Suggestions in Support* filed by Michael Babbitt on behalf of Provisur Technologies, Inc.. Suggestions in opposition/response due by 11/30/2021 unless otherwise directed by the court. (Babbitt, Michael) (Entered: 11/16/2021) |
| 11/16/2021 | 204 | SUGGESTIONS in opposition (SEALED) re 184 MOTION for partial summary judgment *of Non-Infringement* filed by Michael Babbitt on behalf of Plaintiff Provisur Technologies, Inc.. Reply suggestions due by 11/30/2021 unless otherwise directed by the court. (Attachments: # 1 Exhibit B - Filed Under Seal)(Related document(s) 184 ) (Babbitt, Michael) (Entered: 11/16/2021) |
| 11/17/2021 | 205 | Before the Court is Plaintiff's Motion for Leave to File Exhibit Under Seal and Suggestions in Support. (Doc. #203.) For good cause shown the motion is GRANTED. Signed on 11/17/2021 by District Judge Stephen R. Bough. This is a TEXT ONLY ENTRY. No document is attached. (Richard, Tracey) (Entered: 11/17/2021) |
| 11/17/2021 | 206 | Minute Entry. Proceedings held before District Judge Stephen R. Bough: Discovery Dispute TELEPHONE CONFERENCE held on 11/17/2021. Order to be entered. Time in court: 9:00 a.m. to 9:45 a.m. To order a transcript of this hearing please contact Gayle Wambolt, 816-512-5641, gayle_wambolt@mow.uscourts.gov. This is a TEXT ONLY ENTRY. No document is attached. (Richard, Tracey) (Entered: 11/17/2021) |
| 11/17/2021 | 207 | On November 17, 2021, the Court presided over a telephone conference with the parties. For the reasons stated during the telephone conference, it is hereby ORDERED that Defendants' Motion for Protective Order (Doc. #195) is DENIED. The parties may consult the transcript for further details. Signed on 11/17/2021 by District Judge Stephen R. Bough. This is a TEXT ONLY ENTRY. No document is attached. (Richard, Tracey) (Entered: 11/17/2021) |
| 11/18/2021 | | Set/Reset Hearings: Monthly Telephonic Status Conference set for 12/1/2021 at 9:30 AM before District Judge Stephen R. Bough. For the purpose of Daily Docket only, no notice to be sent. (Richard, Tracey) (Entered: 11/18/2021) |
| 11/19/2021 | 208 | SEALED TRANSCRIPT of Teleconference held November 17, 2021, before Judge Stephen R. Bough. Court Reporter: Gayle Wambolt, 816-512-5641, gayle_wambolt@mow.uscourts.gov. Number of pages: 30.(Wambolt, Gayle) (Entered: 11/19/2021) |
| 11/30/2021 | 209 | CERTIFICATE OF SERVICE by All Defendants *Defendants' Third Supplemental Responses and Objections to Plaintiff's Second Set of Interrogatories (No 12)* filed by Jason Scott Leiker on behalf of Defendants Textor Maschinenbau GmbH, Textor, Inc., Weber Maschinenbau GmbH Breidenbach, Weber Maschinenbau GmbH Neubrandenburg, Weber, Inc..(Leiker, Jason) (Entered: 11/30/2021) |
| 11/30/2021 | 210 | MOTION to seal document 176 Order on Motion for Protective Order, 34 Protective Order filed by Jason Scott Leiker on behalf of All Defendants. Suggestions in opposition/response due by 12/14/2021 unless otherwise directed by the court. (Related document(s) 176 , 34 ) (Leiker, Jason) (Entered: 11/30/2021) |
| 11/30/2021 | 211 | REPLY SUGGESTIONS to motion re 184 MOTION for partial summary judgment *Public Redacted Version of Defendants' Reply Suggestions in Support of Motion for Partial Summary Judgment* filed by Jason Scott Leiker on behalf of Defendants Textor Maschinenbau GmbH, Textor, Inc., Weber Maschinenbau GmbH Breidenbach, Weber |

| | | Maschinenbau GmbH Neubrandenburg, Weber, Inc.. (Attachments: # 1 Exhibit A - FILED UNDER SEAL)(Related document(s) 184 ) (Leiker, Jason) (Entered: 11/30/2021) |
|---|---|---|
| 12/01/2021 | 212 | Before this Court is Defendant's Motion to File under Seal (Doc. #210). For good cause stated the motion is GRANTED. Signed on 12/1/2021 by District Judge Stephen R. Bough. This is a TEXT ONLY ENTRY. No document is attached. (Richard, Tracey) (Entered: 12/01/2021) |
| 12/01/2021 | 213 | REPLY SUGGESTIONS to motion (Sealed) re 184 MOTION for partial summary judgment filed by Jason Scott Leiker on behalf of Defendants Textor Maschinenbau GmbH, Textor, Inc., Weber Maschinenbau GmbH Breidenbach, Weber Maschinenbau GmbH Neubrandenburg, Weber, Inc.. (Attachments: # 1 Exhibit A-CONFIDENTIAL FILED UNDER SEAL)(Related document(s) 184 ) (Leiker, Jason) (Entered: 12/01/2021) |
| 12/01/2021 | 214 | Minute Entry. Proceedings held before District Judge Stephen R. Bough: MONTHLY STATUS CONFERENCE held on 12/1/2021. Order to be entered. Time in court: 9:35 a.m. to 10:15 a.m. To order a transcript of this hearing please contact Gayle Wambolt, 816-512-5641, gayle_wambolt@mow.uscourts.gov. This is a TEXT ONLY ENTRY. No document is attached. (Richard, Tracey) (Entered: 12/01/2021) |
| 12/01/2021 | 215 | **AMENDED** NOTICE OF HEARING - This is the official notice for this hearing. This is a TEXT ONLY ENTRY. No document is attached. The Monthly Status Conference PREVIOUSLY set for 12/15/2021 is **RESET for 12/13/2021 at 10:00 AM in Courtroom 7B,** Kansas City (SRB) before District Judge Stephen R. Bough. (Richard, Tracey) (Entered: 12/01/2021) |
| 12/01/2021 | 216 | On December 1, 2021, the Court presided over a telephone conference with the parties. For the reasons stated during the telephone conference, it is hereby ORDERED that (1) Plaintiff shall limit its list of witnesses to be deposed to twelve (12) individuals; (2) Defendants have adequately responded to Plaintiff's interrogatories regarding design arounds; (3) on or before December 10, 2021, Defendants shall produce remaining additional documents; and (4) on December 13, 2021, the Court will preside over a hearing to address any proposed revisions to the existing scheduling order. The parties may consult the transcript for further details. Signed on 12/1/2021 by District Judge Stephen R. Bough. This is a TEXT ONLY ENTRY. No document is attached. (Richard, Tracey) (Entered: 12/01/2021) |
| 12/01/2021 | 217 | ORDER denying 184 motion for partial summary judgment. Signed on 12/1/2021 by District Judge Stephen R. Bough. (Richard, Tracey) (Entered: 12/01/2021) |
| 12/02/2021 | 218 | CERTIFICATE OF SERVICE by All Defendants *Defendants' [Corrected] Third Supplemental Responses and Objections to Plaintiff's Second Set of Interrogatories (No 12),* filed by Jason Scott Leiker on behalf of Defendants Textor Maschinenbau GmbH, Textor, Inc., Weber Maschinenbau GmbH Breidenbach, Weber Maschinenbau GmbH Neubrandenburg, Weber, Inc..(Leiker, Jason) (Entered: 12/02/2021) |
| 12/07/2021 | 219 | NOTICE to take deposition of Gregg Cissell filed by Craig C. Martin on behalf of Plaintiff Provisur Technologies, Inc..(Martin, Craig) (Entered: 12/07/2021) |
| 12/07/2021 | 220 | NOTICE to take deposition of Russell Stroner filed by Craig C. Martin on behalf of Plaintiff Provisur Technologies, Inc..(Martin, Craig) (Entered: 12/07/2021) |
| 12/09/2021 | 221 | SEALED TRANSCRIPT of Teleconference held December 1, 2021, before Judge Stephen R. Bough. Court Reporter: Gayle Wambolt, 816-512-5641, gayle_wambolt@mow.uscourts.gov. Number of pages: 27.(Wambolt, Gayle) (Entered: 12/09/2021) |

Appx209

| 12/13/2021 | 222 | Minute Entry. Proceedings held before District Judge Stephen R. Bough: STATUS CONFERENCE held on 12/13/2021. Order to be entered. Time in court: 10:00 a.m. to 11:01 a.m. To order a transcript of this hearing please contact Gayle Wambolt, 816-512-5641, gayle_wambolt@mow.uscourts.gov. This is a TEXT ONLY ENTRY. No document is attached. (Richard, Tracey) (Entered: 12/13/2021) |
|---|---|---|
| 12/13/2021 | 223 | NOTICE OF HEARING - This is the official notice for this hearing. This is a TEXT ONLY ENTRY. No document is attached. Monthly Status Conferences are set for 1/4/2022 at 9:00 AM and 2/17/2022 at 8:30 AM in Courtroom 7B, Kansas City (SRB) before District Judge Stephen R. Bough. (Richard, Tracey) (Entered: 12/13/2021) |
| 12/13/2021 | 224 | ORDER CONCERNING DEPOSITIONS OF FOREIGN CITIZENS RESIDENT IN THE EUROPEAN UNION. Signed on 12/13/2021 by District Judge Stephen R. Bough. (Richard, Tracey) (Entered: 12/13/2021) |
| 12/13/2021 | 225 | On December 13, 2021, the Court presided over a status conference with the parties. For the reasons stated during the status conference, it is hereby ORDERED that: (1) at this time, Plaintiff's request to depose Guenther Weber is DENIED WITHOUT PREJUDICE; (2) at this time, Defendants' request to depose William Crown is DENIED WITHOUT PREJUDICE; and (3) on or before December 20, 2021, (a) Plaintiff and Defendants shall inform opposing counsel whether they know the location of a functioning Powermax4000; and (b) Plaintiff and Defendants' counsel shall work on a stipulation regarding the Powermax4000. Signed on 12/13/2021 by District Judge Stephen R. Bough. (Richard, Tracey) (Entered: 12/13/2021) |
| 12/13/2021 | 226 | The parties have submitted to the Court a revised discovery schedule. For good cause shown, the parties' revised discovery schedule is GRANTED. It is hereby ORDERED that: (1) the close of fact discovery is extended to February 4, 2022; (2) opening expert reports are due on or before February 23, 2022; (3) rebuttal reports are due on or before March 18, 2022; (4) the close of expert discovery is April 8, 2022; and (5) dispositive motions are due on or before April 22, 2022. Signed on 12/13/2021 by District Judge Stephen R. Bough. This is a TEXT ONLY ENTRY. No document is attached. (Richard, Tracey) (Entered: 12/13/2021) |
| 12/16/2021 | 227 | CERTIFICATE OF SERVICE by All Defendants *Responses and Objections to Plaintiff's Fifth Set of Requests for the Production of Documents and Things (Nos. 93-109)* filed by Jason Scott Leiker on behalf of Defendants Textor Maschinenbau GmbH, Textor, Inc., Weber Maschinenbau GmbH Breidenbach, Weber Maschinenbau GmbH Neubrandenburg, Weber, Inc..(Leiker, Jason) (Entered: 12/16/2021) |
| 12/20/2021 | 228 | SEALED TRANSCRIPT of Discovery Dispute Hearing held December 13, 2021, before Judge Stephen R. Bough. Court Reporter: Gayle Wambolt, 816-512-5641, gayle_wambolt@mow.uscourts.gov. Number of pages: 46.(Wambolt, Gayle) (Entered: 12/20/2021) |
| 12/22/2021 | 229 | CERTIFICATE OF SERVICE by All Defendants filed by Jason Scott Leiker on behalf of Defendants Textor Maschinenbau GmbH, Textor, Inc., Weber Maschinenbau GmbH Breidenbach, Weber Maschinenbau GmbH Neubrandenburg, Weber, Inc..(Leiker, Jason) (Entered: 12/22/2021) |
| 12/29/2021 | 230 | Motion to allow Henry C. Thomas to appear pro hac vice (Pro Hac fee $100 receipt number AMOWDC-7729132) filed by Taylor Brooke Concannon Hausmann on behalf of Provisur Technologies, Inc.. (Concannon Hausmann, Taylor) (Entered: 12/29/2021) |
| 12/29/2021 | 231 | Motion to allow Mitchell Feldhake to appear pro hac vice (Pro Hac fee $100 receipt number AMOWDC-7729136) filed by Taylor Brooke Concannon Hausmann on behalf of Provisur Technologies, Inc.. (Concannon Hausmann, Taylor) (Entered: 12/29/2021) |

Appx210

| 12/29/2021 | 232 | ORDER granting 230 and 231 motion to appear pro hac vice entered by Clerk of Court. Attorney Henry C. Thomas and Mitchell Feldhake for Provisur Technologies, Inc. allowed to appear pro hac vice. This entry will serve as authorization for the pro hac participation by the attorney.<br><br>Western District of Missouri Local Rule 5.1 requires documents to be filed electronically. If pro hac vice counsel has not already done so, counsel is directed to immediately register for a WDMO e-filing account for NextGen CM/ECF. This will enable counsel to electronically file documents and receive electronic notification of filings. Register for a WDMO e-filing account at PACER. This is a TEXT ONLY ENTRY. No document is attached. (Berner, Crystal) (Entered: 12/29/2021) |
| 01/04/2022 | 233 | Minute Entry. Proceedings held before District Judge Stephen R. Bough: MONTHLY STATUS CONFERENCE held on 1/4/2022. Order to be entered. Time in court: 9:00 a.m. to 10:35 a.m. To order a transcript of this hearing please contact Gayle Wambolt, 816-512-5641, gayle_wambolt@mow.uscourts.gov. This is a TEXT ONLY ENTRY. No document is attached. (Richard, Tracey) (Entered: 01/04/2022) |
| 01/04/2022 | 234 | On January 4, 2022, the Court presided over a hearing to resolve discovery disputes raised by the parties. The Court resolved the parties' disputes as set forth on the record. The parties may consult the transcript for details on the Court's rulings and further instructions. Signed on 1/4/2022 by District Judge Stephen R. Bough. This is a TEXT ONLY ENTRY. No document is attached. (Richard, Tracey) (Entered: 01/04/2022) |
| 01/10/2022 | 235 | ORDER for authority to seek inspection. Signed on 1/10/2022 by District Judge Stephen R. Bough. (Richard, Tracey) (Entered: 01/10/2022) |
| 01/10/2022 | 236 | ELECTRONIC TRANSCRIPT of Status Conference held January 4, 2022, before Judge Stephen R. Bough. Court Reporter: Gayle Wambolt, 816-512-5641, gayle_wambolt@mow.uscourts.gov. Number of pages: 68. NOTICE RE: REDACTION OF TRANSCRIPTS: Within 7 calendar days of this filing, each party shall inform the Court, by filing a Notice of Redaction, of the parties' intent to redact personal data identifiers from the electronic transcript of the court proceeding. The policy is located on our website at www.mow.uscourts.gov. Please read this policy carefully. NOTICE: Attorneys must contact the court reporter for copies during this 90 day period. If necessary, Notice of Intent to Redact is due by 1/18/2022 unless otherwise directed by the court. Release of Transcript Restriction set for 4/11/2022. NOTICE: Attorneys must contact the court reporter for copies during this 90 day period.<br><br>(Wambolt, Gayle) (Entered: 01/10/2022) |
| 01/12/2022 | 237 | NOTICE of appearance by Michael M. Tamburini on behalf of All Defendants (Attorney Michael M. Tamburini added to party Textor Maschinenbau GmbH(pty:dft), Attorney Michael M. Tamburini added to party Textor, Inc.(pty:dft), Attorney Michael M. Tamburini added to party Weber Maschinenbau GmbH Breidenbach(pty:dft), Attorney Michael M. Tamburini added to party Weber Maschinenbau GmbH Neubrandenburg(pty:dft), Attorney Michael M. Tamburini added to party Weber, Inc. (pty:dft))(Tamburini, Michael) (Entered: 01/12/2022) |
| 01/21/2022 | 238 | CERTIFICATE OF SERVICE by All Defendants filed by Jason Scott Leiker on behalf of Defendants Textor Maschinenbau GmbH, Textor, Inc., Weber Maschinenbau GmbH Breidenbach, Weber Maschinenbau GmbH Neubrandenburg, Weber, Inc..(Leiker, Jason) (Entered: 01/21/2022) |
| 01/26/2022 | 239 | CERTIFICATE OF SERVICE by Provisur Technologies, Inc. *(Proof of Service)* filed by Craig C. Martin on behalf of Plaintiff Provisur Technologies, Inc..(Martin, Craig) |

Appx211

| | | (Entered: 01/26/2022) |
|---|---|---|
| 01/27/2022 | 240 | CERTIFICATE OF SERVICE by All Defendants *Second Supplemental Responses and Objections to Plaintiffs First Set of Interrogatories (No. 11)* filed by Jason Scott Leiker on behalf of Defendants Textor Maschinenbau GmbH, Textor, Inc., Weber Maschinenbau GmbH Breidenbach, Weber Maschinenbau GmbH Neubrandenburg, Weber, Inc..(Leiker, Jason) (Entered: 01/27/2022) |
| 01/31/2022 | 241 | NOTICE OF HEARING - This is the official notice for this hearing. This is a TEXT ONLY ENTRY. No document is attached. Telephonic Status Conference set for 2/9/2022 at 10:00 AM before District Judge Stephen R. Bough. (Richard, Tracey) (Entered: 01/31/2022) |
| 02/07/2022 | 242 | CERTIFICATE OF SERVICE by Provisur Technologies, Inc. filed by Taylor Brooke Concannon Hausmann on behalf of Plaintiff Provisur Technologies, Inc..(Concannon Hausmann, Taylor) (Entered: 02/07/2022) |
| 02/08/2022 | | Set/Reset Hearings: Monthly Status Conference set for 2/17/2022 at 8:30 AM in Courtroom 7B, Kansas City (SRB) before District Judge Stephen R. Bough. (Richard, Tracey) For the purpose of Daily Docket only, no notice to be sent. (Entered: 02/08/2022) |
| 02/08/2022 | | Set/Reset Hearings: Telephonic Status Conference set for 2/9/2022 at 10:00 AM in Chambers before District Judge Stephen R. Bough. Monthly Status Conference set for 2/17/2022 at 8:30 AM in Courtroom 7B, Kansas City (SRB) before District Judge Stephen R. Bough. (Richard, Tracey) For the purpose of Daily Docket, no notice to be sent. (Entered: 02/08/2022) |
| 02/09/2022 | 243 | Minute Entry. Proceedings held before District Judge Stephen R. Bough: Telephonic STATUS CONFERENCE held on 2/9/2022. Order to be entered. Time in court: 10:00 a.m. to 10:10 a.m. To order a transcript of this hearing please contact Gayle Wambolt, 816-512-5641, gayle_wambolt@mow.uscourts.gov. This is a TEXT ONLY ENTRY. No document is attached. (Richard, Tracey) (Entered: 02/09/2022) |
| 02/09/2022 | 244 | On February 9, 2022, the Court presided over a telephonic conference with the parties. For the reasons stated on the record, it is hereby ORDERED that: (1) on or before February 16, 2022 at 12:00 p.m. (CST) the parties shall submit discovery dispute memorandums pursuant to Local Rule 37.1, not to exceed 25 pages in length; and (2) the Court shall resolve the issues raised in the parties' discovery dispute memorandums at the monthly in-person status conference set for February 17, 2022 at 8:30 a.m. (CST). Signed on 2/9/2022 by District Judge Stephen R. Bough. This is a TEXT ONLY ENTRY. No document is attached. (Richard, Tracey) (Entered: 02/09/2022) |
| 02/15/2022 | 245 | **AMENDED** NOTICE OF HEARING - This is the official notice for this hearing. This is a TEXT ONLY ENTRY. No document is attached. **TELEPHONIC** Monthly Status Conference set for 2/17/2022 at 8:30 AM before District Judge Stephen R. Bough. (Richard, Tracey) Amended as to LOCATION only, call-in numbers will be emailed to counsel. (Entered: 02/15/2022) |
| 02/17/2022 | 246 | Minute Entry. Proceedings held before District Judge Stephen R. Bough: Monthly STATUS CONFERENCE held on 2/17/2022. Order to be entered. Time in court: 8:30 a.m. to 9:33 a.m. To order a transcript of this hearing please contact Gayle Wambolt, 816-512-5641, gayle_wambolt@mow.uscourts.gov. This is a TEXT ONLY ENTRY. No document is attached. (Richard, Tracey) (Entered: 02/17/2022) |
| 02/17/2022 | 247 | On February 17, 2022, the Court presided over a telephonic discovery dispute conference with the parties. For the reasons stated during the telephone conference, it is hereby ORDERED that: (1) Defendants may take the deposition of Jason Green. Defendants may question Mr. Green for a total of two hours, and Plaintiff may question Mr. Green for a |

Appx212

| | | |
|---|---|---|
| | | total of two hours; (2) Defendants may depose Plaintiff's Rule 30(b)(6) witness on the source code issue for a total of two hours; (3) Plaintiff cannot take the depositions of Norbert Muehlich, Ron Lussier, or Carsten Reisz; (4) regarding the Patent Management Group issues, on or before February 25, 2022, Defendants shall produce the relevant documents to the Court for an in camera review. In addition, Plaintiff and Defendants may file a brief regarding the relevant issues on or before February 25, 2022; (5) the Court does not deem Plaintiffs requests for admission to be admitted; and (6) within seven days from the date of this Order, the parties shall submit a joint proposed scheduling order for Provisur III, Case No. 21-cv-06113. The parties may consult the transcript for further details. Signed on 2/17/2022 by District Judge Stephen R. Bough. This is a TEXT ONLY ENTRY. No document is attached. (Richard, Tracey) (Entered: 02/17/2022) |
| 02/23/2022 | 248 | STIPULATION *Joint Stipulation Extending Expert Discovery Deadlines* by Provisur Technologies, Inc.. (Simon, Jeffrey) (Entered: 02/23/2022) |
| 02/23/2022 | 249 | ELECTRONIC TRANSCRIPT of Teleconference held February 17, 2022, before Judge Stephen R. Bough. Court Reporter: Gayle Wambolt, 816-512-5641, gayle_wambolt@mow.uscourts.gov. Number of pages: 47. NOTICE RE: REDACTION OF TRANSCRIPTS: Within 7 calendar days of this filing, each party shall inform the Court, by filing a Notice of Redaction, of the parties' intent to redact personal data identifiers from the electronic transcript of the court proceeding. The policy is located on our website at www.mow.uscourts.gov. Please read this policy carefully. **NOTICE: Attorneys must contact the court reporter for copies during this 90 day period. If necessary, Notice of Intent to Redact is due by 3/2/2022 unless otherwise directed by the court. Release of Transcript Restriction set for 5/24/2022. NOTICE: Attorneys must contact the court reporter for copies during this 90 day period.**<br><br>(Wambolt, Gayle) (Entered: 02/23/2022) |
| 02/23/2022 | 250 | Before the Court is a Joint Stipulation Extending Expert Discovery Deadlines. (Doc. #248.) Upon review, the stipulated extensions are GRANTED. It is hereby ORDERED that the deadline for service of opening expert reports for the party bearing burden of proof is extended to on or before March 2, 2022; the deadline for service of rebuttal expert reports is extended to on or before March 25, 2022; and the deadline for the close of expert discovery is extended to on or before April 15, 2022. Signed on 2/23/2022 by District Judge Stephen R. Bough. This is a TEXT ONLY ENTRY. No document is attached. (Houston, Kiambu) (Entered: 02/23/2022) |
| 02/25/2022 | 251 | MOTION to seal document 247 Order,,,,, *Defendants Memorandum of Privilege Dispute per the Courts February 17, 2022 Order and Exhibits A-O submitted in support* filed by Jason Scott Leiker on behalf of All Defendants. Suggestions in opposition/response due by 3/11/2022 unless otherwise directed by the court. (Related document(s) 247 ) (Leiker, Jason) (Entered: 02/25/2022) |
| 02/25/2022 | 252 | MOTION to seal document *(Brief) and Suggestions in Support* filed by Jeffrey J. Simon on behalf of Provisur Technologies, Inc.. Suggestions in opposition/response due by 3/11/2022 unless otherwise directed by the court. (Simon, Jeffrey) (Entered: 02/25/2022) |
| 02/28/2022 | 253 | Before the Court is Defendants' Motion for Leave to File Under Seal and Suggestions in Support (Doc. 251 ). For good cause shown, the motion is GRANTED. Defendants may file their Memorandum of Privilege Dispute and exhibits under seal. Signed on 2/28/22 by District Judge Stephen R. Bough. This is a TEXT ONLY ENTRY. No document is attached. (Anderson, Christy) (Entered: 02/28/2022) |
| 02/28/2022 | 254 | Before the Court is Plaintiff's Motion for Leave to File Brief Under Seal and Suggestions in Support (Doc. 252 ). For good cause shown, the motion is GRANTED. Plaintiff may |

Appx213

| | | |
|---|---|---|
| | | file its Brief in Support of Motion to Compel under seal. Signed on 2/28/22 by District Judge Stephen R. Bough. This is a TEXT ONLY ENTRY. No document is attached. (Anderson, Christy) (Entered: 02/28/2022) |
| 02/28/2022 | 255 | NOTICE (SEALED) by Textor Maschinenbau GmbH, Textor, Inc., Weber Maschinenbau GmbH Breidenbach, Weber Maschinenbau GmbH Neubrandenburg, Weber, Inc. re 247 Order,,,,, 253 Order on Motion to Seal Document, (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F, # 7 Exhibit G, # 8 Exhibit H, # 9 Exhibit I, # 10 Exhibit J, # 11 Exhibit K, # 12 Exhibit L, # 13 Exhibit M, # 14 Exhibit N, # 15 Exhibit O)(Leiker, Jason) (Entered: 02/28/2022) |
| 02/28/2022 | 256 | NOTICE (SEALED) by Provisur Technologies, Inc. *of Plaintiff's Brief in Support of Motion to Compel the Discovery of Non-Privileged Testimonial and Documentary Evidence* (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C)(Simon, Jeffrey) (Entered: 02/28/2022) |
| 03/01/2022 | 257 | MOTION for leave to file *Plaintiff's Motion for Leave to File Limited Response to Defendants' Memorandum of Privilege Dispute* filed by Jeffrey J. Simon on behalf of Provisur Technologies, Inc.. Suggestions in opposition/response due by 3/15/2022 unless otherwise directed by the court. (Attachments: # 1 Exhibit A - Provisur's Proposed Limited Response)(Simon, Jeffrey) (Entered: 03/01/2022) |
| 03/01/2022 | 258 | Before the Court is Plaintiff's Motion for Leave to File Limited Response to Defendants' Memorandum of Privilege Dispute (Doc. 257 ). Upon review, and for good cause shown, the motion is GRANTED. Signed on 3/1/22 by District Judge Stephen R. Bough. This is a TEXT ONLY ENTRY. No document is attached. (Anderson, Christy) (Entered: 03/01/2022) |
| 03/01/2022 | 259 | RESPONSE to motion *(Limited) Response to Defendants' Memorandum of Privilege Dispute* filed by Jeffrey J. Simon on behalf of Plaintiff Provisur Technologies, Inc.. Reply suggestions due by 3/15/2022 unless otherwise directed by the court. (Simon, Jeffrey) (Entered: 03/01/2022) |
| 03/02/2022 | 260 | CERTIFICATE OF SERVICE by All Defendants filed by Jason Scott Leiker on behalf of Defendants Textor Maschinenbau GmbH, Textor, Inc., Weber Maschinenbau GmbH Breidenbach, Weber Maschinenbau GmbH Neubrandenburg, Weber, Inc..(Leiker, Jason) (Entered: 03/02/2022) |
| 03/10/2022 | 261 | REPLY to answer filed by Jason Scott Leiker on behalf of Defendants Textor Maschinenbau GmbH, Textor, Inc., Weber Maschinenbau GmbH Breidenbach, Weber Maschinenbau GmbH Neubrandenburg, Weber, Inc.. (Related document(s) 259 ) (Leiker, Jason) (Entered: 03/10/2022) |
| 03/16/2022 | 262 | NOTICE OF HEARING - This is the official notice for this hearing. This is a TEXT ONLY ENTRY. No document is attached. Telephone Conference set for 3/22/2022 at 10:00 a.m. before District Judge Stephen R. Bough. (Richard, Tracey) (Entered: 03/16/2022) |
| 03/22/2022 | 263 | Minute Entry. Proceedings held before District Judge Stephen R. Bough: Discovery Dispute TELEPHONE CONFERENCE held on 3/22/2022. Order to be entered. Time in court: 10:00 a.m. to 10:37 a.m. To order a transcript of this hearing please contact Annisa Justice, 816-512-5622, annisa_justice@mow.uscourts.gov. This is a TEXT ONLY ENTRY. No document is attached. (Richard, Tracey) (Entered: 03/22/2022) |
| 03/22/2022 | 264 | DISCOVERY ORDER. Signed on 3/22/2022 by District Judge Stephen R. Bough. (Richard, Tracey) (Entered: 03/22/2022) |

Appx214

| 03/25/2022 | 265 | CERTIFICATE OF SERVICE by All Defendants filed by Jason Scott Leiker on behalf of Defendants Textor Maschinenbau GmbH, Textor, Inc., Weber Maschinenbau GmbH Breidenbach, Weber Maschinenbau GmbH Neubrandenburg, Weber, Inc..(Leiker, Jason) (Entered: 03/25/2022) |
|---|---|---|
| 03/28/2022 | 266 | CERTIFICATE OF SERVICE by Provisur Technologies, Inc. filed by Michael Babbitt on behalf of Plaintiff Provisur Technologies, Inc..(Babbitt, Michael) (Entered: 03/28/2022) |
| 04/06/2022 | 267 | ELECTRONIC TRANSCRIPT of Discovery Hearing Teleconference held 03/22/22 before Judge Stephen Bough. Court Reporter: Annisa Justice, 816-512-5622, annisa_justice@mow.uscourts.gov. Number of pages: 24. NOTICE RE: REDACTION OF TRANSCRIPTS: Within 7 calendar days of this filing, each party shall inform the Court, by filing a Notice of Redaction, of the parties' intent to redact personal data identifiers from the electronic transcript of the court proceeding. The policy is located on our website at www.mow.uscourts.gov. Please read this policy carefully. **NOTICE: Attorneys must contact the court reporter for copies during this 90 day period.** If necessary, Notice of Intent to Redact is due by 4/13/2022 unless otherwise directed by the court. Release of Transcript Restriction set for 7/5/2022. **NOTICE: Attorneys must contact the court reporter for copies during this 90 day period.**<br><br>(Justice, Annisa) (Entered: 04/06/2022) |
| 04/06/2022 | 268 | CERTIFICATE OF SERVICE by All Defendants *Defendants' Supplemental Responses and Objections to Provisur Technologies, Inc.'s First Set of Interrogatories to Defendants (No. 2)* filed by Jason Scott Leiker on behalf of Defendants Textor Maschinenbau GmbH, Textor, Inc., Weber Maschinenbau GmbH Breidenbach, Weber Maschinenbau GmbH Neubrandenburg, Weber, Inc..(Leiker, Jason) (Entered: 04/06/2022) |
| 04/11/2022 | 269 | NOTICE of filing *(NOTICE OF DEPOSITION OF DEFENDANTS WITNESS THOMAS KURFESS)* by Provisur Technologies, Inc. (Babbitt, Michael) (Entered: 04/11/2022) |
| 04/11/2022 | 270 | NOTICE of filing *(NOTICE OF DEPOSITION OF DEFENDANTS WITNESS RICARDO VALERDI)* by Provisur Technologies, Inc. (Babbitt, Michael) (Entered: 04/11/2022) |
| 04/11/2022 | 271 | NOTICE of filing *(NOTICE OF DEPOSITION OF DEFENDANTS WITNESS THOMAS KURFESS)* by Provisur Technologies, Inc. (Babbitt, Michael) (Entered: 04/11/2022) |
| 04/18/2022 | 272 | NOTICE to take deposition of Dr. Keith Vorst, expert witness for Plaintiff filed by Jason Scott Leiker on behalf of Defendants Textor Maschinenbau GmbH, Textor, Inc., Weber Maschinenbau GmbH Breidenbach, Weber Maschinenbau GmbH Neubrandenburg, Weber, Inc..(Leiker, Jason) (Entered: 04/18/2022) |
| 04/19/2022 | 273 | MOTION for extension of time filed by Jason Scott Leiker on behalf of All Defendants. Suggestions in opposition/response due by 5/3/2022 unless otherwise directed by the court. (Leiker, Jason) (Entered: 04/19/2022) |
| 04/19/2022 | 274 | Before the Court is Defendants' Unopposed Motion for Extension of Certain Deadlines in the Scheduling and Trial Order. (Doc. #273.) For good cause shown the motion is GRANTED. The deadline for dispositive and Daubert motions is extended to May 6, 2022. Signed on 4/19/2022 by District Judge Stephen R. Bough. This is a TEXT ONLY ENTRY. No document is attached. (Richard, Tracey) (Entered: 04/19/2022) |
| 04/19/2022 | 275 | After thorough review, the Court determines that the documents sought to be protected in Defendants' Supplemental Memorandum Regarding Privilege Per the Court's March 22, 2022 Order are subject to privilege and shall not be produced to Plaintiff. Signed on 4/19/2022 by District Judge Stephen R. Bough. This is a TEXT ONLY ENTRY. No document is attached. (Richard, Tracey) (Entered: 04/19/2022) |

Appx215

| 04/27/2022 | 276 | CERTIFICATE OF SERVICE by All Defendants filed by Jason Scott Leiker on behalf of Defendants Textor Maschinenbau GmbH, Textor, Inc., Weber Maschinenbau GmbH Breidenbach, Weber Maschinenbau GmbH Neubrandenburg, Weber, Inc..(Leiker, Jason) (Entered: 04/27/2022) |
|---|---|---|
| 05/06/2022 | 277 | MOTION to seal document *Defendants Memorandum in Support of Motion for Summary Judgment and corresponding exhibits in support* filed by Jason Scott Leiker on behalf of All Defendants. Suggestions in opposition/response due by 5/20/2022 unless otherwise directed by the court. (Leiker, Jason) (Entered: 05/06/2022) |
| 05/06/2022 | 278 | Before the Court is Motion for Leave to File Under Seal and Suggestions in Support. (Doc. #227.) Upon review, the motion is GRANTED. Defendants may file under seal their memorandum in support of motion for summary judgment and corresponding exhibits. Signed on 5/6/2022 by District Judge Stephen R. Bough. This is a TEXT ONLY ENTRY. No document is attached. (Houston, Kiambu) (Entered: 05/06/2022) |
| 05/06/2022 | 279 | MOTION to seal document *Defendants Suggestions in Support of Their Motion to Exclude the Improper Expert Opinions of White and McGuire and corresponding exhibits* filed by Jason Scott Leiker on behalf of All Defendants. Suggestions in opposition/response due by 5/20/2022 unless otherwise directed by the court. (Leiker, Jason) (Entered: 05/06/2022) |
| 05/06/2022 | 280 | MOTION to seal document filed by Jeffrey J. Simon on behalf of Provisur Technologies, Inc.. Suggestions in opposition/response due by 5/20/2022 unless otherwise directed by the court. (Simon, Jeffrey) (Entered: 05/06/2022) |
| 05/06/2022 | 281 | MOTION for summary judgment *of non-infringement for all asserted claims of U.S. Patent Nos. 6,997,089 (the 089 patent) and 8,322,537 (the 537 patent)* filed by Jason Scott Leiker on behalf of All Defendants. Suggestions in opposition/response due by 5/27/2022 unless otherwise directed by the court. (Leiker, Jason) (Entered: 05/06/2022) |
| 05/06/2022 | 282 | MOTION for summary judgment *of non-infringement for all asserted claims of U.S. Patent Nos. 7,065,936 (the 936 patent) and 6,669,005 (the 005 patent)* filed by Jason Scott Leiker on behalf of All Defendants. Suggestions in opposition/response due by 5/27/2022 unless otherwise directed by the court. (Leiker, Jason) (Entered: 05/06/2022) |
| 05/06/2022 | 283 | Before the Court is Motion for Leave to File Under Seal and Suggestions in Support. (Doc. #279.) Upon review, the motion is GRANTED. Defendants may file under seal their suggestions in support of their Motion to Exclude the Improper Expert Opinions of White and McGuire. Signed on 5/6/2022 by District Judge Stephen R. Bough. This is a TEXT ONLY ENTRY. No document is attached. (Richard, Tracey) (Entered: 05/06/2022) |
| 05/06/2022 | 284 | Before the Court is Motion for Leave to File Plaintiff's Motion for Partial Summary Judgment and Suggestions in Support Under Seal. (Doc. #280.) Upon review, the motion is GRANTED. Plaintiff may file its motion for partial summary judgment and suggestions in support under seal. Signed on 5/6/2022 by District Judge Stephen R. Bough. This is a TEXT ONLY ENTRY. No document is attached. (Richard, Tracey) (Entered: 05/06/2022) |
| 05/06/2022 | 285 | Defendants' Motion to Exclude the Improper Opinions of White and McGuire by Textor Maschinenbau GmbH, Textor, Inc., Weber Maschinenbau GmbH Breidenbach, Weber Maschinenbau GmbH Neubrandenburg, Weber, Inc. (Leiker, Jason) Modified on 5/9/2022 to correct docket entry (Houston, Kiambu). (Entered: 05/06/2022) |
| 05/06/2022 | 286 | NOTICE (SEALED) by Textor Maschinenbau GmbH, Textor, Inc., Weber Maschinenbau GmbH Breidenbach, Weber Maschinenbau GmbH Neubrandenburg, Weber, Inc. *Defendants' Suggestions in Support of their Motion to Exclude the Improper Opinions of White and McGuire (Doc. 285)* (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, |

Appx216

| | | |
|---|---|---|
| | | # 4 Exhibit 4, # 5 Exhibit 5, # 6 Exhibit 6, # 7 Exhibit 7, # 8 Exhibit 8)(Leiker, Jason) (Entered: 05/06/2022) |
| 05/06/2022 | 287 | MOTION for summary judgment (SEALED) filed by Jeffrey J. Simon on behalf of Provisur Technologies, Inc.. Suggestions in opposition/response due by 5/27/2022 unless otherwise directed by the court. (Attachments: # 1 Supplement Order Granting Motion for Summary Judgment to be filed under seal)(Simon, Jeffrey) (Entered: 05/06/2022) |
| 05/06/2022 | 288 | SUGGESTIONS in support (SEALED) re 287 MOTION for summary judgment (SEALED) filed by Jeffrey J. Simon on behalf of Plaintiff Provisur Technologies, Inc.. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5, # 6 Exhibit 6, # 7 Exhibit 7, # 8 Exhibit 8, # 9 Exhibit 9, # 10 Exhibit 10, # 11 Exhibit 11, # 12 Exhibit 12, # 13 Exhibit 13, # 14 Exhibit 14, # 15 Exhibit 15, # 16 Exhibit 16 - Part 1 of 5, # 17 Exhibit 16 - Part 2 of 5, # 18 Exhibit 16 - Part 3 of 5, # 19 Exhibit 16 - Part 4 of 5, # 20 Exhibit 16 - Part 5 of 5, # 21 Exhibit 17, # 22 Exhibit 18, # 23 Exhibit 19, # 24 Exhibit 20 - Part 1 of 7, # 25 Exhibit 20 - Part 2 of 7, # 26 Exhibit 20 - Part 3 of 7, # 27 Exhibit 20 - Part 4 of 7, # 28 Exhibit 20 - Part 5 of 7, # 29 Exhibit 20 - Part 6 of 7, # 30 Exhibit 20 - Part 7 of 7, # 31 Exhibit 21, # 32 Exhibit 22, # 33 Exhibit 23, # 34 Exhibit 24 - Part 1 of 3, # 35 Exhibit 24 - Part 2 of 3, # 36 Exhibit 24 - Part 3 of 3, # 37 Exhibit 25, # 38 Exhibit 26, # 39 Exhibit 27)(Related document(s) 287 ) (Simon, Jeffrey) (Entered: 05/06/2022) |
| 05/06/2022 | 289 | SUGGESTIONS in support (SEALED) re 281 motion for summary judgment filed by Jason Scott Leiker on behalf of All Defendants. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5, # 6 Exhibit 6, # 7 Exhibit 7, # 8 Exhibit 8, # 9 Exhibit 9, # 10 Exhibit 10, # 11 Exhibit 11, # 12 Exhibit 12, # 13 Exhibit 13, # 14 Exhibit 14, # 15 Exhibit 15, # 16 Exhibit 16, # 17 Exhibit 17, # 18 Exhibit 18, # 19 Exhibit 19, # 20 Exhibit 20, # 21 Exhibit 21, # 22 Exhibit 22, # 23 Exhibit 23, # 24 Exhibit 24, # 25 Exhibit 25, # 26 Exhibit 26, # 27 Exhibit 27, # 28 Exhibit 28, # 29 Exhibit 29, # 30 Exhibit 30)(Leiker, Jason) Modified on 5/9/2022 to correct docket text (Houston, Kiambu). (Entered: 05/06/2022) |
| 05/06/2022 | 290 | SUGGESTIONS in support (SEALED) re 282 MOTION for summary judgment *of non-infringement for all asserted claims of U.S. Patent Nos. 7,065,936 (the 936 patent) and 6,669,005 (the 005 patent)* filed by Jason Scott Leiker on behalf of Defendants Textor Maschinenbau GmbH, Textor, Inc., Weber Maschinenbau GmbH Breidenbach, Weber Maschinenbau GmbH Neubrandenburg, Weber, Inc.. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5, # 6 Exhibit 6, # 7 Exhibit 7, # 8 Exhibit 8, # 9 Exhibit 9, # 10 Exhibit 10, # 11 Exhibit 11, # 12 Exhibit 12, # 13 Exhibit 13, # 14 Exhibit 14, # 15 Exhibit 15, # 16 Exhibit 16, # 17 Exhibit 17, # 18 Exhibit 18, # 19 Exhibit 19, # 20 Exhibit 20, # 21 Exhibit 21, # 22 Exhibit 22, # 23 Exhibit 23, # 24 Exhibit 24, # 25 Exhibit 25, # 26 Exhibit 26, # 27 Exhibit 27, # 28 Exhibit 28)(Related document(s) 282 ) (Leiker, Jason) (Attachment 4 replaced on 5/13/2022) (Richard, Tracey). (Attachment 6 replaced on 5/13/2022) (Richard, Tracey). Modified on 5/13/2022 to reflect that exhibits 4 and 6 were replaced per Court order entered on 5/12/2022 (Doc. #293) (Richard, Tracey). (Entered: 05/06/2022) |
| 05/06/2022 | 291 | SUGGESTIONS in support (SEALED) re 289 MOTION for summary judgment (SEALED) filed by Jason Scott Leiker on behalf of Defendants Textor Maschinenbau GmbH, Textor, Inc., Weber Maschinenbau GmbH Breidenbach, Weber Maschinenbau GmbH Neubrandenburg, Weber, Inc.. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F, # 7 Exhibit G, # 8 Exhibit H, # 9 Exhibit I, # 10 Exhibit J, # 11 Exhibit K, # 12 Exhibit L, # 13 Exhibit M, # 14 Exhibit N, # 15 Exhibit O, # 16 Exhibit P)(Related document(s) 289 ) (Leiker, Jason) (Entered: 05/06/2022) |

| | | |
|---|---|---|
| 05/06/2022 | | Set/Reset Deadlines as to 285 MOTION to exclude. Suggestions in opposition/response due by 5/20/2022 unless otherwise directed by the court. (Houston, Kiambu) (Entered: 05/09/2022) |
| 05/09/2022 | | NOTICE OF DOCKET MODIFICATION. A modification has been made to the document filed on 5/6/2022 as Document No. 291, Defendant's Suggestions in Support of Their Motion for Summary Judgment of Non-Infringement of the '436 and '812 Patents. The document has been deleted as it was filed in the incorrect case. This is a text entry only - no document is attached. (Crocker, Susan) (Entered: 05/09/2022) |
| 05/11/2022 | 292 | MOTION to amend/correct filed by Jason Scott Leiker on behalf of All Defendants. Suggestions in opposition/response due by 5/25/2022 unless otherwise directed by the court. (Leiker, Jason) (Entered: 05/11/2022) |
| 05/12/2022 | 293 | Before the Court is Defendants' Unopposed Motion for Leave to Amend Defendants' Suggestions in Support of Their Motion for Summary Judgment of Non-Infringement of the '936 and '005 Patents. (Doc. #292.) For good cause shown the motion is GRANTED. Defendants may file replacement Exhibits 4 and 6 to their suggestions in support. Signed on 5/12/2022 by District Judge Stephen R. Bough. This is a TEXT ONLY ENTRY. No document is attached. (Richard, Tracey) (Entered: 05/12/2022) |
| 05/13/2022 | 294 | NOTICE OF HEARING - This is the official notice for this hearing. This is a TEXT ONLY ENTRY. No document is attached. Discovery Dispute Telephone Conference set for 5/17/2022 at 9:00 AM before District Judge Stephen R. Bough. (Richard, Tracey) (Entered: 05/13/2022) |
| 05/16/2022 | 295 | CERTIFICATE OF SERVICE by Provisur Technologies, Inc. filed by Michael Babbitt on behalf of Plaintiff Provisur Technologies, Inc..(Babbitt, Michael) (Entered: 05/16/2022) |
| 05/17/2022 | 296 | Minute Entry. Proceedings held before District Judge Stephen R. Bough: Discovery Dispute TELEPHONE CONFERENCE held on 5/17/2022. Order to be entered. Time in court: 9:00 a.m. to 9:07 a.m. To order a transcript of this hearing please contact Gayle Wambolt, 816-512-5641, gayle_wambolt@mow.uscourts.gov. This is a TEXT ONLY ENTRY. No document is attached. (Richard, Tracey) (Entered: 05/17/2022) |
| 05/17/2022 | 297 | On May 17, 2022, the Court presided over a telephone conference with the parties. As stated on the record, it is hereby ORDERED that: (1) an in-person discovery dispute hearing is set for May 25, 2022, at 10:00 a.m. (CST) in courtroom 7B; and (2) the parties shall file a discovery dispute brief, not to exceed 10 pages in length, on or before 12:00 p.m. (CST) on May 24, 2022. Signed on 5/17/2022 by District Judge Stephen R. Bough. This is a TEXT ONLY ENTRY. No document is attached. (Richard, Tracey) (Entered: 05/17/2022) |
| 05/19/2022 | 298 | MOTION for extension of time *Unopposed Motion for Extension of Time to File Oppositions to Motion to Exclude Plaintiff's Experts* filed by Taylor Brooke Concannon Hausmann on behalf of Provisur Technologies, Inc.. Suggestions in opposition/response due by 6/2/2022 unless otherwise directed by the court. (Concannon Hausmann, Taylor) (Entered: 05/19/2022) |
| 05/19/2022 | 299 | Before the Court is Plaintiff's Unopposed Motion for Extension of Time to File Oppositions to Defendants' Motions to Exclude Plaintiff's Experts. (Doc. #298.) For good cause shown, the motion is GRANTED. Plaintiff shall file its response on or before May 27, 2022. Signed on 5/19/2022 by District Judge Stephen R. Bough. This is a TEXT ONLY ENTRY. No document is attached. (Richard, Tracey) (Entered: 05/19/2022) |
| 05/24/2022 | 300 | MOTION for leave to file *Motion for Leave to File Plaintiff's Motion to Compel Under Seal and Suggestions in Support* filed by Taylor Brooke Concannon Hausmann on behalf of Provisur Technologies, Inc.. Suggestions in opposition/response due by 6/7/2022 |

| | | unless otherwise directed by the court. (Concannon Hausmann, Taylor) (Entered: 05/24/2022) |
|---|---|---|
| 05/24/2022 | 301 | Before the Court is Plaintiff's Motion for Leave to File Plaintiff's Motion to Compel Under Seal. (Doc. #300.) Upon review, the motion is GRANTED. Signed on 5/24/2022 by District Judge Stephen R. Bough. This is a TEXT ONLY ENTRY. No document is attached. (Richard, Tracey) (Entered: 05/24/2022) |
| 05/24/2022 | 302 | MOTION to seal document *Defendants Memorandum of Dispute per the Courts May 17, 2022 Order and corresponding exhibits* filed by Jason Scott Leiker on behalf of All Defendants. Suggestions in opposition/response due by 6/7/2022 unless otherwise directed by the court. (Leiker, Jason) (Entered: 05/24/2022) |
| 05/24/2022 | 303 | Before the Court is Defendants' Motion for Leave to File Under Seal. (Doc. #302.) Upon review, the motion is GRANTED. Signed on 5/24/2022 by District Judge Stephen R. Bough. This is a TEXT ONLY ENTRY. No document is attached. (Richard, Tracey) (Entered: 05/24/2022) |
| 05/24/2022 | 304 | NOTICE (SEALED) by Textor Maschinenbau GmbH, Textor, Inc., Weber Maschinenbau GmbH Breidenbach, Weber Maschinenbau GmbH Neubrandenburg, Weber, Inc. re 297 Order,, *Defendants' Memorandum of Dispute Per the Court's May 17, 2022 Order* (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F, # 7 Exhibit G, # 8 Exhibit H, # 9 Exhibit I, # 10 Exhibit J, # 11 Exhibit K, # 12 Exhibit L, # 13 Exhibit M, # 14 Exhibit N, # 15 Exhibit O)(Leiker, Jason) (Entered: 05/24/2022) |
| 05/24/2022 | 305 | MOTION for Order (SEALED) filed by Taylor Brooke Concannon Hausmann on behalf of Provisur Technologies, Inc.. Suggestions in opposition/response due by 6/7/2022 unless otherwise directed by the court. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F, # 7 Exhibit G, # 8 Exhibit H, # 9 Exhibit I, # 10 Exhibit J, # 11 Exhibit K, # 12 Exhibit L, # 13 Exhibit M, # 14 Exhibit N, # 15 Exhibit O, # 16 Exhibit P, # 17 Exhibit Q, # 18 Exhibit R, # 19 Exhibit S, # 20 Exhibit T)(Concannon Hausmann, Taylor) (Entered: 05/24/2022) |
| 05/25/2022 | 306 | Minute Entry. Proceedings held before District Judge Stephen R. Bough: Discovery Dispute held on 5/25/2022. Order to be entered. Time in court: 10:00 a.m. to 12:15 p.m. To order a transcript of this hearing please contact Gayle Wambolt, 816-512-5641, gayle_wambolt@mow.uscourts.gov. This is a TEXT ONLY ENTRY. No document is attached. (Richard, Tracey) (Entered: 05/25/2022) |
| 05/25/2022 | 307 | ORDER granting in part and denying in part 305 Sealed Motion. Signed on 5/25/2022 by District Judge Stephen R. Bough. (Richard, Tracey) (Entered: 05/25/2022) |
| 05/26/2022 | 308 | ELECTRONIC TRANSCRIPT of Teleconference held May 17, 2022, before Judge Stephen R. Bough. Court Reporter: Gayle Wambolt, 816-512-5641, gayle_wambolt@mow.uscourts.gov. Number of pages: 5. NOTICE RE: REDACTION OF TRANSCRIPTS: Within 7 calendar days of this filing, each party shall inform the Court, by filing a Notice of Redaction, of the parties' intent to redact personal data identifiers from the electronic transcript of the court proceeding. The policy is located on our website at www.mow.uscourts.gov. Please read this policy carefully. **NOTICE: Attorneys must contact the court reporter for copies during this 90 day period. If necessary, Notice of Intent to Redact is due by 6/2/2022 unless otherwise directed by the court. Release of Transcript Restriction set for 8/24/2022. NOTICE: Attorneys must contact the court reporter for copies during this 90 day period.**<br><br>(Wambolt, Gayle) (Entered: 05/26/2022) |

| 05/26/2022 | 309 | ELECTRONIC TRANSCRIPT of Discovery Dispute held May 25, 2022, before Judge Stephen R. Bough. Court Reporter: Gayle Wambolt, 816-512-5641, gayle_wambolt@mow.uscourts.gov. Number of pages: 88. NOTICE RE: REDACTION OF TRANSCRIPTS: Within 7 calendar days of this filing, each party shall inform the Court, by filing a Notice of Redaction, of the parties' intent to redact personal data identifiers from the electronic transcript of the court proceeding. The policy is located on our website at www.mow.uscourts.gov. Please read this policy carefully. **NOTICE: Attorneys must contact the court reporter for copies during this 90 day period. If necessary, Notice of Intent to Redact is due by 6/2/2022 unless otherwise directed by the court. Release of Transcript Restriction set for 8/24/2022.** **NOTICE: Attorneys must contact the court reporter for copies during this 90 day period.** <br><br> (Wambolt, Gayle) (Entered: 05/26/2022) |
|---|---|---|
| 05/26/2022 | 310 | MOTION for leave to file *Motion for Leave to File Plaintiff's Responses to Defendants' Motions for Summary Judgment Under Seal and Suggestions in Support* filed by Jeffrey J. Simon on behalf of Provisur Technologies, Inc.. Suggestions in opposition/response due by 6/9/2022 unless otherwise directed by the court. (Simon, Jeffrey) (Entered: 05/26/2022) |
| 05/26/2022 | 311 | MOTION for leave to file *Motion for Leave to File Plaintiff's Suggestions in Opposition to Defendants' Motion to Exclude Expert Opinions Under Seal and Suggestions in Support* filed by Jeffrey J. Simon on behalf of Provisur Technologies, Inc.. Suggestions in opposition/response due by 6/9/2022 unless otherwise directed by the court. (Simon, Jeffrey) (Entered: 05/26/2022) |
| 05/26/2022 | 312 | Before the Court is Plaintiff's Motion for Leave to File Plaintiff's Responses to Defendants' Motions for Summary Judgment Under Seal. (Doc. #310.) Upon review, it is hereby ORDERED that: (1) Plaintiff's Motion for Leave to File Under Seal is GRANTED; and (2) the parties may file all future summary judgment briefing under seal without further order of the Court. Signed on 5/26/2022 by District Judge Stephen R. Bough. This is a TEXT ONLY ENTRY. No document is attached. (Richard, Tracey) (Entered: 05/26/2022) |
| 05/26/2022 | 313 | Before the Court is Plaintiff's Motion for Leave to File Plaintiff's Suggestions in Opposition to Defendants' Motion to Exclude Expert Opinions Under Seal. (Doc. #311.) Upon review, it is hereby ORDERED that: (1) Plaintiff's Motion for Leave to File Under Seal is GRANTED; and (2) the parties may file all future Daubert briefing under seal without further order of the Court. Signed on 5/26/2022 by District Judge Stephen R. Bough. This is a TEXT ONLY ENTRY. No document is attached. (Richard, Tracey) (Entered: 05/26/2022) |
| 05/27/2022 | 314 | SUGGESTIONS in opposition (SEALED) re 285 MOTION to exclude filed by Michael Babbitt on behalf of Plaintiff Provisur Technologies, Inc.. Reply suggestions due by 6/10/2022 unless otherwise directed by the court. (Attachments: # 1 Exhibit 1)(Related document(s) 285 ) (Babbitt, Michael) (Entered: 05/27/2022) |
| 05/27/2022 | 315 | SUGGESTIONS in opposition to motion for summary judgment (SEALED) re 287 MOTION for summary judgment (SEALED) filed by Jason Scott Leiker on behalf of Defendants Textor Maschinenbau GmbH, Textor, Inc., Weber Maschinenbau GmbH Breidenbach, Weber Maschinenbau GmbH Neubrandenburg, Weber, Inc.. Reply suggestions due by 6/10/2022 unless otherwise directed by the court. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F, # 7 Exhibit G, # 8 Exhibit H, # 9 Exhibit I, # 10 Exhibit J)(Related document(s) 287 ) (Leiker, Jason) (Entered: 05/27/2022) |

Appx220

| | | |
|---|---|---|
| 05/27/2022 | 316 | SUGGESTIONS in opposition to motion for summary judgment (SEALED) re 281 MOTION for summary judgment *of non-infringement for all asserted claims of U.S. Patent Nos. 6,997,089 (the 089 patent) and 8,322,537 (the 537 patent)* filed by Craig C. Martin on behalf of Plaintiff Provisur Technologies, Inc.. Reply suggestions due by 6/10/2022 unless otherwise directed by the court. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5, # 6 Exhibit 6, # 7 Exhibit 7, # 8 Exhibit 8, # 9 Exhibit 9, # 10 Exhibit 10, # 11 Exhibit 11, # 12 Exhibit 12, # 13 Exhibit 13, # 14 Exhibit 14, # 15 Exhibit 15, # 16 Exhibit 16, # 17 Exhibit 17, # 18 Exhibit 18, # 19 Exhibit 19, # 20 Exhibit 20, # 21 Exhibit 21, # 22 Exhibit 22, # 23 Exhibit 23, # 24 Exhibit 24, # 25 Exhibit 25, # 26 Exhibit 26, # 27 Exhibit 27, # 28 Exhibit 28, # 29 Exhibit 29, # 30 Exhibit 30, # 31 Exhibit 31, # 32 Exhibit 32, # 33 Exhibit 33, # 34 Exhibit 34, # 35 Exhibit 35, # 36 Exhibit 36, # 37 Exhibit 37, # 38 Exhibit 38, # 39 Exhibit 39, # 40 Exhibit 40)(Related document(s) 281 ) (Martin, Craig) (Entered: 05/27/2022) |
| 05/27/2022 | 317 | SUGGESTIONS in opposition to motion for summary judgment (SEALED) re 282 MOTION for summary judgment *of non-infringement for all asserted claims of U.S. Patent Nos. 7,065,936 (the 936 patent) and 6,669,005 (the 005 patent)* filed by Craig C. Martin on behalf of Plaintiff Provisur Technologies, Inc.. Reply suggestions due by 6/10/2022 unless otherwise directed by the court. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5, # 6 Exhibit 6, # 7 Exhibit 7, # 8 Exhibit 8, # 9 Exhibit 9, # 10 Exhibit 10, # 11 Exhibit 11, # 12 Exhibit 12, # 13 Exhibit 13, # 14 Exhibit 14, # 15 Exhibit 15, # 16 Exhibit 16, # 17 Exhibit 17, # 18 Exhibit 18, # 19 Exhibit 19, # 20 Exhibit 20, # 21 Exhibit 21, # 22 Exhibit 22, # 23 Exhibit 23, # 24 Exhibit 24, # 25 Exhibit 25, # 26 Exhibit 26, # 27 Exhibit 27, # 28 Exhibit 28, # 29 Exhibit 29, # 30 Exhibit 30, # 31 Exhibit 31, # 32 Exhibit 32, # 33 Exhibit 33, # 34 Exhibit 34, # 35 Exhibit 35, # 36 Exhibit 36, # 37 Exhibit 37, # 38 Exhibit 38, # 39 Exhibit 39, # 40 Exhibit 40)(Related document(s) 282 ) (Martin, Craig) (Entered: 05/27/2022) |
| 06/02/2022 | 318 | The parties have advised the Court that they agree to the appointment of Trent Webb, with the law firm of Shook, Hardy & Bacon, as a mediator. It is hereby ORDERED that: (1) Trent Webb is appointed to serve as the mediator in Case No. 19-cv-06021-SRB, Case No. 20-cv-6069-SRB, and Case No. 21-cv-06113-SRB; and (2) the parties shall schedule a mediation in all three cases on or before July 29, 2022. Signed on 6/2/2022 by District Judge Stephen R. Bough. This is a TEXT ONLY ENTRY. No document is attached. (Richard, Tracey) (Entered: 06/02/2022) |
| 06/06/2022 | 319 | CERTIFICATE OF SERVICE by All Defendants filed by Jason Scott Leiker on behalf of Defendants Textor Maschinenbau GmbH, Textor, Inc., Weber Maschinenbau GmbH Breidenbach, Weber Maschinenbau GmbH Neubrandenburg, Weber, Inc..(Leiker, Jason) (Entered: 06/06/2022) |
| 06/07/2022 | 320 | CERTIFICATE OF SERVICE by Provisur Technologies, Inc. filed by Taylor Brooke Concannon Hausmann on behalf of Plaintiff Provisur Technologies, Inc..(Concannon Hausmann, Taylor) (Entered: 06/07/2022) |
| 06/10/2022 | 321 | MOTION for leave to file *Motion for Leave to File Reply Suggestions in Support of Provisur's Motion for Partial Summary Judgment in Excess of the Page Limit* filed by Taylor Brooke Concannon Hausmann on behalf of Provisur Technologies, Inc.. Suggestions in opposition/response due by 6/24/2022 unless otherwise directed by the court. (Concannon Hausmann, Taylor) (Entered: 06/10/2022) |
| 06/10/2022 | 322 | Before the Court is Plaintiff's Motion for Leave to File Reply Suggestions in Support of its Motion for Partial Summary Judgment in Excess of the Page Limit. (Doc. #321.) For good cause shown, the motion is GRANTED. Plaintiff's reply brief may exceed the page |

| | | limit by up to five (5) pages. Signed on 6/10/2022 by District Judge Stephen R. Bough. **This is a TEXT ONLY ENTRY. No document is attached.** (Richard, Tracey) (Entered: 06/10/2022) |
|---|---|---|
| 06/10/2022 | [323](#) | RESPONSE to motion filed by Jason Scott Leiker on behalf of Defendants Textor Maschinenbau GmbH, Textor, Inc., Weber Maschinenbau GmbH Breidenbach, Weber Maschinenbau GmbH Neubrandenburg, Weber, Inc.. Reply suggestions due by 6/24/2022 unless otherwise directed by the court. (Leiker, Jason) (Entered: 06/10/2022) |
| 06/10/2022 | [324](#) | REPLY SUGGESTIONS to motion (Sealed) re [285](#) MOTION to exclude filed by Jason Scott Leiker on behalf of Defendants Textor Maschinenbau GmbH, Textor, Inc., Weber Maschinenbau GmbH Breidenbach, Weber Maschinenbau GmbH Neubrandenburg, Weber, Inc.. (Related document(s) [285](#) ) (Leiker, Jason) (Entered: 06/10/2022) |
| 06/10/2022 | [325](#) | REPLY SUGGESTIONS to motion (Sealed) re [282](#) MOTION for summary judgment *of non-infringement for all asserted claims of U.S. Patent Nos. 7,065,936 (the 936 patent) and 6,669,005 (the 005 patent)* filed by Jason Scott Leiker on behalf of Defendants Textor Maschinenbau GmbH, Textor, Inc., Weber Maschinenbau GmbH Breidenbach, Weber Maschinenbau GmbH Neubrandenburg, Weber, Inc.. (Attachments: # [1](#) Exhibit AA, # [2](#) Exhibit BB, # [3](#) Exhibit CC, # [4](#) Exhibit DD, # [5](#) Exhibit EE, # [6](#) Exhibit FF, # [7](#) Exhibit GG, # [8](#) Exhibit HH, # [9](#) Exhibit II, # [10](#) Exhibit JJ, # [11](#) Exhibit KK)(Related document(s) [282](#) ) (Leiker, Jason) (Entered: 06/10/2022) |
| 06/10/2022 | [326](#) | REPLY SUGGESTIONS to motion (Sealed) re [281](#) MOTION for summary judgment *of non-infringement for all asserted claims of U.S. Patent Nos. 6,997,089 (the 089 patent) and 8,322,537 (the 537 patent)* filed by Jason Scott Leiker on behalf of Defendants Textor Maschinenbau GmbH, Textor, Inc., Weber Maschinenbau GmbH Breidenbach, Weber Maschinenbau GmbH Neubrandenburg, Weber, Inc.. (Attachments: # [1](#) Exhibit AA, # [2](#) Exhibit BB, # [3](#) Exhibit CC, # [4](#) Exhibit DD, # [5](#) Exhibit EE, # [6](#) Exhibit FF, # [7](#) Exhibit GG, # [8](#) Exhibit HH, # [9](#) Exhibit II)(Related document(s) [281](#) ) (Leiker, Jason) (Entered: 06/10/2022) |
| 06/10/2022 | [327](#) | REPLY SUGGESTIONS to motion (Sealed) re [287](#) MOTION for summary judgment (SEALED) *(REPLY SUGGESTIONS IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT OF NO INVALIDITY)* filed by Michael Babbitt on behalf of Plaintiff Provisur Technologies, Inc.. (Related document(s) [287](#) ) (Babbitt, Michael) (Entered: 06/10/2022) |
| 06/17/2022 | [328](#) | CERTIFICATE OF SERVICE by Provisur Technologies, Inc. *of Expert Report of Dr. Keith Vorst regarding Damages Issues* filed by Jeffrey J. Simon on behalf of Plaintiff Provisur Technologies, Inc..(Simon, Jeffrey) (Entered: 06/17/2022) |
| 06/17/2022 | [329](#) | CERTIFICATE OF SERVICE by Provisur Technologies, Inc. *of its Fifth Amended Initial Disclosures* filed by Jeffrey J. Simon on behalf of Plaintiff Provisur Technologies, Inc.. (Simon, Jeffrey) (Entered: 06/17/2022) |
| 06/17/2022 | [330](#) | CERTIFICATE OF SERVICE by Provisur Technologies, Inc. *of Expert Report of Julie Davis* filed by Jeffrey J. Simon on behalf of Plaintiff Provisur Technologies, Inc..(Simon, Jeffrey) (Entered: 06/17/2022) |
| 06/17/2022 | [331](#) | CERTIFICATE OF SERVICE by Provisur Technologies, Inc. *of its Third Amended Consolidated Interrogatory Responses (Nos. 1-16)* filed by Jeffrey J. Simon on behalf of Plaintiff Provisur Technologies, Inc.. (Simon, Jeffrey) (Entered: 06/17/2022) |
| 06/21/2022 | 332 | NOTICE OF HEARING - **This is the official notice for this hearing. This is a TEXT ONLY ENTRY. No document is attached.** Oral Argument on two precise issues in the summary judgment motions is set for 7/13/2022 at 9:00 AM in Courtroom 7B, Kansas |

**Appx222**

| | | |
|---|---|---|
| | | City (SRB) before District Judge Stephen R. Bough. (Richard, Tracey) (Entered: 06/21/2022) |
| 06/30/2022 | 333 | MOTION for Order *Motion for Leave to File Plaintiff's Motion for Sanctions Against Defendants Under Seal* filed by Jeffrey J. Simon on behalf of Provisur Technologies, Inc.. Suggestions in opposition/response due by 7/14/2022 unless otherwise directed by the court. (Simon, Jeffrey) Modified on 6/30/2022 - unsealed per filer's request and regenerated NEF (Crocker, Susan). (Entered: 06/30/2022) |
| 06/30/2022 | 334 | Before the Court is Plaintiff's Motion for Leave to File Motion for Sanctions Against Defendants Under Seal. (Doc. #333.) Upon review, the motion is GRANTED. Plaintiff may file under seal its motion for sanctions. Signed on 6/30/2022 by District Judge Stephen R. Bough. This is a TEXT ONLY ENTRY. No document is attached. (Richard, Tracey) (Entered: 06/30/2022) |
| 06/30/2022 | 335 | MOTION for Order (SEALED) *Plaintiff Provisur Technologies, Inc.'s Motion for Sanctions Against Defendants (Under Seal)* filed by Jeffrey J. Simon on behalf of Provisur Technologies, Inc.. Suggestions in opposition/response due by 7/14/2022 unless otherwise directed by the court. (Simon, Jeffrey) (Entered: 06/30/2022) |
| 06/30/2022 | 336 | SUGGESTIONS in support (SEALED) re 335 MOTION for Order (SEALED) *Plaintiff Provisur Technologies, Inc.'s Motion for Sanctions Against Defendants (Under Seal)* filed by Jeffrey J. Simon on behalf of Plaintiff Provisur Technologies, Inc.. (Attachments: # 1 Exhibit A, # 2 Exhibit AA, # 3 Exhibit B, # 4 Exhibit C, # 5 Exhibit D, # 6 Exhibit E, # 7 Exhibit F, # 8 Exhibit G, # 9 Exhibit H, # 10 Exhibit I, # 11 Exhibit J, # 12 Exhibit K, # 13 Exhibit L, # 14 Exhibit M, # 15 Exhibit N, # 16 Exhibit O, # 17 Exhibit P, # 18 Exhibit Q, # 19 Exhibit R, # 20 Exhibit S, # 21 Exhibit T, # 22 Exhibit U, # 23 Exhibit V, # 24 Exhibit W, # 25 Exhibit X, # 26 Exhibit Y, # 27 Exhibit Z)(Related document(s) 335 ) (Simon, Jeffrey) (Entered: 06/30/2022) |
| 07/13/2022 | 337 | Minute Entry. Proceedings held before District Judge Stephen R. Bough: ORAL ARGUMENT on the pending motion for summary judgment held on 7/13/2022. Time in court: 8:57 a.m. to 10:51 a.m.. To order a transcript of this hearing please contact Gayle Wambolt, 816-512-5641, gayle_wambolt@mow.uscourts.gov. This is a TEXT ONLY ENTRY. No document is attached. (Richard, Tracey) (Entered: 07/13/2022) |
| 07/13/2022 | 338 | It is hereby ORDERED that Defendants' Motion for Summary Judgment of Non-Infringement of the '089 and '537 Patents (Doc. #281) is GRANTED IN PART and DENIED IN PART. The motion is GRANTED insofar as summary judgment of noninfringement is granted in favor of Defendants on the '537 Patent. The motion is DENIED insofar as Defendants are not entitled to summary judgment of non-infringement on the '089 Patent. Signed on 7/13/2022 by District Judge Stephen R. Bough. (Richard, Tracey) (Entered: 07/13/2022) |
| 07/13/2022 | 339 | It is hereby ORDERED that Defendants' Motion for Summary Judgment of Non-Infringement of the '936 and '005 Patents (Doc. #282) is GRANTED IN PART and DENIED IN PART. The motion is GRANTED insofar as summary judgment of noninfringement is granted in favor of Defendants on the '005 Patent. The motion is DENIED insofar as Defendants are not entitled to summary judgment of non-infringement on the '936 Patent. Signed on 7/13/2022 by District Judge Stephen R. Bough. (Richard, Tracey) (Entered: 07/13/2022) |
| 07/13/2022 | 340 | It is hereby ORDERED that Plaintiff's Motion for Partial Summary Judgment (Doc. #287) is DENIED. Signed on 7/13/2022 by District Judge Stephen R. Bough. (Richard, Tracey) (Entered: 07/13/2022) |

Appx223

| 07/13/2022 | 341 | ORDER granting in part and denying in part 285 Defendants' Motion to Exclude the Improper Expert Opinions of White and McGuire. Signed on 7/13/2022 by District Judge Stephen R. Bough. (Richard, Tracey) (Entered: 07/13/2022) |
|---|---|---|
| 07/14/2022 | 342 | MOTION to seal document *Defendants Opposition to Provisurs Motion for Sanctions* filed by Jason Scott Leiker on behalf of All Defendants. Suggestions in opposition/response due by 7/28/2022 unless otherwise directed by the court. (Leiker, Jason) (Entered: 07/14/2022) |
| 07/14/2022 | 343 | SUGGESTIONS in opposition (SEALED) re 335 MOTION for Order (SEALED) *Plaintiff Provisur Technologies, Inc.'s Motion for Sanctions Against Defendants (Under Seal)* filed by Jason Scott Leiker on behalf of Defendants Textor Maschinenbau GmbH, Textor, Inc., Weber Maschinenbau GmbH Breidenbach, Weber Maschinenbau GmbH Neubrandenburg, Weber, Inc.. Reply suggestions due by 7/28/2022 unless otherwise directed by the court. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5, # 6 Exhibit 6)(Related document(s) 335 ) (Leiker, Jason) (Entered: 07/14/2022) |
| 07/18/2022 | 344 | Before the Court is Defendants' Motion for Leave to File Under Seal. (Doc. #342.) For good cause shown the motion is GRANTED. Signed on 7/18/2022 by District Judge Stephen R. Bough. This is a TEXT ONLY ENTRY. No document is attached. (Richard, Tracey) (Entered: 07/18/2022) |
| 07/22/2022 | 345 | Motion to allow Patrick Conlon to appear pro hac vice (Pro Hac fee $100 receipt number AMOWDC-8029169) filed by Taylor Brooke Concannon Hausmann on behalf of Provisur Technologies, Inc.. (Attachments: # 1 Attachment Sheet)(Concannon Hausmann, Taylor) (Entered: 07/22/2022) |
| 07/22/2022 | 346 | ORDER granting 345 motion to appear pro hac vice entered by Clerk of Court. Attorney W. Patrick Conlon for Provisur Technologies, Inc. allowed to appear pro hac vice. This entry will serve as authorization for the pro hac participation by the attorney.<br><br>Western District of Missouri Local Rule 5.1 requires documents to be filed electronically. If pro hac vice counsel has not already done so, counsel is directed to immediately register for a WDMO e-filing account for NextGen CM/ECF. This will enable counsel to electronically file documents and receive electronic notification of filings. Register for a WDMO e-filing account at PACER. Signed on 07/22/2022 by Clerk of Court. This is a TEXT ONLY ENTRY. No document is attached. (Lock, Tania) (Entered: 07/22/2022) |
| 07/22/2022 | 347 | MOTION for reconsideration re 339 Order on Motion for Summary Judgment,, *(PLAINTIFF PROVISUR TECHNOLOGIES, INC.S MOTION TO RECONSIDER SUMMARY JUDGMENT OF NON-INFRINGEMENT OF THE 005 PATENT)* filed by Michael Babbitt on behalf of Provisur Technologies, Inc.. Suggestions in opposition/response due by 8/5/2022 unless otherwise directed by the court. (Related document(s) 339 ) (Babbitt, Michael) (Entered: 07/22/2022) |
| 07/22/2022 | 348 | SUGGESTIONS in support re 347 MOTION for reconsideration re 339 Order on Motion for Summary Judgment,, *(PLAINTIFF PROVISUR TECHNOLOGIES, INC.S MOTION TO RECONSIDER SUMMARY JUDGMENT OF NON-INFRINGEMENT OF THE 005 PATENT)* filed by Michael Babbitt on behalf of Plaintiff Provisur Technologies, Inc.. (Related document(s) 347 ) (Babbitt, Michael) (Entered: 07/22/2022) |
| 07/22/2022 | 349 | DESIGNATION *case-in-chief deposition designations* by All Defendants filed by Jason Scott Leiker on behalf of Defendants Weber Maschinenbau GmbH Neubrandenburg, Textor, Inc., Weber Maschinenbau GmbH Breidenbach, Weber, Inc., Textor Maschinenbau GmbH, Counter Claimants Textor Maschinenbau GmbH, Textor, Inc., |

Appx224

| | | Weber Maschinenbau GmbH Breidenbach, Weber Maschinenbau GmbH Neubrandenburg, Weber, Inc..(Leiker, Jason) (Entered: 07/22/2022) |
|---|---|---|
| 07/22/2022 | 350 | DESIGNATION *(PLAINTIFF PROVISUR TECHNOLOGIES, INC.'S DEPOSITION DESIGNATIONS)* by Provisur Technologies, Inc.. (Martin, Craig) (Entered: 07/22/2022) |
| 07/25/2022 | 351 | NOTICE OF HEARING - This is the official notice for this hearing. This is a TEXT ONLY ENTRY. No document is attached. Telephone Conference set for 7/28/2022 at 2:00 PM before District Judge Stephen R. Bough. (Richard, Tracey) (Entered: 07/25/2022) |
| 07/27/2022 | 352 | CERTIFICATE of counsel by Jason Scott Leiker on behalf of All Defendants (Leiker, Jason) (Entered: 07/27/2022) |
| 07/27/2022 | 353 | MOTION to consolidate cases *Provisur I and Provisur II and Suggestions in Support* filed by Jeffrey J. Simon on behalf of Provisur Technologies, Inc.. Suggestions in opposition/response due by 8/10/2022 unless otherwise directed by the court. (Simon, Jeffrey) (Entered: 07/27/2022) |
| 07/28/2022 | 354 | MOTION for leave to file *Motion for Leave to File Plaintiff's Reply Suggestions in Support of its Motion for Sanctions Against Defendants Under Seal* filed by Jeffrey J. Simon on behalf of Provisur Technologies, Inc.. Suggestions in opposition/response due by 8/11/2022 unless otherwise directed by the court. (Simon, Jeffrey) (Entered: 07/28/2022) |
| 07/28/2022 | 355 | Before the Court is Plaintiff's Motion for Leave to File Reply Suggestions in Support of its Motion for Sanctions Under Seal. (Doc. #354.) For good cause shown the motion is GRANTED. Signed on 7/28/2022 by District Judge Stephen R. Bough. This is a TEXT ONLY ENTRY. No document is attached. (Richard, Tracey) (Entered: 07/28/2022) |
| 07/28/2022 | 356 | SUGGESTIONS in support (SEALED) re 335 MOTION for Order (SEALED) *Plaintiff Provisur Technologies, Inc.'s Motion for Sanctions Against Defendants (Under Seal) Plaintiff Provisur Technologies, Inc.'s Reply Suggestions in Support of its Motion for Sanctions Against Defendants* filed by Jeffrey J. Simon on behalf of Plaintiff Provisur Technologies, Inc.. (Related document(s) 335 ) (Simon, Jeffrey) (Entered: 07/28/2022) |
| 07/28/2022 | 357 | Minute Entry. Proceedings held before District Judge Stephen R. Bough: TELEPHONE CONFERENCE held on 7/28/2022. Order to be entered. Time in court: 2:00 p.m. to 2:11 p.m. To order a transcript of this hearing please contact Gayle Wambolt, 816-512-5641, gayle_wambolt@mow.uscourts.gov. This is a TEXT ONLY ENTRY. No document is attached. (Richard, Tracey) (Entered: 07/28/2022) |
| 07/28/2022 | 358 | ORDER denying 335 Motions for Sanctions. Signed on 7/28/2022 by District Judge Stephen R. Bough. (Richard, Tracey) (Entered: 07/28/2022) |
| 07/28/2022 | 359 | ORDER granting 353 motion to consolidate cases; Case No. 19-cv-06021-SRB and Case No. 20-cv-06069-SRB are hereby CONSOLIDATED, and **all future filings should be made in Case No. 19-cv-06021-SRB.** Signed on 7/28/2022 by District Judge Stephen R. Bough. (Richard, Tracey) (Entered: 07/28/2022) |
| 07/28/2022 | 360 | **AMENDED** NOTICE OF HEARING - This is the official notice for this hearing. This is a TEXT ONLY ENTRY. No document is attached. The Pretrial Conference previously set for 8/12/2022 is **RESET for 9/30/2022 at 9:00 AM** Courtroom 7B, Kansas City (SRB) before District Judge Stephen R. Bough. (Richard, Tracey) (Entered: 07/28/2022) |
| 07/28/2022 | 361 | NOTICE OF HEARING - This is the official notice for this hearing. This is a TEXT ONLY ENTRY. No document is attached. Voir Dire set for 10/14/2022 at 9:00 AM in Courtroom 7B, Kansas City (SRB) before District Judge Stephen R. Bough. Jury Trial set for 10/17/2022 through 10/20/2022 and 10/24/2022 through 10/28/2022 starting at 8:30 |

**Appx225**

| | | AM each day in Courtroom 7B, Kansas City (SRB) before District Judge Stephen R. Bough. (Richard, Tracey) (Entered: 07/28/2022) |
|---|---|---|
| 07/29/2022 | 362 | MOTION for extension of time *to extend deadlines for filing Motions in Limine and Joint Jury Instructions provided in the Courts July 28, 2022 Order (Dkt. 359) from August 2, 2022 to September 16, 2022* filed by Jason Scott Leiker on behalf of All Defendants. Suggestions in opposition/response due by 8/12/2022 unless otherwise directed by the court. (Leiker, Jason) (Entered: 07/29/2022) |
| 08/01/2022 | 363 | Before the Court is Defendants' Motion to Extend Deadlines for Motions in Limine and Joint Jury Instructions. (Doc. #362.) For good cause shown, the motion is GRANTED. The deadline to file motions in limine and joint jury instructions is hereby extended up to and including September 16, 2022. Signed on 8/1/2022 by District Judge Stephen R. Bough. This is a TEXT ONLY ENTRY. No document is attached. (Richard, Tracey) (Entered: 08/01/2022) |
| 08/02/2022 | 364 | ELECTRONIC TRANSCRIPT of Oral Arguments held July 13, 2022, before Judge Stephen R. Bough. Court Reporter: Gayle Wambolt, 816-512-5641, gayle_wambolt@mow.uscourts.gov. Number of pages: 72. NOTICE RE: REDACTION OF TRANSCRIPTS: Within 7 calendar days of this filing, each party shall inform the Court, by filing a Notice of Redaction, of the parties' intent to redact personal data identifiers from the electronic transcript of the court proceeding. The policy is located on our website at www.mow.uscourts.gov. Please read this policy carefully. **NOTICE: Attorneys must contact the court reporter for copies during this 90 day period. If necessary, Notice of Intent to Redact is due by 8/9/2022 unless otherwise directed by the court. Release of Transcript Restriction set for 10/31/2022. NOTICE: Attorneys must contact the court reporter for copies during this 90 day period.** (Wambolt, Gayle) (Entered: 08/02/2022) |
| 08/02/2022 | 365 | ELECTRONIC TRANSCRIPT of Teleconference held July 28, 2022, before Judge Stephen R. Bough. Court Reporter: Gayle Wambolt, 816-512-5641, gayle_wambolt@mow.uscourts.gov. Number of pages: 7. NOTICE RE: REDACTION OF TRANSCRIPTS: Within 7 calendar days of this filing, each party shall inform the Court, by filing a Notice of Redaction, of the parties' intent to redact personal data identifiers from the electronic transcript of the court proceeding. The policy is located on our website at www.mow.uscourts.gov. Please read this policy carefully. **NOTICE: Attorneys must contact the court reporter for copies during this 90 day period. If necessary, Notice of Intent to Redact is due by 8/9/2022 unless otherwise directed by the court. Release of Transcript Restriction set for 10/31/2022. NOTICE: Attorneys must contact the court reporter for copies during this 90 day period.** (Wambolt, Gayle) (Entered: 08/02/2022) |
| 08/04/2022 | 366 | SUGGESTIONS in opposition re 347 MOTION for reconsideration re 339 Order on Motion for Summary Judgment, *(PLAINTIFF PROVISUR TECHNOLOGIES, INC.S MOTION TO RECONSIDER SUMMARY JUDGMENT OF NON-INFRINGEMENT OF THE 005 PATENT)* filed by Jason Scott Leiker on behalf of Defendants Textor Maschinenbau GmbH, Textor, Inc., Weber Maschinenbau GmbH Breidenbach, Weber Maschinenbau GmbH Neubrandenburg, Weber, Inc.. Reply suggestions due by 8/18/2022 unless otherwise directed by the court. (Related document(s) 347 ) (Leiker, Jason) (Entered: 08/04/2022) |
| 08/16/2022 | 367 | NOTICE OF HEARING - This is the official notice for this hearing. This is a TEXT ONLY ENTRY. No document is attached. Telephone Conference set for 8/18/2022 at 9:45 AM before District Judge Stephen R. Bough. (Richard, Tracey) (Entered: 08/16/2022) |

**Appx226**

| 08/18/2022 | 368 | Minute Entry. Proceedings held before District Judge Stephen R. Bough: Discovery Dispute TELEPHONE CONFERENCE held on 8/18/2022. Order to be entered. Time in court: 9:45 a.m. to 9:57 a.m. To order a transcript of this hearing please contact Gayle Wambolt, 816-512-5641, gayle_wambolt@mow.uscourts.gov. This is a TEXT ONLY ENTRY. No document is attached. (Richard, Tracey) (Entered: 08/18/2022) |
|---|---|---|
| 08/18/2022 | 369 | On August 18, 2022, the Court presided over a telephone conference with the parties. For the reasons stated on the record, it is hereby ORDERED that: (1) Plaintiff shall limit its asserted claims to ten (10) claims for trial; (2) Defendants shall limit the number of prior art references to no more than twelve (12) total prior art references, with no more than two prior art grounds per claim and two non-prior art grounds per claim; (3) Plaintiff shall provide its narrowed claim set, and a list of accused products to Defendants, on or before August 19, 2022; and (4) Defendants shall provide their narrowed contentions to Plaintiff on or before August 24, 2022. The parties may consult the transcript for further details and/or clarification. Signed on 8/18/2022 by District Judge Stephen R. Bough. This is a TEXT ONLY ENTRY. No document is attached. (Richard, Tracey) (Entered: 08/18/2022) |
| 08/18/2022 | 370 | REPLY SUGGESTIONS to motion re 347 MOTION for reconsideration re 339 Order on Motion for Summary Judgment,, *(PLAINTIFF PROVISUR TECHNOLOGIES, INC.S MOTION TO RECONSIDER SUMMARY JUDGMENT OF NON-INFRINGEMENT OF THE 005 PATENT) (PLAINTIFF PROVISUR TECHNOLOGIES, INC.'S REPLY SUGGESTIONS IN SUPPORT OF ITS MOTION TO RECONSIDER SUMMARY JUDGMENT OF NON-INFRINGEMENT OF THE '005 PATENT)* filed by Michael Babbitt on behalf of Plaintiff Provisur Technologies, Inc.. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C)(Related document(s) 347 ) (Babbitt, Michael) (Entered: 08/18/2022) |
| 08/18/2022 | 371 | ORDER denying 347 motion for reconsideration. Signed on 8/18/2022 by District Judge Stephen R. Bough. (Richard, Tracey) (Entered: 08/18/2022) |
| 08/25/2022 | 372 | ELECTRONIC TRANSCRIPT of Teleconference held August 18, 2022, before Judge Stephen R. Bough. Court Reporter: Gayle Wambolt, 816-512-5641, gayle_wambolt@mow.uscourts.gov. Number of pages: 9. NOTICE RE: REDACTION OF TRANSCRIPTS: Within 7 calendar days of this filing, each party shall inform the Court, by filing a Notice of Redaction, of the parties' intent to redact personal data identifiers from the electronic transcript of the court proceeding. The policy is located on our website at www.mow.uscourts.gov. Please read this policy carefully. NOTICE: Attorneys must contact the court reporter for copies during this 90 day period. If necessary, Notice of Intent to Redact is due by 9/1/2022 unless otherwise directed by the court. Release of Transcript Restriction set for 11/23/2022. NOTICE: Attorneys must contact the court reporter for copies during this 90 day period.<br><br>(Wambolt, Gayle) (Entered: 08/25/2022) |
| 08/25/2022 | 373 | Joint MOTION to amend/correct *Joint Motion Adjusting Schedule of Upcoming Deadlines* filed by Taylor Brooke Concannon Hausmann on behalf of Provisur Technologies, Inc.. Suggestions in opposition/response due by 9/8/2022 unless otherwise directed by the court. (Concannon Hausmann, Taylor) (Entered: 08/25/2022) |
| 08/25/2022 | 374 | ORDER granting 373 Joint Motion Adjusting Schedule of Upcoming Deadlines. Signed on 8/25/2022 by District Judge Stephen R. Bough. (Richard, Tracey) (Entered: 08/25/2022) |
| 08/29/2022 | 375 | MOTION for leave to file *Motion for Leave to File Plaintiff's Motion to Exclude Opinion of Vincent A. Thomas Under Seal* filed by Jeffrey J. Simon on behalf of Provisur |

| | | |
|---|---|---|
| | | Technologies, Inc.. Suggestions in opposition/response due by 9/12/2022 unless otherwise directed by the court. (Simon, Jeffrey) (Entered: 08/29/2022) |
| 08/29/2022 | 376 | Before the Court is Plaintiff's Motion for Leave to File Plaintiff's Motion to Exclude Opinion of Vincent A. Thomas Under Seal. (Doc. #375.) For good cause shown, the motion is GRANTED. Plaintiff and Defendants' briefs and exhibits regarding the opinions of Mr. Thomas may be filed under seal. Signed on 8/29/2022 by District Judge Stephen R. Bough. This is a TEXT ONLY ENTRY. No document is attached. (Richard, Tracey) (Entered: 08/29/2022) |
| 08/29/2022 | 377 | MOTION to seal document *Defendants Suggestions in Support of their Moton to Exclude the Improper Expert Opinions of Dr. Keith Vorst and Defendants Suggestions in Support of their Motion to Exclude the Expert Opinions of Julie L. Davis and corresponding exhibits* filed by Jason Scott Leiker on behalf of All Defendants. Suggestions in opposition/response due by 9/12/2022 unless otherwise directed by the court. (Leiker, Jason) (Entered: 08/29/2022) |
| 08/29/2022 | 378 | Before the Court is Defendants' Motion for Leave to File Under Seal. (Doc. #377.) For good cause shown, the motion is GRANTED. Defendants may file under seal the Suggestions in Support of their Motion to Exclude the Expert Opinions of Dr. Keith Vorst, and Suggestions in Support of their Motion to Exclude the Expert Opinions of Julie L. Davis, and corresponding exhibits. Plaintiff and Defendants' briefs and exhibits regarding the opinions of Dr. Vorst and Ms. Davis may be filed under seal. Signed on 8/29/2022 by District Judge Stephen R. Bough. This is a TEXT ONLY ENTRY. No document is attached. (Richard, Tracey) (Entered: 08/29/2022) |
| 08/29/2022 | 379 | MOTION for Order (SEALED) *Motion to Exclude Expert Opinions of Ms. Julie L. Davis* filed by Jason Scott Leiker on behalf of All Defendants. Suggestions in opposition/response due by 9/12/2022 unless otherwise directed by the court. (Leiker, Jason) (Entered: 08/29/2022) |
| 08/29/2022 | 380 | MOTION for Order (SEALED) *to Exclude Opinion of Vincent A. Thomas* filed by Jeffrey J. Simon on behalf of Provisur Technologies, Inc.. Suggestions in opposition/response due by 9/12/2022 unless otherwise directed by the court. (Simon, Jeffrey) (Entered: 08/29/2022) |
| 08/29/2022 | 381 | SUGGESTIONS in support (SEALED) re 379 MOTION for Order (SEALED) *Motion to Exclude Expert Opinions of Ms. Julie L. Davis* filed by Jason Scott Leiker on behalf of Defendants Textor Maschinenbau GmbH, Textor, Inc., Weber Maschinenbau GmbH Breidenbach, Weber Maschinenbau GmbH Neubrandenburg, Weber, Inc.. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5, # 6 Exhibit 6, # 7 Exhibit 7, # 8 Exhibit 8, # 9 Exhibit 9, # 10 Exhibit 10, # 11 Exhibit 11, # 12 Exhibit 12, # 13 Exhibit 13, # 14 Exhibit 14, # 15 Exhibit 15, # 16 Exhibit 16, # 17 Exhibit 17, # 18 Exhibit 18, # 19 Exhibit 19, # 20 Exhibit 20)(Related document(s) 379 ) (Leiker, Jason) (Entered: 08/29/2022) |
| 08/29/2022 | 382 | SUGGESTIONS in support (SEALED) re 380 MOTION for Order (SEALED) *to Exclude Opinion of Vincent A. Thomas* filed by Jeffrey J. Simon on behalf of Plaintiff Provisur Technologies, Inc.. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E)(Related document(s) 380 ) (Simon, Jeffrey) (Entered: 08/29/2022) |
| 08/29/2022 | 383 | MOTION for Order (SEALED) *Motion to Exclude Improper Expert Opinions of Dr. Keith Vorst* filed by Jason Scott Leiker on behalf of All Defendants. Suggestions in opposition/response due by 9/12/2022 unless otherwise directed by the court. (Leiker, Jason) (Entered: 08/29/2022) |

Appx228

| | | |
|---|---|---|
| 08/29/2022 | 384 | SUGGESTIONS in support (SEALED) re 383 MOTION for Order (SEALED) *Motion to Exclude Improper Expert Opinions of Dr. Keith Vorst* filed by Jason Scott Leiker on behalf of Defendants Textor Maschinenbau GmbH, Textor, Inc., Weber Maschinenbau GmbH Breidenbach, Weber Maschinenbau GmbH Neubrandenburg, Weber, Inc.. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F, # 7 Exhibit G, # 8 Exhibit H, # 9 Exhibit I, # 10 Exhibit J, # 11 Exhibit K, # 12 Exhibit L, # 13 Exhibit M, # 14 Exhibit N, # 15 Exhibit O, # 16 Exhibit P, # 17 Exhibit Q, # 18 Exhibit R, # 19 Exhibit S, # 20 Exhibit T, # 21 Exhibit U, # 22 Exhibit V) (Related document(s) 383 ) (Leiker, Jason) (Entered: 08/29/2022) |
| 09/01/2022 | 385 | NOTICE of appearance by Paul Arthur Overbee on behalf of All Defendants (Attorney Paul Arthur Overbee added to party Textor Maschinenbau GmbH(pty:dft), Attorney Paul Arthur Overbee added to party Textor, Inc.(pty:dft), Attorney Paul Arthur Overbee added to party Weber Maschinenbau GmbH Breidenbach(pty:dft), Attorney Paul Arthur Overbee added to party Weber Maschinenbau GmbH Neubrandenburg(pty:dft), Attorney Paul Arthur Overbee added to party Weber, Inc.(pty:dft))(Overbee, Paul) (Entered: 09/01/2022) |
| 09/02/2022 | 386 | MOTION to seal document filed by Taylor Brooke Concannon Hausmann on behalf of Provisur Technologies, Inc.. Suggestions in opposition/response due by 9/16/2022 unless otherwise directed by the court. (Concannon Hausmann, Taylor) (Entered: 09/02/2022) |
| 09/02/2022 | 387 | CERTIFICATE OF SERVICE OF INITIAL RULE 26 DISCLOSURES *Defendants Second Supplemental Rule 26(a)(1) Initial Disclosures* filed by Jason Scott Leiker on behalf of Defendants Textor Maschinenbau GmbH, Textor, Inc., Weber Maschinenbau GmbH Breidenbach, Weber Maschinenbau GmbH Neubrandenburg, Weber, Inc..(Leiker, Jason) (Entered: 09/02/2022) |
| 09/02/2022 | 388 | MOTION for reconsideration *of the Provisional Exclusion of the Expert Opinions of Professor Mary-Rose McGuire* filed by Jeffrey J. Simon on behalf of Provisur Technologies, Inc.. Suggestions in opposition/response due by 9/16/2022 unless otherwise directed by the court. (Simon, Jeffrey) (Entered: 09/02/2022) |
| 09/02/2022 | 389 | SUGGESTIONS in support re 388 MOTION for reconsideration *of the Provisional Exclusion of the Expert Opinions of Professor Mary-Rose McGuire* filed by Jeffrey J. Simon on behalf of Plaintiff Provisur Technologies, Inc.. (Attachments: # 1 Exhibit A) (Related document(s) 388 ) (Simon, Jeffrey) (Entered: 09/02/2022) |
| 09/06/2022 | 390 | Before the Court is Plaintiffs Motion For Leave to File Provisur's Motion to Reconsider the Provisional Exclusion of the Expert Opinions of Professor Mary-Rose McGuire and Suggestions in Support Under Seal. (Doc. # 386 ) Upon review, the motion is GRANTED. Plaintiff may file its Motion to Reconsider the Provisional Exclusion of the Expert Opinions of Professor Mary-Rose McGuire and Suggestions in Support under seal.. Signed on 9/6/2022 by District Judge Stephen R. Bough. <span style="color:red">This is a TEXT ONLY ENTRY. No document is attached.</span> (Houston, Kiambu) (Entered: 09/06/2022) |
| 09/06/2022 | 391 | Before this Court is Plaintiffs Motion to Reconsider. (Doc. 388 ) After reconsideration, the motion is DENIED for all the same reasons previously stated. Signed on 9/6/2022 by District Judge Stephen R. Bough. <span style="color:red">This is a TEXT ONLY ENTRY. No document is attached.</span> (Houston, Kiambu) (Entered: 09/06/2022) |
| 09/09/2022 | 392 | DESIGNATION *(PLAINTIFF PROVISUR TECHNOLOGIES, INC.'S DEPOSITION DESIGNATIONS)* by Provisur Technologies, Inc.. (Martin, Craig) (Entered: 09/09/2022) |
| 09/09/2022 | 393 | DESIGNATION *Defendants' Deposition Designations* by All Defendants filed by Jason Scott Leiker on behalf of Defendants Weber Maschinenbau GmbH Neubrandenburg, Textor, Inc., Weber Maschinenbau GmbH Breidenbach, Weber, Inc., Textor |

Appx229

| | | |
|---|---|---|
| | | Maschinenbau GmbH, Counter Claimants Textor Maschinenbau GmbH, Textor, Inc., Weber Maschinenbau GmbH Breidenbach, Weber Maschinenbau GmbH Neubrandenburg, Weber, Inc..(Leiker, Jason) (Entered: 09/09/2022) |
| 09/12/2022 | 394 | MOTION for leave to file *Motion for Leave to File Plaintiff's Suggestions in Opposition to Defendants' Motion to Exclude the Expert Opinions of Julie L. Davis Under Seal* filed by Jeffrey J. Simon on behalf of Provisur Technologies, Inc.. Suggestions in opposition/response due by 9/26/2022 unless otherwise directed by the court. (Simon, Jeffrey) (Entered: 09/12/2022) |
| 09/12/2022 | 395 | MOTION for leave to file *Motion for Leave to File Plaintiff's Suggestions in Opposition to Defendants' Motion to Exclude the Expert Opinions of Dr. Keith Vorst Under Seal* filed by Jeffrey J. Simon on behalf of Provisur Technologies, Inc.. Suggestions in opposition/response due by 9/26/2022 unless otherwise directed by the court. (Simon, Jeffrey) (Entered: 09/12/2022) |
| 09/12/2022 | 396 | Before the Court is Plaintiff's Motion for Leave to File Under Seal. (Doc. #394.) Upon review, the motion is DENIED AS MOOT as unnecessary. The Court's Order dated August 29, 2022 provides in part that "Plaintiff and Defendants' briefs and exhibits regarding the opinions of Dr. Vorst and Ms. Davis may be filed under seal." (Doc. #378.) Signed on 9/12/2022 by District Judge Stephen R. Bough. This is a TEXT ONLY ENTRY. No document is attached. (Richard, Tracey) (Entered: 09/12/2022) |
| 09/12/2022 | 397 | Before the Court is Plaintiff's Motion for Leave to File Under Seal. (Doc. #395.) Upon review, the motion is DENIED AS MOOT as unnecessary. The Court's Order dated August 29, 2022 provides in part that "Plaintiff and Defendants' briefs and exhibits regarding the opinions of Dr. Vorst and Ms. Davis may be filed under seal." (Doc. #378.) Signed on 9/12/2022 by District Judge Stephen R. Bough. This is a TEXT ONLY ENTRY. No document is attached. (Richard, Tracey) (Entered: 09/12/2022) |
| 09/12/2022 | 398 | SUGGESTIONS in opposition (SEALED) re 380 MOTION for Order (SEALED) *to Exclude Opinion of Vincent A. Thomas* filed by Jason Scott Leiker on behalf of Defendants Textor Maschinenbau GmbH, Textor, Inc., Weber Maschinenbau GmbH Breidenbach, Weber Maschinenbau GmbH Neubrandenburg, Weber, Inc.. Reply suggestions due by 9/26/2022 unless otherwise directed by the court. (Attachments: # 1 Exhibit 1-Deposition of Thomas (sealed), # 2 Exhibit 2-Quote to Interstate Meat Distribution Inc. (sealed))(Related document(s) 380 ) (Leiker, Jason) (Entered: 09/12/2022) |
| 09/12/2022 | 399 | SUGGESTIONS in opposition (SEALED) re 379 MOTION for Order (SEALED) *Motion to Exclude Expert Opinions of Ms. Julie L. Davis Plaintiff Provisur Technologies, Inc.'s Suggestions in Opposition to Defendants' Motion to Exclude the Expert Opinions of Julie L. Davis* filed by Jeffrey J. Simon on behalf of Plaintiff Provisur Technologies, Inc.. Reply suggestions due by 9/26/2022 unless otherwise directed by the court. (Attachments: # 1 Exhibit FILED UNDER SEAL - Exhibits A-D to be FILED UNDER SEAL, # 2 Exhibit FILED UNDER SEAL - Exhibit A - Excerpted Pages from 2022.08.17 Davis, # 3 Exhibit FILED UNDER SEAL - Exhibit B - Excerpted Pages from 2022.08.23 Vorst, # 4 Exhibit FILED UNDER SEAL - Exhibit C - 2022.08.08 Updated Rebuttal Expert Report of Vince Thomas, # 5 Exhibit FILED UNDER SEAL - Exhibit D - Excerpted Pages from 2022.08.24 Thomas)(Related document(s) 379 ) (Simon, Jeffrey) (Entered: 09/12/2022) |
| 09/12/2022 | 400 | SUGGESTIONS in opposition (SEALED) re 383 MOTION for Order (SEALED) *Motion to Exclude Improper Expert Opinions of Dr. Keith Vorst Plaintiff Provisur Technologies, Inc.'s Suggestions in Opposition to Defendants' Motion to Exclude the Expert Opinions of Dr. Keith Vorst* filed by Jeffrey J. Simon on behalf of Plaintiff Provisur Technologies, Inc.. Reply suggestions due by 9/26/2022 unless otherwise directed by the court. |

**Appx230**

| | | |
|---|---|---|
| | | (Attachments: # 1 Exhibit FILED UNDER SEAL - Exhibits A-C to be FILED UNDER SEAL, # 2 Exhibit FILED UNDER SEAL - Exhibit A - 39b Weber, # 3 Exhibit FILED UNDER SEAL - Exhibit B - 39 Weber, # 4 Exhibit FILED UNDER SEAL - Exhibit C - Excerpted Pages from 2022.02.03 Weber)(Related document(s) 383 ) (Simon, Jeffrey) (Entered: 09/12/2022) |
| 09/14/2022 | 401 | NOTICE OF HEARING - This is the official notice for this hearing. This is a TEXT ONLY ENTRY. No document is attached. Telephone Conference set for 9/20/2022 at 9:45 AM before District Judge Stephen R. Bough. (Richard, Tracey) (Entered: 09/14/2022) |
| 09/14/2022 | 402 | CERTIFICATE of counsel by Jason Scott Leiker on behalf of All Defendants (Leiker, Jason) (Entered: 09/14/2022) |
| 09/16/2022 | 403 | MOTION to seal document *(MOTION FOR LEAVE TO FILE PLAINTIFFS MOTIONS IN LIMINE UNDER SEAL)* filed by Craig C. Martin on behalf of Provisur Technologies, Inc.. Suggestions in opposition/response due by 9/30/2022 unless otherwise directed by the court. (Martin, Craig) (Entered: 09/16/2022) |
| 09/16/2022 | 404 | MOTION to seal document *Defendants' Motion for Leave to File Under Seal Defendants' Motion in Limine* filed by Jason Scott Leiker on behalf of All Defendants. Suggestions in opposition/response due by 9/30/2022 unless otherwise directed by the court. (Leiker, Jason) (Entered: 09/16/2022) |
| 09/16/2022 | 405 | Before the Court is a Motion for Leave to File Plaintiffs Motions in Limine Under Seal. (Doc. 403 ) For good cause shown, the motion is GRANTED. Plaintiff and Defendants may file their motions in limine, and accompanying exhibits, under seal. Signed on 9/16/2022 by District Judge Stephen R. Bough. This is a TEXT ONLY ENTRY. No document is attached. (Houston, Kiambu) (Entered: 09/16/2022) |
| 09/16/2022 | 406 | Before the Court is Defendants Motion for Leave to File Under Seal Defendants Motion in Limine. (Doc. 404 ) For good cause shown, the motion is GRANTED. Plaintiff and Defendants may file their motions in limine, suggestions in opposition, and accompanying exhibits, under seal. Signed on 9/16/2022 by District Judge Stephen R. Bough. This is a TEXT ONLY ENTRY. No document is attached. (Houston, Kiambu) (Entered: 09/16/2022) |
| 09/16/2022 | 407 | PROPOSED WITNESS LIST by Provisur Technologies, Inc. . (Babbitt, Michael) (Entered: 09/16/2022) |
| 09/16/2022 | 408 | MOTION for Order (SEALED) *Defendants' Motion in Limine* filed by Jason Scott Leiker on behalf of All Defendants. Suggestions in opposition/response due by 9/30/2022 unless otherwise directed by the court. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5, # 6 Exhibit 6, # 7 Exhibit 7, # 8 Exhibit 8, # 9 Exhibit 9, # 10 Exhibit 10, # 11 Exhibit 11, # 12 Exhibit 12, # 13 Exhibit 13, # 14 Exhibit 14, # 15 Exhibit 15, # 16 Exhibit 16, # 17 Exhibit 17, # 18 Exhibit 18, # 19 Exhibit 19, # 20 Exhibit 20, # 21 Exhibit 21)(Leiker, Jason) (Entered: 09/16/2022) |
| 09/16/2022 | 409 | PROPOSED WITNESS LIST by Textor Maschinenbau GmbH, Textor, Inc., Weber Maschinenbau GmbH Breidenbach, Weber Maschinenbau GmbH Neubrandenburg, Weber, Inc. . (Leiker, Jason) (Entered: 09/16/2022) |
| 09/16/2022 | 410 | Joint PROPOSED JURY INSTRUCTIONS by Provisur Technologies, Inc. *(Clean)*. (Martin, Craig) (Entered: 09/16/2022) |
| 09/16/2022 | 411 | Joint PROPOSED JURY INSTRUCTIONS by Provisur Technologies, Inc. *(With Sources)*. (Martin, Craig) (Entered: 09/16/2022) |
| 09/16/2022 | 412 | MOTION to seal document *(MOTION FOR LEAVE TO FILE PLAINTIFF'S EXHIBIT INDEX UNDER SEAL)* filed by Craig C. Martin on behalf of Provisur Technologies, Inc.. |

Appx231

| | | Suggestions in opposition/response due by 9/30/2022 unless otherwise directed by the court. (Martin, Craig) (Entered: 09/16/2022) |
|---|---|---|
| 09/16/2022 | 413 | DESIGNATION *Defendants' Objections and Counter Deposition Designations* by All Defendants filed by Jason Scott Leiker on behalf of Defendants Weber Maschinenbau GmbH Neubrandenburg, Textor, Inc., Weber Maschinenbau GmbH Breidenbach, Weber, Inc., Textor Maschinenbau GmbH.(Leiker, Jason) (Entered: 09/16/2022) |
| 09/16/2022 | 414 | TRIAL DOCUMENT (SEALED) *(PLAINTIFF PROVISUR TECHNOLOGIES, INC.S EXHIBIT INDEX)* by Provisur Technologies, Inc.. (Attachments: # 1 Exhibit Plaintiff Trial Exhibit List)(Babbitt, Michael) (Entered: 09/16/2022) |
| 09/16/2022 | 415 | PROPOSED JURY INSTRUCTIONS by Provisur Technologies, Inc. *(Clean)*. (Martin, Craig) (Entered: 09/16/2022) |
| 09/16/2022 | 416 | PROPOSED JURY INSTRUCTIONS by Provisur Technologies, Inc. *(With Sources)*. (Martin, Craig) (Entered: 09/16/2022) |
| 09/16/2022 | 417 | PROPOSED JURY INSTRUCTIONS by Textor Maschinenbau GmbH, Textor, Inc., Weber Maschinenbau GmbH Breidenbach, Weber Maschinenbau GmbH Neubrandenburg, Weber, Inc. *Defendants' Proposed Jury Instructions and Verdict Form and Objections to Plaintiff's Proposals*. (Leiker, Jason) (Entered: 09/16/2022) |
| 09/16/2022 | 418 | OBJECTIONS (non motions) by Provisur Technologies, Inc. *(PLAINTIFF PROVISUR TECHNOLOGIES, INC.S OBJECTIONS TO DEFENDANTS DESIGNATED DEPOSITION TESTIMONY AND COUNTER DESIGNATION)*. (Attachments: # 1 Exhibit A)(Babbitt, Michael) (Entered: 09/16/2022) |
| 09/16/2022 | 419 | MOTION for Order (SEALED) *(PLAINTIFF PROVISUR TECHNOLOGIES, INC.'S MOTIONS IN LIMINE)* filed by Craig C. Martin on behalf of Provisur Technologies, Inc.. Suggestions in opposition/response due by 9/30/2022 unless otherwise directed by the court. (Martin, Craig) (Entered: 09/16/2022) |
| 09/16/2022 | 420 | SUGGESTIONS in support (SEALED) re 419 MOTION for Order (SEALED) *(PLAINTIFF PROVISUR TECHNOLOGIES, INC.'S MOTIONS IN LIMINE)* filed by Craig C. Martin on behalf of Plaintiff Provisur Technologies, Inc.. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5, # 6 Exhibit 6, # 7 Exhibit 7, # 8 Exhibit 8, # 9 Exhibit 9, # 10 Exhibit 10, # 11 Exhibit 11, # 12 Exhibit 12) (Related document(s) 419 ) (Martin, Craig) (Entered: 09/16/2022) |
| 09/16/2022 | 421 | OBJECTIONS (non motions) by Provisur Technologies, Inc. *(PLAINTIFF PROVISUR TECHNOLOGIES, INC.'S OBJECTIONS TO DEFENDANTS' PROPOSED JURY INSTRUCTIONS)*. (Martin, Craig) (Entered: 09/16/2022) |
| 09/16/2022 | 422 | PROPOSED EXHIBIT LIST by Textor Maschinenbau GmbH, Textor, Inc., Weber Maschinenbau GmbH Breidenbach, Weber Maschinenbau GmbH Neubrandenburg, Weber, Inc.. (Attachments: # 1 Exhibit A - Defendants' Exhibit List)(Leiker, Jason) (Entered: 09/16/2022) |
| 09/17/2022 | 423 | Before the Court is Plaintiff's Motion for Leave to File Plaintiff's Exhibit Index Under Seal. (Doc. #412.) For good cause shown, the motion is GRANTED. This is a TEXT ONLY ENTRY. No document is attached. (Richard, Tracey) (Entered: 09/17/2022) |
| 09/20/2022 | 424 | Minute Entry. Proceedings held before District Judge Stephen R. Bough: TELEPHONE CONFERENCE held on 9/20/2022. Order to be entered. Time in court: 9:45 a.m. to 10:23 a.m. To order a transcript of this hearing please contact Gayle Wambolt, 816-512-5641, gayle_wambolt@mow.uscourts.gov. This is a TEXT ONLY ENTRY. No document is attached. (Richard, Tracey) (Entered: 09/20/2022) |

Appx232

| 09/20/2022 | 425 | On September 20, 2022, the Court presided over a telephone conference with the parties. For the reasons stated on the record, it is hereby ORDERED that on or before Friday, September 23, 2022, the parties shall submit a joint and revised proposed juror questionnaire. The parties may consult the transcript for further details and/or clarification. Signed on 9/20/2022 by District Judge Stephen R. Bough. This is a TEXT ONLY ENTRY. No document is attached. (Richard, Tracey) (Entered: 09/20/2022) |
| --- | --- | --- |
| 09/21/2022 | 426 | MOTION for leave to file *Plaintiff's Deposition Designations and Objections to Counter Designations Under Seal* filed by Craig C. Martin on behalf of Provisur Technologies, Inc.. Suggestions in opposition/response due by 10/5/2022 unless otherwise directed by the court. (Martin, Craig) (Entered: 09/21/2022) |
| 09/21/2022 | 427 | Before the Court is Plaintiff's Motion for Leave to File Plaintiff's Deposition Designations and Objections to Counter Designations Under Seal. (Doc. #426.) For good cause shown, the motion is GRANTED. Plaintiff and Defendants may file deposition designations, and objections to counter designations, under seal. Signed on 9/21/2022 by District Judge Stephen R. Bough. This is a TEXT ONLY ENTRY. No document is attached. (Richard, Tracey) (Entered: 09/21/2022) |
| 09/21/2022 | 428 | OBJECTIONS (non motions) by Textor Maschinenbau GmbH, Textor, Inc., Weber Maschinenbau GmbH Breidenbach, Weber Maschinenbau GmbH Neubrandenburg, Weber, Inc. *Defendants' Objections to Plaintiff's Counter Deposition Designations*. (Leiker, Jason) (Entered: 09/21/2022) |
| 09/21/2022 | 429 | TRIAL DOCUMENT (SEALED) *(PLAINTIFF PROVISUR TECHNOLOGIES, INC.S OBJECTIONS TO DEFENDANTS COUNTER DEPOSITION DESIGNATIONS)* by Provisur Technologies, Inc.. (Martin, Craig) (Entered: 09/21/2022) |
| 09/21/2022 | 430 | TRIAL DOCUMENT (SEALED) *(JOINT DEPOSITION DESIGNATIONS, COUNTER DESIGNATIONS, AND OBJECTIONS)* by Provisur Technologies, Inc.. (Martin, Craig) (Entered: 09/21/2022) |
| 09/23/2022 | 431 | REPLY SUGGESTIONS to motion (Sealed) re 383 MOTION for Order (SEALED) *Motion to Exclude Improper Expert Opinions of Dr. Keith Vorst* filed by Jason Scott Leiker on behalf of Defendants Textor Maschinenbau GmbH, Textor, Inc., Weber Maschinenbau GmbH Breidenbach, Weber Maschinenbau GmbH Neubrandenburg, Weber, Inc.. (Related document(s) 383 ) (Leiker, Jason) (Entered: 09/23/2022) |
| 09/23/2022 | 432 | REPLY SUGGESTIONS to motion (Sealed) re 379 MOTION for Order (SEALED) *Motion to Exclude Expert Opinions of Ms. Julie L. Davis* filed by Jason Scott Leiker on behalf of Defendants Textor Maschinenbau GmbH, Textor, Inc., Weber Maschinenbau GmbH Breidenbach, Weber Maschinenbau GmbH Neubrandenburg, Weber, Inc.. (Related document(s) 379 ) (Leiker, Jason) (Entered: 09/23/2022) |
| 09/23/2022 | 433 | REPLY SUGGESTIONS to motion (Sealed) re 380 MOTION for Order (SEALED) *to Exclude Opinion of Vincent A. Thomas* filed by Jeffrey J. Simon on behalf of Plaintiff Provisur Technologies, Inc.. (Attachments: # 1 Exhibit A, # 2 Exhibit B)(Related document(s) 380 ) (Simon, Jeffrey) (Entered: 09/23/2022) |
| 09/28/2022 | 434 | MOTION to seal document *(MOTION FOR LEAVE TO FILE UNDER SEAL PLAINTIFF PROVISUR TECHNOLOGIES, INC.S SUGGESTIONS IN OPPOSITION TO DEFENDANTS MOTIONS IN LIMINE)* filed by Craig C. Martin on behalf of Provisur Technologies, Inc.. Suggestions in opposition/response due by 10/12/2022 unless otherwise directed by the court. (Martin, Craig) (Entered: 09/28/2022) |
| 09/28/2022 | 435 | Before the Court is Plaintiff's Motion for Leave to File Under Seal its Suggestions in Opposition to Defendants' Motions in Limine. (Doc. #434.) Upon review, the motion is DENIED AS MOOT as unnecessary. The Court's Order dated September 16, 2022 |

| | | |
|---|---|---|
| | | provides that "Plaintiff and Defendants may file their motions in limine, suggestions in opposition, and accompanying exhibits, under seal." (Doc. #406.) Signed on 9/28/2022 by District Judge Stephen R. Bough. This is a TEXT ONLY ENTRY. No document is attached. (Richard, Tracey) (Entered: 09/28/2022) |
| 09/28/2022 | 436 | SUGGESTIONS in opposition (SEALED) re 408 MOTION for Order (SEALED) *Defendants' Motion in Limine (PLAINTIFF PROVISUR TECHNOLOGIES, INC.S SUGGESTIONS IN OPPOSITION TO DEFENDANTS MOTIONS IN LIMINE)* filed by Craig C. Martin on behalf of Plaintiff Provisur Technologies, Inc.. Reply suggestions due by 10/12/2022 unless otherwise directed by the court. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5, # 6 Exhibit 6, # 7 Exhibit 7, # 8 Exhibit 8, # 9 Exhibit 9, # 10 Exhibit 10, # 11 Exhibit 11, # 12 Exhibit 12, # 13 Exhibit 13 (Part 1), # 14 Exhibit 13 (Part 2), # 15 Exhibit 13 (Part 3), # 16 Exhibit 14)(Related document(s) 408 ) (Martin, Craig) (Entered: 09/28/2022) |
| 09/28/2022 | 437 | SUGGESTIONS in opposition (SEALED) re 419 MOTION for Order (SEALED) *(PLAINTIFF PROVISUR TECHNOLOGIES, INC.'S MOTIONS IN LIMINE)* filed by Jason Scott Leiker on behalf of Defendants Textor Maschinenbau GmbH, Textor, Inc., Weber Maschinenbau GmbH Breidenbach, Weber Maschinenbau GmbH Neubrandenburg, Weber, Inc.. Reply suggestions due by 10/12/2022 unless otherwise directed by the court. (Attachments: # 1 Exhibit, # 2 Exhibit, # 3 Exhibit, # 4 Exhibit, # 5 Exhibit, # 6 Exhibit, # 7 Exhibit)(Related document(s) 419 ) (Leiker, Jason) (Entered: 09/28/2022) |
| 09/28/2022 | 438 | STIPULATION *(JOINT STIPULATION REGARDING TRIAL LOGISTICS)* by Provisur Technologies, Inc.. (Martin, Craig) (Entered: 09/28/2022) |
| 09/28/2022 | 439 | STIPULATION *(JOINT STIPULATION REGARDING EVIDENCE)* by Provisur Technologies, Inc.. (Martin, Craig) (Entered: 09/28/2022) |
| 09/30/2022 | 440 | Minute Entry. Proceedings held before District Judge Stephen R. Bough: FINAL PRETRIAL CONFERENCE held on 9/30/2022. Order to be entered. Time in court: 9:00 a.m. to 10:43 a.m. To order a transcript of this hearing please contact Gayle Wambolt, 816-512-5641, gayle_wambolt@mow.uscourts.gov. This is a TEXT ONLY ENTRY. No document is attached. (Richard, Tracey) (Entered: 09/30/2022) |
| 09/30/2022 | 441 | ORDER granting in part and denying in part 408 Sealed Motion.; granting in part and denying in part 419 Sealed Motion.; denying 379 Sealed Motion.; denying 380 Sealed Motion.; denying 383 Sealed Motion. Signed on 9/30/2022 by District Judge Stephen R. Bough. (Richard, Tracey) (Entered: 09/30/2022) |
| 10/05/2022 | 442 | Motion to allow Matt D. Basil to appear pro hac vice (Pro Hac fee $100 receipt number AMOWDC-8136047) filed by Taylor Brooke Concannon Hausmann on behalf of Provisur Technologies, Inc.. (Concannon Hausmann, Taylor) (Entered: 10/05/2022) |
| 10/05/2022 | 443 | ORDER granting 442 motion to appear pro hac vice entered by Clerk of Court. Attorney Matt D. Basil for Provisur Technologies, Inc. allowed to appear pro hac vice. This entry will serve as authorization for the pro hac participation by the attorney.<br><br>Western District of Missouri Local Rule 5.1 requires documents to be filed electronically. If pro hac vice counsel has not already done so, counsel is directed to immediately register for a WDMO e-filing account for NextGen CM/ECF. This will enable counsel to electronically file documents and receive electronic notification of filings. Register for a WDMO e-filing account at PACER. This is a TEXT ONLY ENTRY. No document is attached. (Warren, Melissa) (Entered: 10/05/2022) |
| 10/05/2022 | 444 | NOTICE OF HEARING - This is the official notice for this hearing. This is a TEXT ONLY ENTRY. No document is attached. Telephone Conference set for 10/6/2022 at |

Appx234

| | | 11:30 AM before District Judge Stephen R. Bough. (Richard, Tracey) (Entered: 10/05/2022) |
|---|---|---|
| 10/05/2022 | 445 | Motion to allow Matthew Zuziak to appear pro hac vice (Pro Hac fee $100 receipt number AMOWDC-8137411) filed by Jason Scott Leiker on behalf of All Defendants. (Leiker, Jason) (Entered: 10/05/2022) |
| 10/06/2022 | 446 | ORDER granting 445 motion to appear pro hac vice entered by Clerk of Court. Attorney Matthew Zuziak for Textor Maschinenbau GmbH, Textor, Inc., Weber Maschinenbau GmbH Breidenbach, Weber Maschinenbau GmbH Neubrandenburg and Weber, Inc. allowed to appear pro hac vice. This entry will serve as authorization for the pro hac participation by the attorney.<br><br>Western District of Missouri Local Rule 5.1 requires documents to be filed electronically. If pro hac vice counsel has not already done so, counsel is directed to immediately register for a WDMO e-filing account for NextGen CM/ECF. This will enable counsel to electronically file documents and receive electronic notification of filings. Register for a WDMO e-filing account at PACER. This is a TEXT ONLY ENTRY. No document is attached. (Berner, Crystal) (Entered: 10/06/2022) |
| 10/06/2022 | 447 | Minute Entry. Proceedings held before District Judge Stephen R. Bough: TELEPHONE CONFERENCE held on 10/6/2022. Order to be entered. Time in court: 11:30 a.m. to 11:45 a.m. To order a transcript of this hearing please contact Gayle Wambolt, 816-512-5641, gayle_wambolt@mow.uscourts.gov. This is a TEXT ONLY ENTRY. No document is attached. (Richard, Tracey) (Entered: 10/06/2022) |
| 10/06/2022 | 448 | On October 6, 2022, the Court presided over a telephone conference with the parties. For the reasons stated on the record, it is hereby ORDERED that: on or before 5:00 p.m. (CST) on Friday, October 7, 2022, Defendants shall provide Plaintiff a list of three (3) supporting associated references (specific as to bates number or otherwise readily identifiable) for each of the nine (9) prior art references relied upon by Defendants. The parties may consult the transcript for further details and/or clarification. Signed on 10/6/2022 by District Judge Stephen R. Bough. This is a TEXT ONLY ENTRY. No document is attached. (Richard, Tracey) (Entered: 10/06/2022) |
| 10/06/2022 | 449 | Joint MOTION to dismiss case *Counterclaims I and IV Without Prejudice* filed by Jason Scott Leiker on behalf of All Defendants. Suggestions in opposition/response due by 10/20/2022 unless otherwise directed by the court. (Leiker, Jason) (Entered: 10/06/2022) |
| 10/06/2022 | 450 | TRIAL BRIEF by Provisur Technologies, Inc.. (Simon, Jeffrey) (Entered: 10/06/2022) |
| 10/07/2022 | 451 | Before the Court is a Joint Stipulation of Dismissal Without Prejudice (Counterclaims I and IX). (Doc. #449.) Upon review, the dismissal is GRANTED. Defendants' Counterclaims I and IX are DISMISSED WITHOUT PREJUDICE. Signed on 10/7/2022 by District Judge Stephen R. Bough. This is a TEXT ONLY ENTRY. No document is attached. (Richard, Tracey) (Entered: 10/07/2022) |
| 10/10/2022 | 452 | ELECTRONIC TRANSCRIPT of Pretrial Conference held September 30, 2022, before Judge Stephen R. Bough. Court Reporter: Gayle Wambolt, 816-512-5641, gayle_wambolt@mow.uscourts.gov. Number of pages: 66. NOTICE RE: REDACTION OF TRANSCRIPTS: Within 7 calendar days of this filing, each party shall inform the Court, by filing a Notice of Redaction, of the parties' intent to redact personal data identifiers from the electronic transcript of the court proceeding. The policy is located on our website at www.mow.uscourts.gov. Please read this policy carefully. **NOTICE: Attorneys must contact the court reporter for copies during this 90 day period.** If necessary, Notice of Intent to Redact is due by 10/17/2022 unless otherwise directed by the court. Release of Transcript Restriction set for 1/9/2023. **NOTICE: Attorneys** |

| | | |
|---|---|---|
| | | **must contact the court reporter for copies during this 90 day period.** |
| | | (Wambolt, Gayle) (Entered: 10/10/2022) |
| 10/10/2022 | [453](#) | ELECTRONIC TRANSCRIPT of Telephone Conference held October 6, 2022, before Judge Stephen R. Bough. Court Reporter: Gayle Wambolt, 816-512-5641, gayle_wambolt@mow.uscourts.gov. Number of pages: 10. NOTICE RE: REDACTION OF TRANSCRIPTS: Within 7 calendar days of this filing, each party shall inform the Court, by filing a Notice of Redaction, of the parties' intent to redact personal data identifiers from the electronic transcript of the court proceeding. The policy is located on our website at www.mow.uscourts.gov. Please read this policy carefully. **NOTICE: Attorneys must contact the court reporter for copies during this 90 day period. If necessary, Notice of Intent to Redact is due by 10/17/2022 unless otherwise directed by the court. Release of Transcript Restriction set for 1/9/2023.** **NOTICE: Attorneys must contact the court reporter for copies during this 90 day period.** |
| | | (Wambolt, Gayle) (Entered: 10/10/2022) |
| 10/14/2022 | [454](#) | Minute Entry. Proceedings held before District Judge Stephen R. Bough: JURY SELECTION held on 10/14/2022. Time in court: 9:00 a.m. to 3:12 p.m. To order a transcript of this hearing please contact Gayle Wambolt, 816-512-5641, gayle_wambolt@mow.uscourts.gov. (Richard, Tracey) (Entered: 10/17/2022) |
| 10/14/2022 | [455](#) | JURY LIST (SEALED). (Richard, Tracey) (Entered: 10/17/2022) |
| 10/17/2022 | [456](#) | Motion to allow Tyler J. Dutton to appear pro hac vice (Pro Hac fee $100 receipt number AMOWDC-8151151) filed by Jason Scott Leiker on behalf of All Defendants. (Leiker, Jason) (Entered: 10/17/2022) |
| 10/17/2022 | [457](#) | Motion to allow Paige Cloud to appear pro hac vice (Pro Hac fee $100 receipt number AMOWDC-8151186) filed by Jason Scott Leiker on behalf of All Defendants. (Leiker, Jason) (Entered: 10/17/2022) |
| 10/17/2022 | [458](#) | Motion to allow Brooke McLain to appear pro hac vice (Pro Hac fee $100 receipt number AMOWDC-8151205) filed by Jason Scott Leiker on behalf of All Defendants. (Leiker, Jason) (Entered: 10/17/2022) |
| 10/17/2022 | [459](#) | Motion to allow Steven Pappas to appear pro hac vice (Pro Hac fee $100 receipt number AMOWDC-8151229) filed by Jason Scott Leiker on behalf of All Defendants. (Leiker, Jason) (Entered: 10/17/2022) |
| 10/17/2022 | 460 | ORDER granting [456](#) , [457](#) , [458](#) , and [459](#) motion to appear pro hac vice entered by Clerk of Court. Attorney Tyler J. Dutton, Paige Cloud, Brooke McLain and Steven Pappas for Textor Maschinenbau GmbH, Textor, Inc., Weber Maschinenbau GmbH Breidenbach, and Weber Maschinenbau GmbH Neubrandenburg allowed to appear pro hac vice. This entry will serve as authorization for the pro hac participation by the attorney. |
| | | Western District of Missouri Local Rule 5.1 requires documents to be filed electronically. If pro hac vice counsel has not already done so, counsel is directed to immediately register for a WDMO e-filing account for NextGen CM/ECF. This will enable counsel to electronically file documents and receive electronic notification of filings. Register for a WDMO e-filing account at [PACER](#). This is a TEXT ONLY ENTRY. No document is attached. (Warren, Melissa) (Entered: 10/17/2022) |
| 10/17/2022 | [461](#) | TRIAL DOCUMENT (SEALED) *Plaintiff Provisur Technologies, Inc.'s Amended Exhibit Index* by Provisur Technologies, Inc.. (Concannon Hausmann, Taylor) (Entered: |

Appx236

| | | 10/17/2022) |
|---|---|---|
| 10/17/2022 | 462 | Minute Entry. Proceedings held before District Judge Stephen R. Bough: JURY TRIAL DAY ONE held on 10/17/2022. Time in court: 8:13 a.m. to 4:47 p.m. To order a transcript of this hearing please contact Gayle Wambolt, 816-512-5641, gayle_wambolt@mow.uscourts.gov. (Richard, Tracey) (Entered: 10/17/2022) |
| 10/18/2022 | 463 | TRIAL DOCUMENT (SEALED) *Plaintiff Provisur Technologies, Inc.'s Second Amended Exhibit Index* by Provisur Technologies, Inc.. (Concannon Hausmann, Taylor) (Entered: 10/18/2022) |
| 10/18/2022 | 464 | Minute Entry. Proceedings held before District Judge Stephen R. Bough: JURY TRIAL DAY TWO held on 10/18/2022. Time in court: 8:10 a.m. to 4:30 p.m. To order a transcript of this hearing please contact Gayle Wambolt, 816-512-5641, gayle_wambolt@mow.uscourts.gov. (Richard, Tracey) (Entered: 10/18/2022) |
| 10/18/2022 | 465 | COURT'S EXHIBIT #1. (Richard, Tracey) (Entered: 10/18/2022) |
| 10/19/2022 | 466 | Minute Entry. Proceedings held before District Judge Stephen R. Bough: JURY TRIAL DAY THREE held on 10/19/2022. Time in court: 8:06 a.m. to 4:48 p.m.. To order a transcript of this hearing please contact Gayle Wambolt, 816-512-5641, gayle_wambolt@mow.uscourts.gov. (Richard, Tracey) (Entered: 10/19/2022) |
| 10/20/2022 | 467 | COURT'S EXHIBIT #2. (Richard, Tracey) (Entered: 10/20/2022) |
| 10/20/2022 | 468 | Minute Entry. Proceedings held before District Judge Stephen R. Bough: JURY TRIAL DAY FOUR held on 10/20/2022. Time in court: 8:32 a.m. to 1:00 p.m. To order a transcript of this hearing please contact Gayle Wambolt, 816-512-5641, gayle_wambolt@mow.uscourts.gov. (Richard, Tracey) (Entered: 10/20/2022) |
| 10/24/2022 | 469 | TRIAL DOCUMENT (SEALED) *Plaintiff Provisur Technologies, Inc.'s Third Amended Exhibit Index* by Provisur Technologies, Inc.. (Concannon Hausmann, Taylor) (Entered: 10/24/2022) |
| 10/24/2022 | 470 | COURT'S EXHIBIT #3. (Richard, Tracey) (Entered: 10/24/2022) |
| 10/24/2022 | 471 | Minute Entry. Proceedings held before District Judge Stephen R. Bough: JURY TRIAL DAY FIVE held on 10/24/2022. Time in court: 8:08 a.m. to 4:47 p.m. To order a transcript of this hearing please contact Gayle Wambolt, 816-512-5641, gayle_wambolt@mow.uscourts.gov. (Richard, Tracey) (Entered: 10/24/2022) |
| 10/25/2022 | 472 | TRIAL DOCUMENT (SEALED) *Plaintiff Provisur Technologies, Inc.s Proffer of Testimony Regarding Defendants' Invocation of Privilege to Prevent Discovery of Relevant Evidence* by Provisur Technologies, Inc.. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2)(Simon, Jeffrey) (Entered: 10/25/2022) |
| 10/25/2022 | 473 | TRIAL DOCUMENT (SEALED) *Plaintiff Provisur Technologies, Inc.'s Motion for Curative Instructions and Other Relief* by Provisur Technologies, Inc.. (Attachments: # 1 Exhibit A - Curative Instructions FILED UNDER SEAL, # 2 Exhibit B - MIL Exhibit 1 FILED UNDER SEAL)(Simon, Jeffrey) (Entered: 10/25/2022) |
| 10/25/2022 | 474 | Minute Entry. Proceedings held before District Judge Stephen R. Bough: JURY TRIAL DAY SIX held on 10/25/2022. Time in court: 8:08 a.m. to 4:47 p.m. To order a transcript of this hearing please contact Gayle Wambolt, 816-512-5641, gayle_wambolt@mow.uscourts.gov. (Richard, Tracey) (Entered: 10/25/2022) |
| 10/25/2022 | 475 | MOTION for judgment as a matter of law filed by Jason Scott Leiker on behalf of All Defendants. Suggestions in opposition/response due by 11/8/2022 unless otherwise directed by the court. (Leiker, Jason) (Entered: 10/25/2022) |

| 10/26/2022 | 476 | Before the Court is Defendants' Rule 50(a) Motion for Judgment as a Matter of Law and Suggestions in Support. (Doc. #475.) For the reasons stated on the record, the motion is DENIED. Signed on 10/26/2022 by District Judge Stephen R. Bough. This is a TEXT ONLY ENTRY. No document is attached. (Richard, Tracey) (Entered: 10/26/2022) |
| --- | --- | --- |
| 10/26/2022 | 477 | Minute Entry. Proceedings held before District Judge Stephen R. Bough: JURY TRIAL DAY SEVEN held on 10/26/2022. Time in court: 8:35 a.m. to 4:53 p.m. To order a transcript of this hearing please contact Gayle Wambolt, 816-512-5641, gayle_wambolt@mow.uscourts.gov. (Richard, Tracey) (Entered: 10/26/2022) |
| 10/27/2022 | 478 | TRIAL DOCUMENT (SEALED) *Plaintiff Provisur Technologies, Inc.'s Fourth Amended Exhibit List* by Provisur Technologies, Inc.. (Concannon Hausmann, Taylor) (Entered: 10/27/2022) |
| 10/27/2022 | 479 | COURT'S EXHIBIT #4. (Richard, Tracey) (Entered: 10/27/2022) |
| 10/27/2022 | 480 | COURT'S EXHIBIT #5. (Richard, Tracey) (Entered: 10/27/2022) |
| 10/27/2022 | 481 | Minute Entry. Proceedings held before District Judge Stephen R. Bough: JURY TRIAL DAY EIGHT held on 10/27/2022. Time in court: 8:08 a.m. to 3:50 p.m.. To order a transcript of this hearing please contact Gayle Wambolt, 816-512-5641, gayle_wambolt@mow.uscourts.gov. (Richard, Tracey) (Entered: 10/27/2022) |
| 10/27/2022 | 482 | MOTION for judgment as a matter of law filed by Jeffrey J. Simon on behalf of Provisur Technologies, Inc.. Suggestions in opposition/response due by 11/10/2022 unless otherwise directed by the court. (Attachments: # 1 Exhibit A - Defendants' Oct 11 Final Narrowed Prior Art List)(Simon, Jeffrey) (Entered: 10/27/2022) |
| 10/28/2022 | 483 | Before the Court is Plaintiff's Rule 50(a) Motion for Judgment as a Matter of Law. (Doc. #482.) For the reasons stated on the record, it is hereby ORDERED that the motion is GRANTED IN PART and DENIED IN PART. The motion is GRANTED insofar as Defendants offered no evidence from which a reasonable jury could conclude that the '436 or '812 patents are invalid under 35 U.S.C. § 112. The motion is DENIED on all other issues. Signed on 10/28/2022 by District Judge Stephen R. Bough. This is a TEXT ONLY ENTRY. No document is attached. (Richard, Tracey) (Entered: 10/28/2022) |
| 10/28/2022 | 484 | Minute Entry. Proceedings held before District Judge Stephen R. Bough: JURY TRIAL DAY NINE completed on 10/28/2022. Time in court: 8:01 a.m. to 2:47 p.m. To order a transcript of this hearing please contact Gayle Wambolt, 816-512-5641, gayle_wambolt@mow.uscourts.gov. (Richard, Tracey) (Entered: 10/28/2022) |
| 10/28/2022 | 485 | JURY INSTRUCTIONS GIVEN. (Richard, Tracey) (Entered: 10/28/2022) |
| 10/28/2022 | 486 | PLAINTIFF'S EXHIBIT INDEX. (Richard, Tracey) (Entered: 10/28/2022) |
| 10/28/2022 | 487 | DEFENDANT'S EXHIBIT INDEX.(Richard, Tracey) (Entered: 10/28/2022) |
| 10/28/2022 | 488 | JURY NOTES. (Richard, Tracey) (Entered: 10/28/2022) |
| 10/28/2022 | 489 | JURY VERDICT. (Richard, Tracey) (Entered: 10/28/2022) |
| 10/28/2022 | 490 | CLERK'S JUDGMENT. (Richard, Tracey) (Entered: 10/28/2022) |
| 11/03/2022 | 491 | MOTION for extension of time *to file post-trial motions for costs and attorneys fees* filed by Taylor Brooke Concannon Hausmann on behalf of Provisur Technologies, Inc.. Suggestions in opposition/response due by 11/17/2022 unless otherwise directed by the court. (Concannon Hausmann, Taylor) (Entered: 11/03/2022) |
| 11/04/2022 | 492 | RESPONSE to motion re 491 MOTION for extension of time *to file post-trial motions for costs and attorneys fees* filed by Jason Scott Leiker on behalf of Defendants Textor |

| | | Maschinenbau GmbH, Textor, Inc., Weber Maschinenbau GmbH Breidenbach, Weber Maschinenbau GmbH Neubrandenburg, Weber, Inc.. Reply suggestions due by 11/18/2022 unless otherwise directed by the court. (Leiker, Jason) (Entered: 11/04/2022) |
|---|---|---|
| 11/04/2022 | 493 | Before the Court is Plaintiff's Motion to Extend Deadline to File Post-Trial Motions for Costs and Attorneys' Fees. (Doc. #491.) For good cause shown, the motion is GRANTED. The deadline for Plaintiff and Defendants to file a verified bill of costs and a motion for attorneys' fees is extended up to and including 21 days after the Court resolves all merits-based post-trial motions. Signed on 11/4/2022 by District Judge Stephen R. Bough. This is a TEXT ONLY ENTRY. No document is attached. (Richard, Tracey) (Entered: 11/04/2022) |
| 11/07/2022 | 494 | Upon review of the Court's upcoming dockets and travel schedule, in addition to two federal holidays in November, it is hereby ORDERED that the parties shall file any merits-based post-trial motion(s) on December 2, 2022. Signed on 11/7/2022 by District Judge Stephen R. Bough. This is a TEXT ONLY ENTRY. No document is attached. (Richard, Tracey) (Entered: 11/07/2022) |
| 11/22/2022 | 495 | Joint MOTION for leave to file *Suggestions in Excess of the Page Limit in Support of Certain Post-Trial Motions* filed by Taylor Brooke Concannon Hausmann on behalf of Provisur Technologies, Inc.. Suggestions in opposition/response due by 12/6/2022 unless otherwise directed by the court. (Concannon Hausmann, Taylor) (Entered: 11/22/2022) |
| 11/22/2022 | 496 | Before the Court is a Joint Motion for Leave to File Suggestions in Excess of the Page Limit in Support of Certain Post-Trial Motions. (Doc. 495 ) Upon review, the motion is GRANTED. The parties may file Suggestions in Support of Provisurs Motion for Willful Infringement Enhanced Damages, Suggestions in Support of Webers Rule 59 Motion for a New Trial, and corresponding opposing suggestions for each motion that exceed the page limit set forth in Local Rule 7.0(d) by up to five pages, for a total of 20 pages. Signed on 11/22/2022 by District Judge Stephen R. Bough. This is a TEXT ONLY ENTRY. No document is attached. (Houston, Kiambu) (Entered: 11/22/2022) |
| 11/25/2022 | 497 | MOTION to alter judgment *(PLAINTIFF PROVISUR TECHNOLOGIES, INC.S MOTION FOR WILLFUL INFRINGEMENT ENHANCED DAMAGES)* filed by Craig C. Martin on behalf of Provisur Technologies, Inc.. Suggestions in opposition/response due by 12/20/2022 unless otherwise directed by the court. (Martin, Craig) Modified on 12/13/2022 to correct the response due date per doc. #516 (Richard, Tracey). (Entered: 11/25/2022) |
| 11/25/2022 | 498 | SUGGESTIONS in support re 497 MOTION to alter judgment *(PLAINTIFF PROVISUR TECHNOLOGIES, INC.S MOTION FOR WILLFUL INFRINGEMENT ENHANCED DAMAGES)* filed by Craig C. Martin on behalf of Plaintiff Provisur Technologies, Inc.. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5, # 6 Exhibit 6, # 7 Exhibit 7, # 8 Exhibit 8, # 9 Exhibit 9, # 10 Exhibit 10, # 11 Exhibit 11, # 12 Exhibit 12, # 13 Exhibit 13, # 14 Exhibit 14, # 15 Exhibit 15, # 16 Exhibit 16, # 17 Exhibit 17, # 18 Exhibit 18, # 19 Exhibit 19, # 20 Exhibit 20, # 21 Exhibit 21, # 22 Exhibit 22, # 23 Exhibit 23, # 24 Exhibit 24, # 25 Exhibit 25, # 26 Exhibit 26, # 27 Exhibit 27, # 28 Exhibit 28, # 29 Exhibit 29, # 30 Exhibit 30, # 31 Exhibit 31, # 32 Exhibit 32, # 33 Exhibit 33, # 34 Exhibit 34, # 35 Exhibit 35, # 36 Exhibit 36, # 37 Exhibit 37, # 38 Exhibit 38, # 39 Exhibit 39, # 40 Exhibit 40, # 41 Exhibit 41, # 42 Exhibit 42)(Related document(s) 497 ) (Martin, Craig) (Entered: 11/25/2022) |
| 11/25/2022 | 499 | MOTION to alter judgment *(PLAINTIFF PROVISUR TECHNOLOGIES, INC.S MOTION FOR SUPPLEMENTAL DAMAGES, PRE- AND POST-JUDGMENT INTEREST, AND AN ONGOING ROYALTY)* filed by Craig C. Martin on behalf of Provisur Technologies, Inc.. Suggestions in opposition/response due by 12/20/2022 |

Appx239

| | | |
|---|---|---|
| | | unless otherwise directed by the court. (Martin, Craig) Modified on 12/13/2022 to correct the response due date per doc. #516 (Richard, Tracey). (Entered: 11/25/2022) |
| 11/25/2022 | 500 | SUGGESTIONS in support re 499 MOTION to alter judgment *(PLAINTIFF PROVISUR TECHNOLOGIES, INC.S MOTION FOR SUPPLEMENTAL DAMAGES, PRE- AND POST-JUDGMENT INTEREST, AND AN ONGOING ROYALTY)* filed by Craig C. Martin on behalf of Plaintiff Provisur Technologies, Inc.. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5, # 6 Exhibit 6)(Related document(s) 499 ) (Martin, Craig) (Entered: 11/25/2022) |
| 11/25/2022 | 501 | MOTION for judgment as a matter of law filed by Jason Scott Leiker on behalf of All Defendants. Suggestions in opposition/response due by 12/20/2022 unless otherwise directed by the court. (Leiker, Jason) Modified on 12/13/2022 to correct the response due date per doc. #516 (Richard, Tracey). (Entered: 11/25/2022) |
| 11/25/2022 | 502 | SUGGESTIONS in support re 501 MOTION for judgment as a matter of law filed by Jason Scott Leiker on behalf of Defendants Textor Maschinenbau GmbH, Textor, Inc., Weber Maschinenbau GmbH Breidenbach, Weber Maschinenbau GmbH Neubrandenburg, Weber, Inc.. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5)(Related document(s) 501 ) (Leiker, Jason) (Entered: 11/25/2022) |
| 11/25/2022 | 503 | MOTION for new trial filed by Jason Scott Leiker on behalf of All Defendants. Suggestions in opposition/response due by 12/20/2022 unless otherwise directed by the court. (Leiker, Jason) Modified on 12/13/2022 to correct the response due date per doc. #516 (Richard, Tracey). (Entered: 11/25/2022) |
| 11/25/2022 | 504 | SUGGESTIONS in support re 503 MOTION for new trial filed by Jason Scott Leiker on behalf of Defendants Textor Maschinenbau GmbH, Textor, Inc., Weber Maschinenbau GmbH Breidenbach, Weber Maschinenbau GmbH Neubrandenburg, Weber, Inc.. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5, # 6 Exhibit 6, # 7 Exhibit 7, # 8 Exhibit 8)(Related document(s) 503 ) (Leiker, Jason) (Entered: 11/25/2022) |
| 11/29/2022 | 505 | ELECTRONIC TRANSCRIPT of Voir Dire held on October 14, 2022, before Judge Stephen R. Bough. Court Reporter: Gayle Wambolt, 816-512-5641, gayle_wambolt@mow.uscourts.gov. Number of pages: 114. The transcript is available for review in the Clerk's Office. Please contact the court reporter listed above for copies. (Wambolt, Gayle) (Entered: 11/29/2022) |
| 11/29/2022 | 506 | ELECTRONIC TRANSCRIPT of Jury Trial - Volume 1 held October 17, 2022, before Judge Stephen R. Bough. Court Reporter: Gayle Wambolt, 816-512-5641, gayle_wambolt@mow.uscourts.gov. Number of pages: 295. NOTICE RE: REDACTION OF TRANSCRIPTS: Within 7 calendar days of this filing, each party shall inform the Court, by filing a Notice of Redaction, of the parties' intent to redact personal data identifiers from the electronic transcript of the court proceeding. The policy is located on our website at www.mow.uscourts.gov. Please read this policy carefully. **NOTICE: Attorneys must contact the court reporter for copies during this 90 day period. If necessary, Notice of Intent to Redact is due by 12/6/2022 unless otherwise directed by the court. Release of Transcript Restriction set for 2/27/2023. NOTICE: Attorneys must contact the court reporter for copies during this 90 day period.**<br><br>(Wambolt, Gayle) (Entered: 11/29/2022) |
| 11/29/2022 | 507 | ELECTRONIC TRANSCRIPT of Jury Trial - Volume 2 held October 18, 2022, before Judge Stephen R. Bough. Court Reporter: Gayle Wambolt, 816-512-5641, gayle_wambolt@mow.uscourts.gov. Number of pages: 287. NOTICE RE: REDACTION |

Appx240

| | | |
|---|---|---|
| | | OF TRANSCRIPTS: Within 7 calendar days of this filing, each party shall inform the Court, by filing a Notice of Redaction, of the parties' intent to redact personal data identifiers from the electronic transcript of the court proceeding. The policy is located on our website at www.mow.uscourts.gov. Please read this policy carefully. **NOTICE: Attorneys must contact the court reporter for copies during this 90 day period.** If **necessary, Notice of Intent to Redact is due by 12/6/2022 unless otherwise directed by the court. Release of Transcript Restriction set for 2/27/2023.** **NOTICE: Attorneys must contact the court reporter for copies during this 90 day period.**<br><br>(Wambolt, Gayle) (Entered: 11/29/2022) |
| 11/29/2022 | [508](#) | ELECTRONIC TRANSCRIPT of Jury Trial- Volume 3 held October 19, 2022, before Judge Stephen R. Bough. Court Reporter: Gayle Wambolt, 816-512-5641, gayle_wambolt@mow.uscourts.gov. Number of pages: 252. NOTICE RE: REDACTION OF TRANSCRIPTS: Within 7 calendar days of this filing, each party shall inform the Court, by filing a Notice of Redaction, of the parties' intent to redact personal data identifiers from the electronic transcript of the court proceeding. The policy is located on our website at www.mow.uscourts.gov. Please read this policy carefully. **NOTICE: Attorneys must contact the court reporter for copies during this 90 day period.** If **necessary, Notice of Intent to Redact is due by 12/6/2022 unless otherwise directed by the court. Release of Transcript Restriction set for 2/27/2023.** **NOTICE: Attorneys must contact the court reporter for copies during this 90 day period.**<br><br>(Wambolt, Gayle) (Entered: 11/29/2022) |
| 11/29/2022 | [509](#) | ELECTRONIC TRANSCRIPT of Jury Trial - Volume 4 held October 20, 2022, before Judge Stephen R. Bough. Court Reporter: Gayle Wambolt, 816-512-5641, gayle_wambolt@mow.uscourts.gov. Number of pages: 144. NOTICE RE: REDACTION OF TRANSCRIPTS: Within 7 calendar days of this filing, each party shall inform the Court, by filing a Notice of Redaction, of the parties' intent to redact personal data identifiers from the electronic transcript of the court proceeding. The policy is located on our website at www.mow.uscourts.gov. Please read this policy carefully. **NOTICE: Attorneys must contact the court reporter for copies during this 90 day period.** If **necessary, Notice of Intent to Redact is due by 12/6/2022 unless otherwise directed by the court. Release of Transcript Restriction set for 2/27/2023.** **NOTICE: Attorneys must contact the court reporter for copies during this 90 day period.**<br><br>(Wambolt, Gayle) (Entered: 11/29/2022) |
| 11/29/2022 | [510](#) | ELECTRONIC TRANSCRIPT of Jury Trial - Volume 5 held October 24, 2022, before Judge Stephen R. Bough. Court Reporter: Gayle Wambolt, 816-512-5641, gayle_wambolt@mow.uscourts.gov. Number of pages: 219. NOTICE RE: REDACTION OF TRANSCRIPTS: Within 7 calendar days of this filing, each party shall inform the Court, by filing a Notice of Redaction, of the parties' intent to redact personal data identifiers from the electronic transcript of the court proceeding. The policy is located on our website at www.mow.uscourts.gov. Please read this policy carefully. **NOTICE: Attorneys must contact the court reporter for copies during this 90 day period.** If **necessary, Notice of Intent to Redact is due by 12/6/2022 unless otherwise directed by the court. Release of Transcript Restriction set for 2/27/2023.** **NOTICE: Attorneys must contact the court reporter for copies during this 90 day period.**<br><br>(Wambolt, Gayle) (Entered: 11/29/2022) |
| 11/29/2022 | [511](#) | ELECTRONIC TRANSCRIPT of Jury Trial - Volume 6 held October 25, 2022, before Judge Stephen R. Bough. Court Reporter: Gayle Wambolt, 816-512-5641, gayle_wambolt@mow.uscourts.gov. Number of pages: 282. NOTICE RE: REDACTION |

**Appx241**

| | | |
|---|---|---|
| | | OF TRANSCRIPTS: Within 7 calendar days of this filing, each party shall inform the Court, by filing a Notice of Redaction, of the parties' intent to redact personal data identifiers from the electronic transcript of the court proceeding. The policy is located on our website at www.mow.uscourts.gov. Please read this policy carefully. **NOTICE: Attorneys must contact the court reporter for copies during this 90 day period.** If necessary, Notice of Intent to Redact is due by 12/6/2022 unless otherwise directed by the court. Release of Transcript Restriction set for 2/27/2023. **NOTICE: Attorneys must contact the court reporter for copies during this 90 day period.** (Wambolt, Gayle) (Entered: 11/29/2022) |
| 11/29/2022 | [512](#) | ELECTRONIC TRANSCRIPT of Jury Trial - Volume 7 held October 26, 2022, before Judge Stephen R. Bough. Court Reporter: Gayle Wambolt, 816-512-5641, gayle_wambolt@mow.uscourts.gov. Number of pages: 276. NOTICE RE: REDACTION OF TRANSCRIPTS: Within 7 calendar days of this filing, each party shall inform the Court, by filing a Notice of Redaction, of the parties' intent to redact personal data identifiers from the electronic transcript of the court proceeding. The policy is located on our website at www.mow.uscourts.gov. Please read this policy carefully. **NOTICE: Attorneys must contact the court reporter for copies during this 90 day period.** If necessary, Notice of Intent to Redact is due by 12/6/2022 unless otherwise directed by the court. Release of Transcript Restriction set for 2/27/2023. **NOTICE: Attorneys must contact the court reporter for copies during this 90 day period.** (Wambolt, Gayle) (Entered: 11/29/2022) |
| 11/29/2022 | [513](#) | ELECTRONIC TRANSCRIPT of Jury Trial - Volume 8 held October 27, 2022, before Judge Stephen R. Bough. Court Reporter: Gayle Wambolt, 816-512-5641, gayle_wambolt@mow.uscourts.gov. Number of pages: 276. NOTICE RE: REDACTION OF TRANSCRIPTS: Within 7 calendar days of this filing, each party shall inform the Court, by filing a Notice of Redaction, of the parties' intent to redact personal data identifiers from the electronic transcript of the court proceeding. The policy is located on our website at www.mow.uscourts.gov. Please read this policy carefully. **NOTICE: Attorneys must contact the court reporter for copies during this 90 day period.** If necessary, Notice of Intent to Redact is due by 12/6/2022 unless otherwise directed by the court. Release of Transcript Restriction set for 2/27/2023. **NOTICE: Attorneys must contact the court reporter for copies during this 90 day period.** (Wambolt, Gayle) (Entered: 11/29/2022) |
| 11/29/2022 | [514](#) | ELECTRONIC TRANSCRIPT of Jury Trial - Volume 9 held October 28, 2022, before Judge Stephen R. Bough. Court Reporter: Gayle Wambolt, 816-512-5641, gayle_wambolt@mow.uscourts.gov. Number of pages: 88. NOTICE RE: REDACTION OF TRANSCRIPTS: Within 7 calendar days of this filing, each party shall inform the Court, by filing a Notice of Redaction, of the parties' intent to redact personal data identifiers from the electronic transcript of the court proceeding. The policy is located on our website at www.mow.uscourts.gov. Please read this policy carefully. **NOTICE: Attorneys must contact the court reporter for copies during this 90 day period.** If necessary, Notice of Intent to Redact is due by 12/6/2022 unless otherwise directed by the court. Release of Transcript Restriction set for 2/27/2023. **NOTICE: Attorneys must contact the court reporter for copies during this 90 day period.** (Wambolt, Gayle) (Entered: 11/29/2022) |
| 11/30/2022 | [515](#) | Joint MOTION for extension of time *Joint Motion to Extend the Briefing Deadlines for the Parties' Merits-Based Post-Trial Motions* filed by Taylor Brooke Concannon Hausmann on behalf of Provisur Technologies, Inc.. Suggestions in opposition/response |

| | | |
|---|---|---|
| | | due by 12/14/2022 unless otherwise directed by the court. (Concannon Hausmann, Taylor) (Entered: 11/30/2022) |
| 11/30/2022 | 516 | Before the Court is the parties' Joint Motion to Extend the Briefing Deadlines for the Parties' Merits-Based Post-Trial Motions. (Doc. #515.) For good cause shown, the motion is GRANTED. The briefing schedule for the parties' merits-based post-trial motions is extended such that all Suggestions in Opposition to the parties' merits-based post-trial motions are due on or before December 20, 2022, and all Reply Suggestions are due on or before January 6, 2023. Signed on 11/30/2022 by District Judge Stephen R. Bough. This is a TEXT ONLY ENTRY. No document is attached. (Richard, Tracey) (Entered: 11/30/2022) |
| 12/15/2022 | 517 | MOTION to seal document filed by Jason Scott Leiker on behalf of All Defendants. Suggestions in opposition/response due by 12/29/2022 unless otherwise directed by the court. (Leiker, Jason) (Entered: 12/15/2022) |
| 12/15/2022 | 518 | MOTION for Order (SEALED) filed by Jason Scott Leiker on behalf of All Defendants. Suggestions in opposition/response due by 12/29/2022 unless otherwise directed by the court. (Leiker, Jason) (Entered: 12/15/2022) |
| 12/15/2022 | 519 | SUGGESTIONS in support (SEALED) re 518 MOTION for Order (SEALED) filed by Jason Scott Leiker on behalf of Defendants Textor Maschinenbau GmbH, Textor, Inc., Weber Maschinenbau GmbH Breidenbach, Weber Maschinenbau GmbH Neubrandenburg, Weber, Inc.. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F, # 7 Exhibit G)(Related document(s) 518 ) (Leiker, Jason) (Entered: 12/15/2022) |
| 12/15/2022 | 520 | MOTION to expedite filed by Jason Scott Leiker on behalf of All Defendants. Suggestions in opposition/response due by 12/29/2022 unless otherwise directed by the court. (Leiker, Jason) (Entered: 12/15/2022) |
| 12/15/2022 | 521 | Before the Court is "Defendants' Motion for Leave to File Under Seal Defendants' Motion for Sanctions Related to Provisur's Breach of the Protective Orders and Suggestions in Support of Defendants' Motion for Sanctions Related to Provisur's Breach of the Protective Orders and Suggestions in Support." (Doc. #517.) Upon review, the motion is GRANTED. Defendants may file under seal Defendants' Motion for Sanctions Related to Provisur's Breach of the Protective Orders and Suggestions in Support of Defendants' Motion for Sanctions Related to Provisur's Breach of the Protective Orders, and any corresponding exhibits. Plaintiff and Defendants may file under seal all briefs and exhibits regarding the motion for sanctions without further order of the Court. Signed on 12/15/2022 by District Judge Stephen R. Bough. This is a TEXT ONLY ENTRY. No document is attached. (Richard, Tracey) (Entered: 12/15/2022) |
| 12/20/2022 | 522 | MOTION for Order (SEALED) filed by Jason Scott Leiker on behalf of All Defendants. Suggestions in opposition/response due by 1/3/2023 unless otherwise directed by the court. (Leiker, Jason) Modified on 12/21/2022 to remove document and deadline from formal record. Counsel refiled the pleading using the correct filing event in docket entry 523. (Kern, Kendra) (Entered: 12/20/2022) |
| 12/20/2022 | 523 | MOTION to seal case , MOTION to seal document filed by Jason Scott Leiker on behalf of All Defendants. Suggestions in opposition/response due by 1/3/2023 unless otherwise directed by the court. (Leiker, Jason) (Entered: 12/20/2022) |
| 12/20/2022 | 524 | SUGGESTIONS in opposition re 497 MOTION to alter judgment *(PLAINTIFF PROVISUR TECHNOLOGIES, INC.S MOTION FOR WILLFUL INFRINGEMENT ENHANCED DAMAGES)* filed by Jason Scott Leiker on behalf of Defendants Textor Maschinenbau GmbH, Textor, Inc., Weber Maschinenbau GmbH Breidenbach, Weber |

| | | Maschinenbau GmbH Neubrandenburg, Weber, Inc.. Reply suggestions due by 1/3/2023 unless otherwise directed by the court. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4)(Related document(s) 497 ) (Leiker, Jason) (Attachment 2 replaced on 12/21/2022) (Richard, Tracey). (Attachment 3 replaced on 12/21/2022) (Richard, Tracey). (Attachment 4 replaced on 12/21/2022) (Richard, Tracey). (Entered: 12/20/2022) |
|---|---|---|
| 12/20/2022 | 525 | Before the Court is Defendants Motion for Leave to File Under Seal. (Doc. 522 ) Upon review, the motion is GRANTED. Signed on 12/20/2022 by District Judge Stephen R. Bough. This is a TEXT ONLY ENTRY. No document is attached. (Houston, Kiambu) (Entered: 12/20/2022) |
| 12/20/2022 | 526 | Before the Court is Defendants' Motion for Leave to File Under Seal Certain Exhibits. (Doc. #523.) For good cause shown, the motion is GRANTED. Signed on 12/20/2022 by District Judge Stephen R. Bough. This is a TEXT ONLY ENTRY. No document is attached. (Richard, Tracey) (Entered: 12/20/2022) |
| 12/20/2022 | 527 | SUGGESTIONS in opposition re 499 MOTION to alter judgment *(PLAINTIFF PROVISUR TECHNOLOGIES, INC.S MOTION FOR SUPPLEMENTAL DAMAGES, PRE- AND POST-JUDGMENT INTEREST, AND AN ONGOING ROYALTY)* filed by Jason Scott Leiker on behalf of Defendants Textor Maschinenbau GmbH, Textor, Inc., Weber Maschinenbau GmbH Breidenbach, Weber Maschinenbau GmbH Neubrandenburg, Weber, Inc.. Reply suggestions due by 1/3/2023 unless otherwise directed by the court. (Attachments: # 1 Exhibit 1)(Related document(s) 499 ) (Leiker, Jason) (Entered: 12/20/2022) |
| 12/20/2022 | 528 | SUGGESTIONS in opposition re 503 MOTION for new trial *(PLAINTIFF PROVISUR TECHNOLOGIES, INC.S SUGGESTIONS IN OPPOSITION TO DEFENDANTS RULE 59 MOTION FOR A NEW TRIAL)* filed by Craig C. Martin on behalf of Plaintiff Provisur Technologies, Inc.. Reply suggestions due by 1/3/2023 unless otherwise directed by the court. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5 Part 1, # 6 Exhibit 5 Part 2, # 7 Exhibit 5 Part 3, # 8 Exhibit 5 Part 4, # 9 Exhibit 5 Part 5, # 10 Exhibit 5 Part 6, # 11 Exhibit 5 Part 7, # 12 Exhibit 5 Part 8, # 13 Exhibit 5 Part 9, # 14 Exhibit 5 Part 10, # 15 Exhibit 5 Part 11, # 16 Exhibit 5 Part 12, # 17 Exhibit 5 Part 13, # 18 Exhibit 5 Part 14, # 19 Exhibit 5 Part 15, # 20 Exhibit 5 Part 16, # 21 Exhibit 5 Part 17, # 22 Exhibit 5 Part 18, # 23 Exhibit 5 Part 19, # 24 Exhibit 5 Part 20, # 25 Exhibit 5 Part 21, # 26 Exhibit 5 Part 22, # 27 Exhibit 5 Part 23, # 28 Exhibit 5 Part 24, # 29 Exhibit 5 Part 25, # 30 Exhibit 5 Part 26, # 31 Exhibit 5 Part 27, # 32 Exhibit 5 Part 28, # 33 Exhibit 5 Part 29, # 34 Exhibit 5 Part 30, # 35 Exhibit 5 Part 31, # 36 Exhibit 5 Part 32, # 37 Exhibit 5 Part 33, # 38 Exhibit 5 Part 34, # 39 Exhibit 5 Part 35, # 40 Exhibit 5 Part 36, # 41 Exhibit 5 Part 37, # 42 Exhibit 5 Part 38, # 43 Exhibit 5 Part 39, # 44 Exhibit 5 Part 40, # 45 Exhibit 5 Part 41, # 46 Exhibit 5 Part 42, # 47 Exhibit 5 Part 43, # 48 Exhibit 5 Part 44, # 49 Exhibit 5 Part 45, # 50 Exhibit 5 Part 46, # 51 Exhibit 5 Part 47, # 52 Exhibit 5 Part 48, # 53 Exhibit 5 Part 49, # 54 Exhibit 5 Part 50, # 55 Exhibit 5 Part 51, # 56 Exhibit 5 Part 52, # 57 Exhibit 5 Part 53, # 58 Exhibit 5 Part 54, # 59 Exhibit 5 Part 55, # 60 Exhibit 5 Part 56, # 61 Exhibit 5 Part 57, # 62 Exhibit 5 Part 58, # 63 Exhibit 5 Part 59, # 64 Exhibit 5 Part 60, # 65 Exhibit 5 Part 61, # 66 Exhibit 5 Part 62, # 67 Exhibit 5 Part 63, # 68 Exhibit 5 Part 64, # 69 Exhibit 5 Part 65, # 70 Exhibit 5 Part 66, # 71 Exhibit 5 Part 67, # 72 Exhibit 5 Part 68, # 73 Exhibit 5 Part 69, # 74 Exhibit 5 Part 70, # 75 Exhibit 5 Part 71, # 76 Exhibit 5 Part 72, # 77 Exhibit 5 Part 73, # 78 Exhibit 5 Part 74, # 79 Exhibit 5 Part 75, # 80 Exhibit 5 Part 76, # 81 Exhibit 5 Part 77, # 82 Exhibit 5 Part 78, # 83 Exhibit 5 Part 79, # 84 Exhibit 5 Part 80, # 85 Exhibit 5 Part 81, # 86 Exhibit 5 Part 82, # 87 Exhibit 5 Part 83, # 88 Exhibit 5 Part 84, # 89 Exhibit 5 Part 85, # 90 Exhibit 5 Part 86, # 91 Exhibit 5 Part 87, # 92 Exhibit 5 Part 88, # 93 Exhibit 5 Part 89, # 94 Exhibit 5 Part 90, # 95 Exhibit 5 Part 91, # 96 Exhibit 5 Part 92, # 97 Exhibit 5 Part 93, # 98 Exhibit 5 Part 94, # 99 Exhibit 5 Part 95, # 100 |

Appx244

| | | |
|---|---|---|
| | | Exhibit 5 Part 96, # [101](#) Exhibit 5 Part 97, # [102](#) Exhibit 5 Part 98, # [103](#) Exhibit 5 Part 99, # [104](#) Exhibit 5 Part 100, # [105](#) Exhibit 5 Part 101, # [106](#) Exhibit 5 Part 102, # [107](#) Exhibit 5 Part 103, # [108](#) Exhibit 6, # [109](#) Exhibit 7, # [110](#) Exhibit 8, # [111](#) Exhibit 9, # [112](#) Exhibit 10, # [113](#) Exhibit 11, # [114](#) Exhibit 12)(Related document(s) [503](#) ) (Martin, Craig) (Entered: 12/20/2022) |
| 12/20/2022 | [529](#) | SUGGESTIONS in opposition re [501](#) MOTION for judgment as a matter of law filed by Sara T Horton on behalf of Plaintiff Provisur Technologies, Inc.. Reply suggestions due by 1/3/2023 unless otherwise directed by the court. (Attachments: # [1](#) Exhibit 1, # [2](#) Exhibit 2, # [3](#) Exhibit 3, # [4](#) Exhibit 4, # [5](#) Exhibit 5, # [6](#) Exhibit 6 part 1 of 2, # [7](#) Exhibit 6 part 2 of 2, # [8](#) Exhibit 7 part 1 of 2, # [9](#) Exhibit 7 part 2 of 2, # [10](#) Exhibit 8 part 1 of 2, # [11](#) Exhibit 8 part 2 of 2, # [12](#) Exhibit 9 part 1 of 3, # [13](#) Exhibit 9 part 2 of 3, # [14](#) Exhibit 9 part 3 of 3, # [15](#) Exhibit 10, # [16](#) Exhibit 11, # [17](#) Exhibit 12, # [18](#) Exhibit 13, # [19](#) Exhibit 14, # [20](#) Exhibit 15, # [21](#) Exhibit 16, # [22](#) Exhibit 17, # [23](#) Exhibit 18, # [24](#) Exhibit 19, # [25](#) Exhibit 20, # [26](#) Exhibit 21, # [27](#) Exhibit 22 part 1 of 4, # [28](#) Exhibit 22 part 2 of 4, # [29](#) Exhibit 22 part 3 of 4, # [30](#) Exhibit 22 part 4 of 4, # [31](#) Exhibit 23 part 1 of 4, # [32](#) Exhibit 23 part 2 of 4, # [33](#) Exhibit 23 part 3 of 4, # [34](#) Exhibit 23 part 4 of 4, # [35](#) Exhibit 24, # [36](#) Exhibit 25, # [37](#) Exhibit 26, # [38](#) Exhibit 27 part 1 of 2, # [39](#) Exhibit 27 part 2 of 2, # [40](#) Exhibit 28, # [41](#) Exhibit 29, # [42](#) Exhibit 30, # [43](#) Exhibit 31, # [44](#) Exhibit 32, # [45](#) Exhibit 33, # [46](#) Exhibit 34, # [47](#) Exhibit 35, # [48](#) Exhibit 36, # [49](#) Exhibit 37, # [50](#) Exhibit 38, # [51](#) Exhibit 39, # [52](#) Exhibit 40, # [53](#) Exhibit 41, # [54](#) Exhibit 42, # [55](#) Exhibit 43, # [56](#) Exhibit 44, # [57](#) Exhibit 45, # [58](#) Exhibit 46, # [59](#) Exhibit 47, # [60](#) Exhibit 48, # [61](#) Exhibit 49, # [62](#) Exhibit 50, # [63](#) Exhibit 51, # [64](#) Exhibit 52)(Related document(s) [501](#) ) (Horton, Sara) (Entered: 12/20/2022) |
| 12/29/2022 | [530](#) | SUGGESTIONS in opposition (SEALED) re [518](#) MOTION for Order (SEALED) *(PLAINTIFF PROVISUR TECHNOLOGIES, INC.S SUGGESTIONS IN OPPOSITION TO DEFENDANTS MOTION FOR SANCTIONS)* filed by Craig C. Martin on behalf of Plaintiff Provisur Technologies, Inc.. Reply suggestions due by 1/12/2023 unless otherwise directed by the court. (Attachments: # [1](#) Exhibit 1, # [2](#) Exhibit 2, # [3](#) Exhibit 3, # [4](#) Exhibit 4, # [5](#) Exhibit 5, # [6](#) Exhibit 6, # [7](#) Exhibit 7)(Related document(s) [518](#) ) (Martin, Craig) (Main Document 530 replaced on 1/3/2023 at the request of filer; NEF regenerated) (Ellis, Lindsey). (Entered: 12/29/2022) |
| 01/03/2023 | [531](#) | REPLY SUGGESTIONS to motion (Sealed) re [518](#) MOTION for Order (SEALED) filed by Jason Scott Leiker on behalf of Defendants Textor Maschinenbau GmbH, Textor, Inc., Weber Maschinenbau GmbH Breidenbach, Weber Maschinenbau GmbH Neubrandenburg, Weber, Inc.. (Attachments: # [1](#) Exhibit 1, # [2](#) Exhibit 2, # [3](#) Exhibit 3) (Related document(s) [518](#) ) (Leiker, Jason) (Entered: 01/03/2023) |
| 01/03/2023 | 532 | Before the Court is Defendants Motion for Sanctions Related to Provisurs Breach of the Protective Orders. (Doc. [518](#) ) Upon review, the Court finds that Plaintiff did not violate the Courts Protective Order. The Court agrees with Plaintiff that the Protective Order allows the parties to use documents for purposes of prosecuting or defending this lawsuit and in related lawsuits between the parties to this litigation. The purpose of the PTAB IPR trial filed by Defendants against the same asserted patent in the Provisur III case is to defend against the case. The IPR is a related lawsuit. Provisur is allowed to use designated documents to defend Provisurs patents in this case and in the related PTAB IPR trial. (Doc. [530](#) , pp. 4-5.) Accordingly, it is hereby ORDERED that: (1) Defendants Motion for Sanctions (Doc. [518](#) ) is DENIED, and (2) Defendants Motion for Order Directing Expedited Briefing on Motion for Sanctions (Doc. [520](#) ) is DENIED AS MOOT. Signed on 1/3/2023 by District Judge Stephen R. Bough. <span style="color:red">This is a TEXT ONLY ENTRY. No document is attached.</span> (Houston, Kiambu) (Entered: 01/03/2023) |
| 01/06/2023 | [533](#) | REPLY SUGGESTIONS to motion re [499](#) MOTION to alter judgment *(PLAINTIFF PROVISUR TECHNOLOGIES, INC.S MOTION FOR SUPPLEMENTAL DAMAGES,* |

| | | |
|---|---|---|
| | | *PRE- AND POST-JUDGMENT INTEREST, AND AN ONGOING ROYALTY) (PLAINTIFF PROVISUR TECHNOLOGIES, INC.S REPLY SUGGESTIONS IN SUPPORT OF ITS MOTION FOR SUPPLEMENTAL DAMAGES, PRE- AND POST-JUDGMENT INTEREST, AND AN ONGOING ROYALTY)* filed by Craig C. Martin on behalf of Plaintiff Provisur Technologies, Inc.. (Attachments: # 1 Exhibit 1)(Related document(s) 499 ) (Martin, Craig) (Entered: 01/06/2023) |
| 01/06/2023 | 534 | REPLY SUGGESTIONS to motion re 497 MOTION to alter judgment *(PLAINTIFF PROVISUR TECHNOLOGIES, INC.S MOTION FOR WILLFUL INFRINGEMENT ENHANCED DAMAGES) (PLAINTIFF PROVISUR TECHNOLOGIES, INC.S REPLY SUGGESTIONS IN SUPPORT OF MOTION FOR WILLFUL INFRINGEMENT ENHANCED DAMAGES)* filed by Craig C. Martin on behalf of Plaintiff Provisur Technologies, Inc.. (Related document(s) 497 ) (Martin, Craig) (Entered: 01/06/2023) |
| 01/06/2023 | 535 | REPLY SUGGESTIONS to motion re 501 MOTION for judgment as a matter of law filed by Jason Scott Leiker on behalf of Defendants Textor Maschinenbau GmbH, Textor, Inc., Weber Maschinenbau GmbH Breidenbach, Weber Maschinenbau GmbH Neubrandenburg, Weber, Inc.. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C) (Related document(s) 501 ) (Leiker, Jason) (Entered: 01/06/2023) |
| 01/06/2023 | 536 | REPLY SUGGESTIONS to motion re 503 MOTION for new trial filed by Jason Scott Leiker on behalf of Defendants Textor Maschinenbau GmbH, Textor, Inc., Weber Maschinenbau GmbH Breidenbach, Weber Maschinenbau GmbH Neubrandenburg, Weber, Inc.. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C)(Related document(s) 503 ) (Leiker, Jason) (Entered: 01/06/2023) |
| 01/09/2023 | 537 | ORDER denying 501 motion for judgment as a matter of law; denying 503 motion for new trial. Signed on 1/9/2023 by District Judge Stephen R. Bough. (Richard, Tracey) (Entered: 01/09/2023) |
| 01/09/2023 | 538 | It is hereby ORDERED that Plaintiff's Motion for Willful Infringement Enhanced Damages (Doc. #497) is GRANTED. Plaintiff is awarded enhanced damages of double the jury's verdict on the '436, '812, and '936 patents. Signed on 1/9/2023 by District Judge Stephen R. Bough. (Richard, Tracey) (Entered: 01/09/2023) |
| 01/09/2023 | 539 | ORDER granting in part and denying in part 499 Motion for Supplemental Damages, Pre- and Post-Judgment Interest, and an Ongoing Royalty. Signed on 1/9/2023 by District Judge Stephen R. Bough. (Richard, Tracey) (Entered: 01/09/2023) |
| 01/19/2023 | 540 | NOTICE OF APPEAL by Textor Maschinenbau GmbH, Textor, Inc., Weber Maschinenbau GmbH Breidenbach, Weber Maschinenbau GmbH Neubrandenburg, Weber, Inc.. Filing fee $ 505, receipt number AMOWDC-8286319. (Leiker, Jason) (Entered: 01/19/2023) |
| 01/20/2023 | 541 | TRANSMISSION of Notice of Appeal and docket sheet to US Court of Appeals, Federal Circuit, via e-mail. Related document 540 Notice of Appeal. (Terry, Jason) (Entered: 01/20/2023) |
| 01/20/2023 | 542 | ***Remark - Since case 20-cv-06069 was consolidated with 19-cv-06021 (lead case), this appeal is transmitted in the lead case 19-cv-06021. (Matthes Mitra, Renea) (Entered: 01/20/2023) |
| 01/30/2023 | 543 | USCA Case Number from the Federal Circuit Court of Appeals is 23-1438 for 540 Notice of Appeal filed by Textor, Inc., Weber Maschinenbau GmbH Breidenbach, Weber, Inc., Textor Maschinenbau GmbH, Weber Maschinenbau GmbH Neubrandenburg. (Terry, Jason) (Entered: 01/30/2023) |

| 01/30/2023 | 544 | MOTION for attorney fees *(MOTION FOR REASONABLE ATTORNEY FEES PURSUANT TO 35 U.S.C. § 285)* filed by Craig C. Martin on behalf of Provisur Technologies, Inc.. Suggestions in opposition/response due by 2/13/2023 unless otherwise directed by the court. (Martin, Craig) (Entered: 01/30/2023) |
|---|---|---|
| 01/30/2023 | 545 | SUGGESTIONS in support re 544 MOTION for attorney fees *(MOTION FOR REASONABLE ATTORNEY FEES PURSUANT TO 35 U.S.C. § 285)* filed by Craig C. Martin on behalf of Plaintiff Provisur Technologies, Inc.. (Related document(s) 544 ) (Martin, Craig) (Entered: 01/30/2023) |
| 01/30/2023 | 546 | PROPOSED BILL OF COSTS by Provisur Technologies, Inc..Objections to Bill of Costs due by 2/13/2023 unless otherwise directed by the court. (Martin, Craig) (Entered: 01/30/2023) |
| 01/30/2023 | 547 | NOTICE of filing *(PLAINTIFF PROVISUR TECHNOLOGIES, INC.'S SUGGESTIONS IN SUPPORT OF ITS BILL OF COSTS)* by Provisur Technologies, Inc. re 546 Proposed Bill of Costs (Martin, Craig) (Entered: 01/30/2023) |
| 01/30/2023 | 548 | AFFIDAVIT re 546 Proposed Bill of Costs, 547 Notice of filing *DECLARATION OF MICHAEL G. BABBITT REGARDING BILL OF COSTS)* by Provisur Technologies, Inc.. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5, # 6 Exhibit 6, # 7 Exhibit 7, # 8 Exhibit 8, # 9 Exhibit 9, # 10 Exhibit 10, # 11 Exhibit 11, # 12 Exhibit 12)(Related document(s) 546 , 547 ) (Martin, Craig) (Entered: 01/30/2023) |
| 01/30/2023 | 549 | AFFIDAVIT re 546 Proposed Bill of Costs, 547 Notice of filing *(DECLARATION OF JOSEPH SMITH REGARDING STROZ FRIEDBERG, LLC AND TECHNOLOGY CONCEPTS & DESIGN, INC. HOURLY FEES)* by Provisur Technologies, Inc.. (Related document(s) 546 , 547 ) (Martin, Craig) (Entered: 01/30/2023) |
| 02/07/2023 | 550 | NOTICE OF APPEAL by Provisur Technologies, Inc.. Filing fee $ 505, receipt number AMOWDC-8318993. (Martin, Craig) (Entered: 02/07/2023) |
| 02/08/2023 | 551 | TRANSMISSION of Notice of Appeal and docket sheet to US Court of Appeals, Federal Circuit, via e-mail. Related document 550 Notice of Appeal. (Terry, Jason) (Entered: 02/08/2023) |
| 02/08/2023 | 552 | USCA Case Number from Federal Circuit Court of Appeals is 23-1476 for 550 Notice of Appeal filed by Provisur Technologies, Inc.. (Terry, Jason) (Entered: 02/08/2023) |
| 02/13/2023 | 553 | SUGGESTIONS in opposition re 544 MOTION for attorney fees *(MOTION FOR REASONABLE ATTORNEY FEES PURSUANT TO 35 U.S.C. § 285)* filed by Jason Scott Leiker on behalf of Defendants Textor Maschinenbau GmbH, Textor, Inc., Weber Maschinenbau GmbH Breidenbach, Weber Maschinenbau GmbH Neubrandenburg, Weber, Inc.. Reply suggestions due by 2/27/2023 unless otherwise directed by the court. (Related document(s) 544 ) (Leiker, Jason) (Entered: 02/13/2023) |
| 02/13/2023 | 554 | OBJECTION to 546 bill of costs filed by Jason Scott Leiker on behalf of Defendants Textor Maschinenbau GmbH, Textor, Inc., Weber Maschinenbau GmbH Breidenbach, Weber Maschinenbau GmbH Neubrandenburg, Weber, Inc..Reply to Objections to Bill of Costs due by 2/27/2023 unless otherwise directed by the court. (Related document(s) 546 ) (Leiker, Jason) (Entered: 02/13/2023) |
| 02/27/2023 | 555 | REPLY SUGGESTIONS to motion re 544 MOTION for attorney fees *(MOTION FOR REASONABLE ATTORNEY FEES PURSUANT TO 35 U.S.C. § 285) (PLAINTIFF PROVISUR TECHNOLOGIES, INC.'S REPLY IN SUPPORT OF MOTION FOR REASONABLE ATTORNEY FEES PURSUANT TO 35 U.S.C. § 285)* filed by Craig C. Martin on behalf of Plaintiff Provisur Technologies, Inc.. (Related document(s) 544 ) (Martin, Craig) (Entered: 02/27/2023) |

Appx247

| 02/27/2023 | [556](#) | REPLY to objections to bill of costs re [554](#) Objection to bill of costs, *(PLAINTIFF PROVISUR TECHNOLOGIES, INC.'S REPLY SUGGESTIONS IN SUPPORT OF ITS BILL OF COSTS)* filed by Craig C. Martin on behalf of Plaintiff Provisur Technologies, Inc.. (Related document(s) [554](#) ) (Martin, Craig) (Entered: 02/27/2023) |
| 02/28/2023 | [557](#) | ORDER denying [544](#) motion for attorney fees. Signed on 2/28/2023 by District Judge Stephen R. Bough. (Richard, Tracey) (Entered: 02/28/2023) |
| 02/28/2023 | [558](#) | Before the Court is Plaintiff Provisur Technologies, Inc.'s ("Plaintiff" or "Provisur") proposed Bill of Costs. (Doc. #546.) For the reasons set forth within, the proposed Bill of Costs is GRANTED IN PART and DENIED IN PART. Signed on 2/28/2023 by District Judge Stephen R. Bough. (Richard, Tracey) (Entered: 02/28/2023) |
| 03/30/2023 | [559](#) | Amended NOTICE OF APPEAL by Provisur Technologies, Inc.. Filing fee $ 505, receipt number AMOWDC-8318993. (Martin, Craig) (Entered: 03/30/2023) |
| 03/31/2023 | [560](#) | TRANSMISSION of Notice of Appeal and docket sheet to US Court of Appeals, Federal Circuit, via e-mail. Related document [559](#) Notice of Appeal. (Terry, Jason) (Entered: 03/31/2023) |

**PACER Service Center**

**Transaction Receipt**

04/11/2023 12:09:19

| PACER Login: | susanna.kelley | Client Code: | 4374.001APL0 |
| Description: | Docket Report | Search Criteria: | 5:19-cv-06021-SRB |
| Billable Pages: | 30 | Cost: | 3.00 |

Appx248

APPEAL,CLOSED,CONSOL,MAPJ,PHV,USPTO

# U.S. District Court
## Western District of Missouri (St. Joseph)
## CIVIL DOCKET FOR CASE #: 5:20-cv-06069-SRB

Provisur Technologies, Inc. v. Weber, Inc. et al <span style="color:red">Case No. 19-cv-06021-SRB and Case No. 20-cv-06069-SRB are hereby CONSOLIDATED, and all future filings should be made in Case No. 19-cv-06021-SRB.</span>
Assigned to: District Judge Stephen R. Bough
Cause: 35:271 Patent Infringement

Date Filed: 05/06/2020
Date Terminated: 07/28/2022
Jury Demand: Both
Nature of Suit: 830 Patent
Jurisdiction: Federal Question

### Plaintiff

**Provisur Technologies, Inc.**                    represented by **Craig C. Martin**
Willkie Farr & Gallagher LLP
300 N. LaSalle Dr.
Ste 50th Floor
Chicago, IL 60654
312-728-9040
Fax: 312-728-9199
Email: cmartin@willkie.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Heather M Schneider**
Willkie Farr & Gallagher LLP
787 Seventh Ave.
New York, NY 10019
212-728-8685
Email: hschneider@willkie.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Henry C. Thomas**
300 N. LaSalle
Chicago, IL 60654
(312) 728-9021
Email: hthomas@willkie.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Jeffrey J. Simon**
Husch Blackwell LLP - KCMO
4801 Main Street
Suite 1000

**Appx249**

Kansas City, MO 64112-2551
816-329-4711
Fax: 816-983-8080
Email: jeff.simon@huschblackwell.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Michael Babbitt**
Willkie Farr & Gallagher LLP
300 N. LaSalle Dr.
Ste 50th Floor
Chicago, IL 60654
312-728-9070
Fax: 312-728-9199
Email: mbabbitt@willkie.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Mitchell Feldhake**
Willkie Farr & Gallagher, LLP
300 North LaSalle
Chicago, IL 60654
312-728-9051
Email: mfeldhake@willkie.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Ren-How H. Harn**
300 North La Salle Street
Chicago, IL 60654
312-728-9000
Email: rharn@willkie.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Sara T Horton**
Willkie Farr & Gallagher LLP
300 N. LaSalle Dr.
Ste 50th Floor
Chicago, IL 60654
312-728-9040
Fax: 312-728-9199
Email: shorton@willkie.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**W. Patrick Conlon**
Willkie Farr & Gallagher, LLP
300 N. La Salle Dr.
Chicago, IL 60653

**Appx250**

312-728-9063
Email: pconlon@willkie.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Taylor Brooke Concannon Hausmann**
Husch Blackwell LLP - KCMO
4801 Main Street
Suite 1000
Kansas City, MO 64112-2551
816-983-8000
Fax: 816-983-8080
Email:
taylor.hausmann@huschblackwell.com
*ATTORNEY TO BE NOTICED*

**Tessa K. Jacob**
Husch Blackwell LLP - KCMO
4801 Main Street
Suite 1000
Kansas City, MO 64112-2551
816-983-8233
Fax: 816/983-8080
Email: tessa.jacob@huschblackwell.com
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Weber, Inc.**                    represented by  **Daniel S Block**
Sterne Kessler Goldstein & Fox
1100 New York Ave NW
Suite 600
Washington, DC 20005
202-772-8557
Email: dblock@sternekessler.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Daniel E Yonan**
1100 New York Avenue NW
Suite 600
Washington, DC 20005
202-371-2600
Email: dyonan@sternekessler.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Deirdre M Wells**
1100 New York Avenue NW

**Appx251**

Suite 600
Washington, DC 20005
202-371-2600
Email: dwells@sternekessler.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Donald R Banowit**
1100 New York Avenue NW
Suite 600
Washington, DC 20005
202-371-2600
Email: dbanowit@sternekessler.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Jason Scott Leiker**
Levy Craig Law Firm
4520 Main Street
Suite 1600
Kansas City, MO 64111
(816) 460-1835
Fax: (816) 382-6606
Email: jleiker@levycraig.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jonathan Tuminaro**
1100 New York Avenue N.W.
Suite 600
Washington, DC 20005
(202) 772-8967
Email: jtuminar@sternekessler.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Kristina Caggiano Kelly**
1100 New York Avenue, N.W.
Suite 600
Washington, DC 20005
202-772-8524
Email: kckelly@sternekessler.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Kyle E Conklin**
1100 New York avenue NW
Suite 600
Washington, DC 20005
202-371-2600

**Appx252**

Email: kconklin@sternekessler.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Michael M. Tamburini**
Levy Craig Law Firm, PC - MainSt
4520 Main Street
Suite 1600
Kansas City, MO 64111
(816) 474-8181
Fax: 816-382-6606
Email: mtamburini@levycraig.com
*ATTORNEY TO BE NOTICED*

**Defendant**

**Textor, Inc.**                    represented by    **Daniel S Block**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Daniel E Yonan**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Deirdre M Wells**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Donald R Banowit**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Jason Scott Leiker**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jonathan Tuminaro**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Kristina Caggiano Kelly**
(See above for address)
*LEAD ATTORNEY*

**Appx253**

*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Kyle E Conklin**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Michael M. Tamburini**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Weber Maschinenbau GmbH**          represented by   **Daniel S Block**
**Breidenbach**                                       (See above for address)
                                                      *LEAD ATTORNEY*
                                                      *PRO HAC VICE*
                                                      *ATTORNEY TO BE NOTICED*

**Daniel E Yonan**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Deirdre M Wells**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Donald R Banowit**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Jason Scott Leiker**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jonathan Tuminaro**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Kristina Caggiano Kelly**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

Appx254

**Kyle E Conklin**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Michael M. Tamburini**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Weber Maschinenbau GmbH**          represented by  **Daniel S Block**
**Neubrandenburg**                                   (See above for address)
                                                     *LEAD ATTORNEY*
                                                     *PRO HAC VICE*
                                                     *ATTORNEY TO BE NOTICED*

**Daniel E Yonan**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Deirdre M Wells**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Donald R Banowit**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Jason Scott Leiker**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jonathan Tuminaro**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Kristina Caggiano Kelly**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Kyle E Conklin**

**Appx255**

(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Michael M. Tamburini**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Textor Maschinenbau GmbH**                    represented by   **Daniel S Block**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Daniel E Yonan**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Deirdre M Wells**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Donald R Banowit**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Jason Scott Leiker**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jonathan Tuminaro**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Kristina Caggiano Kelly**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Kyle E Conklin**
(See above for address)
*LEAD ATTORNEY*

**Appx256**

*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Michael M. Tamburini**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Counter Claimant**

**Textor Maschinenbau GmbH**                represented by **Daniel S Block**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Daniel E Yonan**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Deirdre M Wells**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Donald R Banowit**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Jason Scott Leiker**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Kristina Caggiano Kelly**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Kyle E Conklin**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Counter Claimant**

**Weber Maschinenbau GmbH**                represented by **Daniel S Block**
**Breidenbach**                            (See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*

**Appx257**

*ATTORNEY TO BE NOTICED*

**Daniel E Yonan**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Deirdre M Wells**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Donald R Banowit**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Jason Scott Leiker**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Kristina Caggiano Kelly**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Kyle E Conklin**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Counter Claimant**

**Textor, Inc.**                    represented by  **Daniel S Block**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Daniel E Yonan**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Deirdre M Wells**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*

**Appx258**

*ATTORNEY TO BE NOTICED*

**Donald R Banowit**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Jason Scott Leiker**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Kristina Caggiano Kelly**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Kyle E Conklin**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Counter Claimant**

**Weber, Inc.**                     represented by **Daniel S Block**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Daniel E Yonan**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Deirdre M Wells**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Donald R Banowit**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Jason Scott Leiker**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

Appx259

**Kristina Caggiano Kelly**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Kyle E Conklin**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Counter Claimant**

**Weber Maschinenbau GmbH**          represented by  **Daniel S Block**
**Neubrandenburg**                                    (See above for address)
                                                      *LEAD ATTORNEY*
                                                      *PRO HAC VICE*
                                                      *ATTORNEY TO BE NOTICED*

**Daniel E Yonan**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Deirdre M Wells**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Donald R Banowit**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Jason Scott Leiker**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Kristina Caggiano Kelly**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Kyle E Conklin**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Appx260**

## Counter Defendant

**Provisur Technologies, Inc.**              represented by  **Jeffrey J. Simon**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Taylor Brooke Concannon Hausmann**
(See above for address)
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 05/06/2020 | 1 | COMPLAINT *Complaint for Patent Infringement* against All Defendants filed by Jeffrey J. Simon on behalf of Provisur Technologies, Inc.. Filing fee $400, receipt number AMOWDC-6847932. Service due by 8/4/2020 unless otherwise directed by the court. (Attachments: # 1 Exhibit A, # 2 B, # 3 Civil Cover Sheet)(Simon, Jeffrey) (Entered: 05/06/2020) |
| 05/06/2020 | 2 | DISCLOSURE OF CORPORATE INTERESTS *Certificate of Interested Persons and Corporate Disclosure Statement* filed by Jeffrey J. Simon on behalf of Plaintiff Provisur Technologies, Inc..(Simon, Jeffrey) (Entered: 05/06/2020) |
| 05/06/2020 | 3 | **NOTICE OF INCLUSION FOR MEDIATION AND ASSESSMENT PROGRAM (MAP). REVIEW NOTICE AND MAP GENERAL ORDER CAREFULLY FOR IMPORTANT CHANGES, DEADLINES AND REQUIREMENTS.** <br><br> **Notice of MAP assignment to an outside mediator.** (Attachments: # 1 MAP General Order)(Woods, Gloria) (Entered: 05/06/2020) |
| 05/06/2020 | 4 | Report on the filing of an action regarding patent number(s) 10,625,436 10,639,812. <br><br> Plaintiff(s): Provisur Technologies, Inc. <br> Lead Attorney for Plaintiff(s): Jeffrey J. Simon, Husch Blackwell LLP-KCMO, 4801 Main Street, Suite 1000, Kansas City, MO 64112-2551 <br><br> Defendant(s): Webert, Inc., Textor, Inc., Weber Maschinenbau GmbH Breidenbach, Weber Maschinenbau GmbH Neubrandenburg, Textor Maschinenbau GmbH <br> The civil complaint is attached. <br><br> (Attachments: # 1 AO 120) (Woods, Gloria) (Entered: 05/06/2020) |
| 05/14/2020 | 5 | Consent MOTION for extension of time to file answer re 1 Complaint, filed by Jason Scott Leiker on behalf of All Defendants. Suggestions in opposition/response due by 5/28/2020 unless otherwise directed by the court. (Related document(s) 1 ) (Attorney Jason Scott Leiker added to party Textor Maschinenbau GmbH(pty:dft), Attorney Jason Scott Leiker added to party Textor, Inc.(pty:dft), Attorney Jason Scott Leiker added to party Weber Maschinenbau GmbH Breidenbach(pty:dft), Attorney Jason Scott Leiker added to party Weber Maschinenbau GmbH Neubrandenburg(pty:dft), Attorney Jason Scott Leiker added to party Weber, Inc.(pty:dft))(Leiker, Jason) (Entered: 05/14/2020) |

**Appx261**

| 05/20/2020 | 6 | ORDER TRANSFERRING/REASSIGNING CASE. Case reassigned to District Judge Stephen R. Bough for all further proceedings. District Judge Greg Kays no longer assigned to case. Signed on 5/20/20 by District Judge Greg Kays. (Strodtman, Tracy) (Entered: 05/20/2020) |
|---|---|---|
| 05/20/2020 | 7 | Before this Court is the Unopposed Motion for Extension of Time to Answer or Otherwise Plead (Doc. #5). For good cause stated, the Motion is granted. Defendants have until August 3, 2020 to answer or otherwise respond to the Complaint. Signed on 5/20/20 by District Judge Stephen R. Bough. This is a TEXT ONLY ENTRY. No document is attached. (Diefenbach, Tracy) (Entered: 05/20/2020) |
| 08/03/2020 | 8 | ANSWER to 1 Complaint, with Jury Demand , COUNTERCLAIM against All Plaintiffs on behalf of Textor Maschinenbau GmbH, Weber Maschinenbau GmbH Breidenbach, Textor, Inc., Weber, Inc., Weber Maschinenbau GmbH Neubrandenburg.(Leiker, Jason) (Entered: 08/03/2020) |
| 08/03/2020 | 9 | Motion to allow Donald Banowit to appear pro hac vice (Pro Hac fee $100 receipt number AMOWDC-6975822) filed by Jason Scott Leiker on behalf of All Defendants. (Leiker, Jason) (Entered: 08/03/2020) |
| 08/03/2020 | 10 | Motion to allow Daniel S. Block to appear pro hac vice (Pro Hac fee $100 receipt number AMOWDC-6975829) filed by Jason Scott Leiker on behalf of All Defendants. (Leiker, Jason) (Entered: 08/03/2020) |
| 08/03/2020 | 11 | Motion to allow Daniel E. Yonan to appear pro hac vice (Pro Hac fee $100 receipt number AMOWDC-6975832) filed by Jason Scott Leiker on behalf of All Defendants. (Leiker, Jason) (Entered: 08/03/2020) |
| 08/03/2020 | 12 | Motion to allow Kyle E. Conklin to appear pro hac vice (Pro Hac fee $100 receipt number AMOWDC-6975845) filed by Jason Scott Leiker on behalf of All Defendants. (Leiker, Jason) (Entered: 08/03/2020) |
| 08/03/2020 | 13 | Motion to allow Deirdre Wells to appear pro hac vice (Pro Hac fee $100 receipt number AMOWDC-6975848) filed by Jason Scott Leiker on behalf of All Defendants. (Leiker, Jason) (Entered: 08/03/2020) |
| 08/04/2020 | 14 | ORDER granting 9 motion to appear pro hac vice entered by Clerk of Court. Attorney Donald R Banowit for Textor Maschinenbau GmbH, Textor Maschinenbau GmbH, Textor, Inc., Textor, Inc., Weber Maschinenbau GmbH Breidenbach, Weber Maschinenbau GmbH Breidenbach, Weber Maschinenbau GmbH Neubrandenburg, Weber Maschinenbau GmbH Neubrandenburg, Weber, Inc., and Weber, Inc. allowed to appear pro hac vice. This entry will serve as authorization for the pro hac participation by the attorney.<br><br>Western District of Missouri Local Rule 5.1 requires documents to be filed electronically. If pro hac vice counsel has not already done so, counsel is directed to immediately register for a WDMO e-filing account for NextGen CM/ECF. This will enable counsel to electronically file documents and receive electronic notification of filings. Register for a WDMO e-filing account at PACER. This is a TEXT ONLY ENTRY. No document is attached. (Warren, Melissa) (Entered: 08/04/2020) |
| 08/04/2020 | 15 | ORDER granting 10 motion to appear pro hac vice entered by Clerk of Court. Attorney Daniel S Block for Textor Maschinenbau GmbH, Textor Maschinenbau GmbH, Textor, Inc., Textor, Inc., Weber Maschinenbau GmbH Breidenbach, Weber Maschinenbau GmbH Breidenbach, Weber Maschinenbau GmbH Neubrandenburg, Weber Maschinenbau GmbH Neubrandenburg, Weber, Inc., and Weber, Inc. allowed to appear |

| | | |
|---|---|---|
| | | pro hac vice. This entry will serve as authorization for the pro hac participation by the attorney.<br><br>Western District of Missouri Local Rule 5.1 requires documents to be filed electronically. If pro hac vice counsel has not already done so, counsel is directed to immediately register for a WDMO e-filing account for NextGen CM/ECF. This will enable counsel to electronically file documents and receive electronic notification of filings. Register for a WDMO e-filing account at PACER. This is a TEXT ONLY ENTRY. No document is attached. (Warren, Melissa) (Entered: 08/04/2020) |
| 08/04/2020 | 16 | ORDER granting 11 motion to appear pro hac vice entered by Clerk of Court. Attorney Daniel E Yonan for Textor Maschinenbau GmbH, Textor Maschinenbau GmbH, Textor, Inc., Textor, Inc., Weber Maschinenbau GmbH Breidenbach, Weber Maschinenbau GmbH Breidenbach, Weber Maschinenbau GmbH Neubrandenburg, Weber Maschinenbau GmbH Neubrandenburg, Weber, Inc., and Weber, Inc. allowed to appear pro hac vice. This entry will serve as authorization for the pro hac participation by the attorney.<br><br>Western District of Missouri Local Rule 5.1 requires documents to be filed electronically. If pro hac vice counsel has not already done so, counsel is directed to immediately register for a WDMO e-filing account for NextGen CM/ECF. This will enable counsel to electronically file documents and receive electronic notification of filings. Register for a WDMO e-filing account at PACER. This is a TEXT ONLY ENTRY. No document is attached. (Warren, Melissa) (Entered: 08/04/2020) |
| 08/04/2020 | 17 | ORDER granting 12 motion to appear pro hac vice entered by Clerk of Court. Attorney Kyle E Conklin for Textor Maschinenbau GmbH, Textor Maschinenbau GmbH, Textor, Inc., Textor, Inc., Weber Maschinenbau GmbH Breidenbach, Weber Maschinenbau GmbH Breidenbach, Weber Maschinenbau GmbH Neubrandenburg, Weber Maschinenbau GmbH Neubrandenburg, Weber, Inc., and Weber, Inc. allowed to appear pro hac vice. This entry will serve as authorization for the pro hac participation by the attorney.<br><br>Western District of Missouri Local Rule 5.1 requires documents to be filed electronically. If pro hac vice counsel has not already done so, counsel is directed to immediately register for a WDMO e-filing account for NextGen CM/ECF. This will enable counsel to electronically file documents and receive electronic notification of filings. Register for a WDMO e-filing account at PACER. This is a TEXT ONLY ENTRY. No document is attached. (Warren, Melissa) (Entered: 08/04/2020) |
| 08/04/2020 | 18 | ORDER granting 13 motion to appear pro hac vice entered by Clerk of Court. Attorney Deirdre M Wells for Textor Maschinenbau GmbH, Textor Maschinenbau GmbH, Textor, Inc., Textor, Inc., Weber Maschinenbau GmbH Breidenbach, Weber Maschinenbau GmbH Breidenbach, Weber Maschinenbau GmbH Neubrandenburg,Weber, Inc.,and Weber, Inc. allowed to appear pro hac vice. This entry will serve as authorization for the pro hac participation by the attorney.<br><br>Western District of Missouri Local Rule 5.1 requires documents to be filed electronically. If pro hac vice counsel has not already done so, counsel is directed to immediately register for a WDMO e-filing account for NextGen CM/ECF. This will enable counsel to electronically file documents and receive electronic notification of filings. Register for a WDMO e-filing account at PACER. This is a TEXT ONLY ENTRY. No document is attached. (Warren, Melissa) (Entered: 08/04/2020) |

**Appx263**

| 08/21/2020 | 19 | Motion to allow Michael Babbitt to appear pro hac vice (Pro Hac fee $100 receipt number AMOWDC-7007402) filed by Taylor Brooke Concannon Hausmann on behalf of Provisur Technologies, Inc.. (Concannon Hausmann, Taylor) Modified on 8/24/2020 to reflect correct attorney name (Warren, Melissa). (Entered: 08/21/2020) |
|---|---|---|
| 08/21/2020 | 20 | Motion to allow Sara T. Horton to appear pro hac vice (Pro Hac fee $100 receipt number AMOWDC-7007403) filed by Taylor Brooke Concannon Hausmann on behalf of Provisur Technologies, Inc.. (Concannon Hausmann, Taylor) Modified on 8/24/2020 to reflect correct name of attorney (Warren, Melissa). (Entered: 08/21/2020) |
| 08/21/2020 | 21 | Motion to allow Craig C. Martin to appear pro hac vice (Pro Hac fee $100 receipt number AMOWDC-7007404) filed by Taylor Brooke Concannon Hausmann on behalf of Provisur Technologies, Inc.. (Concannon Hausmann, Taylor) Modified on 8/24/2020 to reflect correct name of attorney (Warren, Melissa). (Entered: 08/21/2020) |
| 08/24/2020 | 22 | ORDER granting 19 motion to appear pro hac vice entered by Clerk of Court. Attorney Michael Babbitt for Provisur Technologies, Inc. allowed to appear pro hac vice. This entry will serve as authorization for the pro hac participation by the attorney.<br><br>Western District of Missouri Local Rule 5.1 requires documents to be filed electronically. If pro hac vice counsel has not already done so, counsel is directed to immediately register for a WDMO e-filing account for NextGen CM/ECF. This will enable counsel to electronically file documents and receive electronic notification of filings. Register for a WDMO e-filing account at PACER. This is a TEXT ONLY ENTRY. No document is attached. (Warren, Melissa) (Entered: 08/24/2020) |
| 08/24/2020 | 23 | ORDER granting 20 motion to appear pro hac vice entered by Clerk of Court. Attorney Sara T Horton for Provisur Technologies, Inc. allowed to appear pro hac vice. This entry will serve as authorization for the pro hac participation by the attorney.<br><br>Western District of Missouri Local Rule 5.1 requires documents to be filed electronically. If pro hac vice counsel has not already done so, counsel is directed to immediately register for a WDMO e-filing account for NextGen CM/ECF. This will enable counsel to electronically file documents and receive electronic notification of filings. Register for a WDMO e-filing account at PACER. This is a TEXT ONLY ENTRY. No document is attached. (Warren, Melissa) (Entered: 08/24/2020) |
| 08/24/2020 | 24 | ORDER granting 21 motion to appear pro hac vice entered by Clerk of Court. Attorney Craig C. Martin for Provisur Technologies, Inc. allowed to appear pro hac vice. This entry will serve as authorization for the pro hac participation by the attorney.<br><br>Western District of Missouri Local Rule 5.1 requires documents to be filed electronically. If pro hac vice counsel has not already done so, counsel is directed to immediately register for a WDMO e-filing account for NextGen CM/ECF. This will enable counsel to electronically file documents and receive electronic notification of filings. Register for a WDMO e-filing account at PACER. This is a TEXT ONLY ENTRY. No document is attached. (Warren, Melissa) (Entered: 08/24/2020) |
| 08/24/2020 | 25 | *Plaintiff and Counterclaim Defendant Provisur's* ANSWER to Counterclaim *of Defendants* on behalf of Provisur Technologies, Inc..(Simon, Jeffrey) (Entered: 08/24/2020) |
| 08/31/2020 | 26 | RULE 16 NOTICE. Proposed scheduling order due by 10/2/2020. Scheduling Conference set for 10/14/2020 at 9:30 AM in Courtroom 7B, Kansas City (SRB) before District Judge Stephen R. Bough. Signed on 8/31/2020 by District Judge Stephen R. Bough. (Richard, Tracey) (Entered: 08/31/2020) |

| 08/31/2020 | 27 | DISCLOSURE OF CORPORATE INTERESTS filed by Jason Scott Leiker on behalf of Defendants Textor Maschinenbau GmbH, Textor, Inc., Weber Maschinenbau GmbH Breidenbach, Weber Maschinenbau GmbH Neubrandenburg, Weber, Inc..(Leiker, Jason) (Entered: 08/31/2020) |
|---|---|---|
| 09/02/2020 | | NOTICE of filing: Mediation and Assessment Program Reminder: Your Designation of Mediator is due soon (filed as an ADR event in CM/ECF). See Notice of Inclusion and MAP General Order for specifics. (ADI, MAP) (Entered: 09/02/2020) |
| 09/17/2020 | 28 | NOTICE of filing *Pendency of Post-Grant Proceedings* by Textor Maschinenbau GmbH, Textor, Inc., Weber Maschinenbau GmbH Breidenbach, Weber Maschinenbau GmbH Neubrandenburg, Weber, Inc. (Attachments: # 1 Exhibit 1-IPR2020-01556, # 2 Exhibit 2-IPR2020-01557)(Leiker, Jason) (Entered: 09/17/2020) |
| 09/21/2020 | 29 | CERTIFICATE OF SERVICE by Provisur Technologies, Inc. filed by Jeffrey J. Simon on behalf of Plaintiff Provisur Technologies, Inc..(Simon, Jeffrey) (Entered: 09/21/2020) |
| 09/24/2020 | 30 | MOTION to stay *all Proceedings Pending Inter Partes Review* filed by Jason Scott Leiker on behalf of All Defendants. Suggestions in opposition/response due by 10/8/2020 unless otherwise directed by the court. (Leiker, Jason) (Entered: 09/24/2020) |
| 09/24/2020 | 31 | SUGGESTIONS in support re 30 MOTION to stay *all Proceedings Pending Inter Partes Review* filed by Jason Scott Leiker on behalf of Defendants Textor Maschinenbau GmbH, Textor, Inc., Weber Maschinenbau GmbH Breidenbach, Weber Maschinenbau GmbH Neubrandenburg, Weber, Inc.. (Related document(s) 30 ) (Leiker, Jason) (Entered: 09/24/2020) |
| 10/01/2020 | 32 | CERTIFICATE OF SERVICE OF INITIAL RULE 26 DISCLOSURES filed by Taylor Brooke Concannon Hausmann on behalf of Plaintiff Provisur Technologies, Inc.. (Concannon Hausmann, Taylor) (Entered: 10/01/2020) |
| 10/02/2020 | 33 | Joint PROPOSED SCHEDULING ORDER *and Discovery Plan* by Provisur Technologies, Inc.. (Simon, Jeffrey) (Entered: 10/02/2020) |
| 10/02/2020 | 34 | **AMENDED NOTICE OF INCLUSION FOR MEDIATION AND ASSESSMENT PROGRAM (MAP). REVIEW NOTICE AND MAP GENERAL ORDER CAREFULLY FOR DEADLINES AND REQUIREMENTS.**<br><br>**Notice of MAP reassignment to United States Magistrate Judge Lajuana M. Counts.** (Attachments: # 1 MAP General Order)(Woods, Gloria) (Entered: 10/02/2020) |
| 10/07/2020 | 35 | CERTIFICATE OF SERVICE OF INITIAL RULE 26 DISCLOSURES filed by Jason Scott Leiker on behalf of Defendants Textor Maschinenbau GmbH, Textor, Inc., Weber Maschinenbau GmbH Breidenbach, Weber Maschinenbau GmbH Neubrandenburg, Weber, Inc..(Leiker, Jason) (Entered: 10/07/2020) |
| 10/08/2020 | 36 | SUGGESTIONS in opposition re 30 MOTION to stay *all Proceedings Pending Inter Partes Review (PLAINTIFF PROVISUR TECHNOLOGIES, INC.S OPPOSING SUGGESTIONS TO DEFENDANTS MOTION TO STAY ALL PROCEEDINGS)* filed by Craig C. Martin on behalf of Plaintiff Provisur Technologies, Inc.. Reply suggestions due by 10/22/2020 unless otherwise directed by the court. (Attachments: # 1 Exhibit A, # 2 Exhibit B)(Related document(s) 30 ) (Martin, Craig) (Entered: 10/08/2020) |
| 10/09/2020 | 37 | ORAL ORDER Joint MAP Mediation Conference with Case No. 5:19-cv-6021-SRB set for 11/19/2020 at 09:30 AM in Courtroom 6E, Kansas City (LMC) before Magistrate Judge Lajuana M. Counts. The parties are directed to review Judge Counts' Standing Order for MAP Mediations and Settlement Conferences located on the Court's website at https://www.mow.uscourts.gov/judges/counts and comply with its directives. |

Appx265

| | | |
|---|---|---|
| | | Furthermore, the parties are directed to review the MAP General Order found on the Mediation and Assessment Program section of the Court's website. The parties are directed to contact chambers forthwith if they believe the mediation conference will exceed half-a-day. Signed on October 9, 2020 by Magistrate Judge Lajuana M. Counts. This is a TEXT ONLY ENTRY. No document is attached. (Clinton, Erica) (Entered: 10/09/2020) |
| 10/14/2020 | 38 | Minute Entry. Proceedings held before District Judge Stephen R. Bough: SCHEDULING CONFERENCE held on 10/14/2020. Scheduling Order to be entered once the pending Motion to Stay has been ruled. Counsel appearing for Plaintiff(s): Taylor Brooke Concannon Hausmann and Jeff Simon appear in person; Michael Babbitt and Sara Horton appear telephonically. Counsel appearing for Defendant(s): Jason Leiker appears in person; Daniel Yonan, Deirdre Well and Donald Banowit appear telephonically. Time in court: 9:30 a.m. to 9:55 a.m. This is a TEXT ONLY ENTRY. No document is attached. (Richard, Tracey) (Entered: 10/14/2020) |
| 10/19/2020 | 40 | CERTIFICATE OF SERVICE by Textor Maschinenbau GmbH, Textor, Inc., Weber Maschinenbau GmbH Breidenbach, Weber Maschinenbau GmbH Neubrandenburg, Weber, Inc. filed by Jason Scott Leiker on behalf of Defendants Textor Maschinenbau GmbH, Textor, Inc., Weber Maschinenbau GmbH Breidenbach, Weber Maschinenbau GmbH Neubrandenburg, Weber, Inc..(Leiker, Jason) (Entered: 10/19/2020) |
| 10/20/2020 | 41 | REPLY SUGGESTIONS to motion re 30 MOTION to stay *all Proceedings Pending Inter Partes Review* filed by Jason Scott Leiker on behalf of Defendants Textor Maschinenbau GmbH, Textor, Inc., Weber Maschinenbau GmbH Breidenbach, Weber Maschinenbau GmbH Neubrandenburg, Weber, Inc.. (Attachments: # 1 Exhibit 1-Industrial Slicing Machine)(Related document(s) 30 ) (Leiker, Jason) (Entered: 10/20/2020) |
| 10/21/2020 | 42 | ORDERED that Weber's Motion to Stay All Proceedings Pending Inter Partes Review (Doc. #30) is DENIED without prejudice. It is FURTHER ORDERED that on or before November 4, 2020, the parties shall file with the Court any requested changes to their proposed scheduling order and discovery plan. Signed on 10/21/20 by District Judge Stephen R. Bough. (Diefenbach, Tracy) (Entered: 10/21/2020) |
| 10/26/2020 | 43 | PROPOSED SCHEDULING ORDER *JOINT PROPOSED SCHEDULE AND DISCOVERY PLAN* by Provisur Technologies, Inc.. (Attachments: # 1 Exhibit A)(Simon, Jeffrey) (Entered: 10/26/2020) |
| 10/27/2020 | 44 | INITIAL PATENT SCHEDULING ORDER: Claim Construction Hearing set for 6/2/2021 at 9:00 AM in Courtroom 7B, Kansas City (SRB) before District Judge Stephen R. Bough. Signed on 10/27/2020 by District Judge Stephen R. Bough. (Richard, Tracey) (Entered: 10/27/2020) |
| 10/28/2020 | 45 | CERTIFICATE OF SERVICE by Provisur Technologies, Inc *regarding service of its Disclosure of Asserted Claims and Infringement Contentions and accompanying document production* filed by Taylor Brooke Concannon Hausmann on behalf of Plaintiff Provisur Technologies, Inc..(Concannon Hausmann, Taylor) (Entered: 10/28/2020) |
| 11/19/2020 | 46 | Minute Entry for SETTLEMENT CONFERENCE Proceedings held before Magistrate Judge Lajuana M. Counts on 11/19/2020: Parties did not settle at this time. Counsel appearing for Plaintiff(s): Craig Martin, Sara Tonnies Horton, Michael Babbitt, Jeff Simon, Matthias Meyer, Daniel Misch, various attorneys from the von Bezod Law Firm, Jason Green and Scott Scriven (representative of Prvisure Techonolgies). Counsel appearing for Defendant(s): Jason Leiker, Daniel Yonan, Donald Banowit, Ulrich Blumenroder, Sebastian Ochs, Felix Kahr and Jorg Schmeiser (Weber, Inc's Chief Technology Officer). Time in court: 9:30am to 11:30am. |

Appx266

| | | This is a TEXT ONLY ENTRY. No document is attached. (Chorny, Traci) (Entered: 11/19/2020) |
|---|---|---|
| 01/06/2021 | 47 | CERTIFICATE OF SERVICE by Provisur Technologies, Inc. filed by Taylor Brooke Concannon Hausmann on behalf of Plaintiff Provisur Technologies, Inc..(Concannon Hausmann, Taylor) (Entered: 01/06/2021) |
| 01/13/2021 | 48 | CERTIFICATE OF SERVICE by Textor Maschinenbau GmbH, Textor, Inc., Weber Maschinenbau GmbH Breidenbach, Weber Maschinenbau GmbH Neubrandenburg, Weber, Inc. filed by Jason Scott Leiker on behalf of Defendants Textor Maschinenbau GmbH, Textor, Inc., Weber Maschinenbau GmbH Breidenbach, Weber Maschinenbau GmbH Neubrandenburg, Weber, Inc..(Leiker, Jason) (Entered: 01/13/2021) |
| 01/14/2021 | 49 | NOTICE of filing by Textor Maschinenbau GmbH, Textor, Inc., Weber Maschinenbau GmbH Breidenbach, Weber Maschinenbau GmbH Neubrandenburg, Weber, Inc. (Leiker, Jason) (Entered: 01/14/2021) |
| 01/15/2021 | 50 | CERTIFICATE OF SERVICE by Textor Maschinenbau GmbH, Textor, Inc., Weber Maschinenbau GmbH Breidenbach, Weber Maschinenbau GmbH Neubrandenburg, Weber, Inc. filed by Jason Scott Leiker on behalf of Defendants Textor Maschinenbau GmbH, Textor, Inc., Weber Maschinenbau GmbH Breidenbach, Weber Maschinenbau GmbH Neubrandenburg, Weber, Inc..(Leiker, Jason) (Entered: 01/15/2021) |
| 01/28/2021 | 51 | CERTIFICATE OF SERVICE by All Defendants re 44 Scheduling Order, Set Hearings *Defendants Proposed List of Claim Terms for Construction* filed by Jason Scott Leiker on behalf of Defendants Textor Maschinenbau GmbH, Textor, Inc., Weber Maschinenbau GmbH Breidenbach, Weber Maschinenbau GmbH Neubrandenburg, Weber, Inc.. Related document: 44 Scheduling Order, Set Hearings.(Leiker, Jason) (Entered: 01/28/2021) |
| 01/28/2021 | 52 | CERTIFICATE OF SERVICE by Provisur Technologies, Inc. re 44 Scheduling Order, Set Hearings *of its Proposed Terms for Construction* filed by Taylor Brooke Concannon Hausmann on behalf of Plaintiff Provisur Technologies, Inc.. Related document: 44 Scheduling Order, Set Hearings.(Concannon Hausmann, Taylor) (Entered: 01/28/2021) |
| 02/04/2021 | 53 | CERTIFICATE OF SERVICE by All Defendants *Responses and Objections to Plaintiffs Second Set of Interrogatories to Defendants (Nos. 8-14)* filed by Jason Scott Leiker on behalf of Defendants Textor Maschinenbau GmbH, Textor, Inc., Weber Maschinenbau GmbH Breidenbach, Weber Maschinenbau GmbH Neubrandenburg, Weber, Inc..(Leiker, Jason) (Entered: 02/04/2021) |
| 02/16/2021 | 54 | CERTIFICATE OF SERVICE by Provisur Technologies, Inc. *of service of its Response to Defendants' Second Set of Interrogatories* filed by Taylor Brooke Concannon Hausmann on behalf of Plaintiff Provisur Technologies, Inc..(Concannon Hausmann, Taylor) (Entered: 02/16/2021) |
| 02/18/2021 | 55 | NOTICE OF HEARING - This is the official notice for this hearing. This is a TEXT ONLY ENTRY. No document is attached. Telephone Conference set for 2/19/2021 at 9:00 AM before District Judge Stephen R. Bough. (Richard, Tracey) (Entered: 02/18/2021) |
| 02/18/2021 | 56 | CERTIFICATE of counsel by Jason Scott Leiker on behalf of Textor Maschinenbau GmbH, Textor, Inc., Weber Maschinenbau GmbH Breidenbach, Weber Maschinenbau GmbH Neubrandenburg, Weber, Inc. (Leiker, Jason) (Entered: 02/18/2021) |
| 02/18/2021 | 57 | CERTIFICATE OF SERVICE by Provisur Technologies, Inc. re 44 Scheduling Order, Set Hearings filed by Jeffrey J. Simon on behalf of Plaintiff Provisur Technologies, Inc.. Related document: 44 Scheduling Order, Set Hearings.(Simon, Jeffrey) (Entered: 02/18/2021) |

| 02/19/2021 | 58 | Minute Entry. Proceedings held before District Judge Stephen R. Bough: TELEPHONE CONFERENCE held on 2/19/2021. Order to be entered. Time in court: 9:00 a.m. to 9:50 a.m. To order a transcript of this hearing please contact Gayle Wambolt, 816-512-5641, gayle_wambolt@mow.uscourts.gov. This is a TEXT ONLY ENTRY. No document is attached. (Richard, Tracey) (Entered: 02/19/2021) |
| 02/19/2021 | 59 | AMENDED PATENT SCHEDULING ORDER. Signed on 2/19/2021 by District Judge Stephen R. Bough. (Richard, Tracey) (Entered: 02/19/2021) |
| 02/19/2021 | 60 | CERTIFICATE OF SERVICE by Provisur Technologies, Inc. *for its Response to Defendants' First Set of Requests for Production and First Set of Interrogatories* filed by Taylor Brooke Concannon Hausmann on behalf of Plaintiff Provisur Technologies, Inc.. (Concannon Hausmann, Taylor) (Entered: 02/19/2021) |
| 02/24/2021 | 61 | ELECTRONIC TRANSCRIPT of Teleconference held February 19, 2021, before Judge Stephen R. Bough. Court Reporter: Gayle Wambolt, 816-512-5641, gayle_wambolt@mow.uscourts.gov. Number of pages: 31. NOTICE RE: REDACTION OF TRANSCRIPTS: Within 7 calendar days of this filing, each party shall inform the Court, by filing a Notice of Redaction, of the parties' intent to redact personal data identifiers from the electronic transcript of the court proceeding. The policy is located on our website at www.mow.uscourts.gov. Please read this policy carefully. **NOTICE: Attorneys must contact the court reporter for copies during this 90 day period. If necessary, Notice of Intent to Redact is due by 3/3/2021 unless otherwise directed by the court. Release of Transcript Restriction set for 5/25/2021. NOTICE: Attorneys must contact the court reporter for copies during this 90 day period.**<br><br>(Wambolt, Gayle) (Entered: 02/24/2021) |
| 03/04/2021 | 62 | CERTIFICATE of counsel by Jason Scott Leiker on behalf of Textor Maschinenbau GmbH, Textor, Inc., Weber Maschinenbau GmbH Breidenbach, Weber Maschinenbau GmbH Neubrandenburg, Weber, Inc. (Leiker, Jason) (Entered: 03/04/2021) |
| 03/04/2021 | 63 | CERTIFICATE OF SERVICE by Provisur Technologies, Inc. filed by Taylor Brooke Concannon Hausmann on behalf of Plaintiff Provisur Technologies, Inc..(Concannon Hausmann, Taylor) (Entered: 03/04/2021) |
| 03/11/2021 | 64 | CERTIFICATE OF SERVICE by Textor Maschinenbau GmbH, Textor, Inc., Weber Maschinenbau GmbH Breidenbach, Weber Maschinenbau GmbH Neubrandenburg, Weber, Inc. filed by Jason Scott Leiker on behalf of Defendants Textor Maschinenbau GmbH, Textor, Inc., Weber Maschinenbau GmbH Breidenbach, Weber Maschinenbau GmbH Neubrandenburg, Weber, Inc..(Leiker, Jason) (Entered: 03/11/2021) |
| 03/11/2021 | 65 | CERTIFICATE of counsel by Jason Scott Leiker on behalf of Textor Maschinenbau GmbH, Textor, Inc., Weber Maschinenbau GmbH Breidenbach, Weber Maschinenbau GmbH Neubrandenburg, Weber, Inc. (Leiker, Jason) (Entered: 03/11/2021) |
| 03/11/2021 | 66 | CERTIFICATE OF SERVICE by Provisur Technologies, Inc. *of its Rebuttal Claim Constructions and Evidence Disclosure* filed by Taylor Brooke Concannon Hausmann on behalf of Plaintiff Provisur Technologies, Inc..(Concannon Hausmann, Taylor) (Entered: 03/11/2021) |
| 03/16/2021 | 67 | DESIGNATION *JOINT CLAIM CONSTRUCTION STATEMENT* by Provisur Technologies, Inc. filed by Jeffrey J. Simon on behalf of Plaintiff Provisur Technologies, Inc..(Simon, Jeffrey) (Entered: 03/16/2021) |
| 03/23/2021 | 68 | STATUS REPORT *Post-Grant Proceedings* by Textor Maschinenbau GmbH, Textor, Inc., Weber Maschinenbau GmbH Breidenbach, Weber Maschinenbau GmbH |

Appx268

| | | Neubrandenburg, Weber, Inc.. (Leiker, Jason) (Entered: 03/23/2021) |
|---|---|---|
| 03/30/2021 | 69 | MOTION to seal document filed by Jason Scott Leiker on behalf of Textor Maschinenbau GmbH, Textor, Inc., Weber Maschinenbau GmbH Breidenbach, Weber Maschinenbau GmbH Neubrandenburg, Weber, Inc.. Suggestions in opposition/response due by 4/13/2021 unless otherwise directed by the court. (Leiker, Jason) (Entered: 03/30/2021) |
| 03/30/2021 | 70 | MOTION to stay filed by Jason Scott Leiker on behalf of Textor Maschinenbau GmbH, Textor, Inc., Weber Maschinenbau GmbH Breidenbach, Weber Maschinenbau GmbH Neubrandenburg, Weber, Inc.. Suggestions in opposition/response due by 4/13/2021 unless otherwise directed by the court. (Leiker, Jason) (Entered: 03/30/2021) |
| 03/30/2021 | 71 | SUGGESTIONS in support re 70 MOTION to stay , 69 MOTION to seal document filed by Jason Scott Leiker on behalf of Defendants Textor Maschinenbau GmbH, Textor, Inc., Weber Maschinenbau GmbH Breidenbach, Weber Maschinenbau GmbH Neubrandenburg, Weber, Inc.. (Attachments: # 1 Exhibit, # 2 Exhibit, # 3 Exhibit, # 4 Exhibit)(Related document(s) 70 , 69 ) (Leiker, Jason) (Attachment 3 replaced on 3/31/2021) (Richard, Tracey). (Attachment 4 replaced on 3/31/2021) (Richard, Tracey). (Entered: 03/30/2021) |
| 03/31/2021 | 72 | Before the Court is Defendants' Motion for Leave to File Exhibits Under Seal and Suggestions in Support. (Doc. #69). For good cause stated, the motion is granted. Defendants may file under seal Exhibit C (Doc. #71-3) and Exhibit D (Doc. #71-4) in support of their motion to stay all proceedings. Signed on 3/31/2021 by District Judge Stephen R. Bough. This is a TEXT ONLY ENTRY. No document is attached. (Richard, Tracey) (Entered: 03/31/2021) |
| 04/06/2021 | 73 | SUGGESTIONS in opposition re 70 MOTION to stay *(PLAINTIFF PROVISUR TECHNOLOGY INC.S OPPOSING SUGGESTIONS TO DEFENDANTS RENEWED MOTION TO STAY ALL PROCEEDINGS)* filed by Michael Babbitt on behalf of Plaintiff Provisur Technologies, Inc.. Reply suggestions due by 4/20/2021 unless otherwise directed by the court. (Related document(s) 70 ) (Babbitt, Michael) (Entered: 04/06/2021) |
| 04/08/2021 | 74 | Before the Court is Defendants' Motion to Stay All Proceedings Pending Inter Partes Review. (Doc. #70). Upon review of the record and the parties' arguments, the Court finds a short, temporary stay is appropriate and GRANTS the motion. The parties are ordered to appear in person for a status conference on 04/19/2021 at 1:30pm CST, in Courtroom 7B in Kansas City, Missouri, to discuss the length of stay and potential consolidation with Provisur v. Weber et al, Case No. 19-cv-6021-SRB. Signed on 4/8/2021 by District Judge Stephen R. Bough. This is a TEXT ONLY ENTRY. No document is attached. (Richard, Tracey) (Entered: 04/08/2021) |
| 04/08/2021 | | Set/Reset Hearings: Status Conference set for 4/19/2021 at 1:30 PM in Courtroom 7B, Kansas City (SRB) before District Judge Stephen R. Bough. For the purpose of daily docket, not notice to be sent. (Entered: 04/08/2021) |
| 04/19/2021 | 75 | Minute Entry. Proceedings held before District Judge Stephen R. Bough: SCHEDULING CONFERENCE held on 4/19/2021. Amended Scheduling Order to be entered. Time in court: 1:30 p.m. to 2:30 p.m. To order a transcript of this hearing please contact Gayle Wambolt, 816-512-5641, gayle_wambolt@mow.uscourts.gov. This is a TEXT ONLY ENTRY. No document is attached. (Richard, Tracey) (Entered: 04/19/2021) |
| 04/20/2021 | 76 | SECOND AMENDED PATENT SCHEDULING ORDER: Claim Construction Hearing set for 7/23/2021 at 9:00 a.m. in Courtroom 7B, Kansas City (SRB) before District Judge Stephen R. Bough. Signed on 4/20/2021 by District Judge Stephen R. Bough. (Richard, Tracey) (Entered: 04/20/2021) |

**Appx269**

| 04/27/2021 | 77 | ELECTRONIC TRANSCRIPT of Scheduling Conference held April 19, 2021, before Judge Stephen R. Bough. Court Reporter: Gayle Wambolt, 816-512-5641, gayle_wambolt@mow.uscourts.gov. Number of pages: 36. NOTICE RE: REDACTION OF TRANSCRIPTS: Within 7 calendar days of this filing, each party shall inform the Court, by filing a Notice of Redaction, of the parties' intent to redact personal data identifiers from the electronic transcript of the court proceeding. The policy is located on our website at www.mow.uscourts.gov. Please read this policy carefully. **NOTICE: Attorneys must contact the court reporter for copies during this 90 day period. If necessary, Notice of Intent to Redact is due by 5/4/2021 unless otherwise directed by the court. Release of Transcript Restriction set for 7/26/2021. NOTICE: Attorneys must contact the court reporter for copies during this 90 day period.**<br><br>(Wambolt, Gayle) (Entered: 04/27/2021) |
|---|---|---|
| 04/28/2021 | 78 | NOTICE to take deposition of Dr. Charles F. Reinholtz, Ph.D. filed by Taylor Brooke Concannon Hausmann on behalf of Plaintiff Provisur Technologies, Inc..(Concannon Hausmann, Taylor) (Entered: 04/28/2021) |
| 04/30/2021 | 79 | CERTIFICATE OF SERVICE by Provisur Technologies, Inc. *Provisur II - Provisur's Certificate of Service for Provisur's Modified Patent Claim List* filed by Taylor Brooke Concannon Hausmann on behalf of Plaintiff Provisur Technologies, Inc..(Concannon Hausmann, Taylor) (Entered: 04/30/2021) |
| 05/24/2021 | 80 | NOTICE of filing *of Defendants' Opening Brief on Claim Construction* by Textor Maschinenbau GmbH, Textor, Inc., Weber Maschinenbau GmbH Breidenbach, Weber Maschinenbau GmbH Neubrandenburg, Weber, Inc. (Leiker, Jason) Modified on 5/25/2021 - see docket modification, correct filing is document # 82 (Woods, Gloria). (Entered: 05/24/2021) |
| 05/24/2021 | 81 | CERTIFICATE of counsel *of Service of Defendants' Responsive Prior Art References and Grounds List* by Jason Scott Leiker on behalf of Textor Maschinenbau GmbH, Textor, Inc., Weber Maschinenbau GmbH Breidenbach, Weber Maschinenbau GmbH Neubrandenburg, Weber, Inc. (Leiker, Jason) (Entered: 05/24/2021) |
| 05/24/2021 | 82 | NOTICE of filing of *Defendants' Opening Brief on Claim Construction* by Textor Maschinenbau GmbH, Textor, Inc., Weber Maschinenbau GmbH Breidenbach, Weber Maschinenbau GmbH Neubrandenburg, Weber, Inc. (Attachments: # 1 Exhibit, # 2 Exhibit, # 3 Exhibit, # 4 Exhibit, # 5 Exhibit, # 6 Exhibit, # 7 Exhibit, # 8 Exhibit, # 9 Exhibit, # 10 Exhibit, # 11 Exhibit, # 12 Exhibit, # 13 Exhibit, # 14 Exhibit, # 15 Exhibit, # 16 Exhibit, # 17 Exhibit, # 18 Exhibit, # 19 Exhibit, # 20 Exhibit, # 21 Exhibit, # 22 Exhibit, # 23 Exhibit)(Leiker, Jason) Modified on 5/25/2021 to correct entry title changing language from *Notice of Filing Exhibits...* to Notice of Filing *Defendant's Opening Brief...* (Woods, Gloria). (Entered: 05/24/2021) |
| 05/25/2021 | | NOTICE OF DOCKET MODIFICATION. A modification has been made to the document filed on 5/24/2021 as Document No. 80 NOTICE of filing of Defendants' Opening Brief on Claim Construction. The document has been deleted as counsel filed the complete document with exhibits attached in entry No. 82 . This is a text entry only - no document is attached. (Woods, Gloria) (Entered: 05/25/2021) |
| 06/02/2021 | 83 | MOTION for leave to file excess pages filed by Jason Scott Leiker on behalf of Textor Maschinenbau GmbH, Textor, Inc., Weber Maschinenbau GmbH Breidenbach, Weber Maschinenbau GmbH Neubrandenburg, Weber, Inc.. Suggestions in opposition/response due by 6/16/2021 unless otherwise directed by the court. (Leiker, Jason) (Entered: 06/02/2021) |

| | | |
|---|---|---|
| 06/03/2021 | 84 | Before the Court is Defendants' Unopposed Motion for Leave to Exceed Page Limitation and Suggestions in Support. (Doc. #83). For good cause stated, the motion is GRANTED. Defendants may refile an opening brief on claim construction up to 18 pages in length. Plaintiff's forthcoming responsive brief on claim construction may similarly be up to 18 pages in length. Signed on 6/3/2021 by District Judge Stephen R. Bough. This is a TEXT ONLY ENTRY. No document is attached. (Richard, Tracey) (Entered: 06/03/2021) |
| 06/03/2021 | 85 | NOTICE of filing *Defendants' Opening Brief on Claim Construction* by Textor Maschinenbau GmbH, Textor, Inc., Weber Maschinenbau GmbH Breidenbach, Weber Maschinenbau GmbH Neubrandenburg, Weber, Inc. (Attachments: # 1 Exhibit A - US 10,625,436 B2, # 2 Exhibit B - US 10,639,812 B2, # 3 Exhibit C - Reinholtz Expert Affidavit, # 4 Exhibit D - Reinholtz Deposition Transcript, # 5 Exhibit E - Nof-Handbook of Industrial Robotics, # 6 Exhibit F - Miller-Fundamentals of Industrial Robots and Robotics, # 7 Exhibit G - Malcolm-Robotics - An Introduction, # 8 Exhibit H - Oxford Dictionary of Mechanical Engineering, # 9 Exhibit I - Marks' Standard Handbook for Mechanical Engineering, # 10 Exhibit J - International Publication WO2010011237A1 (Lindee et al), # 11 Exhibit K - US 5,628,237, # 12 Exhibit L - 325 Application File History - 2016.03.21 Reply to Office Action, # 13 Exhibit M - McGraw-Hill Dictionary of Scientific and Technical Terms, # 14 Exhibit N - 325 Application File History - 2018.01.18 Reply to Office Action, # 15 Exhibit O - 436 Patent File History - 2020.03.11 Notice of Allowance, # 16 Exhibit P - 812 Patent File History - 2019.12.30 Notice of Allowance, # 17 Exhibit Q - 436 Patent File History - 2019.12.11 Reply to Office Action, # 18 Exhibit R - 436 Patent File History - 2019.11.20 Interview Summary Form, # 19 Exhibit S - Spong-Robot Dynamics and Control, # 20 Exhibit T - Oxford English Dictionary, # 21 Exhibit U - 325 Application File History - 2018.06.14 Reply OA, # 22 Exhibit V - 436 Patent File History - 2019.09.16 Final Office Action, # 23 Exhibit W - 325 Application File History - 2017.06.14 Reply to OA)(Leiker, Jason) (Entered: 06/03/2021) |
| 06/14/2021 | 86 | NOTICE of filing *PLAINTIFF PROVISUR TECHNOLOGIES, INC.S RESPONSIVE CLAIM CONSTRUCTION BRIEF (Provisur II Case)* by Provisur Technologies, Inc. re 85 Notice of filing,,,,,, (Attachments: # 1 Exhibit A - 436 March 4, 2019 OA, # 2 Exhibit B - U.S. Pub. 2019_0143552A1, # 3 Exhibit C - U.S. Pub. 2018_0222074, # 4 Exhibit D - Volta Belting, # 5 Exhibit E - Robotics and automation in the food industry, # 6 Exhibit F - U.S. Patent No. 2,909,271, # 7 Exhibit G - U.S. Patent No. 3,237,757, # 8 Exhibit H - U.S. Patent No. 5,853,080, # 9 Exhibit I - U.S. Patent No. 6,142,862, # 10 Exhibit J - U.S. Patent No. 7,331,444, # 11 Exhibit K - WEBER-0135740, # 12 Exhibit L - 436 December 11, 2019, Amendment, # 13 Exhibit M - Manual of Patent Examining Procedure § 2173.02, # 14 Exhibit N - 436 IPR Ex. 1003, # 15 Exhibit O - Oral deposition of Richard Hooper, Ph. D., P.E.)(Babbitt, Michael) (Entered: 06/14/2021) |
| 06/28/2021 | 87 | Defendants' Reply Brief on Claim Construction by Jason Scott Leiker on behalf of Textor Maschinenbau GmbH, Textor, Inc., Weber Maschinenbau GmbH Breidenbach, Weber Maschinenbau GmbH Neubrandenburg, Weber, Inc. (Leiker, Jason) Modified on 6/29/2021 to correct docket text (Houston, Kiambu). (Entered: 06/28/2021) |
| 07/08/2021 | 88 | CERTIFICATE OF SERVICE by All Plaintiffs filed by Taylor Brooke Concannon Hausmann on behalf of Plaintiff Provisur Technologies, Inc..(Concannon Hausmann, Taylor) (Entered: 07/08/2021) |
| 07/08/2021 | 89 | NOTICE of filing *Final Claim Construction Chart* by Provisur Technologies, Inc. re 76 Amended Scheduling Order, Set Hearings (Babbitt, Michael) (Entered: 07/08/2021) |
| 07/21/2021 | 90 | Motion to allow Kristina Caggiano Kelly to appear pro hac vice (Pro Hac fee $100 receipt number AMOWDC-7504520) filed by Jason Scott Leiker on behalf of Textor Maschinenbau GmbH, Textor, Inc., Weber Maschinenbau GmbH Breidenbach, Weber |

| | | Maschinenbau GmbH Neubrandenburg, Weber, Inc.. (Leiker, Jason) (Entered: 07/21/2021) |
|---|---|---|
| 07/21/2021 | 91 | ORDER granting 90 motion to appear pro hac vice entered by Clerk of Court. Attorney Kristina Caggiano Kelly for Textor Maschinenbau GmbH, Textor, Inc., Weber Maschinenbau GmbH Breidenbach, Weber Maschinenbau GmbH Neubrandenburg, and Weber, Inc. allowed to appear pro hac vice. This entry will serve as authorization for the pro hac participation by the attorney. <br><br> Western District of Missouri Local Rule 5.1 requires documents to be filed electronically. If pro hac vice counsel has not already done so, counsel is directed to immediately register for a WDMO e-filing account for NextGen CM/ECF. This will enable counsel to electronically file documents and receive electronic notification of filings. Register for a WDMO e-filing account at PACER. This is a TEXT ONLY ENTRY. No document is attached. (Warren, Melissa) (Entered: 07/21/2021) |
| 07/22/2021 | 92 | Motion to allow Henry C. Thomas to appear pro hac vice (Pro Hac fee $100 receipt number AMOWDC-7506768) filed by Taylor Brooke Concannon Hausmann on behalf of Provisur Technologies, Inc.. (Concannon Hausmann, Taylor) (Entered: 07/22/2021) |
| 07/22/2021 | 93 | ORDER granting 92 motion to appear pro hac vice entered by Clerk of Court. Attorney Henry Thomas for Provisur Technologies, Inc. allowed to appear pro hac vice. This entry will serve as authorization for the pro hac participation by the attorney. <br><br> Western District of Missouri Local Rule 5.1 requires documents to be filed electronically. If pro hac vice counsel has not already done so, counsel is directed to immediately register for a WDMO e-filing account for NextGen CM/ECF. This will enable counsel to electronically file documents and receive electronic notification of filings. Register for a WDMO e-filing account at PACER. This is a TEXT ONLY ENTRY. No document is attached. (Berner, Crystal) (Entered: 07/22/2021) |
| 07/23/2021 | 94 | Minute Entry. Proceedings held before District Judge Stephen R. Bough: CLAIM CONSTRUCTION HEARING held on 7/23/2021. Time in court: 9:00 am to 11:20 am. To order a transcript of this hearing please contact Judy Moore, 816-512-5622, judy_moore@mow.uscourts.gov. This is a TEXT ONLY ENTRY. No document is attached. (Diefenbach, Tracy) (Entered: 07/23/2021) |
| 08/03/2021 | 95 | ORDER: The Court ORDERS the constructions of the disputed terms as described herein. Signed on 8/3/2021 by District Judge Stephen R. Bough. (Richard, Tracey) (Entered: 08/03/2021) |
| 08/05/2021 | 96 | ELECTRONIC TRANSCRIPT of Markman Hearing held 07/23/2021 before Judge Stephen R. Bough. Court Reporter: Judy Moore, 816-512-5622, judy_moore@mow.uscourts.gov. Number of pages: 99. NOTICE RE: REDACTION OF TRANSCRIPTS: Within 7 calendar days of this filing, each party shall inform the Court, by filing a Notice of Redaction, of the parties' intent to redact personal data identifiers from the electronic transcript of the court proceeding. The policy is located on our website at www.mow.uscourts.gov. Please read this policy carefully. NOTICE: Attorneys must contact the court reporter for copies during this 90 day period. If necessary, Notice of Intent to Redact is due by 8/12/2021 unless otherwise directed by the court. Release of Transcript Restriction set for 11/3/2021. NOTICE: Attorneys must contact the court reporter for copies during this 90 day period. <br><br> (Moore, Judy) (Entered: 08/05/2021) |
| 08/09/2021 | 97 | CERTIFICATE OF SERVICE by Textor Maschinenbau GmbH, Textor, Inc., Weber Maschinenbau GmbH Breidenbach, Weber Maschinenbau GmbH Neubrandenburg, |

Appx272

| | | Weber, Inc. filed by Jason Scott Leiker on behalf of Defendants Textor Maschinenbau GmbH, Textor, Inc., Weber Maschinenbau GmbH Breidenbach, Weber Maschinenbau GmbH Neubrandenburg, Weber, Inc..(Leiker, Jason) (Entered: 08/09/2021) |
|---|---|---|
| 08/10/2021 | 98 | CERTIFICATE OF SERVICE by Provisur Technologies, Inc. filed by Taylor Brooke Concannon Hausmann on behalf of Plaintiff Provisur Technologies, Inc..(Concannon Hausmann, Taylor) (Entered: 08/10/2021) |
| 08/13/2021 | 99 | NOTICE OF HEARING - This is the official notice for this hearing. This is a TEXT ONLY ENTRY. No document is attached. Scheduling Conference set for 10/6/2021 at 9:00 a.m. in Courtroom 7B, Kansas City (SRB) before District Judge Stephen R. Bough. Proposed scheduling order due by September 24, 2021. (Richard, Tracey) (Entered: 08/13/2021) |
| 08/20/2021 | 100 | CERTIFICATE OF SERVICE by All Defendants *Defendants Supplemental Responses and Objections to Plaintiff's First Set of Interrogatories (NOS. 1-3)* filed by Jason Scott Leiker on behalf of Defendants Textor Maschinenbau GmbH, Textor, Inc., Weber Maschinenbau GmbH Breidenbach, Weber Maschinenbau GmbH Neubrandenburg, Weber, Inc..(Leiker, Jason) (Entered: 08/20/2021) |
| 08/26/2021 | 101 | CERTIFICATE OF SERVICE by Textor Maschinenbau GmbH, Textor, Inc., Weber Maschinenbau GmbH Breidenbach, Weber Maschinenbau GmbH Neubrandenburg, Weber, Inc. filed by Jason Scott Leiker on behalf of Defendants Textor Maschinenbau GmbH, Textor, Inc., Weber Maschinenbau GmbH Breidenbach, Weber Maschinenbau GmbH Neubrandenburg, Weber, Inc..(Leiker, Jason) (Entered: 08/26/2021) |
| 08/31/2021 | 102 | CERTIFICATE OF SERVICE by Provisur Technologies, Inc. filed by Taylor Brooke Concannon Hausmann on behalf of Plaintiff Provisur Technologies, Inc..(Concannon Hausmann, Taylor) (Entered: 08/31/2021) |
| 09/24/2021 | 103 | Supplemental PROPOSED SCHEDULING ORDER *(JOINT) for Remaining Deadlines after Filing of Court's Claim Construction Orders* by Provisur Technologies, Inc.. (Simon, Jeffrey) (Entered: 09/24/2021) |
| 09/28/2021 | 104 | CERTIFICATE of counsel by Jason Scott Leiker on behalf of Textor Maschinenbau GmbH, Textor, Inc., Weber Maschinenbau GmbH Breidenbach, Weber Maschinenbau GmbH Neubrandenburg, Weber, Inc. (Leiker, Jason) (Entered: 09/28/2021) |
| 09/29/2021 | 105 | Joint MOTION for order Entry of Stipulated Order regarding E-Discovery filed by Jeffrey J. Simon on behalf of Provisur Technologies, Inc.. Suggestions in opposition/response due by 10/13/2021 unless otherwise directed by the court. (Attachments: # 1 Exhibit A - Stipulated Order Regarding E-Discovery)(Simon, Jeffrey) (Entered: 09/29/2021) |
| 09/30/2021 | 106 | ORDER granting 105 Joint MOTION for Entry of Stipulated Order regarding E-Discovery. Signed on 9/30/2021 by District Judge Stephen R. Bough. (Richard, Tracey) (Entered: 09/30/2021) |
| 10/01/2021 | 107 | Joint MOTION for protective order *Addendum* filed by Jason Scott Leiker on behalf of All Defendants. Suggestions in opposition/response due by 10/15/2021 unless otherwise directed by the court. (Attachments: # 1 Exhibit Proposed Addendum to Protective Order) (Leiker, Jason) (Entered: 10/01/2021) |
| 10/04/2021 | 108 | Motion to allow Heather M. Schneider to appear pro hac vice (Pro Hac fee $100 receipt number AMOWDC-7610776) filed by Taylor Brooke Concannon Hausmann on behalf of Provisur Technologies, Inc.. (Concannon Hausmann, Taylor) (Entered: 10/04/2021) |
| 10/04/2021 | 109 | ORDER granting 108 motion to appear pro hac vice entered by Clerk of Court. Attorney Heather M Schneider for Provisur Technologies, Inc. allowed to appear pro hac vice. This |

entry will serve as authorization for the pro hac participation by the attorney.

Western District of Missouri Local Rule 5.1 requires documents to be filed electronically. If pro hac vice counsel has not already done so, counsel is directed to immediately register for a WDMO e-filing account for NextGen CM/ECF. This will enable counsel to electronically file documents and receive electronic notification of filings. Register for a WDMO e-filing account at PACER. This is a TEXT ONLY ENTRY. No document is attached. (Warren, Melissa) (Entered: 10/04/2021)

| 10/05/2021 | 110 | CERTIFICATE OF SERVICE by Provisur Technologies, Inc. *of its Notice of Inspection Pursuant to Federal Rule of Civil Procedure 34(a)* filed by Taylor Brooke Concannon Hausmann on behalf of Plaintiff Provisur Technologies, Inc..(Concannon Hausmann, Taylor) (Entered: 10/05/2021) |
| --- | --- | --- |
| 10/06/2021 | 111 | Minute Entry. Proceedings held before District Judge Stephen R. Bough: SCHEDULING CONFERENCE held on 10/6/2021. Scheduling Order to be entered. Time in court: 9:00 a.m. to 9:43 a.m. This is a TEXT ONLY ENTRY. No document is attached. (Richard, Tracey) (Entered: 10/06/2021) |
| 10/06/2021 | 112 | RULES OF JURY TRIAL. Signed on 10/6/2021 by District Judge Stephen R. Bough. (Richard, Tracey) (Entered: 10/06/2021) |
| 10/06/2021 | 113 | SCHEDULING ORDER: Discovery due by 12/22/2021. Dispositive Motions due by 4/22/2022. Pretrial Conference set for 9/30/2022 at 9:00 AM Courtroom 7B, Kansas City (SRB) before District Judge Stephen R. Bough. Jury Trial set for 10/24/2022 at 9:00 AM in Courtroom 7B, Kansas City (SRB) before District Judge Stephen R. Bough. Signed on 10/6/2021 by District Judge Stephen R. Bough. (Richard, Tracey) (Entered: 10/06/2021) |
| 10/12/2021 | 114 | NOTICE OF HEARING - This is the official notice for this hearing. This is a TEXT ONLY ENTRY. No document is attached. Telephonic Status Conferences are set for 11/3/2021 at 1:30 p.m., 11/17/2021 at 9:00 a.m., 12/1/2021 at 9:30 a.m. and 12/15/2021 at 11:00 a.m. before District Judge Stephen R. Bough.(Richard, Tracey) (Entered: 10/12/2021) |
| 10/13/2021 | 115 | NOTICE of appearance by Tessa K. Jacob on behalf of Provisur Technologies, Inc. (Attorney Tessa K. Jacob added to party Provisur Technologies, Inc.(pty:pla))(Jacob, Tessa) (Entered: 10/13/2021) |
| 10/27/2021 | 116 | CERTIFICATE OF SERVICE by All Defendants *Supplemental Rule 26(a)(1) Initial Disclosures* filed by Jason Scott Leiker on behalf of Defendants Textor Maschinenbau GmbH, Textor, Inc., Weber Maschinenbau GmbH Breidenbach, Weber Maschinenbau GmbH Neubrandenburg, Weber, Inc..(Leiker, Jason) (Entered: 10/27/2021) |
| 10/28/2021 | 117 | Motion to allow Jonathan Tuminaro, Ph.D. to appear pro hac vice (Pro Hac fee $100 receipt number AMOWDC-7648410) filed by Jason Scott Leiker on behalf of All Defendants. (Leiker, Jason) (Entered: 10/28/2021) |
| 10/29/2021 | 118 | ORDER granting 117 motion to appear pro hac vice entered by Clerk of Court. Attorney Jonathan Tuminaro for Textor Maschinenbau GmbH, Textor, Inc., Weber Maschinenbau GmbH Breidenbach, Weber Maschinenbau GmbH Neubrandenburg and Weber, Inc. allowed to appear pro hac vice. This entry will serve as authorization for the pro hac participation by the attorney. |
|  |  | Western District of Missouri Local Rule 5.1 requires documents to be filed electronically. If pro hac vice counsel has not already done so, counsel is directed to immediately register for a WDMO e-filing account for NextGen CM/ECF. This will enable counsel to electronically file documents and receive electronic notification of filings. Register for a |

| | | WDMO e-filing account at PACER. This is a TEXT ONLY ENTRY. No document is attached. (Berner, Crystal) (Entered: 10/29/2021) |
|---|---|---|
| 10/29/2021 | 119 | CERTIFICATE OF SERVICE by All Defendants filed by Jason Scott Leiker on behalf of Defendants Textor Maschinenbau GmbH, Textor, Inc., Weber Maschinenbau GmbH Breidenbach, Weber Maschinenbau GmbH Neubrandenburg, Weber, Inc..(Leiker, Jason) (Entered: 10/29/2021) |
| 11/03/2021 | 120 | Minute Entry. Proceedings held before District Judge Stephen R. Bough: Monthly Telephone STATUS CONFERENCE held on 11/3/2021. Time in court: 1:30 p.m. to 1:40 p.m. To order a transcript of this hearing please contact Gayle Wambolt, 816-512-5641, gayle_wambolt@mow.uscourts.gov. This is a TEXT ONLY ENTRY. No document is attached. (Richard, Tracey) (Entered: 11/03/2021) |
| 11/03/2021 | 121 | On November 3, 2021, the Court presided over a telephone conference with the parties. For the reasons stated during the telephone conference, it is hereby ORDERED that: (1) on or before November 10, 2021, Defendants shall file a motion for protective order; (2) on or before November 15, 2021, Plaintiff shall file a response; (3) the parties' briefs shall not exceed 15 pages in length; and (4) oral argument on the motion for protective order shall be heard during the telephone conference set for November 17, 2021, at 9:00 a.m. Signed on 11/3/2021 by District Judge Stephen R. Bough. This is a TEXT ONLY ENTRY. No document is attached. (Richard, Tracey) (Entered: 11/03/2021) |
| 11/05/2021 | 122 | CERTIFICATE OF SERVICE by All Defendants *Defendants Third Set of Interrogatories to Plaintiff (Nos. 12-14)* filed by Jason Scott Leiker on behalf of Defendants Textor Maschinenbau GmbH, Textor, Inc., Weber Maschinenbau GmbH Breidenbach, Weber Maschinenbau GmbH Neubrandenburg, Weber, Inc..(Leiker, Jason) (Entered: 11/05/2021) |
| 11/10/2021 | 123 | MOTION for protective order filed by Jason Scott Leiker on behalf of All Defendants. Suggestions in opposition/response due by 11/24/2021 unless otherwise directed by the court. (Attachments: # 1 Exhibit A-Proposed Protective Order)(Leiker, Jason) (Entered: 11/10/2021) |
| 11/10/2021 | 124 | SUGGESTIONS in support re 123 MOTION for protective order filed by Jason Scott Leiker on behalf of Defendants Textor Maschinenbau GmbH, Textor, Inc., Weber Maschinenbau GmbH Breidenbach, Weber Maschinenbau GmbH Neubrandenburg, Weber, Inc.. (Attachments: # 1 Exhibit B, # 2 Exhibit C, # 3 Exhibit D, # 4 Exhibit E, # 5 Exhibit F, # 6 Exhibit G, # 7 Exhibit H, # 8 Exhibit I, # 9 Exhibit J, # 10 Exhibit K, # 11 Exhibit L, # 12 Exhibit M, # 13 Exhibit N, # 14 Exhibit O, # 15 Exhibit P, # 16 Exhibit Q, # 17 Exhibit R, # 18 Exhibit S, # 19 Exhibit T, # 20 Exhibit U, # 21 Exhibit V, # 22 Exhibit W, # 23 Exhibit X, # 24 Exhibit Y, # 25 Exhibit Z, # 26 Exhibit AA, # 27 Exhibit BB)(Related document(s) 123 ) (Leiker, Jason) (Entered: 11/10/2021) |
| 11/10/2021 | 125 | CERTIFICATE of counsel by Jason Scott Leiker on behalf of All Defendants (Leiker, Jason) (Entered: 11/10/2021) |
| 11/11/2021 | 126 | CERTIFICATE OF SERVICE by All Defendants *Notice of Intent to Issue Subpoena* filed by Jason Scott Leiker on behalf of Defendants Textor Maschinenbau GmbH, Textor, Inc., Weber Maschinenbau GmbH Breidenbach, Weber Maschinenbau GmbH Neubrandenburg, Weber, Inc..(Leiker, Jason) (Entered: 11/11/2021) |
| 11/15/2021 | 127 | CERTIFICATE OF SERVICE by All Defendants filed by Jason Scott Leiker on behalf of Defendants Textor Maschinenbau GmbH, Textor, Inc., Weber Maschinenbau GmbH Breidenbach, Weber Maschinenbau GmbH Neubrandenburg, Weber, Inc..(Leiker, Jason) (Entered: 11/15/2021) |

Appx275

| 11/15/2021 | 128 | MOTION for leave to file *Plaintiff's Response to Defendants' Suggestions in Support of Motion for Protective Order, Declaration of M. Babbit and Its Exhibits Under Seal* filed by Jeffrey J. Simon on behalf of Provisur Technologies, Inc.. Suggestions in opposition/response due by 11/29/2021 unless otherwise directed by the court. (Simon, Jeffrey) (Entered: 11/15/2021) |
|---|---|---|
| 11/16/2021 | 129 | Before the Court is Plaintiff's Motion for Leave to File Plaintiff's Response to Defendants' Suggestions in Support of Motion for Protective Order, Declaration of Michael G. Babbit, and its Exhibits Under Seal. (Doc. #128.) For good cause shown the motion is GRANTED. Signed on 11/16/2021 by District Judge Stephen R. Bough. This is a TEXT ONLY ENTRY. No document is attached. (Richard, Tracey) (Entered: 11/16/2021) |
| 11/16/2021 | 130 | SUGGESTIONS in opposition (SEALED) re 123 MOTION for protective order filed by Jeffrey J. Simon on behalf of Plaintiff Provisur Technologies, Inc.. Reply suggestions due by 11/30/2021 unless otherwise directed by the court. (Attachments: # 1 Affidavit FILED UNDER SEAL-Declaration of Michael G. Babbitt, # 2 Exhibit A - FILED UNDER SEAL, # 3 Exhibit B - FILED UNDER SEAL, # 4 Exhibit C - FILED UNDER SEAL, # 5 Exhibit D - FILED UNDER SEAL, # 6 Exhibit E - FILED UNDER SEAL, # 7 Exhibit F - FILED UNDER SEAL, # 8 Exhibit G - FILED UNDER SEAL, # 9 Exhibit H - FILED UNDER SEAL, # 10 Exhibit I - FILED UNDER SEAL)(Related document(s) 123 ) (Simon, Jeffrey) (Entered: 11/16/2021) |
| 11/17/2021 | 131 | Minute Entry. Proceedings held before District Judge Stephen R. Bough: Discovery Dispute TELEPHONE CONFERENCE held on 11/17/2021. Order to be entered. Time in court: 9:00 a.m. to 9:45 a.m. To order a transcript of this hearing please contact Gayle Wambolt, 816-512-5641, gayle_wambolt@mow.uscourts.gov. This is a TEXT ONLY ENTRY. No document is attached. (Richard, Tracey) (Entered: 11/17/2021) |
| 11/17/2021 | 132 | On November 17, 2021, the Court presided over a telephone conference with the parties. For the reasons stated during the telephone conference, it is hereby ORDERED that Defendants' Motion for Protective Order (Doc. #123) is DENIED. The parties may consult the transcript for further details. Signed on 11/17/2021 by District Judge Stephen R. Bough. This is a TEXT ONLY ENTRY. No document is attached. (Richard, Tracey) (Entered: 11/17/2021) |
| 11/18/2021 | | Set/Reset Hearings: Monthly Telephonic Status Conference set for 12/1/2021 09:30 AM before District Judge Stephen R. Bough. For the purpose of Daily Docket only, no notice to be sent. (Richard, Tracey) (Entered: 11/18/2021) |
| 11/19/2021 | 133 | SEALED TRANSCRIPT of Teleconference held November 17, 2021 before Judge Stephen R. Bough. Court Reporter: Gayle Wambolt, 816-512-5641, gayle_wambolt@mow.uscourts.gov. Number of pages: 30.(Wambolt, Gayle) (Entered: 11/19/2021) |
| 11/22/2021 | 134 | CERTIFICATE OF SERVICE by All Defendants *Defendants First Set of Requests for Admission (Nos. 1-28)* filed by Jason Scott Leiker on behalf of Defendants Textor Maschinenbau GmbH, Textor, Inc., Weber Maschinenbau GmbH Breidenbach, Weber Maschinenbau GmbH Neubrandenburg, Weber, Inc..(Leiker, Jason) (Entered: 11/22/2021) |
| 11/22/2021 | 135 | CERTIFICATE OF SERVICE by Provisur Technologies, Inc. filed by Jeffrey J. Simon on behalf of Plaintiff Provisur Technologies, Inc..(Simon, Jeffrey) (Entered: 11/22/2021) |
| 11/22/2021 | 136 | CERTIFICATE OF SERVICE by Provisur Technologies, Inc. filed by Jeffrey J. Simon on behalf of Plaintiff Provisur Technologies, Inc..(Simon, Jeffrey) (Entered: 11/22/2021) |
| 11/22/2021 | 137 | CERTIFICATE OF SERVICE by Provisur Technologies, Inc. filed by Jeffrey J. Simon on |

|            |     | behalf of Plaintiff Provisur Technologies, Inc..(Simon, Jeffrey) (Entered: 11/22/2021) |
|------------|-----|-----------------------------------------------------------------------------------------|
| 11/22/2021 | 138 | CERTIFICATE OF SERVICE by Provisur Technologies, Inc. filed by Jeffrey J. Simon on behalf of Plaintiff Provisur Technologies, Inc..(Simon, Jeffrey) (Entered: 11/22/2021) |
| 11/22/2021 | 139 | CERTIFICATE OF SERVICE by Provisur Technologies, Inc. filed by Jeffrey J. Simon on behalf of Plaintiff Provisur Technologies, Inc..(Simon, Jeffrey) (Entered: 11/22/2021) |
| 11/22/2021 | 140 | CERTIFICATE OF SERVICE by Provisur Technologies, Inc. filed by Jeffrey J. Simon on behalf of Plaintiff Provisur Technologies, Inc..(Simon, Jeffrey) (Entered: 11/22/2021) |
| 11/22/2021 | 141 | CERTIFICATE OF SERVICE by Provisur Technologies, Inc. filed by Jeffrey J. Simon on behalf of Plaintiff Provisur Technologies, Inc..(Simon, Jeffrey) (Entered: 11/22/2021) |
| 11/30/2021 | 142 | CERTIFICATE OF SERVICE by All Defendants *Defendants' Fifth Supplemental Responses and Objections to Plaintiff's Fourth Set of Interrogatories (No. 11)* filed by Jason Scott Leiker on behalf of Defendants Textor Maschinenbau GmbH, Textor, Inc., Weber Maschinenbau GmbH Breidenbach, Weber Maschinenbau GmbH Neubrandenburg, Weber, Inc..(Leiker, Jason) (Entered: 11/30/2021) |
| 12/01/2021 | 143 | Minute Entry. Proceedings held before District Judge Stephen R. Bough: MONTHLY STATUS CONFERENCE held on 12/1/2021. Order to be entered. Time in court: 9:35 a.m. to 10:15 a.m. To order a transcript of this hearing please contact Gayle Wambolt, 816-512-5641, gayle_wambolt@mow.uscourts.gov. This is a TEXT ONLY ENTRY. No document is attached. (Richard, Tracey) (Entered: 12/01/2021) |
| 12/01/2021 | 144 | **AMENDED** NOTICE OF HEARING - This is the official notice for this hearing. This is a TEXT ONLY ENTRY. No document is attached. The bi-weekly Status Conference PREVIOUSLY set for 12/15/2021 is **RESET for 12/13/2021 at 10:00 AM in Courtroom 7B,** Kansas City (SRB) before District Judge Stephen R. Bough. (Richard, Tracey) (Entered: 12/01/2021) |
| 12/01/2021 | 145 | On December 1, 2021, the Court presided over a telephone conference with the parties. For the reasons stated during the telephone conference, it is hereby ORDERED that (1) Plaintiff shall limit its list of witnesses to be deposed to twelve (12) individuals; (2) Defendants have adequately responded to Plaintiff's interrogatories regarding design arounds; (3) on or before December 10, 2021, Defendants shall produce remaining additional documents; and (4) on December 13, 2021, the Court will preside over a hearing to address any proposed revisions to the existing scheduling order. The parties may consult the transcript for further details. Signed on 12/1/2021 by District Judge Stephen R. Bough. This is a TEXT ONLY ENTRY. No document is attached. (Richard, Tracey) (Entered: 12/01/2021) |
| 12/07/2021 | 146 | NOTICE to take deposition of Gregg Cissell filed by Craig C. Martin on behalf of Plaintiff Provisur Technologies, Inc..(Martin, Craig) (Entered: 12/07/2021) |
| 12/07/2021 | 147 | NOTICE to take deposition of Russell Stroner filed by Craig C. Martin on behalf of Plaintiff Provisur Technologies, Inc..(Martin, Craig) (Entered: 12/07/2021) |
| 12/09/2021 | 148 | SEALED TRANSCRIPT of Teleconference held December 1, 2021, before Judge Stephen R. Bough. Court Reporter: Gayle Wambolt, 816-512-5641, gayle_wambolt@mow.uscourts.gov. Number of pages: 27.(Wambolt, Gayle) (Entered: 12/09/2021) |
| 12/13/2021 | 149 | Minute Entry. Proceedings held before District Judge Stephen R. Bough: STATUS CONFERENCE held on 12/13/2021. Order to be entered. Time in court: 10:00 a.m. to 11:01 a.m. To order a transcript of this hearing please contact Gayle Wambolt, 816-512- |

**Appx277**

| | | |
|---|---|---|
| | | 5641, gayle_wambolt@mow.uscourts.gov. This is a TEXT ONLY ENTRY. No document is attached. (Richard, Tracey) (Entered: 12/13/2021) |
| 12/13/2021 | 150 | NOTICE OF HEARING - This is the official notice for this hearing. This is a TEXT ONLY ENTRY. No document is attached. Monthly Status Conferences are set for 1/4/2022 at 9:00 AM and 2/17/2022 at 8:30 AM in Courtroom 7B, Kansas City (SRB) before District Judge Stephen R. Bough. (Richard, Tracey) (Entered: 12/13/2021) |
| 12/13/2021 | 151 | ORDER CONCERNING DEPOSITIONS OF FOREIGN CITIZENS RESIDENT IN THE EUROPEAN UNION. Signed on 12/13/2021 by District Judge Stephen R. Bough. (Richard, Tracey) (Entered: 12/13/2021) |
| 12/13/2021 | 152 | On December 13, 2021, the Court presided over a status conference with the parties. For the reasons stated during the status conference, it is hereby ORDERED that: (1) at this time, Plaintiff's request to depose Guenther Weber is DENIED WITHOUT PREJUDICE; (2) at this time, Defendants' request to depose William Crown is DENIED WITHOUT PREJUDICE; and (3) on or before December 20, 2021, (a) Plaintiff and Defendants shall inform opposing counsel whether they know the location of a functioning Powermax4000; and (b) Plaintiff and Defendants' counsel shall work on a stipulation regarding the Powermax4000. Signed on 12/13/2021 by District Judge Stephen R. Bough. This is a TEXT ONLY ENTRY. No document is attached. (Richard, Tracey) (Entered: 12/13/2021) |
| 12/13/2021 | 153 | The parties have submitted to the Court a revised discovery schedule. For good cause shown, the parties' revised discovery schedule is GRANTED. It is hereby ORDERED that: (1) the close of fact discovery is extended to February 4, 2022; (2) opening expert reports are due on or before February 23, 2022; (3) rebuttal reports are due on or before March 18, 2022; (4) the close of expert discovery is April 8, 2022; and (5) dispositive motions are due on or before April 22, 2022. Signed on 12/13/2021 by District Judge Stephen R. Bough. This is a TEXT ONLY ENTRY. No document is attached. (Richard, Tracey) (Entered: 12/13/2021) |
| 12/16/2021 | 154 | CERTIFICATE OF SERVICE by All Defendants *Responses and Objections to Plaintiff's Fourth Set of Requests for the Production of Documents and Things (Nos. 90-105)* filed by Jason Scott Leiker on behalf of Defendants Textor Maschinenbau GmbH, Textor, Inc., Weber Maschinenbau GmbH Breidenbach, Weber Maschinenbau GmbH Neubrandenburg, Weber, Inc..(Leiker, Jason) (Entered: 12/16/2021) |
| 12/20/2021 | 155 | SEALED TRANSCRIPT of Discovery Dispute Hearing held December 13, 2021, before Judge Stephen R. Bough. Court Reporter: Gayle Wambolt, 816-512-5641, gayle_wambolt@mow.uscourts.gov. Number of pages: 46.(Wambolt, Gayle) (Entered: 12/20/2021) |
| 12/22/2021 | 156 | CERTIFICATE OF SERVICE by All Defendants filed by Jason Scott Leiker on behalf of Defendants Textor Maschinenbau GmbH, Textor, Inc., Weber Maschinenbau GmbH Breidenbach, Weber Maschinenbau GmbH Neubrandenburg, Weber, Inc..(Leiker, Jason) (Entered: 12/22/2021) |
| 12/22/2021 | 157 | CERTIFICATE OF SERVICE by Provisur Technologies, Inc. *for its Responses to Defendants' First Set of Requests for Admission* filed by Taylor Brooke Concannon Hausmann on behalf of Plaintiff Provisur Technologies, Inc..(Concannon Hausmann, Taylor) (Entered: 12/22/2021) |
| 12/29/2021 | 158 | Motion to allow Ren-How Harn to appear pro hac vice (Pro Hac fee $100 receipt number AMOWDC-7729119) filed by Taylor Brooke Concannon Hausmann on behalf of Provisur Technologies, Inc.. (Concannon Hausmann, Taylor) (Entered: 12/29/2021) |

Appx278

| | | |
|---|---|---|
| 12/29/2021 | [159](#) | Motion to allow Mitchell Feldhake to appear pro hac vice (Pro Hac fee $100 receipt number AMOWDC-7729130) filed by Taylor Brooke Concannon Hausmann on behalf of Provisur Technologies, Inc.. (Concannon Hausmann, Taylor) (Entered: 12/29/2021) |
| 12/29/2021 | 160 | ORDER granting [158](#) and [159](#) motion to appear pro hac vice entered by Clerk of Court. Attorney Ren-How H. Harn and Mitchell Feldhake for Provisur Technologies, Inc. allowed to appear pro hac vice. This entry will serve as authorization for the pro hac participation by the attorney.<br><br>Western District of Missouri Local Rule 5.1 requires documents to be filed electronically. If pro hac vice counsel has not already done so, counsel is directed to immediately register for a WDMO e-filing account for NextGen CM/ECF. This will enable counsel to electronically file documents and receive electronic notification of filings. Register for a WDMO e-filing account at [PACER](#). This is a TEXT ONLY ENTRY. No document is attached. (Warren, Melissa) (Entered: 12/29/2021) |
| 01/04/2022 | 161 | Minute Entry. Proceedings held before District Judge Stephen R. Bough: MONTHLY STATUS CONFERENCE held on 1/4/2022. Order to be entered. Time in court: 9:00 a.m. to 10:35 a.m. To order a transcript of this hearing please contact Gayle Wambolt, 816-512-5641, gayle_wambolt@mow.uscourts.gov. This is a TEXT ONLY ENTRY. No document is attached. (Richard, Tracey) (Entered: 01/04/2022) |
| 01/04/2022 | 162 | On January 4, 2022, the Court presided over a hearing to resolve discovery disputes raised by the parties. The Court resolved the parties' disputes as set forth on the record. The parties may consult the transcript for details on the Court's rulings and further instructions. Signed on 1/4/2022 by District Judge Stephen R. Bough. This is a TEXT ONLY ENTRY. No document is attached. (Richard, Tracey) (Entered: 01/04/2022) |
| 01/10/2022 | [163](#) | ORDER for authority to seek inspection. Signed on 1/10/2021 by District Judge Stephen R. Bough. (Richard, Tracey) (Entered: 01/10/2022) |
| 01/10/2022 | [164](#) | ELECTRONIC TRANSCRIPT of Status Conference held January 4, 2022, before Judge Stephen R. Bough. Court Reporter: Gayle Wambolt, 816-512-5641, gayle_wambolt@mow.uscourts.gov. Number of pages: 68. NOTICE RE: REDACTION OF TRANSCRIPTS: Within 7 calendar days of this filing, each party shall inform the Court, by filing a Notice of Redaction, of the parties' intent to redact personal data identifiers from the electronic transcript of the court proceeding. The policy is located on our website at www.mow.uscourts.gov. Please read this policy carefully. **NOTICE: Attorneys must contact the court reporter for copies during this 90 day period. If necessary, Notice of Intent to Redact is due by 1/18/2022 unless otherwise directed by the court. Release of Transcript Restriction set for 4/11/2022. NOTICE: Attorneys must contact the court reporter for copies during this 90 day period.**<br><br>(Wambolt, Gayle) (Entered: 01/10/2022) |
| 01/12/2022 | [165](#) | NOTICE of appearance by Michael M. Tamburini on behalf of All Defendants (Attorney Michael M. Tamburini added to party Textor Maschinenbau GmbH(pty:dft), Attorney Michael M. Tamburini added to party Textor, Inc.(pty:dft), Attorney Michael M. Tamburini added to party Weber Maschinenbau GmbH Breidenbach(pty:dft), Attorney Michael M. Tamburini added to party Weber Maschinenbau GmbH Neubrandenburg(pty:dft), Attorney Michael M. Tamburini added to party Weber, Inc. (pty:dft))(Tamburini, Michael) (Entered: 01/12/2022) |
| 01/18/2022 | [166](#) | CERTIFICATE OF SERVICE by All Defendants *Response to Plaintiffs Interrogatory to Defendants on the Issue of the Powermax4000* filed by Jason Scott Leiker on behalf of Defendants Textor Maschinenbau GmbH, Textor, Inc., Weber Maschinenbau GmbH |

Appx279

| | | Breidenbach, Weber Maschinenbau GmbH Neubrandenburg, Weber, Inc..(Leiker, Jason) (Entered: 01/18/2022) |
|---|---|---|
| 01/21/2022 | 167 | CERTIFICATE OF SERVICE by All Defendants filed by Jason Scott Leiker on behalf of Defendants Textor Maschinenbau GmbH, Textor, Inc., Weber Maschinenbau GmbH Breidenbach, Weber Maschinenbau GmbH Neubrandenburg, Weber, Inc..(Leiker, Jason) (Entered: 01/21/2022) |
| 01/26/2022 | 168 | CERTIFICATE OF SERVICE by Provisur Technologies, Inc. *(Proof of Service)* filed by Craig C. Martin on behalf of Plaintiff Provisur Technologies, Inc..(Martin, Craig) (Entered: 01/26/2022) |
| 01/27/2022 | 169 | CERTIFICATE OF SERVICE by All Defendants *Second Supplemental Responses and Objections to Plaintiffs First Set of Interrogatories (No. 10)* filed by Jason Scott Leiker on behalf of Defendants Textor Maschinenbau GmbH, Textor, Inc., Weber Maschinenbau GmbH Breidenbach, Weber Maschinenbau GmbH Neubrandenburg, Weber, Inc..(Leiker, Jason) (Entered: 01/27/2022) |
| 01/31/2022 | 170 | NOTICE OF HEARING - This is the official notice for this hearing. This is a TEXT ONLY ENTRY. No document is attached. Telephonic Status Conference set for 2/9/2022 at 10:00 AM before District Judge Stephen R. Bough. (Richard, Tracey) (Entered: 01/31/2022) |
| 02/07/2022 | 171 | CERTIFICATE OF SERVICE by Provisur Technologies, Inc. filed by Taylor Brooke Concannon Hausmann on behalf of Plaintiff Provisur Technologies, Inc..(Concannon Hausmann, Taylor) (Entered: 02/07/2022) |
| 02/08/2022 | | Set/Reset Hearings: Monthly Status Conference set for 2/17/2022 at 8:30 AM in Courtroom 7B, Kansas City (SRB) before District Judge Stephen R. Bough. (Richard, Tracey) For the purpose of Daily Docket only, no notice to be sent. (Entered: 02/08/2022) |
| 02/08/2022 | | Set/Reset Hearings: Telephonic Status Conference set for 2/9/2022 at 10:00 AM before District Judge Stephen R. Bough. Monthly Status Conference set for 2/17/2022 08:30 AM in Courtroom 7B, Kansas City (SRB) before District Judge Stephen R. Bough. (Richard, Tracey) For the purpose of Daily Docket only, no notice to be sent. (Entered: 02/08/2022) |
| 02/09/2022 | 172 | Minute Entry. Proceedings held before District Judge Stephen R. Bough: Telephonic STATUS CONFERENCE held on 2/9/2022. Order to be entered. Time in court: 10:00 a.m. to 10:10 a.m. To order a transcript of this hearing please contact Gayle Wambolt, 816-512-5641, gayle_wambolt@mow.uscourts.gov. This is a TEXT ONLY ENTRY. No document is attached. (Richard, Tracey) (Entered: 02/09/2022) |
| 02/09/2022 | 173 | On February 9, 2022, the Court presided over a telephonic conference with the parties. For the reasons stated on the record, it is hereby ORDERED that: (1) on or before February 16, 2022 at 12:00 p.m. (CST) the parties shall submit discovery dispute memorandums pursuant to Local Rule 37.1, not to exceed 25 pages in length; and (2) the Court shall resolve the issues raised in the parties' discovery dispute memorandums at the monthly in-person status conference set for February 17, 2022 at 8:30 a.m. (CST). Signed on 2/9/2022 by District Judge Stephen R. Bough. This is a TEXT ONLY ENTRY. No document is attached. (Richard, Tracey) (Entered: 02/09/2022) |
| 02/15/2022 | 174 | **AMENDED** NOTICE OF HEARING - This is the official notice for this hearing. This is a TEXT ONLY ENTRY. No document is attached. **TELEPHONIC** Monthly Status Conference set for 2/17/2022 at 8:30 AM before District Judge Stephen R. Bough. (Richard, Tracey) Amended as to LOCATION only, call-in numbers will be emailed to counsel. (Entered: 02/15/2022) |

| 02/17/2022 | 175 | Minute Entry. Proceedings held before District Judge Stephen R. Bough: Monthly STATUS CONFERENCE held on 2/17/2022. Order to be entered. Time in court: 8:30 a.m. to 9:33 a.m. To order a transcript of this hearing please contact Gayle Wambolt, 816-512-5641, gayle_wambolt@mow.uscourts.gov. This is a TEXT ONLY ENTRY. No document is attached. (Richard, Tracey) (Entered: 02/17/2022) |
|---|---|---|
| 02/17/2022 | 176 | On February 17, 2022, the Court presided over a telephonic discovery dispute conference with the parties. For the reasons stated during the telephone conference, it is hereby ORDERED that: (1) Defendants may take the deposition of Jason Green. Defendants may question Mr. Green for a total of two hours, and Plaintiff may question Mr. Green for a total of two hours; (2) Defendants may depose Plaintiff's Rule 30(b)(6) witness on the source code issue for a total of two hours; (3) Plaintiff cannot take the depositions of Norbert Muehlich, Ron Lussier, or Carsten Reisz; (4) regarding the Patent Management Group issues, on or before February 25, 2022, Defendants shall produce the relevant documents to the Court for an in camera review. In addition, Plaintiff and Defendants may file a brief regarding the relevant issues on or before February 25, 2022; (5) the Court does not deem Plaintiffs requests for admission to be admitted; and (6) within seven days from the date of this Order, the parties shall submit a joint proposed scheduling order for Provisur III, Case No. 21-cv-06113. The parties may consult the transcript for further details. Signed on 2/17/2022 by District Judge Stephen R. Bough. This is a TEXT ONLY ENTRY. No document is attached. (Richard, Tracey) (Entered: 02/17/2022) |
| 02/23/2022 | 177 | STIPULATION *Joint Stipulation Extending Expert Discovery Deadlines* by Provisur Technologies, Inc.. (Simon, Jeffrey) (Entered: 02/23/2022) |
| 02/23/2022 | 178 | ELECTRONIC TRANSCRIPT of Teleconference held February 17, 2022, before Judge Stephen R. Bough. Court Reporter: Gayle Wambolt, 816-512-5641, gayle_wambolt@mow.uscourts.gov. Number of pages: 47. NOTICE RE: REDACTION OF TRANSCRIPTS: Within 7 calendar days of this filing, each party shall inform the Court, by filing a Notice of Redaction, of the parties' intent to redact personal data identifiers from the electronic transcript of the court proceeding. The policy is located on our website at www.mow.uscourts.gov. Please read this policy carefully. **NOTICE: Attorneys must contact the court reporter for copies during this 90 day period. If necessary, Notice of Intent to Redact is due by 3/2/2022 unless otherwise directed by the court. Release of Transcript Restriction set for 5/24/2022. NOTICE: Attorneys must contact the court reporter for copies during this 90 day period.** (Wambolt, Gayle) (Entered: 02/23/2022) |
| 02/23/2022 | 179 | Before the Court is a Joint Stipulation Extending Expert Discovery Deadlines. (Doc. #177.) Upon review, the stipulated extensions are GRANTED. It is hereby ORDERED that the deadline for service of opening expert reports for the party bearing burden of proof is extended to on or before March 2, 2022; the deadline for service of rebuttal expert reports is extended to on or before March 25, 2022; and the deadline for the close of expert discovery is extended to on or before April 15, 2022. Signed on 2/23/2022 by District Judge Stephen R. Bough. This is a TEXT ONLY ENTRY. No document is attached. (Houston, Kiambu) (Entered: 02/23/2022) |
| 02/25/2022 | 180 | MOTION to seal document 176 Order,,,,, *Defendants Memorandum of Privilege Dispute per the Courts February 17, 2022 Order and Exhibits A-O submitted in support* filed by Jason Scott Leiker on behalf of All Defendants. Suggestions in opposition/response due by 3/11/2022 unless otherwise directed by the court. (Related document(s) 176 ) (Leiker, Jason) (Entered: 02/25/2022) |

Appx281

| 02/25/2022 | 181 | MOTION to seal document *(Brief) and Suggestions in Support* filed by Jeffrey J. Simon on behalf of Provisur Technologies, Inc.. Suggestions in opposition/response due by 3/11/2022 unless otherwise directed by the court. (Simon, Jeffrey) (Entered: 02/25/2022) |
|---|---|---|
| 02/28/2022 | 182 | Before the Court is Defendants' Motion for Leave to File Under Seal and Suggestions in Support (Doc. 180 ). For good cause shown, the motion is GRANTED. Defendants may file their Memorandum of Privilege Dispute and exhibits under seal. Signed on 2/28/22 by District Judge Stephen R. Bough. This is a TEXT ONLY ENTRY. No document is attached. (Anderson, Christy) (Entered: 02/28/2022) |
| 02/28/2022 | 183 | Before the Court is Plaintiff's Motion for Leave to File Brief Under Seal and Suggestions in Support (Doc. 181 ). For good cause shown, the motion is GRANTED. Plaintiff may file its Brief in Support of Motion to Compel under seal. Signed on 2/28/22 by District Judge Stephen R. Bough. This is a TEXT ONLY ENTRY. No document is attached. (Anderson, Christy) (Entered: 02/28/2022) |
| 02/28/2022 | 184 | NOTICE (SEALED) by Textor Maschinenbau GmbH, Textor, Inc., Weber Maschinenbau GmbH Breidenbach, Weber Maschinenbau GmbH Neubrandenburg, Weber, Inc. re 176 Order,,,,, 182 Order on Motion to Seal Document, (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F, # 7 Exhibit G, # 8 Exhibit H, # 9 Exhibit I, # 10 Exhibit J, # 11 Exhibit K, # 12 Exhibit L, # 13 Exhibit M, # 14 Exhibit N, # 15 Exhibit O)(Leiker, Jason) (Entered: 02/28/2022) |
| 02/28/2022 | 185 | NOTICE (SEALED) by Provisur Technologies, Inc. *of Plaintiff's Brief in Support of Motion to Compel the Discovery of Non-Privileged Testimonial and Documentary Evidence* (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C)(Simon, Jeffrey) (Entered: 02/28/2022) |
| 03/01/2022 | 186 | NOTICE of filing *Status Update of Post-Grant Proceedings* by Provisur Technologies, Inc. (Concannon Hausmann, Taylor) (Entered: 03/01/2022) |
| 03/01/2022 | 187 | MOTION for leave to file *Plaintiff's Motion for Leave to File Limited Response to Defendants' Memorandum of Privilege Dispute* filed by Jeffrey J. Simon on behalf of Provisur Technologies, Inc.. Suggestions in opposition/response due by 3/15/2022 unless otherwise directed by the court. (Attachments: # 1 Exhibit A - Provisur's Proposed Limited Response)(Simon, Jeffrey) (Entered: 03/01/2022) |
| 03/01/2022 | 188 | Before the Court is Plaintiff's Motion for Leave to File Limited Response to Defendants' Memorandum of Privilege Dispute (Doc. 187 ). Upon review, and for good cause shown, the motion is GRANTED. Signed on 3/1/22 by District Judge Stephen R. Bough. This is a TEXT ONLY ENTRY. No document is attached. (Anderson, Christy) (Entered: 03/01/2022) |
| 03/01/2022 | 189 | RESPONSE to motion *(Limited) Response to Defendants' Memorandum of Privilege Dispute* filed by Jeffrey J. Simon on behalf of Plaintiff Provisur Technologies, Inc.. Reply suggestions due by 3/15/2022 unless otherwise directed by the court. (Simon, Jeffrey) (Entered: 03/01/2022) |
| 03/02/2022 | 190 | CERTIFICATE OF SERVICE by All Defendants filed by Jason Scott Leiker on behalf of Defendants Textor Maschinenbau GmbH, Textor, Inc., Weber Maschinenbau GmbH Breidenbach, Weber Maschinenbau GmbH Neubrandenburg, Weber, Inc..(Leiker, Jason) (Entered: 03/02/2022) |
| 03/03/2022 | 191 | CERTIFICATE OF SERVICE by Provisur Technologies, Inc. filed by Taylor Brooke Concannon Hausmann on behalf of Plaintiff Provisur Technologies, Inc..(Concannon Hausmann, Taylor) (Entered: 03/03/2022) |

| 03/03/2022 | 192 | CERTIFICATE OF SERVICE by Provisur Technologies, Inc. filed by Taylor Brooke Concannon Hausmann on behalf of Plaintiff Provisur Technologies, Inc..(Concannon Hausmann, Taylor) (Entered: 03/03/2022) |
| 03/10/2022 | 193 | REPLY to answer filed by Jason Scott Leiker on behalf of Defendants Textor Maschinenbau GmbH, Textor, Inc., Weber Maschinenbau GmbH Breidenbach, Weber Maschinenbau GmbH Neubrandenburg, Weber, Inc.. (Related document(s) 189 ) (Leiker, Jason) (Entered: 03/10/2022) |
| 03/17/2022 | 194 | STATUS REPORT *of Post-Grant Proceedings* by Provisur Technologies, Inc.. (Concannon Hausmann, Taylor) (Entered: 03/17/2022) |
| 03/22/2022 | 195 | DISCOVERY ORDER. Signed on 3/22/2022 by District Judge Stephen R. Bough. (Richard, Tracey) (Entered: 03/22/2022) |
| 03/25/2022 | 196 | CERTIFICATE OF SERVICE by All Defendants filed by Jason Scott Leiker on behalf of Defendants Textor Maschinenbau GmbH, Textor, Inc., Weber Maschinenbau GmbH Breidenbach, Weber Maschinenbau GmbH Neubrandenburg, Weber, Inc..(Leiker, Jason) (Entered: 03/25/2022) |
| 03/28/2022 | 197 | CERTIFICATE OF SERVICE by Provisur Technologies, Inc. filed by Michael Babbitt on behalf of Plaintiff Provisur Technologies, Inc..(Babbitt, Michael) (Entered: 03/28/2022) |
| 04/06/2022 | 198 | CERTIFICATE OF SERVICE by All Defendants *Defendants' Supplemental Responses and Objections to Provisur Technologies, Inc.'s First Set of Interrogatories to Defendants (No. 2)* filed by Jason Scott Leiker on behalf of Defendants Textor Maschinenbau GmbH, Textor, Inc., Weber Maschinenbau GmbH Breidenbach, Weber Maschinenbau GmbH Neubrandenburg, Weber, Inc..(Leiker, Jason) (Entered: 04/06/2022) |
| 04/11/2022 | 199 | NOTICE of filing *(NOTICE OF DEPOSITION OF DEFENDANTS WITNESS THOMAS KURFESS)* by Provisur Technologies, Inc. (Babbitt, Michael) (Entered: 04/11/2022) |
| 04/11/2022 | 200 | NOTICE of filing *(NOTICE OF DEPOSITION OF DEFENDANTS WITNESS RICARDO VALERDI)* by Provisur Technologies, Inc. (Babbitt, Michael) (Entered: 04/11/2022) |
| 04/18/2022 | 201 | NOTICE to take deposition of Dr. Keith Vorst, expert witness for Plaintiff filed by Jason Scott Leiker on behalf of Defendants Textor Maschinenbau GmbH, Textor, Inc., Weber Maschinenbau GmbH Breidenbach, Weber Maschinenbau GmbH Neubrandenburg, Weber, Inc..(Leiker, Jason) (Entered: 04/18/2022) |
| 04/19/2022 | 202 | MOTION for extension of time filed by Jason Scott Leiker on behalf of All Defendants. Suggestions in opposition/response due by 5/3/2022 unless otherwise directed by the court. (Leiker, Jason) (Entered: 04/19/2022) |
| 04/19/2022 | 203 | Before the Court is Defendants' Unopposed Motion for Extension of Certain Deadlines in the Scheduling and Trial Order. (Doc. #273.) For good cause shown the motion is GRANTED. The deadline for dispositive and Daubert motions is extended to May 6, 2022. Signed on 4/19/2022 by District Judge Stephen R. Bough. This is a TEXT ONLY ENTRY. No document is attached. (Richard, Tracey) (Entered: 04/19/2022) |
| 04/19/2022 | 204 | After thorough review, the Court determines that the documents sought to be protected in Defendants' Supplemental Memorandum Regarding Privilege Per the Court's March 22, 2022 Order are subject to privilege and shall not be produced to Plaintiff. Signed on 4/19/2022 by District Judge Stephen R. Bough. This is a TEXT ONLY ENTRY. No document is attached. (Richard, Tracey) (Entered: 04/19/2022) |
| 04/27/2022 | 205 | CERTIFICATE OF SERVICE by All Defendants filed by Jason Scott Leiker on behalf of Defendants Textor Maschinenbau GmbH, Textor, Inc., Weber Maschinenbau GmbH |

| | | Breidenbach, Weber Maschinenbau GmbH Neubrandenburg, Weber, Inc..(Leiker, Jason) (Entered: 04/27/2022) |
|---|---|---|
| 05/06/2022 | [206](#) | MOTION to seal document *Defendants Suggestions in Support of Their Motion for Summary Judgment and corresponding exhibits* filed by Jason Scott Leiker on behalf of All Defendants. Suggestions in opposition/response due by 5/20/2022 unless otherwise directed by the court. (Leiker, Jason) (Entered: 05/06/2022) |
| 05/06/2022 | [207](#) | MOTION to seal document *Defendants Suggestions in Support of Their Motion to Exclude the Improper Expert Opinions of White and McGuire and corresponding exhibits* filed by Jason Scott Leiker on behalf of All Defendants. Suggestions in opposition/response due by 5/20/2022 unless otherwise directed by the court. (Leiker, Jason) (Entered: 05/06/2022) |
| 05/06/2022 | [208](#) | MOTION to seal document filed by Jeffrey J. Simon on behalf of Provisur Technologies, Inc.. Suggestions in opposition/response due by 5/20/2022 unless otherwise directed by the court. (Simon, Jeffrey) (Entered: 05/06/2022) |
| 05/06/2022 | [209](#) | MOTION for summary judgment *of non-infringement for all asserted claims of U.S. Patent Nos. 10,625,436 (the 436 patent) and 10,639,812 (the 812 patent)* filed by Jason Scott Leiker on behalf of All Defendants. Suggestions in opposition/response due by 5/27/2022 unless otherwise directed by the court. (Leiker, Jason) (Entered: 05/06/2022) |
| 05/06/2022 | 210 | Before the Court is Motion for Leave to File Under Seal and Suggestions in Support. (Doc. #207.) Upon review, the motion is GRANTED. Defendants may file under seal their suggestions in support of their Motion to Exclude the Improper Expert Opinions of White and McGuire. Signed on 5/6/2022 by District Judge Stephen R. Bough. This is a TEXT ONLY ENTRY. No document is attached. (Richard, Tracey) (Entered: 05/06/2022) |
| 05/06/2022 | 211 | Before the Court is Motion for Leave to File Plaintiff's Motion for Partial Summary Judgment and Suggestions in Support Under Seal. (Doc. #208.) Upon review, the motion is GRANTED. Plaintiff may file its motion for partial summary judgment and suggestions in support under seal. Signed on 5/6/2022 by District Judge Stephen R. Bough. This is a TEXT ONLY ENTRY. No document is attached. (Richard, Tracey) (Entered: 05/06/2022) |
| 05/06/2022 | 212 | Before the Court is Motion for Leave to File Under Seal and Suggestions in Support. (Doc. #206.) Upon review, the motion is GRANTED. Defendants may file under seal their memorandum in support of motion for summary judgment and corresponding exhibits. Signed on 5/6/2022 by District Judge Stephen R. Bough. This is a TEXT ONLY ENTRY. No document is attached. (Richard, Tracey) (Entered: 05/06/2022) |
| 05/06/2022 | [213](#) | Defendants' Motion to Exclude the Improper Opinions of White and McGuire by Textor Maschinenbau GmbH, Textor, Inc., Weber Maschinenbau GmbH Breidenbach, Weber Maschinenbau GmbH Neubrandenburg, Weber, Inc. (Leiker, Jason) Modified on 5/9/2022 to correct docket entry (Houston, Kiambu). (Entered: 05/06/2022) |
| 05/06/2022 | [214](#) | NOTICE (SEALED) by Textor Maschinenbau GmbH, Textor, Inc., Weber Maschinenbau GmbH Breidenbach, Weber Maschinenbau GmbH Neubrandenburg, Weber, Inc. re [213](#) Notice of filing, *Suggestions in Support of their Motion to Exclude the Improper Opinions of White and McGuire* (Attachments: # [1](#) Exhibit 1, # [2](#) Exhibit 2, # [3](#) Exhibit 3, # [4](#) Exhibit 4, # [5](#) Exhibit 5, # [6](#) Exhibit 6, # [7](#) Exhibit 7, # [8](#) Exhibit 8)(Leiker, Jason) (Entered: 05/06/2022) |
| 05/06/2022 | [215](#) | MOTION for partial summary judgment filed by Jeffrey J. Simon on behalf of Provisur Technologies, Inc.. Suggestions in opposition/response due by 5/27/2022 unless otherwise directed by the court. (Simon, Jeffrey) (Entered: 05/06/2022) |

| | | |
|---|---|---|
| 05/06/2022 | 216 | SUGGESTIONS in support (SEALED) re 215 MOTION for partial summary judgment filed by Jeffrey J. Simon on behalf of Plaintiff Provisur Technologies, Inc.. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5, # 6 Exhibit 6, # 7 Exhibit 7, # 8 Exhibit 8, # 9 Exhibit 9, # 10 Exhibit 10, # 11 Exhibit 11, # 12 Exhibit 12, # 13 Exhibit 13, # 14 Exhibit 14, # 15 Exhibit 15, # 16 Exhibit 16 - Part 1 of 3, # 17 Exhibit 16 - Part 2 of 3, # 18 Exhibit 16 - Part 3 of 3, # 19 Exhibit 17 - Part 1 of 3, # 20 Exhibit 17 - Part 2 of 3, # 21 Exhibit 17 - Part 3 of 3, # 22 Exhibit 18 - Part 1 of 8, # 23 Exhibit 18 - Part 2 of 8, # 24 Exhibit 18 - Part 3 of 8, # 25 Exhibit 18 - Part 4 of 8, # 26 Exhibit 18 - Part 5 of 8, # 27 Exhibit 18 - Part 6 of 8, # 28 Exhibit 18 - Part 7 of 8, # 29 Exhibit 18 - Part 8 of 8, # 30 Exhibit 19)(Related document(s) 215 ) (Simon, Jeffrey) (Entered: 05/06/2022) |
| 05/06/2022 | 217 | SUGGESTIONS in support (SEALED) re 209 MOTION for summary judgment *of non-infringement for all asserted claims of U.S. Patent Nos. 10,625,436 (the 436 patent) and 10,639,812 (the 812 patent)* filed by Jason Scott Leiker on behalf of Defendants Textor Maschinenbau GmbH, Textor, Inc., Weber Maschinenbau GmbH Breidenbach, Weber Maschinenbau GmbH Neubrandenburg, Weber, Inc.. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F, # 7 Exhibit G, # 8 Exhibit H, # 9 Exhibit I, # 10 Exhibit J, # 11 Exhibit K, # 12 Exhibit L, # 13 Exhibit M, # 14 Exhibit N, # 15 Exhibit O, # 16 Exhibit P)(Related document(s) 209 ) (Leiker, Jason) (Main Document 217 replaced on 5/13/2022) (Richard, Tracey). Modified on 5/13/2022 to reflect that the main document was replaced per Court Order entered on 5/12/2022 (Doc. #219) (Richard, Tracey). (Entered: 05/06/2022) |
| 05/06/2022 | | Set/Reset Deadlines as to 213 MOTION to exclude. Suggestions in opposition/response due by 5/20/2022 unless otherwise directed by the court. (Houston, Kiambu) (Entered: 05/09/2022) |
| 05/11/2022 | 218 | MOTION to amend/correct filed by Jason Scott Leiker on behalf of All Defendants. Suggestions in opposition/response due by 5/25/2022 unless otherwise directed by the court. (Leiker, Jason) (Entered: 05/11/2022) |
| 05/12/2022 | 219 | Before the Court is Defendants' Unopposed Motion for Leave to Amend Defendants' Suggestions in Support of Their Motion for Summary Judgment of Non-Infringement of the '436 and '812 Patents. (Doc. #218.) For good cause shown the motion is GRANTED. Defendants shall file their Amended Suggestions in Support on or before May 13, 2022. Signed on 5/12/2022 by District Judge Stephen R. Bough. This is a TEXT ONLY ENTRY. No document is attached. (Richard, Tracey) (Entered: 05/12/2022) |
| 05/13/2022 | 220 | NOTICE OF HEARING - This is the official notice for this hearing. This is a TEXT ONLY ENTRY. No document is attached. Discovery Dispute Telephone Conference set for 5/17/2022 at 9:00 AM before District Judge Stephen R. Bough. (Richard, Tracey) (Entered: 05/13/2022) |
| 05/16/2022 | 221 | CERTIFICATE OF SERVICE by Provisur Technologies, Inc. filed by Michael Babbitt on behalf of Plaintiff Provisur Technologies, Inc..(Babbitt, Michael) (Entered: 05/16/2022) |
| 05/17/2022 | 222 | Minute Entry. Proceedings held before District Judge Stephen R. Bough: Discovery Dispute TELEPHONE CONFERENCE held on 5/17/2022. Order to be entered. Time in court: 9:00 a.m. to 9:07 a.m. To order a transcript of this hearing please contact Gayle Wambolt, 816-512-5641, gayle_wambolt@mow.uscourts.gov. This is a TEXT ONLY ENTRY. No document is attached. (Richard, Tracey) (Entered: 05/17/2022) |
| 05/17/2022 | 223 | On May 17, 2022, the Court presided over a telephone conference with the parties. As stated on the record, it is hereby ORDERED that: (1) an in-person discovery dispute hearing is set for May 25, 2022, at 10:00 a.m. (CST) in courtroom 7B; and (2) the parties shall file a discovery dispute brief, not to exceed 10 pages in length, on or before 12:00 |

Appx285

| | | p.m. (CST) on May 24, 2022. Signed on 5/17/2022 by District Judge Stephen R. Bough. **This is a TEXT ONLY ENTRY. No document is attached.** (Richard, Tracey) (Entered: 05/17/2022) |
|---|---|---|
| 05/18/2022 | 224 | MOTION for leave to file *Plaintiff's Motion for Leave to Amend Plaintiff's Suggestions in Support of its Motion for Partial Summary Judgment Under Seal and Suggestions in Support* filed by Jeffrey J. Simon on behalf of Provisur Technologies, Inc.. Suggestions in opposition/response due by 6/1/2022 unless otherwise directed by the court. (Simon, Jeffrey) (Entered: 05/18/2022) |
| 05/18/2022 | 225 | Before the Court is a Motion for Leave to File Plaintiffs Motion for Leave to Amend Plaintiffs Suggestions in Support of its Motion for Partial Summary Judgment Under Seal and Suggestions in Support. (Doc. #224.) Upon review, the motion is GRANTED. Plaintiff may file its Motion for Leave to Amend Plaintiffs Suggestions in Support of its Motion for Partial Summary Judgment and the attached exhibit under seal. Signed on 5/18/2022 by District Judge Stephen R. Bough. **This is a TEXT ONLY ENTRY. No document is attached.** (Houston, Kiambu) (Entered: 05/18/2022) |
| 05/18/2022 | 226 | MOTION to seal document 216 Suggestions in Support of Motion (Sealed),,, *Plaintiff Provisur Technologies, Inc.'s Motion for Leave to Amend Plaintiff's Suggestions in Support of its Motion for Partial Summary Judgment* filed by Jeffrey J. Simon on behalf of Provisur Technologies, Inc.. Suggestions in opposition/response due by 6/1/2022 unless otherwise directed by the court. (Attachments: # 1 Exhibit 15)(Related document(s) 216 ) (Simon, Jeffrey) (Entered: 05/18/2022) |
| 05/18/2022 | 227 | Before the Court is Plaintiff's Motion for Leave to Amend Plaintiff's Suggestions in Support of its Motion for Partial Summary Judgment. (Doc. #226.) The motion states that Defendants do not oppose the motion. Upon review, the motion is GRANTED. Plaintiff may file replacement Exhibit 15 to its Suggestions in Support of its Motion for Partial Summary Judgment. Signed on 5/18/2022 by District Judge Stephen R. Bough. **This is a TEXT ONLY ENTRY. No document is attached.** (Richard, Tracey) (Entered: 05/18/2022) |
| 05/19/2022 | 228 | MOTION for extension of time *Unopposed Motion for Extension of Time to File Oppositions to Motion to Exclude Plaintiff's Experts* filed by Taylor Brooke Concannon Hausmann on behalf of Provisur Technologies, Inc.. Suggestions in opposition/response due by 6/2/2022 unless otherwise directed by the court. (Concannon Hausmann, Taylor) (Entered: 05/19/2022) |
| 05/19/2022 | 229 | Before the Court is Plaintiff's Unopposed Motion for Extension of Time to File Oppositions to Defendants' Motions to Exclude Plaintiff's Experts. (Doc. #228.) For good cause shown, the motion is GRANTED. Plaintiff shall file its response on or before May 27, 2022. Signed on 5/19/2022 by District Judge Stephen R. Bough. **This is a TEXT ONLY ENTRY. No document is attached.** (Richard, Tracey) (Entered: 05/19/2022) |
| 05/24/2022 | 230 | MOTION for leave to file *Motion for Leave to File Plaintiff's Motion to Compel Under Seal and Suggestions in Support* filed by Taylor Brooke Concannon Hausmann on behalf of Provisur Technologies, Inc.. Suggestions in opposition/response due by 6/7/2022 unless otherwise directed by the court. (Concannon Hausmann, Taylor) (Entered: 05/24/2022) |
| 05/24/2022 | 231 | Before the Court is Plaintiff's Motion for Leave to File Plaintiff's Motion to Compel Under Seal. (Doc. #230.) Upon review, the motion is GRANTED. Signed on 5/24/2022 by District Judge Stephen R. Bough. **This is a TEXT ONLY ENTRY. No document is attached.** (Richard, Tracey) (Entered: 05/24/2022) |
| 05/24/2022 | 232 | MOTION to seal document *Defendants Memorandum of Dispute per the Courts May 17, 2022 Order and corresponding exhibits* filed by Jason Scott Leiker on behalf of All |

| | | Defendants. Suggestions in opposition/response due by 6/7/2022 unless otherwise directed by the court. (Leiker, Jason) (Entered: 05/24/2022) |
|---|---|---|
| 05/24/2022 | 233 | Before the Court is Defendants' Motion for Leave to File Under Seal. (Doc. #232.) Upon review, the motion is GRANTED. Signed on 5/24/2022 by District Judge Stephen R. Bough. This is a TEXT ONLY ENTRY. No document is attached. (Richard, Tracey) (Entered: 05/24/2022) |
| 05/24/2022 | 234 | NOTICE (SEALED) by Textor Maschinenbau GmbH, Textor, Inc., Weber Maschinenbau GmbH Breidenbach, Weber Maschinenbau GmbH Neubrandenburg, Weber, Inc. re 223 Order,, *Defendants' Memorandum of Dispute Per the Court's May 17, 2022 Order* (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F, # 7 Exhibit G, # 8 Exhibit H, # 9 Exhibit I, # 10 Exhibit J, # 11 Exhibit K, # 12 Exhibit L, # 13 Exhibit M, # 14 Exhibit N, # 15 Exhibit O)(Leiker, Jason) (Entered: 05/24/2022) |
| 05/24/2022 | 235 | MOTION for Order (SEALED) *Motion for Leave to File Plaintiff's Motion to Compel Under Seal and Suggestions in Support* filed by Taylor Brooke Concannon Hausmann on behalf of Provisur Technologies, Inc.. Suggestions in opposition/response due by 6/7/2022 unless otherwise directed by the court. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F, # 7 Exhibit G, # 8 Exhibit H, # 9 Exhibit I, # 10 Exhibit J, # 11 Exhibit K, # 12 Exhibit L, # 13 Exhibit M, # 14 Exhibit N, # 15 Exhibit O, # 16 Exhibit P, # 17 Exhibit Q, # 18 Exhibit R, # 19 Exhibit S, # 20 Exhibit T)(Concannon Hausmann, Taylor) (Entered: 05/24/2022) |
| 05/25/2022 | 236 | Minute Entry. Proceedings held before District Judge Stephen R. Bough: Discovery Dispute held on 5/25/2022. Order to be entered. Time in court: 10:00 a.m. to 12:15 p.m. To order a transcript of this hearing please contact Gayle Wambolt, 816-512-5641, gayle_wambolt@mow.uscourts.gov. This is a TEXT ONLY ENTRY. No document is attached. (Richard, Tracey) (Entered: 05/25/2022) |
| 05/25/2022 | 237 | ORDER granting in part and denying in part 235 Sealed Motion. Signed on 5/25/2022 by District Judge Stephen R. Bough. (Richard, Tracey) (Entered: 05/25/2022) |
| 05/26/2022 | 238 | ELECTRONIC TRANSCRIPT of Teleconference held May 17, 2022, before Judge Stephen R. Bough. Court Reporter: Gayle Wambolt, 816-512-5641, gayle_wambolt@mow.uscourts.gov. Number of pages: 5. NOTICE RE: REDACTION OF TRANSCRIPTS: Within 7 calendar days of this filing, each party shall inform the Court, by filing a Notice of Redaction, of the parties' intent to redact personal data identifiers from the electronic transcript of the court proceeding. The policy is located on our website at www.mow.uscourts.gov. Please read this policy carefully. **NOTICE: Attorneys must contact the court reporter for copies during this 90 day period.** If necessary, Notice of Intent to Redact is due by 6/2/2022 unless otherwise directed by the court. Release of Transcript Restriction set for 8/24/2022. **NOTICE: Attorneys must contact the court reporter for copies during this 90 day period.**<br><br>(Wambolt, Gayle) (Entered: 05/26/2022) |
| 05/26/2022 | 239 | ELECTRONIC TRANSCRIPT of Discovery Dispute held May 25, 2022, before Judge Stephen R. Bough. Court Reporter: Gayle Wambolt, 816-512-5641, gayle_wambolt@mow.uscourts.gov. Number of pages: 88. NOTICE RE: REDACTION OF TRANSCRIPTS: Within 7 calendar days of this filing, each party shall inform the Court, by filing a Notice of Redaction, of the parties' intent to redact personal data identifiers from the electronic transcript of the court proceeding. The policy is located on our website at www.mow.uscourts.gov. Please read this policy carefully. **NOTICE: Attorneys must contact the court reporter for copies during this 90 day period.** If necessary, Notice of Intent to Redact is due by 6/2/2022 unless otherwise directed by |

| | | **the court. Release of Transcript Restriction set for 8/24/2022. NOTICE: Attorneys must contact the court reporter for copies during this 90 day period.**<br><br>(Wambolt, Gayle) (Entered: 05/26/2022) |
|---|---|---|
| 05/26/2022 | 240 | MOTION for leave to file *Motion for Leave to File Plaintiff's Response to Defendants' Motion for Summary Judgment Under Seal and Suggestions in Support* filed by Jeffrey J. Simon on behalf of Provisur Technologies, Inc.. Suggestions in opposition/response due by 6/9/2022 unless otherwise directed by the court. (Simon, Jeffrey) (Entered: 05/26/2022) |
| 05/26/2022 | 241 | MOTION for leave to file *Motion for Leave to File Plaintiff's Suggestions in Opposition to Defendants' Motion to Exclude Expert Opinions Under Seal and Suggestions in Support* filed by Jeffrey J. Simon on behalf of Provisur Technologies, Inc.. Suggestions in opposition/response due by 6/9/2022 unless otherwise directed by the court. (Simon, Jeffrey) (Entered: 05/26/2022) |
| 05/26/2022 | 242 | Before the Court is Plaintiff's Motion for Leave to File Plaintiff's Responses to Defendants' Motions for Summary Judgment Under Seal. (Doc. #240.) Upon review, it is hereby ORDERED that: (1) Plaintiff's Motion for Leave to File Under Seal is GRANTED; and (2) the parties may file all future summary judgment briefing under seal without further order of the Court. Signed on 5/26/2022 by District Judge Stephen R. Bough. This is a TEXT ONLY ENTRY. No document is attached. (Richard, Tracey) (Entered: 05/26/2022) |
| 05/26/2022 | 243 | Before the Court is Plaintiff's Motion for Leave to File Plaintiff's Suggestions in Opposition to Defendants' Motion to Exclude Expert Opinions Under Seal. (Doc. #241.) Upon review, it is hereby ORDERED that: (1) Plaintiff's Motion for Leave to File Under Seal is GRANTED; and (2) the parties may file all future Daubert briefing under seal without further order of the Court. Signed on 5/26/2022 by District Judge Stephen R. Bough. This is a TEXT ONLY ENTRY. No document is attached. (Richard, Tracey) (Entered: 05/26/2022) |
| 05/27/2022 | 244 | SUGGESTIONS in opposition (SEALED) re 215 MOTION for partial summary judgment filed by Jason Scott Leiker on behalf of Defendants Textor Maschinenbau GmbH, Textor, Inc., Weber Maschinenbau GmbH Breidenbach, Weber Maschinenbau GmbH Neubrandenburg, Weber, Inc.. Reply suggestions due by 6/10/2022 unless otherwise directed by the court. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F)(Related document(s) 215 ) (Leiker, Jason) (Entered: 05/27/2022) |
| 05/27/2022 | 245 | SUGGESTIONS in opposition (SEALED) re 213 MOTION to exclude filed by Michael Babbitt on behalf of Plaintiff Provisur Technologies, Inc.. Reply suggestions due by 6/10/2022 unless otherwise directed by the court. (Attachments: # 1 Exhibit 1)(Related document(s) 213 ) (Babbitt, Michael) (Entered: 05/27/2022) |
| 05/27/2022 | 246 | SUGGESTIONS in opposition (SEALED) re 209 MOTION for summary judgment *of non-infringement for all asserted claims of U.S. Patent Nos. 10,625,436 (the 436 patent) and 10,639,812 (the 812 patent)* filed by Michael Babbitt on behalf of Plaintiff Provisur Technologies, Inc.. Reply suggestions due by 6/10/2022 unless otherwise directed by the court. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5, # 6 Exhibit 6, # 7 Exhibit 7, # 8 Exhibit 8, # 9 Exhibit 9, # 10 Exhibit 10, # 11 Exhibit 11 (Part 1 of 5), # 12 Exhibit 11 (Part 2 of 5), # 13 Exhibit 11 (Part 3 of 5), # 14 Exhibit 11 (Part 4 of 5), # 15 Exhibit 11 (Part 5 of 5), # 16 Exhibit 12, # 17 Exhibit 13, # 18 Exhibit 14, # 19 Exhibit 15, # 20 Exhibit 16, # 21 Exhibit 17, # 22 Exhibit 18, # 23 Exhibit 19, # 24 Exhibit 20, # 25 Exhibit 21, # 26 Exhibit 22, # 27 Exhibit 23, # 28 Exhibit 24, # 29 Exhibit 25, # 30 Exhibit 26, # 31 Exhibit 27, # 32 Exhibit 28, # 33 |

Appx288

| | | |
|---|---|---|
| | | Exhibit 29, # <u>34</u> Exhibit 30, # <u>35</u> Exhibit 31)(Related document(s) <u>209</u> ) (Babbitt, Michael) (Entered: 05/27/2022) |
| 06/02/2022 | 247 | The parties have advised the Court that they agree to the appointment of Trent Webb, with the law firm of Shook, Hardy & Bacon, as a mediator. It is hereby ORDERED that: (1) Trent Webb is appointed to serve as the mediator in Case No. 19-cv-06021-SRB, Case No. 20-cv-6069-SRB, and Case No. 21-cv-06113-SRB; and (2) the parties shall schedule a mediation in all three cases on or before July 29, 2022. Signed on 6/2/2022 by District Judge Stephen R. Bough. <span style="color:red">This is a TEXT ONLY ENTRY. No document is attached.</span> (Richard, Tracey) (Entered: 06/02/2022) |
| 06/06/2022 | <u>248</u> | CERTIFICATE OF SERVICE by All Defendants filed by Jason Scott Leiker on behalf of Defendants Textor Maschinenbau GmbH, Textor, Inc., Weber Maschinenbau GmbH Breidenbach, Weber Maschinenbau GmbH Neubrandenburg, Weber, Inc..(Leiker, Jason) (Entered: 06/06/2022) |
| 06/07/2022 | <u>249</u> | CERTIFICATE OF SERVICE by Provisur Technologies, Inc. filed by Taylor Brooke Concannon Hausmann on behalf of Plaintiff Provisur Technologies, Inc..(Concannon Hausmann, Taylor) (Entered: 06/07/2022) |
| 06/10/2022 | <u>250</u> | MOTION for leave to file *Motion for Leave to File Reply Suggestions in Support of Provisur's Motion for Partial Summary Judgment in Excess of the Page Limit* filed by Taylor Brooke Concannon Hausmann on behalf of Provisur Technologies, Inc.. Suggestions in opposition/response due by 6/24/2022 unless otherwise directed by the court. (Concannon Hausmann, Taylor) (Entered: 06/10/2022) |
| 06/10/2022 | 251 | Before the Court is Plaintiff's Motion for Leave to File Reply Suggestions in Support of its Motion for Partial Summary Judgment in Excess of the Page Limit. '(Doc. #250.) For good cause shown, the motion is GRANTED. Plaintiffs reply brief may exceed the page limit by up to five (5) pages. Signed on 6/10/2022 by District Judge Stephen R. Bough. <span style="color:red">This is a TEXT ONLY ENTRY. No document is attached.</span> (Richard, Tracey) (Entered: 06/10/2022) |
| 06/10/2022 | <u>252</u> | RESPONSE to motion filed by Jason Scott Leiker on behalf of Defendants Textor Maschinenbau GmbH, Textor, Inc., Weber Maschinenbau GmbH Breidenbach, Weber Maschinenbau GmbH Neubrandenburg, Weber, Inc.. Reply suggestions due by 6/24/2022 unless otherwise directed by the court. (Leiker, Jason) (Entered: 06/10/2022) |
| 06/10/2022 | <u>253</u> | REPLY SUGGESTIONS to motion (Sealed) re <u>213</u> MOTION to exclude filed by Jason Scott Leiker on behalf of Defendants Textor Maschinenbau GmbH, Textor, Inc., Weber Maschinenbau GmbH Breidenbach, Weber Maschinenbau GmbH Neubrandenburg, Weber, Inc.. (Related document(s) <u>213</u> ) (Leiker, Jason) (Entered: 06/10/2022) |
| 06/10/2022 | <u>254</u> | REPLY SUGGESTIONS to motion (Sealed) re <u>209</u> MOTION for summary judgment *of non-infringement for all asserted claims of U.S. Patent Nos. 10,625,436 (the 436 patent) and 10,639,812 (the 812 patent)* filed by Jason Scott Leiker on behalf of Defendants Textor Maschinenbau GmbH, Textor, Inc., Weber Maschinenbau GmbH Breidenbach, Weber Maschinenbau GmbH Neubrandenburg, Weber, Inc.. (Attachments: # <u>1</u> Exhibit AA, # <u>2</u> Exhibit BB, # <u>3</u> Exhibit CC, # <u>4</u> Exhibit DD, # <u>5</u> Exhibit EE, # <u>6</u> Exhibit FF, # <u>7</u> Exhibit GG, # <u>8</u> Exhibit HH, # <u>9</u> Exhibit II)(Related document(s) <u>209</u> ) (Leiker, Jason) (Entered: 06/10/2022) |
| 06/10/2022 | <u>255</u> | REPLY SUGGESTIONS to motion (Sealed) re <u>215</u> MOTION for partial summary judgment *(REPLY SUGGESTIONS IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT OF NO INVALIDITY)* filed by Michael Babbitt on behalf of Plaintiff Provisur Technologies, Inc.. (Related document(s) <u>215</u> ) (Babbitt, Michael) (Entered: 06/10/2022) |

Appx289

| 06/17/2022 | 256 | CERTIFICATE OF SERVICE by Provisur Technologies, Inc. *for Expert Report of Dr. Keith Vorst regarding Damages Issues* filed by Jeffrey J. Simon on behalf of Plaintiff Provisur Technologies, Inc..(Simon, Jeffrey) (Entered: 06/17/2022) |
| --- | --- | --- |
| 06/17/2022 | 257 | CERTIFICATE OF SERVICE by Provisur Technologies, Inc. *of its Fifth Amended Initial Disclosures* filed by Jeffrey J. Simon on behalf of Plaintiff Provisur Technologies, Inc.. (Simon, Jeffrey) (Entered: 06/17/2022) |
| 06/17/2022 | 258 | CERTIFICATE OF SERVICE by Provisur Technologies, Inc. *for service of Expert Report of Julie Davis* filed by Jeffrey J. Simon on behalf of Plaintiff Provisur Technologies, Inc.. (Simon, Jeffrey) (Entered: 06/17/2022) |
| 06/17/2022 | 259 | CERTIFICATE OF SERVICE by Provisur Technologies, Inc. *of its Third Amended Consolidated Interrogatory Responses (Nos. 1-14)* filed by Jeffrey J. Simon on behalf of Plaintiff Provisur Technologies, Inc..(Simon, Jeffrey) (Entered: 06/17/2022) |
| 06/30/2022 | 260 | MOTION for Order *Motion for Leave to File Plaintiff's Motion for Sanctions Against Defendants Under Seal* filed by Jeffrey J. Simon on behalf of Provisur Technologies, Inc.. Suggestions in opposition/response due by 7/14/2022 unless otherwise directed by the court. (Simon, Jeffrey) Modified on 6/30/2022 - unsealed per filer's request and regenerated NEF (Crocker, Susan). (Entered: 06/30/2022) |
| 06/30/2022 | 261 | Before the Court is Plaintiff's Motion for Leave to File Motion for Sanctions Against Defendants Under Seal. (Doc. #260.) Upon review, the motion is GRANTED. Plaintiff may file under seal its motion for sanctions. Signed on 6/30/2022 by District Judge Stephen R. Bough. This is a TEXT ONLY ENTRY. No document is attached. (Richard, Tracey) (Entered: 06/30/2022) |
| 06/30/2022 | 262 | MOTION for Order (SEALED) *MOTION FOR LEAVE TO FILE PROVISUR'S MOTION FOR CLARIFICATION OF THE COURT'S MAY 25, 2022 RULING REGARDING THE ACCUSED S6 SLICERS, AND SUGGESTIONS IN SUPPORT, UNDER SEAL* filed by Michael Babbitt on behalf of Provisur Technologies, Inc.. Suggestions in opposition/response due by 7/14/2022 unless otherwise directed by the court. (Babbitt, Michael) (Entered: 06/30/2022) |
| 06/30/2022 | 263 | Before the Court is a Motion for Leave to File Provisur's Motion for Clarification of the Court's May 25, 2022 Ruling Regarding the Accused S6 Slicers, and Suggestions in Support, Under Seal. (Doc. #262.) Upon review, the motion is GRANTED. Signed on 6/30/2022 by District Judge Stephen R. Bough. This is a TEXT ONLY ENTRY. No document is attached. (Richard, Tracey) (Entered: 06/30/2022) |
| 06/30/2022 | 264 | MOTION for Order (SEALED) *Plaintiff Provisur Technologies, Inc.'s Motion for Sanctions Against Defendants (Under Seal)* filed by Jeffrey J. Simon on behalf of Provisur Technologies, Inc.. Suggestions in opposition/response due by 7/14/2022 unless otherwise directed by the court. (Simon, Jeffrey) (Entered: 06/30/2022) |
| 06/30/2022 | 265 | MOTION for Order (SEALED) *(PROVISUR TECHNOLOGIES, INC.'S MOTION FOR CLARIFICATION OF COURT'S MAY 25, 2022 RULING REGARDING THE ACCUSED S6 SLICERS)* filed by Michael Babbitt on behalf of Provisur Technologies, Inc.. Suggestions in opposition/response due by 7/14/2022 unless otherwise directed by the court. (Babbitt, Michael) (Entered: 06/30/2022) |
| 06/30/2022 | 266 | SUGGESTIONS in support (SEALED) re 264 MOTION for Order (SEALED) *Plaintiff Provisur Technologies, Inc.'s Motion for Sanctions Against Defendants (Under Seal) Plaintiff Provisur Technologies, Inc.'s Suggestions In Support of Its Motion for Sanctions Against Defendants (Under Seal)* filed by Jeffrey J. Simon on behalf of Plaintiff Provisur Technologies, Inc.. (Attachments: # 1 Exhibit A, # 2 Exhibit AA, # 3 Exhibit B, # 4 Exhibit C, # 5 Exhibit D, # 6 Exhibit E, # 7 Exhibit F, # 8 Exhibit G, # 9 Exhibit H, # 10 |

| | | |
|---|---|---|
| | | Exhibit I, # [11] Exhibit J, # [12] Exhibit K, # [13] Exhibit L, # [14] Exhibit M, # [15] Exhibit N, # [16] Exhibit O, # [17] Exhibit P, # [18] Exhibit Q, # [19] Exhibit R, # [20] Exhibit S, # [21] Exhibit T, # [22] Exhibit U, # [23] Exhibit V, # [24] Exhibit W, # [25] Exhibit X, # [26] Exhibit Y, # [27] Exhibit Z)(Related document(s) [264] ) (Simon, Jeffrey) (Entered: 06/30/2022) |
| 06/30/2022 | [267] | SUGGESTIONS in support (SEALED) re [265] MOTION for Order (SEALED) *(PROVISUR TECHNOLOGIES, INC.'S MOTION FOR CLARIFICATION OF COURT'S MAY 25, 2022 RULING REGARDING THE ACCUSED S6 SLICERS)* filed by Michael Babbitt on behalf of Plaintiff Provisur Technologies, Inc.. (Attachments: # [1] Exhibit A, # [2] Exhibit B, # [3] Exhibit C, # [4] Exhibit D, # [5] Exhibit E, # [6] Exhibit F, # [7] Exhibit G, # [8] Exhibit H, # [9] Exhibit I, # [10] Exhibit J - Part 1, # [11] Exhibit J - Part 2, # [12] Exhibit J - Part 3, # [13] Exhibit K, # [14] Exhibit L, # [15] Exhibit M, # [16] Exhibit N, # [17] Exhibit O, # [18] Exhibit P, # [19] Exhibit Q, # [20] Exhibit R)(Related document(s) [265] ) (Babbitt, Michael) (Entered: 06/30/2022) |
| 07/13/2022 | [268] | ORDERED that Defendants' Motion for Summary Judgment of Non-Infringement of the '436 and '812 Patents (Doc. #209) is DENIED. Signed on 7/13/2022 by District Judge Stephen R. Bough. (Richard, Tracey) (Entered: 07/13/2022) |
| 07/13/2022 | [269] | ORDER denying [215] Plaintiffs Motion for Partial Summary Judgment. Signed on 7/13/2022 by District Judge Stephen R. Bough. (Richard, Tracey) Modified on 9/20/2022 (Richard, Tracey). (Entered: 07/13/2022) |
| 07/13/2022 | 270 | Before the Court is Defendants' Motion to Exclude the Improper Expert Opinions of White and McGuire. (Doc. #213.) Upon review, the motion is GRANTED IN PART and DENIED IN PART for the reasons stated in the Court's Order resolving the same motion in Case No. 19-cv-06021-SRB. Signed on 7/13/2022 by District Judge Stephen R. Bough. This is a TEXT ONLY ENTRY. No document is attached. (Richard, Tracey) (Entered: 07/13/2022) |
| 07/14/2022 | [271] | MOTION to seal document *Defendants Response to Provisurs Motion for Clarification of the Courts May 25, 2022, Ruling Regarding the Accused S6 Slicers* filed by Jason Scott Leiker on behalf of All Defendants. Suggestions in opposition/response due by 7/28/2022 unless otherwise directed by the court. (Leiker, Jason) (Entered: 07/14/2022) |
| 07/14/2022 | [272] | MOTION to seal document *Defendants Opposition to Provisurs Motion for Sanctions* filed by Jason Scott Leiker on behalf of All Defendants. Suggestions in opposition/response due by 7/28/2022 unless otherwise directed by the court. (Leiker, Jason) (Entered: 07/14/2022) |
| 07/14/2022 | [273] | SUGGESTIONS in opposition (SEALED) re [264] MOTION for Order (SEALED) *Plaintiff Provisur Technologies, Inc.'s Motion for Sanctions Against Defendants (Under Seal)* filed by Jason Scott Leiker on behalf of Defendants Textor Maschinenbau GmbH, Textor, Inc., Weber Maschinenbau GmbH Breidenbach, Weber Maschinenbau GmbH Neubrandenburg, Weber, Inc.. Reply suggestions due by 7/28/2022 unless otherwise directed by the court. (Attachments: # [1] Exhibit 1, # [2] Exhibit 2, # [3] Exhibit 3, # [4] Exhibit 4, # [5] Exhibit 5, # [6] Exhibit 6)(Related document(s) [264] ) (Leiker, Jason) (Entered: 07/14/2022) |
| 07/14/2022 | [274] | SUGGESTIONS in opposition (SEALED) re [265] MOTION for Order (SEALED) *(PROVISUR TECHNOLOGIES, INC.'S MOTION FOR CLARIFICATION OF COURT'S MAY 25, 2022 RULING REGARDING THE ACCUSED S6 SLICERS)* filed by Jason Scott Leiker on behalf of Defendants Textor Maschinenbau GmbH, Textor, Inc., Weber Maschinenbau GmbH Breidenbach, Weber Maschinenbau GmbH Neubrandenburg, Weber, Inc.. Reply suggestions due by 7/28/2022 unless otherwise directed by the court. (Attachments: # [1] Exhibit 1, # [2] Exhibit 2, # [3] Exhibit 3, # [4] Exhibit 4, # [5] Exhibit 5) (Related document(s) [265] ) (Leiker, Jason) (Entered: 07/14/2022) |

**Appx291**

| 07/18/2022 | 275 | Before the Court is Defendants' Motion for Leave to File Under Seal. (Doc. #271.) For good cause shown the motion is GRANTED. Signed on 7/18/2022 by District Judge Stephen R. Bough. This is a TEXT ONLY ENTRY. No document is attached. (Richard, Tracey) (Entered: 07/18/2022) |
|---|---|---|
| 07/18/2022 | 276 | Before the Court is Defendants' Motion for Leave to File Under Seal. (Doc. #272.) For good cause shown the motion is GRANTED. Signed on 7/18/2022 by District Judge Stephen R. Bough. This is a TEXT ONLY ENTRY. No document is attached. (Richard, Tracey) (Entered: 07/18/2022) |
| 07/22/2022 | 277 | Motion to allow Patrick Conlon to appear pro hac vice (Pro Hac fee $100 receipt number AMOWDC-8029199) filed by Taylor Brooke Concannon Hausmann on behalf of Provisur Technologies, Inc.. (Attachments: # 1 Attachment Sheet)(Concannon Hausmann, Taylor) (Entered: 07/22/2022) |
| 07/22/2022 | 278 | ORDER granting 277 motion to appear pro hac vice entered by Clerk of Court. Attorney W. Patrick Conlon for Provisur Technologies, Inc. allowed to appear pro hac vice. This entry will serve as authorization for the pro hac participation by the attorney.<br><br>Western District of Missouri Local Rule 5.1 requires documents to be filed electronically. If pro hac vice counsel has not already done so, counsel is directed to immediately register for a WDMO e-filing account for NextGen CM/ECF. This will enable counsel to electronically file documents and receive electronic notification of filings. Register for a WDMO e-filing account at PACER. Signed on 07/22/2022 by Clerk of Court. This is a TEXT ONLY ENTRY. No document is attached. (Lock, Tania) (Entered: 07/22/2022) |
| 07/27/2022 | 279 | CERTIFICATE of counsel by Jason Scott Leiker on behalf of All Defendants (Leiker, Jason) (Entered: 07/27/2022) |
| 07/27/2022 | 280 | MOTION to consolidate cases *Plaintiff Provisur Technologies, Inc.'s Motion to Consolidate Provisur I and Provisur II and Suggestions in Support* filed by Jeffrey J. Simon on behalf of Provisur Technologies, Inc.. Suggestions in opposition/response due by 8/10/2022 unless otherwise directed by the court. (Simon, Jeffrey) (Entered: 07/27/2022) |
| 07/28/2022 | 281 | MOTION for leave to file *Motion for Leave to File Plaintiff's Reply Suggestions in Support of its Motion for Sanctions Against Defendants Under Seal* filed by Jeffrey J. Simon on behalf of Provisur Technologies, Inc.. Suggestions in opposition/response due by 8/11/2022 unless otherwise directed by the court. (Simon, Jeffrey) (Entered: 07/28/2022) |
| 07/28/2022 | 282 | Before the Court is Plaintiff's Motion for Leave to File Reply Suggestions in Support of its Motion for Sanctions Under Seal. (Doc. #281.) For good cause shown the motion is GRANTED. Signed on 7/28/2022 by District Judge Stephen R. Bough. This is a TEXT ONLY ENTRY. No document is attached. (Richard, Tracey) (Entered: 07/28/2022) |
| 07/28/2022 | 283 | MOTION for leave to file *Provisurs Reply Suggestions in Support of its Motion for Clarification of the Courts May 25, 2022 Ruling Regarding the Accused S6 Slicers Under Seal* filed by Michael Babbitt on behalf of Provisur Technologies, Inc.. Suggestions in opposition/response due by 8/11/2022 unless otherwise directed by the court. (Babbitt, Michael) (Entered: 07/28/2022) |
| 07/28/2022 | 284 | Before the Court is Plaintiff's Motion for Leave to File Reply Suggestions Regarding the S6 Slicers Under Seal. (Doc. #283.) For good cause shown, the motion is GRANTED. Signed on 7/28/2022 by District Judge Stephen R. Bough. This is a TEXT ONLY ENTRY. No document is attached. (Richard, Tracey) (Entered: 07/28/2022) |

Appx292

| 07/28/2022 | 285 | SUGGESTIONS in support (SEALED) re 264 MOTION for Order (SEALED) *Plaintiff Provisur Technologies, Inc.'s Motion for Sanctions Against Defendants (Under Seal) Plaintiff Provisur Technologies, Inc.'s Reply Suggestions in Support of its Motion for Sanctions Against Defendants* filed by Jeffrey J. Simon on behalf of Plaintiff Provisur Technologies, Inc.. (Related document(s) 264 ) (Simon, Jeffrey) (Entered: 07/28/2022) |
|---|---|---|
| 07/28/2022 | 286 | SUGGESTIONS in support (SEALED) re 265 MOTION for Order (SEALED) *(PROVISUR TECHNOLOGIES, INC.'S MOTION FOR CLARIFICATION OF COURT'S MAY 25, 2022 RULING REGARDING THE ACCUSED S6 SLICERS) (PROVISUR TECHNOLOGIES, INC.'S REPLY SUGGESTIONS IN SUPPORT OF ITS MOTION FOR CLARIFICATION OF COURTS MAY 25, 2022 RULING REGARDING THE ACCUSED S6 SLICERS)* filed by Michael Babbitt on behalf of Plaintiff Provisur Technologies, Inc.. (Attachments: # 1 Exhibit S, # 2 Exhibit T)(Related document(s) 265 ) (Babbitt, Michael) (Entered: 07/28/2022) |
| 07/28/2022 | 287 | ORDER denying 264 Motions for Sanctions. Signed on 7/28/2022 by District Judge Stephen R. Bough. (Richard, Tracey) (Entered: 07/28/2022) |
| 07/28/2022 | 288 | ORDER denying 265 Motion for Clarification of Court Order. Signed on 7/28/2022 by District Judge Stephen R. Bough. (Richard, Tracey) (Entered: 07/28/2022) |
| 07/28/2022 | 289 | ORDER granting 280 motion to consolidate cases Case No. 19-cv-06021-SRB and Case No. 20-cv-06069-SRB are hereby CONSOLIDATED, and **all future filings should be made in Case No. 19-cv-06021-SRB.** Signed on 7/28/2022 by District Judge Stephen R. Bough. (Richard, Tracey) (Entered: 07/28/2022) |
| 01/19/2023 | 290 | NOTICE OF APPEAL by Textor Maschinenbau GmbH, Textor, Inc., Weber Maschinenbau GmbH Breidenbach, Weber Maschinenbau GmbH Neubrandenburg, Weber, Inc.. Filing fee $ 505, receipt number AMOWDC-8286344. (Leiker, Jason) (Entered: 01/19/2023) |

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 04/11/2023 12:11:30 | | |
| **PACER Login:** | susanna.kelley | **Client Code:** | 4374.001APL0 |
| **Description:** | Docket Report | **Search Criteria:** | 5:20-cv-06069-SRB |
| **Billable Pages:** | 30 | **Cost:** | 3.00 |

**Appx293**

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
ST. JOSEPH DIVISION

| | |
|---|---|
| PROVISUR TECHNOLOGIES, INC., | Civil Action No. 5:19-cv-6021 |
| Plaintiff, | **JURY TRIAL DEMANDED** |
| v. | |
| WEBER, INC., TEXTOR, INC.,WEBER MASCHINENBAU GMBH BREIDENBACH, WEBER MASCHINENBAU GMBH NEUBRANDENBURG, and TEXTOR MASCHINENBAU GMBH, | |
| Defendants. | |

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Provisur Technologies, Inc. ("Provisur"), by and through its counsel, complains against Defendants Weber, Inc., Textor, Inc., Weber Maschinenbau GmbH Breidenbach, Weber Maschinenbau GmbH Neubrandenburg, and Textor Maschinenbau GmbH (collectively, "Defendants") as follows:

## THE PARTIES

1.      This is an action for patent infringement concerning Defendants' commercial food slicing machines and related products that are sold and offered for sale throughout the United States and in Missouri.

2.      The patent owner in this case is Provisur. Provisur is a Delaware corporation having a principal place of business at 222 North LaSalle Street, Suite 720 Chicago, Illinois, 60601. Provisur is an industry leader in global food product processing. It designs, makes, and sells food processing technology under eleven brands that have patented successful commercial

innovations for over forty years. Provisur is the owner and assignee of the seven United States patents involved in this case: U.S. Patent Nos. 8,322,537; 9,399,531; 7,065,936; 7,533,513; 6,669,005; 6,997,089; 6,320,141 (collectively, the "Patents-in-Suit"). Provisur also fully owns and operates subsidiaries, for example, Formax, Inc. ("Formax"), which are included within reference to "Provisur" herein.

3.     On information and belief, Weber, Inc. is a corporation existing under the laws of Missouri with a principal place of business at 10701 N. Ambassador Dr., Kansas City, Missouri, 64153. It is a fully-owned subsidiary of Weber Maschinenbau GmbH.

4.     On information and belief, Weber, Inc. is responsible for U.S. sales, technical support, parts supply, and service of food processing machinery designed and/or manufactured by Weber Maschinenbau GmbH Breidenbach and/or Weber Maschinenbau GmbH Neubrandenburg.

5.     On information and belief, Textor, Inc. is a corporation existing under the laws of Missouri with a principal place of business at 10701 N. Ambassador Dr., Kansas City, Missouri, 64153.

6.     On information and belief, Textor, Inc. is a fully-owned subsidiary of Textor Maschinenbau GmbH and is responsible for U.S. sales, technical support, parts supply, and service of food processing machinery designed and/or manufactured by Textor Maschinenbau GmbH. *See* http://www.textorweb.com/index.php/us/2015-09-09-09-48-00/ueber-uns-englisch-us.

7.     On information and belief, Weber Maschinenbau GmbH Breidenbach is a German company with a principal place of business at Guenther-Weber-Straße 3, 35236 Breidenbach, Germany. Weber Maschinenbau GmbH Breidenbach is the German parent-

company of multiple food processing subsidiary entities around the world, which comprise the Weber Group.

8. On information and belief, Weber Maschinenbau GmbH Breidenbach, founded by Guenther Weber, designs, manufactures, and directs global sales and marketing of food processing machinery including, but not limited to, slicing, derinding, peeling, packaging, and skinning machines. *See* https://www.weberweb.com/company/.

9. On information and belief, Weber Maschinenbau GmbH Neubrandenburg is a German company with a principal place of business at Feldmark 11, 17034 Neubrandenburg, Germany.

10. On information and belief, Weber Maschinenbau GmbH Neubrandenburg is a wholly-owned subsidiary of Weber Maschinenbau GmbH Breidenbach and is engaged in the design, manufacture, and sales and marketing of food processing machinery. *See* https://www.weberslicer.com/company/ history/.

11. On information and belief, Weber Maschinenbau GmbH Breidenbach, Weber Maschinenbau GmbH Neubrandenburg, and Weber, Inc. (collectively "Weber") supply customers around the globe with the Weber Group's most technologically advanced slicing machinery.

12. On information and belief, Textor Maschinenbau GmbH is a German company with a principal place of business at Gewerbestraße 2, 87787 Wolfertschwenden, Germany. *See New Home For TEXTOR* (Aug. 2008) http://www.textorweb.com/index.php/us/2015-09-09-09-55-46/news-englisch-us?showNews=11.

13. Textor Maschinenbau GmbH was founded as a "new brand" of the Weber Group to "target new market segments" and to provide customers with a "technological and economical

3

alternative" to Weber's slicing product lines. *See* Capture New Markets With Textor (Feb. 8, 2012) https://www.weberweb.com/news/news/article/capture-new-markets-with-textor/.

14. On information and belief, Textor Maschinenbau GmbH designs, manufactures, and directs global sales and marketing of food processing machinery in the slicing category. Textor Maschinenbau GmbH has the same shareholders as Weber Maschinenbau GmbH Breidenbach.

15. On information and belief, like Weber, Textor Maschinenbau GmbH and Textor, Inc. (collectively, "Textor") produce food slicing machines and related accessories such as food scanners, weighers, loaders, conveyors, and blade sharpers. According to Textor's website, the "contact person" for Textor in the "USA" is Jarrod McCarroll, who is also the CEO of Weber, Inc. *See* http://www.textorweb.com/index.php/us/ansprechpartner-englisch-us.

16. On information and belief, all of the Weber and Textor entities described in the preceding paragraphs are members of the Weber Group, led by Weber Maschinenbau GmbH Breidenbach, and are owned, operated, and/or controlled by a common group of individuals, including, but not limited to, Tobias Weber, Hubertus Weber, Guenther Weber, Hartmut Blöcher, Peter Kamm, Jörg Schmeiser, and/or Peter Schultz.

17. On information and belief, the same people own significant ownership interests in both Weber and Textor. Guenther Weber holds 26% of the shares of Weber Maschinenbau GmbH Breidenbach; Tobias Weber and Hubertus Weber each hold 37% of that entity. The distribution of shares in Textor Maschinenbau GmbH are identical to the shares of Weber Maschinenbau GmbH Breidenbach.

18. On information and belief, the managing directors of the Weber entities are also overlapping. The current managing directors of Textor Maschinenbau GmbH are Tobias Weber

4

and Jörg Schmeiser. The managing directors of Weber Maschinenbau GmbH Breidenbach are Tobias Weber, Jörg Schmeiser, Hartmut Blöcher, Peter Kamm, and Peter Schulz. Tobias Weber, Hartmut Blöcher and Peter Kamm in turn are managing directors of Weber Maschinenbau GmbH Neubrandenburg.

19.     On information and belief, Guenther Weber founded both Weber Maschinenbau GmbH Breidenbach and Weber Maschinenbau GmbH Neubrandenburg. Both of these companies bear aspects of his name in their company name. The term "Textor," as used by Textor Maschinenbau GmbH and Textor, Inc. in their company names, is the Latinization of the surname "Weber."

20.     On information and belief, various Weber and Textor products bear the same or very similar product names. For example, Weber offers a "Weber SmartLoader" and Textor offers the "Textor SmartLoader." Similarly, Weber offers a "Weber LED Scanner CPS 200" and Textor offers the "Textor CPS 200 LED Scanner."

21.     The products of Weber and Textor are used in modular systems that contain other products of both Weber and Textor in various combinations.

22.     On information and belief, Weber, Inc. and Textor, Inc. rely on a single, unified sales force to service U.S. customers. In 2016, a Weber and Textor executive stated that "Textor and Weber will now be represented by one sales team with the sole focus of working with North American customers to select from the wide array of Weber and Textor brands." THE NAT'L PROVISIONER, *Weber And Textor Brands Announce Customer-Focused Change In Slicing System Sales Strategy* (Apr. 12, 2016) https://www.provisioneronline.com/articles/103169-weber-and-textor-brands-announce-customer-focused-change-in-slicing-system-sales-strategy.

23.     There are questions of fact common to all Defendants with respect to the infringement of the asserted patents in this action.  For example, on information and belief, "Defendants Accused Interleaver Products" (defined below) operate in the same way with respect to the claimed features of the U.S. Patent No. 9,399,531.  In addition, "Defendants Accused SmartLoader Products" (defined below) operate in the same way with respect to the claimed features of U.S. Patent Nos. 7,065,936; 7,533,513; and 6,669,005, respectively.

## **BACKGROUND**

24.     Provisur manages global brands of food processing technology that make and sell an array of market-leading forming, slicing, defrosting, marinating, tenderizing, injecting, grinding, mixing, separation, coating, frying, cooking, and smoking products.  In 2016, Provisur ranked sixth on Crain's Chicago Business innovation list among large, corporate competitors for the quality of its patents issued in 2015, according to an analysis by OceanTomo.  Provisur is consistently selected by processors for its innovative and high-quality equipment.

25.     Specifically in the field of food forming and slicing, Provisur fully owns and operates Formax.  Since developing the first high-capacity, food forming system more than 45 years ago, Formax has remained a leading brand in the U.S. and global food processing markets.

26.     In recognition of its innovations, the United States Patent and Trademark Office ("USPTO") has granted Provisur (including Formax) over one hundred food processing technology patents.  Formax has also received domestic and international accolades for its leadership in developing innovative, advanced food processing equipment systems, including the North American Meat Institute's Supplier of the Year Award and the Safe Food Institute's SQF Certification.

27. Defendants have resorted to copying Provisur's cutting-edge innovations, and using slicing machine, robotic, and conveying technology invented by Provisur. Over several years, Defendants have used Provisur's patented technology to redesign and modify products they sell.

28. On information and belief, Defendants have carefully monitored Provisur's food slicing business, products, and patents for many years. Defendants are fully knowledgeable about the patents and the infringement alleged in this complaint.

29. Weber has cited Provisur patents and patent applications as prior art in their own patent applications in the United States and abroad.

30. Weber has instituted numerous challenges to Provisur patents throughout the world. Provisur has successfully defeated nearly all of these challenges.

31. Even with this knowledge of Provisur's patent portfolio, Defendants continue to commit widespread infringement of Provisur's duly granted patents.

## JURISDICTION AND VENUE

32. This is an action for patent infringement under 35 U.S.C. § 271.

33. This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1338, because this is a matter arising under the United States patent statutes, 35 U.S.C. § 101 *et seq*., for infringement of United States patents.

34. This Court has personal jurisdiction over Weber, Inc. and Textor, Inc. pursuant to Federal Rule of Civil Procedure 4(k)(1) and Mo. Rev. Stat. § 506.500(1).

35. Weber, Inc. and Textor, Inc. are incorporated and maintain their principal places of business in the State of Missouri.

36. Moreover, Weber, Inc. and Textor, Inc. are located within this District and Division and have continuous and systematic contact with this District and this Division. Weber,

Inc. and Textor, Inc. make, use, sell, offer to sell, and/or import infringing food processing machinery—and instruct or direct customers regarding the use of such machinery—throughout the United States, including in the State of Missouri and including in this District and Division.

37.     Weber, Inc. and Textor, Inc. have purposefully and voluntarily placed one or more of their infringing products, as described herein, into the stream of commerce with the expectation that they will be purchased by consumers within this District and Division.  For example, Weber, Inc. and Textor, Inc. target their marketing to U.S. customers by way of online websites that are accessible throughout the country, including in this District and Division. These online websites provide Missouri-based corporate contact information for residents in the U.S. who are interested in purchasing Defendants' products.  Weber, Inc. also maintains a North American Technology Center in Kansas City, Missouri, to, among other things, market, demonstrate, and educate customers from throughout United States about its products. Accordingly, Weber, Inc. and Textor, Inc. have sufficient minimum contacts with this District such that the exercise of jurisdiction over Weber, Inc. and Textor, Inc. will not offend traditional notions of fair play and substantial justice.

38.     In addition, because Weber, Inc. and Textor, Inc. have transacted business giving rise to this action within the state of Missouri, and because Weber, Inc. and Textor, Inc. are conducting regular business within the State of Missouri, this District, and this Division, this Court has personal jurisdiction over defendants pursuant to Federal Rule of Civil Procedure 4(k)(1) and Mo. Rev. Stat. § 506.500(1).

39.     This Court also has personal jurisdiction over Weber Maschinenbau GmbH Breidenbach, Weber Maschinenbau GmbH Neubrandenburg, and Textor Maschinenbau GmbH (the "German Defendants") pursuant to Federal Rule of Civil Procedure 4(k)(1) and Mo. Rev.

Stat. § 506.500(1), or, in the alternative, Federal Rule of Civil Procedure 4(k)(2). The German

Defendants are responsible for the overall design, manufacture, export, advertisement, and/or

distribution of infringing food processing machinery—and instruction or direction of customers

regarding the use of such machinery—through the United States, including the State of Missouri

and including in this District and Division.

40.     For years, the German Defendants have purposefully and voluntarily placed one

of more of their infringing products, as described herein, into the U.S. stream of commerce, with

the expectation that they will be purchased by consumers within this District and Division and,

accordingly, have maintained continuous and systematic contact with this District and this

Division throughout that time. The German Defendants have targeted their marketing to U.S.-

based customers by way of online, English-language websites that are accessible throughout the

country, including in this District and Division, and which include corporate contact information

for residents in the U.S. and this District and Division who are interested in purchasing

Defendants' products.

41.     The German Defendants also target U.S. customers through their attendance at

U.S. tradeshows and promotional events that occur throughout the U.S., including within this

District and Division. Accordingly, the German Defendants have sufficient minimum contacts

with this District such that the exercise of jurisdiction over the German Defendants will not

offend traditional notions of fair play and substantial justice.

42.     Because the German Defendants have transacted business giving rise to this

action within the state of Missouri and because Defendants are doing business within the State of

Missouri, this District, and this Division, this Court has personal jurisdiction over defendants

pursuant to Federal Rule of Civil Procedure 4(k)(1) and Mo. Rev. Stat. § 506.500(1), or, in the alternative, Federal Rule of Civil Procedure 4(k)(2).

43.    Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391 and 1400(b).

44.    Defendants have committed acts of infringement giving rise to this action within this District and regularly conduct business in this District.

## COUNT ONE
### (Infringement of U.S. Patent No. 8,322,537)

45.    The allegations of paragraphs 1 through 44 are realleged and reincorporated by reference as if fully set forth herein.

46.    U.S. Patent No. 8,322,537 ("the '537 patent"), entitled "Food Product Vacancy Reduction System," was duly issued by the USPTO on December 4, 2012, and lists named inventor Scott Lindee.  A true and correct copy of the '537 patent is attached hereto as Exhibit A.

47.    Provisur is the owner and assignee of the '537 patent, with the full rights to enforce the '537 patent and sue for damages by reason of infringement of the '537 patent.

48.    Provisur is in compliance with the patent marking requirements contained in 35 U.S.C. § 287 with respect to the '537 patent.

49.    The '537 patent describes an innovative solution that significantly improves the operation and efficiency of food product handling systems by maintaining a food product stream with a reduced number of or no food product vacancies.  *See, e.g*., Exhibit A at Col. 2:29-39. The '537 patent describes a food handling system having a vacancy reduction system.  *See, e.g*., Exhibit A at Col. 1:9-12.  The system includes a slicing machine which cuts slices from one or more loaves and deposits the slices on an output conveyor assembly.  *Id*.  The vacancy reduction system operates downstream from said slicing machine and includes a main conveyor, a food

product parking station, a vacancy detector, a robot, and a controller. *See, e.g.*, Exhibit A at Col. 2:43-56. The robot moves food product from the food product parking station to vacant food product positions on the main conveyor in order to maintain a food product stream with a reduced number of or no food product vacancies. *Id.*

50. Weber has directly infringed and continues to directly infringe one or more claims of the '537 patent in violation of 35 U.S.C. § 271(a), including at least independent claim 1, by making, using, offering to sell, selling, and/or importing into the U.S. products that include, but are not limited to, the Weber PickRobot (including PickRobot Single, PickRobot Double, PickRobot Triple, PickRobot Quadruple) and the Weber SmartPicker products, for example, as listed on Weber's website, https://www.weberweb.com/products/automation/weber-pickrobot/ ("Weber's Accused Robotics Products").

51. Weber's Accused Robotics Products operate in the same way with respect to the relevant claim elements of the '537 patent. Weber's Accused Robotics Products contain all of the elements of claims of the '537 patent, including, for example: (a) a main conveyor configured to move food products in a conveying direction in rows and at least two columns along the conveying direction; (b) a food product parking station configured to holding one or more food products; (c) a vacancy detector configured to detect a vacant food product position within the rows and at the least two columns on the main conveyor; (d) a robot operated above the main conveyor having a working range for moving between the parking station and the at least two columns on the main conveyor; (e) a controller signal-connected to the vacancy detector and configured to receive a signal from the vacancy detector indicating the vacant food product position on the conveyor, the controller signal-connected to the robot and having control instructions for instructing the robot to move at least one of the one or more food products from

the food product parking station to the vacant food product position on the main conveyor; and (f) said robot configured to carry a food product from the parking station and deposit the food product into the vacant food product position.

52. The images below correspond to videos taken from Weber's website depicting one of Weber's Accused Robotics Products, for example, Weber's SmartPicker, in action. The images and videos depict an automated vacancy reduction system, with a main conveyor, food product parking station, vacancy detector, robot, and controller, according to at least claim 1 of the '537 patent.





53.     Weber also indirectly infringes one or more claims of the '537 patent in violation of 35 U.S.C. § 271(b) and/or (c) by actively inducing infringement of the '537 patent by others and/or by offering to sell or selling within the U.S. a component covered by the claims of the '537 patent that is a material part of the invention and not a staple article or commodity of commerce suitable for substantial noninfringing use.

54.     For example, Weber instructs customers of Weber's Accused Robotics Products how to install and operate the product as claimed, including through product documentation and in-person and remote customer support.  Weber's instructions to its customers are also set forth in published tutorials, quick tips, upgrades and modifications, and product videos on its website and YouTube channel(s).  *See* https://www.youtube.com/user/weberslicer.  At least four videos on Weber's website, for example listed above, demonstrate Weber's Accused Robotics Products operating as claimed in the '537 patent.

55.     Weber's Accused Robotics Products are designed, manufactured, imported, used and/or sold with no uses other than to operate in a way as claimed in the '537 patent.

56.     On information and belief, Weber has been aware of the '537 patent since at least 2012.  For example, Weber cited the application that led to the '537 patent and/or the '537 patent itself as prior art to several of its own patent applications, including at least DE102017105919A; US13490597A; US9021768B2; and US9981400B2.

57.     On information and belief, Weber has been aware of its infringement of the '537 patent, as alleged in this complaint, through at least its extensive monitoring of Provisur's food slicing business, products, designs and patents, as discussed above.  Weber and its principals knew it was highly likely that Weber's actions constituted infringement, or, in the alternative, Weber's infringement was so apparent that Weber should have known.

58.     Weber is, therefore, liable for infringement and willful infringement of the '537 patent pursuant to 35 U.S.C. § 271.

## COUNT TWO
### (Infringement of U.S. Patent No. 9,399,531)

59.     The allegations of paragraphs 1 through 44 are realleged and reincorporated by reference as if fully set forth herein.

60.     U.S. Patent No. 9,399,531 ("the '531 patent"), entitled "Sheet Interleaver For Slicing Apparatus," was duly issued by the USPTO on July 26, 2016, and lists named inventors Glen F. Pryor, Scott A. Lindee, and James E. Pasek.  A true and correct copy of the '531 patent is attached hereto as Exhibit B.

61.     Provisur is the owner and assignee of the '531 patent, with the full rights to enforce the '531 patent and sue for damages by reason of infringement of the '531 patent.

62.     Provisur is in compliance with the patent marking requirements contained in 35 U.S.C. § 287 with respect to the '531 patent.

63.     The '531 patent describes a sheet interleaver for a slicing machine that includes a supply of web material, a drawing station, a feed station, and a controller.  *See, e.g*., Exhibit B at Col. 2:25-38.  Web material may be dispensed in synchronism with the slicing operation such that the material is placed between food product slices to create a stack of interleaved slices and sheets that is formed and conveyed away for packaging.  *See, e.g*., Exhibit B at Col. 2:10-24. The invention embodied by the '531 patent substantially improves the reliability of the placement of sheets for interleaving with product slices, particularly for high speed slicing operations.  *See, e.g*., Exhibit B at Col. 2:3-6.

64.     Defendants have directly infringed and continue to directly infringe one or more claims of the '531 patent in violation of 35 U.S.C. § 271(a), including at least independent claim

14

Appx313

1, by making, using, offering to sell, selling, and/or importing into the U.S. food slicers with interleaving capacity, including but not limited to Weber slicers S6, 905, 804, 604, 405, and 305, and Textor slicers TS500, and TS 700, along with Textor's stand-alone interleaver product, the TI600. *See, e.g.,* https://www.weberweb.com/products/slicer/; http://www.textorweb.com/index.php/us/maschinen-englisch-us/slicer ("Defendants' Accused Interleaver Products").

65.    For example, Textor markets its stand-alone interleaver product in a brochure which states, "The TEXTOR Interleaver TI600 allows [sic] to interleave [sic] film or paper in-between slices of a portion – simply Smart & Easy." *See, e.g.,* http://www.textorweb.com/images/broschueren/TI600-EN.pdf.  Weber released an article on June 20, 2012, entitled "New Interleaver For Compact Machines," which states that "[c]ustomers intending to separate cheese slices or wafer-thin ham slices by paper or film depend on a neat and accurate Interleaver solution . . . . The Interleaver CCI Weber just reworked for use in combination with the new Slicer 404 completely excludes the disadvantages known from comparable systems." *See* https://www.weberweb.com/news/news/article/new-interleaver-for-compact-machines/.

66.    Defendants' Accused Interleaver Products operate in the same way with respect to the relevant claim elements of the '531 patent.  Defendants' Accused Interleaver Products contain all of the elements of claims of the '531 patent, including, for example: (a) a supply of web material; (b) a drawing station having a first driver for drawing web material from said supply; (c) a feed station having a second driver for receiving web material from said drawing station and driving said web material through a cutting nip into said slicing plane; (d) a controller in signal-communication with said first and second drivers to drive web material at select

differential speeds by said first and second drivers such that tension of the web material between said drawing station and said feed station is controlled; (e) a non-contact sensor that senses tension of web material between said drawing station and said feed station and is in signal-communication with said controller to adjust the differential speed of said first and second drivers to maintain said tension within a pre-selected range.

67.     The images below correspond to videos taken from Textor's website depicting one of Defendants' Accused Interleaver Products, for example, the TI600, in action.  The images and videos depict a sheet interleaver machine with a supply of web material, a drawing station, a feed station, a controller, and a non-contact sensor.





68.     Defendants also indirectly infringe one or more claims of the '531 patent in violation of 35 U.S.C. § 271(b) and/or (c) by actively inducing infringement of the '531 patent by others and/or offering to sell or selling within the U.S. a component covered by the claims of the '531 patent that is a material part of the invention and not a staple article or commodity of commerce suitable for substantial noninfringing use.

69.     For example, on information and belief, Defendants instruct customers of Defendants' Accused Interleaver Products how to install and operate the product as claimed, including through product documentation and in-person and remote customer support. Defendants' instructions to their customers are also set forth in published tutorials, quick tips, upgrades and modifications, and product videos on its website and YouTube channel(s). *See, e.g.,* https://www.youtube.com/user/weberslicer; https://www.youtube.com/channel/UC7QCpv2lSi2DkjZ1XVf17Qg.  At least two videos on Textor's website, for example listed above, demonstrate Defendants' Accused Interleaver Products operating as claimed in the '531 patent.  Defendants' Accused Interleaver Products are designed, manufactured, imported, used and/or sold with no uses other than to operate in a way as claimed in the '531 patent.

70.     On information and belief, Defendants have been aware of the '531 patent since at least 2013.  For example, Defendants cited the application that led to the '531 patent and/or the '531 patent itself as prior art to several of their own patent applications, including at least DE102013216717A; DE102017118934A; EP2012174805A; EP2014178970A; and US9981400B2.

71.     On information and belief, Defendants have been aware of their infringement of the '531 patent, as alleged in this complaint, through at least their extensive monitoring of

Provisur's food slicing business, products, designs and patents, as discussed above. Defendants and their principals knew it was highly likely that their actions constituted infringement, or, in the alternative, Defendants' infringement was so apparent that Defendants should have known.

72. Defendants are, therefore, liable for their infringement and willful infringement of the '531 patent pursuant to 35 U.S.C. § 271.

**COUNT THREE**
**(Infringement of U.S. Patent No. 7,065,936)**

73. The allegations of paragraphs 1 through 44 are realleged and reincorporated by reference as if fully set forth herein.

74. U.S. Patent No. 7,065,936 ("the '936 patent"), entitled "Fill and Packaging Apparatus," was duly issued by the USPTO on June 27, 2006, and lists named inventors Scott A. Lindee, Glenn Sandberg, and James E. Pasek. A true and correct copy of the '936 patent is attached hereto as Exhibit C.

75. Provisur is the owner and assignee of the '936 patent, with the full rights to enforce the '936 patent and sue for damages by reason of infringement of the '936 patent.

76. Provisur is in compliance with the patent marking requirements contained in 35 U.S.C. § 287 with respect to the '936 patent.

77. The '936 patent describes an apparatus for filling food product drafts into packages. *See, e.g.*, Exhibit C at Col. 1:5-7. The invention accomplishes this by providing for a retractable, or extendable, conveying surface which deposits food product drafts carried on the conveying surface into containers. *See, e.g.*, Exhibit C at Col. 2:30-58. The invention of the '936 patent, therefore, neatly and economically fills and packages drafts of thin-sliced food product. *See, e.g.*, Exhibit C at Col. 1:53-57.

78.     Defendants have directly infringed and continue to directly infringe one or more claims of the '936 patent in violation of 35 U.S.C. § 271(a), including at least independent claim 1, by making, using, offering to sell, selling, and/or importing into the United States products that include, but are not limited to, Defendants' SmartLoader products, for example as listed on Defendants' websites. *See, e.g.*, https://www.weberweb.com/products/automation/smartloader/; *see also* http://www.textorweb.com/index.php/us/maschinen-englisch-us/linienkomponenten-englisch-us/smartloader-englisch-us ("Defendants' Accused SmartLoader Products").

79.     For example, Defendants market their SmartLoader products as "a fully automatic side loading system for single products or individual portions. Its features and capacity are optimized for sliced products." *See, e.g.*, https://www.weberweb.com/products/automation/smartloader/; *see also* http://www.textorweb.com/index.php/us/maschinen-englisch-us/linienkomponenten-englisch-us/smartloader-englisch-us (same description).

80.     Defendants' Accused SmartLoader Products operate in the same way with respect to the relevant claim elements of the '936 patent. Defendants' Accused SmartLoader Products contain all of the elements of claims of the '936 patent, including, for example: (a) a supply of open top container portions arranged in rows that are displaced along a longitudinal direction and having a first row and a longitudinally displaced second row and carried by an elongated web of film and movable by said web along said longitudinal direction into a fill station; and (b) a shuttle conveyor having a conveying surface, said shuttle conveyor comprises a device to retract and to extend said conveying surface, said conveying surface arranged above said fill station and having an end region longitudinally movable to a first position arranged to deposit food product drafts into said container portions of said first row by said conveying surface, and while said web

remains stationary, said device retracts or extends said conveying surface to reposition said end region to a second position arranged to deposit food product drafts carried on said conveying surface into said container portions of said second row.

81.     The images below correspond to videos taken from a Textor website depicting one of Defendants' Accused SmartLoader Products, for example, Textor's SmartLoader, on a variety pack line with a TS700 slicer, in action.  The images and videos depict an apparatus for filling food product drafts into packages, with locations containing a supply of open top container portions, a fill station area, and a conveying surface which extends and retracts to deposit food product drafts into container portions.





82.     Defendants also indirectly infringe one or more claims of the '936 patent in violation of 35 U.S.C. § 271(b) and/or (c) by actively inducing infringement of the '936 patent by others and/or offering to sell or selling within the U.S. a component covered by the claims of the '936 patent that is a material part of the invention and not a staple article or commodity of commerce suitable for substantial noninfringing use.

83.     For example, Defendants instruct customers of Defendants' Accused SmartLoader Products how to install and operate the product as claimed, including through product documentation and in-person and remote customer support. Defendants' instructions to their customers are also set forth in published tutorials, quick tips, upgrades and modifications, and product videos on its website and YouTube channel(s). *See, e.g.,* https://www.youtube.com/user/weberslicer; https://www.youtube.com/channel/UC7QCpv2lSi2DkjZ1XVf17Qg. At least four videos on Textor's website, for example listed above, demonstrate Defendants' Accused SmartLoader Products operating as claimed. Defendants' Accused SmartLoader Products are designed, manufactured, imported, used and/or sold with no uses other than to operate in a way as claimed.

84.     On information and belief, Defendants have been aware of the '936 patent since before the filing of this complaint. Defendants have been aware of their infringement of the '936 patent, as alleged in this complaint, through at least their extensive monitoring of Provisur's food slicing business, products, designs and patents, as discussed above. Defendants knew it was highly likely that their actions constituted infringement, or, in the alternative, Defendants' infringement was so apparent that Defendants should have known.

85.     Defendants are, therefore, liable for infringement and willful infringement of the '936 patent pursuant to 35 U.S.C. § 271.

## COUNT FOUR
### (Infringement of U.S. Patent No. 7,533,513)

86.     The allegations of paragraphs 1 through 44 are realleged and reincorporated by reference as if fully set forth herein.

87.     U.S. Patent No. 7,533,513 ("the '513 patent"), entitled "Fill and Packaging Method," was duly issued by the USPTO on May 19, 2009, and lists named inventors Scott A.

Lindee, Glenn Sandberg, and James E. Pasek.  A true and correct copy of the '513 patent is attached hereto as Exhibit D.

88.     Provisur is the owner and assignee of the '513 patent, with the full rights to enforce the '513 patent and sue for damages by reason of infringement of the '513 patent.

89.     Provisur is in compliance with the patent marking requirements contained in 35 U.S.C. § 287 with respect to the '513 patent.

90.     The '513 patent describes an apparatus for filling food product drafts into packages.  *See, e.g.*, Exhibit D at Col. 1:9-11.  The invention accomplishes this by providing for a retractable, or extendable, conveying surface which deposits food product drafts carried on the conveying surface into containers.  *See, e.g.*, Exhibit D at Col. 2:1-11.  The '513 patent, therefore, neatly and economically fills and packages drafts of thin-sliced food product.  *See, e.g.*, Exhibit D at Col. 1:56-59.

91.     Defendants have directly infringed and continue to directly infringe one or more claims of the '513 patent in violation of 35 U.S.C. § 271(a), including at least independent claim 1, by making, using, offering to sell, selling, and/or importing into the U.S. products that include, but are not limited to, Defendants' Accused SmartLoader products, for example as listed on Defendants' websites.  *See, e.g.*, https://www.weberweb.com/products/automation/smartloader/; *see also* http://www.textorweb.com/index.php/us/maschinen-englisch-us/linienkomponenten-englisch-us/smartloader-englisch-us.

92.     For example, Defendants market their SmartLoader products as "a fully automatic side loading system for single products or individual portions.  Its features and capacity are optimized for sliced products."  *See* https://www.weberweb.com/products/automation/smartloader/; *see also*

http://www.textorweb.com/index.php/us/maschinen-englisch-us/linienkomponenten-englisch-us/smartloader-englisch-us (same description).

93.     Defendants' Accused SmartLoader Products operate in the same way with respect to the relevant claim elements of the '513 patent.  Defendants' Accused SmartLoader Products contain all of the elements of claims of the '513 patent, including, for example: (a) supplying open top container portions arranged in rows that are spaced-apart along a longitudinal direction and having a first row and a longitudinally spaced-apart second row and connected to move longitudinally together, said first and second rows movable together along said longitudinal direction into a fill station; and (b) providing a conveyor having a retractable and extendable conveying surface, said conveying surface arranged above said fill station and having an end region longitudinally movable to a first position arranged to deposit food product drafts into said container portions of said first row by said conveying surface, moving said end region to said first position and depositing food drafts into container portions of said first row; and (c) while said first and second rows are in said fill station, retracting or extending said conveying surface to reposition said end region to a second position arranged to deposit food product drafts carried on said conveying surface into said container portions of said second row.

94.     The images below correspond to videos taken from Textor's website depicting one of Defendants' Accused SmartLoader Products, for example, Textor's SmartLoader, on a variety pack line with a TS700 slicer, in action.  The images and videos depict a fill and packaging machine, with examples of locations of a supply of open top container portions, a fill station area, and a conveying surface.  Also depicted is the conveyor having a retractable and extendable conveying surface, said conveying surface arranged above said fill station to deposit food product in the containers below.





95.     Defendants also indirectly infringe one or more claims of the '513 patent in violation of 35 U.S.C. § 271(b) and/or (c) by actively inducing infringement of the '513 patent by others and/or offering to sell or selling within the U.S. a component covered by the claims of the '513 patent that is a material part of the invention and not a staple article or commodity of commerce suitable for substantial noninfringing use.

96.     For example, Defendants instruct customers of Defendants' Accused SmartLoader Products how to install and operate the product as claimed, including through product documentation and in-person and remote customer support. Defendants' instructions to their customers are also set forth in published tutorials, quick tips, upgrades and modifications, and product videos on its website and YouTube channel(s). *See, e.g.,* https://www.youtube.com/user/weberslicer; https://www.youtube.com/channel/UC7QCpv2lSi2DkjZ1XVf17Qg. At least four videos on Textor's website, for example listed above, demonstrate Defendants' Accused SmartLoader Products operating as claimed. Defendants' Accused SmartLoader Products are designed, manufactured, imported, used and/or sold with no uses other than to operate in a way as claimed.

97.     On information and belief, Defendants have been aware of the '513 patent since before the filing of this complaint.  Defendants have been aware of their infringement of the '513 patent, as alleged in this complaint, through at least their extensive monitoring of Provisur's food slicing business, products, designs and patents, as discussed above.  Defendants knew it was highly likely that their actions constituted infringement, or, in the alternative, Defendants' infringement was so apparent that Defendants should have known.

98.     Defendants are, therefore, liable for infringement and willful infringement of the '513 patent pursuant to 35 U.S.C. § 271.

## COUNT FIVE
### (Infringement of U.S. Patent No. 6,669,005)

99.     The allegations of paragraphs 1 through 44 are realleged and reincorporated by reference as if fully set forth herein.

100.    U.S. Patent No. 6,669,005 ("the '005 patent"), entitled "Servo-Controlled Distribution Conveyor," was duly issued by the USPTO on December 30, 2003, and lists named inventors Glenn Sandberg and Scott Lindee.  A true and correct copy of the '005 patent is attached hereto as Exhibit E.

101.    Provisur is the owner and assignee of the '005 patent, with the full rights to enforce the '005 patent and sue for damages by reason of infringement of the '005 patent.

102.    Provisur is in compliance with the patent marking requirements contained in 35 U.S.C. § 287 with respect to the '005 patent.

103.    The '005 patent describes a feed conveyor system for positioning food product from a feed conveyor onto a downstream conveyor.  *See, e.g.*, Exhibit E at Col. 1:8-12.  The invention accomplishes this by providing for a retractable, or extendable, conveying surface which deposits food product from the feed conveyor onto the downstream conveyor.  *See, e.g.*,

25

Exhibit E at Col. 1:51-Col. 2:7. It provides for an easily adjustable and controllable method of moving food products from one conveying surface to another. *See, e.g.*, Exhibit E at Col. 1:43-47.

104. Defendants have directly infringed and continue to directly infringe one or more claims of the '005 patent in violation of 35 U.S.C. § 271(a), including at least independent claim 1, by making, using, offering to sell, selling, and/or importing into the U.S. products that include, but are not limited to, Defendants' Accused SmartLoader products, for example as listed on Defendants' websites. *See, e.g.*, https://www.weberweb.com/products/automation/smartloader/; *see also* http://www.textorweb.com/index.php/us/maschinen-englisch-us/linienkomponenten-englisch-us/smartloader-englisch-us.

105. For example, Defendants market their SmartLoader products as "a fully automatic side loading system for single products or individual portions. Its features and capacity are optimized for sliced products." *See, e.g.*, https://www.weberweb.com/products/automation/smartloader/; *see also* http://www.textorweb.com/index.php/us/maschinen-englisch-us/linienkomponenten-englisch-us/smartloader-englisch-us (marketing the same description).

106. Defendants' Accused SmartLoader Products operate in the same way with respect to the relevant claim elements of the '005 patent. Defendants' Accused SmartLoader Products contain all of the elements of claims of the '005 patent, including, for example: (a) an endless circulating belt having an upper conveying surface; (b) a roller controlling a belt accumulation region of said endless circulating belt, said conveying surface having an upstream region adapted to receive a stream of articles in rows across a lateral direction of said belt, said belt circulated to move said rows in said longitudinal direction to an end of said conveying surface, wherein said

endless belt is turned over at said end, wherein circulation of said belt passes said rows off of said conveying surface to be deposited onto said downstream conveyor, and said longitudinal position of said end is movable between an extended position and a retracted position passing across at least a portion of a transverse dimension of said downstream conveyor by longitudinal positioning of said roller; (c) a first electric motor and a traction system, said traction system engaged to be translated by said second electric motor, said roller mechanically connected to said traction system to be moved longitudinally thereby; (d) a second electric motor, wherein said conveying surface is circulated by mechanical communication from said second electric motor; and (e) a controller operatively connected to said first and second electric motors to precisely control the position of said end and the conveying speed of said conveying surface.

107. The images below correspond to videos taken from Textor's website depicting one of Defendants' Accused SmartLoader Products, for example, Textor's SmartLoader, on a variety pack line with a TS700 slicer, in action. The images and videos depict a fill and packaging machine, with an endless circulating belt, an upper conveying surface, an upstream region adapted to receive a stream of articles, a first electric motor, a traction system, a second electric motor and a controller.







108.    Defendants also indirectly infringe one or more claims of the '005 patent by actively inducing infringement of the '005 patent in violation of 35 U.S.C. § 271(b) and/or (c) by others and/or offering to sell or selling within the U.S. a component covered by the claims of the '005 patent that is a material part of the invention and not a staple article or commodity of commerce suitable for substantial noninfringing use.

109.    For example, Defendants instruct customers of Defendants' Accused SmartLoader Products how to install and operate the product as claimed, including through product documentation and in-person and remote customer support.  Defendants' instructions to their customers are also set forth in published tutorials, quick tips, upgrades and modifications, and product videos on its website and YouTube channel(s).  *See, e.g.,* https://www.youtube.com/user/weberslicer; https://www.youtube.com/channel/UC7QCpv2lSi2DkjZ1XVf17Qg.  At least four videos on

Textor's website, for example listed above, demonstrate Defendants' Accused SmartLoader Products operating as claimed. Defendants' Accused SmartLoader Products are designed, manufactured, imported, used and/or sold with no uses other than to operate in a way as claimed.

110.    On information and belief, Defendants have been aware of the '005 patent since before the filing of this complaint. Defendants have been aware of their infringement of the '005 patent, as alleged in this complaint, through at least their extensive monitoring of Provisur's food slicing business, products, designs and patents, as discussed above. Defendants knew it was highly likely that their actions constituted infringement, or, in the alternative, Defendants' infringement was so apparent that Defendants should have known.

111.    Defendants are, therefore, liable for infringement and willful infringement of the '005 patent pursuant to 35 U.S.C. § 271.

## COUNT SIX
### (Infringement of U.S. Patent No. 6,997,089)

112.    The allegations of paragraphs 1 through 44 are realleged and reincorporated by reference as if fully set forth herein.

113.    U.S. Patent No. 6,997,089 ("the '089 patent"), entitled "Optical Grading System For Slicer Apparatus," was duly issued by the USPTO on February 14, 2006, and lists named inventors Scott A. Lindee and Thomas C. Wolcott. A true and correct copy of the '089 patent is attached hereto as Exhibit F.

114.    Provisur is the owner and assignee of the '089 patent, with the full rights to enforce the '089 patent and sue for damages by reason of infringement of the '089 patent.

115.    Provisur is in compliance with the patent marking requirements contained in 35 U.S.C. § 287 with respect to the '089 patent.

116. The '089 patent describes a method of classifying slices or a portion cut from a food product according to an optical image of the slice. *See, e.g.*, Exhibit F at Col. 1:6-9. In the patent, a slice may be passed into an image field of a digital image receiving device. *See, e.g.*, Exhibit F at Col. 2:25-46. A control generates a pixel-by-pixel image data of the slice using input from the digital image receiving device. *Id*. The control may calculate a surface area of the slice from the data, and a fat content of the slice on a pixel-by-pixel basis. *Id*. The fat content data may be compared to at least one predetermined limit, and the slice is classified accordingly. *Id*.

117. Defendants have directly infringed and continue to directly infringe one or more claims of the '089 patent in violation of 35 U.S.C. § 271(a), including at least independent claim 9, by making, using, offering to sell, selling, and/or importing into the U.S. slicers incorporating optical grading systems, for example as advertised on Defendants' websites. *See, e.g.*, https://www.weberweb.com/products/slicer/slicer-702/ ("Defendants' Accused Optical Grading Products").

118. Defendants' Accused Optical Grading Products operate in the same way with respect to the relevant claim elements of the '089 patent. Defendants' Accused Optical Grading Products contain all of the elements of claims of the '089 patent, including, for example: (a) a high speed slicing apparatus arranged to cut off a series of slices from a food loaf; (b) a conveyor arranged to receive said slices from said slicing apparatus in a stack of slices; (c) a control having a memory section and a data processing section; (d) an image capturing device arranged above the conveyor, said image capturing device signal-connected to said control to input into said memory section a two-dimensional pixel field corresponding to an image captured of a surface area of a top slice of said stack of slices located on said conveyor, each pixel classified

by said control as either a fat or lean portion of the surface area, depending on image, said control data processing section adapted to sum fat pixels and compare said sum of fat pixels to a predetermined limit; and (e) a classifying conveyor signal-connected to said control, said classifying conveyor movable to direct the stack of slices to a destination depending on the number of fat pixels.

119. The images below correspond to videos taken from Weber's website and depict one of Defendants' Accused Optical Grading Products being used in connection with the Weber Slicer 702, including examples of locations of a conveyor arranged to receive said slices, a control, and an image capture device, and a classifying conveyor.

 



120. Defendants also indirectly infringe one or more claims of the '089 patent in violation of 35 U.S.C. § 271(b) and/or (c) by actively inducing infringement of the '089 patent by others and/or offering to sell or selling within the U.S. a component covered by the claims of the '089 patent that is a material part of the invention and not a staple article or commodity of commerce suitable for substantial noninfringing use.

121.    For example, Defendants instruct customers of Defendants' Accused Optical Grading Products how to install and operate the product as claimed, including through product documentation and in-person and remote customer support.  Defendants' instructions to their customers is also set forth in published tutorials, quick tips, upgrades and modifications, and product videos on its website and YouTube channel(s).  *See, e.g.,* https://www.youtube.com/user/weberslicer; https://www.youtube.com/channel/UC7QCpv2lSi2DkjZ1XVf17Qg.  At least one video on Weber's website, for example listed above, demonstrates Defendants' Accused Optical Grading Products operating as claimed.  Defendants' Accused Optical Grading Products are designed, manufactured, imported, used and/or sold with no uses other than to operate in a way as claimed.

122.    On information and belief, Defendants have been aware of the '089 patent since at least 2015.  For example, Defendants cited the '089 patent and/or the application that led to the '089 patent as prior art to their own patent applications, including at least DE102015122399A; DE102017112095A; US14700643A; and WO2016EP82160A.

123.    On information and belief, Defendants have been aware of their infringement of the '089 patent, as alleged in this complaint, through at least their extensive monitoring of Provisur's food slicing business, products, designs and patents, as discussed above.  Defendants knew it was highly likely that their actions constituted infringement, or, in the alternative, Defendants' infringement was so apparent that Defendants should have known.

124.    Defendants are, therefore, liable for infringement and willful infringement of the '089 patent pursuant to 35 U.S.C. § 271.

## COUNT SEVEN
### (Infringement of U.S. Patent No. 6,320,141)

125.    The allegations of paragraphs 1 through 44 are realleged and reincorporated by reference as if fully set forth herein.

126.    U.S. Patent No. 6,320,141 ("the '141 patent"), entitled "Yield Monitoring System for a Slicer Apparatus," was duly issued by the USPTO on November 20, 2001, and lists named inventors Scott Lindee and Steven Ill.  A true and correct copy of the '141 patent is attached hereto as Exhibit G.

127.    Provisur is the owner and assignee of the '141 patent, with the full rights to enforce the '141 patent and sue for damages by reason of infringement of the '141 patent.

128.    Provisur is in compliance with the patent marking requirements contained in 35 U.S.C. § 287 with respect to the '141 patent.

129.    The '141 patent describes a yield monitoring system for a slicing and packaging apparatus.  *See, e.g.*, Exhibit G at Col. 1:6-8.  In accordance with one embodiment of the system, the system includes at least one product input scale, a slicing mechanism for slicing the product, and at least one product output scale capable of weighing the product after slicing.  *See, e.g.*, Exhibit G at Col. 1:66-Col. 2:16.  A yield monitor is connected to electronically receive weight information corresponding to the weight of product weighed by the at least one product input scale and the at least one product output scale.  *Id.*  The yield monitor uses weight information to provide system yield data to a user.  *Id.*  Preferably, the system also includes a makeweight scale, which electronically communicates makeweight data to the yield monitor.  *Id.*  This system improves the state of the art by, for example, disclosing an automated system that determines and monitors the overall yield of a food processing system.  *See, e.g.*, Exhibit G at Col. 1:53-56.

130.     Defendants have directly infringed and continue to directly infringe one or more claims of the '141 patent in violation of 35 U.S.C. § 271(a), including at least independent claim 20, by making, using, offering to sell, selling, and/or importing into the U.S. weighers designed to be used in the context of infringing yield monitoring systems, for example as advertised on Defendants' websites. *See, e.g.*, http://www.textorweb.com/index.php/us/maschinen-englisch-us/scanner-waage-englisch-us/cps-200-englisch-us ("Defendants' Accused Yield Monitoring Products").

131.     Defendants' Accused Yield Monitoring Products operate in the same way with respect to the relevant claim elements of the '141 patent.  Defendants' Accused Yield Monitoring Products contain all of the elements of claims of the '141 patent, including, for example: (a) at least one product input scale; (b) a slicing mechanism for slicing the comestible product after the product has been weighed on the at least one product input scale; (c) at least one product output scale capable of weighing the product after slicing by the slicing mechanism to determine a post-processing weight; (d) at least one product makeweight scale capable of electronically communicating makeweight data; and (e) a yield monitor connected to electronically receive weight information from the at least one product input scale, the at least one product output scale, and be at least one product makeweight scale, the yield monitor using the received weight information to provide system yield data to a user.

132.     The '141 patent is directed to a tangible apparatus for use in a system for slicing a comestible product.  As reflected in the detailed description of the '141 patent, it describes a novel inventive concept for a yield monitoring system.  Although conventional systems presented various approaches to quantifying the uniformity of the packaged product, conventional systems failed to address the quantification of system efficiency, *i.e.*, system yield.

Thus, the '141 patent describes a particular technology that was not well-understood, routine, or conventional and goes beyond what was known in the prior art before the time of invention to solve this technological problem.

133.    The images below correspond to videos taken from Weber's and Textor's websites depicting Defendants' Accused Yield Monitoring Products, for example, including at least the CPS 200, in action.  The images and videos depict an apparatus for use in a system for slicing a comestible product, with examples of locations of a product input scale, a slicing mechanism, an output scale, a makeweight scale, and a yield monitor.








134.    Defendants also indirectly infringe one or more claims of the '141 patent in violation of 35 U.S.C. § 271(b) and/or (c) by actively inducing infringement of the '141 patent by others and/or offering to sell or selling within the U.S. a component covered by the claims of the '141 patent that is a material part of the invention and not a staple article or commodity of commerce suitable for substantial noninfringing use.

135.    For example, Defendants instruct customers of Defendants' Accused Yield Monitoring Products how to install and operate the product as claimed, including through product documentation and in-person and remote customer support.  Defendants' instructions to their customers are also set forth in published tutorials, quick tips, upgrades and modifications, and product videos on its website and YouTube channel(s).  *See, e.g.,* https://www.youtube.com/user/weberslicer; https://www.youtube.com/channel/UC7QCpv2lSi2DkjZ1XVf17Qg.  At least one video on Textor's website, for example listed above, demonstrates Defendants' Accused Yield Monitoring Products operating as claimed.  Defendants' Accused Yield Monitoring Products are designed, manufactured, imported, used and/or sold with no uses other than to operate in a way as claimed.

136.    On information and belief, Defendants have been aware of the '141 patent since before the filing of this complaint.  Defendants have been aware of their infringement of the '141 patent, as alleged in this complaint, through at least their extensive monitoring of Provisur's food slicing business, products, designs and patents, as discussed above.  Defendants knew it was highly likely that their actions constituted infringement, or, in the alternative, Defendants' infringement was so apparent that Defendants should have known.

137.    Defendants are, therefore, liable for infringement and willful infringement of the '141 patent pursuant to 35 U.S.C. § 271.

*        *        *

138.    Defendants' acts of infringement have caused damage to Provisur.

139.    Provisur is entitled to recover from Defendants the damages sustained by Provisur as a result of Defendants' wrongful acts, in an amount subject to proof at trial and, in any case, no less than a reasonable royalty, pursuant to 35 U.S.C. § 284.

140.    Defendants' acts of patent infringement have caused irreparable harm to Provisur and Provisur is entitled to the grant of a preliminary and permanent injunction pursuant to 35 U.S.C. § 283, enjoining Defendants, and each of their agents, employees, principals, officers, attorneys, successors and all those in active concert or participation with Defendants from further acts of infringement, contributory infringement, and inducement to infringe with respect to the '531, '936, '513, '005, '089, and '141 patents' claims.

141.    Weber's acts of patent infringement have caused irreparable harm to Provisur and Provisur is entitled to the grant of a preliminary and permanent injunction pursuant to 35 U.S.C. § 283, enjoining Weber, and each of its agents, employees, principals, officers, attorneys, successors and all those in active concert or participation with Weber from further acts of infringement, contributory infringement, and inducement to infringe with respect to the '537 patent's claims.

142.    Defendants' infringement of the '531, '936, '513, '005, '089, and '141 patents is willful and deliberate, justifying treble damages pursuant to 35 U.S.C. § 284.

143.    Weber's infringement of the '537 patent is willful and deliberate, justifying the assessment of treble damages pursuant to 35 U.S.C. § 284.

144.    This is an exceptional case, justifying the awarding of attorneys' fees and costs pursuant to 35 U.S.C. § 285.

145. Provisur reserves the right to assert additional infringement allegations as discovery progresses and in accord with the rules and deadlines of this Court.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Provisur respectfully requests that this Court enter judgment in its favor against Defendants and grant to Provisur the following relief:

A.      Find that Weber is infringing the '537 in violation of 35 U.S.C. § 271(a), (b), and/or (c);

B.      Find that Defendants are infringing the '531, '936, '513, '005, '089, and '141 patents in violation of 35 U.S.C. § 271(a), (b), and/or (c);

C.      Enter an order preliminarily and permanently enjoining Weber, its officers, directors, agents, servants, employees, and all other persons in privity or acting in concert with it who receive actual notice of the order by personal service or otherwise, from any further acts of infringement of the '537 patent;

D.      Enter an order preliminarily and permanently enjoining Defendants, their officers, directors, agents, servants, employees, and all other persons in privity or acting in concert with them who receive actual notice of the order by personal service or otherwise, from any further acts of infringement of the '531, '936, '513, '005, '089, and '141 patents;

E.      Award Provisur damages in an amount adequate to compensate Provisur for Weber's infringement of the '537 patent;

F.      Award Provisur damages in an amount adequate to compensate Provisur for Defendants' infringement of the '531, '936, '513, '005, '089, and '141 patents;

G.      Enter an order trebling any and all damages awarded to Provisur by reason of Weber's willful infringement of the '537 patent pursuant to 35 U.S.C. § 284;

H.    Enter an order trebling any and all damages awarded to Provisur by reason of Defendants' willful infringement of the '531, '936, '513, '005, '089, and '141 patents pursuant to 35 U.S.C. § 284;

I.    Enter an order awarding Provisur interest on damages awarded and their costs pursuant to 35 U.S.C. § 284;

J.    Enter an order finding that this is an exceptional case and awarding Provisur its reasonable attorneys' fees pursuant to 35 U.S.C. § 285; and

K.    Award such other and further relief as this Court deems proper.

## JURY DEMAND

Plaintiff Provisur respectfully requests a trial by jury of all issues properly triable by jury in this action.

Respectfully submitted,

/s/ Jeffrey J. Simon
Jeffrey J. Simon
State Bar No. 35558
HUSCH BLACKWELL LLP
4801 Main Street, Suite 1000
Kansas City, MO 64112
Tel:  (816) 329-4711
Fax: (816) 983-8080
jeff.simon@huschblackwell.com

Craig C. Martin
Timothy J. Barron
Sara T. Horton
Michael G. Babbitt
Carla J. Baumel
JENNER & BLOCK LLP
353 N. Clark Street
Chicago, IL 60654-3456
Tel:  (312) 923-2776
Fax:  (312) 840-7776
cmartin@jenner.com

39

tbarron@jenner.com
shorton@jenner.com
mbabbitt@jenner.com
cbaumel@jenner.com
*Pro Hac Vice Applications Forthcoming*

**Attorneys for Plaintiff**
**Provisur Technologies, Inc.**

UNITED STATES PATENT AND TRADEMARK OFFICE

_____

BEFORE THE PATENT TRIAL AND APPEAL BOARD

_____

WEBER, INC.
Petitioner

v.

PROVISUR TECHNOLOGIES, INC.
Patent Owner

_____

Case IPR2019-01462
Patent 7,065,936

_____

**PETITION FOR *INTER PARTES* REVIEW
OF U.S. PATENT NO. 7,065,936**

**Mail Stop PATENT BOARD**
Patent Trial and Appeal Board
U.S. Patent & Trademark Office
P.O. Box 1450
Alexandria, VA 22313-1450

## I.      Introduction

Weber, Inc. ("Weber" or "Petitioner") petitions for *inter partes* review of claims 1-21 of U.S. Patent No. 7,065,936 ("'936 patent"), assigned to Provisur Technologies, Inc. ("Provisur").

The challenged claims recite simple, well-known concepts for depositing food into containers. The claimed system withdraws a conveyor belt supporting a food product causing the food product to fall into the container. The patentee's alleged advance was filling multiple rows of containers while the containers remain stationary. Yet, this feature was well-known in the art for years before the purported invention by the patentee.

The patentee's dependent claims attempt to obscure the simplicity of this alleged invention by adding conventional package production methods, including container forming and sealing, product tamping, and meat slicing. But these elements were also well-known in the art and add no patentable weight, as detailed below. Accordingly, the challenged claims would have been obvious and should be canceled.

## II.    Background

### A.    Overview of prior art

#### 1.    Honsberg discloses a food depositing apparatus that uses a withdrawing conveyor.

U.S. Patent No. 5,078,259 to Honsberg issued on January 7, 1992. EX1005, Cover Page. Honsberg discloses an "apparatus for inserting sliced food into a packing machine." *Id.*, Abstract. Honsberg's apparatus is configured to mount on to a packaging machine. *Id.* 2:5-10; EX1003, ¶31. Honsberg's "conveyor belt 5" advances food to a "food depositing point 56." *Id.* 5:4-11.

At "food depositing point 56," the food rests on "knife edge shoulder 2." *Id.* Moving the conveying surface "away from the food depositing point 56 in the direction of the arrow 25," as shown in Honsberg's Figure 1 below, deposits the food into "receptacles 31" formed in "sheet 32" located under knife edge shoulder 2. *Id.*, 5:4-11.



EX1005, FIG. 1 (annotated); EX1003, ¶31.

Case 5:19-cv-06021-SRB   Document 35-2   Filed 08/12/19   Page 10 of 94

Appx667

Honsberg likens the depositing motion to having the ground "taken from under the feet" of the food products causing them to "drop[] into the receptacle 31 in the deep drawn sheet 32." EX1005, 5:4-11.

As shown in Figure 3 below, Honsberg's food products are loaded into receptacles 31 (annotated in blue) as the conveying surface (annotated in green) is withdrawn. EX1003, ¶¶32-36.



EX1005, FIG. 3 (annotated); EX1003, ¶33.

Honsberg teaches that depositing products into containers arranged in "rows and columns" was known in the art. EX1005, 1:28-35; EX1003, ¶34. Honsberg also discloses depositing food products into receptacles 31 while sheet 32 is stationary. EX1005, 2:15-18, 2:26-32, 8:2-4; EX1003, ¶34.

### 2. Hollymatic discloses a withdrawing conveyor that deposits food into multiple rows of packaging containers.

European Patent Application Publication No. 0 104 142 A2 to Hollymatic published on March 28, 1984. EX1006, Cover Page. Hollymatic discloses a conveyor for "placing objects," such as "ground meat," accurately into "double-row groups 42a, 42b, 42c" of containers. *Id.*, Title, 8-10; EX1003, ¶37. Hollymatic acknowledges that the art has long recognized the benefits of depositing food articles "by withdrawing the downstream end of the conveyor belt" because it ensures the food products "preserv[e] their shape" when they are deposited. EX1006, 2-3; EX1003, ¶37. An embodiment of Hollymatic's system is shown in annotated Figures 1 and 4 below. EX1003, ¶37.



EX1006, FIG. 1 (annotated); EX1003, ¶37.



EX1006, FIG. 4 (annotated); EX1003, ¶37.

Hollymatic's "conveyor belt [30]" travels over "deflection roller 11 at the downstream end 30b of the conveying path." EX1006, 4; EX1003, ¶38. Deflection roller 11 "is fastened" on the downstream end 30b of "a horizontally displaceable" sled 10. EX1006, 4; EX1003, ¶38. Hollymatic's "sled 10, is fixed in a position 14 on a transport chain 23, guided via two rollers 21, 22." EX1006, 4; EX1003, ¶38. Drive motor 20 moves transport chain 23 to extend and retract the downstream end 30b of conveyor belt 30. EX1006, Cover Page; EX1003, ¶38. "If the shift of the sled 10 is carried out opposite the travel direction of conveyor belt 30 with a

greater speed than the conveying speed" of conveyor belt 30, "the objects fall vertically downwards as a result of the inertia." EX1006, 5.

Hollymatic describes that when a sensor "determines the presence of a first object 1, the drive engine 20 is switched on and the sled 10 is withdrawn" a distance "a" as shown above in Figure 1. EX1006, 7; EX1003, ¶39. Once a second object 2 reaches the end of sled 10, drive engine 20 actuates again and sled 10 withdraws again another distance "a." EX1006, 7; EX1003, ¶39. This sequence is illustrated in Hollymatic's FIG. 5.



Portion of EX1006, FIG. 5 (annotated); EX1003, ¶40.

Case 5:19-cv-06021-SRB   Document 35-2   Filed 08/12/19   Page 14 of 94
**Appx671**

As shown in Figure 5, the sled is then extended and the sequence is repeated to deposit objects 4-6 into the second row of the tray. EX1006, 7-8; FIG. 5; EX1003, ¶41.

### 3. Weber446 discloses a food depositing apparatus that uses a withdrawing conveyor.

PCT Publication No. 02/22446 to Weber published on March 21, 2002. EX1007. Weber446 discloses a mechanism for depositing sliced food into receptacles. EX1007, FIGS. 1-3; EX1003, ¶42.

Weber446's Figure 1 shows transfer unit 15 "used to transfer portions 11 of sliced product slices, which are arranged in an overlapping or stacked manner, to the packaging machine 14 in such a way that the structure of the portions 11, i.e., the relative position of the product slices within the portions 11, is not changed in each case." EX1007, 7; EX1003, ¶43.



EX1007, FIG. 1 (annotated); EX1003, ¶43.

- 7 -

The packaging machine 14 uses "packaging film 32 that is wound on a supply drum 31." EX1007, 7; EX1003, ¶43.

Transfer unit 15 moves to a "transfer position" where "portion 11 is arranged precisely above a product receiver 18." EX1007, 10; EX1003, ¶¶43-44.



EX1007, Portions of FIGS. 2-3 (annotated); EX1003, ¶44.

There, portion 11 is deposited into the container portions. *See* EX1007, FIGS. 2-3; EX1003, ¶44. Weber446 describes the depositing as having "[the ground] pulled out from underneath" portion 11. EX1007, 11; EX1003, ¶44. The abrupt "moving away of the product support . . . ensure[s] that the relative position of the individual product slices is not changed by the interaction between the support surface and the product slices touching the support surface." EX1007, 2, 11; EX1003, ¶44. Accordingly, "[e]ach portion is dropped into the product receiver in

such a way that the structure of the portion is not disturbed." EX1007, 24; EX1003, ¶¶44-45.

> **4.** **Mello discloses a fill station, an upstream packaging forming station, and a downstream packaging sealing station.**

U.S. Patent No. 5,054,266 to Mello *et al.* issued on October 8, 1991. EX1008. Mello discloses a machine with a container forming station 14 that forms containers 30 in an array from web 28. EX1008, FIGS. 1, 3, 3:39-40, 9:25-26; EX1003, ¶46. Formed containers 30 are loaded at loading station 16. EX1008, 3:39-40; EX1003, ¶46. At sealing station 20, a lid 36 is "sealed to the containers." EX1008, 47-49; EX1003, ¶46. Mello's apparatus is shown in Figure 1 below.



EX1008, FIG. 1 (annotated); EX1003, ¶46.

Mello describes that the containers are formed and sealed in "arrays" having multiple columns and rows. EX1008, 9:25-27, FIG. 5; EX1003, ¶47.

**5.** **Mahaffy535 discloses a tamping apparatus that tamps products into containers.**

U.S. Patent No. 4,709,535 to Mahaffy *et al.* issued on December 1, 1987. EX1009. Mahaffy535 discloses an apparatus for "loading stacks of sliced food products into package receptacles." EX1009, Abstract; EX1003, ¶¶48-49. A "retractable pusher arm having a pusher mounted thereon" tamps the food into container cavities 26 as shown in Figures 2-5 below. EX1009, Abstract; EX1003, ¶48.



EX1009, Abstract, FIGS. 2-5; EX1003, ¶48.

**6.** **Scheflow discloses a rotary slicer that deposits slices of meat on a conveyor.**

U.S. Patent No. 4,685,364 to Scheflow *et al.* issued on August 11, 1987. EX1010. Scheflow discloses a "rotary slicer." EX1010, Abstract; EX1003, ¶¶50-51.

A product magazine 26 holds a product, such as meat, to be cut. EX1010, 4:7-13; EX1003, ¶50. The "circular slicing blade 40" cuts the product into slices, which fall onto a drop area. EX1010, 4:11-13, 4:22; EX1003, ¶50. Conveyor 101's "indexing movement" moves the product from the drop area. EX1010, 8:27-30; EX1003, ¶50.



EX1010, FIG. 1 (annotated); EX1003, ¶50.

### 7. Sandberg discloses a staging conveyor that forms slices into rows and transports the rows to downstream conveyors.

U.S. Patent No. 5,810,149 to Sandberg *et al.* issued on September 22, 1998. EX1011. Sandberg discloses a "conveyor system for accepting one or more streams of product input and convert[s] the one or more streams to a format that is suitable for automatic loading." EX1011, Abstract; EX1003, ¶52-53. Sandberg's "row staging conveyor 65" aligns product into one or more rows. EX1011, 4:36-41; EX1003,¶52. The '936 patent's background section also describes Sandberg as

"a staging conveyor" that converts "conveyed spaced-apart" drafts into "lateral rows of drafts." EX1001, 1:10-17; EX1003, ¶52.

## B. The '936 Patent's Disclosure

The '936 patent discloses an apparatus for depositing sliced food—or drafts—into containers. EX1001. The '936 patent's apparatus delivers "rows of drafts onto a shuttle conveyor 52." EX1001, 3:63-64; EX1003, ¶58. "At a fill station 61, the shuttle conveyor 52 delivers rows of drafts into container in the form of a group of rows of pockets 62 formed in a lower web of film 63." EX1001, 3:67-4:1-3; EX1003, ¶58. The pockets are "filled while the web of film 63 is stationary at the fill station 61." EX1001, 4:31-36, FIG. 2; EX1003, ¶58. After filling a first row of pockets 62a, carriage 97 moves end region 100 to a "position to deposit the next row of drafts into the second row of pockets 62b." EX1001, 5:15-21; EX1003, ¶58. After both rows 62a and 62b are filled, "the web of film 63" advances "to reveal a new group of rows of pockets for filing." EX1001, 5:31-38, FIG. 2; EX1003, ¶58.

The '936 patent discloses a tamping apparatus having a "tamp plate 162" that depresses drafts into "respective pocket 62a." EX1001, 4:60-64, FIG. 2; EX1003, ¶59. Once filled and tamped, the containers move to a product sealing station. EX1001, 4:4-6, 5:31-32, FIG. 2; EX1003, ¶59. The '936's apparatus is shown in Figure 2 below. EX1003, ¶59.



EX1001, FIG. 2 (annotated); EX1003, ¶59.

## C. Prosecution History of the '936 patent

The application that matured into the '936 patent was filed on December 18, 2002. EX1002, 303. In response to an Office Action, the applicant amended the independent claims to recite that the shuttle conveyor retracts and extends to first and second rows of containers "while [the] web remains stationary." *Id.*, 184. The applicant alleged that the applied references are "not configured to fill one row of trays and then retract or extend to fill another row of trays" while the trays are stationary in a fill station. *Id.,* 215. Subsequently, the applicant filed an appeal brief. *Id.*, 48-81.

The Examiner withdrew the rejection and allowed the application in view of the appeal brief. *Id.*, 36. The Notice of Allowance stated that the claims were allowed because the applied references did not disclose or render obvious the

|  |  |
|---|---|
| PROVISUR TECHNOLOGIES, INC., | |
| *Plaintiff*, | Civil Action No. 5:19-cv-6021 |
| v. | |
| WEBER, INC., ET AL., | |
| *Defendants*. | |

## <u>STATUS UPDATE OF POST-GRANT PROCEEDINGS</u>

Pursuant to Local Patent Rule 2.1(a)(1), Defendants Weber, Inc., Textor, Inc., Weber Maschinenbau GmbH Breidenbach, Weber Maschinenbau GmbH Neubrandenburg, and Textor Maschinenbau GmbH (collectively, "Defendants"), notify the Court that on February 24, 2021, the Patent Trial and Appeal Board ("PTAB") issued its Final Written Decision (attached hereto as Ex. 1) in IPR2019-01462, concerning asserted U.S. Patent No. 7,065,936 ("the '936 patent").

The PTAB found claims 1–4, 6–13, and 15–20 of the '936 Patent to be unpatentable, and determined that claims 5, 14, and 21 of the '936 Patent had not been shown to be unpatentable, in the attached Final Written Decision.

A Final Written Decision in the one remaining *inter partes* review ("IPR") filed by Defendants against the patents asserted in this case is expected to issue according to the following schedule:

| PTAB Case No. | U.S. Patent No. | Final Written Decision Expected On or Before |
|---|---|---|
| IPR2019-01466 | 6,997,089 | March 10, 2021 |

When this Final Written Decision issues, Defendants will promptly file a "Status Update of Post-Grant Proceedings," pursuant to Patent L.R. 2.1(a)(1).

Dated: February 24, 2021        Respectfully submitted,

**LEVY CRAIG LAW FIRM**
A PROFESSIONAL CORPORATION

By  */s/ Jason S. Leiker*
    Jason S. Leiker    MO #53973
    Levy Craig Law Firm
    A Professional Corporation
    4520 Main Street, Suite 1600
    Kansas City, Missouri 64111
    816.460.1835
    Fax: 816.382.6606
    jleiker@levycraig.com

**STERNE KESSLER GOLDSTEIN & FOX**
    Daniel E. Yonan
    Donald R. Banowit
    Kyle E. Conklin
    Deirdre M. Wells
    Daniel S. Block
    Sterne, Kessler, Goldstein & Fox, P.L.L.C.
    1100 New York Avenue
    Washington, D.C. 20005
    Telephone: (202) 371-2600
    Fax: (202) 371-2540
    *Pro Hac Vice*

    *Attorneys for all Defendants*

- 2 -

| | |
|---|---|
| PROVISUR TECHNOLOGIES, INC., | |
| Plaintiff, | |
| v. | Civil Action No. 5:20-CV-06069 |
| WEBER, INC., ET. AL., | |
| Defendants. | |

## PLAINTIFF PROVISUR TECHNOLOGIES, INC.'S
## FILING OF EXHIBITS UNDER SEAL

On March 19, 2021, Plaintiff Provisur Technologies, Inc. filed a Motion for Leave to File

Exhibits Under Seal [Dkt. #120] contemporaneously with its Motion for Leave and Suggestions

in Support of supplementing Provisur's Infringement Contentions [Dkts. #121 & #122]. On

March 22, 2021, the Court granted Provisur's Motion for Leave to File Exhibits Under Seal [Dkt.

#123], and Provisur hereby submits Exhibits 1 and 2 in accordance with the Court's Order.

1

| Provisur U.S. Patent No. 9,669,005 | Accused Loader Products |
|---|---|
| | See also, WEBER-0102703 (CONFIDENTIAL) (showing conveyor belt circulated to move rows of products in a longitudinal direction to an end of the conveyor, and the conveyor belt is turned over at the end of the conveyor). |
| | Salami Slicer Line Video, at 00:53. |
| [1.b4] wherein circulation of said belt passes said rows off of said conveying surface to be deposited onto said downstream conveyor, and | The Accused Loader Products contain a belt, and circulation of the belt passes the rows off of the conveying surface to be deposited onto the downstream conveyor. The products are placed onto the infeed conveyor by a fast reverse motion by the row generator conveyor. WEBER-0001818; WEBER-0001977. |
| | For example, the first conveying surface passes rows off of the conveying surface to a downstream conveyor. |
| |  |
| | Circulating belt of row generator conveyor |
| | Row to be deposited |
| | Downstream (infeed) conveyor |
| | Salami Slicer Line Video, at 00:51. |
| | As another example, the second conveying surface passes rows off of the conveying surface to a downstream conveyor. The SmartLoader product manual states that once the rows of product have been created on the infeed conveyor, a group of rows is automatically placed in the packing machine by a fast reverse motion of the infeed conveyor. WEBER-0001819; WEBER-0001978. |

26

CONFIDENTIAL

**Appx2541**

| Provisur U.S. Patent No. 9,669,005 | Accused Loader Products |
|---|---|
| |  Circulating belt<br>Row to be deposited<br>Downstream conveyor<br><br>Textor 6X Variety Pack Video,[5] at 00:32.<br><br>See also, WEBER-0102703 (CONFIDENTIAL) (showing circulation of the conveyor belt passes rows of product off of the conveying surface to be deposited onto a downstream conveyor).<br><br>**Doctrine of Equivalents:** Furthermore, this claim element may be met by the Accused Loader Products under the doctrine of equivalents, to the extent it is not literally met by the Accused Loader Products. The Accused Loader Products perform substantially the same function in substantially the same way to achieve substantially the same result with respect to this claim element, and any differences between the element and the Accused Loader Products are insubstantial. |
| **[1.b5]** a longitudinal position of said end is movable between an extended position and a retracted position passing across at least a portion of a transverse dimension of said | The Accused Loader Products contain a conveying surface with an end and the longitudinal position of the end is movable between an extended position and a retracted position passing across at least a portion of a transverse dimension of the downstream conveyor by longitudinal positioning of the roller.<br><br>For example, the first conveying surface has an end with a longitudinal position that is movable between an extended position and a retracted position. |

[5] Available at https://www.youtube.com/watch?v=1BXW4fiOqXw, hereinafter referred to as the "Textor 6X Variety Pack Video."

CONFIDENTIAL *SEALED*

27

| Provisur U.S. Patent No. 9,669,005 | Accused Loader Products |
|---|---|
| downstream conveyor by longitudinal positioning of said roller; | 

End extended    End retracted

Weber SmartLoader Video, at 00:18-21.

As another example, the second conveying surface has an end with a longitudinal position that is movable between an extended position and a retracted position.



End extended    End retracted

Textor 6X Variety Pack Video, at 00:30-32.

See also, WEBER-0050318-433 (CONFIDENTIAL) (showing the assembly of the SmartLoader). For example: |

CONFIDENTIAL

Appx2543

| Provisur U.S. Patent No. 9,669,005 | Accused Loader Products |
|---|---|
| | 

• Guide the underside of the conveyor belt (1) around the outside of the conveyor frame.

Fig. 122 Fitting the conveyor belt - step 3

• Guide the conveyor belt (1) over the deflection roller (2).

WEBER-0001906; WEBER-0002071.

"The row generator conveyor and infeed conveyor are of largely similar design but are different for each side." WEBER-0001911.

See also, WEBER-0050349-51, WEBER-0050368-69 (describing assembly slide drive for assembly lineup conveyor 435); WEBER-0050322-24, WEBER-0050341-42 (describing assembly slide drive for assembly insertion conveyor 600) (CONFIDENTIAL).

**Doctrine of Equivalents:** Furthermore, this claim element may be met by the Accused Loader Products under the doctrine of equivalents, to the extent it is not literally met by the Accused Loader Products. The Accused Loader Products perform substantially the same function in substantially the same way to achieve substantially the same result with respect to this claim element, and any differences between the element and the Accused Loader Products are insubstantial. |
| **[1.d]** a second electric motor, wherein said conveying surface is circulated by | The Accused Loader Products have a conveying surface circulated by mechanical communication from a second electric motor. |

| Provisur U.S. Patent No. 9,669,005 | Accused Loader Products |
|---|---|
| mechanical communication from said second electric motor; and | For example, the first conveying surface passes rows of of the conveying surface to a downstream conveyor via a circulating belt that is driven by an electric motor.<br><br><br><br>Salami Slicer Line Video, at 00:51.<br><br>See also, WEBER-0050349-51, WEBER-0050370-71 (describing assembly conveyor drive for assembly lineup conveyor 435); WEBER-0050322-24, WEBER-0050343-44 (describing assembly conveyor drive for assembly insertion conveyor 600) (CONFIDENTIAL). |
| **[1.e]** a controller operatively connected to said first and second electric motors to precisely control the position of said end and the conveying speed of said conveying surface. | The Accused Loader Products have a controller operatively connected to the first and second electric motors to precisely control the position of the end and the conveying speed of the conveying surface. The SmartLoader product manual states that by using the touch screen, the operator can start or stop all module functions and set the relevant parameters for operation. |

CONFIDENTIAL

| Provisur U.S. Patent No. 9,669,005 | Accused Loader Products |
|---|---|
| |  Fig. 26 Operating position<br><br>At the Touch-Screen (1) operating position, the operator can start or stop all module functions and set the relevant parameters for operation.<br><br>WEBER-0001838; *see also* WEBER-0001998.<br><br>For example, the Accused Loader Products are "fully automatic." *See, e.g.,* Textor SmartLoader Webpage. A controller is indicated by a control panel on the Accused Loader Products. |

CONFIDENTIAL

39

UNITED STATES PATENT AND TRADEMARK OFFICE

_____

BEFORE THE PATENT TRIAL AND APPEAL BOARD

_____

WEBER, INC.
Petitioner

v.

PROVISUR TECHNOLOGIES, INC.
Patent Owner

_____

Case IPR2019-01462
Patent 7,065,936

_____

**DECLARATION OF CLAIRE KOELSCH SAND, PH.D. IN SUPPORT OF PETITION FOR *INTER PARTES* REVIEW OF U.S. PATENT NO. 7,065,936**

**Mail Stop PATENT BOARD**
Patent Trial and Appeal Board
U.S. Patent & Trademark Office
P.O. Box 1450
Alexandria, VA 22313-1450

Case 5:19-cv-06021-SRB   Document 150-2   Filed 06/30/21   Page 2 of 190

Weber EX1003
U.S. Patent No. 7,065,936

recognized that the dwell time presents an opportunity to fill multiple container portions while the containers remain stationary. For example, Honsberg teaching filling the containers "whenever the packing machine is stationary and the [container] forming cycle is just being carried out." EX1005, 2:10-19. Additionally, the art has long recognized that forming multiple container rows at a time would have been well within the tools of a person of ordinary skill in the art. Forming rows of containers is well known in the art. For example, the '030 patent describes forming multiple row containers from a plastic web of material. EX1014, Fig. 4, 3:22-26.

260.  Filling more containers while the container portions remain stationary would have increased the production of the conveyor line. This would have increased profits and lowered product costs. A POSA would have been drawn to use the multiple withdraw to fill multiple containers to take advantage of the dwell time of the packaging system.

261.  Using Hollymatic's shuttle conveyor with Weber446's apparatus is also be consistent with Weber446 stated goal of depositing draft into the container portions with "the least possible disturbance in the structure of the portions that is formed in the course of overlapping or stacking." EX1007, 1. Weber446 discloses a shuttle conveyor that operates in a similar way as Hollymatic's conveyor.

262.   Accordingly, a POSA would have been motivated to use Weber446's conveyor with a second withdraw as disclosed in Hollymatic to deposit drafts into successive rows of containers.

### 8.   A POSA would have had a reasonable expectation of success when combining the teachings of Weber446 and Hollymatic.

263.   A POSA would have readily recognized the ease of implementing the proposed modification to Weber446 to incorporate a second withdraw to fill a second row of container portions. Weber446's system already includes a first withdraw to deposit articles. The only necessary modification to Weber446 is implementing a second withdraw. The modification necessary to Weber446's apparatus would have been minor and well within the skill of one of ordinary skill in the art.

264.   For example, a POSA would have readily recognized that Weber446's transfer unit 15 could be double in length to accommodate a second row of drafts. With Weber446's transfer unit 15 elongated, a POSA would have recognized the simple implementation of a second withdraw. Any additional modifications that may be necessary to facilitate a second withdraw, such as repositioning pulleys, would have been well within the ordinary skill of person in the art. This would have required only routine mechanical skill to adjust the system of Weber446.

265. The combination of Weber446 and Hollymatic disclose each limitation of claim 1. And a POSA would have had a reason to combine these references to arrive at the claimed invention, with a reasonable expectation of success. Accordingly, claim 1 is not the product of innovation. Instead, it would have been obvious over Weber446 and Hollymatic.

**B.    Claim 10**

266. The claim chart below lists disclosures from Weber446 and Hollymatic that teach each element of claim 10.

| Claim 10 | Disclosures in Weber446 and Hollymatic |
|---|---|
| An apparatus for filling food product drafts into pockets formed into an elongated web of film, said pockets having open tops and arranged in rows that are displaced along a longitudinal direction and having at least a first row and a longitudinally displaced second row and movable with said web along said longitudinal | "[I]nto the product receiver 18 of the packaging machine 14" EX1007, 12.<br><br>"Fig. 1, which provides an overview of the apparatus in accordance with the present invention, shows a part of a slicing unit 13, that is to say, a slicer for cutting food products, such as, for example, sausage, ham or cheese, into slices as well as a part of an additional processing unit 14, that is to say, a packaging machine, which is arranged beneath the slicer 13 and which comprises a packaging film 32 that is wound on a supply drum 31." *Id.*, 6-7.<br><br><br><br>EX1007, Fig. 1. |

CONTAINS CONFIDENTIAL BUSINESS INFORMATION
MAY CONTAIN ATTORNEY-CLIENT COMMUNICATION AND/OR ATTORNEY WORK
PRODUCT

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
ST. JOSEPH DIVISION

PROVISUR TECHNOLOGIES, INC.,
*Plaintiff*,

v.

WEBER, INC., et al.
*Defendants*.

Civil Action No. 5:19-cv-06021-SRB
Civil Action No. 5:20-cv-06069-SRB

**DEFENDANTS' MEMORANDUM OF PRIVILEGE DISPUTE
PER THE COURT'S FEBRUARY 17, 2022 ORDER**

**Appx8204**

Page 93

1  variable?
2      Q.  So you're saying that the ability to
3  change the extended and retracted position of the
4  SmartLoader is only accomplished through the HMI?
5      A.  Yes, that's true.
6      Q.  Let's look at exhibit 11, which is Bates
7  WEBER-SRC-2920.  That's the control module.  I'll
8  direct you to line 16.
9          COURT REPORTER:  Microphone, please.
10         MR BABBITT:  I'll direct you to
11  line 16 of exhibit 11.
12     A.  Yes.
13     Q.  Sorry.  Let me circle back on one last
14  question.  I believe you referred to a variable
15  related to the programming of the extension and
16  retraction.  Would you just be able to give me the
17  name of that variable, please?
18     A.  Yes.  Just a few seconds.  A (sic)
19  position front and A position back.
20     Q.  Is the end position front and end position
21  back variable the value that's programmed by the HMI
22  interface?
23         CHECK INTERPRETER:  He said "R", not
24  "end".
25         MR BLOCK:  You said "end" I think.

Page 94

1      A.  Our HMI surface -- our HMI surface does
2  not programme anything.
3          MR BABBITT:  How is the end position
4  front and end position back variable related to the
5  HMI interface on the SmartLoader?
6      A.  In the HMI interface I can parameterise
7  this -- this variable.
8          CHECK INTERPRETER:  Variable.
9          MR BABBITT:  Can you tell me the line
10  number in the control module where end position
11  front and end position back are located?
12     A.  The variable is not included in the
13  control module.
14     Q.  Do you know where the variable end
15  position front and end position back are located in
16  the SmartLoader source code?
17     A.  Yes, for sure.
18         CHECK INTERPRETER:  Counsel, I'm
19  sorry.  For clarification are you saying "the N
20  position" or "the end position"?
21         MR BABBITT:  I thought the witness
22  testified to "the end position", E-N-D.
23     A.  No.  The name is "R position front" and
24  the R is just for what type of variable it is.
25     Q.  Okay.  Maybe for the record could you read

Page 95

1  in German the -- spell the variable name for me.
2      A.  (German spoken and untranslated).
3      Q.  Thank you for clarifying.
4          COURT REPORTER:  Could we have that
5  interpreted, because I thought the witness was
6  starting to say it in German and there was no
7  English given.
8      A.  So the front position would be R
9  P-O-S-E-T-I... -- R  P-O-S-I-T-I-O-N  F-R-O-N-T, and
10  the rear position is the same only the last four
11  letters are "back" as opposed to "front", but
12  I spell it anyway, R  P-O-S-I-T-I-O-N  B-A-C-K.
13         MR BABBITT:  I think we're all clear
14  on that now I hope.  Thank you.
15         Can you please identify where in the
16  SmartLoader source code the variables related to the
17  R position front and R position back are located?
18     A.  This would be in the structure "st_inlay
19  belt_i".
20     Q.  Can you please describe the path name as
21  we talked before for the "st_inlay belt_i" to the
22  best you can?
23     A.  PLC lock in -- PLC login -- PLC logic,
24  application, machine, structures, modules, lay belt.
25  Inlay belt instead of lay belt.

Page 96

1      Q.  Let's look back at I mean at this time
2  exhibit number 11 labelled WEBER-SOURCE-2920, the
3  control module.  Can you please read what is located
4  on line 16 of the control module?
5      A.  Line 16 says
6  "xscs_2020_10_synchronisation_mit_vor
7  packungsmaschine".  This means this is before and
8  afterwards and this means that a comment is opened
9  and then closed.
10         CHECK INTERPRETER:  The entry was
11  downstream and upstream.
12     A.  This is a comment which means it is
13  downstream and upstream.
14         MR BABBITT:  Is it right that the
15  open parens and asterisk followed by an asterisk and
16  a closed parens indicates a comment that is not part
17  of the source code?
18         MR BLOCK:  Objection.  Vague and
19  ambiguous.
20     A.  In CodeSys V3, yes, you do this.  You
21  start comments with opening brackets and then
22  asterisk and then close comments with the asterisk
23  and closing brackets.
24         MR BABBITT:  Could you please explain
25  what the comment in line 16 means in the SmartLoader

24

Opus 2 International
888.960.3117          Official Court Reporters          depos@opus2.com
Case 5:19-cv-06021-SRB   Document 255-7 *SEALED*   Filed 02/28/22   Page 26 of 90

Appx8429

Page 97

1 control module?
2      A.   I can't do so.  This is free text which
3 the person who made the programming, the coding,
4 put -- put in.
5      Q.   I'm not sure what you mean by "free text".
6 Can you explain that?
7      A.   Here we see this specific text, but any
8 kind of text could be here and this would change --
9 this would not change the functioning of the machine
10 at all.
11      Q.   And I'm just asking you your understanding
12 of what the comment means on line 16.
13      A.   I cannot tell you what the person who put
14 in this comment thought at this time, but I see the
15 words "synchronisation", which means
16 synchronisation, and "packungsmaschine", which means
17 packaging machine.  So I think it has to do with
18 synchronisation and packaging machine.
19      Q.   Do you have an understanding of what the
20 code on lines 17 to 21 means in the control module
21 for the SmartLoader?
22      A.   Sure I do.
23      Q.   Can you please explain your understanding
24 of the code on lines 17 to 21control module for the
25 SmartLoader?

Page 98

1      A.   A conditional request is made here and it
2 means that to the left the position of the carriage
3 is requested and it is the front position minus 1,
4 and if this is the case, then it's a conditional
5 request.  Two variables are compared, greater or
6 equal.  On the one side we have the position of the
7 carriage and on the other side we have the front
8 position minus 1.  If this is true, the following
9 things happen.
10           Is it important what's the specific name
11 of this variable?
12      Q.   Yes.  You can explain that.
13      A.   The name of this variable that is said
14 here is "x slide front pos reached".  If the request
15 is true, it will be set as true, and if the request
16 is not true, it will be set on false.
17           CHECK INTERPRETER:  Just to clarify
18 was that word "sledge", S-L-E-D-G-E, "front"?
19      A.   "Slide".
20           CHECK INTERPRETER:  "Slide".
21           MR BABBITT:  In the SmartLoader code
22 if the "x slide front pos reached" request is true,
23 what action will the SmartLoader take?
24      A.   Besides the place which I have been
25 talking about this variable is only considered at

Page 99

1 one additional place and this means that we then can
2 give the approval or can release -- give the release
3 order for the packaging machine.
4      Q.   Is it true that if the SmartLoader "x
5 slide front pos reached" variable request is true,
6 then the packaging machine can move?
7      A.   Depending on the other conditions which
8 are necessary for this, yes.
9      Q.   Is it true that if the SmartLoader -- is
10 it true that if the SmartLoader "x slide front pos
11 reached" is false, that the packaging machine will
12 not move?
13      A.   I cannot confirm this as such, because the
14 packaging machine, it is a separate machine.
15      Q.   Is it true that if the SmartLoader "x
16 slide front pos reached" request variable is false,
17 that the SmartLoader will not send a signal to the
18 packaging machine to move?
19      A.   This is correct, yes.
20      Q.   Do you know when the code reflected at
21 lines 17 to 21 was added to the SmartLoader code?
22           MR BLOCK:  Objection.  Calls for
23 speculation.
24      A.   I cannot say this with confidence.  I did
25 not do the programming -- programming, so I do not

Page 100

1 know it exactly.
2           MR BABBITT:  Is there a way to
3 determine from the source code development
4 environment when a line of code was added to the
5 code?
6           MR BLOCK:  Objection.  Vague and
7 ambiguous.  Calls for speculation.
8      A.   Not with the version which we have opened
9 here, because this is a separated version.  So with
10 the version which we have here I cannot tell you
11 this with confidence.
12           MR BABBITT:  Is there another version
13 of a development environment that provides
14 additional version history information as far as you
15 understand it?
16           MR BLOCK:  Objection.  Vague and
17 ambiguous, calls for speculation and
18 mischaracterises.
19      A.   Within this development environment
20 there's no such other version, as we have opened
21 this version.
22           MR BABBITT:  So if I asked you to
23 determine when lines 17 to 21 of the control module
24 were added to the SmartLoader source code, how would
25 you determine that?

Case 5:19-cv-06021-SRB   Document 255-7 *SEALED*   Filed 02/28/22   Page 27 of 90

Appx8430

Page 101

```
 1          CHECK INTERPRETER:  Did you say
 2   "whether" or "when"?
 3              INTERPRETER:  I know the minutes say
 4   "when".
 5          CHECK INTERPRETER:  Did he say
 6   "whether" or "when"?
 7          MR BLOCK:  Objection.  Calls for
 8   speculation.  Foundation.
 9      A.  If I were assigned such task, I would have
10   to open our SVN version and I would have to compare
11   various comments, yes, and then with this
12   comparison, as I said, we have the SVN in order to
13   compare versions, and by using this this could be
14   narrowed down to a certain period of time.
15      Q.  I'm just going to object to this entire
16   line of questioning.  The questioning is irrelevant.
17          MR BABBITT:  How does Weber keep
18   track of the different versions of the software as
19   there are changes made to the source code?
20          MR BLOCK:  Objection.  Assumes facts.
21   Asked and answered.
22      A.  Yes.  As I said, we have the versions
23   information and it is always based on a development,
24   writing something down on these changes in text
25   form.
```

Page 102

```
 1          MR BABBITT:  For example, I know some
 2   companies use a programme called Git and correlate
 3   that with certain commit hashes.  Is that something
 4   that Weber does to keep track of version
 5   information?
 6          MR BLOCK:  Objection.  Asked and
 7   answered.
 8      A.  I do not know what some companies use, but
 9   we in the control context with Weber, we use SVN.
10          MR BABBITT:  Can you please describe
11   what is SVN?
12      A.  I can describe it to you within the
13   framework of my possibilities.  This is a tool to
14   administer versions.
15      Q.  Does Weber use commit hashes to keep track
16   of changes to source code?
17          MR BLOCK:  Objection.  Calls for
18   speculation.  Vague and ambiguous.
19      A.  As I already said before, when we check in
20   new modules, we require our developers to write
21   comments on this.
22          MR BABBITT:  When did Weber start
23   using SVN?
24          MR BLOCK:  Objection.  Calls for
25   speculation.
```

Page 103

```
 1      A.  I can't tell you this with confidence.
 2          MR BABBITT:  Does Weber use SVN for
 3   administrating versions of source code as far as you
 4   can remember?
 5          MR BLOCK:  Objection.  Vague and
 6   ambiguous.
 7      A.  No, because the old development
 8   environment when I started with Weber was not
 9   SVN-based.
10      Q.  Before SVN did Weber use
11   another tool to administer versions of source code?
12      A.  Yes.  As I said, during the time of the
13   old machines we would use a product of the company
14   Elau, which is called ENI, and it's a proprietary
15   system of this company.
16      Q.  Do you recall approximately what years
17   Weber used the programme you mentioned, ENI, to
18   administer versions of source code?
19      A.  Just to be on the safe side, are we still
20   talking about the SmartLoader?
21      Q.  Do you -- does Weber use different
22   programmes to administer different code for
23   different products?
24          MR BLOCK:  Objection.  Vague and
25   ambiguous.  Calls for speculation.
```

Page 104

```
 1      A.  About which entire point in time are we
 2   talking about, because, as I told you, in the
 3   previous machine generation we had used another
 4   system.  I'm a bit lost.  Yes.  Where are we in
 5   terms of time?
 6          MR BABBITT:  Sure.  I hope you can
 7   explain that to me.
 8      A.  I hope you can explain this to me in which
 9   direction this will go, because the SmartLoader
10   never existed with QV2 -- with CodeSys V2.
11          MR BLOCK:  Mike, we've been going for
12   a few hours on the record here.  Is now a time for
13   a good break?
14          MR BABBITT:  Fine with me.
15          VIDEOGRAPHER:  We're going off the
16   record.  The time is 1.13 pm.
17              (Off the record)
18          VIDEOGRAPHER:  Here begins video
19   number 4.  The time is 1.54 pm.  We're back on the
20   record.
21          MR BABBITT:  You recall before lunch
22   we were talking about the SVN version history tool
23   that Weber uses to manage its source code?
24      A.  That's what we talked about, exactly.
25      Q.  Do you know how long Weber has used the
```

26

Opus 2 International
888.960.3117          Official Court Reporters          depos@opus2.com
Case 5:19-cv-06021-SRB   Document 255-7 *SEALED*   Filed 02/28/22   Page 28 of 90

Appx8431

# IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF MISSOURI
## ST. JOSEPH DIVISION

PROVISUR TECHNOLOGIES, INC.,       )
                                   )
            Plaintiff,             )
                                   )        Case No. 19-cv-06021-SRB
       v.                          )        Case No. 20-CV-6069-SRB
                                   )
WEBER, INC., et al.,               )
                                   )
            Defendants.            )

## <u>ORDER</u>

On March 22, 2022, the Court presided over a discovery dispute conference with the parties

in the above-referenced cases.  For the reasons stated during the telephone conference, it is hereby

ORDERED that:

(1) documents involving Defendants' German patent agents, including documents related

to the Patent Management Group ("PMG"), are not protected by the attorney-client privilege.  If

an otherwise discoverable document does not include the name of an attorney, that document must

be produced by Defendants.  To be discoverable, any such document must pertain to one of the

United States patent(s) at issue and related European patent(s);

(2) the individuals relating to Defendants' PMG and finances may be deposed again.  The

depositions shall occur under the following conditions:

> (a) each deposition shall be taken in the undersigned's jury room, at the United
> States Courthouse in Kansas City, Missouri;
>
> (b) the entirety of each deposition shall be deemed confidential;
>
> (c) other than an objection for attorney-client privilege, all other objections are
> deemed waived.  However, objections other than attorney-client privilege may
> be asserted at a later date; and
>
> (d) each deposition is limited to seven (7) hours for each side.

Appx8970

The parties may consult the transcript for further details and/or clarification.

**IT IS SO ORDERED.**

/s/ Stephen R. Bough

STEPHEN R. BOUGH
UNITED STATES DISTRICT JUDGE

Dated: March 22, 2022

CONFIDENTIAL

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
ST. JOSEPH DIVISION

PROVISUR TECHNOLOGIES, INC.,
*Plaintiff*,

v.

WEBER, INC., et al.
*Defendants*.

Civil Action No. 5:19-cv-06021-SRB
Civil Action No. 5:20-cv-06069-SRB

**DEFENDANTS' SUGGESTIONS IN SUPPORT OF THEIR MOTION TO EXCLUDE
THE IMPROPER EXPERT OPINIONS OF WHITE AND MCGUIRE**

**CONFIDENTIAL**

# TABLE OF CONTENTS

I.    Factual background ................................................................................................1

II.   Relevant legal principles .......................................................................................4

III.  Argument ...............................................................................................................6

    A.   Mr. White should be precluded from testifying at trial. .............................6

        1.    Experts are not permitted to testify about the law, because the Judge will instruct the jury on the law. ........................................7

        2.    Mr. White improperly narrates a selection of facts and draws impermissible conclusions based on his weighing of the evidence. ............7

        3.    Expert testimony regarding intent is properly excluded. ...........................8

        4.    Mr. White is not qualified to offer opinions on the standard of care in the food-product slicing industry. ...........................................9

    B.   Ms. McGuire should be precluded from testifying at trial....................................11

IV.   Conclusion ...........................................................................................................13

# TABLE OF AUTHORITIES

**Cases**

*3G Licensing, S.A. et al. v. HTC Corp.*,
   No. 1:17-cv-00083-LPS, Dkt. No. 615, slip op. (D. Del. Mar. 30, 2022) ................................8

*AU New Haven, LLC v. YKK Corp.*,
   No. 15-cv-03411, 2019 WL 1254763 (S.D.N.Y. Mar. 19, 2019)............................................12

*Bayer Healthcare LLC v. Baxalta Inc.*,
   989 F.3d 964 (Fed. Cir. 2021)...............................................................................................1

*BorgWarner, Inc. v. Honeywell Int'l, Inc.*,
   750 F. Supp. 2d 596 (W.D. N.C. 2010) ..................................................................................6

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*,
   509 U.S. 579 (1993)...............................................................................................................4

*Dean v. Bearden*,
   19-cv-06022, 2021 WL 4066336 (W.D. Mo. Sept. 7, 2021) (Bough, J.) ..........................5, 12

*Gustafson, Inc. v. Intersystems Indus. Prods., Inc.*,
   897 F.2d 508 (Fed. Cir. 1990)................................................................................................8

*Halo Elecs., Inc. v. Pulse Elecs., Inc.*,
   579 U.S. 93 (2016).................................................................................................................1

*Iridex Corp. v. Synergetics, Inc.*,
   05-cv-01916, 2006 WL 6869408 (E.D. Mo. Dec. 8, 2006) .....................................................6

*Isom v. Howmedica, Inc.*,
   No. 00-cv-05872, 2002 WL 1052030 (N.D. Ill. May 22, 2002)................................................6

*Johnson v. Mead Johnson & Co., LLC*,
   754 F.3d 557 (8th Cir. 2014) .................................................................................................5

*Kaist IP US LLC v. Samsung Elecs. Co.*,
   No. 2:16-cv-01314-JRG, Dkt. No. 349, slip op. (E.D. Tex. Apr. 16, 2018)..........................12

*K.W.P. v. Kansas City Public Schools*,
   296 F. Supp. 3d 1121 (W.D. Mo. 2017) (Bough, J.) ......................................................5, 6, 12

*Lauzon v. Senco Prods., Inc.*,
   270 F.3d 681 (8th Cir. 2001) .................................................................................................5

*Luitpold Pharms., Inc. v. Ed. Geistlich Sohne A.G. Fur Chemische Industrie*,
   2015 WL 5459662 (S.D.N.Y. Sept. 16, 2015).............................................................8, 10, 11

*Micro Chem., Inc. v. Lextron, Inc.*,
    317 F.3d 1387 (Fed. Cir. 2003) ................................................................4

*Monroe v. Freight All Kinds, Inc.*,
    18-cv-03238, 2020 WL 6588352 (W.D. Mo. Nov. 10, 2020) (Bough, J.) .........9, 10

*Rolls-Royce Ltd. v. GTE Valeron Corp.*,
    800 F.2d 1101 (Fed. Cir. 1986) ...............................................................8

*Specht v. Jensen*,
    853 F.2d 805 (10th Cir. 1988) ................................................................7

*SRI Int'l, Inc. v. Cisco Systems, Inc.*,
    930 F.3d 1295 (Fed. Cir. 2019) .............................................................2, 9

*Sundance, Inc. v. DeMonte Fabricating Ltd.*,
    550 F.3d 1356 (Fed. Cir. 2008) ...............................................................5

*Trading Techs. Int'l Inc. v. IBG LLC*,
    10-cv-00715, 2020 WL 12309206 (N.D. Ill. Oct. 21, 2020) ...............................6

*United States v. Univar USA Inc.*,
    294 F. Supp. 3d 1314 (U.S.C.I.T. March 21, 2018) .......................................7

*Wagner v. Hesston Corp.*,
    450 F.3d 756 (8th Cir. 2006) ..................................................................4

*Wheeling Pittsburgh Steel Corp. v. Beelman River Terminals, Inc.*,
    254 F.3d 706 (8th Cir. 2001) ..................................................................5

*Wood v. Minn. Mining & Mfg. Co.*,
    112 F.3d 306 (8th Cir. 1997) ..................................................................5

*XY, LLC v. Trans Ova Genetics, LC*,
    13-cv-00876, 2016 WL 97788 (D. Colo. Jan. 8, 2016) ...................................6

*Zimmer Surgical, Inc. v. Stryker Corp.*,
    365 F. Supp. 3d 466 (D. Del. 2019) .......................................................8, 9

**Statutes**

35 U.S.C. § 298 ........................................................................................2, 9

**Other Authorities**

Rule 402 .....................................................................................................1

Rule 403 .................................................................................................1, 12

Rule 608(b) ..........................................................................................................1, 13

Rule 702 ..............................................................................................................1, 4

Provisur offers two purported expert witnesses to testify about alleged willful infringement, Mr. John White and Ms. Mary Rose McGuire, in both *Provisur I* (5:19-cv-06021-SRB) and *Provisur II* (5:20-cv-06069-SRB). Both witnesses present improper legal opinions and factual narrations that are inadmissible under Rule 702 and *Daubert*. Their testimony is not probative of any actual issue in the case and serves only to present irrelevant, pejorative character evidence that runs afoul of Rules 402, 403, and 608(b). Both witnesses' testimonies should be excluded from trial entirely.

## I.    *Factual background*

Provisur accuses Defendants of willful infringement of Provisur's patents. *See* D.I. 15 (*Provisur I* Amended Complaint) at ¶¶ 56-58, 84-85, 110-111, 123-124; D.I. 1 (*Provisur II* Complaint) at ¶¶ 58-59, 72-73. Defendants admit knowledge of those patents, but deny willful infringement and had no knowledge of Provisur's basis for alleging infringement prior to Provisur's filing of these lawsuits. *See* D.I. 21 (*Provisur I* Answer to Amended Complaint) at ¶¶ 57-58, 84-85, 110-111, 123-124; D.I. 8 (*Provisur II* Answer) at ¶¶ 58-59, 72-73. Provisur did not send Defendants any cease-and-desist letters before filing these lawsuits, nor did Provisur otherwise notify Defendants of any allegations as Provisur had done in past intellectual-property disputes. *See* Exhibit 1, S. Scriven Dep. Tr. 92:22-93:15, 93:22-94:12; Exhibit 2, J. McCarroll (Jan. 6, 2022) Dep. Tr. 102:7-102:20.

Provisur has no evidence of willfulness, nor any evidence of egregious conduct to meet its burden on this issue. Mere knowledge of the asserted patents, without more, is not enough to establish willfulness. *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 579 U.S. 93, 105 (2016); *Bayer Healthcare LLC v. Baxalta Inc.*, 989 F.3d 964, 988 (Fed. Cir. 2021). And a defendant's "decision

not to seek an advice-of-counsel defense is legally irrelevant under 35 U.S.C. § 298."[1] *SRI Int'l, Inc. v. Cisco Systems, Inc.*, 930 F.3d 1295, 1309 (Fed. Cir. 2019).

To excuse its lack of any relevant evidence on this issue, Provisur instead submitted two reports in *Provisur I* and *II* from purported legal experts, Professors John White and Mary Rose McGuire. Exhibit 3, White Report; Exhibit 4, McGuire Report. These witnesses provide their interpretations of what they allege to be the applicable laws of willfulness and/or the standard of care. They apply those legal interpretations to an improper, self-serving selection of facts, and then draw inferences regarding the legality of Defendants' actions.

Specifically, Mr. White is a practicing attorney who specializes in patent-bar review programs. Exhibit 3, White Report at ¶¶ 5-10; Exhibit 5, White Dep. Tr. 19:22-20:2. None of his opinions relate to Patent Office procedure, his self-described area of expertise. Exhibit 3, White Report at ¶¶ 50-124. Instead, Mr. White opines generally on the kind of legal advice he has given to his clients in various industries (none of which are the industry here) on how to avoid accusations of patent infringement. Exhibit 3, White Report at ¶¶ 50-60; *see also* Exhibit 5, White Dep. Tr. 21:7-22:2; 26:10-19. He then remarkably concludes that Defendants have willfully infringed the asserted patents because they have not behaved in the way *he would have advised a client to behave* if that client wanted to avoid accusations of infringement. In reaching this conclusion, Mr. White admits to not having reviewed the complete, relevant factual record of Defendants' past interactions with Provisur regarding settling potential patent issues. Exhibit 5, White Dep. Tr. 42:3-9 (Q: So you don't really have a sense of how often Provisur and Weber may have worked out their patent disputes in the past before lawsuits were filed? A: Aside from

---

[1] 35 U.S.C. § 298 states: "The failure of an infringer to obtain the advice of counsel with respect to any allegedly infringed patent, or the failure of the infringer to present such advice to the court or jury, may not be used to prove that the accused infringer willfully infringed the patent or that the infringer intended to induce infringement of that patent."

the ones that are of record in this case that I -- I saw, no, I -- I don't have any knowledge outside of the documentation.); 109:15-110:8 (Q: And are you aware that before this lawsuit, Provisur and Weber had worked out their patent disputes without suing each other? A: I am vaguely aware that this is the first time they have been in suit in the United States.); 118:13-18 (Q: Do you know what technology was the subject of the three prior license agreements between Provisur and Weber? A: I don't.). Yet Mr. White concedes that past patent-licensing practices between Provisur and Weber would be an important consideration in evaluating Weber's "state of mind" relating to willfulness. Exhibit 5, White Dep. Tr. 118:19-119:3. He also admits not knowing any standard practices in the food-product slicing industry regarding a competitor's intellectual property—another factor in the willfulness inquiry. Exhibit 5, White Dep. Tr. 21:7-22:2; 26:10-19 (admitting that his opinions were based on the legal advice he would have given a hypothetical client concerned about infringement, and not any attempt to determine the standard practice or expectation in this industry). In sum, Mr. White's report provides only attorney argument for willful infringement under the guise of expert testimony about the law.

Ms. McGuire is a law professor in Germany specializing in *German intellectual-property law and German regulatory compliance*. Exhibit 4, McGuire Report ¶ 1; Exhibit 6, McGuire Dep. Tr. 21:10-15. She claims no expertise whatsoever in U.S. law, U.S. Patent Office procedures, or the standard of care in the American food-product slicing industry (or any American industry). Exhibit 4, McGuire Report ¶ 62; Exhibit 6, McGuire Dep. Tr. 20:13-21:20. She opines that Defendants' activities *abroad* may have violated German law regarding the standard of care concerning patents. Exhibit 4, McGuire Report ¶¶ 59-61. There is no equivalent U.S. law. Exhibit 4, McGuire Report ¶ 62; Exhibit 6, McGuire Dep. Tr. 44:14-19. She also makes no connection between her German-law opinions and any issues in this case, and even acknowledged that German law does not have any applicability to U.S. activities. Exhibit 4,

3

McGuire Report ¶ 62. Her testimony serves only to imply that Defendants are bad actors, in general, from which Provisur will invite the jury to extrapolate that Defendants are similarly culpable for the unrelated bad actions and mental state that Provisur needs to prove through the use of substantial evidence for any willful infringement.

Overall, Provisur relies on Mr. John White and Ms. Mary Rose McGuire in a thinly-veiled attempt to *prove* willful infringement through impermissible expert opinions. This is because Provisur's willful-infringement allegations, standing alone, fail on the record developed during fact discovery. Their testimony should be excluded from trial entirely.

## II.     *Relevant legal principles*

Federal Rule of Evidence 702 governs the admission of expert testimony. *See* Fed. R. Evid. 702; *Wagner v. Hesston Corp.*, 450 F.3d 756, 758 (8th Cir. 2006).[2] Rule 702 provides that a witness who is qualified as an expert may testify in the form of an opinion or otherwise if:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702(a)-(d).

To fulfill its "gatekeeping" role, a court faced with a proffer of expert testimony must determine whether the evidence "both rests on a reliable foundation and is relevant to the task at hand." *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 597 (1993). "The proponent of the expert testimony must prove its admissibility by a preponderance of the

---

[2] While Federal Circuit law is applicable to substantive patent issues and to procedural issues unique to patent law, the Court must look to the law of the Eighth Circuit when determining whether to admit expert testimony. *Micro Chem., Inc. v. Lextron, Inc.*, 317 F.3d 1387, 1390 (Fed. Cir. 2003) ("Whether proffered evidence should be admitted in a trial is a procedural issue not unique to patent law, and therefore we review the district court's decision whether to admit expert testimony under the law of the regional circuit[.]").

evidence." *Lauzon v. Senco Prods., Inc.*, 270 F.3d 681, 686 (8th Cir. 2001). "[I]t is the responsibility of the trial judge to determine whether a particular expert has sufficient specialized knowledge to assist jurors in deciding the specific issues in the case." *Wheeling Pittsburgh Steel Corp. v. Beelman River Terminals, Inc.*, 254 F.3d 706, 715 (8th Cir. 2001).

"Due to the liberalization of expert testimony admission standards signaled by *Daubert* and its progeny, and the codification of this trend in Rule 702, the Eighth Circuit has held that expert testimony should be liberally admitted." *K.W.P. v. Kansas City Public Schools*, 296 F.Supp.3d 1121, 1126 (W.D. Mo. 2017) (Bough, J.). If the expert testimony "rests upon good grounds, based on what is known, it should be tested by the adversary process with competing expert testimony and cross-examination, rather than excluded by the court at the outset." *Johnson v. Mead Johnson & Co., LLC*, 754 F.3d 557, 562 (8th Cir. 2014) (citations and quotations omitted). The exclusion of expert testimony is proper "only if it is so fundamentally unsupported that it can offer no assistance to the jury[.]" *Wood v. Minn. Mining & Mfg. Co.*, 112 F.3d 306, 309 (8th Cir. 1997) (citations and quotations omitted).

That said, the trial court "must exclude expert testimony that . . . invades the province of the jury to find facts and that of the court to make ultimate legal conclusions." *Sundance, Inc. v. DeMonte Fabricating Ltd.*, 550 F.3d 1356, 1364 (Fed. Cir. 2008). As a result, courts exclude expert opinions on whether the facts meet the legal standard, as well as any opinion that is "not fact-based and devoid of any standards and explanations that would assist the trier of fact in contextualizing his opinions." *K.W.P.*, 296 F.Supp.3d at 1131-32 (internal quotations omitted). Similarly, disputes over the reasonableness of a party's claims or actions "invades the jury's fact-finding role and therefore are inadmissible." *Dean v. Bearden*, No. 19-cv-06022, 2021 WL 4066336, at *3 (W.D. Mo. Sept. 7, 2021) (Bough, J.). The rationale for these results is simple:

5

"Because the jury is a fact-finding body, testimony putting forth legal conclusions, which simply tells the jury which conclusion to reach, is not helpful." *K.W.P.*, 296 F.Supp.3d at 1127.

Expert testimony about willful patent infringement is a classic violation of the jury's fact-finding role, and is routinely excluded by courts. *See, e.g., XY, LLC v. Trans Ova Genetics, LC*, 13-cv-00876, 2016 WL 97788 at *5 (D. Colo. Jan. 8, 2016) (precluding plaintiff's expert (Wood) from testifying on willfulness because "he is not qualified to testify to [defendant's] knowledge or intent, and would invade the jury's role in making that determination."); *Trading Techs. Int'l Inc. v. IBG LLC*, 10-cv-00715, 2020 WL 12309206 at *2 (N.D. Ill. Oct. 21, 2020) (excluding expert testimony on willfulness because "[a]ll [the expert] does is review the record of the case so as to reach an opinion about [the defendant's] institutional mens rea," which "is a classic jury function."); *Iridex Corp. v. Synergetics, Inc.*, 05-cv-01916, 2006 WL 6869408 at *1 (E.D. Mo. Dec. 8, 2006) (precluding an expert from "testify[ing] about the legal standard of willfulness or to his conclusion that the evidence shows willfulness."); *BorgWarner, Inc. v. Honeywell Int'l, Inc.*, 750 F. Supp. 2d 596, 611 (W.D.N.C. 2010) (excluding expert testimony on intent for willful infringement because the defendant's "intent is a question for the trier of fact to decide and does not require the admission of expert testimony."); *Isom v. Howmedica, Inc.*, No. 00-cv-05872, 2002 WL 1052030, at * 1–2 (N.D. Ill. May 22, 2002) (barring proposed expert testimony because an expert is no more qualified than a jury to assess intent).

## III.    Argument

Provisur's purported legal experts should be excluded from testifying as their testimony and opinions are irrelevant, unreliable, and improperly invade the province of the jury.

### A.    *Mr. White should be precluded from testifying at trial.*

The entirety of White's report is directed to (1) summarizing the law, (2) narrating the facts, (3) opining on Defendants' subjective intent, and (4) offering an unqualified opinion for

avoiding accusations of patent infringement in the food-slicing industry. *See* Exhibit 3, White Report at ¶¶ 22-49 (summarizing the law); ¶¶ 61-117 (providing an argumentative narration of facts); ¶¶ 118-124 (drawing inferences about Defendants' mental state); ¶¶ 50-60 (speculating on the industry standards for avoiding patent infringement). No portion of his testimony relates to his stated expertise or any topic about which experts are permitted to opine. His opinions usurp the Court's function in interpreting the law and the jury's function in finding facts. He should be precluded from testifying at trial.

### 1. *Experts are not permitted to testify about the law, because the Judge will instruct the jury on the law.*

Mr. White presents himself solely as an expert in patent law. His testimony purports to explain the governing case law regarding willful infringement, *see, e.g.*, Exhibit 3 at ¶¶ 22-31, and his account of the development of patent litigation domestically and abroad, *see, e.g.*, Exhibit 3 at ¶¶ 32-49. His opinions are based entirely on his experience as a practicing attorney, and how he might advise a client, but not any first-hand knowledge of any agency or industry. Exhibit 5, White Dep. Tr. 18:16-19:5 (Q: You have no employment experience in the food slicing industry? A: In food processing I have worked for many, many years representing clients.). His testimony presents the classic problem of using an attorney under the guise of an expert. He is no more qualified than the judge in his ability to instruct the jury on the relevant case law—indeed it would be improper for him to do so. *United States v. Univar USA, Inc.*, 294 F. Supp. 3d 1314, 1334 (U.S.I.T.C. Mar. 2, 2018); *Specht v. Jensen*, 853 F.2d 805, 808–09 (10th Cir. 1988) (internal citations omitted).

### 2. *Mr. White improperly narrates a selection of facts and draws impermissible conclusions based on his weighing of the evidence.*

Fact witnesses will testify about the relevant facts. The jury will hear from fact witnesses about the history of Defendants' interactions with Provisur concerning their business relationship

7

and the interactions of their employees. The jury will also hear from fact witnesses about

Defendants' knowledge of Provisur's patents and the parties' past patent negotiations. Provisur's

attempt to use an expert to select certain facts and pieces of evidence in the record and present a

narration suggesting Defendants' state of mind regarding infringement is improper. *Compare*

Exhibit 3, White Report at ¶¶ 68-109, 111-117 (providing an advocacy-style narration of the

record) *with Luitpold Pharms., Inc. v. Ed. Geistlich Sohne A.G. Fur Chemische Industrie*, 2015

WL 5459662, at *3 (S.D.N.Y. Sept. 16, 2015) (explaining that "narration of the facts" based on

documents is not "traceable to a reliable methodology," and concluding that such "narration thus

fails to fulfill *Daubert's* most basic requirements.").

### 3. *Expert testimony regarding intent is properly excluded.*

Willfulness is ultimately an inquiry into the state of mind or intent of the accused

infringer. *See, e.g.*, *Gustafson, Inc. v. Intersystems Indus. Prods., Inc.*, 897 F.2d 508, 510-11

(Fed. Cir. 1990). And a determination of intent is "peculiarly" a jury function. *Rolls-Royce Ltd.*

*v. GTE Valeron Corp.*, 800 F.2d 1101, 1110 (Fed. Cir. 1986) ("[A]n intent-implicating question

such as willfulness" is "peculiarly within the province of the fact finder that observed the

witness.").

Mr. White has no particular expertise regarding Defendants' state of mind. Yet his expert

report reads like a legal memorandum arguing for a particular verdict based entirely on his

speculations about Defendants' intent. *See, e.g.*, Exhibit 3, White Report at ¶¶ 110, 118-124. His

opinions on this topic invade the province of the jury and should be excluded. *See* Exhibit 7, *3G*

*Licensing, S.A., et al. v. HTC Corp.*, No. 1:17-cv-00083-LPS, Dkt. No. 615, slip op. at 6-7 (D.

Del. Mar. 30, 2022) (excluding expert testimony on willfulness where expert did "not have any

particular expertise about [defendant's] state of mind that set[ ] him apart from a lay juror," so

"his opinion . . . w[ould] not be helpful to the jury"); *Zimmer Surgical, Inc. v. Stryker Corp.*, 365

8

F. Supp. 3d 466, 497 (D. Del. 2019) ("Expert testimony as to . . . state of mind offers no more than the drawing of an inference from the facts of the case . . . and permitting expert testimony on this subject would be merely substituting the expert's judgment for the jury's."); *see also supra* Section II (collecting cases where expert testimony on willfulness was excluded as a classic violation of the jury's fact-finding role).

Mr. White's opinion is also a clear violation of § 298. This statute states:

> The failure of an infringer to obtain the advice of counsel with respect to any allegedly infringed patent, or the failure of the infringer to present such advice to the court or jury, may not be used to prove that the accused infringer willfully infringed the patent or that the infringer intended to induce infringement of the patent.

35 U.S.C. § 298. Despite this statute, Mr. White states: "Yet no information is forthcoming as to when, if, or whether any Provisur U.S. patents, or the patents-in-suit, were assessed for infringement or validity vis-a-vis Defendants' products, despite Defendants opposing Provisur patent family members in Europe and having a 'team' whose job it was to monitor and analyze these very issues." Exhibit 3, White Report at ¶ 118. He then improperly concludes that Defendants willfully infringed based in part on their failure to present evidence of advice of counsel with respect to the allegedly infringed patents. *Id.* at ¶¶ 118-124. This is contrary to Federal Circuit precedent that opinion-of-counsel evidence is "legally irrelevant under 35 U.S.C. § 298" in establishing willfulness. *SRI Int'l*, 930 F.3d at 1309.

### 4.   Mr. White is not qualified to offer opinions on the standard of care in the food-product slicing industry.

Testimony regarding the standards of care in the relevant industry must come from a qualified practitioner in that industry. *See Monroe v. Freight All Kinds, Inc.*, No. 18-cv-03238, 2020 WL 6588352 at *4 (W.D. Mo. Nov. 10, 2020) (Bough, J.) (excluding unqualified expert's opinion on the standard of reasonable care). Mr. White does not have such qualifications.

Mr. White has no experience in the meat-slicing industry, food-processing industry, or any industry other than the legal profession. Exhibit 5, White Dep. Tr. 19:20-21 ("I've never been a salesman for food processing machinery, no. I'm a lawyer."). He is a lawyer. Mr. White presents himself as an expert in "patent office procedures and standards." Exhibit 3, White Report at ¶ 5; Exhibit 5, White Dep. Tr. 19:22-20:2. His primary credential in that regard appears to be running and teaching a patent-bar review course. Exhibit 3, White Report at ¶¶ 9-15. Practice before the U.S. Patent Office, however, is limited to patent prosecution, agency proceedings, and the standards for patentability. Patent-office procedure has no bearing on the standard for willful infringement—an issue litigated exclusively in Article III courts. Mr. White's own stated expertise is therefore unrelated to the question on which he opines in his report—willful infringement. Indeed, Mr. White admitted that he has never before offered an opinion on the ultimate conclusion of willfulness. Exhibit 5, White Dep. Tr. 263:2-5.

Mr. White's sole qualification applicable to this case appears to be his time spent in private practice. Exhibit 3 at ¶¶ 6-8. He therefore has no relevant qualification as an expert in the subject matter of his testimony beyond that which the Court itself is already a more-qualified expert—reading the law. His interpretation of the case law regarding willful infringement, *see, e.g.*, *id.* at ¶¶ 22-31, and his narration of the history of patent law, *see, e.g.*, *id.* at ¶¶ 32-49, is therefore irrelevant and unhelpful to the jury. His pontification about "industry standards" is untethered to any particular industry and devoid of any citation or factual support. *See id.* at ¶¶ 50-60. It is therefore untraceable to any reliable methodology. *See Luitpold*, 2015 WL 5459662 at *3.

Instead, Mr. White's opinion that Defendants failed to observe the standard of care is based on "informal observations" from his discussions with clients. *Monroe*, 2020 WL 6588352. His opinions are nothing more than his own subjective beliefs as a practicing attorney. *See*

10

Exhibit 5, White Dep. Tr. at 21:7-22:2; 26:10-19 (admitting that his opinions were based on the legal advice he would have given a hypothetical client concerned about infringement, and not any attempt to determine the standard practice in the industry). Anecdotal observations about the legal concerns of Mr. White's clients, none of whom represent the food-product slicing industry, do not qualify him to opine on what a standard-compliant company in Defendants' industry would or would not have done vis-à-vis Provisur's patents. *See Luitpold,* 2015 WL 5459662, at *3. This alone is a basis on which Mr. White's opinions must be excluded from trial in their entirety.

### B. *Ms. McGuire should be precluded from testifying at trial*

The entirety of Ms. McGuire's expert report should be excluded and she should be precluded from testifying at trial. Ms. McGuire is a professor of law in Germany who is admittedly unqualified to offer opinions on U.S. patent law, let alone the concept of willfulness under U.S. law. Indeed, every statement and opinion in her report relates to theoretical German legal concepts and her own subjective beliefs regarding a hypothetical standard of care in Germany—a standard that courts in Germany have never applied. Regardless, the industry standard of care in Germany is completely irrelevant to any issue in this case. As detailed below, three independent bases exist to support excluding Ms. McGuire's opinions and testimony in their entirety.

*First*, Ms. McGuire concedes that she is not offering any opinions probative of willfulness under the applicable U.S. law or standards: "Whether Defendants' behavior constitutes willful infringement under U.S. patent law is governed by U.S. law, and I provide no opinions about U.S. patent law here." Exhibit 4, McGuire Report, ¶ 62; *see also* Exhibit 6, McGuire Dep. Tr. at 36:7-15 ("German law, patent law, does not apply to acts in the U.S."). This admission confirms that her report is not at all relevant to any issues in this U.S. patent case.

11

Indeed, she does not present any evidence or opinion comparing German laws to U.S. laws, or establishing any connection between her opinions and any cause of action over which this Court has jurisdiction. They are therefore "devoid of any standards and explanations that would assist the trier of fact in contextualizing [her] opinions." *K.W.P.*, 296 F.Supp.3d 1121.

*Second*, Ms. McGuire's testimony would "infringe[ ] on the Court's obligation to instruct the jury on applicable law." *AU New Haven, LLC v. YKK Corp.*, No. 15-cv-03411-GHW-SN, 2019 WL 1254763 at *21 (S.D.N.Y. Mar. 19, 2019) (excluding purported foreign-law expert from testifying to the jury). The concept of triple damages for willful patent infringement does not exist under German law. *See* Exhibit 6, McGuire Dep. Tr. at 44:14-19 ("there is no concept where if you intentionally infringe a German patent, you would be on the hook for triple damages. Is that true? A. Yes, that is correct."). It will confuse the jury and require considerable time at trial to explain (1) the purported relationship between Defendants' German activities and U.S. activities, (2) the differences between German law and U.S. law regarding the standard of care and willfulness, and (3) the penalties for an alleged failure to meet the German standard of care overseas compared to the remedy sought for willful infringement here. The high risk of jury confusion and waste of time outweighs any potential value in her testimony under Rule 403.

*Third*, Ms. McGuire's opinions are improper invasions of the jury's fact-finding function. *See Dean*, 2021 WL 4066336, at *3 (excluding expert testimony that "invade[d] the jury's fact-finding role"); Exhibit 8, *Kaist IP US LLC v. Samsung Elecs. Co.*, No. 2:16-cv-01314-JRG, Dkt. No. 349, slip op. at *2-*3 (E.D. Tex. Apr. 16, 2018) (excluding competing Korean law "experts" from providing nothing more than legal conclusions attempting to tell the jury what result to reach). This flaw is compounded by the fact that Ms. McGuire was not even told by Provisur about Defendants' Patent Management Group, thus rendering her opinions based on the false assumption that Defendants did nothing to monitor the market for competitor patents as required

12

under German law. *See* Exhibit 4, McGuire Report at ¶ 61; Exhibit 6, McGuire Dep. Tr. 92:7-22, 96:12-19. Finally, Ms. McGuire's testimony regarding a hypothetical and unrelated bad act in another country amounts to the kind of negative character evidence prohibited by Rule 608(b). It serves no purpose other than to prejudice and confuse the jury, and should be precluded.

## IV. *Conclusion*

The Court should strike the expert reports of Mr. White and Ms. McGuire, and preclude their testimony at trial.

Dated: May 6, 2022

LEVY CRAIG LAW FIRM
A PROFESSIONAL CORPORATION

By */s/ Jason S. Leiker*
Jason S. Leiker        MO #53973
Levy Craig Law Firm
A Professional Corporation
4520 Main Street, Suite 1600
Kansas City, Missouri 64111
816.460.1835
Fax: 816.382.6606
jleiker@levycraig.com

And

13

Daniel E. Yonan
Donald R. Banowit
Kyle E. Conklin
Deirdre M. Wells
Daniel S. Block
Jonathan Tuminaro, Ph.D.
STERNE, KESSLER, GOLDSTEIN & FOX P.L.L.C.
1100 New York Avenue
Washington, D.C. 20005
Tel: (202) 371-2600
Fax: (202) 371-2540
dyonan@sternekessler.com
dbanowit@sternekessler.com
kconklin@sternekessler.com
dwells@sternekessler.com
dblock@sternekessler.com
jtuminar@sternekessler.com
*Pro Hac Vice*
*Attorneys for all Defendants*


## CERTIFICATE OF SERVICE

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule 5.1 on this 6th day of May, 2022.

_/s/ Jason S. Leiker_
*Attorney for all Defendants*

14

DocuSign Envelope ID: 18A29756-DED1-47E8-BC85-C62A206362E7

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OR MISSOURI

ST. JOSEPH DIVISION

C.A. NOS. 5:19-cv-06021 and 5:20-cv-06069

---

PROVISUR TECHNOLOGIES, INC.,

Plaintiff,

v.

WEBER, INC., TEXTOR, INC., WEBER MASCHINENBAU GMBH BREIDENBACH,

WEBER MASCHINENBAU GMBH NEUBRANDENBURG, and TEXTOR

MASCHINENBAU GMBH,

Defendants.

---

EXPERT REPORT AND DISCLOSURE OF

JOHN M. WHITE

Submitted March 2, 2022

CONFIDENTIAL

## I.  INTRODUCTION

1.  My name is John M. White, and I submit this expert report on behalf of the Plaintiff Provisur Technologies Inc. ("Provisur") to provide my opinion that Weber, Inc., Textor, Inc., Weber Maschinenbau GmbH Breidenbach, Weber Maschinenbau GmbH Neubrandenburg, and Textor Mashinenbau GmbH (collectively, "Defendants" or "Weber") have willfully infringed the claims of Provisur's U.S. Patent Nos. 10,625,436; 10,639,812; 8,322,537; 7,065,936; 6,669,005; 6,997,089.

2.  I submit this report under Federal Rule of Civil Procedure Rule 26(a)(2)(B) regarding disclosure of expert testimony.  If called to testify in this matter, I can and will testify to the facts and opinions stated herein.  I have not been asked to provide my opinion on any other issue.  In particular, I have not been asked to provide any opinions regarding patent infringement or invalidity.  For the purposes of this report, I assume that Provisur will prove infringement of each asserted claim by Defendants.  I also understand Provisur has submitted detailed expert opinions and evidence regarding infringement.

3.  The opinions in this report are mine.  They are based on my analysis in this matter, informed by the knowledge, education, experience, training, and skill I have accumulated in the course of my career.  My opinions are based on information available as of the date of this report.  They are provided to a reasonable degree of legal certainty.

4.  Exhibit A includes a copy of my Curriculum Vitae which includes a list of all publications I authored in the previous 10 years and all other cases in which, during the previous 4 years, I testified as an expert at trial or by deposition.  Exhibit B includes a list of documents I considered in preparing this report.

1

DocuSign Envelope ID: 18A29756-DED1-47E8-BC85-C62A206362E7

## II.     PROFESSIONAL BACKGROUND

5.      I am an expert on U.S. and European patent office procedures and the standards,

customs, and practice in industry relating to patent infringement analysis.  I have been working

with patents for over 37 years.  I currently run the PCT Learning Center that provides consulting

and educational services regarding international intellectual property practice.  I am the Director,

Patent Professional Development, at Practising Law Institute ("PLI").  I have taught the patent

bar agent and attorney review course and worked as a patent examiner and patent office official.

I have served as general patent counsel for companies in my law practice.  I have been involved

with the preparation, prosecution, and protection of thousands of U.S. patents, European Patent

Office (EPO) filings, international Patent Cooperation Treaty (PCT) filings, and corresponding

foreign patents around the world.

6.      I began my career in patents as a Patent Examiner at the U.S. Patent and

Trademark Office ("PTO") in 1985, while enrolled in night law school at George Washington

University.  I entered private practice as a patent attorney at the D.C.-located law firm Cushman

Darby and Cushman, in 1987.

7.      I left Cushman to start both a patent law firm and an international patent research

and document firm.  In 1990, the patent research and document firm merged with RWS IP

Services, at the time, the largest patent translating and research firm in the world with

headquarters in London.  I remained as Chief Executive of their U.S. operations post-merger.  I

then re-acquired the entirety of their U.S. operations in 1993 and owned and ran the company

until selling it again in 1999, whereupon it ultimately became a part of Thomson & Thomson.

8.      My law firm, Berenato & White, represented 1st Tier automotive component

companies and a variety of other companies in various business sectors.  Among the various

companies was a large U.S. food product handling company with sales predominantly outside

the U.S. for certain of its product lines. As a result, most of the initial U.S. patent filings for this company were typically followed by international and foreign filings in selected locations around the world. The patent portfolio that was created formed an important part of their business model to both initiate and retain business and to create the possibility for cross industry and cross-border collaborations.

9.       Since January 2020, I have been the managing director of the PCT Learning Center (PCT LC), a training company that I acquired from its Founder, Gary Smith, the former Director of PCT Operations at the World Intellectual Property Organization ("WIPO") in Geneva, Switzerland. The PCT LC is a procedure teaching enterprise for submission of filings under the PCT/Hague/Madrid protocols of the WIPO. Founded in 2008, and taught at live locations around the U.S., PCT LC has taught 10,000+ students how to file and perfect filings at WIPO in Geneva and also through the USPTO. The courses are presently taught on-line using Senior PTO staff and Senior WIPO staff as well as attorneys and agents in private practice. The PCT LC is presently launching a course on EPO patent practice in collaboration with senior EPO staff.

10.      I also developed, in 1995, and have remained the principal author and lecturer for, the leading patent bar exam review course in the U.S. (The PLI Patent Bar Review course) and have taught more than 28,000 students to prepare for and take the patent office registration exam. This represents approximately 2 out of 3 active patent practitioners in the U.S. This course includes over 2000 pages of materials that are updated annually and as necessary with Patent and Trademark Office law and rule updates. These Patent Bar materials include all phases of practice before the PTO as well as the preparation and submission of PCT filings through the PTO as an International Receiving Office for the PCT system.

3

DocuSign Envelope ID: 18A29756-DED1-47E8-BC85-C62A206362E7

11.     I have also prepared and taught a Patent Office Law and Evidence Course, which includes materials relating to a 40-hour course of law, evidence and procedure for GS-13 Level Patent Examiners.  These are patent examiners who are progressing towards "full-signature authority" as Primary Examiners at the PTO.  The only entity within the PTO that can reverse or alter a decision for allowance or denial at the PTO for a Primary Examiner being the Patent Trial and Appeal Board (PTAB).

12.     I have also published materials relating to CLE annual courses on 35 U.S.C. § 101/102/103/112 Patent Eligibility, Prior Art, Obviousness, and Disclosure for Practising Law Institute since 2003.  I have been the Course Chair since inception and present on aspects of Prior Art.  I have also Co-Chaired an Annual 2-Day Patent Law Institute since 2005, I am the "Prosecution" Chair, covering all PTO related topics and procedure, and also arrange for the Keynote and Ethics portions of the program.  The program also includes presentations on topics including patent litigation, damages, infringement opinions, willfulness and enhanced damages, and inequitable conduct.

13.     I have taught and continue to teach fundamental principles of writing, filing, and prosecuting patent applications through the PTO both live and on-line in a 20+ hour practical course for Practicing Law Institute and others.  I also designed and created the 16-hour video/online lecture series "How to Prosecute Patents" for Practicing Law Institute in 2002.

14.     Since 2003, as noted, I have also been Director, Patent Professional Development, at Practising Law Institute.  In this role, I am director of all phases and aspects of Intellectual Property professional training curriculum for Attorneys and Allied Professionals.

15.     I have also taught patent prosecution and procedure at several law schools at the JD and LLM level.  Since 2010 I have been an adjunct professor at the University of Virginia

4

DocuSign Envelope ID: 18A29756-DED1-47E8-BC85-C62A206362E7

Law School, where I instruct a JD and LLM level 3-hour course for Patent Prosecution. Since 2002 I have been an adjunct professor at John Marshall Law School (now University of Illinois), Chicago, where I teach a 2-hour annual summer course titled "Regulatory and Statutory Fundamentals of Patent Law," and a 3-hour online course titled "Patent Office Practice."

16.     As a part of the professional services I have provided, I have acted as a General Patent Counsel for companies too small to employ their own or for companies in between staffing requirements. I have presented to Boards of Directors varying strategies for patents dependent on their business model and objectives. Any patent strategy should support and be consistent with the overall business objectives of the enterprise and, as these change, so should the patent strategy. Such strategies include all phases of inventor recruitment and encouragement, filing and prosecuting and pruning as necessary, and litigating and licensing to obtain effect for strategy implementation.

17.     A "patent strategy" is not a once-size-fits-all for any company or group of companies, even in the same industry. Each company has its own strengths and weaknesses and those should be leveraged and shielded as necessary, respectively. A given company may have a particular technical advantage vis-à-vis their competitors in a specific apparatus. This can be used to leverage sales of other aspects of service and machinery to items adjunct to the particular item that has the advantage. These elements of specific advantage should be well protected by multiple patents and patent filings in any active market, worldwide, for the machinery. This strategy is one of protection and ensures long term relationships as an "installed base" grows.

18.     If an entity wishes to enter a field that is adjacent to a field they are already in, and there is an installed and well-protected base to compete against, then the new entrant must develop the "next generation" of the "installed base." For example, a company may see the high

5

DocuSign Envelope ID: 18A29756-DED1-47E8-BC85-C62A206362E7

margins in packaging, which is adjacent their machinery which is directed to pre-packaging food prep. That is, their machinery orders and organizes prepared food product for package insertion. To then obtain entrance into the packaging machinery, a newcomer might use, for example, robotics where it had not yet been applied. In addition, the new entrant might use robotics for packaging that could work seamlessly, in terms of software, with their already installed pre-packaging food prep machinery. The next generation packaging machinery would then be the subject of multiple patent filings and might even be made available to license to those who otherwise compete, but only in the pre-packaging food prep field, not in the packaging field.

19.     It is understood that every industry and segment would have industry and company specific IP strategies, the foregoing being but two examples. I have been hired at various times to assist Boards of Directors, and C-level staff, understand the role IP can play in supporting business. I devised a 4-hour patent enforcement and licensing exercise whereby the room is divided onto 3 groups: Old Company with a large installed base and market share, and older, soon-to-expire patents; Current Company with newer patents, but a smaller market share, and higher end value add devices for Old Company machinery; and, Next Company, with one patent filing, which is directed to the next generation of Old Company machinery, but that does not infringe or copy any aspect of Old Company patents. Each Group ends the day negotiating licenses and/or filing lawsuits and/or offering acquisition terms based on their patent positions.

20.     I have been retained as a patent procedure expert in several District Court cases as well as in various state court proceedings relating to patent malpractice. I have given testimony in the following cases in the last four years:

> a. *Tanashin Denki Co., Ltd. v. Thomson Consumer Electronics, Inc. and Thomson Consumer Electronics of Canada, Inc.*, U.S. District Court, Southern District of Indiana, Indianapolis Division. Case No: IP 99-836-C-Y/G. Testified for the Plaintiff.

DocuSign Envelope ID: 18A29756-DED1-47E8-BC85-C62A206362E7

discussed at meetings and via emails and followed-up on, and validated, during sales calls and industry events.

54.     The information generated by these watch services, if flagged as being potentially a material factor in the decision making of an industry participant, can become the subject of further searching in the form of "landscape" and "background" and "state of the art" searching. Landscape searching provides a sense of what level of commitment a given market participant has toward a specific aspect of technology and its application in that industry.  For example, a given industry participant may apply robotics and automation to package provision only, i.e., providing a food safe container ready for receipt of a prepared food product.  Another competitor may apply similar automation, but only until such time as a product reaches the packaging stage, i.e., organizing and ordering and orienting a prepared food product for package insertion.  And, yet another competitor, may only prep and cure/cook a product for aggregation and subsequent dispatch to a product packaging line.  Each of these "competitors" may be "collaborators" on some bids to some buyers, i.e., each handling a segment of a process and working adjacent a competitor's machines and methods, but also may compete for segments beyond what they have historically provided as their capacity to provide solutions expands by acquisition or necessity.

55.     Another potential mechanism that can make an industry participant aware of existing patents owned by others in the same field, is the process of filing for and pursuing protection of their own innovations.  As a part of any patenting process, a search is conducted by the relevant authority that grants patents to determine whether a patent should issue for the particular subject described and claimed in the application.  As a part of this search and evaluation process, often times many patents are cited that originate from competitors in the same field.  And, while an examiner is not evaluating potential claim scope, except as to the

DocuSign Envelope ID: 18A29756-DED1-47E8-BC85-C62A206362E7

application being examined, the results of this examination often put relevant patents of other industry participants in the possession of one another. Hence, if a given competitor or industry participant are themselves filing patent applications, in my experience it is unlikely that an awareness of the potential patent rights of others does not also become apparent.

56. **Evaluation** – When a decision is made to directly compete for a bid to supply a competitive product or service, and an awareness of IP in the industry has been established, a specific "freedom to operate" or "product clearance" search of patents may be done. Similarly, trademark "clearance" searches are done for any new marks that may be used. The freedom to operate search is a standard service available from many established patent searching firms in virtually all markets around the world where patent style IP rights exist. These searches are also sometimes referred to as "infringement" searches. Once the parameters of a proposed machine/method/product/composition have been mostly determined, a summary of this information can be provided to a patent searching company, and instructions and budgets given for the scope of the search, along with specific guidance as to any competitors that may have been identified in the watch services previously referenced. These searches can range in cost from several thousands of dollars to several tens of thousands of dollars.

57. The results of the "freedom to operate" search are typically reviewed by a qualified patent attorney who is licensed to practice in the relevant jurisdiction where the proposed product/machine, etc., is to be provided. This review may then be accompanied by "opinions" as to which patents may be problematic when taking into account the proposed parameters and specifications of the product/machine to be provided. At this point, the opinion may be negative in the sense that it identifies a particular feature/function/element/step of the proposed product/machine, that might infringe an identified patent. If such is the case, a "design

19

Appx9040

around" session may be initiated through which non-patented alternatives to what is proposed can be developed. These "design arounds" themselves may be the subject of their own filings if they prove to be separately novel and unobvious (or, if outside the U.S., if they have sufficient "inventive step"). If a "design around" cannot be identified or developed, a "validity" search may be ordered to discover whether the particular patent(s) that have been identified as potentially infringed were appropriately granted. That is, the question is whether the issuing patent office may have overlooked or been unaware of public domain prior art that would likely invalidate the patent(s) if enforcement were to occur. At this time, the prospect of seeking a license under the patent(s) may be considered. In some industries, i.e., telephony, patents are readily available for license from patent pools and, in fact, are the only path to entry into the industry as a participant.

58.     **Decision** – Regardless of whether the opinion has determined that no patents exist that may be relevant, or that the patents identified are "not infringed" owing to the lack of features/functions/elements/steps in the machine/product proposed to be provided when compared to those claimed in the patent, or that the patent may be invalid, a decision is made regarding whether to proceed. In some industries the mere existence of patents and their vigorous and liberal enforcement, can be enough to dissuade entry into the field. On the other hand, if the opinions provide objectively "reasonable" basis for reliance on what they conclude, i.e., noninfringement or invalidity, and there is sufficient profitable opportunity at stake for an industry entrant/participant, the decision to proceed will likely be taken.

59.     A specific reason as to why these steps may be necessary is that, if a subsequent enforcement action of the various IP rights is undertaken, and no such investigation or opinion was sought or obtained or reasonably relied upon, these facts may be taken into account in

making a determination as to whether the infringement, if found to occur, was or was not "willful." There is no "affirmative duty" to obtain advice of counsel prior to initiating any possible infringing activity. *Halo*, at 14. While an "opinion" may not strictly be needed, willful blindness or ignorance of patent rights of others is not the correct alternative.

60. As such, although these investigation and opinion steps are not necessary or dispositive, in all instances, the fact of their existence or non-existence, and their thoroughness and the reasonableness of their reliance thereon is none-the-less the subject of investigation. In instances where an accused infringer was reasonably unaware of the existence of the IP rights, i.e., a coffee shop using WiFi, and a determination of infringement is found, a reasonable royalty, lost profits, or other damage assessment can be made. On the other hand, where it is reasonable that an accused infringer knew or should have known about the relevant patent rights, or in a time frame after they were put on notice of the possibility of infringement of specific patents, their conduct thereafter is subject to careful scrutiny.

## VI. FACTS

### A. Overview of Provisur

61. Provisur is a "leading industrial food processing equipment manufacturer headquartered in Chicago, Illinois, with a global network of sales and service locations."[1] Provisur sells slicing solutions to its customers. M. Lowden Jan. 20 Tr. 24:19-25:6.

62. Provisur develops patented technologies to improve the equipment that it sells to end customers. M. Cohen Jan. 26 Tr. 201:5-21. Of relevance here, the U.S. Patent Office issued the following patents to Provisur:

---

[1] https://www.provisur.com/en/overview/.

DocuSign Envelope ID: 18A29756-DED1-47E8-BC85-C62A206362E7

| Patent | Patent Issue Date |
|--------|-------------------|
| '537 | December 4, 2012 |
| '936 | June 27, 2006 |
| '005 | December 30, 2003 |
| '089 | February 14, 2006 |
| '436 | April 21, 2020 |
| '812 | May 5, 2020 |

These patents cover technologies used in the industrial food slicing business. Complaint at ¶ 49, 77, 103, 116, Provisur Techs., Inc. v. Weber, Inc. et al., No. 5:19-cv-6021 (W.D. Mo. Feb. 22, 2019), ECF No. 1 ("*Provisur I* Complaint"); Complaint at ¶ 50 and 64, Provisur Techs., Inc. v. Weber, Inc. et al., No. 5:20-cv-6069 (W.D. Mo. May 6, 2020), ECF No. 1 ("*Provisur II* Complaint").

63. Provisur's European, related patents include: EP 2,657,138 B1; EP 2,566,670 B1; EP 1,534,478 B1; EP 1,581,427 B1; and DE 2020 11111 071 U1. As shown in the chart attached as Exhibit C, the claim 1 of these patents differ from the claim 1 of the Patents-in-Suit by only a few words.

**B.   This Litigation**

64. On February 22, 2019, Provisur filed case action number 19-cv-06021 ("*Provisur I*") against Defendants. *Provisur I* Complaint. Defendants design, manufacture, and distribute food slicing systems worldwide.[2] Similarly, Defendants sell slicing solutions to their customers. J. McCarroll Jan. 6 Tr. 177:21-178:3. In *Provisur I*, Provisur alleges that Defendants have infringed its '537, '936, '005, and '089 patents. *Provisur I* Complaint.

65. On May 5, 2020, Provisur filed case action number 20-cv-06069 ("*Provisur II*") against Defendants. *Provisur II* Complaint. In *Provisur II*, Provisur alleges that Defendants

---

[2] https://www.weberslicer.com/company/.

A. I did not seek any legal advice regarding that.

Q. Do you know if Weber ever sought any legal advice regarding the Provisur patent related to the SmartLoader?

MR. BANOWIT: Objection, form, foundation.

A. I do not know if Weber -- I don't know if Weber "seeked" any or sought any legal advice.

Q. (BY MR. BABBITT) Is it your testimony here today that you had a conversation with an employee in the Service Department about a Provisur patent related to a SmartLoader, but you don't remember the name of the employee or the time of that conversation?

A. I --

MR. BANOWIT: Objection, form, mischaracterizes testimony.

A. That is correct.

Duesterhaus Jan. 4 Tr. 25:2-23.

72.    Documents in the litigation further show that Defendants were aware of at least some of Provisur's patents. For example, in 2015, Weber Inc.'s CEO wrote to his colleagues about the Smartloader, "we cannot sell it in USA and Canada for sure." WEBER-0449659/WEBER-0449660. He also wrote that Defendants "cannot offer this in the US without doing a modification to the design. WEBER-0449772. In June of 2015, however, Weber Inc.'s CEO proclaimed: "Guys, Great news! We will be able to sell the Smart Loader in the US effective immediately!" WEBER-0449939.

**D.    Weber's "Patent Management Team"**

73.    Defendants' Patent Management Group comprises Steffen Zecher, Patrick Schneider, and Claudia Hormel. C. Hormel Jan. 28 Tr. 69:18-68:2. It is also referred to as the the "TBPT" or "technisches büro patentabteilung" in German. S. Zecher Feb. 4 Tr. 42:20-43:15. No member of the Patent Management Team has legal training. *Id*. at 27:5-6; H. Blocher Feb. 2 Tr. 24:11-16. The team reports to Ingo Rother, who also has no legal training. I. Rother Jan. 10 Tr. 22:16-17. Hartmut Blocher is the only individual at Weber with any legal training. H. Blocher Feb. 2 Tr. 24:11-16. The responsibilities of the Patent Management Group include "[r]egistration of Weber patents and taking care of the portfolio and surveying the market,"

DocuSign Envelope ID: 18A29756-DED1-47E8-BC85-C62A206362E7

including "the analysis of possible patent filings and patents in our business area," and monitoring the patents of other competitors in the field, including Provisur. I. Rother Jan. 10 Tr. 32:18-33:15, 34:25-35:13.

74.     Additionally, the most recent privilege log produced by Defendants shows that they lacked U.S. counsel until 2019, the year in which Provisur first alleged infringement. *See* Defendants' Second Supplemental Privilege Log (January 27, 2022).

75.     Mr. Rother admitted in his deposition that he was not aware of whether the Patent Management Group had ever sought advice from outside counsel prior to 2019 for issues pertaining to Provisur patents. *Id.* at 125:16-20; 136:5-16. Counsel for Defendants have instructed witnesses not to answer questions regarding Defendants' knowledge or tracking of those patents, however, including questions regarding:

- How long Weber has monitored Provisur's patents (Rother Jan. 10 Tr. 35:14-20);

- Whether, when attorneys were not present, Mr. Rother discussed Provisur patents with Mr. Zecher prior to the filing of the 2019 lawsuit (Rother Jan. 10 Tr. 45:23-48:7);

- Whether, when attorneys were not present, Mr. Rother emailed Mr. Zecher regarding Provisur patents, prior to the filing of the 2019 lawsuit (Rother Jan. 10 Tr. 50:10-18);

- Whether Mr. Zecher provided updates to Mr. Rother about the European opposition proceedings between Provisur and Weber before 2019 (Zecher Feb. 4 Tr. 160:10-20);

- Whether Mr. Rother was aware of any Patent Management Group documents that reference Provisur patents prior to the lawsuit (Rother Jan. 10 Tr. 52:20-53:3);

- Whether or not Weber sought legal advice surrounding patent issues at a 2019 trade show (Rother Jan. 10 Tr. 64:1-16, 65:9-22);

- Whether or not Mr. Rother consulted a patent agent or attorney in regards to a "patent problem" referenced in the minutes of a product development meeting (Rother Jan. 10 Tr. 94:15-95:3);

- Whether Weber has a program set up to know about Provisur's patent applications as soon as there are filed (Rother Jan. 10 Tr. 121:9-22);

- Whether Weber sought legal advice regarding the patents asserted in these actions, prior to the filing of the 2019 lawsuit (Rother Jan. 10 Tr. 121:23-122:6);

- Whether members of the Patent Management Group were ever shown patents from other companies (Zecher Feb. 4 Tr. 117:12-20; Hormel Jan. 28 Tr. 180:11-18);

- Whether employees at Weber had conversations, when attorneys were not present, about whether to make changes to products because of the Provisur litigation or concern of infringement (Schmeiser Feb. 1 Tr. 81:3-9; 83:18-84:4; Zecher Feb. 4 Tr. 151:5-12; 171:10-18; 173:22-174:4; 177:2-12; 180:13-22);

- Whether Weber has attempted to redesign products due to concerns about patent infringement (Zecher Feb. 4 Tr. 147:22-148:13; 164:1-10; 175:17-176:2; 179:6-16);

- Whether the Patent Management Group was involved in determining whether competitors infringed on Weber's patents (Hormel Jan. 28 Tr. 109:4-14)

- Whether Weber consults outside counsel when negotiating patent licenses (Zecher Feb. 4 Tr. 132:21-133:5)

76.     I understand that Provisur is seeking production of documents about the Patent Management Group and to retake those depositions. *See* Plaintiff's Brief in Support of Motion to Compel Discovery of Non-Privileged Testimonial and Documentary Evidence (Feb. 16, 2022).

### E.     Defendants' Citations to Provisur's Patents

77.     Defendants' patent filings also demonstrate a pattern where Provisur's patents are cited to Weber when Weber has applied for its own patents. This provides further evidence that Defendants were aware of and knew the substance of Provisur's patents.

78.     My review of patent files using Google Patents has shown that Weber has had Provisur's U.S. Patent No. 8,322,537 (and/or patent family) cited to Weber in connection with the following Weber applications:

     a.  DE102009060064A1, *2009-12-222011-06-30, Weber Maschinenbau GmbH Breidenbach, 35236, Device and method for creating product portions

b. DE102010034676A12 010-08-18, 2012-02-23,Weber Maschinenbau Gmbh Breidenbach, Conveying objects

c. DE102011103863A1, *2011-06-092012-12-1,3Weber Maschinenbau Gmbh Breidenbach, Method for slicing products

d. DE102013216717A1 *2013-08-222015-02-26, Weber Maschinenbau Gmbh Breidenbach, Device for slicing food products and method for providing intermediate sheets

e. DE102014118978A1 *2014-12-182016-06-23, Weber Maschinenbau Gmbh Breidenbach, Conveying device with portion transfer

f. DE102017105919A12017-03-202018-09-20, Weber Maschinenbau Gmbh Breidenbach, Processing of food products

79.    My review of patent files has shown that Weber has had cited Provisur's U.S.

Patent No. 9,399,531 in connection with the following applications:

a. DE102012009648A1 *2012-05-142013-11-14, Weber Maschinenbau Gmbh Breidenbach spreading

b. DE102013216717A1 2013-08-222015-02-26m Weber Maschinenbau Gmbh Breidenbach Device for slicing food products and method for providing intermediate sheets

c. DE102017118930A1 *2017-07-032019-01-03m Weber Maschinenbau Gmbh Breidenbachm Providing web-shaped interleaf material at a cutting area

d. DE102017118934A1 *2017-07-032019-01-03, Weber Maschinenbau Gmbh Breidenbach, Providing web-shaped interleaf material at a cutting area

e. EP3424852B1 *2017-07-032021-04-21Weber Maschinenbau GmbH Breidenbach, Provision of web-shaped sheet material to a cutting area

f. DE102017118925A1 *2017-07-032019-01-03Weber Maschinenbau Gmbh Breidenbach, Providing web-shaped interleaf material at a cutting area

g. DE102017118927A1 *2017-07-032019-01-03Weber Maschinenbau Gmbh Breidenbach, Providing web-shaped interleaf material at a cutting area

28

**Appx9049**

DocuSign Envelope ID: 18A29756-DED1-47E8-BC85-C62A206362E7

105. Defendants' employee Kevin Duesterhaus also contributed to their efforts to copy Provisur's designs. For example, in February 2014, Mr. Duesterhaus wrote the following to his colleagues:

> …If we look at the competitor machines they have spiked steel and/or plastic rollers. The poly belts are just not good enough to run these very cold products. My idea would be a different intermediate conveyor that would have metal spiked rollers instead of belts.
>
> If you look on the Website of Provisur you can watch a video of the machine running production http://www.provisur.com/cashin/products/cashinedge-retail-bacon-slicing. Over the product bed you can see hard plastic spiked downholder rollers that assist with feeding the products through. We need something similar instead of the small finger downholders located by the side trim knife. At 1:16 during the video you will see a steel spiked feed roller. This type of roller design is needed for the product support conveyor.
>
> I would like to test the solution on an existing machine. …

WEBER-0456711.

### G. Defendants' Admissions

106. Despite all of this knowledge of Provisur's patents, products, and customers, Defendants boldly took no action to avoid U.S. patent infringement against Provisur's patents. As counsel for Defendants bluntly to the Court on November 17, 2021, "We told them we knew about the patent's and nothing's been done." Tr. 11:7-8.

107. Kevin Duesterhaus, Defendants' U.S. technical solutions manager, has also testified:

> Q. (BY MR. BABBITT) Does Weber monitor its competitors' patents?
> MR. BANOWIT: Objection, form, foundation.
> A. I don't know if they do or not.
> Q. (BY MR. BABBITT) To the best of your knowledge did defendants take any actions before this lawsuit to avoid infringing Provisur and Formax's U.S. patents?
> MR. BANOWIT: Objection, form, foundation.
> A. I don't know if they did or not.

Duesterhaus Jan. 4 Tr. 31:7-18.

DocuSign Envelope ID: 18A29756-DED1-47E8-BC85-C62A206362E7

108.    Jarrod McCarroll, the CEO of Weber Inc.—the U.S. arm of Defendants—

testified:

> Q. Prior to this lawsuit, and this is just a "yes" or "no" question, prior to this lawsuit had you personally ever sought legal advice relating to any Provisur patents?
> A. No, ma'am.
> Q. Do you know if anyone at Weber, Inc. monitors competitor's patents?
> A. I am not aware of that.

McCarroll Jan. 6 Tr. 102:25-103:7.

109.    And Jason Miera, Defendants' "applications manager" who has responsibility for

"interdepartmental technical skills, testified:

> Q. You aren't aware of any actions defendants took before this lawsuit to avoid infringing Provisur and Formax U.S. patents, are you?
> MR. CONKLIN: Objection, attorney client privilege, instruct the witness not to answer if it reveals the content of any discussions with counsel.
> A. I don't recall.
> Q. (BY MR. BABBITT) And so your answer is no, you are not aware of any actions defendants took before this lawsuit to avoid infringing Provisur and Formax U.S. patents, are you?
> MR. CONKLIN: Objection, mischaracterizes prior testimony.
> A. I am not aware.

Miera Jan. 5 Tr. 22:12-15 and 37:24-38:14.

## VII.    OPINION

110.    In my opinion, the foregoing facts show there is substantial evidence that

Defendants had knowledge and awareness of the Patents-in-Suit and thereafter, despite such

knowledge, engaged in deliberate conduct in knowingly making and selling infringing product,

i.e., covered by one of more of the Patents-in-Suit, into the United States.[4]    This evinces a

---

[4] I understand that my opinion herein is for the jury's consideration, many of these facts would support findings by the Court of enhanced damages and exceptional case under *Halo*, *Octane*, and *Read Corp v. Portec, Inc.* 970 F.2d 816, 826–27 (Fed. Cir. 1992), [*abrogated in part on other grounds by Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 116 (1996)] (enhanced damages factors include: 1) Whether there was deliberate copying; 2) Whether the infringer knew of the other's patent protection, investigated that protection and formed a good faith belief regarding non-infringement or invalidity; 3) The infringer's behavior as a party to the litigation;

DocuSign Envelope ID: 18A29756-DED1-47E8-BC85-C62A206362E7

reckless disregard for whether or not they were infringing, which is one of the touchstones of willfulness. Further, the facts show that Defendants did not comply with the industry standards, practices, and customs for avoiding patent infringement that I set forth above. In my opinion, Defendants did commit willful infringement.

111. As shown above, Defendants' had certain knowledge of Provisur patents, including the Patents-In-Suit in particular. Their knowledge is also evidenced by the multiple European Oppositions Weber filed against foreign patents related to the Patents-in-Suit, to wit: Weber became aware of EP 2 657 138 "at least as early as February 9, 2017" and filed an opposition against it on September 21, 2017. Defendants' Second Supplement to Interrogatory 11. Weber became aware of EP 1 534 478 "at least as early as March 21, 2017" and filed an opposition against it on November 24, 2017. *Id.* Weber became aware of EP 2 566 670 "at least as early as February 20, 2017" and filed an opposition against it on April 5, 2017. Defendants' Second Supplement to Interrogatory 10. Weber became aware of DE 20 2011 111 071 "on or about April 15, 2019." *Id.*

112. And, while thorough familiarity with competitors' patents in other markets does not establish the same patent familiarity in the U.S., in my experience this is precisely the case in this situation. Patents with similar, if not word for word identical, claim limitations, are often part of a "patent family" that span markets wherever a given company is active commercially. Given the close and ongoing attention that Defendants gave to the various Provisur patent oppositions in Europe, and that much of the same machinery of Defendants was sold in the U.S., it would defy credulity that the same staff of Defendants did not also have knowledge of the

---

4) the infringer's "size and financial condition"; 5) The infringer's "motivation for harm"; 6) The duration of the misconduct; 7) remedial action taken; 8) The infringers attempts to conceal infringement; and, 9) the "[c]loseness of the case.").

corresponding Provisur "family" patent portfolios in the U.S. In many electronic patent databases, e.g., Google Patents, all foreign patent family data is unavoidably viewable on the same page that shows a specific U.S. patent and vice-a-versa.

113.    Proof of this similar level of U.S. knowledge, however, can be found in a 2015 email communication, when Weber Inc.'s CEO wrote to his colleagues about the Smartloader, "we cannot sell it in USA and Canada for sure." WEBER-0449659/WEBER-0449660. He also wrote that Weber "cannot offer this in the US without doing a modification to the design. WEBER-0449772.

114.    Despite clear knowledge of Provisur's patents, Defendants failed to meet industry standards and practices for preventing infringement of them.  There is no evidence that Defendants' Patent Management Group succeeded in doing so.  Here there is no evidence that before or after an awareness of Provisur's patents had occurred, either before suit was filed, or after, that an assessment or opinion as to either infringement or validity were done. Hence, there is no possible "good faith" belief that either noninfringement or invalidity was a factor based on such an investigation or opinion since there is simply no evidence that any was done.  In addition, if one was done, it was not done within Defendants' TBPT group. (Zecher Feb. 4 Tr. 123:4-10).

115.    Defendants employ several individuals as a part of their "Patent Management Team", to wit: Steffen Zecher (Patent Engineer and, currently, Team Leader), Patrick Schneider, and Claudia Hormel (Hormel Jan. 28 Tr. 69:18-68:2), whose responsibilities include: "[r]egistration of Weber patents and taking care of the portfolio and surveying the market," including "the analysis of possible patent filings and patents in our business area," and **monitoring the patents of other competitors in the field, including Provisur**. (**Bold** added.)

40

(Rother Jan. 10 Tr. 32:18-33:15, 34:25-35:13.) Team member Mr. Zecher reports directly to Mr. Rother on patent issues: "Every week, every fortnight, one to four weeks." (Rother Jan. 10 Tr. 97: 21-22). Mr. Zecher tracks competitor patents and provides an analysis of those patents together with patent attorneys. (Id at 99:24-25.). Yet, despite this patent and competitor focus, Mr. Rother indicated in his deposition that he was not aware whether the Patent Management Group had ever sought advice from outside counsel prior to 2019, i.e., the filing of the current lawsuit, for issues pertaining to Provisur patents. (*Id.* at 125:16-20; 136:5-16.) The activities of this Patent Management Group with respect to all patents and IP, as well as this particular patents in this case, are relevant to willfulness.

116. Despite the opportunity to explain if or when Weber may ever have developed a reasonable belief of non-infringement as to the Provisur patents-in-suit, or their invalidity, Weber witness' have been instructed not to answer questions such as: How long Weber has monitored Provisur's patents (Rother Jan. 10 Tr. 35:14-20); Whether, when attorneys were not present, Mr. Rother discussed Provisur patents with Mr. Zecher prior to the filing of the 2019 lawsuit (Rother Jan. 10 Tr. 45:23-48:7); Whether, when attorneys were not present, Mr. Rother emailed Mr. Zecher regarding Provisur patents, prior to the filing of the 2019 lawsuit (Rother Jan. 10 Tr. 50:10-18); Whether Mr. Zecher provided updates to Mr. Rother about the European opposition proceedings between Provisur and Weber before 2019 (Zecher Feb. 4 Tr. 160:10-20); Whether Mr. Rother was aware of any Patent Management Group documents that reference Provisur patents prior to the lawsuit (Rother Jan. 10 Tr. 52:20-53:3); Whether or not Mr. Rother consulted a patent agent or attorney in regards to a "patent problem" referenced in the minutes of a product development meeting (Rother Jan. 10 Tr. 94:15-95:3); Whether Weber has a program set up to know about Provisur's patent applications as soon as there are filed (Rother Jan. 10 Tr. 121:9-

22); Whether Weber sought legal advice regarding the patents asserted in these actions, prior to the filing of the 2019 lawsuit (Rother Jan. 10 Tr. 121:23-122:6);Whether members of the Patent Management Group were ever shown patents from other companies (Zecher Feb. 4 Tr. 117:12-20; Hormel Jan. 28 Tr. 180:11-18); Whether employees at Weber had conversations, when attorneys were not present, about whether to make changes to products because of the Provisur litigation or concern of infringement (Schmeiser Feb. 1 Tr. 81:3-9; 83:18-84:4; Zecher Tr. 151:5-12; 171:10-18; 173:22-174:4; 177:2-12; 180:13-22); Whether Weber has attempted to redesign products due to concerns about patent infringement (Zecher Feb. 4 Tr. 147:22-148:13; 164:1-10; 175:17-176:2; 179:6-16). This refusal despite Mr. Rother admitting that Weber had, in the past tried to "design around" patent infringement issues. (Rother Jan. 10 Tr. 101: 5-11). And that Weber had specifically tried to "design around" a Provisur patent related to the "SmartLoader". (*Id*. 103: 3-10).

117. Mr. Schmeiser, Defendants' 30(b)(6) witness, was instructed not to answer any of the following questions:

> Q. Did the defendants investigate whether any of their products infringed the '537 and '005 patents after they knew about them by January 2014? (Schmeiser 30(b)(6) Tr. 36:4-6);

> Q. Did the defendants investigate whether 16 the '537 and '005 patents were valid and enforceable? (Id. at 36:15-16);

> Q. Did the defendants investigate whether 8 to obtain a license to the '537 and '005 patents? (Id. at 37:7-8)

> Q. What did defendants do to form a good faith belief that they were not infringing the '537 and '005 patents? (Id. at 38:4-8);

> Q. Did the defendants ever investigate 21 whether any of their products infringed the '936 and '089 patent? Id at 40:20-22);

> Q. Did the defendants ever investigate whether the '936 and '089 patents are valid and enforceable? (Id.at 41:18-20);

42

Q. What did defendants do to form a good faith belief that they were not infringing the '936 and '089 patents? (Id at 42:10-12);

Q. And did defendants ever investigate whether any of their products infringed the patents-in-suit in Provisur 2? (Id. at 46:8-10);

Q. Did defendants ever investigate whether the patents-in-suit in Provisur 2 are valid and enforceable? (ID. at 46:19-21);

118.    The facts provide no reasonable explanation or basis for Defendants to conclude there was either no infringement or the patents-in-suit were invalid.  Mr. Zecher indicated, that before he became the leader of the Defendants' Patent Management Group, that he and Mr. Rother had communication that occurred on "almost on a daily basis" provided they were both in the office at the same time. (Zecher Feb. 4 Tr. 156: 7-9).  Yet no information is forthcoming as to when, if, or whether any Provisur U.S. patents, or the patents-in-suit, were assessed for infringement or validity vis-à-vis Defendants' products, despite Defendants opposing Provisur patent family members in Europe and having a "team" whose job it was to monitor and analyze these very issues.

119.    Other evidence of Defendants' business practices also shows that Defendants have diverged from standard industry practice regarding intellectual property protection.  At their highest levels, Defendants have promoted approaches of "nothing's off limits" and "whatever it takes."  These directions to a technology company's employees are reckless.  Perhaps the most revealing discovery as to the nature of the competition between Defendants and Provisur was use by Defendants of the program label "Pillage and Protect" as their strategy to compete with Provisur in North America.  In reply to a Weber Inc. CEO request for three strategies to compete with Provisur, where "Nothing's off limits," Russel Stroner, responded to Mr. McCarroll with a

powerpoint slide deck entitled, "Pillage & Protect." WEBER-0472318. That powerpoint set forth a strategy premised on Weber's pillaging of Formax's install base in North America. *Id.*

120. The Pillage program, and other above cited examples of outright corporate espionage, e.g., forwarded confidential pricing lists and customer quotes, leave no doubt that Weber intended harm to Provisur, great harm, with such harm inflicted in a "Nothing's off limits" manner.

121. Defendants' conduct has been deliberate and intended. They have, and had, no reasonable basis to believe that their conduct would not infringe or, that if they did, that the patents would be found invalid. Defendants refuse to even answer who it was that might have been consulted as to such matters. And, inside Defendants, none of the patent "Team" had legal training to assess such risk. Further, Defendants intended harm, considerable harm, to Provisur. *Halo* refers to such cases where enhanced damages are to be awarded can be likened to the conduct of a Pirate. In this regard, Defendants' use of "pillage" as their moniker for Defendants' plan for competing with Provisur is apt. Defendants literally engaged in a "Nothing's off limits" strategy. Lastly, Defendants refuse to reveal what remedial "design around" steps they may have undertaken, or not, behind a shroud of "privilege" and vexatious litigation strategy.

122. With respect to whether remedial action, such as whether a "design around" was attempted, the following Zecher deposition exchange is representative:

> …….Has Weber ever redesigned a Weber product because of a concern for patent infringement?
> MR. BANOWIT: Objection. Vague. But again, I am going to counsel you not to reveal communications you had with counsel. To the extent you can answer the question independent of your communications with counsel, you can answer the question.
> THE WITNESS:
> A. I have no independent basis for answering this question beyond the attorney communication.
> BY MR. HARN:
> Q. Which attorneys have you communicated with on this issue?

44

DocuSign Envelope ID: 18A29756-DED1-47E8-BC85-C62A206362E7

MR. BANOWIT: Now you are getting into the subject matter of these communications, trying to figure out even if there were communications about redesigns and who they might be with. And I am going to instruct the witness not to answer the question.

MR. HARN: Counsel, it's your position that the name of the law firm is also privileged?

MR. BANOWIT: My primary concern with your question is on this issue. So what you are talking about is on this issue of the redesign that he has testified he has no independent basis to talk about. Now you are asking him for which communications with which attorneys included the issue of redesign. And I am instructing him not to identify communications with counsel that he may have had on any redesigns. So that's my basis. You are asking about specific -- you are now getting into the specifics of the communication, which attorneys, in your communications with them, did you talk about this issue? That's the substance of the communication. That's what's privileged. You might think you are not doing that, but that's exactly what you are doing. You are trying to get to the subject matter of a privileged communication. And I have instructed him not to answer.

MR. HARN: Just to make the record clear on this part, I am only trying to get the name of the law firm. To the extent there are communications, whether or not there are communications, I haven't been able to get an answer because it's apparently privileged. So I am trying to understand the basis of the privilege. But evidently, you are not going to let him answer the question, so I am going to ask the question again, and you can instruct him not to answer, and we can just move on.

MR. BANOWIT: Okay.

(Interpreting).

BY MR. HARN:

Q. All right. So I will ask my question again. Which law firm has Weber communicated with regarding redesigning a Weber product, to the extent it has, due to a concern with patent infringement?

MR. BANOWIT: And again, you are getting into the subject matter of communications with counsel. And for that reason, this is privileged information. And I am going to instruct the witness not to answer the question.

THE WITNESS:

A. Is it my turn?

MR. BANOWIT: No. I have instructed you not to answer.

(Zecher Feb. 4 Tr. 142:2 - 147:2).

123.    In light of the foregoing, it is clear that Defendants have no intention of allowing fact discovery as to any steps they ever undertook to avoid infringement preemptively or retrospectively.  One can reasonably conclude that no discoverable facts exist to show remedial steps on the part of Defendants to avoid infringement before or after awareness of the patents-in-suit and/or before or after suit was filed.  This summary refusal during fact discovery of

## Page 1

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
ST. JOSEPH DIVISION

_____
PROVISUR TECHNOLOGIES, INC.,    )
                                )
        Plaintiffs,             )
                                )   Civil Action No.
        v.                      )
                                )   5:19-CV-06021
WEBER, INC., TEXTOR, INC., WEBER )  5:20-CV-06069
MASCHINENBAU GMBH BREIDENBACH,  )
WEBER MASCHINENBAU GMBH         )
NEUBRANDENBURG, and TEXTOR      )
MASCHINENBAU GMBH,              )
                                )
        Defendants.             )
_____)

***CONFIDENTIAL***
VIDEOTAPED DEPOSITION OF
JOHN MALCOLM WHITE, SR.
New York, New York
Friday, April 1, 2022
9:08 a.m.

Reported by:  BRIDGET LOMBARDOZZI, CSR, RMR, CRR

_____
DIGITAL EVIDENCE GROUP
1730 M Street, NW, Suite 812
Washington, D.C. 20036
(202) 232-0646

## Page 2

1       Videotaped Deposition of JOHN MALCOLM WHITE,
2   SR., taken on behalf of Defendants, held at The Times
3   Square EDITION, 701 Seventh Avenue, New York, New York,
4   commencing at 9:08 a.m. and ending at 4:04 p.m., on
5   Friday, April 1, 2022, before Bridget Lombardozzi,
6   Certified Shorthand Reporter, Certified Realtime
7   Reporter, Registered Merit Reporter, and Notary Public
8   of the States of New York and New Jersey, pursuant to
9   notice.
10
11
12
13
14
15
16
17
18
19
20
21
22

## Page 3

1   A P P E A R A N C E S:
2   *   *   *
3
4   ON BEHALF OF PLAINTIFFS:
5       Heather M. Schneider, Esquire
6       WILLKIE FARR & GALLAGHER LLP
7       787 Seventh Avenue
8       New York, New York  10019-6099
9       T 312 728 9000
10      F 312 728 9199
11      e-mail: hschneider@willkie.com
12
13  ON BEHALF OF DEFENDANTS:
14      Jonathan Tuminaro, Director
15      Matthew Zuziak, Director
16      STERNE KESSLER GOLDSTEIN & FOX
17      1100 New York Avenue, NW
18      Washington, DC 20005
19      T 202.371.2600
20      F 202.371.2540
21      e-mail: jtuminaro@sternekessler.com
22          mzuziak@sternekessler.com

## Page 4

1   A P P E A R A N C E S (Continued):
2
3   ON BEHALF OF DEFENDANTS:
4       Jason S. Leiker, Esquire
5       LEVY CRAIG LAW FIRM
6       4520 Main Street
7       Suite 1600
8       Kansas City, Missouri  64111
9       T 816 460 1835
10      F 816 382 6635
11      e-mail: jleiker@levycraig.com
12
13  ALSO PRESENT:
14      Adriana Morton, Law Clerk, Willkie Farr
15      Danny Ortega, Videographer
16
17
18
19
20
21
22

1  (Pages 1 to 4)

Page 13

1  right?
2      A.  Focused primarily on patent law, yes.
3      Q.  Okay.  And then I guess while you were
4  still at Longacre & White, did you open up a
5  patent research and translation firm?
6      A.  The patent research and translation firm
7  was the first thing that I did leaving Cushman
8  Darby & Cushman.  So I opened that and the law
9  firm at the same time.
10     Q.  Okay.  And that -- that patent research
11 and translation company, was it called Woolcott?
12 Woolcott & Company?
13     A.  Woolcott, yes.
14     Q.  Okay.  And that went on until 1999, is
15 that right?
16     A.  Yes.  And I sold it and then I bought it
17 back during that time.
18     Q.  Oh, during -- from '88, when you left
19 Cushman Darby & Cushman, to '99, you were involved
20 with Woolcott & Company?
21     A.  Yes.
22     Q.  You sold it at one point and then bought

Page 14

1  it back?
2      A.  Bought it back, correct.
3      Q.  Got it.  Just want to make sure I got
4  the timeline right.
5          All right.  Then I think in '99 until
6  the present, you've been involved with Practising
7  Law Institute, is that right?
8      A.  My involvement with them I think began a
9  little earlier, maybe '98, something like that,
10 and then they bought me.
11     Q.  And --
12     A.  Another company that I had started.
13     Q.  What was the other company that you
14 started?
15     A.  Longacre White Patent Education.
16     Q.  Okay.  So you've worked -- well, how
17 would you say it?  You were affiliated with, you
18 worked for, you worked with PLI?
19     A.  At various times I've been an employee
20 of PLI, but at this point I'm a contract
21 lecturer/teacher for them.
22     Q.  Okay.  And so you've worked with them,

Page 15

1  for them, for about -- since '98?  Is that what
2  you said?
3      A.  Yes.
4      Q.  So almost 23 years now?
5      A.  Yes.
6      Q.  And what are the various roles that
7  you've had at PLI during that time period?
8      A.  Well, from the beginning, I was chair of
9  the patent bar review program and I'm still the
10 chair of that program.  I also created a patent
11 prosecution course that was an online edition.  I
12 created a course that talked paralegals, really,
13 through every form at the patent office.  Patent
14 practice is full of forms.
15         I created a course called "Prior Art"
16 which, by now, has become Patent Eligibility and
17 Prior Art Obviousness and Sufficiency of
18 Disclosure.  I did that, I think, in 2003, and
19 that's still ongoing.
20         And I created the -- the annual Patent
21 Law Institute with two other co-chairs that covers
22 everything that's occurred in patent law in the

Page 16

1  last year in two days.
2      Q.  Wow.
3      A.  Yeah.  Whatever.
4      Q.  Okay.  And you've worked as an adjunct
5  professor at both the John Marshall Law School and
6  at the University of Virginia Law School?
7      A.  Yes.
8      Q.  Those courses -- you taught patent law
9  courses at both of those law schools?
10     A.  Yes.  University of Virginia it was more
11 patent prosecution.  John Marshall, it was more
12 the fundamentals of patents, regulatory, legal,
13 procedural.
14     Q.  Okay.  And then now, in 2020, it looks
15 like you're the managing director of the PCT
16 Learning Center?
17     A.  This is a company that I acquired just
18 as the pandemic was starting that was a live,
19 small venue instruction program that I've now
20 moved completely online in the time span of the
21 pandemic.
22     Q.  I guess, what do you -- what is the

4 (Pages 13 to 16)

Page 17

1   PCT -- what do you do at the PCT Learning Center?
2     A.   Initially it was conceived to teach
3   paralegals and patent practitioners more about PCT
4   procedure and it added, just as I acquired it, a
5   program on the Hague protocol for design
6   applications.
7     And I have since added a course in
8   addition on EPO, but I've also broadened it to
9   include fundamental courses, advanced courses, and
10   then -- and that would be for paralegals -- and
11   then essential courses for attorneys --
12     Q.   Just --
13     A.   -- in all these fields.
14     Q.   Just so the record is clear, what does
15   PC -- PCT stand for?
16     A.   Patent Cooperation Treaty and then
17   Learning Center.   PCT Learning Center.
18     Q.   So the Patent Cooperation Treaty is
19   really a treaty for how to file U.S. cases, inform
20   jurisdictions, and things of that nature?
21     A.   Yeah.   It's an international treaty.   It
22   was put together in about 1970.   And it runs

Page 18

1   through the World Intellectual Property
2   Organization, also called WIPO, in Geneva.   And
3   it's a mechanism to facilitate the filing of
4   applications around the world.   Patent
5   applications.
6     Q.   Okay.   And, now, I think this is very
7   recent.   In 2022 you became special counsel at
8   Harness IP law firm, is that right?
9     A.   Yes.   Yes.
10     Q.   What do you do there?
11     A.   Expert witnessing, as it turns out.
12     Q.   Okay.   So, correct me if I'm wrong, so
13   for the better -- almost 40 years now you've been
14   involved in some form of patent law?
15     A.   Yes.
16     Q.   Okay.   You're not an expert in the food
17   slicing industry, right?
18         MS. SCHNEIDER:   Objection.
19     A.   Right.   And I don't think you have to be
20   to address willfulness concerns in a patent case.
21     Q.   Okay.   You have no employment experience
22   in the food slicing industry?

Page 19

1         MS. SCHNEIDER:   Objection.
2     A.   In food processing I have worked for
3   many, many years representing clients.   And in my
4   estimation and understanding, this is food
5   processing.
6     Q.   Well, you have no formal training in the
7   food processing and packaging industry, is that
8   right?
9     A.   Well, I worked in it for two decades on
10   the patent end of things and, in fact, some of the
11   applications that I wrote for my various clients
12   were cited against various Weber applications that
13   are being discussed in this case.
14     So I'm in one -- or worked in one part
15   of a greater industry; you know, food processing.
16     Q.   Let's put it this way:   You never sold
17   equipment in the food packaging -- food processing
18   and packaging industry.
19     Is that true?
20     A.   I've never been a salesman for food
21   processing machinery, no.   I'm a lawyer.
22     Q.   And you're -- you're an expert in patent

Page 20

1   law, right?
2     A.   I would say yes.
3     Q.   Okay.   And your -- Provisur is paying
4   you for your testimony here at a rate of $650 an
5   hour, is that right?
6     A.   Correct.
7     Q.   Okay.   All right.   So if we can turn to
8   your report, paragraph 18.
9     A.   Okay.
10     Q.   So in paragraph 18, you're talking about
11   using robotics in a not-yet-applied way for
12   packaging.
13     A.   Right.
14     Q.   Is that fair?
15     A.   Yes.
16     Q.   You don't have any cites in this
17   paragraph.
18     A.   No.
19     Q.   You're not an expert in food processing
20   and packaging?
21     A.   Well, I've written probably around 20
22   applications in this area that have used robotics

Page 21

1   in food processing, including packaging, so...
2        Q.   When did you write those applications?
3        A.   Oh, probably beginning in around the
4   year 2000 and ending probably two or three years
5   ago.  So, yeah, from, let's say 2000/2001 through
6   2020.
7        Q.   So what's your basis for the statements
8   in paragraph 18 about using robotics in a
9   not-yet-applied way for packaging?
10       A.   Well, in the field robotics became
11  available because some patents on robots ran out
12  in the -- I guess the early to mid-2000s.  Robots
13  were very expensive and just -- just to give you
14  some background on why I said this -- and they've
15  been used in chip manufacturing, very high-end
16  stuff.  And they were simply too expensive to use
17  in other places in other ways.  And they began to
18  go off-patent in the 2000s.
19       And so my client -- and I expect many
20  others -- decided, hey, we can now get these,
21  program them ourselves, and use them where we
22  couldn't before.

Page 22

1        So that was just the basis of my
2   example.
3        Q.   Which client are you talking about?
4        A.   Drake.  Drake Manufacturing.
5        Q.   In paragraph 54 of your report, if you
6   could turn there.
7        A.   Yes.  Fifty-four?  Yes.
8        Q.   And in this paragraph you're talking
9   about -- correct me if I'm wrong -- how various
10  competitors might use, I guess, packaging
11  equipment.  Is that fair?  Or robotics in
12  packaging equipment?
13       A.   Robotics in packaging and generally in
14  my experience in the food processing industry,
15  yeah.
16       Q.   So, I guess, which competitors are you
17  talking about in paragraph 54?
18       A.   Well, in the case of clients that I gave
19  advice to, they had human-intensive production
20  lines.  Humans would be responsible for almost all
21  assurance of getting things in the right place at
22  the right time, rejecting defects, recycling

Page 23

1   product to the extent it could be recycled, and
2   stuff like that.
3        And it was determined that if -- if
4   robots could be applied to the tasks that were
5   undertaken by humans, number one, over time it
6   would be a lot less expensive; and, number two,
7   you know, there are no concerns about illness,
8   people not being there, or interruptions in -- in
9   production.  It was just a -- a much better
10  thing.
11       And so this was the philosophy that was
12  being employed by my clients.
13       Q.   So I guess that's -- that's my question
14  in particular.  Which clients, in particular, are
15  you talking about in paragraph 54?
16       A.   Well, this would be, for example, the
17  kind of thing that Drake Manufacturing, but I
18  expect every one of Drake's competitors were also
19  doing.
20       Q.   When you say you "expect," did you do
21  any sort of analysis to determine whether Drake's
22  competitors were actually doing those types of

Page 24

1   things that are mentioned in paragraph 54?
2        A.   Oh, yes.  We would do searches, as I
3   said, landscape and background.  And -- and it got
4   started in their particular area in Europe, but
5   then spread to the United States after that.
6        Q.   In your work on patent applications,
7   are -- you've become familiar with Weber?
8        A.   Aside from having Weber published
9   patents and applications cited, outside of that,
10  no.
11       Q.   Are -- are you aware that Weber is
12  recognized or a leader in slicing technology?
13       A.   I am now by virtue of having read the
14  materials in this case.
15       Q.   Are you aware that even Provisur's
16  engineers acknowledged that Weber is a recognized
17  world leader in slicing technology?
18       A.   I'm --
19            MS. SCHNEIDER:  Objection.
20       A.   I'm unaware of that, but if you tell me
21  that, I'm prepared to accept it.
22       Q.   So you have no basis to -- to dispute

6 (Pages 21 to 24)

Page 1

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
ST. JOSEPH DIVISION

_____

PROVISUR TECHNOLOGIES, INC.,     )
                                 )
        Plaintiffs,              )
                                 )  Civil Action No.
        v.                       )
                                 )  5:19-CV-06021
WEBER, INC., TEXTOR, INC., WEBER )  5:20-CV-06069
MASCHINENBAU GMBH BREIDENBACH,   )
WEBER MASCHINENBAU GMBH          )
NEUBRANDENBURG, and TEXTOR       )
MASCHINENBAU GMBH,               )
                                 )
        Defendants.              )
_____ )

VIDEOTAPED DEPOSITION OF
MARY-ROSE McGUIRE
New York, New York
Thursday, April 14, 2022
8:25 a.m.

Reported by:  BRIDGET LOMBARDOZZI, CSR, RMR, CRR

DIGITAL EVIDENCE GROUP
1730 M Street, NW, Suite 812
Washington, D.C. 20036
(202) 232-0646

Page 2

1       Videotaped Deposition of MARY-ROSE McGUIRE,
2   taken on behalf of Defendants, held at Willkie Farr &
3   Gallagher LLP, 787 Seventh Avenue, New York, New York,
4   commencing at 8:25 a.m. and ending at 1:20 p.m., on
5   Wednesday, April 14, 2022, before Bridget Lombardozzi,
6   Certified Shorthand Reporter, Certified Realtime
7   Reporter, Registered Merit Reporter, and Notary Public
8   of the States of New York and New Jersey, pursuant to
9   notice.
10
11
12
13
14
15
16
17
18
19
20
21
22

Page 3

1   A P P E A R A N C E S:
2
3   ON BEHALF OF PLAINTIFFS:
        Heather M. Schneider, Esquire
4       WILLKIE FARR & GALLAGHER LLP
        787 Seventh Avenue
5       New York, New York  10019-6099
        T 312 728 9000
6       F 312 728 9199
7       e-mail: hschneider@willkie.com
8
9   ON BEHALF OF DEFENDANTS:
        Jonathan Tuminaro, Director
10      Matthew Zuziak, Director
        STERNE KESSLER GOLDSTEIN & FOX
11      1100 New York Avenue, NW
        Washington, DC 20005
12      T 202.371.2600
        F 202.371.2540
13      e-mail: jtuminaro@sternekessler.com
14          mzuziak@sternekessler.com
15
16  ALSO PRESENT:
17      MATTHIAS SCHRADER, Provisur
18      MATTHIAS LEISTNER, Weber
19      SARAH MARMON, Law Clerk, Willkie Farr
20      DANNY ORTEGA, Videographer
21
22

Page 4

1           C O N T E N T S
2   EXAMINATION OF MARY-ROSE McGUIRE         PAGE
3       By Mr. TUMINARO........................6
4
5           E X H I B I T S
NUMBER          DESCRIPTION         PAGE
7   Exhibit 1   Expert Report of Professor     10
8       Mary-Rose McGuire 3-2-22
9       NO BATES, 36 pages
10  Exhibit 2   Expert Report and Disclosure   93
11      of John M. White 3-2-22
12      NO BATES
13  Exhibit 3   Plaintiff's First Amended      111
14      Consolidated Supplemental
15      Responses to Defendants'
16      Interrogatories (1-16)
17      NO BATES, 29 pages
18  Exhibit 4   Plaintiff's First Amended      111
19      Consolidated Supplemental
20      Responses to Defendants'
21      Interrogatories (1-14)
22      NO BATES, 24 pages

1 (Pages 1 to 4)

Appx9191

Page 45

1   right?
2        A.  No, it will not change damages number.
3        Q.  Okay.  You mentioned that in Germany,
4   intentional infringement could lead to some other
5   consequences.
6            Is that what I understood you to say?
7        A.  Correct.
8        Q.  What are those other consequences that
9   you're referring to?
10       A.  There are basically two other
11  consequences:  One is on information duties.  The
12  information duties may different -- may differ or
13  be broader if there's a manifest infringement.
14  That's one difference.  And the second difference
15  is that intentional infringement leads to criminal
16  sanctions or can lead to criminal sanctions.
17       Q.  Okay.  Let's take those in turn.  You
18  mentioned the -- the first thing that could happen
19  is information duties.
20           Can you explain what you mean?  I don't
21  understand that.
22       A.  In case of infringement, the -- the

Page 46

1   remedies are set out in paragraph 139 and
2   following of the German Patent Act and there is,
3   of course, a cease and desist order, there's
4   damages, but there's also a duty to inform about
5   all the acts committed and to whom you have sold
6   on the downstream market, on your profits, and all
7   sorts of information, which the claimant has to
8   gather in order to determine, first of all, the
9   amount of possible damages and, also, who else was
10  involved in infringement.
11           And the information duties are slightly
12  different or broader in case of a so-called
13  manifest infringement.
14       Q.  So the information duties, that's a
15  requirement that the defendant provide information
16  to the plaintiff in a German court?  Is that my --
17  is that correct?
18       A.  Yes.
19       Q.  Okay.  And that inform -- those
20  information duties may be greater if there's
21  so-called manifest infringement by the defendant?
22       A.  Correct.

Page 47

1        Q.  Okay.  Now let's turn to the criminal --
2   there could be criminal liability, you mentioned,
3   if there's intentional infringement?
4        A.  Yes.
5        Q.  Are you aware of a single German case
6   that has found criminal liability for patent
7   infringement?
8        A.  There -- I have come across citations of
9   some older cases.  I'm not aware of a current
10  case.  But I understand that the rule is
11  important -- is an important part of the system,
12  of the German system, how to deter infringement.
13       Q.  But the older cases, the last time a
14  German court found criminal liability for patent
15  infringement was way back in 1930?
16       A.  I understand that you're referring to
17  the published cases, possibly that's the last
18  published case, but that doesn't indicate that
19  there hasn't been any cases.  It's just there are
20  no published -- no cases published in the typical
21  German patent treatises and commentaries.
22           However, there are reports that criminal

Page 48

1   sanctions are used in order to gather -- criminal
2   proceedings are used to gather information on
3   patent infringement.  And that's why I believe
4   there have been current procedures.  Perhaps the
5   judgments have not been published.
6        Q.  But I am correct that the last published
7   case of criminal liability for patent infringement
8   in Germany was almost -- over 90 years ago, in
9   1930?
10       A.  I don't know.  I can't answer.  I don't
11  know if that's correct.
12       Q.  You don't know of a more recently
13  published case in Germany where criminal liability
14  was found for patent infringement?
15       A.  I don't know of any more recent case.
16  That's correct.
17       Q.  How would one get access to nonpublished
18  cases in Germany?
19       A.  There are statistics on the German
20  judiciary and they're set up by different areas,
21  different courts.  So I would understand that if
22  you're going to the report of the German

Page 49

1    Statistisches Bundesamt, you would find whether
2    their -- criminal proceedings have been conducted.
3        Q.  And just for the record, you had stated
4    something I believe in German, is that right?
5        A.  Yes.
6        Q.  It was the name of something in Germany.
7        A.  It's called Statistisches Bundesamt.
8        Q.  And -- and that is what?  Again, just
9    generally, what is it?
10       A.  It's a federal authority which provides
11   the statistics every year on all the German
12   authorities.  So and the number of courts, court
13   judgments, orders.  All sorts of statistical data.
14       Q.  Okay.  I'm just trying to make sure the
15   court reporter gets the -- this down.
16       So just so it's clear, the last
17   published case that you're aware of of criminal
18   liability for patent infringement is from the
19   1930s?
20       A.  As I mentioned, I'm not aware of a more
21   recent case, but I understand that, yes, it is
22   important rule of current law.  We have a

Page 50

1    comparable case or a comparable situation with
2    compulsory licenses.  We have very rare case law
3    in compulsory licenses, I think two or three,
4    since the 1950s.  But of course it is an important
5    rule and it frames how people act in the market
6    because they're aware that if they don't hand out
7    the license, they may be compelled it give one.
8        And it's the same with criminal
9    sanctions.  They're very rare, very few cases on
10   such criminal sanctions, but the fact that there
11   could be a criminal sanction is an important part
12   of the system of remedies under German patent law.
13       Q.  When you say -- well, strike that.
14       How can you say criminal liability is an
15   important deterrent if it hasn't been used for
16   over 90 years at least in a published opinion?
17       A.  I understand that a prudent businessman
18   would seek to avoid liability.  And when it comes
19   to intellectual property law, we all know that
20   there is -- there are a lot of intellectual
21   property rights and not every infringement will be
22   detected and which -- and proceeds before a court

Page 51

1    with some consequences following.
2        So there could be a situation where
3    someone says there are lot of IP rights and the
4    risk that I'm found of -- guilty of infringement
5    is low, so perhaps it would be efficient not to
6    take a license or just act and see whether someone
7    enforces his intellectual property right against
8    me.  Which could be -- from an economical
9    perspective, you could say, well, my risk of
10   damages is that amount and it's an economic
11   analysis.  It's efficient to breach.
12       This equation does not work when
13   criminal law comes into play.  Because I would
14   understand that no prudent businessman would --
15   would risk criminal sanctions against him
16   personally for infringement, for intentional
17   infringement.  And that's why I personally believe
18   that the fact that there are criminal sanctions is
19   an important deterrent from infringing.
20       Q.  Okay.  A few things I want to follow up
21   on there.
22       You said, first, there -- the criminal

Page 52

1    sanctions would be imposed on the executives of a
2    company, not the company itself.  Is that true?
3        A.  That's correct.
4        Q.  And you stated that it's your belief
5    that the criminal liability, the potential
6    criminal liability, for patent infringement is a
7    deterrent, is that right?
8        A.  Yes, I --
9        Q.  You -- oh.
10       A.  I stated this on the basis that I've
11   worked with German companies on how to conduct
12   freedom to operate analysis and how to comply with
13   IP infringement.  And from this discussion I'm
14   aware that the criminal sanctions are an important
15   motivator for the responsible people to ensure
16   that their IP departments comply with IP law.
17       Q.  But you haven't done any surveys of
18   German companies to figure out if they're
19   concerned about criminal liability for patent
20   infringement.  Is that true?
21       A.  No, that is incorrect because presently
22   I'm working on a board for the Bund Deutscher

Appx9203

Page 53

1  Industrie, which is the association of the German
2  industry.  And there's a reform debate going on
3  for a -- a further upcoming patent modernization.
4          And the question whether paragraph 142
5  of the Patent Act should be amended is one of the
6  issues.  And that's why I have participated in
7  discussions at the Bund Deutscher Industrie of
8  major German companies.  And that's why I
9  positively know that 142 is a major driver of
10  IP -- the part of IP compliance.
11          So to answer your question, I didn't do
12  the survey myself, but I'm aware that a survey has
13  been taken and it's a current issue.
14      Q.  You don't cite that survey in your
15  report?
16      A.  No.  I participated in this meeting last
17  Monday.  Monday a week ago.
18      Q.  Let's go back to paragraph 28 and the
19  standard of a prudent businessperson.
20          In the first sentence, you talk about a
21  specialized producer.
22          Do you see that?

Page 54

1      A.  Yes.
2      Q.  What do you mean by "specialized"?
3      A.  A specialized producer, I mean that
4  someone is working in specific area or field of
5  product for a specific industry, such as the food
6  industry or the communication technology or the
7  automotive industry.
8          So the opposite would be someone
9  producing a broad variety of different products
10  used in different fields by different customers.
11      Q.  Okay.  And then you list, in paragraph
12  28, generally four duties or four factors or
13  prongs.  How would you call it?  What are those
14  four enumerated things in paragraph 20?  How would
15  you characterize them?
16      A.  They're four requirements how to comply
17  with IP law.
18      Q.  Requirements.  Okay.  So the first
19  requirement is a general duty to monitor the IP
20  landscape.
21      A.  Yes.
22      Q.  Second is to conduct a freedom to

Page 55

1  operate analysis?
2      A.  Yes.
3      Q.  The third is to take appropriate
4  reaction, but only if your company is given a
5  warning, is that right?
6      A.  Yes.
7      Q.  So the third requirement is only
8  triggered if the company is put on notice of some
9  sort of an infringement?
10      A.  No, this is not correct.  This is just
11  summarizing the headings of the subsequent
12  margins.  And in the respective part -- sorry, I
13  have to look up the marginal number.  Number 33,
14  paragraph 33.  Sorry.
15          So -- so number three, reaction is
16  warned and this warning could be -- come through
17  different measures and it is set out in paragraph
18  33.  And it says, for instance, a warning letter
19  or if it receives notice, but it also could come
20  from a lawsuit or any type of knowledge you become
21  aware of --
22      Q.  Okay.

Page 56

1      A.  -- the factor infringing.
2      Q.  I just -- the -- the duties or the
3  requirements that you're laying out in that third
4  factor are only triggered after there's some sort
5  of warning, either a letter or a lawsuit.
6          MS. SCHNEIDER:  Objection.
7      Q.  Is that fair?
8          MS. SCHNEIDER:  Objection.
9          Mischaracterizes her testimony.
10      A.  No, this is not what I was stating.  I
11  said if you understand that you are infringing,
12  then you have to react.  And the typical -- the
13  typical situation when this appears as that you
14  are -- receive a warning letter from the IP
15  proprietor, but that's not the only situation.
16      Q.  So that confuses me.  Because let's read
17  your paragraph 33.  It says "In case a company
18  receives a warning letter or its attention is
19  otherwise pointed towards the fact that it may
20  commit a patent infringement, the company is
21  obliged to review the patent situation within four
22  weeks."

Page 57

1     Did I read that correctly?

2     A.  Yes, and you read "otherwise pointed."

3  And this "otherwise pointed" may cover all sorts

4  of different situations where the intention of the

5  infringer is brought to the fact that he's

6  infringing.  So it's not just a warning letter.

7  It is otherwise pointed towards the fact that he

8  may be infringing.

9     Q.  What do you have in mind with -- would

10  be these otherwise pointed towards the fact of

11  infringement?

12     A.  I do a patent search or state of the art

13  search and I find a patent which is close to what

14  I'm doing or I -- I'm aware that there's a product

15  on the market which looks almost the same.  So all

16  sorts of whatever alerts me that there's

17  potentially competing IP out there should point --

18  bring your attention to the issue that you have to

19  ensure your compliance with IP law.

20     It usually probably is a warning letter

21  or a lawsuit, but whatever alerts you to the fact,

22  brings your attention to the fact that there is

Page 58

1  potentially competing IP out there.

2     Q.  So the duty to suppress infringement,

3  though, is only triggered once you have this

4  knowledge of potential infringement either by a

5  warning letter or otherwise being made aware?

6     A.  No, I disagree.  Paragraph 139,

7  paragraph 1, is a substantive duty not to

8  infringe, full stop.  It -- of course it applies

9  automatically.  Whenever there's infrin --

10  whenever there's IP -- a valid IP right out there,

11  you're not allowed to use it.

12     But, of course, if you're not aware, you

13  will probably not comply with this duty.  So the

14  natural situation is someone tells you, look,

15  you're infringing.  And they say, oh, now I have a

16  reason to -- to ensure that I'm complying with

17  139, para 1.  But it's not triggered by the

18  warning.  It is a duty as such.

19     Q.  And you're aware in this case that there

20  was no warning letter from Provisur to Weber

21  before the patents were filed, the patent

22  infringement suit was filed, right?

Page 59

1     MS. SCHNEIDER:  Objection.

2     Mischaracterizes the record.

3     A.  I am not aware whether or not there was

4  a warning letter, but I am aware that lawsuits

5  have been filed.  And I'm also aware that

6  defendant has filed oppositions against the -- the

7  claimant's patents.

8     So -- also that claimant and defendant

9  are close competitors in a similar industry.  So I

10  understand that there was ample reason to envisage

11  that there could be a potential --

12     THE REPORTER:  I'm sorry.

13     MR. TUMINARO:  Envisaged.

14     A.  Envisaged that there could be patent

15  infringement.  And which -- which specific acts

16  then pointed their attention, I'm not aware of

17  these facts.

18     Q.  If there were a notice letter in this

19  case, would that be relevant to your opinion?

20     MS. SCHNEIDER:  Objection.

21     Incomplete hypothetical.

22     A.  If there had been a notice letter, I

Page 60

1  would say it's the last possible point of time

2  when they must have been aware of potential

3  infringement.

4     Q.  I guess that wasn't really my question.

5     My question was, if there had been a

6  notice letter, would that be relevant to your

7  opinion?

8     MS. SCHNEIDER:  Objection.

9     Asked and answered.

10     A.  I'm sorry, could you repeat the

11  question?

12     Q.  Would the fact or not -- would the fact

13  that -- that there was or was not a notice letter

14  in this specific case, that particular fact, would

15  that fact be important to your opinions that you

16  are offering in this -- these cases?

17     A.  No, I don't think so because I -- I

18  mentioned or I stated that as soon as they are

19  alerted to potential infringement, that is when

20  their specific duties come in.  And it doesn't

21  make a difference whether this act which pointed

22  them that there may be potential infringement is

Appx9205

1  their own search for a warning letter or a
2  lawsuit. It's only -- they're -- they're
3  interchangeable. It's just important that they
4  had good reason to make sure that they comply with
5  IP law.
6      Q.  So did you do any analysis to determine
7  whether there had been a warning letter or not in
8  these cases?
9      A.  I have not made an analysis on this
10 issue, no.
11     Q.  Did you do an analysis to determine
12 whether the defendants here, Weber, were, in fact,
13 aware of a -- a risk of a potential infringement
14 of the asserted patents in these cases?
15     A.  I was informed by counsel for claimant
16 that the defendant has filed opposition
17 proceedings and also that there were lawsuits
18 ongoing and that the claimant and the defendant
19 are close competitors working in the same market
20 and that some of the patents of defendant cite --
21 or that would -- let me rephrase this.
22     Within the application procedures for

1  patents of the defendant, some patents of claimant
2  have been cited.
3      And from this I take that, at different
4  points of time, defendant had knowledge of the
5  existence both of the claimant and his patents.
6      Q.  Okay. So what you are aware of is that
7  the defendants here, Weber, may have been aware of
8  the patents. But my question is a little bit
9  different.
10     Do you -- have any facts -- or have you
11 done any inquiry to determine whether the
12 defendants, Weber, were aware of a risk of patent
13 infringement?
14     A.  I would say that the answer is identical
15 because as soon as a company is aware that someone
16 has filed patents in an area in which he is
17 working and putting product in the market, he is
18 automatically aware that there is a risk of IP
19 infringement.
20     Q.  Well, how about this. You can't
21 infringe an invalid patent, right?
22         MS. SCHNEIDER: Objection.

1      A.  You cannot -- well, if the patent is
2  issued, it is valid and then you infringe it. If
3  it's invalidated and nullified, there's no patent.
4      Q.  And so you can't infringe an invalid
5  patent, right?
6          MS. SCHNEIDER: Objection.
7      Q.  If a patent is invalidated, you can't
8  infringe that invalidated patent?
9      A.  I hesitate to answer -- answer your
10 question because I'm not sure what you refer to
11 when you say "invalid." That it is potentially
12 invalid or is it -- has it been invalidated?
13     Q.  Well, if it is invalidated, you cannot
14 infringe that patent, right?
15     A.  That's correct.
16     Q.  And if there's a potential that it be
17 invalidated, you can't think that you're going to
18 infringe that patent, right?
19         MS. SCHNEIDER: Objection.
20     Vague; incomplete hypothetical.
21     A.  No, I disagree. As soon as a patent is
22 issued, it is valid under German law and you have

1  to respect it no matter whether you believe it
2  could be invalidated. As long as it has not been
3  invalidated, it is valid.
4      Q.  Well, let's -- let's try it this way:
5  Filing an opposition to a -- a German patent is a
6  mechanism to invalidate that patent, right?
7      A.  It's a mechanism which may lead to
8  future invalidation.
9      Q.  And so filing -- a party could file an
10 opposition to a German patent whether they
11 infringe or not, right?
12     A.  Yes.
13     Q.  So a party may choose to file an
14 opposition simply to invalidate a patent even if
15 they don't infringe that patent?
16     A.  Yes.
17     Q.  Are you aware of roughly how much a
18 German patent opposition costs?
19     A.  Roughly, yes.
20     Q.  About how much does it cost?
21     A.  A few thousand euros.
22     Q.  A few thousand euros.

Page 97

1    competitors' patents. That was your understanding
2    based on what you were told by counsel, right?
3        A. Yes.
4        Q. Mr. White says that Weber's patent
5    management group had the responsibility to monitor
6    patents. Didn't he say that in paragraph 73?
7            MS. SCHNEIDER: Objection.
8        Mischaracterizes the record.
9        A. This is what you present to me, but I
10    don't see any contradiction between someone having
11    the responsibility and potentially not doing it.
12    You've provided me with information, that's --
13    that's how I understand it, that this report tells
14    us that the patent management team had a specific
15    responsibility. So they should have done
16    something.
17            And I was informed that defendant had --
18    I would put it that way, had delayed knowledge of
19    the existence or said that it had delayed
20    knowledge of the existence of claimant's patents.
21        Q. Well, let's put -- Provisur's counsel
22    knew that the patent -- Weber's patent management

Page 98

1    group had a responsibility of monitoring its
2    competitors' patents, right?
3            MS. SCHNEIDER: Objection.
4        Mischaracterizes the evidence.
5        A. I don't -- I'm not aware of the
6    conversations between claimant and their other
7    expert on possible responsibilities. My only
8    discussion with counsel for claimant was when has
9    defendant become aware?
10        Q. Well, how about this: Provisur's other
11    expert, Mr. White, knew the fact, as stated in his
12    paragraph 73, that Weber's patent management group
13    had the responsibility of monitoring its
14    competitors' patents?
15        A. That's what the text before me says, but
16    I did not give an opinion on whether there was a
17    management team who had some sort of
18    responsibility.
19        Q. You were not given the fact that
20    Mr. White apparently knew that Weber has a patent
21    management group with the responsibility of
22    monitoring its competitors' patents, right?

Page 99

1            MS. SCHNEIDER: Objection.
2        Mischaracterizes the evidence.
3        A. You're asking me if I did not have the
4    knowledge and ask whether that's right. So I --
5    I'm not sure if the correct answer is yes or no.
6    My answer is I did -- I was not aware of this fact
7    that there was a management team which had the
8    responsibility to monitor it.
9        Q. Why do you think Provisur's counsel let
10    Mr. White know about the patent moni -- Weber's
11    patent management group, but they didn't let you
12    know about Weber's patent management group?
13            MS. SCHNEIDER: Objection.
14        Calls for speculation.
15        A. I was presented with a specific part of
16    the case, which is a huge case, but, of course, I
17    didn't want to endorse an entire case. So I was
18    asked a specific question on German law and I
19    would understand that claimant gave me all the
20    information which they understood is relevant for
21    my question.
22        Q. Well, if Weber -- well, let me put it

Page 100

1    this way: Monitoring is an important factor of
2    the standard of care under German law, right?
3        A. Yes.
4        Q. And whether Weber had a monitoring
5    program would be a relevant fact for your
6    analysis, would it not?
7        A. No, there's -- sorry. It would be
8    relevant information whether it had monitored the
9    market, but not whether there was some form of
10    responsibility for monitoring the market. They
11    are two different facts and I don't see why the
12    responsibility for monitoring the market would
13    impact my assessment of the German law.
14        Q. So you're making a distinction, you
15    think that a company that has a responsibility to
16    monitor the market is not, in fact, monitoring the
17    market? Is that what you're saying?
18            MS. SCHNEIDER: Objection.
19        Mischaracterizes her testimony.
20        A. No, I'm just stating that -- you just
21    presented to me the fact that Mr. White stated
22    that there was a group that was responsible for

25 (Pages 97 to 100)

Page 101

1    monitoring. This may or not -- may not be
2    relevant for the case in the U.S., I don't know,
3    but the issue that someone was responsible for
4    monitoring does not impact my assessment. Because
5    for the assessment of fault, the only relevant
6    fact is did they monitor and not should they have.
7         So I don't see why -- why this part of
8    information, which I did not have, would be
9    relevant for my report.
10        Q.   Well, now I'm really confused because
11   you mixed up "fault" and "should they have," which
12   is sort of a standard, right?
13        A.   No, no, no.
14        Q.   That's what I thought I heard you say.
15   So --
16             MS. SCHNEIDER:  Pause and let
17        him ask his question because I'm -- I
18        think I'm going to object.
19             Objection to form.
20             What is your question,
21        Counsel?
22        Q.   Does it make you think that Provisur's

Page 102

1    counsel was not entirely forthright with you about
2    all the relevant facts now that you see what
3    Mr. White put in his report about the
4    responsibility, at least, of monitoring
5    competitors' patents?
6         A.   No.
7         Q.   The following -- so -- and the last
8    sentence of your paragraph 60 is about this lack
9    of monitoring.  Fair?
10        A.   Yes.
11        Q.   You weren't made aware of Provisur -- of
12   Weber's patent management group that has a
13   responsibility of monitoring, right?
14        A.   I was not made aware of it, that's
15   correct.
16        Q.   Okay.  And with that lack of knowledge,
17   though, then you go on to conclude in paragraph 61
18   that assessed from the perspective of German
19   patent law, this lack of IP risk management and
20   respect for preexisting patents would clearly meet
21   the requirements of fault under Section 139,
22   paragraph 2 of the Patent Act.

Page 103

1         Do you see that?
2         A.   Yes, I do.
3         Q.   Now, the fault that you're talking about
4    there, is that simply negligence or is that
5    intentional infringement?
6         A.   I stated that it meets requirement of
7    fault and fault would both cover negligence and
8    intention.
9         Q.   Well, it could be either/or, right?  It
10   wouldn't be both.
11             MS. SCHNEIDER:  Objection.
12        A.   It could be either/or.
13        Q.   But it -- it's not necessarily both.
14   It's either negligence or intentional.  It can't
15   be both, right?
16        A.   Well, negligence is less than fault
17   as -- sorry, is less than intention.  So I've
18   never thought about this question.  I would
19   assume, yes, it is either intention or negligence.
20        Q.   And part of the reason maybe you haven't
21   thought of this question is because there is no
22   concept of tripling damages for intentional

Page 104

1    infringement in German law?
2             MS. SCHNEIDER:  Objection.
3         A.   No, I don't see any -- I -- I don't see
4    any connection between the issue of triple damages
5    and distinguishing negligence and intention
6    because negligence and intention are general
7    concepts in the German civil code fully
8    independent of the Patent Act -- the Patent Act.
9         Q.   Well, let's get back to the -- you said
10   intention is a lesser standard than -- I mean --
11   sorry.
12             You said negligence is a lesser standard
13   than intentional infringement, right?
14        A.   The requirements for negligence are
15   lesser than for intention, yes.
16        Q.   Okay.  So in -- in paragraph 61, when
17   you say this "assess from the perspective of
18   German patent law would meet the requirements of
19   fault," are you saying meet the requirements of
20   the lesser negligence or the higher intentional
21   infringement?
22        A.   I didn't specify.  Just stated that it

26  (Pages 101 to 104)

Appx9216

Page 105

1 meets the requirement of fault, which means it at
2 least meets the requirements of negligence.
3      Q. Now that you know the fact that their --
4 Weber had a patent management group with a
5 responsibility of monitoring its competitors'
6 patents, a fact that you didn't have when you
7 wrote your report, does that change your opinion
8 in paragraph 61 about whether it would meet the
9 requirements of fault?
10      A. No, it doesn't because whether -- I
11 don't see why -- just having the responsibility to
12 do something doesn't inform us whether they comply
13 with that responsibility. That's why I still,
14 even with this additional knowledge, don't know
15 whether they have met the standard.
16      Q. You -- you don't know one way or the
17 other because you didn't have the facts about what
18 the patent management group did, as testified, for
19 example, by Mr. Rother, who is cited by John White
20 in paragraph 73?
21          MS. SCHNEIDER: Objection.
22      Mischaracterizes the evidence.

Page 106

1      A. I didn't have the information, but I
2 don't see how it would impact my report.
3      Q. It wouldn't be relevant to you whether
4 Weber had a patent monitoring program and, in
5 fact, monitored its program? That wouldn't be
6 relevant even though that's one of the factors
7 that you talk about in your report?
8      A. I understand that my report is on the
9 standard of German law, whereas the determination
10 of the facts is left to the court. So I'm just
11 saying that they will find the facts and I'm just
12 informing the court on what the consequences would
13 be to a specific set of facts under German law.
14 And whether this is the fact or not is an issue
15 for the court to decide.
16      Q. But your opinion is not based on the
17 facts of this case because you don't know the
18 facts about Weber's patent management group.
19          MS. SCHNEIDER: Objection.
20      Misstates the record.
21      A. I would respectfully disagree. I was
22 informed by counsel for claimant about the facts

Page 107

1 which I was supposed to take as granted and on
2 this basis give my report on what the consequences
3 would be under German law.
4      Q. Okay. Let's try this. In paragraph
5 61 --
6      A. Mm-hmm.
7      Q. -- the second sentence, you say "I
8 believe this kind of lack of IP risk management
9 and respect" and you go on.
10      What is this lack of IP management that
11 you're talking about there in paragraph 61?
12      A. I understand that patents have issued in
13 Europe and the U.S. Claimant's patents have
14 issued. And that defendant has infringed them or
15 has -- has implemented this patent invention --
16 inventions and that they were not aware of these
17 patents immediately after they had issued.
18      Q. But you weren't even given the fact
19 about Weber's patent management group that
20 monitors its -- or at least has the responsibility
21 to monitor its competitors' patents, right? You
22 weren't given that fact?

Page 108

1      A. No, but I still don't understand how
2 this would impact my report. I have -- I was
3 given the information that the defendant has
4 patents. The patents were issued in the U.S. And
5 that defendant infringed them at some point of
6 time.
7      And my understanding is that if
8 defendant was a prudent businessman and had
9 monitored the market and had seen these patents,
10 infringement would not have occurred.
11      Q. Wait. You were told that Weber
12 infringed the actual patents? That was -- that's
13 what you were told?
14          MS. SCHNEIDER: Objection.
15      A. I understand that this is what the
16 lawsuits are about, whether they have infringed --
17 whether...
18      Q. And this -- you under -- you understand
19 that the case filed in 2019 was the first case
20 that Provisur accused Weber of patent infringement
21 in the U.S.?
22          MS. SCHNEIDER: Objection.

27 (Pages 105 to 108)

Appx9217

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
ST. JOSEPH DIVISION

PROVISUR TECHNOLOGIES, INC.,
*Plaintiff*,

v.

WEBER, INC., TEXTOR, INC.,WEBER
MASCHINENBAU GMBH BREIDENBACH,
WEBER MASCHINENBAU GMBH
NEUBRANDENBURG, and TEXTOR
MASCHINENBAU GMBH,
*Defendants*.

Civil Action No. 5:19-cv-06021
Honorable Judge Stephen R. Bough

## EXPERT REPORT OF RICHARD M. GOODIN, PE
## REGARDING DEFENDANTS' SOURCE CODE AND CAD DRAWINGS

*Contains Confidential Information*

DocuSign Envelope ID: 1F1D9F62-7F8E-4EB1-A18C-CC7DB58F893E

**C. Defendants' Accused Robotics Products have code to determine whether the robot should pick food product from a buffer.**

35.     Defendants' Accused Robotics Products have code to determine whether the robot should pick food product from a buffer. For example, the PDM code has instructions for causing the robot to pick product from a buffer plate. *See*, *e.g.*, WEBER-SRC-0003118-3120. For another example, the PD3 code file ▮▮▮▮▮▮▮▮▮▮ contains instructions for setting up positions on the buffer conveyor. *See*, *e.g.*, WEBER-SRC-0003134-3135. The PD3 file AC_Positionierung has code for controlling the buffer conveyor. *See*, *e.g.*, WEBER-SRC-0003136-3141.

**V.     ACCUSED LOADER PRODUCTS SOURCE CODE**

**A. Defendants' Accused Loader Products have code to adjust the operation of the belt shuttle and belt circulation in response to variables set by an operator.**

36.     Defendants' Accused Loader Products have code to adjust the operation of the belt shuttle and belt circulation in response to variables set by an operator. For example, the file ▮▮▮▮▮▮▮▮ contains code for controlling the belt and shuttle based on parameters. *See*, *e.g.*, WEBER-SRC-0002920-2950; Nichau Tr., 78-99. I understand the file ▮▮▮▮▮▮▮▮▮ contains similar code. *See*, *e.g.*, Nichau Tr., 78-99.

37.     The code processes parameters, including those entered by an operator. *See*, *e.g.*, *id*. at lines 1-153; *see also*, Nichau Tr., 95-95 (identifying structure ▮▮▮▮▮▮▮. The code controls the operations of both the belt circulation (for example, through the variable ▮▮▮▮▮▮▮▮▮) and the advancement and retraction of the shuttle (for example, through the variable "▮▮▮▮▮▮"). *See*, *e.g.*, *id*. at lines 252-271. The extended and retracted positions of the shuttle can be changed through the HMI interface. *See*, *e.g.*, Nichau Tr., 90-91.

DocuSign Envelope ID: 1F1D9F62-7F8E-4EB1-A18C-CC7DB58F893E

CONFIDENTIAL

**B. Defendants' Accused Loader Products have code to determine when new products are being received by the conveying surfaces.**

38.     Defendants' Accused Loader Products have code to determine when new products are being received by the conveying surfaces.  For example, the file ███████████ contains code for setting a timer and stopping the timer if no new products are being received.  *See*, *e.g.*, WEBER-SRC-0002920-2950 (for example, at lines 121-151.)

**C. Defendants' Accused Loader Products were modified in response to an allegation of infringement of European Patent No. 1581427.**

39.     Defendants' Accused Loader Products were modified in response to an allegation of infringement of European Patent No. 1581427.  For example, the file ████████████████ contains a variable ██████████████.  *See*, *e.g.*, WEBER-SRC-002920-2950; Defendants Response to Interrogatory 12; Nichau Tr., 106-117.  I understand the file ████████████████ contains the same variable.  *See*, *e.g.*, Defendants Response to Interrogatory 12; Nichau Tr., 106-117.  This change in code relates to a change in how the inlay (infeed) conveyor synchronizes with the packaging machine.  *See*, *e.g.* WEBER-SRC-002922, lines 110-113; Nichau Tr., 97-99 (code "give[s] release order for the packaging machine" when ██████████████ is true).  The Accused Loader Products could be easily configured to synchronize the inlay conveyor with the packaging machine in a different way, such as by not waiting for the xSlideFrontposReached variable to be true.

**VI.    ACCUSED SLICER GRADING PRODUCTS SOURCE CODE**

**A. Defendants' Accused Slicer Grading Products have code to analyze a digital image to determine whether certain pixels represent fat or meat.**

40.     Defendants' Accused Slicer Grading Products have code to analyze a digital image to determine whether certain pixels represent fat or meat.  For example, the file ███████████

DocuSign Envelope ID: 1F1D9F62-7F8E-4EB1-A18C-CC7DB58F893E

contains code for analyzing a digital image and determining if a pixel represents fat or meat. *See, e.g.*, WEBER-SRC-0003108-3112. The source code includes a routine to ▓▓▓▓ the image. *See, e.g.*, *id*. at line 1174. That routine results in the system writing an image with each pixels classified as value ▓▓▓▓▓▓ *See, e.g.*, *id*. at lines 1203-1225.

41. The images analyzed include a U8 image stored in memory. *See, e.g.*, *id*. at line 997 (variable "▓▓▓▓ In this format, each pixel position is represented by an 8-bit character. This is a digital image format. Comments in the code indicate that image is the ▓▓▓▓▓▓ ▓▓▓▓▓▓ *Id*. The source code further contains data structures that are arrays. *See, e.g.*, *id*. at lines 999-1000 (variables ▓▓▓▓▓▓ "▓▓▓▓▓▓ .

**B. Defendants' Accused Slicer Grading Products have code to determine, based on fat classification, whether a stack of slices is on-grade.**

42. Defendants' Accused Slicer Grading Products have code to determine, based on fat classification, whether a stack of slices is on-grade. For example, the file ▓▓▓▓▓▓ contains code for grading stacks based on the digital images. *See, e.g.*, WEBER-SRC-003113-3117. The code uses information, including the binarization information I discuss above, to grade a stack as either "OK" or not "OK."

**VII.  DEFENDANTS' CAD DRAWINGS**

43. I have confirmed that Defendants' Source Code / CAD Computer contained CAD drawings stored as 3D PDFs. I understand that Provisur has requested printouts of images of some of those CAD drawings. I understand that these images were captured on the Source Code / CAD Computer using software installed on that computer by Defendants' or Defendants' legal counsel. Those CAD drawings are true and correct representations of the CAD files on the Source Code / CAD Computer.

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
ST. JOSEPH DIVISION

| | |
|---|---|
| PROVISUR TECHNOLOGIES, INC.,<br>*Plaintiff*,<br><br>v.<br><br>WEBER, INC., TEXTOR, INC., WEBER<br>MASCHINENBAU GMBH BREIDENBACH,<br>WEBER MASCHINENBAU GMBH<br>NEUBRANDENBURG, and TEXTOR<br>MASCHINENBAU GMBH,<br><br>*Defendants*. | Civil Action No. 5:19-cv-6021 |

**REBUTTAL EXPERT REPORT OF DR. RICARDO VALERDI
REGARDING SOURCE CODE**

**HIGHLY CONFIDENTIAL – CONTAINS SOURCE CODE**

Valerdi, R., *The Constructive Systems Engineering Cost Model (COSYMO): Quantifying the Costs of Systems Engineering Effort in Complex Systems*, Saarbrücken, Germany, VDM Verlag, 2008.

## CURRICULUM BOOKS

Valerdi, R., *Science of Olympic Sports (5th-8th Grades)*, LA84 Foundation, Los Angeles, CA, 2019.

Valerdi, R., *Dodgers Science of Baseball (3rd-5th Grades)*, Los Angeles Dodgers Foundation, Los Angeles, CA, 2019.

Valerdi, R., *Royals Science of Baseball (3rd-5th Grades),* Kansas City Youth Academy, Kansas City, MO, 2019.

Valerdi, R., *Sounders Science of Soccer (5th-8th Grades),* RAVE Foundation, Seattle, WA, 2018.

Valerdi, R., *MLB Urban Youth Academy Science of Baseball (4th-7th Grades)*, Major League Baseball Youth Foundation, New York, NY, 2016.

Valerdi, R., *Washington Nationals Science of Baseball (High School Grades)*, Washington, D.C., 2015.

Valerdi, R., *Washington Nationals Science of Baseball (2nd-6th Grades)*, Washington, D.C., 2015.

Valerdi, R., *Galaxy Science of Soccer Curriculum (3rd-5th Grades)*, Los Angeles Galaxy, 2014.

Valerdi, R., *Angels Science of Baseball Curriculum (5th-8th Grades)*, Los Angeles Angels of Anaheim Foundation, 2014.

Valerdi, R., *Arizona Diamondbacks Science of Baseball Curriculum* (4th-8th Grades), Arizona Diamondbacks Foundation, 2013.

## REFEREED JOURNAL PUBLICATIONS

Kirshner, M., & Valerdi, R. (2021). "Integrating Model-Based Systems and Digital Engineering for Crewed Mars Mission Planning," *Journal of Aerospace Information Systems*, 1-9.

Hallam, C., Valerdi, R. and Contreras, C., "Strategic Lean Actions for Sustainable Competitive Advantage," *International Journal of Quality & Reliability Management*, 35(2), 481-509, 2018.

Valerdi, R., "Why Software is Like Baseball," *IEEE Software*, 34(5), 7-9, 2017.

Valerdi, R., "Balancing Expert Opinion and Historical Data: The Case of Baseball Umpires," *Journal of Cost Analysis and Parametrics,* 9(3), 161-163, 2016.

Valerdi, R., Dabkowski, M., and Dixit, I., "Reliability Improvement of Major Defense Acquisition Program Cost Estimates – Mapping DoDAF to COSYMO," *Systems Engineering*, 18(5), 530-547, 2015.

Valerdi, R., "Pioneers of Parametrics: Origins and Evolution of Software Cost Estimation," *Journal of Cost Analysis and Parametrics*, 8(2), 74-91, 2015.

Peña, M. and Valerdi, R., "Characterizing the Impact of Requirements Volatility on Systems Engineering Effort," *Systems Engineering,* 18(1), 59-70, 2015.

Lane, J., Galorath, D. and Valerdi, R., "On the Shoulders of Giants: A Tribute to Prof. Barry W. Boehm," *Journal of Cost Analysis and Parametrics*, 7(3), 149-159, 2014.

Jones, M., Webb, P., Summers, M., Baguley, P., Valerdi, R., "A Cost-benefit Framework for Assessing Advanced Manufacturing Technology Development: A Case Study," *Journal of Engineering Manufacture*, 2014.

Basole, R. C., Bellamy, M., Clear, T. Dabkowski, M., Monreal, J., Park, H., Valerdi, R., Van Aken, E., "Challenges and Opportunities for Enterprise Transformation Research," *Journal of Enterprise Transformation*, 3(4), 330-352, 2013.

Aguilar, J. R. and Valerdi, R., "Successful Adoption of Software Process Improvement Models: A Cultural-Methodological Proposal," *Journal of Software*, 8(9), 2367-2378, 2013.

Yang, Y., He, Z., Mao, K., Li, Q., Nguyen, V., Boehm, B., Valerdi, R., "Measuring and Handling Local Bias for Calibrating Parametric Estimation Models," *Information and Software Technology,* 55(8), 1496-1511, 2013.

Fortune, J. and Valerdi, R., "A Framework for Systems Engineering Reuse," *Systems Engineering,* 16(2), 304-312, 2013.

Dorey, S. P., Oehmen, J., and Valerdi, R., "Enhancing Cost Realism Through Risk-Driven Contracting: Designing Incentive Fees Based on Probabilistic Cost Estimates," *Acquisition Review Journal*, *19(2),* 133-158, 2012.

Wang, G., Valerdi, R., Roedler, G., Ankrum, A. and Gaffney, J., "Harmonizing Software Engineering and Systems Engineering Cost Estimation," *International Journal of Computer Integrated Manufacturing*, 25(4-5), 432-443, 2012.

Valerdi, R., "Heuristics for Systems Engineering Cost Estimation," *IEEE Systems Journal, 5(1),* 91-98, 2011.

Valerdi, R. and Nightingale, D. J., "An Introduction to the Journal of Enterprise Transformation," *Journal of Enterprise Transformation*, *1(1)*, 1-6, 2011.

Purchase, V., Parry, G., Valerdi, R., Nightingale, D. J. and Mills, J., "Enterprise Transformation: Why Are We Interested, What Is It, And What Are The Challenges?," *Journal of Enterprise Transformation*, *1(1)*, 14-33, 2011.

Abdimomunova, L. and Valerdi, R., "An Organizational Assessment Process for Enterprise Transformation," *Information, Knowledge and Systems Management, 9(3-4)*, 175-195, 2010.

Perkins, L. N., Abdimomunova, L., Valerdi, R., Shields, T. and Nightingale, D. J., "Insights from Enterprise Assessment: How to Analyze LESAT Results for Enterprise Transformation," *Information, Knowledge and Systems Management, 9(3-4)*, 153-174, 2010.

Valerdi, R. and Blackburn, C., "Leveraging Measurement Systems to Drive Enterprise Transformation: Two Case Studies from the U.S. Aerospace Industry," *Information, Knowledge and Systems Management, 9(2),* 77-97, 2010.

Wang, G., Valerdi, R. and Fortune, J., "Reuse in Systems Engineering," *IEEE Systems Journal, 4(3)*, 376-384, 2010.

Liu, K. K., Valerdi, R., Rhodes, D. H., Headen, A. and Kimm, L., "The F119 Engine: A Success Story of Human Systems Integration in Acquisition," *Acquisition Review Journal, 17(2)*, 284-301, 2010.

Valerdi, R., and Boehm, B., "COSYSMO: A Systems Engineering Cost Model," *Genie Logiciel*, March 2010.

Valerdi, R., Davidz, H., "Empirical Research in Systems Engineering: Challenges and Opportunities of a New Frontier," *Systems Engineering, 12(2)*, 169-181, 2009.

Rhodes, D., Valerdi, R. and Roedler, G., "Systems Engineering Leading Indicators: Assessing Effectiveness of Programmatic and Technical Performance," *Systems Engineering, 12(1)*, 21-35, 2009.

Valerdi, R., Nightingale, D. J. and Blackburn, C., "Enterprises as Systems: Context, Boundaries and Practical Implications," *Information, Knowledge and Systems Management, 7(4)*, 377-399, 2008.

Boehm, B. W. and Valerdi, R., "Achievements and Challenges in Software Resource Estimation," *IEEE Software, 25(5)*, 74-83, 2008.

Valerdi, R., Axelband, E., Baehren, T., Boehm, B., Dorenbos, D., Jackson, S., Madni, A., Nadler, J., Robitaille, P. and Settles, S., "A Research Agenda for Systems of Systems Architecting," *International Journal of System of Systems Engineering, 1(1/2)*, 171-188, 2008.

Boehm, B. W., Valerdi, R. and Honour, E., "The ROI of Systems Engineering: Some Quantitative Results for Software-Intensive Systems," *Systems Engineering, 11(3)*, 221-234, 2008.

Fong, A., Valerdi, R. and Srinivasan, J., "Boundary Objects as a Framework to Understand the Role of Systems Integrators," *Systems Research Forum, 2*, 11-18, 2007.

UNITED STATES PATENT AND TRADEMARK OFFICE

———————

BEFORE THE PATENT TRIAL AND APPEAL BOARD

———————

WEBER, INC.,
Petitioner,

v.

PROVISUR TECHNOLOGIES, INC.,
Patent Owner.

———————

IPR2019-01462
Patent 7,065,936 B2

———————

Before MITCHELL G. WEATHERLY, FRANCES L. IPPOLITO, and
JON M. JURGOVAN, *Administrative Patent Judges.*

JURGOVAN, *Administrative Patent Judge.*

JUDGMENT
Final Written Decision
Determining Some Challenged Claims Unpatentable
*35 U.S.C. § 318(a)*

## I. INTRODUCTION

### A. *Background and Summary*

On August 9, 2019, Petitioner, Weber, Inc., filed a Petition requesting *inter partes* review of claims 1–21 of U.S. Patent No. 7,065,936 B2 (Ex. 1001, the "'936 Patent"). Paper 2 ("Petition" or "Pet."). The Petition was accorded a filed date of August 9, 2019. Paper 5. Patent Owner, Provisur Technologies, Inc., filed a Preliminary Response to the Petition on December 6, 2019. Paper 6 ("Prelim. Resp.").

On February 25, 2020, applying the standard set forth in 35 U.S.C. § 314(a), which requires demonstration of a reasonable likelihood that Petitioner would prevail with respect to at least on challenged claim, we instituted an *inter partes* review of claims 1–21. Paper 9 ("Institution Dec."). In the Institution Decision, we determined that Petitioner demonstrated a reasonable likelihood that it would prevail on at least one of the challenged claims, so we instituted trial on all challenged claims and all grounds in the Petition. Institution Dec. 34–35.

On June 23, 2020, Patent Owner filed its Response to the Petition. Paper 16 ("PO Resp."). On September 23, 2020, Petitioner filed a Reply to Patent Owner's Response, and on October 13, 2020, Patent Owner filed a Sur-Reply. Paper 22 ("Reply"); Paper 26 ("Sur-Reply"). Also, Patent Owner filed an authorized listing of alleged new arguments and evidence in Petitioner's Reply, and Petitioner filed an authorized response to Petitioner's listing. Paper 30; Paper 32.

An oral hearing took place on November 17, 2020. The Hearing Transcript ("Tr.") is included in the record as Paper 33. After considering the parties' arguments and supporting evidence, we determine that Petitioner

Appx23692

has proved by a preponderance of the evidence that claims 1–4, 6–13, and 15–20 of the '936 Patent are unpatentable. 35 U.S.C. § 316(e) (2018). Petitioner has not proved claims 5, 14, and 21 unpatentable.

## B. Real Parties in Interest

Petitioner Weber, Inc. identifies the following real parties in interest:

> Textor, Inc.;
>
> Weber Maschinenbau GmbH Breidenbach;
>
> Weber Maschinenbau GmbH Neubrandenburg; and
>
> Textor Maschinenbau GmbH.

Pet. 82.

Patent Owner identifies Provisur Technologies, Inc. as the real party in interest. Paper 3, 2.

## C. Related Matters

Patent Owner asserted the '936 Patent against Petitioner in *Provisur Technologies, Inc. v. Weber, Inc. et al*, No. 5-19-cv-06021 (W.D. Mo.), filed February 22, 2019. Pet. 82.

The '936 Patent is the parent of U.S. Patent No. 7,533,513 B2, which is the subject of the same litigation and IPR2019-01461. *Id.*

Also involved in the same litigation are:

US Patent No. 6,320,141, the subject of IPR2019-01467;

U.S. Patent No. 6,669,005, the subject of IPR2019-01463;

U.S. Patent No. 6,997,089, the subject of IPR2019-01466;

U.S. Patent No. 8,322,537, the subject of IPR2019-01468; and

U.S. Patent No. 9,399,531, the subject of IPR2019-01464 and IPR2019-01465.

Paper 3, 2.

3

### D. The '936 Patent

The '936 Patent relates to packaging "drafts" of food product using specialized machinery. Ex. 1001, 1:5–7, 1:63–64. "Drafts" are sliced food product from a loaf, which may be arranged in piles, bunches or groups. *Id.* at 3:39–43. Figure 1 of the '936 Patent is shown below.

### *FIG. 1*



Figure 1, above, is a schematic elevational view of the '936 Patent's slicing and packaging line. *Id.* at 3:20–21. In Figure 1, slicing machine 20 cuts slices from loaf 21 and deposits the slices on output conveyor assembly 30, forming shingled or stacked drafts A. *Id.* at 3:39–42. Conveyor assembly 30 moves drafts A to staging conveyor 44 that rearranges a single file stream of drafts laterally into rows. *Id.* at 3:52–55. The rows of drafts move to ramp conveyor 48 which delivers them to shuttle conveyor 52. *Id.* at 3:59–64.

Conveyors 46, 48, 52 are arranged above packaging machine 60. *Id.* at 3:65–66. At fill station 61, shuttle conveyor 52 delivers rows of drafts into containers in the form of a group of rows of pockets 62 formed in lower web of film 63 by packaging machine 60. *Id.* at 3:67–4:4. Downstream of

4

fill station 61, in the direction D, pockets 62, filled with product, are sealed

by an upper web of film 65. *Id.* at 4:4–6.

Figure 2 of the '936 Patent is shown below.

*FIG. 2*



Figure 2, above, is an enlarged, schematic elevational view from Figure 1

showing a pocket filling apparatus of the '936 Patent in a first stage of

operation. *Id.* at 3:22–24. In Figure 2, shuttle conveyor 52 includes endless

belt 80 wrapped around drive roller 89 and rollers 90, 91, 92, 93 rotationally

mounted to side plates 95. *Id.* at 4:7–15. Controlled translation of

sideplates 95 controls extension or retraction of end region 100 of belt 80.

*Id.* at 4:19–22. Specifically, carriages 97 connect to sideplates 95 and are

driven by servomotor 112 to control extension or retraction of end

region 100 via carriages 97. *Id.* at 4:23–36. Servomotor 114 controls the

speed of conveying belt 80. *Id.* at 4:36–38. Controller 150 synchronizes

movement of the end region 100 of the conveyor 80 via servomotor 112, and

the speed of belt 80 via servomotor 114, with the movement of the web of

film 63 in which pockets 62 are formed at a pocket forming station. *Id.*

at 4:43–49.

5

Tamping apparatus 156 includes a row of tamping mechanisms 160 mounted with tamp plates 162 and rods 164 driven by pneumatic cylinders 166 to pack draft A more tightly into respective pockets 62. *Id.* at 4:50–5:1. Controller 150 connects to pneumatic cylinders 166 to control tamping mechanisms 160. *Id.* at 5:4–6.

In Figure 2, end region 100 is positioned to fill a first row of pockets 62a with drafts A in a first stage of operation. Figure 3 of the '936 Patent is shown below.

*FIG. 3*



Figure 3, above, is an enlarged, schematic elevational view of the pocket-filling apparatus of Figure 2 in a second stage of operation. *Id.* at 3:25–27. Figure 3 shows the end region 100 has been driven by servomotor 112 an incremental distance x where it is positioned to fill a second row of pockets 62b with drafts A. *Id.* at 5:13–19. Servomotor 112 drives carriages 97, side plates 95, and rollers 90, 91, 92, 93 supporting belt 80 so that end region 100 is positioned to deposit the next row of drafts A into the

6

second row of pockets 62b. *Id.* at 5:13–16. Tamping mechanisms 160 are also shifted to a position above the second row of pockets 62b to tamp drafts therein. *Id.* at 5:20–22. The process is then repeated for each subsequent row 62c, 62d. *Id.* at 5:22–23.

End region 100 is part of ramp conveyor region 180 of belt 80. *Id.* at 5:24–25. Ramp conveyor region 180 is steeply inclined to tighten drafts A entering pockets 62. *Id.* at 5:25–30.

Groups of rows of pockets are preferably filled while the web of film 63 is stationary at fill station 61, i.e., during the dwell period of the packaging operation. *Id.* at 5:31–33. After the group is filled and the dwell period is over, the web of film 63 is moved in direction D to reveal a new group of rows of packets for filling. *Id.* at 5:33–36. Alternatively, the row of pockets could be filled in the reverse order, with the row furthest upstream in direction D filled first, and successive rows filled in order in the downstream direction. *Id.* at 5:39–44.

*E. Challenged Claims*

Claims 1 and 10 are independent, claims 2–9 depend directly or indirectly from claim 1, and claims 11–21 depend from claim 10. Claim 1 is set forth below:

> 1. An apparatus for filling food product drafts into packages, comprising:
>
> a supply of open top container portions arranged in rows that are displaced along a longitudinal direction and having a first row and a longitudinally displaced second row and carried by an elongated web of film and movable by said web along said longitudinal direction into a fill station; and
>
> a shuttle conveyor having a conveying surface, said shuttle conveyor comprises a device to retract and to extend said conveying surface, said conveying surface arranged above said

7

fill station and having an end region longitudinally movable to a first position arranged to deposit food product drafts into said container portions of said first row by said conveying surface, and while said web remains stationary, said device retracts or extends said conveying surface to reposition said end region to a second position arranged to deposit food product drafts carried on said conveying surface into said container portions of said second row.

Ex. 1001, 5:56–6:8.

Claim 10 is set forth as follows:

10. An apparatus for filling food product drafts into pockets formed into an elongated web of film, said pockets having open tops and arranged in rows that are displaced along a longitudinal direction and having at least a first row and a longitudinally displaced second row and movable with said web along said longitudinal direction, comprising:

a fill station and a mechanism for moving said pockets longitudinally into said fill station; and

a shuttle conveyor having an endless belt conveying surface, said shuttle conveyor comprises a device to retract and to extend said conveying surface longitudinally, said conveying surface arranged above said fill station and having an end longitudinally movable to a first position arranged to deposit food product drafts into said pockets of said first row by said conveying surface, and while said web remains stationary, said device retracts or extends said conveying surface to longitudinally reposition said end to a second position arranged to deposit food product drafts carried on said conveying surface into said pockets of said second row.

*Id.* at 6:62–7:14.

Appx23698

## F. Evidence

Petitioner relies upon the following prior art references[1]:

| | | | |
|---|---|---|---|
| Honsberg | US 5,078,259 | Jan. 7, 1992 | Ex. 1005 |
| Hollymatic | EP 0 104 142 A2 | Mar. 28, 1984 | Ex. 1006 |
| Weber446 | WO 02/22446 A1 | March 21, 2002 | Ex. 1007 |
| Mello | US 5,054,266 | Oct. 8, 1991 | Ex. 1008 |
| Mahaffy535 | US 4,709,535 | Dec. 1, 1987 | Ex. 1009 |
| Scheflow | US 4,685,364 | Aug. 11, 1987 | Ex. 1010 |
| Sandberg | US 5,810,149 | Sept. 22, 1998 | Ex. 1011 |

Petitioner also supports its challenges with two declarations from Dr. Claire Koelsch Sand (Ex. 1003; Ex. 1021). Patent Owner supports its contentions with a declaration from Mr. John T. Palmer (Ex. 2014). During the trial, each declarant was cross-examined, and the record includes their deposition transcripts. *See* Ex. 1020, Ex. 2010; Ex. 2015.

---

[1] The claims at issue have an effective filing date prior to March 16, 2013, the effective date of the applicable provisions of the Leahy-Smith America Invents Act, Pub. L. No. 112-29, 125 Stat. 284 (2011) ("AIA"). Therefore, we apply the pre-AIA versions of 35 U.S.C. §§ 102 and 103 in this Decision, though the result would not be different if we applied the AIA versions of these sections. Petitioner alleges that all of the prior art references with the exception of Weber446 issued or published more than one year before the '936 Patent's earliest alleged priority date of December 18, 2002. Pet. 15–16. Petitioner thus contends that these prior art references are prior art under pre-AIA 35 U.S.C. § 102(b). *Id.* Petitioner alleges Weber446 issued on March 21, 2002, and is prior art under pre-AIA 35 U.S.C. § 102(a). Patent Owner does not refute these assertions at this time. We treat these references as prior art for purposes of this decision.

Appx23699

### G. Prior Art and Asserted Grounds

Petitioner asserts the following grounds of unpatentability:

| Challenged Claim(s) | 35 U.S.C. § | References/Basis |
|---|---|---|
| 1, 4–6, 10, 13, 14 | 103 | Honsberg, Hollymatic |
| 7–9, 15–17 | 103 | Honsberg, Hollymatic, Mello |
| 2, 11, 18 | 103 | Honsberg, Hollymatic, Mahaffy535 |
| 3, 12, 19–21 | 103 | Honsberg, Hollymatic, Mahaffy535, Scheflow, Sandberg |
| 1, 4–6, 10, 13, 14 | 103 | Weber446, Hollymatic |

## II. ANALYSIS

### A. Legal Standards

Petitioner bears the ultimate burden of persuasion to show unpatentability of the challenged claims by a preponderance of the evidence. 35 U.S.C. § 316(e); 37 C.F.R. § 42.1(d) (2019). This burden never shifts to Patent Owner. *Dynamic Drinkware, LLC v. National Graphics, Inc.*, 800 F.3d 1375, 1378–79 (Fed. Cir. 2015). In contrast to the burden of persuasion, the burden of production on other issues, such as proving that a patent or publication renders a claim obvious, may shift between Petitioner and Patent Owner as each side presents evidence. *Id.*; *In re Magnum Oil Tools Int'l, Ltd.,* 829 F.3d 1364, 1376 (Fed. Cir. 2016).

A patent claim is unpatentable under 35 U.S.C. § 103 if the differences between the claimed subject matter and the prior art are such that the subject matter, as a whole, would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains. *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 406

(2007). The question of obviousness is resolved on the basis of underlying factual determinations including: (1) the scope and content of the prior art; (2) any differences between the claimed subject matter and the prior art; (3) the level of ordinary skill in the art; and (4) where present, objective evidence of nonobviousness.[2] *Graham v. John Deere Co.*, 383 U.S. 1, 17–18 (1966).

B. *Level of Ordinary Skill in the Art*

"The person of ordinary skill in the art is a hypothetical person who is presumed to know the relevant prior art." *In re GPAC*, 57 F.3d 1573, 1579 (Fed. Cir. 1995). Factors that may be considered in determining the level of ordinary skill in the art may include: (A) "type of problems encountered in the art;" (B) "prior art solutions to those problems;" (C) "rapidity with which innovations are made;" (D) "sophistication of the technology; and" (E) "educational level of active workers in the field." "In a given case, every factor may not be present, and one or more factors may predominate." *Custom Accessories, Inc. v. Jeffrey-Allan Indus., Inc.*, 807 F.2d 955, 962 (Fed. Cir. 1986); *Environmental Designs, Ltd. v. Union Oil Co.*, 713 F.2d 693, 696 (Fed. Cir. 1983). Prior art references may provide evidence of the level of ordinary skill in the art. *Okajima v. Bourdeau*, 261 F.3d 1350, 1355 (Fed. Cir. 2001).

Petitioner contends a person of ordinary skill in the art in the technical field of the '936 Patent at the relevant time would have had (1) a bachelor's degree (or equivalent) in mechanical engineering (or a similar field) and at

_____

[2] Patent Owner does not present any objective evidence of nonobviousness in this case. *See* PO Resp. 64–65 (Patent Owner seeking to reserve the right to present objective evidence of nonobviousness).

least two years of experience working on food processing and/or packaging systems (or in a similar field); or at least seven years of experience working on food processing and/or packaging systems (or in a similar field). Pet. 14–15; Ex. 1003 ¶ 28. Petitioner further contends a person of ordinary skill in the art in the technical field of the '936 Patent would have had knowledge of the technical literature concerning food processing and packaging systems, before December 18, 2002, which is the priority date of the '936 Patent. Pet. 15; Ex. 1003 ¶ 30. Petitioner contends a person of ordinary skill in the art may have worked as part of a multidisciplinary team and drawn upon not only his or her own skills, but of others on the team, e.g., to solve a given problem. *Id.* Patent Owner does not dispute Petitioner's definition of the level of ordinary skill in the art. *See generally* PO Resp.

Petitioner's undisputed definition of the level of ordinary skill in the art is consistent with our understanding on the evidence before us. The prior art addressed the same or similar problem as the '936 Patent, specifically, the filling of packages with food product during the dwell period when the machinery is stationary while a new group of packages is being formed. Ex. 1001, 1:18–39; Ex. 1005, 2:10–18; Ex. 1006, 8–9, Fig. 4; Ex. 1007, 1–2; Ex. 1003 ¶¶ 7, 11, 55–56, 112–115, 258–260. Other problems recognized in the art include food insertion accuracy, non-disturbance of shingled or stacked food product during deposition in containers, and efficiency in filling containers with food product. Ex. 1001, 1:40–45; Ex. 1005, 2:5–9; Ex. 1006, 1–3; Ex. 1007, 1–2. The prior art also taught solutions to these problems, and the technology needed to carry out those solutions. Ex. 1005, 2:10–18; Ex. 1006, 8–9, Fig. 4; Ex. 1007, 1–2. Petitioner's statement of the

educational level and experience of a person of ordinary skill in the art is consistent with that needed to implement the solutions set out in the '936 Patent and in the prior art. Accordingly, we apply this level of ordinary skill in the art in this Decision.

## C. Claim Construction

We use the same claim construction standard that would be used to construe a claim in a civil action under 35 U.S.C. § 282(b). 37 C.F.R. § 42.100(b) (2019). This includes construing the claim in accordance with the ordinary and customary meaning of such claims understood by one of ordinary skill in the art and the prosecution history pertaining to the patent. *Id.* This is the same claim construction standard articulated in *Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005) (en banc) and its progeny.

Only claim terms in controversy need to be construed, and only to the extent necessary to resolve the controversy. *See Vivid Techs., Inc. v. Am. Sci. & Eng'g, Inc.*, 200 F.3d 795, 803 (Fed. Cir. 1999).

### 1. "drafts"

Petitioner asserts the claim terms should be construed according to their ordinary and customary meanings as understood by a person of ordinary skill in the art in view of the specification. Pet. 15 (citing *Phillips*, 415 F.3d at 1312–13). Petitioner contends no term needs an explicit construction to resolve the controversy between the parties. *Id.* (citing *Vivid Techs.*, 200 F.3d at 803 (Fed. Cir. 1999)). Petitioner further contends "[a person of ordinary skill in the art] would have understood that 'sliced foods' are called drafts." Pet. 18 (citing Ex. 1003 ¶ 82).

Patent Owner contends that "food product drafts" recited in the claims is a term of art that means "piles, bunches or groups of thin sliced product."

Appx23703

PO Resp. 4 (citing Ex. 1001, 3:42–43); *see also* Ex. 1001, 1:48–52, 2:14–15, 2:20–23, 3:39–43. Patent Owner does not contend, however, that its proposed construction of "drafts" would have any effect on whether the prior art discloses the relevant limitations of the claims. Accordingly, we decline to construe "drafts" as Patent Owner proposes, but instead apply the ordinary and customary meaning of "drafts" as "sliced foods" or "sliced food product." Ex. 1003 ¶ 82.

> 2. *"said conveying surface . . . having an end region longitudinally movable to a first position arranged to deposit food product drafts into said container portions of said first row by said conveying surface" and "said device retracts or extends said conveying surface to reposition said end region to a second position arranged to deposit food product drafts carried on said conveying surface into said container portions of said second row"*

Petitioner asserts that we should apply the ordinary and customary meanings, as understood by a person of ordinary skill in the art in view of the specification, to the limitations identified above. Pet. 15 (citing *Phillips*, 415 F.3d at 1312–13). Patent Owner interprets these claim limitations as requiring a conveyor end region to deposit multiple drafts at a time in a first row of containers from a first position and in a second row of containers from a second position. PO Resp. 22–27; Sur-Reply 1–2. Patent Owner refers to these limitations as the "multi-fill" or "multi-draft, multi-row deposit" limitations. PO Resp. 1–3, 8. Petitioner does not dispute Patent Owner's interpretation of these claim limitations as requiring "multi-fill" deposition. Reply 2–3 (citing Ex. 1021 ¶ 5).

As evidence to support its interpretation, Patent Owner notes that the '936 Patent states "the shuttle conveyor is used to *fill the first row* of pockets with *drafts* and then retracted to *fill the second row* of pockets with *drafts*,

14

and then retracted to fill each subsequent row of pockets with *drafts* until all of the rows of the group are filled." PO Resp. 25 (citing Ex. 1001, 2:51–55 (emphasis added by Patent Owner); 5:31–47). Similar language appears elsewhere in the '936 Patent. Ex. 1001, code (57), 2:1–8, 5:13–19.

We agree with Patent Owner that this claim language encompasses "multi-fill" depositing of a row of drafts at a time. But the claim language is broader and also covers "piece-by-piece" or "one by one" deposition, for example, when drafts have a staggered arrangement on the conveyor belt, and drafts are deposited one by one in the package pockets of each row. We find no language in the '936 Patent, its claims, or its file history, that restricts the claims to "multi-fill" deposition as Patent Owner uses the term. More particularly, the claims do not recite any particular timing or order for how the drafts are deposited: the claims merely require depositing a row of drafts in package pockets at each of the first and second positions.

Patent Owner further contends that the '936 Patent touts that multi-draft deposit, with a 4x4 array of drafts being deposited into four rows, increases production speed by 400%. PO Resp. 25 (citing Ex. 1001, 3:4–11; Ex. 2014 ¶ 38). The cited part of the '936 Patent speaks to an "exemplary embodiment." Ex. 1001, 3:4. Generally, features or advantages of embodiments are not read into the claims. *Hill-Rom Services, Inc. v. Stryker Corp.*, 755 F.3d 1367, 1371 (Fed. Cir. 2014); *Brookhill-Wilk 1, LLC v. Intuitive Surgical, Inc.*, 334 F.3d 1294, 1301 (Fed. Cir. 2003) (citing *Vehicular Techs. Corp. v. Titan Wheel Int'l, Inc.*, 141 F.3d 1084, 1096 (Fed. Cir. 1998)). Also, the cited part of the '936 Patent does not mention increasing production. It does, however, convey that the dwell time may be quite short, lasting a few to several seconds, from which one might surmise

that "multi-fill" deposition may be advantageous in saving time in depositing drafts during the dwell period. But this falls far short of expressing a "manifest exclusion or restriction, representing a clear disavowal of claim scope." *See Continental Circuits LLC v. Intel Corp.*, 915 F.3d 788, 797 (Fed. Cir. 2019) (citing *Retractable Techs., Inc. v. Becton, Dickinson & Co.*, 653 F.3d 1296, 1306 (Fed. Cir. 2011) (quoting *Epistar Corp. v. Int'l Trade Comm'n*, 566 F.3d 1321, 1335 (Fed. Cir. 2009)). We decline to restrict the claim only to "multi-fill" deposition.

Patent Owner also contends that the prosecution history emphasized that "[t]he filling of multiple rows during the dwell period is an important advantage of the invention," leading to allowance of the claims. PO Resp. 25 (citing Ex. 1002, 153, 195). The Examiner's reasons for allowance did state that "the shuttle conveyor deposits the food product into the container while the container is stationary and where the container remains stationary while the shuttle conveyor is retracted to deposit food product into the second row of the container" (Ex. 1002, 41). But the Examiner's reasons for allowance do not mention "multi-fill" depositing of drafts at the same time into each row.

During prosecution, the Examiner rejected claim 1 as anticipated under 35 U.S.C. § 102 by Scott (US 3,080,033, issued March 6, 1963). Ex. 1002, 161. Patent Owner successfully argued that Scott did not disclose a shuttle conveyor having a retractable and extendable conveying surface. *Id.* at 152. The Examiner further rejected the claims as obvious over the combination of Mahaffy535 and Anderson (US 3,354,613, issued November 28, 1967), and this same combination with Divan (US 3,846,958, issued November 12, 1974). *Id.* at 162–164. Patent Owner successfully

argued that the Mahaffy535-Anderson combination used a "relatively stationary fill mechanism that fills indexing containers" and that the Mahaffy535-Anderson-Divan combination also did not disclose the "stationary web and moving conveyor to load rows of containers" as recited in the claims. *Id.* at 153–154. Earlier in prosecution, the Examiner made a rejection on the combination of Hoyland (US 5,692,362, issued December 2, 1997) and Anderson, and a further combination of these references with Divan. *Id.* at 229–231. Patent Owner argued that Hoyland and Anderson "fail to describe a conveyor which is movable with respect to plural rows of container portions." *Id.* at 194. The Examiner found Patent Owner's arguments moot in view of the rejections previously discussed. *Id.* at 164–165.

To summarize, Petitioner and Patent Owner agree on an interpretation of the claims that is narrower than the ordinary and customary meaning of the claims would allow. We agree with the parties that the claim language encompasses "multi-fill" deposition of drafts at the same time in each row of containers. But it also encompasses "piece-by-piece" deposition of drafts. There is simply no language in the claims requiring deposition of drafts at the same time or in a certain order into the rows of containers at the first and second positions. Nor does the Specification of the '936 Patent or its file history require this feature. *See generally* Ex. 1001; Ex. 1002. Accordingly, we proceed in our analysis by applying the ordinary and customary meaning of the "first row" and "second row" limitations, which encompasses both "multi-fill" deposition and "piece-by-piece" deposition.

### D. Ground 1: *Asserted Obviousness of Claims 1, 4–6, 10, 13, and 14 based on Honsberg and Hollymatic*

Petitioner contends claims 1, 4–6, 10, 13, and 14 are obvious under 35 U.S.C. § 103 based on the combination of Honsberg and Hollymatic. Pet. 17–48.

### 1. Honsberg (Ex. 1005)

Honsberg discloses an apparatus for inserting sliced foods into a packing machine. Ex. 1005, 3:52–53. The apparatus is shown below in Honsberg's Figure 1.



*FIG 1*

Figure 1 is a side view of Honsberg's apparatus. *Id.* Honsberg's apparatus includes slide 3 mounted in machine frame 4. *Id.* at 3:64–67. Conveyor belt 5 loops around slide 3 and guides on rollers. *Id.* at 3:67–4:3. Supply means 6 comprising conveyor belt 7 delivers sliced food 30 to a food delivery point where it is provided onto the top of conveyor belt 5 driven by drive roller 16. *Id.* at 4:3–9.

Honsberg's apparatus has a front edge provided by knife edge shoulder 2, around which conveyor belt 5 loops. *Id*. at 4:10–12. The apparatus further includes dipping beak-like member 8, which is part of

slide 3. *Id.* at 4:12–14. Driving gear wheel 28 and toothed belt 29 drive slide 3 in machine frame 4 in the directions of arrows 25, 26. *Id.* at 4:53–56.

From the food delivery point, conveyor belt 5 transports sliced food 30 to food depositing point 56 on top of knife edge shoulder 2. *Id.* at 4:60–68. The drive for conveyor belt 5 is then switched off. *Id.* at 4:68–5:2. The drive for driving gear wheel 28 is switched on whereby slide 3 moves rearwardly away from food depositing point 56, causing the "ground [to be] taken from under the feet" of the food 30, which thereby drops into receptacle 31 in deep drawn sheet 32 therebeneath. *Id.* at 5:3–11. Food insertion occurs when the machine is stationary during a forming cycle of dish-like receptacles. *Id.* at 2:10–18, 2:34–35, 3:28–33, 7:1–4.

### 2. Hollymatic (Ex. 1006)

Hollymatic discloses a device, as shown below in Figure 1, for placing objects into containers such as trays or cartons. Ex. 1006, 10, Fig. 1.



Hollymatic's Figure 1, shown above, is a schematic diagram of its device. Ex. 1006, 3. In Figure 1, conveyor belt 30 is guided by rollers 11–12 and 31–35. *Id.* at 3–4. Roller 11 fastens on horizontally displaceable guided sled 10. *Id.* at 4. Arm 13 of sled 10 connects to transport chain 23, which

19

guides on rollers 21 and 22. *Id.* Roller 21 connects via drive belt 24 to belt
pulley 25 of drive motor 20. *Id.* Drive motor 20 shifts sled 10 in a direction
opposite to the travel direction of conveyor belt 30 with greater speed than
upper strand 30a of conveyor belt 30, causing objects on it to fall vertically
downwards as a result of inertia. *Id.* at 5.

A second embodiment of the device is shown below in Figure 4.



Figure 4 above is a perspective view of the second embodiment of
Hollymatic's device. Ex. 1006, 3. In Figure 4, conveyor belt 74 delivers
objects such as hamburger patties to sled 73. *Id.* at 8–9. Sensor 71 detects
objects, and sled 73 is driven to pull back and move forward periodically so
that three objects are dropped along axis 36 on upper strand 30a of conveyor

Appx23710

belt 30. *Id.* at 8. Sensor 71 detects further objects and sled 73 is similarly driven to pull back and move forward periodically to drop three objects along axis 37 on upper strand 30a of conveyor belt 30. *Id.* Objects travel on conveyor belt 30 to sensors 61, 62, 63 where sled 10 is successively driven backward from a start position to drop objects into a first row of three successive trays of double-row group 42a traveling on conveyor belt 40. *Id.* at 9. Sled 10 returns to the start position and is successively driven backward to drop three more objects into a second row of the double-row group tray 42a. *Id.* at 5–7, 9. These actions can be repeated for tray groups 42b, 42c. *Id.* at 8.

Hollymatic's Figure 5 is shown below.



Figure 5 shows six phases A–F of the operation of Hollymatic's apparatus to deposit food objects in containers. *Id.* at 3, 9. In Hollymatic's Figure 5, sled 10 is fully extended at phase C, which, as will be seen, Petitioner views as the claimed "first position." Sled 10 then withdraws at phase D to drop food object 1 into a container. *Id.* at 8–9. Petitioner regards the sled position at phase D as the "second position." Sled 10 withdraws again at phase E to drop food object 2 into the next container of the first row. *Id.* Sled 10 withdraws yet again at phase F to drop food object 3 into the last

22

container of the first row. *Id.* Sled 10 is moved again to the position shown at phase C and phases C–F are repeated to drop food objects 4–6 into containers of the second row. *Id.*

### 3. *Claim 1*

Generally, Petitioner contends that Honsberg teaches a withdrawing conveyor that deposits articles into rows of container portions. Ex. 1003 ¶ 6. Petitioner contends that Hollymatic teaches a withdrawing conveyor that includes two withdraws to deposit articles into adjacent rows of containers. *Id.* According to Petitioner, a person of ordinary skill in the art would have been motivated to incorporate a second withdraw, like that taught by Hollymatic, into Honsberg to fill more stationary containers during a dwell time when containers are formed. *Id.* ¶ 7. This, according to Petitioner, would reduce downtime when containers are not being formed or filled, and also would allow more throughput and higher efficiency. *Id.* ¶ 115. Petitioner further contends a person of ordinary skill in the art would have had a reasonable expectation of success in making the combination. *Id.* ¶ 7.

Petitioner contends that both Honsberg and Hollymatic disclose claim 1's preamble (Pet. 17–19), the "container supply" limitation (*id.* at 19–22), the "movable web" limitation (*id.* at 22–24), the "shuttle conveyor" limitation (*id.* at 25–26), and the "first row" limitation (*id.* at 26–28). Petitioner also relies on both Honsberg and Hollymatic to disclose the "while said web remains stationary" part of the "second row" limitation (*id.* at 28–29). Petitioner relies on Hollymatic to teach the remainder of the "second row" limitation (*id.* at 29–31). Petitioner's reading of claim 1 on the Honsberg-Hollymatic combination is examined in further detail below.

> a) *Petitioner's Reading of Claim 1 on the Honsberg-Hollymatic Combination*

The preamble of claim 1 recites as follows:

*An apparatus for filling food product drafts into packages, comprising:[3]*

Ex. 1001, 5:56–57.

Petitioner contends to the extent the preamble is viewed as limiting, Honsberg teaches the preamble. Pet. 17; Ex. 1003 ¶ 81. Petitioner asserts the claimed "food product drafts" correspond to Honsberg's "slices of continental sausage, cheese and the like" or "sliced foods." Pet. 18; Ex. 1005, 1:21–22, 3:64–65; Ex. 1003 ¶ 82. Petitioner contends the claimed "packages" correspond to Honsberg's "dish-like receptacles." Pet. 18; Ex. 1005, 1:6–9; Ex. 1003 ¶ 82. Petitioner contends Honsberg discloses an apparatus for filling food product drafts into packages. Pet. 18; Ex. 1003 ¶ 82; Ex. 1005, Fig. 1.

Petitioner also contends Hollymatic discloses a device for placing objects, such as hamburger patties, into trays or cartons of packaging, and concludes that the combination of Honsberg and Hollymatic discloses the claim preamble. Pet. 18–19; Ex. 1006, 5, 10; Ex. 1003 ¶ 82.

Other than the "drafts" construction issue discussed in Section II.C.1, Patent Owner does not dispute this reading of claim 1's preamble on the Honsberg-Hollymatic combination. *See generally* PO Resp.

---

[3] We find it unnecessary to decide whether the preamble is limiting because Petitioner has shown it is taught by the prior art and Patent Owner does not dispute this evidence.

Claim 1 further recites the "container supply" limitation as follows:

*a supply of open top container portions arranged in rows that are displaced along a longitudinal direction and having a first row and a longitudinally displaced second row and*

Ex. 1001, 5:58–61.

Petitioner alleges Honsberg and Hollymatic disclose this "container supply" limitation. Pet. 19; Ex. 1003 ¶¶ 84, 244. Specifically, Petitioner contends Honsberg teaches a supply of open top containers formed in sheet 32 in rows and columns, as shown in Honsberg's Figures 1 and 3. Pet. 19; Ex. 1005, Figs. 1, 3; Ex. 1003 ¶ 85. Petitioner contends Honsberg's first and second rows of container portions or receptacles are displaced in a longitudinal direction. Pet. 20; Ex. 1005, Figs. 1, 3; Ex. 1003 ¶ 86.

Petitioner alleges Hollymatic also teaches this limitation. Pet. 21; Ex. 1003 ¶ 243. Petitioner contends Hollymatic's Figure 4 shows a supply of open top container portions arranged in double-row groups 42a, 42b, 42c. Pet. 21; Ex. 1006, 8; Ex. 1003 ¶ 243. Hollymatic's container rows are displaced in a longitudinal direction by second conveyor 40 which carries the containers to an area below the end of conveyor 30 so that product can be deposited into the containers. Pet. 21–22; Ex. 1006, 2–3, Fig. 4; Ex. 1003 ¶ 243.

Patent Owner does not dispute Petitioner's reading of the "container supply" limitation on Honsberg-Hollymatic combination. *See generally* PO Resp.

Claim 1 further recites a "movable web" limitation as follows:

*carried by an elongated web of film and movable by said web along said longitudinal direction into a fill station*

Ex. 1001, 5:61–63.

Appx23715

Petitioner contends Honsberg teaches this limitation. Pet. 22, 24; Ex. 1003 ¶¶ 88, 93. Petitioner contends Honsberg's deep drawn sheet 32 corresponds to the claimed "elongated web of film." Pet. 22–23; Ex. 1001, 1:23–30, 4:3–4, Fig. 2; Ex. 1005, 3:38–40, Figs. 1, 3; Ex. 1003 ¶¶ 88–89. Honsberg's packaging machine forms receptacles 31 in the web of film. Pet. 23; Ex. 1005, 2:30–32. The receptacles are carried in the web of film. Pet. 23, Ex. 1003 ¶ 90. Receptacles 31 move in a longitudinal direction to a fill station. Pet. 23–24; Ex. 1005, Figs. 1, 3; Ex. 1003 ¶¶ 90–92.

Patent Owner does not dispute that the "movable web" limitation reads on the Honsberg-Hollymatic combination. *See generally* PO Resp.

Claim 1 further recites the "shuttle conveyor" limitation as follows:

*a shuttle conveyor having a conveying surface, said shuttle conveyor comprises a device to retract and to extend said conveying surface*

Ex. 1001, 5:64–66.

Petitioner contends Honsberg and Hollymatic disclose the "shuttle conveyor" limitation. Pet. 25–26; Ex. 1003 ¶¶ 94–96, 249. Specifically, Petitioner contends Honsberg discloses conveyor belt 5 looped on movable slide 3, which extends or retracts, with a conveying surface on which sliced food 30 travels. Pet. 25–26; Ex. 1005, 3:65–68, 4:8–9, Fig. 1; Ex. 1003 ¶¶ 95–96. Petitioner also contends Hollymatic discloses conveyor belt 30 on retractable sled 10, which is driven by drive motor 20 and transport chain 23 to extend and retract. Pet. 26; Ex. 1006, 2, 4; Ex. 1003 ¶ 249.

Patent Owner does not dispute Petitioner's reading of the "shuttle conveyor" limitation on the Honsberg-Hollymatic combination. *See generally* PO Resp.

Claim 1 further recites the "first row" limitation as follows:

*said conveying surface arranged above said fill station and having an end region longitudinally movable to a first position arranged to deposit food product drafts into said container portions of said first row by said conveying surface*

Ex. 1001, 5:66–6:4.

Petitioner contends Honsberg and Hollymatic disclose the "first row" limitation. Pet. 26, 28; Ex. 1003 ¶¶ 98, 102. Petitioner contends Honsberg's Figure 1 shows slide 3 above receptacle 31 at food depositing point 56, which is a "first position." Pet. 27; Ex. 1005, 4:22–24, 5:4–8; Ex. 1003 ¶ 99. Petitioner contends the area in which receptacle 31 is located in Figure 1 is a "fill station" because that is where receptacle 31 is filled with food. Ex. 1003 ¶ 99. Petitioner further contends slide 3 extends the conveying surface's end region to the first position. Pet. 27; Ex. 1003 ¶ 99.

Petitioner contends Hollymatic describes that first object 1 reaches the end of the sled 10, where it is moved from position C to position D, and object 1 drops into the outermost tray of group 41b. Pet. 27–28; Ex. 1006, 7; Ex. 1003 ¶¶ 100–101. Petitioner contends Figure 5 shows a sequential row loading process where position C is a "first position" as claimed. Pet. 27–28; Ex. 1006, 7, Fig. 5; Ex. 1003 ¶ 101.

Patent Owner disputes Petitioner's reading of the "first row" limitation on the Honsberg-Hollymatic combination. PO Resp. 22–30. We address Patent Owner's arguments in Section II.D.3.d).

Claim 1 further recites the "second row" limitation as follows:

*while said web remains stationary, said device retracts or extends said conveying surface to reposition said end region to a second position arranged to deposit food product drafts carried on said conveying surface into said container portions of said second row.*

27

Ex. 1001, 6:4–8.

Petitioner contends Honsberg in combination with Hollymatic teaches this limitation. Pet. 28–29, 31; Ex. 1003 ¶¶ 98–105, 109. Honsberg's slide 3 retracts the conveying surface of conveyor belt 5 to a second position. Pet. 29; Ex. 1005, 5:3–11, 7:10–14; Ex. 1003 ¶ 104. Honsberg also teaches that food insertion takes place when the packaging machine is stationary. Pet. 29; Ex. 1005, 2:27–33.

Hollymatic's sled withdraws a second time to reposition the conveyor's end region at a second position D to deposit food into a second row of container portions of the same tray as the first row of container portions. Pet. 29–31; Ex. 1006, Figs. 1, 5; Ex. 1003 ¶¶ 105–107. Hollymatic's tray remains stationary as its sled 10 retracts to the second position D. Pet. 30–31; Ex. 1006, Fig. 5; Ex. 1003 ¶ 108.

Patent Owner disputes Petitioner's reading of the "second row" limitation on the Honsberg-Hollymatic combination. PO Resp. 22–30. We examine Patent Owner's arguments in detail in Section II.D.3.d).

b) *Motivation to Combine*

Petitioner contends a person of ordinary skill in the art would have been motivated to combine Honsberg and Hollymatic for several reasons. Pet. 31–35. Forming arrays with multiple rows and columns was an efficient way to organize containers. Pet. 32; Ex. 1012, Figs. 3–6, 3:1–5; Ex. 1013, Fig. 13, 6:38–40; Ex. 1003 ¶¶ 113–116. Forming multiple rows and columns of containers during each dwell time increases the number of containers that can be formed and improves the amount of product that can be loaded during the dwell time. Pet. 33; Ex. 1003 ¶¶ 114–115; Ex. 1012, 3:1–5, Figs. 3–6; Ex. 1013, 6:38–40, Fig. 13; Ex. 1008, 9:25–29, Fig. 5.

28

Filling as many containers as possible while a web is stopped and the next array of containers is being formed during the dwell time increases efficiency. Pet. 34; Ex. 1005, 2:15–19; Ex. 1003 ¶¶ 113–114. Petitioner also contends using containers formed in webs, rather than pre-formed trays, as in Hollymatic, is less expensive. Pet. 34; Ex. 1015, 7; Ex. 1003 ¶ 114.

Furthermore, Petitioner contends that implementing a web of formed containers, like Honsberg's, with Hollymatic's double withdraw conveyor, improves a food product packaging system. Pet. 34; Ex. 1015, 7; Ex. 1003 ¶ 114. According to Petitioner, filling an entire array of formed containers in the fill station while subsequent array of container portions is formed and the container line is stopped, increases product throughput, lowers productions costs, and increases profit. Pet. 34–35; Ex. 1003 ¶ 115. Petitioner concludes that a person of ordinary skill in the art would have been motivated to implement Hollymatic's double withdraw conveyor on Honsberg's line having double rows of containers. Pet. 35; Ex. 1003 ¶ 116.

Patent Owner disputes Petitioner's motivation to combine for reasons discussed in detail in Section II.D.3.d)(2) below.

### c) Reasonable Expectation of Success

Petitioner contends a person of ordinary skill in the art would have had a reasonable expectation of success in modifying Honsberg to implement a second conveyor withdraw like that in Hollymatic. Pet. 35–36; Ex. 1003 ¶ 117. According to Petitioner, the only necessary modification to Honsberg's conveyor is implementing a second withdraw, like Hollymatic's. Pet. 36; Ex. 1003 ¶ 118. Petitioner contends any additional modifications necessary to implement a second withdraw, such as repositioning pulleys, would have been within the ability of a person of ordinary skill in the art,

requiring only routine mechanical skill to adjust the system of Honsberg according to Hollymatic's teachings. Pet. 36; Ex. 1003 ¶ 118.

Patent Owner disputes Petitioner's reasonable expectation of success for reasons explained in Section II.H.2.d)(2) below.

### d) Arguments and Analysis

Patent Owner's arguments against the combination of Honsberg and Hollymatic are considered below.

### (1) "First Row" and "Second Row" Limitations: "Multi-Fill" Deposition

Patent Owner contends that the Honsberg-Hollymatic combination does not disclose the "first row" and "second row" limitations of claim 1. PO Resp. 22–34; Sur-Reply 1–14. Patent Owner contends that the Honsberg-Hollymatic combination does not deposit multiple drafts at a time, but only "piece-by-piece," and that Petitioner does not allege that any other reference deposits multiple drafts at a time. PO Resp. 22–34 (citing Ex. 2014 ¶¶ 81–85; Ex. 1005, 4:3–4, 4:64, 4:66, 5:1, 5:9–10, 5:60); Sur-Reply 1–14. According to Patent Owner, Petitioner relies on an unsupported statement of its expert that Honsberg shows that a single withdraw loads rows of products into the receptacles. PO Resp. 27 (citing Ex. 1003 ¶ 33). Patent Owner contends that Honsberg's expert's statement is demonstrably false in view of the actual text of Honsberg, Mr. Palmer's detailed opinions, and a German patent application discussing the Honsberg device, DE 4202915 A1 (the "DE '915 application") (Ex. 2007). *Id.* at 27. Patent Owner contends the DE '915 application, filed by Honsberg's owner, describes Honsberg as limited to "piece-by-piece" deposition. PO Resp. 1–2, 28–29; Ex. 2007, 2 ¶ 2.

Petitioner replies that "Honsberg teaches, or at least suggests, filling a row of containers with drafts simultaneously in a single withdraw." Reply 3–4. Petitioner contends its understanding is supported by Honsberg's teachings, common sense considerations, Patent Owner's expert's testimony, and the background art. *Id.* at 4.

At the outset of our analysis, we disagree with Patent Owner that the "first row" and "second row" limitations encompass "multi-fill" deposition but not "piece-by-piece" deposition. *See* Section II.C.2. The claims recite no language limiting them to "multi-fill" deposition of drafts in a row at the same time. Although Patent Owner argues that the Honsberg-Hollymatic combination uses "piece-by-piece" deposition and not "multi-fill" deposition, the claims are sufficiently broad to encompass both forms of deposition. Consequently, the distinction that Patent Owner argues is not supported by the claims, and Patent Owner's argument is unavailing.

Even if we assume Patent Owner is correct that the claims encompass "multi-fill" deposition but not "piece-by-piece" deposition, the conclusion of our decision would not be different at least because, on the evidence presented, we find that Honsberg teaches, or at least suggests, "multi-fill" deposition.

The parties do not dispute that Honsberg's Figure 3 shows the food insertion apparatus's conveyor belt providing multiple lanes of drafts to the containers 31 which are arranged in rows. Tr. 36–37. At several points, Honsberg addresses packing of food into dish-like receptacle**s** (plural). Ex. 1005, 1:5–10, 3:28–33; 5:50–56, 7:1–3. As Petitioner notes, Honsberg describes conveying food to be packed to a depositing point, switching the conveyor off, and driving the slide in the opposite direction to the food

31

transporting direction to take the "ground out from under the feet" of the food, thereby depositing it. Reply 4–5 (citing Ex. 1005, 2:45–63; Ex. 1021 ¶¶ 18–19). As Petitioner recognizes, Honsberg never describes any subsequent withdraws to deposit additional drafts into containers of the same row, suggesting that multiple drafts are deposited in a single withdrawal of the slide in the multi-laned apparatus. *Id.* at 5 (citing Ex. 1021 ¶ 20).

Furthermore, as Petitioner states, depositing one piece of food at a time would be inefficient because it would require seven steps to deposit, piece-by-piece, two slices in two containers whereas the same could be done using only three steps with "multi-fill" deposition. *Id.* at 5–6 (citing Ex. 1021 ¶¶ 24–27). In addition, Petitioner notes that "piece-by-piece" deposition would disturb or knock over food stacks behind the one being inserted, a problem that a person of ordinary skill in the art would have recognized and sought to avoid by using "multi-fill" deposition for rows of food stacks. *Id.* at 8–9 (citing Ex. 1021 ¶¶ 28–29).

Patent Owner argues that the DE '915 application, filed by Honsberg's owner, describes the Honsberg patent as limited to "piece-by-piece" deposition. PO Resp. 1–2, 28–29. Conversely, Petitioner contends that the DE '915 application describes that Honsberg uses "multi-fill" deposition. Reply 11–13. We find that the DE '915 application mentions both "piece-by-piece" deposition and "multi-fill" deposition as alternatives. Ex. 2007, 2 ¶¶ 2, 5. Specifically, the DE '915 application mentions "foodstuff fed piece by piece on a feed belt" ("piece-by-piece" deposition) (Ex. 2007, 2 ¶ 2) and "foodstuffs to be packed in several lanes had to be arranged in the correct lane arrangement in parallel" ("multi-fill" deposition) (Ex. 2007, 2 ¶ 5).

Dr. Sand testifies that a person of ordinary skill in the art would have understood the DE '915 application to describe Honsberg as using "piece by piece" placement of food products in one lane on the infeed belt, but that the pieces are also moving in "parallel" across the infeed belt in different lanes, confirming that "Honsberg deposited multiple drafts at a time." Ex. 1021 ¶¶ 34–35; Ex. 2007, 2 ¶¶ 2, 5. While we agree with Dr. Sand's testimony that the DE '915 application describes Honsberg as disclosing "multi-fill" deposition in a multi-lane packaging machine with transverse distributors for staging food products in parallel arrangements or rows (Ex. 2007, 2 ¶ 5), it also describes feeding foodstuff "piece by piece" on a feed belt and inserting it into the packaging mold of a packaging machine (Ex. 2007, 2 ¶ 2). Thus, the DE '915 application also describes a single-lane packaging machine in this paragraph. *Id.*

Mr. Palmer testifies that the DE '915 application notes that "Honsberg only describes depositing one item at a time" ("piece by piece" deposition). Ex. 2014 ¶ 54. But then he acknowledges that the DE '915 application implicitly recognizes that Honsberg is capable of "multi-fill" deposition because "using Honsberg to deposit rows at a time had several disadvantages" ("multi-fill" deposition). Ex. 2014 ¶ 58. Because of the inconsistency in Mr. Palmer's testimony, we credit Dr. Sand's testimony that the DE '915 application suggests that Honsberg is capable of "multi-fill" deposition. *See also* Ex. 1021 ¶¶ 32–36. But we further find that the DE '915 application supports that Honsberg teaches or suggests both "multi-fill" deposition and "piece-by-piece" deposition as alternatives.

Petitioner contends that Patent Owner's argument that Honsberg is limited to "piece by piece" deposition subverts Honsberg's goal of making

efficient use of the dwell period when the production line is stopped to form packages. Reply 13 (citing Ex. 1005, 2:26–32, 7:21–8:4; Ex. 1021 ¶¶ 37–38). Petitioner contends a person of ordinary skill in the art would have understood Honsberg to fill containers efficiently during the dwell period with as few withdraws as possible, indicating that Honsberg deposits multiple drafts per withdraw. *Id.* Petitioner's expert, Dr. Sand, confirms these contentions. Ex. 1021 ¶¶ 37–38. Patent Owner's expert, Mr. Palmer, testifies that "Honsberg can only do one at a time" but then he states that a person of ordinary skill in the art "would have a desire to have multiple deposits at the same time." Ex. 1020, 178:1–179:14. Mr. Palmer's testimony supports Petitioner's argument that an ordinarily skilled artisan would have considered it advantageous to ensure that Honsberg's device could deposit multiple drafts at a time. We find Petitioner's position is sufficiently supported, and we credit Dr. Sand's testimony. *Id.*

In sum, Patent Owner argues that the "first row" and "second row" limitations of the claims encompass "multi-fill" deposition but exclude "piece by piece" deposition from their scope. We disagree with Patent Owner's contention because the claims do not recite "multi-fill" deposition in which drafts must be deposited at the same time in rows of containers, nor does the Specification or file history of the '936 Patent require the claims to be interpreted to include only "multi-fill" deposition. Even if we assume the claims are limited to "multi-fill" deposition, which they are not, Petitioner shows sufficiently that Honsberg shows multiple lanes of drafts and depositing drafts into dish-like receptacle**s** (plural). Additionally, Honsberg does not describe further action to deposit multiple food items in a row, and a person of ordinary skill in the art would have recognized that "multi-fill"

deposition requires fewer steps and does not disturb staged drafts. Petitioner shows sufficiently that Honsberg teaches or at least suggests "multi-fill" deposition of drafts at the same time into a row of containers at a first position using a withdraw conveyor, and that Hollymatic teaches to implement a second withdraw during a dwell period while the containers are stationary to a second position to fill a second row of containers.

### (2) Redesigning Honsberg with Hollymatic's Second Withdraw

Patent Owner disputes Petitioner's contention that "[t]he only necessary modification to Honsberg's conveyor is implementing a second withdraw, like Hollymatic's" and that "[t]his would have required only routine mechanical skill to adjust the system of Honsberg according to Hollymatic's teachings." PO Resp. 35 (citing Pet. 36; Ex. 1003 ¶¶ 117–119) (alterations in original).

Specifically, Patent Owner contends that (A) one of ordinary skill would not have been able to accomplish the precise upstream staging of food items necessary for multi-draft, multi-row deposition, (B) one of ordinary skill would not have known how to coordinate the downstream deposition of multiple items at a time into a row, and (C) adding a second withdraw to Honsberg would have unduly frustrated its purpose for precise and accurate deposition. *Id.* at 35–36. For the following reasons, we do not agree with Patent Owner's contentions.

### (a) Precise Upstream Staging of Rows of Drafts

Patent Owner asserts that Honsberg's "piece-by-piece" deposition was not suited for multi-item, multi-row deposition, due to many potential problems with complexity, cost, and flexibility. PO Resp. 36 (citing Ex. 2014, Section X.A). Patent Owner further contends that a "person of

ordinary skill would not have been motivated to deposit multiple items in multiple rows using Honsberg, nor would one of skill in the art have expected to be successful based on the known limitations of Honsberg and the strong teaching away of DE '915." *Id.* at 36–37.

We have already considered and rejected Patent Owner's contention that Honsberg is limited to "piece-by-piece" deposition; it addresses "multi-fill" deposition as well. *Id.* at 37; *see* Sections II.C.2 and II.D.3.d)(1). Many of Patent Owner's arguments hinge on this misunderstanding of the breadth of Honsberg's disclosure, and we do not agree with them for this reason.

We disagree with Patent Owner's contention that Honsberg and the DE '915 application "teach away" from the claims of the '936 Patent. PO Resp. 36–37; Sur-Reply 18–19. The prior art's disclosure of "piece-by-piece" deposition and "multi-fill" deposition as alternatives does not "criticize, discredit, or otherwise discourage" the deposition claimed in the '936 Patent, which encompasses either deposition technique. *See In re Fulton*, 391 F.3d 1195, 1201 (Fed. Cir. 2004); Ex. 2007, 2 ¶¶ 2, 5. Nor does Honsberg's stated goal of deposition using a "structurally simple slide arrangement" exclude the use of multiple lanes and "multi-fill" deposition. PO Resp. 37; Ex. 1005, 2:5–9, 2:64–66, Fig. 3. As Petitioner recognizes, there is no difference in the action of a withdrawing conveyor to deposit a single food item or multiple food items. Tr. 30–31.

Patent Owner further argues that upstream staging with a transverse distributor adds complexity and cost to the food processing line. PO Resp. 37–39 (Ex. 2014 ¶¶ 110–115; Ex. 2007, 2–3). Neither Patent Owner nor its expert explain why the added complexity and cost would not be worthwhile given that a multi-lane machine would be capable of

packaging more product than a single lane machine. The fact that the DE '915 application and Sandberg, for example, describe that transverse distributors were used in the art suggests that whatever complexity and cost they added was offset by greater productivity or other advantages. *See* Ex. 2007, 2 ¶ 5; Ex. 1011.

Patent Owner further argues that multi-item packaging using Honsberg would have reduced flexibility because upstream staging machinery limits the width of the insertion device's infeed belt so that it cannot be extended for multi-lane packaging. PO Resp. 39 (citing Ex. 2007, 2; Ex. 2002 ¶ 116). Patent Owner does not explain why the methods recited in the '936 Patent's claims are not also subject to this constraint. In any case, we find Petitioner's position to be more convincing on this point because Honsberg teaches that its conveyor belt can be enlarged to correspond with the width of the deep drawn sheet underneath. Ex. 1005, 3:18–23. Further, neither Patent Owner nor its expert, Mr. Palmer, explain why the upstream staging machinery cannot be moved or extended to accommodate a conveyor belt of greater width. To the contrary, Petitioner's expert, Dr. Sand, testifies that a person of ordinary skill in the art would have been able to resolve these alleged issues. *See* Ex. 1021 ¶ 36. We agree, and credit Dr. Sand's testimony on this point.

Patent Owner contends that the position of Honsberg's molding tool would prevent Honsberg from performing a second withdraw. PO Resp. 39 (citing Ex. 2014 ¶ 116). As Petitioner recognizes, Patent Owner's assertion amounts to bodily incorporation of one prior art reference, exactly as taught, into the other, which is an improper approach to the obviousness inquiry. Reply 24 (citing *ClassCo, Inc. v. Apple, Inc.*, 838 F.3d 1214, 1219 (Fed. Cir.

2016); *In re Mouttet*, 686 F.3d 1322, 1332 (Fed. Cir. 2014)). Combining concepts taught by Honsberg and Hollymatic, Petitioner has shown sufficiently that the modifications necessary to perform a second withdraw were within the ability of a person of ordinary skill in the art. Pet. 36 (citing Ex. 1003 ¶ 118); Ex. 1021 ¶¶ 72, 75–77.

Patent Owner further contends that the DE '915 application states that, for the first time with its invention, it is possible to feed a multi-lane packaging machine from a single lane infeed belt. PO Resp. 42 (citing Ex. 2007, 3 ¶ 2). Patent Owner interprets this statement as meaning that the DE '915 application rejects the idea of modifying Honsberg to add multi-fill deposition or an additional withdrawal. *Id.* Patent Owner's reasoning is conclusory and does not explain why a person of ordinary skill in the art would have considered the machine taught in the DE '915 application as the only option to use. As Petitioner's expert, Dr. Sand, testifies, one would have sought to use the transverse distributor taught by the DE '915 application (Ex. 2007, 2 ¶ 5, 3 ¶ 2), or the staging conveyor of Sandberg (Ex. 1011), to arrange parallel rows of food product on the infeed belt to the shuttle conveyor for simultaneous deposit in rows of package pockets in the Honsberg-Hollymatic combination. *See* Ex. 1021 ¶¶ 33, 42. Sandberg is, after all, the same reference that the '936 Patent mentions as providing upstream staging of lateral rows of drafts to supply its machine. Ex. 1001, 1:15–20. We agree with and credit Dr. Sand's testimony that Sandberg's staging conveyor or the transverse distributor of the DE '915 application would have been adequate for use with the Honsberg-Hollymatic combination. *See* Ex. 1021 ¶¶ 33, 42; Ex. 1011, Fig. 20; Ex. 2007, 2 ¶ 5; *see also* Reply 20–22. We further note that claim 1 of the '936 Patent does not

38

recite staging of drafts, so Patent Owner's arguments regarding draft staging are directed to an unclaimed feature.

### (b) Coordinating downstream deposition of multiple items at a time into a row

Patent Owner argues that the problems with upstream staging would lead to additional challenges downstream. PO Resp. 43 (citing Ex. 2014, Section X.B). As Patent Owner has not shown inadequacy of upstream staging for the reasons just explained, we do not agree the downstream challenges would have been insurmountable for a person of ordinary skill in the art.

Patent Owner argues that Petitioner made no effort to explain how one of ordinary skill in the art would be expected to use (or not use) the different parts of Honsberg and Hollymatic to coordinate the deposition of multiple drafts/rows. *Id.* at 43–44. However, Petitioner explained in some detail how Hollymatic's withdrawing conveyor operates, including the sled, conveyor belt, rollers, drive motor, transport chain, sensors, etc. Pet. 4–7. Patent Owner does not explain why detecting the position of a row of food items on a conveyor belt would be any different than detecting the position of a single food item assuming proper upstream staging in lateral rows of food product. PO Resp. 44 (citing Ex. 1006, 6; Ex. 2014 ¶¶ 122–124).

Petitioner also provides evidence that a person of ordinary skill in the art would have been able to implement a withdrawing conveyor with sensors, servomotors, and controllers, notwithstanding Patent Owner's arguments to the contrary. PO Resp. 26–27; Reply 22–24; Sur-Reply 19–21; Ex. 1021 ¶ 73. In particular, Petitioner states that Patent Owner's expert, Mr. Palmer, agreed it would be routine to change the programming of a controller, and to make modifications involving a

servomotor, controller, conveyors, and sensors.  Reply 22–23 (citing
Ex. 1020, 40:25–43:8, 42:9–12, 43:3–8).  We agree with Mr. Palmer and
Dr. Sand that such modifications would have been straightforward for a
person of ordinary skill in the art.

Patent Owner points to a food automation textbook as establishing
that attempts to improve accuracy and performance of mechanical control
systems caused complexity and lack of reliability, and that this remained the
case until the introduction of software into control system technology.  PO
Resp. 26–27; Ex. 2009, 120.  Patent Owner contends "the '936 patent
elegantly uses much more sophisticated technology like servomotors and
computer controllers for deposition."  PO Resp. 26–27.  The textbook that
Patent Owner references, however, was published in 1991, more than a
decade before the '936 Patent's 2002 priority date.  The textbook states
"accuracy and reliability have *historically* been considered as conflicting
control system design parameters"—meaning historically relative to 1991.
Ex. 2009, 120 (emphasis added).  Further, the excerpted part of the textbook
discusses "early computer-controlled systems."  *Id.*  The textbook does not
establish that servomotors or computer controllers were something new to
the industry in 2002.  To the contrary, the textbook explains that food
processing automation using computers and servomotors was known in
1991.  *See, e.g.*, *id.* at 21 ("Advanced machines now available use a separate
servo motor for driving each unit operation within the machine"), 52–57
(control hardware includes PLCs, PCs, mini/micro computers, main frames),
60 (figure showing typical control system hierarchy), 75 (describing
computers used in industrial applications).

Patent Owner contends that "[i]t is inconceivable how Honsberg or Hollymatic could reasonably achieve a centered row of multiple sliced food items or otherwise accomplish the precise deposition of multiple rows of items." PO Resp. 45. Claim 1 of the '936 Patent, however, does not recite anything pertaining to staging of drafts. And as Petitioner's expert Dr. Sand notes, Sandberg, which is evidence of the general knowledge of a person of ordinary skill in the art, teaches how to achieve proper staging of lateral rows of drafts. Reply 20–22; Ex. 1003 ¶¶ 52; Ex. 1021 ¶ 42. Sandberg is the same reference the '936 Patent mentions as teaching upstream staging for use with its food insertion apparatus. Ex. 1001, 1:15–21; Ex. 1003 ¶ 52. Sandberg demonstrates that it was known in the art how to stage multiple rows of food items in rows.

Accordingly, we do not agree with Patent Owner's contentions.

### (c) Adding Second Withdraw to Honsberg

Patent Owner contends that adding a second withdraw to Honsberg would have unduly frustrated its purpose for precise and accurate deposition. PO Resp. 45–49; Sur-Reply 17–18. Patent Owner contends Honsberg and Hollymatic are directed toward precision and accuracy of food product deposition, and that Petitioner does not explain how one would arrive at a process that significantly increases efficiency and throughput like the '936 Patent. PO Resp. 45–46. Patent Owner contends that because thin-sliced food does not have the same structural or deformation concerns as single food items or meat patties, precision is not a high-priority concern. *Id.* at 46–47 (citing Ex. 2014 ¶¶ 139–143). Patent Owner contends that Honsberg and Hollymatic focus on precise, careful placement of items into packaging and not throughput, and that adding a second withdraw would

have made the deposition process "completely unreliable." *Id.* at 47–48 (citing Ex. 1005, 2:5–9; 2:19–23; Ex. 1006, 2; Ex. 2002 ¶ 127). Patent Owner concludes that adding the equipment and process steps needed for a second withdraw would frustrate the basic principles of Honsberg and Hollymatic. *Id.* at 49.

Petitioner replies that the claims of the '936 Patent do not require any particular level of precision in depositing drafts that would rule out the Honsberg-Hollymatic combination. Reply 26 (citing Ex. 1020, 200:6–10; Ex. 1021 ¶ 73). Petitioner further asserts that Patent Owner does not suggest that the Honsberg-Hollymatic combination would have resulted in a slowdown of throughput compared to each reference individually, and that Patent Owner "provides no credible evidence to suggest that a [person of ordinary skill in the art] would have been unable to modify the prior art to achieve a desired throughput or accuracy." *Id.* (citing Ex. 1021 ¶ 73).

We agree with Petitioner's contentions. The claims do not recite any required level of accuracy, precision, throughput or other parameter that would preclude the Honsberg-Hollymatic combination. Nor does Patent Owner's evidence show that a person of ordinary skill in the art would not have been able to modify the prior art to achieve a desired accuracy, precision, throughput, etc.

Accordingly, we do not agree with Patent Owner's contention that the Honsberg-Hollymatic combination would have frustrated Honsberg's purpose.

### e) *Conclusion for Claim 1*

In light of the foregoing discussion, we determine that the information presented in the Petition, Response, Reply, Sur-Reply, and accompanying

exhibits and testimony, shows the unpatentability of claim 1 as obvious over the combination of Honsberg and Hollymatic. Petitioner makes a sufficient showing that each element of claim 1 is taught or suggested by the Honsberg-Hollymatic combination, considered as a whole, and that a person of ordinary skill in the art had reason to combine the references, with a reasonable expectation of success in arriving at the claimed invention.

### 4. Claim 10

#### a) Petitioner's Reading of Claim 10 on the Honsberg-Hollymatic Combination

The preamble of claim 10 recites as follows:

> *An apparatus for filling food product drafts into pockets formed into an elongated web of film, said pockets having open tops and arranged in rows that are displaced along a longitudinal direction and having at least a first row and a longitudinally displaced second row and movable with said web along said longitudinal direction, comprising:[4]*

Ex. 1001, 6:62–67.

Petitioner contends, to the extent the preamble is limiting, that Honsberg discloses it. Pet. 37; Ex. 1003 ¶¶ 81–83. For the same reasons stated above for claim 1, Petitioner contends Honsberg teaches the first part of the preamble which is "an apparatus for filling food product drafts into pockets." Ex. 1003 ¶¶ 121–129. The remainder of the preamble recites "said pockets having open tops and arranged in rows that are displaced along a longitudinal direction and having at least a first row and a longitudinally displaced second row and movable with said web along said longitudinal

---

[4] We find it unnecessary to decide whether the preamble is limiting because Petitioner has shown it is taught by the prior art and Patent Owner does not dispute this evidence.

Appx23733

direction." Petitioner contends that Honsberg describes that the packing sheet is formed with a dish-like receptacle, which teaches that "pockets [are] formed into an elongated web of film." Pet. 37–38; Ex. 1005, 2:61–63; Ex. 1003 ¶¶ 125–126; *see also* Ex. 1005, 3:28–33.

Apart from the "drafts" issue discussed in Section II.C.1, Patent Owner does not dispute that Honsberg discloses the preamble of claim 10. *See generally* PO Resp.

Claim 10 recites the "fill station" and "moving pockets" limitations as follows:

> *a fill station and a mechanism for moving said pockets longitudinally into said fill station; and*

Ex. 1001, 7:1–2.

Petitioner contends Honsberg discloses a food depositing point, which would have been understood to be a "fill station." Pet. 38; Ex. 1005, 1:28–30; Ex. 1003 ¶ 128. Petitioner further contends Honsberg teaches "a mechanism for moving said pockets longitudinally to said fill station." Pet. 38; Ex. 1005, 1:28–30; 2:30–32; Ex. 1003 ¶¶ 128–129; *see also* Ex. 1005, 1:28–35.

Patent Owner does not dispute that Honsberg discloses this feature. *See generally* PO Resp.

Claim 10 recites the "shuttle conveyor" limitation as follows:

> *a shuttle conveyor having an endless belt conveying surface, said shuttle conveyor comprises a device to retract and to extend said conveying surface longitudinally, said conveying surface arranged above said fill station and having an end longitudinally movable to a first position arranged to deposit food product drafts into said pockets of said first row by said conveying surface, and while said web remains stationary, said device*

44

*retracts or extends said conveying surface to longitudinally reposition said end to a second position arranged to deposit food product drafts carried on said conveying surface into said pockets of said second row.*

Ex. 1001, 7:3–14.

Petitioner contends Honsberg and Hollymatic disclose this limitation for the reasons stated for claim 1. Pet. 39; Ex. 1005, Fig. 5; Ex. 1003 ¶¶ 131–140.

Patent Owner disputes that the Honsberg-Hollymatic combination discloses the "first row" and "second row" limitations of claim 10 for the reasons stated for claim 1. PO Resp. 22–34.

### b) *Motivation to Combine*

Petitioner contends that a person of ordinary skill in the art would have been motivated to combine Honsberg and Hollymatic for the reasons stated for claim 1. Pet. 40; Ex. 1003 ¶ 141.

Patent Owner argues one of ordinary skill in the art would not have had a motivation to combine Honsberg and Hollymatic for the reasons stated for claim 1. PO Resp. 35–49.

We do not agree with Patent Owner's arguments for the reasons stated in Section II.D.3 with respect to claim 1.

### c) *Reasonable Expectation of Success*

Petitioner contends that a person of ordinary skill in the art would have had a reasonable expectation of success in making the combination of Honsberg and Hollymatic for the reasons stated for claim 1. Pet. 40; Ex. 1003 ¶ 142.

Patent Owner argues one of ordinary skill in the art would not have had a reasonable expectation of success to combine Honsberg and Hollymatic for the reasons stated for claim 1. PO Resp. 35–49.

We do not agree with Patent Owner's arguments for the reasons stated in Section II.D.3 with respect to claim 1.

### d) Conclusion for Claim 10

In light of the foregoing discussion, we determine that the information presented in the Petition, Response, Reply, Sur-Reply, and accompanying exhibits and testimony, shows the unpatentability of claim 10 as obvious over the combination of Honsberg and Hollymatic. Petitioner makes a sufficient showing that each element of claim 10 is taught or suggested by the Honsberg-Hollymatic combination, considered as a whole, and that a person of ordinary skill in the art had reason to combine the references, with a reasonable expectation of success in arriving at the apparatus recited in claim 10.

### 5. Dependent Claims 4–6, 13, and 14

### a) Claim 4

Petitioner contends that Hollymatic teaches claim 4's limitation, which involves a conveyor surface advancing from a retracted position to an extended position to fill a new first row of a succeeding group of container portions. Pet. 40–42; Ex. 1006; Figs. 3, 5; Ex. 1003 ¶¶ 145–149. Patent Owner does not dispute Petitioner's reading of claim 4 on the Honsberg-Hollymatic combination. *See generally* PO Resp. We agree with Petitioner that Hollymatic's conveyor advances from a retracted position to an extended position when it cycles from phase F, after filling container

group 42a, back to phase A or C to fill the next container group 42b. *See* Ex. 1006, 8–9, Figs. 4, 5.

b) *Claim 5*

Petitioner contends that Hollymatic teaches claim 5's limitation, which involves the conveyor surface moving from an extended position to a retracted position to fill a new first row of a succeeding group of container portions. Pet. 43–46; Ex. 1005, 2:27–31, 5:3–11; Ex. 1006, 9, Fig. 5; Ex. 1003 ¶¶ 152–155. Patent Owner contends that the Honsberg-Hollymatic combination retracts when depositing food items, and that operating the combination as an advancing conveyor would double the number of steps necessary for deposition. PO Resp. 59–63 (citing Ex. 2014 ¶¶ 158, 160–163).

We agree with Patent Owner's contention that one of ordinary skill in the art would not have used the Honsberg-Hollymatic combination to carry out claim 5. *Id.*; Sur-Reply 26. The Honsberg-Hollymatic combination operates by "removing the ground from under the feet" of the food items when depositing them by moving the conveyor in the withdrawing direction. Ex. 1005, 2:56–58; Ex. 1006, 5. As such, a person of ordinary skill in the art would have designed the Honsberg-Hollymatic combination to withdraw the conveyor belt successively in the withdrawing direction, rather than the advancing direction, when depositing rows of food items. The withdrawing direction requires less movement of the withdrawing conveyor to deposit food items as compared to the advancing direction. Specifically, Mr. Palmer testifies that depositing food items in the advancing direction would double the number of steps necessary for deposition, adding needless complexity and increasing the likelihood of malfunction. Ex. 2014 ¶¶ 162–163.

Mr. Palmer's testimony stands to reason. A person of ordinary skill in the art would not have designed the Honsberg-Hollymatic combination to deposit food items for a container group starting from a retracted position of the withdraw conveyor, as recited in claim 5, because movement of the withdraw conveyor from retracted to advanced positions requires the conveyor to advance past the point of deposit, then to retract to deposit. *See* Ex. 2014 ¶ 163 (steps (1), (3), (5)). The movement to advance past the point of deposit adds steps to the process that can be avoided by simply moving from advanced to retracted positions successively in the withdrawing direction. *Id.*

Accordingly, we agree with Patent Owner that one of ordinary skill in the art would not use the withdrawing conveyor of the Honsberg-Hollymatic combination to carry out the action of claim 5.

### c) Claim 6

Petitioner contends that Honsberg discloses claim 6's limitation, which recites that the container portions comprise concave formed portions in the web. Ex. 1001, 6:40–42; Ex. 1005, 1:28–33, Fig. 1; Ex. 1003 ¶¶ 162–166. Patent Owner does not dispute Petitioner's reading of claim 6 on the Honsberg–Hollymatic combination. *See generally* PO Resp. We agree with Petitioner that this feature is disclosed by Honsberg, which describes a "dish-like" (i.e., concave) receptacle formed in a deep drawing packing sheet. Ex. 1005, 1:28–33. In addition, the side view of Honsberg's Figure 1 shows the receptacle 31 to be concave.

### d) Claim 13

Petitioner contends Honsberg and Hollymatic disclose claim 13's limitation, which is similar to claim 4. Pet. 47–48; Ex. 1003 ¶¶ 168–173.

Patent Owner does not dispute Petitioner's reading of claim 13 on the Honsberg-Hollymatic combination for the reasons stated with respect to claim 4. *See generally* PO Resp. We agree with Petitioner that claim 13 is disclosed by the Honsberg-Hollymatic combination for similar reasons as stated for claims 1 and 10 (filling multiple rows of pockets while web is stationary) and claim 4 (advancing from retracted position feature).

### e) Claim 14

Petitioner contends Honsberg and Hollymatic disclose claim 14's limitation, which is similar to claim 5. Pet. 48; Ex. 1003 ¶¶ 175–177. For similar reasons as explained with respect to claim 5, we agree with Patent Owner that one of ordinary skill in the art would not have sought to configure the withdrawing conveyor of the Honsberg-Hollymatic combination to fill a new row of pockets starting from a retracted position. *See* PO Resp. 59–63.

### f) Conclusion for Claims 4, 5, 6, 13, and 14

Reviewing the information presented in the Petition, Response, Reply and Sur-Reply, and accompanying exhibits and testimony, we determine that Petitioner shows by a preponderance of the evidence that claims 4, 6 and 13 are unpatentable as obvious over the combination of Honsberg and Hollymatic. Petitioner shows that each of the limitations of claims 4, 6 and 13 is taught or suggested by the prior art, that a person of ordinary skill in the art would have been motivated to make the combination, with a reasonable expectation of success at arriving at the claims. Claims 5 and 14 have not been shown unpatentable for reasons explained.

E. *Ground 2: Asserted Obviousness of Claims 7–9 and 15–17 based on Honsberg, Hollymatic, and Mello*

Petitioner contends that claims 7–9 and 15–17 are obvious under 35 U.S.C. 103 based on the combination of Honsberg, Hollymatic, and Mello. Pet. 49–55.

1. *Mello (Ex. 1008)*

Mello discloses a packaging machine shown below in Figure 1.



Mello's machine includes a container forming station 14 that forms containers 30 in an array of rows and columns from web 28. Ex. 1008, Figs. 1, 3, 3:30–31, 9:25–27. Loading station 16 loads formed container 30 with product. Ex. 1008, 3:39–40. Sealing station 20 seals lid 36 to the containers. Ex. 1008, 3:46–49, Fig. 1.

2. *Dependent Claims 7–9 and 15–17*

a) *Claims 7 and 15*

Petitioner contends that Mello discloses claim 7's and claim 15's limitation, which recites a sealing station downstream of the fill station arranged to apply a cover to close the container portions. Pet. 49; Ex. 1001, 7:43–46. Petitioner contends, after the loading operation, containers filled with food advance to Mello's sealing station which applies lids to cover the

Appx23740

filled containers. Pet. 49; Ex. 1008, 3:39–50; Ex. 1003 ¶¶ 180–181. Petitioner contends a person of ordinary skill in the art would have been motivated to use Mello's sealing station with Honsberg's product depositing apparatus because sealing prevents contamination, is commonly done in the industry, and sealing an array of packages saves cost and time. Pet. 50; Ex. 1008, 6:40–42; Ex. 1005, 1:6–10; Ex. 1003 ¶¶ 182–183. Petitioner further contends a person of ordinary skill in the art would have had a reasonable expectation of success using Mello's sealing station because both Mello and Honsberg use a web of material to form an array of containers, and because Mello makes reference to using an automatic loading mechanism, such as Honsberg's, to fill the container portions with food product. Pet. 50–51; Ex. 1008, 3:40–42; Ex. 1003 ¶ 184. Patent Owner does not dispute Petitioner's reading of claim 7 on the Honsberg-Hollymatic-Mello combination, or the motivation to combine the references, or the reasonable expectation of success in arriving at the claims. *See generally* PO Resp. We agree with Petitioner that Mello's sealing station (*see* Ex. 1008, 3:45–47) discloses claim 7's and claim 15's limitation, and that one of ordinary skill in the art would have had motivation to combine the references, with a reasonable expectation of success in arriving at claim 7's and claim 15's limitation. Pet. 49–51.

  *b) Claims 8 and 16*

Petitioner contends that Mello discloses claim 8's and claim 16's limitation, which recites a container-forming station upstream of the fill station that is arranged to form pockets in the web. Pet. 51–53; Ex. 1001, 6:48–51; Ex. 1008, 3:24–40, 6:36–40, Fig. 1; Ex. 1003 ¶¶ 187–189. Petitioner contends a person of ordinary skill in the art would have been

motivated to use Mello's container forming station with Honsberg's and Hollymatic's depositing apparatus because forming containers from a web— as opposed to using preformed containers—provides cost savings, efficiency, and was common in the art. Pet. 52; Ex. 1015, 4; Ex. 1008, 3:59–61, Fig. 5; Ex. 1003 ¶¶ 190–191. Petitioner contends a person of ordinary skill in the art would have had a reasonable expectation of success because Mello's system operated with a food depositing system that deposits food into an array of containers, because Mello and Honsberg use web material to form containers, and because Mello uses an automatic loading mechanism, like Honsberg, to fill formed containers. Pet. 52–53; Ex. 1008, 3:40–42; Ex. 1005, 5:4–11; Ex. 1003 ¶¶ 192–193. Patent Owner does not dispute Petitioner's contentions. *See generally* PO Resp. We agree with Petitioner that Mello's container forming station (*see* Ex. 1008, 3:24–39) discloses claim 8's limitation, and that one of ordinary skill in the art would have had motivation to combine the references, with a reasonable expectation of success in arriving at claim 8's and claim 16's limitation. Pet. 51–53.

### c) *Claims 9 and 17*

Claim 9 combines the limitations of claims 6–8, and claim 17 combines the limitations of claims 15 and 16. For the reasons stated for those claims, Petitioner contends the Honsberg-Hollymatic-Mello combination discloses each limitation of claim 9, and that a person of ordinary skill in the art would have been motivated to combine the references, with a reasonable expectation of success. Pet. 53–55; Ex. 1003 ¶¶ 193, 198–200. Patent Owner does not dispute Petitioner's contentions. *See generally* PO Resp. We agree with Petitioner's reading of claim 9's and

claim 17's limitations on the Honsberg-Hollymatic-Mello combination, and that a person of ordinary skill in the art would have been motivated to make the combination with a reasonable expectation of success in arriving at the apparatuses of claims 9 and 17. Pet. 53–55.

*F. Ground 3: Asserted Obviousness of Claims 2, 11, and 18 based on Honsberg, Hollymatic, and Mahaffy535*

Petitioner contends that claims 2, 11 and 18 are obvious under 35 U.S.C. 103 based on the combination of Honsberg, Hollymatic, and Mahaffy535. Pet. 55–59.

*1. Mahaffy535 (Ex. 1009)*

Mahaffy535 discloses an apparatus for automatically loading stacks of sliced food products 15 into package receptacles, as shown below in Figure 1. Ex. 1009, code (57), Fig. 1.



In Figure 1, a retractable pusher arm 42 having pusher 54 mounted thereon is driven in a loading station 20 to engage and sweep stack 15 of sliced food

Appx23743

product into drop station 30, and is then retracted and returned to its initial ready position to perform the next sweeping action on a subsequent stack of sliced food product. Ex. 1009, code (57), 4:68–5:2, 5:43–47, Fig. 1. Ram 60 is actuated to force stack 15 of sliced food product through trap doors 38, 40 of drop station 30 into the package receptacle of a tray, and then is returned to its initial inactive position awaiting the arrival of the next stack of sliced product at drop station 30. Ex. 1009, code (57), 6:18–28.

*2. Dependent Claims 2, 11, and 18*

Claims 2, 11 and 18 each recite a tamping apparatus carried by the conveyor to be repositioned with the conveyor's end region. Ex. 1001, 6:9–15, 7:15–21, 8:15–21. The tamping apparatus has vertically reciprocal tamping elements arranged above the row being filled with food product drafts. *Id.* The tamping apparatus is actuatable to press the food product drafts into the container portions (pockets). *Id.*

Petitioner contends that Mahaffy535 discloses this limitation of claims 2, 11, and 18. Pet. 55–59. Petitioner contends Mahaffy535's retractable pusher arms are a tamping apparatus, and that they are vertically reciprocal and actuatable to press food product drafts into container portions. Pet. 55; Ex. 1009, code (57), Figs. 2–3; Ex. ¶ 204. Petitioner contends it would have been obvious to a person of ordinary skill in the art to attach Mahaffy535's tamping apparatus to the Honsberg-Hollymatic conveyor. Pet. 55–56; Ex. 1005 ¶ 205. Petitioner contends one of ordinary skill in the art would have been motivated to combine Mahaffy535 with Honsberg and Hollymatic because tamping reduces voids in the package, increasing customer perception of value. Pet. 56; Ex. 1003 ¶ 206. Petitioner also asserts that tamping provides an accurate fit in the package while preserving

the stacking of sliced food products.  Pet. 56; Ex. 1009, 2:15–22; Ex. 1003 ¶ 206.

Petitioner further contends a person of ordinary skill in the art would have been motivated to have the conveyor carry the tamping apparatus so that the two move together and the tamping apparatus is repositioned over a row of containers after depositing food to be tamped in them.  Pet. 56; Ex. 1003 ¶ 207.  Petitioner asserts one would have realized that a one-row tamping apparatus saves cost, provides simplicity, and requires less maintenance because it uses fewer tamping mechanisms.  Pet. 57–58; Ex. 1003 ¶ 208.  Petitioner further asserts market pressures on line operators to increase efficiency would result in a design incentive to use a one-row tamping apparatus and would have outweighed any potential concerns with attaching the tamping apparatus to the conveyor.  Pet. 57–58; *KSR*, 550 U.S. at 417; Ex. 1003 ¶ 208.

Petitioner contends a person of ordinary skill in the art would have had a reasonable expectation of success in combining Mahaffy535's tamping apparatus with the Honsberg-Hollymatic conveyor because only simple welding or other attachment mechanisms would have been required, and the combination merely uses predictable prior art elements, such as tampers and conveyors, according to their established functions.  Pet. 58; *KSR*, 550 U.S. at 417; Ex. 1003 ¶ 210.  Petitioner further contends one would have recognized that the tamping apparatus would operate to tamp products in containers before being moved to the next tamping location, and that the withdraw distance could readily be adjusted if necessary to accommodate space needed for the tamper to operate using routine principles of mechanical engineering.  Pet. 58–59; Ex. 1003 ¶ 210.  Petitioner concludes

Appx23745

that a person of ordinary skill in the art would have had a reasonable expectation of success in combining Mahaffy535's tamping apparatus with Honsberg and Hollymatic's food depositing apparatus. Pet. 59; Ex. 1003 ¶ 211.

Patent Owner does not dispute Petitioner's reading of claims 2, 11 and 18 on the Honsberg-Hollymatic-Mahaffy535 combination, or the motivation to combine the references, or the reasonable expectation of success in arriving at the claims. *See generally* PO Resp.

For the reasons Petitioner provides, we agree that each of the limitations of claim 2, 11 and 18 are disclosed by Mahaffy535's tamping apparatus attached to the conveyor of Honsberg and Hollymatic's food depositing apparatus, and that a person of ordinary skill in the art would have had reasons to combine the references, with reasonable expectation of success in arriving at the apparatuses recited in those claims. Pet. 55–59.

### G. *Ground 4: Asserted Obviousness of Claims 3, 12, and 19–21 based on Honsberg, Hollymatic, Mahaffy535, Scheflow, and Sandberg*

Petitioner contends claims 3, 12, and 19–21 would have been obvious over Honsberg, Hollymatic, Mahaffy535, Scheflow, and Sandberg. Pet. 59–65.

#### 1. *Scheflow (Ex. 1010)*

Scheflow discloses rotary slicer 20 for comestible products, as shown in Figure 1 below. Ex. 1010, code (57), Fig. 1.



Fig. I

In Figure 1, stationary magazine 26 supports a product upright as rotary table 38 carries rotary knife 40 in an orbit that passes beneath the magazine. *Id.* Freely rotatable center plate 80 of the blade facilitates movement of the blade through the product. *Id.* Slices of the product fall to the drop area where they exit by continuous operation or indexing of conveyor 101. *Id.* at 1:45–48, 4:31–38, 8:26–32.

    *2. Sandberg (Ex. 1011)*

    Sandberg discloses a system for accepting streams of product input and converting the streams into a format suitable for automatic loading of a subsequent machine. Ex. 1011, code (57), 1:8–21. The system includes row staging conveyor 65 to align product in one or more rows. *Id.* at 4:27–30, 4:36–40, Fig. 20. Sandberg mentions use of conveyor systems for stacked or shingled meat. Ex. 1011, 1:12–21.

### 3. Claims 3, 12, and 19

Petitioner contends that Scheflow discloses the "slicing machine" limitation of claims 3, 12, and 19. Pet. 59–60; Ex. 1003 ¶ 215. The "slicing machine" limitation recites a rotatable slicing blade, conveying assembly, and support for holding a loaf in the cutting path of the slicing blade. The slicing blade rotates to slice drafts from the loaf which are formed in a pile on the conveying assembly.

Petitioner contends that Scheflow disclose a rotating and orbiting blade 40 that slides relative to the food product to cut a slice therefrom. Pet. 60; Ex. 1010, 5:62–64; Ex. 1003 ¶ 216. Product magazine 26 holds the product, such as meat. Pet. 60; Ex. 1010, 4:7–13; Ex. 1003 ¶ 216. Product slices fall onto a product drop area. Pet. 60; Ex. 1010, 4:11–13, 4:22; Ex. 1003 ¶ 216. Conveyor 101's indexing movement moves the stack of slices from the drop area within the upper cabinet to outside the cabinet. Pet. 60; Ex. 1010, 8:27–30, Fig. 1; Ex. 1003 ¶ 216. Petitioner contends Scheflow discloses the "slicing machine" limitation of claims 3, 12, and 19.

Petitioner further asserts that Sandberg teaches the "staging" limitation of claims 3, 12, and 19. Pet. 61; Ex. 1003 ¶ 218. The "staging" limitation concerns the staging conveyor forming piles of food product drafts into rows and transporting them onto the conveying surface of the shuttle conveyor. Pet. 61. Petitioner contends Sandberg's conveyor system accepts one or more streams of product inputs and converts them into a form suitable for automatic loading to a subsequent machine. Pet. 61; Ex. 1011, code (57); Ex. 1003 ¶ 219. Petitioner notes that the '936 Patent acknowledges that Sandberg is a staging conveyor that converts conveyed spaced drafts into lateral rows of drafts. Pet. 61; Ex. 1001, 1:10–16;

Ex. 1003 ¶ 219. Petitioner contends that a person of ordinary skill in the art would have identified the conveying surface of a shuttle conveyor as a subsequent machine to which Sandberg's staging machine transfers the piles of food product. Pet. 61; Ex. 1003 ¶ 219. Petitioner contends Sandberg discloses the "staging" limitation of claims 3, 12, and 19.

Petitioner contends a person of ordinary skill in the art would have been motivated to use Scheflow's slicing machine with Honsberg's and Hollymatic's food depositing machine because it streamlines production. Pet. 61; Ex. 1010, 1:46–47; Ex. 1003 ¶ 221. Petitioner contends one would have been motivated to use Sandberg's staging conveyor to form piles of food into rows because Honsberg's and Hollymatic's depositing apparatus deposits food product by the row. Pet. 62; Ex. 1003 ¶ 221. Petitioner further contends one would have been motivated to use Mahaffy535's tamping mechanism with Scheflow's slicing apparatus for the reasons set forth for ground 3 (*see* Section II.F.2). For the foregoing reasons, Petitioner asserts that a person of ordinary skill in the art would have been motivated to use Scheflow's slicing apparatus and Sandberg's staging apparatus with Mahaffy535's tamping apparatus and Honsberg's and Hollymatic's food depositing apparatus. Pet. 62; Ex. 1003 ¶ 223.

Petitioner contends that a person of ordinary skill in the art would have had a reasonable expectation of success when incorporating Scheflow's slicer and Sandberg's staging conveyor with Mahaffy535's tamping apparatus and Honsberg's and Hollymatic's food depositing apparatus. Pet. 62–63; Ex. 1003 ¶ 224. According to Petitioner, Scheflow describes using its slicing apparatus with conveying systems. Pet. 63; Ex. 1010, 1:46–47; Ex. 1003 ¶ 224. Petitioner asserts that a person of ordinary skill in

the art would have had a reasonable expectation of implementing the formation of rows of drafts because the '936 Patent admits this was known in the art. Pet. 63; Ex. 1001, 1:10–16; Ex. 1003 ¶¶ 224–225. Petitioner argues the modification would have required simply locating the slicer and staging conveyor such that slices are transferred to the withdraw conveyor, and that this modification would have been readily apparent to a person of ordinary skill in the art. Pet. 63; Ex. 1003 ¶ 224. Petitioner contends the combined system would use predictable prior art elements, such as slicers and conveyors, according to their established functions. Pet. 63; *KSR*, 550 U.S. at 417; Ex. 1003 ¶ 224.

Petitioner concludes that Honsberg, Hollymatic, Mahaffy535, Scheflow, and Sandberg disclose each of the limitations of claims 3, 12, and 19, and that a person of ordinary skill in the art would have had reason to combine the references, with a reasonable expectation of arriving at the apparatus recited in the claims. Pet. 63; Ex. 1003 ¶¶ 225–226.

Patent Owner does not dispute Petitioner's contentions concerning claims 3, 12, and 19.

For the reasons that Petitioner states, we agree that each of the limitations of claims 3, 12, and 19 are disclosed by the combination of Honsberg, Hollymatic, Mahaffy535, Scheflow, and Sandberg, that a person of ordinary skill in the art would have been motivated to combine the references, with a reasonable expectation of success in arriving at the apparatuses recited in claims 3, 12 and 19.

*4. Claim 20*

Petitioner contends that the limitation of claim 20 is the same as that claimed in claim 4, which concerns advancing the shuttle conveyor from a

retracted position to an extended position to fill a new first row of a succeeding container group with food product drafts. Pet. 64; Ex. 1001, 8:32–38. Petitioner contends that it demonstrated that Hollymatic discloses this limitation, and that one of ordinary skill would have been motivated to include this feature with reasonable expectation of success, for the reasons explained with respect to claims 1, 4, and 19. Pet. 64; Ex. 1003 ¶¶ 229–230. Patent Owner does not dispute Petitioner's contentions for claim 20.

For the reasons stated with respect to claims 1, 4, and 19, we agree with Petitioner that each limitation of claim 20 is disclosed by the combination of those claims, and that a person of ordinary skill in the art would have had reason to combine the references, with a reasonable expectation of success in arriving at the claimed apparatus. *See* Sections II.D.3, II.D.5.a), and II.G.3.

5. *Claim 21*

Petitioner contends that the limitation of claim 21 is the same as that claimed in claim 5, which concerns retracting the shuttle conveyor from an extended position to a retracted position to fill a new first row of a succeeding container group with food product drafts. Pet. 64–65; Ex. 1001, 8:39–45. Petitioner contends that it demonstrated that Hollymatic discloses this limitation, and that one of ordinary skill would have been motivated to include this feature with reasonable expectation of success, for the reasons explained with respect to claims 5 and 19 above. Pet. 65; Ex. 1003 ¶¶ 233–234. Patent Owner does not dispute Petitioner's contentions for claim 21, but did argue that claim 5 is patentable because one of ordinary skill in the art would not have operated a withdrawing conveyor like Honsberg and Hollymatic to fill containers in the advancing direction, as this

Appx23751

would add steps and complexity to the shuttle conveyor's operation. *See* PO Resp. 59–64. We agree with Patent Owner that one of ordinary skill in the art would not configure the withdrawing conveyor of the Honsberg-Hollymatic combination to carry out the action of claim 21.

### H. Ground 5: Asserted Obviousness of Claims 1, 4–6, 10 and 13–14 based on Weber 446 and Hollymatic

Petitioner contends claims 1, 4–6, 10 and 13–14 would have been obvious over Weber446 and Hollymatic. Pet. 65–81.

### 1. Weber466 (Ex. 1007)

Weber466's apparatus is shown below in Figure 1. Ex. 1007, Fig. 1.



Weber466's Figure 1 above shows slicing unit 13 with feeder 34 comprising conveyor belts which convey portions of sliced food from the slicing site to transfer apparatus 23. *Id.* at 7. Transfer apparatus 23, which is a conveyor belt, transfers portions 11 of sliced product slices arranged in an overlapping or stacked manner, to transfer unit 15. *Id.* Transfer unit 15 in turn transfers the portions 11 to packaging machine 14 without changing the relative position of portions 11. *Id.* Packaging machine 14 uses packaging film 32 wound on drum 31 to package the portions 11. *Id.*

Appx23752

Details of the transfer unit 15 are shown below in Figure 3.  *Id.* at 10, Fig. 3.



In Figure 3 above, transfer unit 15 moves to a transfer position where portion 11 is arranged above product receiver 18 of the packaging machine 14.  *Id.* at 10, Fig. 3.  To transfer product 11 without disturbing its structure, endless belt 22 is clamped, and metal support plate 21 and deflection rolls 19 are moved abruptly to the right, causing portion 11 to drop vertically downwards without losing its structure.  *Id.* at 10–12, Fig. 3. Weber466 likens this action to the portion 11 having the ground cut from under its feet.  *Id.* at 11.

## 2. Claim 1

### a) Petitioner's reading of Claim 1 on the Weber446-Hollymatic Combination

The preamble of claim 1 recites as follows:

*An apparatus for filling food product drafts into packages, comprising:*[5]

Ex. 1001, 5:56–57.

Petitioner contends that, to the extent the preamble is viewed as limiting, Weber446 and Hollymatic teach the preamble. Pet. 65–66; Ex. 1003 ¶ 236. Petitioner contends Weber446 discloses an apparatus for conveying portions of product slices to a packaging machine arranged below the slicing unit. Ex. 1007, code (57). Petitioner contends that Weber446's Figure 3 shows the product slices are drafts, and thus would have been understood to be drafts as claimed. Pet. 65; Ex. 1001, 1:10–13; Ex. 1007, Fig. 3; Ex. 1003 ¶ 236. Petitioner contends Hollymatic also teaches the preamble for reasons explained in Section II.D.3. Accordingly, Petitioner asserts that Weber446 and Hollymatic disclose the preamble limitation. Ex. 1003 ¶ 238.

Other than the "drafts" construction issue discussed in Section II.C.1, Patent Owner does not dispute this reading of claim 1's preamble on the Weber446-Hollymatic combination. *See generally* PO Resp.

Claim 1 further recites the "container supply" limitation as follows:

*a supply of open top container portions arranged in rows that are displaced along a longitudinal direction and having a first row and a longitudinally displaced second row and*

---

[5] We find it unnecessary to decide whether the preamble is limiting because Petitioner has shown it is taught by the prior art and Patent Owner does not dispute this evidence.

Ex. 1001, 5:58–61.

Petitioner alleges Weber446 and Hollymatic disclose this "container supply" limitation. Pet. 66; Ex. 1003 ¶¶ 239. Specifically, Petitioner contends Weber446 discloses a supply of open top containers, which it refers to as "product receivers 18." Pet. 66; Ex. 1005, Figs. 2, 12; Ex. 1003 ¶ 240. Petitioner contends Weber446's Figure 3 shows that the product receivers are open top containers. Pet. 66; Ex. 1005, Fig. 3; Ex. 1003 ¶ 240.

Petitioner contends Weber446's Figure 1 shows that its packaging machine 14 moves the product receivers 18 in a longitudinal direction. Pet. 67; Ex. 1005, Figs. 1, 3; Ex. 1003 ¶ 241.

Petitioner also contends Hollymatic discloses this limitation for reasons stated in Section II.D.3. Pet. 67; Ex. 1003 ¶ 241.

Petitioner contends, accordingly, that Weber446 and Hollymatic teach the "container supply" limitation. Pet. 67; Ex. 1003 ¶ 241.

Patent Owner does not dispute this reading of claim 1's"container supply" limitation on the Weber446-Hollymatic combination. *See generally* PO Resp.

Claim 1 further recites the "movable web" limitation as follows:

*carried by an elongated web of film and movable by said web along said longitudinal direction into a fill station*

Ex. 1001, 5:61–63.

Petitioner contends Weber446 discloses this "movable web" limitation. Pet. 67; Ex. 1003 ¶ 244. Petitioner contends Weber446 discloses a supply of open top containers, i.e., product receivers 18. Pet. 67; Ex. 1007, 12, Fig. 2; Ex. 1003 ¶ 245. Petitioner notes that Weber446's packaging film 32 is wound on a supply drum 31. Pet. 67–68; Ex. 1007, 12; Ex. 1003 ¶ 245. Petitioner contends that the packaging film advances to the product

65

receiver of the packaging machine in a longitudinal direction. Ex. 1007, 12, Fig. 1; Ex. 1003 ¶ 245. Petitioner contends that when the film is located at a product receiver, a transfer unit withdraws to deposit portions 11 into the product receiver. Pet. 68; Ex. 1007, 10, Fig. 1; Ex. 1003 ¶ 245. Petitioner contends a person of ordinary skill in the art would have understood the location where the product is deposited as a fill station. Pet. 68; Ex. 1003 ¶ 245. Petitioner asserts that, accordingly, Weber446 discloses the "movable web" limitation. Pet. 69; Ex. 1003 ¶ 246.

Patent Owner does not dispute that the "movable web" limitation reads on the Weber446-Hollymatic combination. *See generally* PO Resp.

Claim 1 further recites the "shuttle conveyor" limitation as follows:

*a shuttle conveyor having a conveying surface, said shuttle conveyor comprises a device to retract and to extend said conveying surface*

Ex. 1001, 5:64–66.

Petitioner contends that Weber446's transfer unit 15 is longitudinally movable. Pet. 69; Ex. 1007, 4; Ex. 1003 ¶ 248. Petitioner contends Weber446's transfer unit includes endless belt 22. Pet. 69; Ex. 1007, 4; Ex. 1003 ¶ 248. Petitioner contends drafts move on an upper run of the endless belt. Pet. 69; Ex. 1007, 4; Ex. 1003 ¶ 248. Petitioner contends Weber446's Figures 1 and 3 show the transfer unit moving from a retracted to an extended position. Pet. 69; Ex. 1007, 4; Ex. 1003 ¶ 248.

Petitioner also contends that Hollymatic teaches the "shuttle conveyor" limitation as explained in Section II.D.3. Pet. 70; Ex. 1003 ¶ 249.

Petitioner asserts that, accordingly, Weber446 and Hollymatic disclose the "shuttle conveyor" limitation. Pet. 71; Ex. 1003 ¶ 250.

Patent Owner does not dispute Petitioner's reading of the "shuttle conveyor" limitation on the Weber446-Hollymatic combination. *See generally* PO Resp.

Claim 1 further recites the "first row" limitation as follows:

> *said conveying surface arranged above said fill station and having an end region longitudinally movable to a first position arranged to deposit food product drafts into said container portions of said first row by said conveying surface*

Ex. 1001, 5:66–6:4.

Petitioner contends Weber446 teaches the "first row" limitation. Pet. 71; Ex. 1003 ¶ 251. Petitioner contends Weber446's Figures 1 and 3 show transfer unit 15 moving horizontally from a retracted to an extended position. Pet. 71; Ex. 1007, 8; Ex. 1003 ¶ 253. Petitioner contends that horizontal movement of the transfer unit 15 is in the longitudinal direction. Pet. 71; Ex. 1007, Fig. 1; Ex. 1003 ¶ 253. Petitioner contends the transfer unit moves as one unit and thus the end region of transfer unit moves with the rest of the transfer unit. Pet. 71; Ex. 1003 ¶ 253.

Petitioner further asserts that Weber446's transfer unit 15 moves to a transfer position where the portion 11 is arranged precisely above product receiver 18 of packaging machine 14. Pet. 71; Ex. 1007, 10; Ex. 1003 ¶ 254. Petitioner contends that a person of ordinary skill in the art would have understood this as "a first position arranged to deposit food product drafts into said container portions of said first row by said conveying surface." Pet. 71; Ex. 1007, Figs. 2, 3; Ex. 1003 ¶ 254.

Petitioner further asserts, for reasons explained in Section II.D.3.a), that Hollymatic's Figure 5 teaches a sequential row loading process with a first position (position C). Pet. 72.

Petitioner contends that, accordingly, Weber446 and Hollymatic teach the "first row" limitation. Pet. 72; Ex. 1003 ¶ 255.

Patent Owner disputes Petitioner's reading of the "first row" limitation on the Weber446-Hollymatic combination. PO Resp. 22–34; Sur-Reply 1–14. We address Patent Owner's contentions in Section II.H.2.d)(1).

Claim 1 further recites the "second row" limitation as follows:

*while said web remains stationary, said device retracts or extends said conveying surface to reposition said end region to a second position arranged to deposit food product drafts carried on said conveying surface into said container portions of said second row.*

Ex. 1001, 6:4–8.

Petitioner contends that, as discussed with respect to ground 1, Hollymatic teaches that the containers remain stationary as Hollymatic's sled 10 retracts to its conveying surface to reposition its end region to a second position, which is the retracted position D shown in Hollymatic's Figure 5. Pet. 72; Section II.D.3.a). Petitioner contends that when Weber446 is modified such that it includes an array of container portions, like those in Hollymatic, the combination of Weber446 and Hollymatic teach the "second row" limitation. Pet. 72–73; Ex. 1003 ¶ 256.

Patent Owner disputes Petitioner's reading of the "second row" limitation on the Honsberg-Hollymatic combination. PO Resp. 22–34; Sur-Reply 1–14. We examine Patent Owner's arguments in Section II.H.2.d)(1).

### b) Motivation to Combine

Petitioner contends that a person of ordinary skill in the art would have been motivated to combine Honsberg and Hollymatic for several reasons. Pet. 73–74. Using Hollymatic's arrays of containers with multiple rows increases product. Pet. 73; Ex. 1003 ¶ 257. One would have been

68

motivated to modify Weber446's product depositing apparatus to include a second withdraw to deposit food articles in a second row of containers during the container-formation dwell time for the reasons described in Section II.D.3.b). Pet. 73; Ex. 1003 ¶ 258. Using Hollymatic's shuttle conveyor is consistent with Weber446's goal of depositing drafts into container portions with the least possible disturbance of overlapped or stacked food portions. Pet. 73; Ex. 1007, 1; Ex. 1003 ¶ 259. According to Petitioner, Weber446's shuttle conveyor operates in a similar way as Hollymatic's conveyor. Pet. 73–74; Ex. 1003 ¶ 259. Petitioner contends a person of ordinary skill in the art would have been motivated to use Weber446's conveyor with a second withdraw as disclosed in Hollymatic to deposit drafts in successive rows of containers. Pet. 74; Ex. 1003 ¶ 259.

Patent Owner disputes Petitioner's motivation to combine Weber446 and Hollymatic. PO Resp. 49–58; Sur-Reply 24–26. We address Patent Owner's arguments in Section II.H.2.d)(2).

### c) Reasonable Expectation of Success

Petitioner contends that a person of ordinary skill in the art would have recognized the ease of implementing the proposed modification to Weber446 to incorporate a second withdraw to fill a second row of container portions. Pet. 74; Ex. 1003 ¶ 263. Petitioner contends that since Weber446 already includes a first withdraw, the only modification is to implement a second withdraw with a second row of container portions, and the necessary modification would have been minor and within the ability of a person of ordinary skill in the art. Pet. 74; Ex. 1003 ¶ 264.

As an example, Petitioner contends a person of ordinary skill in the art would have appreciated that Weber446's transfer unit 15 could be longer to

accommodate a second row of drafts and simple implementation of a second withdraw. Pet. 74; Ex. 1003 ¶ 264. Petitioner contends any additional modifications that may be necessary to facilitate a second withdraw, such as repositioning pulleys, would have been within the ability of a person of ordinary skill in the art, and would have required only routine mechanical skill to adjust Weber446's system. Pet. 74–75; Ex. 1003 ¶ 264.

Patent Owner disputes Petitioner's reasonable expectation of success for reasons explained in Section II.H.2.d)(2) below.

### d) Arguments and Analysis

Patent Owner's arguments against the combination of Weber446 and Hollymatic are similar to those against the combination of Honsberg and Hollymatic, which we previously discussed in Section II.D.3.d). We disagree with Patent Owner's arguments for similar reasons.

### (1) "First Row" and "Second Row" Limitations: "multi-fill" deposition

Patent Owner contends that Weber446 and Hollymatic fail to disclose or suggest "multi-fill" deposition. PO Resp. 22–34. We determine that the "first row" and "second row" limitations of claim 1 are not limited to "multi-fill" deposition, but cover "piece-by-piece" deposition as well. *See* Section II.C.2. Patent Owner thus urges a distinction that is not supported by the claim, and we do not agree with Patent Owner's contention for this reason.

In addition, even if we assumed the "first row" and "second row" limitations are limited to "multi-fill" deposition, Petitioner has shown these limitations are taught or at least suggested by the Weber446-Hollymatic combination. Petitioner notes that Weber446 describes a "portion" as having "individual product slices." Reply 18 (citing Ex. 1007, 2) (emphasis

omitted). Weber446 further describes its transfer unit (a conveyor) has a product support that is moved abruptly away so that "the ground is cut . . . from underneath the feet" of the portions (plural) into a product receiver (singular). Ex. 1007, 2.

Hollymatic teaches multi-lane deposition. Ex. 1006, Fig. 4. Dr. Sand testifies that Hollymatic's food products "are deposited in a fast cycle in trays that are arranged in double-row groups." Ex. 1003 ¶ 257; Ex. 1006, 8. Dr. Sand testifies that one of ordinary skill in the art would use Hollymatic's double-row containers because this increases the rate of production. Ex. 1003 ¶ 257. Petitioner modifies Weber446's draft deposition to include multiple lanes of products and containers (an array) and to implement a second withdraw as disclosed by Hollymatic. Reply 19 (citing Pet. 73; Ex. 1003 ¶¶ 257–262, 164; Ex. 1021 ¶¶ 63–70).

Considering this evidence, we find there is sufficient basis for a person of ordinary skill in the art to modify Weber446's transfer unit with Hollymatic's second withdraw to perform "multi-fill" deposition of food products in rows of containers, leading one of ordinary skill in the art to the subject matter of claim 1.

### (2) Redesigning Weber446 with Hollymatic's Shuttle Conveyor

Patent Owner argues it would not have been obvious for one of ordinary skill in the art to redesign Weber446 with Hollymatic's hamburger shuttle conveyor. PO Resp. 49–58; Sur-Reply 24–26. For the following reasons, we do not agree with Patent Owner's contentions.

(a) *Patent Owner's contention that Hollymatic's patty shuttle conveyor would not have worked to deposit overlapping sliced meats/cheeses required in Weber446*

Patent Owner argues that Weber446 fixes its conveyor while withdrawing it, causing a straight vertical drop of food product. PO Resp. 51 (citing Ex. 1007, 4; Ex. 2014 ¶ 137). Patent Owner argues that Hollymatic operates differently by moving its sled backward while moving its conveyor forward, which causes a patty to fall forward at an angle. *Id.* (citing Ex. 1006, 5; Ex. 2014 ¶ 136). Patent Owner contends that these are "fundamentally different ways of depositing food" making Weber446 and Hollymatic incompatible. *Id.* at 52 (citing Ex. 2014 ¶ 138).

Patent Owner's expert testimony is conclusory (*see* 37 C.F.R. § 42.65(a))[6] and conflicts with Hollymatic's teaching that food objects fall vertically downward, not at an angle, as a result of inertia. *Id.* at 51; Ex. 1006, 5. Patent Owner does not explain sufficiently why Hollymatic's teaching may be incorrect and actually result in food objects falling at an angle, as Patent Owner asserts.

Patent Owner acknowledges Weber446 seeks to cause the "least possible disturbance in the structure of the portions that is formed in the course of overlapping or stacking." PO Resp. 53 (citing Ex. 1007, 1). Nonetheless, Patent Owner contends the Weber446-Hollymatic combination would result in spreading of drafts and inaccurate deposition. *Id.* at 53 (citing Ex. 2014 ¶ 138; Ex. 1001, 1:45–52). Patent Owner does not explain sufficiently why Weber446's technique would result in spreading out and inaccurate deposition for drafts when it seeks to cause the "least possible

---

[6] "Expert testimony that does not disclose the underlying facts or data on which the opinion is based is entitled to little or no weight."

disturbance" to its food portions.  Ex. 1007, 1–2.  Patent Owner states that the "violent jerking away" of Weber446's product support causes spreading out of drafts, but Patent Owner does not explain why one of ordinary skill would choose to implement a withdraw that is "violent" and results in disturbance of drafts.  PO Resp. 52–53; Ex. 1007, 1–2.

> *(b) Patent Owner's contention that adding Hollymatic's shuttle conveyor into Weber446 would have caused many problems*

Patent Owner contends that introducing Hollymatic's shuttle conveyor with multiple rows/portions into Weber446's single deposit conveying system would have cause problems with design complexity, malfunctions, and operation flow.  PO Resp. 53 (citing Ex. 2014, Section XI.B).  Patent Owner contends avoiding these problems was of paramount concern to Weber446 and that Petitioner's modification contravenes Weber446's stated purpose.  *Id.* at 53 (citing Ex. 1007, 1–2).

Specifically, Patent Owner contends that Petitioner does not explain how one of skill could use Hollymatic's multi-sensor control system with Weber446's simple synchronization system.  *Id.* at 54 (citing Ex. 2014 ¶¶ 146–148).  Petitioner counters that it has not argued that the Weber446-Hollymatic combination requires a multi-sensor control system, and that, in any case, both experts agree one of ordinary skill in the art would have been able to select and implement appropriate sensors, servomotors, and controllers.  Reply 27.

We agree with Petitioner.  Assuming proper staging of food product, Patent Owner does not show why a repositioning pulley could not be used to implement a second withdraw.  *See* Ex. 1021 ¶¶ 68–71.  Even if one chose to implement a multi-sensor control system, the experts testify that this too would not have been beyond the ability of a person of ordinary skill in the

art. Reply 27 (citing Ex. 1020, 40:25–43:11, 45:8–62:3; Ex. 1021 ¶ 73). Hollymatic teaches how multiple sensors can be used to control the withdrawing conveyor's sled. Ex. 1006, 6–9. Patent Owner does not explain why integrating Hollymatic's multi-sensor control system with Weber446 to accomplish a second withdraw would have posed any difficulty given Hollymatic's teachings.

Patent Owner asserts that Weber446 requires synchronization between different components operating at the same speed, but does not explain why this requirement is incongruent with Weber446's or Hollymatic's control system. PO Resp. 54. Patent Owner further contends that Weber446 rejects using Hollymatic's deflection (compensation) rollers due to added complexity and susceptibility to malfunctions. *Id.* at 55. But Patent Owner does not explain why one of ordinary skill in the art would not have simply used Weber446's solution, as Petitioner proposes, rather than Hollymatic's deflection rollers if their use would be problematic. Reply 28 (citing PO Resp. 55; Ex. 1021 ¶ 74).

Patent Owner contends Hollymatic uses "jerky withdraws" which would cause staged product to "scatter, slip, and shift" when implemented in Weber446. PO Resp. 55–57 (citing Ex. 2014 ¶¶ 149–152; Pet. 27–28; Ex. 1003 ¶ 77–79; Ex. 1006, 5; Ex. 1007, 1–3). Petitioner contends that incorporating Hollymatic's shuttle conveyor is not part of the proposed combination, and that Patent Owner's contention is irrelevant. Reply 28 (citing Ex. 1021 ¶ 74).

As Petitioner notes, the person of ordinary skill in the art is not an automaton, but is a person of ordinary creativity. *Id.* at 19–20 (citing *KSR*, 550 U.S. at 415, 418). Such person would have sought to implement

Weber446's transfer unit 15 with endless belt 22 to transfer one row of food products at a time while the next row of food product is staged on transfer apparatus 23. Ex. 1007, 8, Fig. 1. As such, no staged product capable of disturbance would be on the transfer unit when it withdraws to deposit a row of drafts. Alternatively, one would have made the transfer unit's action sufficiently gentle so as not to disturb successive rows of food product. And one would have been guided to do this by Weber446's statement that withdrawal of its product support does not disturb food portions being deposited. *Id.* at 10. Patent Owner does not adequately explain why these options would not have been implemented by a person of ordinary skill in the art.

Patent Owner further contends that Petitioner's proposed modifications could negatively impact upstream operation flow. PO Resp. 57–58. According to Patent Owner, Hollymatic requires a specific operation flow upstream of its shuttle conveyor, which transfers a single stream of patties on a conveyor belt into staggered groups of three patties on a different conveyor belt. *Id.* at 58 (citing Ex. 1006, Fig. 4). Patent Owner argues that Petitioner does not indicate how Weber446 could be successfully modified to have this operation flow leading to a shuttle conveyor that deposits rows of drafts. *Id.*

Petitioner, however, did not rely on Hollymatic's staging, nor is claim 1 limited to any particular type of staging. Also, the staging mentioned in the '936 Patent is that of Sandberg. Ex. 1001, 1:15–21; Ex. 1011. Patent Owner does not explain why Sandberg's staging of food product could not be used in the Weber446-Hollymatic combination.

Accordingly, Patent Owner's contentions do not expose any defects in Petitioner's Weber446-Hollymatic combination.

### e) Conclusion for Claim 1

We determine that the information presented in the Petition, Response, Reply, and Sur-Reply, and accompanying exhibits and testimony, shows by a preponderance of the evidence that claim 1 is unpatentable as obvious over the Weber446-Hollymatic combination. Under the stated meanings of the limitations, Petitioner makes a sufficient showing that each element of claim 1 is taught or suggested by the Weber446-Hollymatic combination, that a person of ordinary skill in the art had reason to combine the references, with a reasonable expectation of success in arriving at the claimed invention.

### 3. Claim 10

#### a) Petitioner's Reading of Claim 10 on the Weber446-Hollymatic Combination

The preamble of claim 10 recites as follows:

*An apparatus for filling food product drafts into pockets formed into an elongated web of film, said pockets having open tops and arranged in rows that are displaced along a longitudinal direction and having at least a first row and a longitudinally displaced second row and movable with said web along said longitudinal direction, comprising:[7]*

Ex. 1001, 6:62–67.

Petitioner contends, to the extent the preamble is limiting, that Weber446 and Hollymatic teach this limitation. Pet. 75; Ex. 1003 ¶ 267.

---

[7] We find it unnecessary to decide whether the preamble is limiting because Petitioner has shown it is taught by the prior art and Patent Owner does not dispute this evidence.

Petitioner contends Weber446 and Hollymatic teach the first part of the preamble for reasons previously stated. Pet. 65–66, 75; Ex. 1003 ¶ 272. Petitioner further contends Weber446 and Hollymatic teach the second part of the preamble for reasons previously stated. Pet. 66–69, 75–76. Petitioner contends Weber446 describes that packaging machine 14 forms the packaging film 32 to make product receivers 18. Pet. 76. Petitioner contends a person of ordinary skill in the art would have understood that Weber446 teaches pockets formed into an elongated web of film. Pet. 76; Ex. 1003 ¶¶ 268–271. Petitioner contends that, accordingly, Weber446 and Hollymatic disclose the preamble of claim 10. Pet. 76; Ex. 1003 ¶ 273.

Apart from the "drafts" issued discussed in Section II.C.1, Patent Owner does not dispute that Weber446 and Hollymatic disclose the preamble of claim 10. *See generally* PO Resp.

Claim 10 recites the "fill station" and "moving pockets" limitations as follows:

> *a fill station and a mechanism for moving said pockets longitudinally into said fill station; and*

Ex. 1001, 7:1–2.

Petitioner contends Weber446 discloses this limitation. Pet. 76; Ex. 1003 ¶ 274. Petitioner contends that Weber446's packaging film 32 advances to product receiver 18 where transfer unit 15 withdraws to deposit portions 11 into the product receiver, which a person of ordinary skill in the art would have understood as a fill station. Pet. 76; Ex. 1007, 10; Ex. 1003 ¶ 274. Petitioner asserts Weber446 teaches a mechanism to move receptacles to Weber446's fill station. Pet. 76; Ex. 1003 ¶ 274. Petitioner contends Weber446's Figure 1 shows packaging film 32 moving in a longitudinal direction. Pet. 76; Ex. 1007, Fig. 1; Ex. 1003 ¶ 274. Petitioner

asserts Weber446's packaging film 32 is wound on supply drum 31.
Pet. 76–77; Ex. 1007, 7; Ex. 1003 ¶ 274. Petitioner avers a person of
ordinary skill in the art would have recognized that Weber446 includes a
mechanism to advance packaging film 32 to unwind it from supply drum 31.
Pet. 77; Ex. 1007, Figs. 1, 3; Ex. 1003 ¶ 274. Petitioner argues Weber446
discloses the "fill station" and "moving pockets" limitation. Pet. 77;
Ex. 1003 ¶ 275.

Patent Owner does not dispute that Weber446 discloses this
feature. *See generally* PO Resp.

Claim 10 recites the "shuttle conveyor," "first row," and "second
row" limitations as follows:

> *a shuttle conveyor having an endless belt conveying surface, said
> shuttle conveyor comprises a device to retract and to extend said
> conveying surface longitudinally, said conveying surface
> arranged above said fill station and having an end longitudinally
> movable to a first position arranged to deposit food product
> drafts into said pockets of said first row by said conveying
> surface, and while said web remains stationary, said device
> retracts or extends said conveying surface to longitudinally
> reposition said end to a second position arranged to deposit food
> product drafts carried on said conveying surface into said
> pockets of said second row.*

Ex. 1001, 7:3–14.

Petitioner contends Weber446 and Hollymatic disclose the "shuttle
conveyor," "first row," and "second row" limitations for the reasons stated
for claim 1. Pet. 77–79. Specifically, Petitioner asserts Weber446 discloses
the "shuttle conveyor" limitation (Pet. 69–71); the "first row" limitation
(Pet. 71–72); and the "second row" limitation (Pet. 72–73). Pet. 78.
Petitioner argues that, accordingly, Weber446 and Hollymatic disclose the

"shuttle conveyor," "first row," and "second row" limitations. Pet. 79; Ex. 1003 ¶¶ 277–279.

Patent Owner disputes Petitioner's reading of the "first row" and "second row" limitations on the combination of Weber446 and Hollymatic for the reasons stated with respect to claim 1. PO Resp. 22–34; Sur-Reply 1–15.

For the reasons stated in Section II.H.2.d), Petitioner has shown each limitation of claim 10 is disclosed by the Weber446-Hollymatic combination and Patent Owner's arguments do not show otherwise.

### b) Motivation to Combine Weber446 and Hollymatic

Petitioner contends that a person of ordinary skill in the art would have been motivated to combine Weber446 and Hollymatic for the reasons stated with respect to ground 1. Pet. 79; Ex. 1003 ¶ 280.

Patent Owner disputes Petitioner's motivation to combine Weber446 and Hollymatic. PO Resp. 24–26.

Patent Owner's arguments do not negate Petitioner's showing of a motivation to combine for the reasons stated in Section II.H.2.d) with respect to claim 1.

### c) Reasonable Expectation of Success

Petitioner contends that a person of ordinary skill in the art would have had a reasonable expectation of success when combining the teachings of Weber446 and Hollymatic, and, in making that combination, would have readily arrived at the apparatus of claim 10 for the reasons discussed in ground 1. Pet. 79; Ex. 1003 ¶¶ 281–282.

Patent Owner disputes Petitioner's reasonable expectation of success in combining Weber446 and Hollymatic. PO Resp. 49–58.

We find Patent Owner's arguments do not negate Petitioner's showing of a reasonable expectation of success in combining Weber446 and Hollymatic for the reasons stated in Section II.H.2.d) for claim 1.

### d) Conclusion for Claim 10

In light of the foregoing discussion, we determine that the information presented in the Petition, Response, Reply, Sur-Reply, and accompanying exhibits and testimony, shows the unpatentability of claim 10 as obvious over the combination of Weber446 and Hollymatic. Petitioner makes a sufficient showing that each element of claim 10 is taught or suggested by the Weber446-Hollymatic combination, considered as a whole, and that a person of ordinary skill in the art had reason to combine the references, with a reasonable expectation of success in arriving at the apparatus of claim 10.

### 4. Claims 4–6, 13, and 14

Petitioner contends that Hollymatic discloses the limitations of claims 4 and 13 for the reasons mentioned in Section II.D.5.a) and d). Pet. 80–81 (citing Ex. 1003 ¶¶ 285–286, 297). Petitioner contends Weber446 discloses concave container portions formed in a web, and that, accordingly, claim 6 would have been obvious. Pet. 80–81; Ex. 1007, 9, Figs. 1, 3; Ex. 1003 ¶ 293–294. Petitioner also contends that a person of ordinary skill in the art would have been motivated to combine Weber446 and Hollymatic with reasonable expectation of success for the reasons stated above in Sections II.H.2.b) and II.H.2.c).

Patent Owner presents no other arguments for claims 4, 6 and 13 beyond those presented for claims 1 and 10. We do not agree with these arguments for the reasons previously stated. *See* Section II.H.2.d).

Patent Owner contends that the Weber446-Hollymatic combination fails to render claim 5 obvious.  PO Resp. 59–63; Sur-Reply 26.  For similar reasons as noted in Section II.D.5.b), we agree with Patent Owner's contention that Petitioner has not carried its burden to show by preponderance of the evidence that claim 5 is unpatentable over the Weber446-Hollymatic combination.  Claims 14 and 21 recite similar limitations as claim 5, and thus, for the same reason, Petitioner has not carried its burden to show these claims unpatentable.

Specifically, as with the Honsberg-Hollymatic combination analyzed above, the Weber446-Hollymatic combination teaches a withdrawing conveyor that "takes the ground out from under the feet" of the food drafts being deposited.  A person of ordinary skill in the art would have avoided configuring such a withdrawing conveyor from the withdrawn (retracted) position toward the advanced (extended) position because it would double the number of steps required to deposit food portions.  PO Resp. 59–63 (citing Ex. 2014 ¶¶ 156–158, 160–163, 289; Ex. 1007, Fig. 3).

## I. Remaining Contentions

Patent Owner asserts that Petitioner's person of ordinary skill in the art would never have been able to combine the references as claimed. PO Resp. 63–64.  Although Patent Owner frames its contention this way, the contention is more an effort to discredit Dr. Sand's testimony than to argue the reasons to combine the references.

Specifically, Patent Owner contends that Dr. Sand indicated that any type of engineering degree or a business person with some years of experience with food would qualify as a person of ordinary skill in the art. *Id.* at 63 (citing Ex. 2010, 143:17–148:13).  Reviewing the cited part of

Dr. Sand's deposition, however, we find no question asking for the definition of a person of ordinary skill in the art. How she would have understood that she was being questioned on this subject is not apparent from the lines of questioning in the cited portion of her deposition.

Patent Owner further contends Dr. Sand's opinion that one of ordinary skill in the art would have found Petitioner's combinations "routine" allegedly is "not credible, particularly given the lack of detail and support." PO Resp. 64 (citing Ex. 1003 ¶¶ 118, 264). Patent Owner further alleges Dr. Sand is inexperienced compared to Mr. Palmer; that her testimony is conclusory; and that a court has found she does not have demonstrated expertise in a number of areas in which she offers opinions. *Id.*

Petitioner replies that the court excluded Dr. Sand's testimony related to factual narratives and economic damages. Reply 30. At the same time, Petitioner contends, the court qualified Dr. Sand as a food packaging expert. *Id.* (citing Ex. 2013, 13; Ex. 1021 ¶ 78). Petitioner further contends Patent Owner's expert testified that changes to sensors, servomotors, and controllers were routine years before the relevant date. *Id.* at 31 (citing Ex. 1020, 45:8–62:3). In addition, Petitioner contends that Dr. Sand has designed food-packaging machinery, unlike Mr. Palmer who admits that he never designed a food article packaging machine. *Id.* (citing Ex. 1003 ¶¶ 15–27; Ex. 1020, 35:25–36:7).

To the extent Patent Owner seeks to discredit Dr. Sand's testimony, the record shows that she has more than thirty years of experience in food science and packaging. Ex. 1004. She is the owner and founder of Packaging Technology and Research, LLC, is an adjunct professor at the University of Minnesota, Michigan State University, and California

Appx23772

Polytechnic University (CalPoly), is a columnist and author on food packaging, and has extensive leadership experience in this industry. *Id.* We decline to broadly discredit her testimony, if that is what Patent Owner seeks, given her considerable knowledge, experience, and credentials.

Patent Owner challenges the institution of *inter partes* review on the basis that the current structure of the Board is unconstitutional because the appointment of administrative patent judges allegedly violates the Appointments Clause, U.S. Const. Art. II, § 2, cl. § 2. PO Resp. 21. We decline to consider Patent Owner's constitutional challenge as the issue has been addressed by the Federal Circuit in *Arthrex, Inc. v. Smith & Nephew, Inc.*, 941 F.3d 1320, 1328, 1337 (Fed. Cir. 2019), *cert. granted sub nom. United States v. Arthrex, Inc.*, 2020 WL 6037206 (Oct. 13, 2020) ("This as-applied severance . . . cures the constitutional violation.").

Patent Owner alleges that Petitioner's Reply exceeded its proper scope and submitted new arguments and evidence not present in the Petition. Paper 32 (citing Reply 14–17, Ex. 1021 ¶¶ 39–61; Ex. 1023; Ex. 1024; Ex. 1025; Ex. 1026; Ex. 1027). We did not rely on any of these alleged new arguments, testimony, or evidence in rendering our decision, so this matter is moot.

### III. CONCLUSION[8]

For the reasons discussed above, we conclude:

| Claims | 35 U.S.C. § | Reference(s)/Basis | Claims Shown Unpatentable | Claims Not shown Unpatentable |
|---|---|---|---|---|
| 1, 4–6, 10, 13, 14 | 103 | Honsberg, Hollymatic | 1, 4, 6, 10, 13 | 5, 14 |
| 7–9, 15–17 | 103 | Honsberg, Hollymatic, Mello | 7–9, 15–17 | |
| 2, 11, 18 | 103 | Honsberg, Hollymatic, Mahaffy535 | 2, 11, 18 | |
| 3, 12, 19–21 | 103 | Honsberg, Hollymatic, Mahaffy535, Scheflow, Sandberg | 3, 12, 19, 20 | 21 |
| 1, 4–6, 10, 13, 14 | 103 | Weber446, Hollymatic | 1, 4, 6, 10, 13 | 5, 14 |
| **Overall Outcome** | | | 1–4, 6–13, 15–20 | 5, 14, 21 |

---

[8] Should Patent Owner wish to pursue amendment of the challenged claims in a reissue or reexamination proceeding subsequent to the issuance of this decision, we draw Patent Owner's attention to the April 2019 *Notice Regarding Options for Amendments by Patent Owner Through Reissue or Reexamination During a Pending AIA Trial Proceeding*. *See* 84 Fed. Reg. 16,654 (Apr. 22, 2019). If Patent Owner chooses to file a reissue application or a request for reexamination of the challenged patent, we remind Patent Owner of its continuing obligation to notify the Board of any such related matters in updated mandatory notices. *See* 37 C.F.R. § 42.8(a)(3), (b)(2).

IV. ORDER

For the foregoing reasons, it is

ORDERED that claims 1–4, 6–13, and 15–20 of the '936 Patent are unpatentable;

FURTHER ORDERED that Petitioner has not shown claims 5, 14, and 21 of the '936 Patent to be unpatentable;

FURTHER ORDERED that, because this is a Final Written Decision, parties to the proceeding seeking judicial review of the decision must comply with the notice and service requirements of 37 C.F.R. § 90.2.

For PETITIONER:

Ralph W. Powers III
Daniel E. Yonan
Donald R. Banowit
Kyle E. Conklin
James T. Buchanan
Graham C. Phero
STERNE, KESSLER, GOLDSTEIN & FOX
tpowers-PTAB@sternekessler.com
dyonan-PTAB@sternekessler.com
dbanowit-PTAB@sternekessler.com
kconklin-PTAB@sternekessler.com
jbuchanan-PTAB@sternekessler.com and
gphero-PTAB@sternekessler.com
PTAB@sternekessler.com


For PATENT OWNER:

Michael G. Babbitt
Sara T. Horton
Ren-How H. Harn
WILLKIE FARR & GALLAGHER LLP
MBabbitt@willkie.com
SHorton@willkie.com
RHarn@willkie.com

Appx23776

Page 1

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
ST. JOSEPH DIVISION

_____

PROVISUR TECHNOLOGIES, INC., )
                             )
      Plaintiff,      )
                      ) Civil Action
v.                    ) No. 5:19-cv-06021
                      ) No. 5:20-cv-06069
                      )
WEBER, INC., et al.,      )
                          )
      Defendants.     )
_____ )

HIGHLY CONFIDENTIAL - CONTAINS SOURCE CODE

Video-recorded Deposition of RICHARD M.
GOODIN, PE, taken at Willkie Farr & Gallagher
LLP, 300 North LaSalle Street, Chicago,
Illinois, before Donna M. Kazaitis, IL-CSR,
RPR, and CRR, commencing at the hour of
9:10 a.m. on Friday, April 8, 2022.

_____

DIGITAL EVIDENCE GROUP
1730 M Street, NW, Suite 812
Washington, D.C. 20036
(202) 232-0646

---

Page 2

```
 1   APPEARANCES:
 2
 3   ON BEHALF OF THE PLAINTIFF:
 4     WILLKIE FARR & GALLAGHER LLP
       BY: HENRY THOMAS, ESQ.
 5       300 North LaSalle Street
         Chicago, Illinois
 6       312.728.9040
         hthomas@willkie.com
 7   -and-
 8     HUSCH BLACKWELL
       BY: TAYLOR CONCANNON HAUSMANN, ESQ.
 9       4801 Main Street, Suite 1000
         Kansas City, Missouri 64112
10       816.983.8000
         taylor.concannonhausmann@huschblackwell.com
11
12   ON BEHALF OF THE DEFENDANTS:
       STERNE KESSLER GOLDSTEIN & FOX
13     BY: DANIEL S. BLOCK, ESQ.
         STEVEN M. PAPPAS, ESQ.
14       1100 New York Avenue NW, Suite 600
         Washington, DC 20005
15       202.371.2600
         dblock@sternekessler.com
16       spappas@sternekessler.com
17
18   ALSO PRESENT:
19     Ulrike Wiesner (Interpreter)
20     Marvin Oltman (Legal Videographer)
21
22
```

---

Page 3

```
 1              INDEX
 2                        PAGE
 3   RICHARD M. GOODIN
 4     Examination by Mr. Block        5, 199
 5     Examination by Mr. Thomas         191
 6
 7            EXHIBITS
 8   GOODIN                          PAGE
 9   Exhibit 1   Rebuttal Expert Report of    8
               Dr. Ricardo Valerdi
10   Exhibit 2   Expert Report of         10
               Richard M. Goodin, PE,
11             Regarding Defendants' Source
               Code and CAD Drawings
12   Exhibit 3   Witness' if statement      33
13   Exhibit 4   Source code,          68
               WEBER SRC 2788 - 3209
14             (Retained by counsel)
15   Exhibit 5   Deposition transcript of   119
               Marco Nichau
16   Exhibit 6   Document of a digital image  132
17   Exhibit 7   Expert Report of Richard   182
               Goodin, PE, Regarding
18             Defendants' Source Code and
19             CAD Drawings
20
21
22
```

---

Page 4

```
 1        THE VIDEOGRAPHER:  This is Videotape
 2   Number 1 to the videotaped deposition of Richard
 3   Goodin in the matter of Provisur Technologies,
 4   Incorporated, vs. Weber.  Case number is
 5   19-CV-6021.
 6        This deposition is being held at
 7   300 North LaSalle Street, Suite 5000, Chicago,
 8   Illinois, on April 8, 2022.  The time is now
 9   9:10 a.m.
10        My name is Marvin Oltman, the legal
11   video specialist with Digital Evidence Group.  The
12   court reporter is Donna Kazaitis who's also in
13   association with Digital Evidence Group.
14        Will counsel please identify
15   themselves and state who they represent beginning
16   with the party noticing this proceeding.
17        MR. BLOCK:  Again, just for the
18   record, this deposition is for both the Weber 1
19   and Weber 2 cases for both the reports that you
20   submitted.
21        My name is Daniel Block.  I'm from
22   the law firm of Sterne Kessler Goldstein & Fox on
```

CONFIDENTIAL MATERIAL OMITTED

4/8/2022          Provisur Technologies, Inc., v. Weber, Inc., et al.     Richard Goodin, PE
                         Highly Confidential - Contains Source Code

Page 105

1     Q.  We'll look at the source code, and if
2  you think that's wrong at some point you can tell
3  me.
4           Now, it's your understanding that
5  the SmartLoader has a human machine interface?
6     A.  Yes, it does.
7     Q.  And that's referred to as HMI?
8     A.  Usually it's referred to as HMI, yes.
9     Q.  And within the HMI there are certain
10 parameters that the operator can set?
11    A.  Well, the actual HMI code wasn't
12 produced, as far as I can tell in this.  It
13 wouldn't be in machine controller language.  There
14 was a data structure which contained certain
15 variables that was found in the machine controller
16 code that looked like it was coming from the HMI.
17    Q.  So there are certain parameters that
18 the HMI code can set?
19    A.  Looked like it, yes.
20    Q.  You say that the HMI code wasn't
21 produced in this case.  Did you try looking at it
22 through the virtual machine?

Page 106

1     A.  No, I didn't.
2     Q.  So it might have been produced; you
3  just didn't see it?
4     A.  I didn't see it outside the virtual
5  machine.  Because my forays into the virtual
6  machine, none of them were successful.
7     Q.  Fair enough.  So it may actually have
8  been produced; you just didn't see it?
9     A.  That's possible.
10    Q.  Now, these parameters that you're
11 referring to, do any of them relate to the
12 extension and retraction of the inlay belt?
13    A.  I'm sure they do but I don't remember
14 them exactly.  There were probably 12 to 14 of
15 them.
16    Q.  Okay.  Perhaps we can go to Paragraph
17 37 of your report.
18    A.  Okay, I'm there.
19    Q.  And you mention a structure there
20 called ▮▮▮▮▮▮▮▮▮▮
21    A.  Yes, I see that.
22    Q.  Is that the structure that has the

Page 107

1  parameters that we've been talking about?
2     A.  I'd have to look at it in context.
3     Q.  Okay.  Well, I think it is at WEBER
4  3209 Bates stamp.
5     A.  The most I seem to have is 3117.
6     Q.  There should be 3209 because I thought
7  we read that out earlier.
8     A.  Okay.  Let me go through individually.
9  I may have moved it out of order which is why I
10 can't find it.
11    Q.  There's one thing I'll tell you that
12 might be confusing because I think they might have
13 accidently stapled two papers together.
14    A.  Oh.
15    Q.  It begins with 3152 but it is at the
16 end.
17    A.  Here we go.  I missed a pile of code.
18 The Bates was?
19    Q.  At least according to what I have
20 here, it would have been 3152 is what it begins
21 with.  It's a pretty thick packet though.  So my
22 guess is it's the last one.

Page 108

1     A.  Got it.  Thank you.
2     Q.  And then the last page.
3     A.  So these are inlay belt control
4  parameters.  But what I was thinking of was
5  there's a data structure in the code that's all
6  capital HMI underbar something, which contain the
7  specifics for the data that came from the HMI.
8     Q.  And we can get to that, but I guess
9  I'm looking at Paragraph 37 of your report where
10 you cite to this as the code processes parameters
11 including those entered by the operator.
12    A.  Yes.  But these parameters are what's
13 fed to the controller for the inlay belt.
14    Q.  So these parameters are not what are
15 entered by the operator?
16    A.  Some of them may be entered by the
17 operator.
18    Q.  Okay.  Let me get you the other file.
19 3197.  Is WEBER SRC 3197, which is the ▮▮▮▮▮▮
20 what you were referring to?
21    A.  Yes.  This is where I was referring to
22 on Bates 3197.

                                27  (Pages 105 to 108)

CONFIDENTIAL MATERIAL OMITTED

4/8/2022        Provisur Technologies, Inc., v. Weber, Inc., et al.        Richard Goodin, PE
Highly Confidential - Contains Source Code

Page 109

1     Q.  Now, as part of your review of the
2   source code, did you review ▮▮▮▮▮▮
3   I looked at some of the variables
4   through it, but I didn't review anything of it and
5   I didn't think I had any opinions based on it.
6     Q.  So do you have any opinions based on
7   ▮▮▮▮▮▮
8     A.  I think my opinions were limited to
9   the ▮▮▮▮▮▮ data structure.
10    Q.  Okay.  So you didn't look at what
11  parameters could be entered by an operator?
12    A.  I did look at them.  I mean that's how
13  I know that the structure exists.  Once again, of
14  the code I looked at I didn't see any HMI code.
15  So I couldn't perform any correlation between what
16  was entered in the HMI and these values.  But I
17  assume these values in the ▮▮▮▮▮ structure came
18  from the HMI.
19    Q.  And do you know what any of these
20  parameters mean?
21    A.  I mean some of them I recognize
22  basically by their names.  For example, the

Page 110

1   different belt velocities, product positions.
2     Q.  Let's go to line 65 and 66 of
3   ▮▮▮▮▮▮  Do you know what either of the
4   variables on line 65 or line 66 mean?
5     A.  I do not.
6     Q.  So you didn't consider the R position
7   back and the R position front variables when you
8   were forming your opinions in this case?
9     A.  That's correct.
10    Q.  Now, earlier, if we go to
11  Dr. Valerdi's report, I believe you said that you
12  disagree with the section, right around Paragraph
13  77, with the section that's titled "The
14  SmartLoader software is incapable of operating in
15  the manner described by Dr. Vorst."
16    A.  Okay, I'm there.
17    Q.  And just so we're clear, you do
18  disagree with that statement?
19    A.  The statement "The SmartLoader may
20  be" -- let's see, where is that?
21    Q.  I'll read it.  It's above Paragraph
22  77.

Page 111

1     A.  Oh, that one.  Got it.
2     Q.  Do you disagree with the statement
3   that "The SmartLoader software is incapable of
4   operating in the manner described by Dr. Vorst"?
5     A.  Yes, based on his analysis in the
6   following paragraphs.
7     Q.  So can I assume then that you know
8   what Dr. Vorst is proposing there?
9     A.  Only from what he said in these
10  paragraphs in Dr. Valerdi's report.
11    Q.  Okay.  What's your understanding of
12  what Dr. Vorst's proposal is?
13    A.  I believe Dr. Vorst's proposal is that
14  the -- what is it?  The inlay belt is the
15  secondary belt.  That the inlay belt can move,
16  partially deposit things, and then move further
17  and deposit things.
18    Q.  So in other words, Dr. Vorst's
19  proposal is that it would extend to a position,
20  retract to deposit, extend to a second position,
21  retract to deposit, extend to a third position,
22  retract to deposit?

Page 112

1     MR. THOMAS:  Objection, form, beyond
2   the scope.
3     THE WITNESS:  I think that's my
4   understanding based on Dr. Valerdi's report.
5   BY MR. BLOCK:
6     Q.  Okay.  And so then are you aware of
7   any parameters that an operator could adjust in
8   the SmartLoader to accomplish what Dr. Vorst
9   proposes?
10    A.  I am not.  The only thing I'm aware of
11  is the fact that the slide control and the belt
12  control were independent.  So from the source code
13  I saw, you could make that happen.
14    Q.  Just so I understand then why you
15  disagree, your point is you could rewrite the
16  source code to have it do something different?
17    A.  I didn't look at the source code to
18  see whether it would require rewriting the source
19  code or not.  All I looked at was the driving code
20  for both those devices, the belt driving source
21  code and the slider driving source code and that
22  they were independent.

CONFIDENTIAL MATERIAL OMITTED

4/8/2022        Provisur Technologies, Inc., v. Weber, Inc., et al.        Richard Goodin, PE
Highly Confidential - Contains Source Code

Page 113

1    Q.   So you don't know in fact whether the
2    SmartLoader could even perform what Dr. Vorst
3    suggests; correct?
4    A.   That's correct.
5    Q.   Let's go to -- now we're going to get
6    a little into the source code again.  I was going
7    to say I'm sorry but maybe not, you probably like
8    it.
9    A.   Not in this form.
10   Q.   Yeah, apologies on that.
11        So if we could go to the file is
12   the inlay belt control module.  I believe it's
13   Bates 2920.  I think the good news is we're going
14   to be staying in this file.
15        So if we could go to line 145 --
16   I'm sorry -- line 600.  You'll see my error in a
17   second.
18   A.   The one that starts with 145?
19   Q.   Exactly.
20   A.   Okay, I'm there.
21   Q.   That's why I had them reversed.
22        On line 600 of the inlay

Page 114

1    belt.control module, there's a state that's being
2    defined?
3    A.   Yes, that's correct.
4    Q.   Do you know what that state does?
5    A.   I haven't looked at this code before.
6    I mean the comment says ██████████████████
7    ████████████
8    Q.   When you say you haven't looked at the
9    code, you didn't look at the code on line 600 or
10   this file?
11   A.   I didn't look at the code on line 600.
12   Q.   So you didn't consider the state 145
13   as part of forming your opinions in this case?
14   A.   That's correct.
15   Q.   Do you know what it means by ████
16   ████
17   A.   I guess I'm not supposed to assume.
18   So no, I don't really know what it means by ████
19   ████
20   Q.   Well, perhaps we can get you more
21   specific.  Let's go to line 622.
22   A.   This is the one that has limit in it?

Page 115

1    Q.   This is the one that goes to that
2    slide interface variable that you were talking
3    about earlier.
4    A.   Okay.
5    Q.   And why don't we start with what does
6    the ██████ interface structure do?
7    A.   It controls the operation of the
8    slide.
9    Q.   The extension or retraction.
10   A.   Yes.
11   Q.   And you'd agree with me that this line
12   here is setting the retraction to the parameter R
13   position back?
14   A.   That's where it appears to be doing,
15   but I really need to look at this code to agree
16   with you 100 percent.
17   Q.   You didn't consider line 622 as part
18   of forming your opinions in this case?
19   A.   That's correct.
20   Q.   Let's go to line 702 -- before we get
21   there, how much time would you say you spent
22   reviewing the SmartLoader code relative to the

Page 116

1    PickRobot code?
2    A.   The PickRobot code was the majority of
3    the code, followed by the fat grading camera.
4    SmartLoader was probably third and then the slicer
5    was fourth.
6    Q.   Got it.  So if we look at line 702,
7    there's another state that's defined called 150.
8    Do you see that?
9    A.   Yes, I do.
10   Q.   And as part of forming your opinions
11   in this case, did you analyze state 150?
12   A.   I did not.
13   Q.   If we go to line 721, there's another
14   statement there that is setting the slide
15   interface to R position front.  Do you see that?
16   A.   I see that.
17   Q.   As part of forming your opinions in
18   this case, did you analyze line 721 of the inlay
19   belt control module?
20   A.   I did not.
21   Q.   Okay.  Let's turn to Paragraph 39 of
22   your report.

29  (Pages 113 to 116)

UNITED STATES PATENT AND TRADEMARK OFFICE
_____

BEFORE THE PATENT TRIAL AND APPEAL BOARD
_____

WEBER, INC.,
Petitioner,

v.

PROVISUR TECHNOLOGIES, INC.,
Patent Owner.

_____

Case IPR2019-01462
Patent No. 7,065,936

_____

**PATENT OWNER'S RESPONSE
TO PETITION FOR *INTER PARTES* REVIEW OF
U.S. PATENT NO. 7,065,936**

**Mail Stop PATENT BOARD**
Patent Trial and Appeal Board
U.S. Patent & Trademark Office
P.O. Box 1459
Alexandria, Virginia  22313-1450

Neither Honsberg/Hollymatic nor Weber446/Hollymatic disclose the depositing conveyor retracting from an extended position to a retracted position to fill a new first row of empty containers, as stated in claim 5. Weber only cites Hollymatic as disclosing multiple "row" deposition. (Pet., 44-45, 80; Ex. 1003, ¶¶156-58, 289.) As shown in Figure 3 of Hollymatic, the depositing conveyor first moves to a fully extended position and then retracts to deposit three items in three steps. (Ex. 1007, Figure 3; Ex. 2014, ¶160.) After the last item is deposited, the conveyor moves from a fully retracted position to its original fully extended position. (Ex. 1007, Figure 3; Ex. 2014, ¶¶160-61.)



**Ex. 1006, Figure 3.**

Hollymatic does not disclose any filling done by an advancing conveyor that
is then retracted to an original, retracted position. (Ex. 2014, ¶161.) In fact, each
of Honsberg, Hollymatic and Weber446 deposit food items using a retracting
conveyor; none disclose an advancing conveyor that must then be retracted to fill a
new group of containers. (*Id.*) Honsberg, Hollymatic and Weber446 each deposit

61

a food item by quickly withdrawing the supporting conveyor. (*Id*.) As a result, the conveyor is in a retracted position once deposition is complete. (*Id*.) Thus, in each instance, the conveyor must extend in order to return to its original position to deposit another food item. (*Id*.)

Dr. Sand tacitly acknowledges that the art cited by Weber does not disclose the limitations of claim 5, opining that "[a] POSA would have been motivated to have the shuttle *retract from an extended position to a retracted position* to fill the next group of rows, because a POSA would have recognized that an efficient way of loading products onto the shuttle conveyor would be to have the shuttle advance while the conveyor rotates with the loaded product." (Ex. 1003, ¶158, emphasis original.) But depositing food items as suggested by Dr. Sand would double the number of steps necessary for deposition, adding needless complexity and increasing the likelihood of malfunction. (Ex. 2014, ¶¶162-63.)

To deposit three items as Dr. Sand proposes from a fully retracted position with an advancing conveyor would theoretically require six steps: (1) advance to a first position; (2) withdraw to deposit the first item; (3) advance to a second position; (4) withdraw to deposit the second item; (5) advance to a third position; and (6) withdraw to deposit the third item. (*Id*.) In contrast, Hollymatic discloses that three items can be deposited in three steps. (*Id*.) Moreover, each of the six steps using an advancing conveyor would require precise positioning, resulting in

Appx24753

the need for complicated shuttle conveyors and sensors and compounding the likelihood of a malfunction. (*Id.*) One of ordinary skill would not have pursued an apparatus with so many extra steps, particularly when each additional step complicates the machinery involved and increases the likelihood of malfunction. (*Id.*)

Thus, Weber's combinations of Honsberg/Hollymatic and Weber446/Hollymatic fail to disclose that the "conveying surface retracts from an advanced position to a retracted position to fill a new first row of a succeeding group of empty rows of container portions," and the subject matter of the claim as a whole would not have been obvious.

## X. WEBER'S PERSON OF ORDINARY SKILL WOULD NOT HAVE BEEN ABLE TO COMBINE THE REFERENCES AS CLAIMED (GROUNDS 1-5).

Weber's person of ordinary skill would never have been able to combine the references as claimed. To Weber and its purported expert Dr. Sand, essentially any person with any type of engineering degree, or a business person with some years of any experience with food in some way would qualify as a person of ordinary skill. On one hand, Dr. Sand testified that a person with even a nuclear or chemical engineering degree could qualify as a person of skill in the industrial food processing and packaging field. (Ex. 2010, 143:17-148:13.) On the other hand, she testified that a business or marketing person could qualify so long as that

63

person worked with food processing and packaging systems.  (*Id.*)  It is hard to imagine how Weber's nebulous person of ordinary skill would have reasonably and successfully made the proposed combinations.

Dr. Sand's opinion that one of ordinary skill would have found Weber's combinations "routine" is not credible, particularly given the lack of detail and support.  (*See* Ex. 1003, ¶¶118, 264.)  In addition, Dr. Sand does not have the experience of Mr. Palmer with the technology at issue here.  Throughout her deposition, Dr. Sand was unable to recall the details of any of her own experience with mechanical engineering or sliced meats.  (Ex. 2010, 54:14-69:8.)  And, this is not the first time that Dr. Sand has provided conclusory testimony beyond her expertise.  The Southern District of New York described portions of Dr. Sand's prior testimony as "*ipse dixit*, pure speculation, or both."  (*See* Ex. 2013, 16-17.)  The court found "Sand has no demonstrated expertise in a number of areas in which she offers opinions." (Ex. 2013, 13-14; *see* Ex. 2010, 104-08.)  Dr. Sand's testimony has similar failings here.

## XI.   OTHER EVIDENCE OF NON-OBVIOUSNESS

Weber's Petition has failed to carry its burden of demonstrating that the claims are unpatentable as obvious for the reasons discussed above.  Patent Owner also reserves the right to raise all other patentability arguments at the appropriate time as permitted by the rules and practices of other forums and proceedings, such

```
 1            IN THE UNITED STATES DISTRICT COURT
                WESTERN DISTRICT OF MISSOURI
 2                   ST. JOSEPH DIVISION

 3   PROVISUR TECHNOLOGIES, INC.,      )
                                       )
 4                   Plaintiff,        )Case Nos.
             vs.                       )19-cv-6021-SRB
 5                                     )20-cv-6069-SRB
     WEBER, INC., et al.,              )21-cv-6113-SRB
 6                                     )
                     Defendants.       )May 25, 2022
 7          ..........................
          TRANSCRIPT OF DISCOVERY DISPUTE HEARING
 8        BEFORE THE HONORABLE STEPHEN R. BOUGH
           UNITED STATES DISTRICT COURT JUDGE
 9

10      Proceedings recorded by electronic stenography
              Transcript produced by computer
11                   APPEARANCES

12   For the Plaintiff:       MR. CRAIG C. MARTIN
                              MS. SARA T. HORTON
13                            MS. HEATHER M. SCHNEIDER
                              Willkie Farr & Gallagher LLP
14                            300 N. LaSalle Drive, Ste 50th Floor
                              Chicago, Illinois 60654
15
                              MS. TAYLOR BROOKE CONCANNON HAUSMANN
16                            MR. JEFFREY J. SIMON
                              Husch Blackwell LLP - KCMO
17                            4801 Main Street, Suite 1000
                              Kansas City, Missouri 64112
18

19   For the Defendants:      MR. DONALD R. BANOWIT
                              MS. KRISTINA CAGGIANO KELLY
20                            MR. JONATHAN TUMINARO
                              Sterne Kessler Goldstein & Fox
21                            1100 New York Avenue NW
                              Washington, DC 20005
22
                              MR. JASON SCOTT LEIKER
23                            Levy Craig Law Firm
                              4520 Main Street, Suite 1600
24                            Kansas City, Missouri 64111

25
                               1
```

1   of them.
 2            Schaub:  Have you ever read any portion of a
 3   Provisur or Formax patent?  I do not know.
 4            You do not recall?  Yes.
 5            Had we had the patent scoring matrix during that
 6   deposition, we could have asked him, well, we see that you
 7   scored that -- the '478 and you rate it as a three, the
 8   highest rating.  Tell us about that.
 9            Jorg Schmeiser:  Were you personally aware of any
10   Provisur or Formax patents before this lawsuit?  I cannot rule
11   out having been aware personally of Provisur or Formax having
12   a patent before.
13            These answers, we spent 10, 13, 15 hours on the
14   record, flew to Germany to ask these questions, and these are
15   the answers we received.  They are false.  They are
16   demonstrably false based on the patent scoring matrix.  That's
17   a problem as an initial matter, but had we had the patent
18   scoring matrix during those depositions, it would have changed
19   everything about those depositions.
20            It wasn't just the deposition testimony either.  I
21   think we're -- there were some requests that asked if -- about
22   infringement also, but they also asked when were you first
23   aware, and what defendants told us -- let me find the slide to
24   refer you.  It's slide 3.
25            We served interrogatories asking when they were
                                28

Appx26609

```
 1   first aware, and the specific language of that interrogatory
 2   is in our brief.  But what they stated in 2020, in August
 3   2020, while they had this patent scoring matrix and the
 4   database, is they said they were aware of the patents-in-suit
 5   at least as of the service of the complaint.
 6           That wasn't true.  They knew about it before, and
 7   that answer is misleading.  They then changed that answer in
 8   -- a year later in August of 2021, and they said they were
 9   aware of the existence of each of the four remaining
10   patents-in-suit at least as early as March 17th, but they were
11   not aware of the alleged infringement.  But that still was not
12   accurate.
13           The patent scoring matrix shows differently.  In
14   January of this year, we got an updated response --
15           THE COURT:  Why does the patent scoring matrix show
16   differently?
17           MS. CONCANNON HAUSMANN:  Because if you look at the
18   patent scoring matrix --
19           THE COURT:  Your Exhibit B?
20           MS. CONCANNON HAUSMANN:  B.
21           THE COURT:  What I understood was three was highly
22   relevant but is not an admission of infringement, just that
23   it's two really closely-related products.
24           MS. CONCANNON HAUSMANN:  Yes.  So I don't want to
25   get distracted.  Right now what we are actually focusing on is
```
29

1  the knowledge and awareness of the patent.  That is the

2  predicate to infringement.

3          So setting aside that they say they don't know if

4  they infringed, we asked very specific requests solely focused

5  on knowledge and awareness.  We asked questions in deposition

6  testimony, and we asked requests for admission that only asked

7  that question, nothing about infringement.  And none of those

8  were answered consistent with what the patent scoring matrix

9  shows.

10          So by saying they have a patent scoring matrix that

11  shows when they rated these patents, when they commented on

12  them, they would have been -- in order to rate them or

13  comment, they had to be aware of them.  And that's what we're

14  really getting at.  We know that at least as early as the

15  rating shown in this scoring matrix, we know at least as of

16  that date, they were aware.

17          And yet every time we tried to ask that information,

18  we were told a different answer, and it was never what was in

19  this -- it was never what was in this database.  And it could

20  have been.  They had this information available to them the

21  entire time they answered these interrogatories, and yet what

22  they said is we knew about it when you served the complaint.

23  We knew about it in March of 2014.  Oh, we knew about this

24  patent on this date and this patent on this date, and it has

25  continually evolved.  And the question is why when they had

30

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
ST. JOSEPH DIVISION**

| | |
|---|---|
| PROVISUR TECHNOLOGIES, INC., | |
| *Plaintiff*, | Civil Action No. 5:19-cv-06021<br>Civil Action No. 5:20-cv-06069 |
| v. | |
| WEBER, INC., TEXTOR, INC., WEBER MASCHINENBAU GMBH BREIDENBACH, WEBER MASCHINENBAU GMBH NEUBRANDENBURG, and TEXTOR MASCHIENBAU GMBH | **JURY TRIAL DEMANDED**<br><br>**CONTAINS CONFIDENTIAL INFORMATION** |
| *Defendants*. | **FILED UNDER SEAL** |

**PLAINTIFF PROVISUR TECHNOLOGIES, INC.'S SUGGESTIONS IN
OPPOSITION TO DEFENDANTS' MOTION TO EXCLUDE THE EXPERT
<u>OPINIONS OF MR. JOHN WHITE, AND PROFESSOR MARY-ROSE MCGUIRE</u>**

3d 466, 497 (D. Del. 2019); Suggestions at Ex. 7 – No. 1:17-cv-00083-LPS, Dkt. No. 615, slip op. at 6-7 (D. Del. Mar. 30, 2022). These cases are inapplicable because, here, Mr. White is not offering opinions on Defendants' subjective intent. Rather, he is offering an opinion on objective industry standards, whether Defendants met these standards, and how they factor into the totality-of-the-circumstances analysis. Mr. White has already testified that he was *not* reading Defendants' mind, but that he was drawing inferences from Defendants' conduct. White Tr. 102:3-9 ("Q. And you would agree that willfulness is really an assessment of the knowledge of the accused infringer at the time of their conduct? A. I don't know that it's their state of mind. It's their conduct. It's their actions. And that may reveal their state of mind, but it's what they did …."). Such testimony is appropriate. *Bombardier Recreational Products Inc. v. Arctic Cat Inc.*, 2017 WL 758335, at *4-5 (D. Minn. Feb. 24, 2017).

Defendants also cite *Rolls-Royce Ltd. v. GTE Valeron Corp.* as supporting the notion that, because Mr. White's opinion involves circumstances relevant to willfulness, it improperly evaluates Defendants' intent, which is "'peculiarly' a jury function." Suggestions at 8; 800 F.2d 1101 (Fed. Cir. 1986). In *Rolls-Royce*, however, the Federal Circuit upheld the district court's reliance on the defendant-expert's testimony in holding that defendants made bona-fide efforts to avoid infringement by attempting to "design around" the claimed invention. *Id.* at 1109-10. The expert opined that the defendant "did not intentionally copy plaintiff's patent [sic, invention], but ... tried to design around [the patent claims]," and was not excluded. *Id.* Moreover, Mr. White is opining on Defendants' objective compliance with industry standards, rather than a legal conclusion as to whether Defendants intended to copy or design around a patent, which according to *Rolls-Royce*, also would be permissible.[3]

---

[3] Defendants further reference *Gustafson, Inc. v. Intersystems Indus. Prods., Inc.*, 897 F.2d 508, 510-11 (Fed. Cir. 1990) as supporting the exclusion of Mr. White's opinion because "willfulness is ultimately an inquiry into the state

#### 4. Mr. White's opinion does not violate 35 U.S.C. § 298.

Defendants also seek to exclude Mr. White because his opinion is "a clear violation of § 298.[4] Suggestions at 9. But Mr. White's opinions do not violate the statute. In fact, Mr. White's consideration of whether Defendants sought advice of counsel is consistent with the Supreme Court's holding in *Halo*. 579 U.S. 93. In *Halo*, Justice Roberts clarified that Congress did not entirely prohibit consideration of whether a party sought of advice of counsel in adopting § 298, but merely corrected the Court's prior decision in *Underwater Devices v. Morrison-Knudsen Co.*, 717 F. 2d 1380 (1983), "which had imposed an affirmative duty to obtain advice of counsel." *Id.* at 109. While there is no affirmative duty to obtain advice of counsel under § 298, *Halo* informs that it is permissible to consider whether Defendants sought advice of counsel under the totality-of-the-circumstances willfulness analysis, as Mr. White has done in his Report. *Id.*

### B. The Court Should Permit The Jury To Weigh Professor McGuire's Testimony.

Like Mr. White, Professor McGuire's opinions are permissible and will assist the jury in determining Defendants' compliance with the standards, practices, and customs in the industry for an international company regarding patent infringement risks. Defendants argue the Court should exclude her testimony because it is (1) an irrelevant "waste of time," (2) an impermissible legal instruction, and (3) because she failed to consider certain evidence. They are wrong on each.  As much of the conduct at issue took place in, or from the direction of individuals located in, Germany, Professor McGuire's testimony is relevant. Second, Professor McGuire's will not offer an

---

of mind or intent of the accused infringer." Suggestions, at 8. *Gustafson*, however, had nothing to do with the admissibility of an expert report, let alone whether an expert may opine on industry standards relevant to the totality of circumstances willfulness inquiry. In fact, the *Gustafson* court explicitly acknowledged that "willfulness is determined from the totality of the circumstances," and "[w]hether an act is "willful" is by definition a question of the actor's intent, the answer to which must be inferred from all the circumstance." *Id.*

[4] Section 298 states that "[t]he failure of an infringer to obtain the advice of counsel with respect to any allegedly infringed patent, or the failure of the infringer to present such advice to the court or jury, may not be used to prove that the accused infringer willfully infringed the patent or that the infringer intended to induce infringement of the patent." 35 U.S.C. § 298.

impermissible legal instruction. Rather, she explains relevant German law and standards as they relate to establishing a floor for industry standards for patent management. Finally, Defendants' accusation that Professor McGuire impermissibly failed to consider certain documents is belied by the fact that *Defendants did not produce those documents until after the deadline for her report*.

### 1. The industry standard of care in Germany for an international company is relevant to willfulness, and will not confuse the jury or waste time.

Defendants first argue "the industry standard of care in Germany is completely irrelevant to any issue in this case," and will therefore confuse the jury and waste time. Suggestions at 11. Defendants further make a one-sentence argument that Professor McGuire's testimony involves "unrelated bad act[s]," which constitutes negative character evidence prohibited by Federal Rule of Evidence 608(b). *Id.* at 12.

These arguments ignore the facts of the case. First, much of the conduct at issue took place in—or at the direction of Defendants' employees in—Germany. *See, e.g.* White Rept. ⁋ 101; *see also* McGuire Rept. ⁋⁋ 51-62. Moreover, several defendants in this case are German entities: Weber Maschinenbau GMBH Breidenbach, Weber MaschineBau GMBH Neurbrandenburg, and Textor Maschienbau GMBH, related to the U.S. Defendant companies, Weber, Inc. and Textor, Inc., as part of a conglomerate. Provisur's counsel traveled to Germany multiple times to depose Defendants' German employees, in German and subject to German law and regulation. The parties' Protective Order has, at Defendants' request, particular provisions to account for German law and regulations. Dkt. No. 34 (*Provisur I*) Dkt. No. 44 (*Provisur II*), at 3. And the jury will hear testimony in German from German employees of Defendants, and testimony about equivalent European patents.

Of course the industry standards in Germany for German companies operating in Germany and internationally are relevant, and the jury should be able to consider whether Defendants

Case 5:19-cv-06021-SRB   Document 314 *SEALED*   Filed 05/27/22   Page 17 of 21

Appx26686

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
ST. JOSEPH DIVISION

| | |
|---|---|
| PROVISUR TECHNOLOGIES, INC.<br>*Plaintiff*,<br><br>v.<br><br>WEBER, INC., TEXTOR, INC., WEBER<br>MASCHINENBAU GMBH BREIDENBACH,<br>WEBER MASCHINENBAU GMBH<br>NEUBRANDENBURG, AND TEXTOR<br>MASCHINENBAU GMBH,<br>*Defendants*. | Civil Action No. 5:19-CV-06021<br>Hon. Judge Stephen R. Bough |

## DEFENDANTS' SUPPLEMENTAL RESPONSES AND OBJECTIONS TO PLAINTIFF'S SECOND SET OF INTERROGATORIES (NO. 11)

Pursuant to Federal Rules of Civil Procedure 26 and 33, Defendants Weber, Inc., Textor, Inc., Weber Maschinenbau GmbH Breidenbach, Weber Maschinenbau GmbH Neubrandenburg, and Textor Maschinenbau GmbH (collectively, "Defendants") hereby supplement their objections and responses to Interrogatory No. 11 of Plaintiff's Second Set of Interrogatories (Nos. 8-13), served by Plaintiff Provisur Technologies, Inc. ("Plaintiff" or "Provisur") on July 20, 2020.

Defendants' supplemental responses are made without waiver of and with preservation of: all questions as to competency, relevancy, materiality, privilege, and admissibility of the responses and the subject matter thereof as evidence for any purpose in this action or any other action; (b) the right to object to the use of any such responses or the subject matter thereof, on any ground in this action and any other action; and (c) the right to object on any ground at any time to a demand or request for further response to these Interrogatories or other discovery

- 1 -

information, and belief, as Defendants presently understand and interpret them. Defendants

object to each Interrogatory to the extent that a complete answer may be impractical or infeasible

because this case is still in its initial stages. These responses and the objections and limitations

contained herein are subject to and without waiver of (a) the right to make additional or

supplemental objections to these or other Interrogatories and (b) the right to revise, correct,

amend, or modify these responses upon, among other things, the discovery of additional facts

and materials, further investigation, and other developments in this proceeding.

## SPECIFIC OBJECTIONS AND RESPONSES

### INTERROGATORY NO. 11:

Describe in detail the specific circumstances under which each Defendant first became aware of each of the Patents-in-Suit, and each Related Patent, and the actions taken in response to such awareness, including the relevant dates, knowledgeable individuals, and any documents that support Defendants' answer.

### RESPONSE TO INTERROGATORY NO. 11 (*As provided initially, August 19, 2020*):

Defendants incorporate their Objections to Definitions and Instructions by reference. Defendants object to this Interrogatory as comprising multiple discrete interrogatories under the guise of a single interrogatory. Defendants object to this Interrogatory to the extent that it seeks information protected by the attorney-client privilege, work-product doctrine, and/or any other applicable privilege or immunity that limits discovery. Defendants object to this Interrogatory to the extent it calls for a legal conclusion. Defendants further object to this Interrogatory as seeking to elicit Defendants' contentions, prior to the time required by the Scheduling Order, the Patent Local Rules of the United States District Court for the Western District of Missouri, and any of the Court's Orders. Defendants further object to this Interrogatory as vague, ambiguous, overbroad, unduly burdensome, not relevant to any party's claim or defense, and not proportional to the needs of the case to the extent it seeks information regarding any claim or patent that is not asserted in this case. Defendants further object to this Interrogatory as vague, ambiguous, overbroad, unduly burdensome, not relevant to any party's claim or defense, and not proportional to the needs of the case to the extent it seeks "the actions taken in response," without limitation. Defendants object to this Interrogatory as premature given that claim construction has not yet occurred, and to the extent that it calls for expert discovery and expert opinion.

Subject to and without waiving the foregoing statements and objections, Defendants respond that they were aware of the Patents-in-Suit at least as of service of the complaint.

**SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 11:**

Defendants incorporate by reference their previous responses and objections. Subject to and without waiving the foregoing general and specific objections, Defendants respond that they were aware of the existence of each of the four remaining patents-in-suit at least as early as March 17, 2014, but were not aware of the alleged patent infringement involving these patents until the day the complaint was filed, when Provisur informed Defendants by phone that a complaint was filed. In the past, Provisur and Defendants have discussed alleged patent infringement issues, but these patents were never raised by Provisur prior to its filing of the complaint.

Defendants specifically reserve the right to revise, correct, supplement, or clarify this response to the extent necessary as discovery in this case progresses.

Dated: August 26, 2021

Respectfully submitted,

**LEVY CRAIG LAW FIRM**
A PROFESSIONAL CORPORATION

By ___*/s/ Jason S. Leiker*_____
    Jason S. Leiker    MO #53973
    Levy Craig Law Firm
    A Professional Corporation
    4520 Main Street, Suite 1600
    Kansas City, Missouri 64111
    816.460.1835
    Fax: 816.382.6606
    jleiker@levycraig.com

    Daniel E. Yonan
    Donald R. Banowit
    Kyle E. Conklin
    Deirdre M. Wells
    Daniel S. Block
    STERNE, KESSLER, GOLDSTEIN & FOX
    P.L.L.C.
    1100 New York Avenue
    Washington, D.C. 20005
    Tel: (202) 371-2600
    Fax: (202) 371-2540
    dyonan@sternekessler.com
    dbanowit@sternekessler.com
    kconklin@sternekessler.com
    dwells@sternekessler.com
    dblock@sternekessler.com

    *Pro Hac Vice*

    *Attorneys for all Defendants*

## VERIFICATION

STATE OF _Missouri_ )
                          ) ss.
COUNTY OF _Platte_ )

     I, Jarrod L. McCarroll, being first duly sworn under oath, hereby certify that I have read and answered the above and foregoing *Defendants' Supplemental Responses and Objections to Plaintiff's Second Set of Interrogatories (NO. 11)* and the answers given are true and correct to the best of my knowledge, information, and belief or are based upon information given to me that I believe and understand to be true and correct information.

                                             Jarrod L. McCarroll

     Subscribed and sworn to before me, a Notary Public, this 1st day of September 2021.

                                       Notary Public in and for said
                                       County and State

My Commission Expires:

06|02|2021

> RACHELLE REYNOLDS
> Notary Public, Notary Seal
> State of Missouri
> Clay County
> Commission # 20646446
> My Commission Expires 06-02-2024

# EXHIBIT X

| | A | B | C | D | E |
|---|---|---|---|---|---|
| 1 | Importname: | Importdatum: | PNR: | Anmeldedatum: | Publikationsdatum: |
| 2 | Weber DB | 3/17/2014 | US6669005B2 | 7/23/2002 | 12/30/2003 |
| 3 | Weber DB | 3/17/2014 | US6997089B2 | 6/25/2002 | 2/14/2006 |
| 4 | Weber DB | 3/17/2014 | US7066936B2 | 12/18/2002 | 6/27/2006 |
| 5 | Weber DB | 3/17/2014 | US8322537B2 | 10/27/2009 | 12/4/2012 |
| 6 | Weber DB | 3/17/2014 | US20030233918A1 | 6/25/2002 | |
| 7 | Weber DB | 3/17/2014 | US20040118084A1 | 12/18/2002 | |
| 8 | Weber DB | 3/17/2014 | EP1534478A4 | 5/20/2003 | |
| 9 | Monitoring 2017W09 | 3/16/2017 | EP1534478B1 | 5/20/2003 | 3/1/2017 |
| 10 | Weber DB | 3/17/2014 | EP1581427B1 | 12/12/2003 | 3/28/2012 |
| 11 | Monitoring 2013W44 | 11/13/2013 | EP2657138A2 | 10/27/2009 | |

WEBER-0986618

| | F | G | H | I |
|---|---|---|---|---|
| 1 | Anmelder: | IPC: | PRIO: | Admin-Bewertung: |
| 2 | FORMAX INC, US | B65G43/00 | US30927201 | 3 |
| 3 | FORMAX INC, US | B26D7/06 | US6997089 | 3 |
| 4 | FORMAX INC, US | B65B3/04 | US7065936 | 3 |
| 5 | FORMAX INC, US; LINDEE SCOTT, US | B07C5/00 | US10878908 | 3 |
| 6 | LINDEE SCOTT A.; WOLCOTT THOMAS C. | B26D 1/00 | US20030233918 | 1 |
| 7 | LINDEE SCOTT A.; PASEK JAMES E.; SANDBERG GLENN | B65B 3/04 | US20040118084 | 1 |
| 8 | FORMAX INC, US | B26D7/30 | US17954902 | 2 |
| 9 | FORMAX INC, US | B26D7/30 | US17954902 | 3 |
| 10 | FORMAX INC, US | B65B25/06 | US32361802 | 3 |
| 11 | FORMAX INC, US | B65B 5/10 | EP09829594 | 3 |

US1 Daten & Admin Bewertungen

| | J | K |
| --- | --- | --- |
| | Comment Admin: | Tech 1: |
| 1 | | |
| 2 | Smartloader-Streitpatent | Sortier und Foerdereinrichtung |
| 3 | Grading, oberste Scheibe KB28296 bzw. F1049, EPE24948 | Produktvermessung |
| 4 | Smartloader-Streitpatent F1055, KB28296 | Sortier und Foerdereinrichtung |
| 5 | Leerstellen-Streitpatent KB28296, KB28389 | Allgemein |
| 6 | | Allgemein |
| 7 | | Allgemein |
| 8 | Fettanteil, Oberflächenbild, Klassifizieren | Produktvermessung |
| 9 | Ermitteln eines Fettgehalts der obersten Scheibe eines Stapels über Bildauswertung. Vergleichen des Fettgehalts mit einem vorbestimmten Grenzwert. Einstufen des Stapels auf der Basis des ermittelten Fettgehalts und Fördern/ Sortieren des Stapels auf der Basis der Einstufung. Einspruch in Vorbereitung (EPE24948). F1049 | Produktvermessung |
| 10 | Shuttle-loader, ähnlich Smartloader bzw. GEA-Flexloader KB28387 | Allgemein |
| 11 | A food handling system having a food product positioning system vacancy reduction system and a fill and packaging system. The positioning system has a controller for receiving data captured by a sensor and for instructing an alignment robot to move a food product to a destination position. The controller 180 is capable of signalling the robot 200 of the claimed vacancy reduction system to move the food product 150 from the food product parking station 230 to fill a vacant food product position on the main conveyor 120. The shuttle packaging system includes the main conveyor for transporting food products in a longitudinal direction a supply of open top containers displaced along a longitudinal direction and movable in the longitudinal direction into a filling station. The shuttle system includes a shuttle robot for moving food products from the main conveyor to an open top container in the filling station. | Sortier und Foerdereinrichtung |

WEBER-0986618

| | L | M | N | O | P | Q |
|---|---|---|---|---|---|---|
| 1 | Tech 2: | Tech 3: | Wettbewerber: | Recherche: | AKZ: | ContentScore: |
| 2 | | | Formax | | KB28387, F0577, KB28296 | 20 |
| 3 | | | Formax | | KB29296, F1049, EPE24948 | 330 |
| 4 | | | Formax | | KB28296, F1055 | 300 |
| 5 | Robotik | Steuern Anlage | Formax | | KB28296, KB28389, F1170 | 400 |
| 6 | | | | | | 15 |
| 7 | | | | | | 10 |
| 8 | | | Formax | | | 30 |
| 9 | | | Formax | | F1049 und EPE24948 | 55 |
| 10 | Robotik | | Formax | | KB28387, F1055, KB28296 | 30 |
| 11 | | | Formax | | | 100 |

| | R | S | T |
|---|---|---|---|
| 1 | User-Bewertungen: | Bewertet: | |
| 2 | | | |
| 3 | | | |
| 4 | -1;-1 | Entwicklung Weber;Entwicklung Weber | |
| 5 | | | |
| 6 | | | |
| 7 | | | |
| 8 | -1;-1 | Entwicklung Weber;Entwicklung Weber | |
| 9 | 3;3;3;3;3;3;3;3;3;3;3;3;3;3;3;3;2;3;3;3;3 | Marco Nichau;Jan Seifert;Sigfrid Bauer;Alexander Burk;Philip Kahl;Joachim Schaub;Ingo Rother;Sven Schuster;Leopold Keudell;Tobias Weber;Udo Hallenberger;Olaf Froese;Andreas Harder;Stefan Lehmann;Joerg Schmeiser;Thomas Gaerber;Thomas Nispel;Jens Hallenberger;Gerd Lischinski;Wilfried Wittkamp;Christoph Eckhardt;Joerg Stremel | Claudia Hormel;Bernd Koester;Christoph Kuhmichel;Wilfried Maier;Josef Mayer;Mathias Salmen;Jens Schroeder;Entwicklung Weber |
| 10 | | | |
| 11 | 3;3;3;3;3;3;3;3;3;3;3;3;3;3;3;3;3;3;3;2;0;3;-1 | Ingo Rother;Joerg Schmeiser;Marco Nichau;Gerd Lischinski;Sigfrid Bauer;Udo Hallenberger;Thomas Nispel;Sven Schuster;Leopold Keudell;Tobias Weber;Olaf Froese;Jens Hallenberger;Philip Kahl;Carsten Pfeiffer;Stefan Lehmann;Alexander Burk;Jens Schroeder;Sandra Schoeniger;Andreas Harder;Steffen Zecher | Claudia Hormel;Christoph Kuhmichel;Josef Mayer;Joachim Schaub;Joerg Stremel;Entwicklung Weber |

| | A | B | C | D | E |
|---|---|---|---|---|---|
| 1 | Importname: | Importdatum: | PNR: | Anmeldedatum: | Publikationsdatum: |
| 12 | Weber DB | 3/17/2014 | EP2657138A3 | 10/27/2009 | |
| 13 | Monitoring 2016W51 | 1/10/2017 | EP2657138B1 | 10/27/2009 | 12/21/2016 |
| 14 | Weber DB | 3/17/2014 | WO2004000512A1 | 5/20/2003 | |
| 15 | Roentgenscanner | 1/10/2018 | WO2004000512A1 | 5/20/2003 | |
| 16 | Weber DB | 3/17/2014 | WO2004060747A3 | 5/12/2003 | |
| 17 | Weber DB | 3/17/2014 | WO201006260BA1 | 10/27/2009 | |

WEBER-0986618

| | F | G | H | I |
|---|---|---|---|---|
| | Anmelder: | IPC: | PRIO: | Admin-Bewertung: |
| 1 | | | | |
| 12 | FORMAX INC, US | B65B5/10 | EP09829594 | 2 |
| 13 | FORMAX INC, US | B65B5/10 | EP09829594 | 2 |
| 14 | FORMAX INC, US | B26D 7/30 | US17954902 | 1 |
| 15 | FORMAX INC, US | B26D7/30 | US17954902 | 2 |
| 16 | FORMAX INC, US | B65B5/06 | US32361802 | 3 |
| 17 | FORMAX INC, US; LINDEE SCOTT A, US | B65B 5/10 | US10878908 | 3 |

WEBER-0986618

| | J | K |
|---|---|---|
| 1 | Comment Admin: | Tech 1: |
| 12 | Produkte gelangen aus dem Haupt-Portionsstrom in Parkbereich und können dort vom Roboter entnommen werden. | Sortier und Foerdereinrichtung |
| 13 | Produkte gelangen aus dem Haupt-Portionsstrom in Parkbereich und können dort vom Roboter entnommen werden, um Leerstellen im Produktstrom zu füllen. Vorgeschaltete Leerstellendetektion steuert Roboter. | Steuern Anlage |
| 14 | | Allgemein |
| 15 | Fettanteil, Oberflächenbild, Klassifizieren | Produktvermessung |
| 16 | Shuttle-loader, ähnlich Smartloader bzw. GEA-Flexloader KB28387, f1055 | Allgemein |
| 17 | Produkt-Rückführung zur Ergänzungvon Portionen | Allgemein |

WEBER-0986618

US1 Daten & Admin Bewertungen

| | L | M | N | O | P | Q |
|---|---|---|---|---|---|---|
| | Tech 2: | Tech 3: | Wettbewerber: | Recherche: | AKZ: | ContentScore: |
| 1 | | | | | | |
| 12 | | | Formax | | EPE24767, F1170, KB28389 | 115 |
| 13 | | | Formax | | | 180 |
| 14 | | | Formax | | | 30 |
| 15 | | | Formax | Recherche Roentgenscannen | | 140 |
| 16 | | | Formax | | KB28296; F1055; KB28387 | 15 |
| 17 | Robotik | Steuern Anlage | Formax | | | 400 |

WEBER-0986618

| | R | S | T |
|---|---|---|---|
| 1 | User-Bewertungen: | Bewertet: | |
| 12 | 3;1;3;3;1;3;1;2;1;1;2;1;3;3;1;0;-1 | Tobias Weber;Marco Nichau;Joerg Schmeiser;Ingo Rother;Udo Hallenberger;Sigfrid Bauer;Jens Hallenberger;Philip Kahl;Heiko Knoeppel;Gerd Lischinski;Alexander Burk;Christoph Eckhardt;Leopold Keudell;Leopold Keudell;Markus Frick;Steffen Martens;Sandra Schoeniger;Steffen Zecher | Claudia Hormel;Christoph Kuhmichel;Josef Mayer;Joachim Schaub;Joerg Stremel;Entwicklung Weber |
| 13 | 3;3;2;3;3;2;3;2;3;2;2;2;3;3;1;3;0;1 | Sven Schuster;Sigfrid Bauer;Jan Seifert;Thomas Nispel;Thomas Gaerber;Ingo Rother;Leopold Keudell;Udo Hallenberger;Olaf Froese;Philip Kahl;Stefan Lehmann;Tobias Weber;Andreas Harder;Gerd Lischinski;Joerg Schmeiser;Alexander Burk;Marco Nichau;Jens Hallenberger;Carsten Pfeiffer;Christoph Eckhardt | Claudia Hormel;Heiko Knoeppel;Jens Krueger;Christoph Kuhmichel;Wilfried Maier;Josef Mayer;Michael Mueller;Mathias Salmen;Joachim Schaub;Joerg Stremel;Entwicklung Weber |
| 14 | | | |
| 15 | | | |
| 16 | | | |
| 17 | | | |

WEBER-0986618

| | A | B | C | D | E |
|---|---|---|---|---|---|
| 1 | Datum Kommentar: | PNR: | Aktionsvorschlag: | Bewerter: | Bewertung: |
| 2 | 8/12/2021 5:37 | EP1534478A4 | | Entwicklung Weber | -1 |
| 3 | 8/12/2021 5:37 | EP1534478A4 | | Entwicklung Weber | -1 |
| 4 | 3/20/2017 7:57 | EP1534478B1 | | Marco Nichau | 3 |
| 5 | 3/20/2017 8:00 | EP1534478B1 | | Jan Seifert | 3 |
| 6 | 3/20/2017 8:03 | EP1534478B1 | | Sigfrid Bauer | 3 |
| 7 | 3/20/2017 8:17 | EP1534478B1 | Einspruch prüfen | Alexander Burk | 3 |
| 8 | 3/20/2017 9:02 | EP1534478B1 | | Philip Kahl | 3 |
| 9 | 3/20/2017 11:58 | EP1534478B1 | | Joachim Schaub | 3 |
| 10 | 3/20/2017 15:48 | EP1534478B1 | | Ingo Rother | 3 |
| 11 | 3/20/2017 17:42 | EP1534478B1 | | Sven Schuster | 3 |
| 12 | 3/21/2017 9:35 | EP1534478B1 | Einspruch prüfen | Leopold Keudell | 3 |
| 13 | 3/21/2017 12:03 | EP1534478B1 | | Tobias Weber | 3 |
| 14 | 3/21/2017 13:26 | EP1534478B1 | | Udo Hallenberger | 3 |
| 15 | 3/22/2017 8:48 | EP1534478B1 | | Olaf Froese | 3 |
| 16 | 3/27/2017 9:35 | EP1534478B1 | | Andreas Harder | 3 |
| 17 | 3/28/2017 9:26 | EP1534478B1 | | Stefan Lehmann | 3 |
| 18 | 3/29/2017 7:59 | EP1534478B1 | | Joerg Schmeiser | 3 |
| 19 | 3/29/2017 8:52 | EP1534478B1 | | Thomas Gaerber | 3 |
| 20 | 3/29/2017 9:17 | EP1534478B1 | | Thomas Nispel | 2 |
| 21 | 4/3/2017 8:48 | EP1534478B1 | | Jens Hallenberger | 3 |
| 22 | 4/6/2017 9:42 | EP1534478B1 | | Gerd Lischinski | 3 |
| 23 | 6/26/2017 11:41 | EP1534478B1 | | Wilfried Wittkamp | 3 |
| 24 | 11/6/2017 16:51 | EP1534478B1 | | Christoph Eckhardt | 3 |
| 25 | 5/15/2018 15:45 | EP1534478B1 | | Joerg Stremel | 3 |
| 26 | 12/4/2013 13:17 | EP2657138A2 | | Ingo Rother | 3 |
| 27 | 12/6/2013 16:17 | EP2657138A2 | | Joerg Schmeiser | 3 |
| 28 | 12/9/2013 7:47 | EP2657138A2 | | Marco Nichau | 3 |
| 29 | 12/20/2013 10:51 | EP2657138A2 | | Gerd Lischinski | 3 |
| 30 | 12/20/2013 11:46 | EP2657138A2 | | Sigfrid Bauer | 3 |
| 31 | 12/20/2013 12:37 | EP2657138A2 | | Udo Hallenberger | 3 |
| 32 | 12/30/2013 11:31 | EP2657138A2 | | Thomas Nispel | 3 |
| 33 | 1/6/2014 15:16 | EP2657138A2 | | Sven Schuster | 3 |
| 34 | 1/7/2014 18:08 | EP2657138A2 | | Leopold Keudell | 3 |
| 35 | 1/8/2014 20:15 | EP2657138A2 | | Tobias Weber | 3 |
| 36 | 1/15/2014 12:21 | EP2657138A2 | | Olaf Froese | 3 |

| | F | G |
|---|---|---|
| 1 | Kommentar: | Importname: |
| 2 | | Weber DB |
| 3 | | Weber DB |
| 4 | Entspricht unsere optischen Qualitätskontrolle, die wir vor ca. 8-9 Jahren  erstmals betrieben haben. | Monitoring 2017W09 |
| 5 | | Monitoring 2017W09 |
| 6 | | Monitoring 2017W09 |
| 7 | Wir tun dies für jede Scheibe, auch für die oberste Scheibe | Monitoring 2017W09 |
| 8 | | Monitoring 2017W09 |
| 9 | | Monitoring 2017W09 |
| 10 | | Monitoring 2017W09 |
| 11 | | Monitoring 2017W09 |
| 12 | Vorbereitung | Monitoring 2017W09 |
| 13 | | Monitoring 2017W09 |
| 14 | | Monitoring 2017W09 |
| 15 | | Monitoring 2017W09 |
| 16 | | Monitoring 2017W09 |
| 17 | | Monitoring 2017W09 |
| 18 | | Monitoring 2017W09 |
| 19 | | Monitoring 2017W09 |
| 20 | | Monitoring 2017W09 |
| 21 | | Monitoring 2017W09 |
| 22 | | Monitoring 2017W09 |
| 23 | | Monitoring 2017W09 |
| 24 | | Monitoring 2017W09 |
| 25 | | Monitoring 2017W09 |
| 26 | Dieses Thema haben wir in ähnlicher Form bereits angemeldet. Wichtig ist hier, den Stand mitzubekommen, damit wir im Falle einer Erteilung zeitnah einsprechen können. | Monitoring 2013W44 |
| 27 | | Monitoring 2013W44 |
| 28 | | Monitoring 2013W44 |
| 29 | | Monitoring 2013W44 |
| 30 | | Monitoring 2013W44 |
| 31 | | Monitoring 2013W44 |
| 32 | | Monitoring 2013W44 |
| 33 | | Monitoring 2013W44 |
| 34 | | Monitoring 2013W44 |
| 35 | | Monitoring 2013W44 |
| 36 | | Monitoring 2013W44 |

| | A | B | C | D | E |
|---|---|---|---|---|---|
| 1 | Datum Kommentar: | PNR: | Aktionsvorschlag: | Bewerter: | Bewertung: |
| 37 | 1/16/2014 17:31 | EP2657138A2 | | Jens Hallenberger | 3 |
| 38 | 1/17/2014 6:45 | EP2657138A2 | | Philip Kahl | 3 |
| 39 | 1/20/2014 10:19 | EP2657138A2 | | Carsten Pfeiffer | 3 |
| 40 | 1/21/2014 8:25 | EP2657138A2 | | Stefan Lehmann | 3 |
| 41 | 1/23/2014 0:42 | EP2657138A2 | | Alexander Burk | 3 |
| 42 | 3/14/2014 8:18 | EP2657138A2 | | Jens Schroeder | 2 |
| 43 | 5/23/2016 10:01 | EP2657138A2 | | Andreas Harder | 3 |
| 44 | 1/10/2014 10:22 | EP2657138A3 | | Tobias Weber | 3 |
| 45 | 1/10/2014 10:56 | EP2657138A3 | | Marco Nichau | 1 |
| 46 | 1/10/2014 16:21 | EP2657138A3 | | Joerg Schmeiser | 3 |
| 47 | 1/13/2014 7:31 | EP2657138A3 | | Ingo Rother | 3 |
| 48 | 1/15/2014 10:46 | EP2657138A3 | | Udo Hallenberger | 1 |
| 49 | 1/16/2014 14:02 | EP2657138A3 | | Sigfrid Bauer | 3 |
| 50 | 1/16/2014 17:28 | EP2657138A3 | | Jens Hallenberger | 1 |
| 51 | 1/17/2014 7:11 | EP2657138A3 | | Philip Kahl | 2 |
| 52 | 1/17/2014 12:56 | EP2657138A3 | | Heiko Knoeppel | 1 |
| 53 | 1/21/2014 15:47 | EP2657138A3 | | Gerd Lischinski | 1 |
| 54 | 1/23/2014 0:48 | EP2657138A3 | | Alexander Burk | 2 |
| 55 | 2/24/2014 14:40 | EP2657138A3 | | Christoph Eckhardt | 1 |
| 56 | 4/10/2014 16:52 | EP2657138A3 | | Leopold Keudell | 3 |
| 57 | 4/10/2014 16:53 | EP2657138A3 | | Leopold Keudell | 3 |
| 58 | 7/29/2014 9:18 | EP2657138A3 | | Markus Frick | 1 |
| 59 | 1/12/2017 7:42 | EP2657138B1 | | Sven Schuster | 3 |
| 60 | 1/12/2017 7:59 | EP2657138B1 | | Sigfrid Bauer | 3 |
| 61 | 1/12/2017 8:00 | EP2657138B1 | | Jan Seifert | 2 |
| 62 | 1/12/2017 8:25 | EP2657138B1 | | Thomas Nispel | 3 |
| 63 | 1/12/2017 9:53 | EP2657138B1 | | Thomas Gaerber | 3 |
| 64 | 1/12/2017 10:47 | EP2657138B1 | | Ingo Rother | 2 |
| 65 | 1/12/2017 11:52 | EP2657138B1 | | Leopold Keudell | 3 |
| 66 | 1/12/2017 15:00 | EP2657138B1 | | Udo Hallenberger | 3 |
| 67 | 1/12/2017 15:16 | EP2657138B1 | | Olaf Froese | 2 |
| 68 | 1/14/2017 7:05 | EP2657138B1 | | Philip Kahl | 2 |
| 69 | 1/16/2017 9:43 | EP2657138B1 | | Stefan Lehmann | 3 |
| 70 | 1/16/2017 14:51 | EP2657138B1 | | Tobias Weber | 2 |
| 71 | 1/20/2017 7:07 | EP2657138B1 | | Andreas Harder | 2 |
| 72 | 1/20/2017 11:34 | EP2657138B1 | | Gerd Lischinski | 2 |
| 73 | 1/23/2017 7:20 | EP2657138B1 | | Joerg Schmeiser | 3 |
| 74 | 1/23/2017 19:16 | EP2657138B1 | | Alexander Burk | 3 |
| 75 | 2/2/2017 16:28 | EP2657138B1 | | Marco Nichau | 1 |
| 76 | 2/7/2017 8:17 | EP2657138B1 | | Jens Hallenberger | 3 |
| 77 | 11/6/2017 16:56 | EP2657138B1 | | Christoph Eckhardt | 1 |
| 78 | 8/17/2021 18:34 | US7065936B2 | | Entwicklung Weber | -1 |
| 79 | 8/17/2021 18:35 | US7065936B2 | | Entwicklung Weber | -1 |

| | F | G |
|---|---|---|
| 1 | Kommentar: | Importname: |
| 37 | | Monitoring 2013W44 |
| 38 | | Monitoring 2013W44 |
| 39 | | Monitoring 2013W44 |
| 40 | | Monitoring 2013W44 |
| 41 | | Monitoring 2013W44 |
| 42 | | Monitoring 2013W44 |
| 43 | | Monitoring 2013W44 |
| 44 | | Monitoring 2013W44 |
| 45 | | Monitoring 2013W44 |
| 46 | | Monitoring 2013W44 |
| 47 | | Monitoring 2013W44 |
| 48 | | Monitoring 2013W44 |
| 49 | | Monitoring 2013W44 |
| 50 | | Monitoring 2013W44 |
| 51 | | Monitoring 2013W44 |
| 52 | | Monitoring 2013W44 |
| 53 | | Monitoring 2013W44 |
| 54 | | Monitoring 2013W44 |
| 55 | | Monitoring 2013W44 |
| 56 | | Monitoring 2013W44 |
| 57 | | Monitoring 2013W44 |
| 58 | | Monitoring 2013W44 |
| 59 | | Monitoring 2016W51 |
| 60 | | Monitoring 2016W51 |
| 61 | | Monitoring 2016W51 |
| 62 | | Monitoring 2016W51 |
| 63 | | Monitoring 2016W51 |
| 64 | | Monitoring 2016W51 |
| 65 | | Monitoring 2016W51 |
| 66 | | Monitoring 2016W51 |
| 67 | | Monitoring 2016W51 |
| 68 | | Monitoring 2016W51 |
| 69 | | Monitoring 2016W51 |
| 70 | | Monitoring 2016W51 |
| 71 | | Monitoring 2016W51 |
| 72 | | Monitoring 2016W51 |
| 73 | | Monitoring 2016W51 |
| 74 | | Monitoring 2016W51 |
| 75 | | Monitoring 2016W51 |
| 76 | | Monitoring 2016W51 |
| 77 | | Monitoring 2016W51 |
| 78 | | Weber DB |
| 79 | | Weber DB |

WEBER-0986618

US2 Daten & Admin Bewertungen

| | A | B | C | D | E |
|---|---|---|---|---|---|
| 1 | Importname: | Importdatum: | PNR: | Anmeldedatum: | Publikationsdatum: |
| 2 | Monitoring 2020KW18 | 5/13/2020 | US1062543B2 | 12/5/2018 | 4/21/2020 |
| 3 | Monitoring 2020KW20 | 5/28/2020 | US1063981 2B2 | 6/25/2018 | 5/5/2020 |
| 4 | Weber DB | 3/17/2014 | EP2566670A2 | 5/2/2011 | |
| 5 | Monitoring 2016W27 | 7/21/2016 | EP2566670B1 | 5/2/2011 | 7/6/2016 |
| 6 | Monitoring 2019KW17 | 5/9/2019 | DE202011111071U1 | 5/2/2011 | 3/20/2019 |
| 7 | Weber DB | 3/17/2014 | WO2011139996A2 | 5/2/2011 | |

WEBER-0986618

| | F Anmelder: | G IPC: | H PRIO: | I Admin-Bewertung: |
|---|---|---|---|---|
| 1 | | | | |
| 2 | Provisur Technologies, Inc. | B26D7/32 | US201816017346 | 3 |
| 3 | FORMAX, INC.; Provisur Technologies, Inc. | B26D7/22 | US201816017346 | 3 |
| 4 | FORMAX INC, US | B26D7/06 | US2011034866 | 3 |
| 5 | FORMAX INC, US | B26D7/06 | US2011034866 | 3 |
| 6 | FORMAX, INC. | B26D7/06 | US34355110 | 3 |
| 7 | FORMAX INC, US; HANCOCK DAVID, US; LINDEE SCOTT A, US; PASEK JAMES E, US; WOLCOTT THOMAS C, US | B26D 7/06 | US34355110 | 1 |

WEBER-0986618

| | J | K | L | M | N |
|---|---|---|---|---|---|
| 1 | Comment Admin: | Tech 1: | Tech 2: | Tech 3: | Wettbewerber: |
| 2 | Stog gate / Nahrungsmittelentfernungstür: Dreifachfunktion mit Stoffen, Fördern udn Endstückentsorgung per Falltür. Patent bereits in im Focus und Gegenmaßnahmen eingeleitet. KB28384 / KB28296 | Zufuehrsystem | | | Formax |
| 3 | Beladeschwinge mit Produktanschlagklappe als Endstückauswurf-Tor. Bereits in Bearbeitung mit Einsprüchen bzw. IPR: EPE28420 und F1221; KB28354 | Zufuehrsystem | | | Formax |
| 4 | | Zufuehrsystem | | | Formax |
| 5 | Produktgreifer an oberer, spuindividuell betreibbarer Bandgutanordnung. Einspruch bereits beauftragt, W10611, F1221 | Zufuehrsystem | | | Formax |
| 6 | Hier speziell Teilanm. auf Beladeschwinge mit Produktanschlagklappe als Endstückauswurf-Tor. Dieses Gebrauchsmuster ist eine Abzweigung aus dem Teilpatent aus F1221 (EP-Einspruch=W10611; KB28354); Überwachung bereits eingerichtet | Zufuehrsystem | | | Formax |
| 7 | | Allgemein | Steuern Anlage | | Formax |

WEBER-0986618

WEBER-0986618

| | O | P | Q | R |
|---|---|---|---|---|
| 1 | Recherche: | AKZ: | ContentScore: | User-Bewertungen: |
| 2 | | KB28384 / KB28296 | 1255 | 1;3;3;3;3;2;3;3;2;3 |
| 3 | | EPE28420 und F1221; K | 695 | 3;3;-1;3;2;3;3;3;1;3;3;1;3 |
| 4 | | W10611, F1221 | 30 | |
| 5 | | W10611, F1221 | 85 | 3;3;3;3;3;3;3;3;3;3;3;3;3;3;0 |
| 6 | | | 215 | 3;2;3;1;3;3;3;3;3;3;3;3;3 |
| 7 | | | 35 | |

US2 Daten & Admin Bewertungen

| | S | T |
|---|---|---|
| 1 | | Bewerter: |
| 2 | Stefan Runkel;Sven Schuster;Alexander Burk;Stefan Lehmann;Sigfrid Bauer;Thomas Gaerber;Andreas Harder;Udo Hallenberger;Ingo Rother;Philip Kahl;Patrick Schneider;Thomas Nispel;Fabian Mueller | Steffen Bamberger;Jens Hallenberger;Claudia Hormel;Jens Krueger;Christoph Kuhmichel;Gerd Lischinski;Josef Mayer;Noel Ritzen;Muhammed Sahin;Mathias Salmen;Joachim Schaub;Jens Schroeder;Jan Seifert;Joerg Stremel;Entwicklung Weber;Tobias Weber |
| 3 | Sigfrid Bauer;Alexander Burk;Stefan Runkel;Thomas Gaerber;Udo Hallenberger;Sven Schuster;Ingo Rother;Patrick Schneider;Thomas Nispel;Stefan Lehmann;Philip Kahl;Fabian Mueller;Andreas Harder | Steffen Bamberger;Jens Hallenberger;Claudia Hormel;Jens Krueger;Christoph Kuhmichel;Gerd Lischinski;Josef Mayer;Noel Ritzen;Muhammed Sahin;Mathias Salmen;Joachim Schaub;Jens Schroeder;Jan Seifert;Joerg Stremel;Entwicklung Weber;Tobias Weber |
| 4 | | |
| 5 | Ingo Rother;Sigfrid Bauer;Stefan Lehmann;Leopold Keudell;Udo Hallenberger;Sven Schuster;Philip Kahl;Jan Seifert;Jens Hallenberger;Alexander Burk;Thomas Nispel;Thomas Gaerber;Tobias Weber;Gerd Lischinski;Andreas Harder;Joerg Schmeiser;Carsten Pfeiffer | Claudia Hormel;Jens Krueger;Christoph Kuhmichel;Wilfried Maier;Josef Mayer;Mathias Salmen;Joachim Schaub;Jens Schroeder;Joerg Stremel;Entwicklung Weber |
| 6 | Sven Schuster;Udo Hallenberger;Sigfrid Bauer;Stefan Runkel;Ingo Rother;Jan Seifert;Alexander Burk;Thomas Gaerber;Steffen Bamberger;Stefan Lehmann;Thomas Nispel;Gerd Lischinski;Philip Kahl;Patrick Schneider;Andreas Harder | Jens Hallenberger;Claudia Hormel;Jens Krueger;Christoph Kuhmichel;Wilfried Maier;Josef Mayer;Noel Ritzen;Mathias Salmen;Joachim Schaub;Joerg Schmeiser;Jens Schroeder;Joerg Stremel;Entwicklung Weber;Tobias Weber |
| 7 | | |

WEBER-0986618

| | A | B | C | D | E |
|---|---|---|---|---|---|
| 1 | Datum Kommentar: | PNR: | Aktionsvorsc | Bewerter: | Bewertung: |
| 2 | 6/18/2019 8:52 | DE202011111071U1 | | Sven Schuster | 3 |
| 3 | 6/18/2019 8:53 | DE202011111071U1 | | Udo Hallenberger | 2 |
| 4 | 6/18/2019 9:11 | DE202011111071U1 | | Sigfrid Bauer | 3 |
| 5 | 6/18/2019 9:55 | DE202011111071U1 | | Stefan Runkel | 1 |
| 6 | 6/18/2019 9:58 | DE202011111071U1 | | Ingo Rother | 3 |
| 7 | 6/18/2019 10:32 | DE202011111071U1 | | Jan Seifert | 3 |
| 8 | 6/18/2019 13:44 | DE202011111071U1 | | Alexander Burk | 3 |
| 9 | 6/18/2019 15:04 | DE202011111071U1 | | Thomas Gaerber | 3 |
| 10 | 6/18/2019 16:50 | DE202011111071U1 | | Steffen Bamberger | 3 |
| 11 | 6/19/2019 11:29 | DE202011111071U1 | | Stefan Lehmann | 3 |
| 12 | 6/19/2019 15:17 | DE202011111071U1 | | Thomas Nispel | 3 |
| 13 | 6/21/2019 11:10 | DE202011111071U1 | | Gerd Lischinski | 3 |
| 14 | 6/24/2019 6:16 | DE202011111071U1 | | Philip Kahl | 3 |
| 15 | 8/5/2019 10:17 | DE202011111071U1 | | Patrick Schneider | 3 |
| 16 | 9/13/2019 13:39 | DE202011111071U1 | | Andreas Harder | 3 |
| 17 | 8/11/2016 10:11 | EP2566670B1 | | Ingo Rother | 3 |
| 18 | 8/11/2016 11:58 | EP2566670B1 | | Sigfrid Bauer | 3 |
| 19 | 8/11/2016 12:05 | EP2566670B1 | | Stefan Lehmann | 3 |
| 20 | 8/11/2016 13:22 | EP2566670B1 | | Leopold Keudell | 3 |
| 21 | 8/11/2016 13:27 | EP2566670B1 | | Udo Hallenberger | 3 |
| 22 | 8/11/2016 15:21 | EP2566670B1 | | Sven Schuster | 3 |
| 23 | 8/12/2016 13:21 | EP2566670B1 | | Philip Kahl | 3 |
| 24 | 8/15/2016 8:34 | EP2566670B1 | | Jan Seifert | 3 |
| 25 | 8/15/2016 9:31 | EP2566670B1 | | Jens Hallenberger | 3 |
| 26 | 8/15/2016 10:41 | EP2566670B1 | | Alexander Burk | 3 |
| 27 | 8/15/2016 15:26 | EP2566670B1 | | Thomas Nispel | 3 |
| 28 | 8/16/2016 11:22 | EP2566670B1 | | Thomas Gaerber | 3 |
| 29 | 8/17/2016 16:52 | EP2566670B1 | | Tobias Weber | 3 |
| 30 | 9/16/2016 10:50 | EP2566670B1 | | Gerd Lischinski | 3 |
| 31 | 11/30/2016 10:48 | EP2566670B1 | | Andreas Harder | 3 |
| 32 | 12/19/2016 17:01 | EP2566670B1 | | Joerg Schmeiser | 3 |
| 33 | 5/22/2020 8:59 | US10625436B2 | | Stefan Runkel | 1 |
| 34 | 5/22/2020 12:47 | US10625436B2 | | Sven Schuster | 3 |
| 35 | 5/25/2020 6:03 | US10625436B2 | | Alexander Burk | 3 |
| 36 | 5/25/2020 6:34 | US10625436B2 | | Stefan Lehmann | 3 |
| 37 | 5/25/2020 7:59 | US10625436B2 | | Sigfrid Bauer | 3 |
| 38 | 5/25/2020 9:41 | US10625436B2 | | Thomas Gaerber | 3 |
| 39 | 5/25/2020 9:54 | US10625436B2 | | Andreas Harder | 3 |
| 40 | 5/25/2020 15:08 | US10625436B2 | | Udo Hallenberger | 2 |
| 41 | 5/25/2020 16:15 | US10625436B2 | | Ingo Rother | 3 |
| 42 | 6/2/2020 7:42 | US10625436B2 | | Philip Kahl | 3 |
| 43 | 6/5/2020 12:37 | US10625436B2 | | Patrick Schneider | 3 |
| 44 | 7/6/2020 11:03 | US10625436B2 | | Thomas Nispel | 2 |
| 45 | 7/24/2020 13:23 | US10625436B2 | | Fabian Mueller | 3 |

| | F | G |
|---|---|---|
| 1 | Kommentar: | Importname: |
| 2 | | Monitoring 2019KW17 |
| 3 | | Monitoring 2019KW17 |
| 4 | | Monitoring 2019KW17 |
| 5 | | Monitoring 2019KW17 |
| 6 | | Monitoring 2019KW17 |
| 7 | | Monitoring 2019KW17 |
| 8 | | Monitoring 2019KW17 |
| 9 | | Monitoring 2019KW17 |
| 10 | | Monitoring 2019KW17 |
| 11 | | Monitoring 2019KW17 |
| 12 | | Monitoring 2019KW17 |
| 13 | | Monitoring 2019KW17 |
| 14 | | Monitoring 2019KW17 |
| 15 | | Monitoring 2019KW17 |
| 16 | | Monitoring 2019KW17 |
| 17 | | Monitoring 2016W27 |
| 18 | | Monitoring 2016W27 |
| 19 | | Monitoring 2016W27 |
| 20 | | Monitoring 2016W27 |
| 21 | | Monitoring 2016W27 |
| 22 | | Monitoring 2016W27 |
| 23 | | Monitoring 2016W27 |
| 24 | | Monitoring 2016W27 |
| 25 | | Monitoring 2016W27 |
| 26 | | Monitoring 2016W27 |
| 27 | | Monitoring 2016W27 |
| 28 | | Monitoring 2016W27 |
| 29 | | Monitoring 2016W27 |
| 30 | | Monitoring 2016W27 |
| 31 | | Monitoring 2016W27 |
| 32 | | Monitoring 2016W27 |
| 33 | | Monitoring 2020KW18 |
| 34 | | Monitoring 2020KW18 |
| 35 | | Monitoring 2020KW18 |
| 36 | | Monitoring 2020KW18 |
| 37 | | Monitoring 2020KW18 |
| 38 | | Monitoring 2020KW18 |
| 39 | | Monitoring 2020KW18 |
| 40 | | Monitoring 2020KW18 |
| 41 | | Monitoring 2020KW18 |
| 42 | | Monitoring 2020KW18 |
| 43 | | Monitoring 2020KW18 |
| 44 | | Monitoring 2020KW18 |
| 45 | | Monitoring 2020KW18 |

# US2 User Bewertungen

| | A | B | C | D | E |
|---|---|---|---|---|---|
| 1 | Datum Kommentar: | PNR: | Aktionsvorsc | Bewerter: | Bewertung: |
| 46 | 6/12/2020 14:21 | US10639812B2 | | Sigfrid Bauer | 3 |
| 47 | 6/13/2020 10:19 | US10639812B2 | | Alexander Burk | 3 |
| 48 | 6/15/2020 8:31 | US10639812B2 | | Stefan Runkel | -1 |
| 49 | 6/15/2020 10:20 | US10639812B2 | | Thomas Gaerber | 3 |
| 50 | 6/15/2020 11:19 | US10639812B2 | | Udo Hallenberger | 2 |
| 51 | 6/15/2020 12:22 | US10639812B2 | | Sven Schuster | 3 |
| 52 | 6/18/2020 15:51 | US10639812B2 | | Ingo Rother | 3 |
| 53 | 6/22/2020 8:18 | US10639812B2 | | Patrick Schneider | 3 |
| 54 | 7/6/2020 11:08 | US10639812B2 | | Thomas Nispel | 1 |
| 55 | 7/15/2020 15:13 | US10639812B2 | | Stefan Lehmann | 3 |
| 56 | 7/21/2020 6:39 | US10639812B2 | | Philip Kahl | 3 |
| 57 | 7/24/2020 13:21 | US10639812B2 | | Fabian Mueller | 1 |
| 58 | 7/27/2020 8:45 | US10639812B2 | | Andreas Harder | 3 |

WEBER-0986618

**Appx30788**

|    | F          | G                    |
|----|------------|----------------------|
| 1  | Kommentar: | Importname:          |
| 46 |            | Monitoring 2020KW20  |
| 47 |            | Monitoring 2020KW20  |
| 48 |            | Monitoring 2020KW20  |
| 49 |            | Monitoring 2020KW20  |
| 50 |            | Monitoring 2020KW20  |
| 51 |            | Monitoring 2020KW20  |
| 52 |            | Monitoring 2020KW20  |
| 53 |            | Monitoring 2020KW20  |
| 54 |            | Monitoring 2020KW20  |
| 55 |            | Monitoring 2020KW20  |
| 56 |            | Monitoring 2020KW20  |
| 57 |            | Monitoring 2020KW20  |
| 58 |            | Monitoring 2020KW20  |

IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
ST. JOSEPH DIVISION

| | | |
|---|---|---|
| PROVISUR TECHNOLOGIES, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 19-cv-06021-SRB |
| | ) | |
| WEBER, INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

Before the Court is Defendant Weber, Inc., Textor Inc., Weber Maschinenbau

GmbH Breidenbach, Textor Maschinenbau GmbH, and Weber Maschinenbau GmbH

Neubrandenburg's ("Defendants") Motion for Summary Judgment of Non-Infringement of the

'936 and '005 Patents.[1]  (Doc. #282.)  As set forth below, the motion is GRANTED insofar as

summary judgment of non-infringement is granted in favor of Defendants on the '005 Patent.

The motion is DENIED insofar as Defendants are not entitled to summary judgment of non-

infringement on the '936 Patent.

### I.  FACTUAL BACKGROUND

For the purpose of resolving the pending motion, the following facts are uncontroverted

or deemed uncontroverted by the Court.[2]  Additional facts relevant to the parties' arguments are

set forth in Section III.

---

[1] Defendants are interrelated corporate entities and subsidiaries.  The Court acknowledges the differences between these entities.  However, for purposes of clarity and consistency, this Order collectively refers to Defendants.

[2] The facts discussed below are taken from the Court's *Markman* Order (Doc. #165), and from the parties' briefs and exhibits, without further quotation or attribution unless otherwise noted.  The Court notes that the applicable standard requires the facts to be viewed in the light most favorable to the non-moving party.  This Order only addresses those facts and arguments necessary for resolution of the pending motion.

which requires an "advancing conveyor." (Doc. #290, p. 10.) In response, Plaintiff contends the SmartLoader can perform "the exact 'advancing conveyor' operation covered by claim 14." (Doc. #317, pp. 48-49.) The parties' respective arguments and evidence is further discussed below.

### 1. Step One—Claim Construction.

"An infringement analysis requires two steps." *Packet Intelligence LLC v. NetScout Sys., Inc.*, 965 F.3d 1299, 1306 (Fed. Cir. 2020). The first step is claim construction. *Id.* "The purpose of claim construction is to determine the meaning and scope of the patent claims asserted to be infringed." *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co., Ltd.*, 521 F.3d 1351, 1360 (Fed. Cir. 2008) (cleaned up). If the meaning of a patent claim is disputed, the dispute is "a question of law" which is decided by the court. *Packet Intelligence*, 965 F.3d at 1306; *see also Markman v. Westview Instr., Inc.*, 52 F.3d 967, 970-71 (Fed. Cir. 1995) (en banc), *aff'd*, 517 U.S. 370 (1996).

In this case, the parties did not request the Court to construe the extending/retracting term at issue in the pending motion. However, during the pendency of this lawsuit, Defendants instituted an *inter partes* ("IPR") review before the U.S. Patent and Trademark Office's Patent Trial and Appeal Board ("PTAB").[6] In part, the parties disputed whether Claim 14 was valid in light of prior art. Before the PTAB, Plaintiff argued that Claim 14 covered a conveyor which starts in a retracted position and then fills each new row of pockets as it advances. Plaintiff presented a demonstrative illustration, set forth below, to show this movement:

---

[6] Congress created the IPR procedure to allow "private parties to challenge previously issued patent claims in an adversarial process before the Patent Office that mimics civil litigation." *SAS Inst., Inc. v. Iancu*, 138 S. Ct. 1348, 1352 (2018).



On February 24, 2021, the PTAB issued a Final Decision. The PTAB agreed with Plaintiff and found that Claim 14 requires an "advancing conveyor" to fill the packages, not a "withdrawing conveyor." (Doc. #290-2, pp. 47-50, 82); (Doc. #317, pp. 9-10.) The PTAB contrasted Claim 14's advancing conveyor with prior art, which "operat[ed] [differently] by 'removing the ground from under the feet' of the food items when depositing them by moving the conveyor in the withdrawing direction[.]" (Doc. #290-2, p. 48.)

Upon review, the Court agrees with and adopts the PTAB's conclusions on Claim 14. Specifically, the Court finds that Claim 14 requires an "advancing conveyor" and not a withdrawing conveyor. This means that the shuttle conveyor must start in a retracted position, and then advances as it fills each new row of employ packages. The Court's construction is consistent with the PTAB's findings and with Plaintiff's arguments before the PTAB.

Plaintiff contends "the PTAB did not hold . . . that claim 14 requires an exclusively advancing conveyor not a withdrawing conveyor." (Doc. #317, p. 10.) This argument is not persuasive. The PTAB expressly found—as argued by Plaintiff—that Claim 14 involved an advancing conveyor, which distinguished it from prior art. The Court will not allow Plaintiff to advocate one position before the PTAB, and a different position in this litigation. Moreover, Plaintiff has failed to offer a reasonable alternative construction in this case. Therefore, Claim 14 is construed as requiring an "advancing conveyor" and not a withdrawing conveyor.

## 2. Step Two—Whether Defendants' System Infringes the '936 Patent as Construed.

The second step of the patent infringement analysis requires the court to "determine[] whether the accused product meets each limitation of the claim as construed, which is a question of fact." *Packet Intelligence*, 965 F.3d at 1306. "Summary judgment on the issue of infringement is proper when no reasonable jury could find that every limitation recited in a properly construed claim either is or is not found in the accused device either literally or under the doctrine of equivalents." *PC Connector*, 406 F.3d at 1364. "To prove literal infringement, the patentee must show that the accused device contains *each and every limitation* of the asserted claims." *Ericsson, Inc. v. D-Link Sys., Inc.*, 773 F.3d 1201, 1215 (Fed. Cir. 2014) (emphasis in original). "To find infringement under the doctrine of equivalents, any differences between the claimed invention and the accused product must be insubstantial." *Brilliant Instruments, Inc. v. GuideTech, LLC*, 707 F.3d 1342, 1346 (Fed. Cir. 2013).

Here, Defendants argue their SmartLoader products do not satisfy the advancing conveyor limitation. According to Defendants, the SmartLoader "works by starting in an extended position and then quickly retracting the conveyor, pulling the conveyor out from under food product to drop them into the packages—the *opposite* movement from that expressly recited in claim 14." (Doc. #290, p. 27) (emphasis in original). In response, Plaintiff argues it has presented evidence sufficient to avoid summary judgment.

As stated above, a plaintiff may create a fact issue—and avoid summary judgment on the issue of infringement—through expert testimony. *Martek Biosciences*, 579 F.3d at 1374; *McGinley*, 2010 WL 1404194, at *2. Plaintiff's expert, Dr. Keith Vorst, opines that:

> The Accused Loader Products include said shuttle conveyor is configured to fill plural rows of pockets while said web is stationary in said fill station, and said shuttle conveyor is configured to retract from an extended position to a

9

CONFIDENTIAL

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
ST. JOSEPH DIVISION

| | |
|---|---|
| PROVISUR TECHNOLOGIES, INC.,<br>*Plaintiff*,<br><br>v.<br><br>WEBER, INC., et al.<br>*Defendants*. | Civil Action No. 5:19-cv-06021-SRB<br>Civil Action No. 5:20-cv-06069-SRB |

**DEFENDANTS' OPPOSITION TO PROVISUR'S MOTION FOR SANCTIONS**

Weber has fully complied with its discovery obligations in this case, timely supplementing its document productions and interrogatory responses as discovery progressed. On the subject of knowledge of Provisur's patents and willfulness, Weber fully conceded knowledge of the patents and the first ascertainable date of that knowledge in its interrogatory responses produced in fact discovery. Those verified interrogatory responses were sufficient to make Weber's knowledge of the patents a non-contested issue in this case. No further written or evidentiary discovery was needed at that point because Provisur does not need anything more to prove Weber's knowledge of the patents. Indeed, the entire purpose of verified interrogatory responses is to obviate the need for burdensome discovery into non-contested issues.

Provisur nonetheless continued to push for additional discovery regarding Weber's knowledge of the patents, and Defendants continued to supplement their discovery responses to comply with these requests, despite objecting to their lack of relevance and excessive burden. Provisur also spent hours of time during depositions questioning each of Weber's witnesses about their knowledge of the patents, creating numerous unnecessary privilege disputes, all in a purported search for evidence that Provisur *does not need* to prove an issue that *is not disputed*.

Glaringly absent from Provisur's Motion for Sanctions is any explanation of how the allegedly late production of Weber's PATOffice spreadsheet—cumulative evidence of Weber's uncontested knowledge of Provisur's patents, Mot. Ex. V (WEBER-0981466)—is material to any live issue in the case. It is not. There is therefore no prejudice in the timing of its disclosure, and no misconduct in Weber's initial treatment of its Patent Management Group documents and communications as privileged.

Provisur's persistent focus on discovering additional evidence of Weber's knowledge of the patents, patent applications, and "related" European patents is, and has always been, an attempt to manufacture evidence of willfulness. As it stands, there is no evidence of willful

1

patent infringement in the record. Provisur's strategy has therefore been to demand more and more expansive evidence of knowledge of Provisur's patents generally, and then point to later-produced evidence of knowledge of patent *applications* or *non-U.S.* patents as though the lateness of its production were itself evidence of willful misconduct. It is not. In reality, none of the evidence Weber has produced in this case supports an accusation of willful infringement, because no such willful infringement occurred. Provisur's motion for sanctions is unfounded.

## I.   *Background and Counterstatement of Facts.*

Provisur accuses Weber of willful infringement of all asserted patents in both *Provisur I* and *Provisur II*. To establish willfulness, a patentee must show that the accused infringer had *a specific intent to infringe* the asserted patent at the time of the challenged conduct. *Bayer Healthcare LLC v. Baxalta Inc.*, 989 F.3d 964, 987 (Fed. Cir. 2021) (citing *Halo Elecs., Inc. v. Pulse Electronics, Inc.*, 579 U.S. 93, 105 (2016)). Knowledge of the asserted patent during the time of the challenged conduct is one element of proving willfulness. *Bayer*, 989 F.3d at 987–88. The relevant time of the challenged conduct for purposes of assessing willfulness is the damages window, because the district court may decide to award enhanced damages if there is a finding of willful infringement. *Halo*, 579 U.S. 93 at 106-07 (holding that section 284 commits to the district court the determination of whether enhanced damages are appropriate *following* an affirmative jury finding of willful infringement).

On August 26, 2021, early in fact discovery, Weber identified that it was aware of the remaining patents[1] in *Provisur I* at least as of March 17, 2014. Mot. Ex. H, Defs.' Supp. Resps. & Objs. to Plaintiff's Second Set of ROGs (No. 11) (verified by J. McCarroll Sep. 1, 2021).

---

[1] Following the Court's Summary Judgment Orders of July 13, 2022, only the '089 and '936 patents remain in *Provisur I*. Nonetheless, the statements in this Response are equally true for all four *Provisur I* patents at issue in Provisur's Motion.

Weber thus conceded knowledge of the asserted patents during the potential damages window (up to six years before filing suit) for *Provisur I*, but denied knowledge or belief of infringement. Knowledge of the patents alone is not sufficient for a finding of willfulness. *Eko Brands, LLC v. Adrian Rivera Maynez Enters., Inc.*, 946 F.3d 1367, 1378 (Fed. Cir. 2020) ("You may not determine that the infringement was willful just because [the defendant] knew of the [asserted] patent and infringed it[.]").

Weber also admitted knowledge of the two patents at issue in *Provisur II* as of around the issue date of those patents (thus covering the damages window for those patents) and similarly denied any knowledge or belief of infringement. Mot. Ex. I, Defs.' Supp. Resps. & Objs. to Plaintiff's Second Set of ROGs (No. 10) (verified by J. McCarroll Sep. 1, 2021). There is no issue in *Provisur II* that turns on the precise date that Weber became aware of the asserted patents.

Nonetheless, through the course of discovery, Weber supplemented its interrogatory responses to identify more specific dates of first awareness for each of the patents-in-suit. Specifically, Weber refined the dates of first awareness to the extent such awareness came from earlier communications with Provisur's German patent counsel and to provide for the first time knowledge dates for the related European patents. Mot. Ex. N, Defs.' Second Supp. Resps. & Objs. to Plaintiff's ROGs (No. 11); Mot. Ex. O, Defs.' Second Supp. Resps. & Objs. to Plaintiff's Second Set of ROGs (No. 10). Accordingly, with those admissions, Provisur had nothing left to prove regarding Weber's knowledge of the asserted patents. No applicable legal standard requires Provisur to pinpoint exactly who knew about which patent and when, as such information does not relate to any disputed issue in this case. *See, e.g.*, *Bayer*, 989 F.3d at 987 (requiring knowledge and a specific intent to infringe the asserted patent during the relevant

3

damages window); *Eko*, 946 F.3d at 1378 (affirming that knowledge of the patent alone is not sufficient to infer willfulness).

Following the Court's guidance regarding the scope of privilege for *Patentanwalte*, *Provisur I* D.I. 264; *Provisur II* D.I. 195, Order, Weber also produced several documents and communications previously withheld as privileged, including a spreadsheet that Weber exported from its PATOffice database.[2] Ex. 1, Apr. 1, 2022 Production Letter, Ex. 2, Apr. 15, 2022 Production Letter ("Defendants do not intend to waive any privilege by producing this document, and do so solely in compliance with the Court's Order."). The PATOffice database is a computer system that Weber uses to track and score patents and patent applications in the food processing and packaging industry. The PATOffice system automated Weber's existing monitoring program established with counsel. *See* Ex. 3, Zecher Apr. 20 Dep. 55:3-14 ("Q. Who set up the monitoring profile, used in the Pat Office system, for Weber? A. This is historic because it reaches very far back, probably around 2000 . . . [and] was established together with our attorneys . . .); 57:2-19. Numerous Weber employees use the database to score patents from 1 to 3 based on a number of metrics about how relevant they might be to Weber's business. Ex. 3, Zecher Apr. 20 Dep. 67:3-71:18; 122:7-125:11; 127:10-130:21. Weber's Patent Management Group might further investigate with outside counsel its interest in competitor patents that receive high cumulative scores. *Id.* at 101:15-102:6. It is not the purpose of the PATOffice system to document concerns about patent infringement, nor does a score of 3 imply any concern

---

[2] Weber produced two additional PATOffice spreadsheets in response to Provisur's request for related patent applications. Mot. Exs. X, Y. *Contra* Mot. ¶¶ 27-28. But this is irrelevant as patent *applications* have no bearing on willful infringement of an *issued* patent. *See State Indus., Inc. v. A.O. Smith Corp.,* 751 F.2d 1226, 1236 (Fed. Cir. 1985) ("To willfully infringe *a patent*, the patent must exist and one must have knowledge of it. . . . Filing an application is not guarantee any patent will issue and a very substantial percentage of applications never result in patents. What the scope of claims in patents that do issue will be is something totally unforeseeable.") (emphasis in original).

4

# IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF MISSOURI
### ST. JOSEPH DIVISION

| | | |
|---|---|---|
| PROVISUR TECHNOLOGIES, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 19-cv-06021-SRB |
| | ) | Case No. 20-cv-06069-SRB |
| WEBER, INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

Before the Court is Plaintiff Provisur Technologies, Inc.'s ("Plaintiff") Motions for Sanctions Against Defendants.  Case No. 19-cv-06021 ("*Provisur I*") (Doc. #335); Case No. 20-cv-06069 ("*Provisur II*") (Doc. #264).  For the reasons set forth below, the motions are DENIED.

## I.  FACTUAL BACKGROUND

The facts of these cases have been discussed in various prior Orders. The parties' briefs on the pending motions raise numerous facts that have occurred over the past two years.  This Order does not address all of the various facts and arguments raised by the parties.  Only those facts and arguments necessary to resolve the pending motions are discussed below, and they are simplified to the extent possible.  Additional facts are discussed in Section III.

Plaintiff filed two pending patent-infringement cases against Defendants Weber, Inc., Textor Inc., Weber Maschinenbau GmbH Breidenbach, Textor Maschinenbau GmbH, and

Weber Maschinenbau GmbH Neubrandenburg ("Defendants").[1]  *Provisur I* was filed on February 22, 2019, and *Provisur II* was filed on May 6, 2020.

In July 2020, Plaintiff began serving interrogatories and requests for production that focused on when Defendants first became aware of the patents-in-suit, and any action Defendants took as a result.[2]  Plaintiff sought this information to assess issues of willful infringement and damages.  In August 2020 and February 2021, Defendants responded that they were aware of the patents-in-suit "at least as of the service of the complaint" in *Provisur I* and *II*.  (Doc. #336, p. 7.)

In August 2021, Defendants supplemented their interrogatory responses.  Defendants stated they became aware of the *Provisur I* patents by March 17, 2014, and became aware of the *Provisur II* patents when those patents were issued.  In September and October 2021, the parties exchanged letters regarding whether Defendants had properly identified individuals who first became aware of the patents-in-suit, and whether Defendants had produced all responsive documents.  Defendants again supplemented their interrogatory responses in January 2022.  These responses provided additional dates of Defendants' awareness of the patents-in-suit and related patents, and also stated their awareness came through communications with counsel.

In January and February 2022, Plaintiff deposed several of Defendants' witnesses.  Plaintiff states that these witnesses gave equivocal answers or denied having knowledge of the patents-in-suit, and that Defendants' counsel objected to such questions on the basis of attorney-client privilege.  Plaintiff also states that it learned about Defendants' Patent Management Group

---

[1] Defendants are interrelated corporate entities and subsidiaries.  The Court acknowledges the differences between these entities.  However, for purposes of clarity and consistency, this Order collectively refers to Defendants.  The parties are also litigating a third patent-infringement case, but it is not relevant to this Order.

[2] Plaintiff's discovery requests sought the same information regarding "related patents," which was broadly defined to include, among other things, parent applications, child applications, and continuations-in-part.  (Doc. #336, p. 6.)  All page numbers refer to the pagination automatically generated by CM/ECF in Case No. 19-cv-06021.

2

Appx31384

("PMG") for the first time during these depositions. Defendants' PMG evaluates patents, including those issued to Plaintiff.

In March 2022, Plaintiff moved for an order compelling Defendants to produce all responsive documents relating to the PMG. Plaintiff argued the documents were relevant to the issue of willful infringement, and were not protected by the attorney-client privilege. Defendants responded, in part, that the PMG documents were generated at the direction and supervision of Defendants' German patent counsel and thus privileged. On March 22, 2022, the Court ruled that "the German patent agents are not subject to attorney-client privilege" and directed Defendants to produce responsive documents. (Doc. #267, p. 2.) The Court also allowed Plaintiff to re-depose a witness on issues relating to Defendants' PMG.

Defendants complied with the Court's March 22, 2022 Order. On April 15, 2022, Defendants also produced a spreadsheet that contained data from a so-called PATOffice database. According to Plaintiff, this "was the first time Defendants produced anything from PATOffice or disclosed its existence." (Doc. #336, p. 14.) Defendants use the PATOffice database system to monitor and score patents in the food processing and packaging industry, including Plaintiff's patents.[3] According to Plaintiff, the PATOffice spreadsheet and subsequently produced documents show that Defendants have used the PATOffice system since 2013. Plaintiff re-deposed Defendants' witness on April 20, 2022, and elicited testimony regarding the PMG and PATOffice.

Plaintiff now moves for sanctions based on Defendants' failure to timely disclose documents relating to their PATOffice system. Plaintiff argues that "[t]hrough two years of discovery, Defendants misled [Plaintiff] on . . . the facts and circumstances regarding when

---

[3] The parties dispute whether the scoring system simply "shows how [Defendants] monitor[] the patent landscape in the industry," and/or whether the scoring system relates to possible infringement. (Doc. #343, p. 8.)

3

Defendants first became aware of the patents-in-suit." (Doc. #336, p. 5.) Defendants oppose the motion, and primarily argue that their "decision to withhold documents relating to [their] Patent Management Group and PATOffice system based on privilege was substantially justified." (Doc. #343, p. 12.) The parties' arguments are addressed below.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 26(g)(1) requires an attorney to sign every discovery response or objection. Fed. R. Civ. P. 26(g)(1). "By signing, an attorney . . . certifies that to the best of the person's knowledge, information, and belief formed after a reasonable inquiry," the disclosure "is complete and correct as of the time it is made[.]" *Id.* A discovery response must also be timely supplemented "if the party learns that in some material respect the disclosure or response is incomplete or incorrect." Fed. R. Civ. P. 26(e)(1)(A).

The Federal Rules of Civil Procedure "also authorize—and sometimes require—courts to impose sanctions as a remedy for discovery abuse." *White v. CitiMortgage, Inc.*, Case No. 15-0289-CV-W-SRB, 2018 WL 4926306, at *2 (W.D. Mo. Oct. 10, 2018). Under Rule 26(g)(3), "if a certification violates [Rule 26(g)] without substantial justification, the court, on motion or on its own, must impose an appropriate sanction on the signer, the party on whose behalf the signer was acting, or both." Fed. R. Civ. P. 26(g)(3). Rule 37(c) provides that "[i]f a party fails to provide information . . . as required by Rule 26" and the failure is not "substantially justified" or "harmless," the court may enter an appropriate sanction. Fed. R. Civ. P. 37(c)(1)(A)–(C).

## III. DISCUSSION

Here, Plaintiff argues that "Defendants' disclosure of the PATOffice system shows that their prior discovery responses related to their knowledge of the patents-in-suit violated Rules 26 and 37." (Doc. #336, p. 5.) According to Plaintiff, "for over a year-and-a-half, Defendants

4

served verified responses to [Plaintiff's] interrogatories regarding their knowledge of the patents-in-suit that were not complete and correct as of the time of their service." (Doc. #336, p. 19.) Plaintiff further argues that Defendants "continued this knowing omission during deposition discovery" by claiming to lack knowledge of the patents-in-suit and/or by "aggressively object[ing] on the basis of privilege." (Doc. #336, p. 20.)

Plaintiff contends that Defendants cannot rely on privilege to excuse their late production because they "never placed that [PATOffice] documentation on any of the privilege logs that they have served in this litigation." (Doc. #336, p. 21.) Plaintiff argues it has been prejudiced by being unable to conduct full discovery on Defendants' knowledge of the patents and scoring system, and that those facts are important to assessing damages and the issue of willful infringement. For a sanction, Plaintiff requests (a) "an order finding that, as a matter of law pursuant to 35 U.S.C. § 284, Defendants' conduct with respect to the patents-in-suit was willful;" or (b) "other than confirming the scores they gave to each patent and the date of those scores, Defendants are precluded from testifying at trial about their PATOffice system." (Doc. #336, p. 23.)

Upon review, the Court finds that a sanction is not warranted in this case. First, Defendants admitted they had knowledge of the patents-in-suit during fact discovery. On August 26, 2021, Defendants supplemented their response to Plaintiff's second set of interrogatories in *Provisur I.* Defendants stated "that they were aware of the existence of each of the four remaining patents-in-suit at least as early as March 17, 2014, but were not aware of the alleged patent infringement involving these patents until the day the complaint was filed." (Doc. #336-9, p. 5.) On August 26, 2021, Defendants also served a supplemental response in *Provisur II*, which stated "that they were aware of the existence of the two patents-in-suit on or about their

5

respective issue dates, but were not aware of the alleged patent infringement involving these patents until the day the complaint was filed." (Doc. #336-10, p. 5.)

These supplemental responses established Defendants' knowledge of the patents-in-suit, and the dates of their knowledge. As to the existence and dates of Defendants' knowledge, the Court agrees with Defendants that "[n]o further written or evidentiary discovery was needed at that point because [Plaintiff] does not need anything more to prove [Defendant's] knowledge of the patents." (Doc. #343, p. 4.) In addition, Defendants' supplemental interrogatory responses were served prior to the close of fact discovery.[4] The Court finds that Plaintiff had sufficient time to review those responses and proceed accordingly with discovery.

Plaintiff's reply brief argues that "Defendants had no reason—other than gamesmanship—to have delayed their supplemental response[s] for so long." (Doc. #356, p. 7 n. 4.) Although the supplemental responses could have been provided sooner, the record does not show that any delay was deliberate or otherwise sanctionable. Any delay is also substantially justified given the complexity of this case and the overall scope of discovery. Plaintiff's reply correctly argues that willfulness turns on "the totality of the circumstances" and not just on the date of first knowledge. (Doc. #356, p. 7.) However, the record does not show that Plaintiff has been prevented from obtaining discovery relating to the totality of Defendants' alleged conduct. Plaintiff also argues that Defendants' witnesses "lied under oath" about their knowledge of the patents-in-suit during depositions. (Doc. #356, pp. 10-11.) To the extent Plaintiff is correct, it may challenge that deposition testimony at trial through the questioning of those witnesses and/or other evidence.

---

[4] Fact discovery closed on February 4, 2022 in both *Provisur I* and *II*.

Second, the Court finds that any failure by Defendants to timely disclose the PATOffice documents was substantially justified. Fed. R. Civ. P. 26(g)(3); Fed. R. Civ. P. 37(c). These documents were created under the direction of Defendants' German patent attorneys, and Defendants did not initially produce them on the basis of attorney-client privilege. During a telephonic hearing on March 22, 2022, the Court ruled that "the German patent agents are not subject to attorney-client privilege" and directed Defendants to produce responsive documents. (Doc. #267, p. 2.) However, the Court also acknowledged and cited case law that supported both parties' arguments on the privilege issue. Under these circumstances, Defendants' privilege argument—and related decision not to produce the PATOffice spreadsheet until April 15, 2022—was substantially justified. Because Defendants produced the information and documents previously withheld, sanctions are not warranted.[5]

Finally, any prejudice to Plaintiff as a result of the delayed production has been cured. Plaintiff took a follow-up deposition of Defendants' corporate representative on April 20, 2022, and the witness provided testimony regarding Defendants' monitoring and scoring of patents, including the PATOffice spreadsheet. Plaintiff argues that if it had the PATOffice documents and information earlier, it "could have" asked witnesses additional questions and "could have" noticed additional depositions. (Doc. #356, pp. 11-12.) The Court finds that this alleged prejudice is largely speculative and, even if it was supported, would not support the severe sanctions requested by Plaintiff.

---

[5] Defendants produced additional documents on June 6, 2022, and June 16, 2022. Plaintiff argues these documents contradict Defendants' earlier interrogatory responses regarding the dates of their knowledge and scoring of patents. These alleged date discrepancies appear to be marginal and do not warrant the imposition of sanctions. The parties also dispute whether Defendants should have listed the PATOffice documents on their privilege log. Defendants argue they "did not list [the PATOffice] spreadsheet in [their] privilege log because it was generated for purposes of this litigation, after the agreed-upon privilege cutoff date." (Doc. #343, p. 11.) As to the privilege log dispute, the Court agrees with Defendants that "counsel had a reasonable basis to believe these comments and other dates in the . . . database were privileged and dated after the privilege-log cut-off." (Doc. #343, pp. 11-12 n. 4.)

7

## IV. CONCLUSION

Accordingly, Plaintiff's Motions for Sanctions Against Defendants, Case No. 19-cv-06021 (Doc. #335), and Case No. 20-cv-06069 (Doc. #264), are DENIED.

**IT IS SO ORDERED.**

/s/ Stephen R. Bough
STEPHEN R. BOUGH
UNITED STATES DISTRICT JUDGE

Dated: July 28, 2022

CONFIDENTIAL

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
ST. JOSEPH DIVISION

PROVISUR TECHNOLOGIES, INC.,
*Plaintiff*,

v.

Civil Action No. 5:19-cv-06021-SRB

WEBER, INC., et al.
*Defendants*.

**DEFENDANTS' SUGGESTIONS IN SUPPORT OF THEIR MOTION TO EXCLUDE
THE EXPERT OPINIONS OF JULIE L. DAVIS**

**CONFIDENTIAL**

## TABLE OF CONTENTS

I.     Statement of Facts ...................................................................................................1

II.    Relevant legal principles ...........................................................................................5

III.   Argument ....................................................................................................................7

       A.    Ms. Davis violates the entire market value rule ........................................7

       B.    Ms. Davis fails to tie her royalty analysis to the facts of the case. .......14

       C.    Ms. Davis's reliance on Weber's "Pillage and Protect" sales strategy is
             irrelevant to patent damages and should be excluded............................18

IV.    Conclusion ...............................................................................................................19

Case 5:19-cv-06021-SRB   Document 381 *SEALED*   Filed 08/29/22   Page 2 of 25

Appx31673

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*AstraZeneca AB v. Apotex Corp.*,
    782 F.3d 1324 (Fed. Cir. 2015) .................................................................5

*Biedermann Techs. GmbH & Co. KG v. K2M, Inc.*
    2021 WL 6034269 (E.D. Va. Dec. 10, 2021) .......................................16

*Commonwealth Sci. & Indus. Rsch. Org. v. Cisco Sys., Inc.*,
    809 F.3d 1295 (Fed. Cir. 2015) ......................................................7, 10, 15

*Daubert v. Merrell Dow Pharms., Inc.*,
    509 U.S. 579 (1993) ..................................................................1, 5, 18, 19

*Dynetix Design Sols., Inc. v. Synopsys, Inc.*,
    No. 11-cv-05973, 2013 WL 4538210 (N.D. Cal. Aug. 22, 2013) ............6

*Ericsson, Inc. v. D-Link Sys., Inc.*,
    773 F.3d 1201 (Fed. Cir. 2014) ................................................................6

*Garretson v. Clark*,
    111 U.S. 120 (1884) .............................................................................6, 9

*Gen. Elec. Co. v. Joiner*,
    522 U.S. 136 (1997) ...............................................................................18

*Georgia-Pacific Corp. v. U.S. Plywood Corp.*,
    318 F. Supp. 1116 (S.D.N.Y. 1970) ............................................... *passim*

*Johnson v. Mead Jonson & Co.*,
    754 F.3d 557 (8th Cir. 2014) ....................................................................5

*LaserDynamics, Inc. v. Quanta Comput., Inc*,
    694 F.3d 51 (Fed. Cir. 2012) .........................................................7, 8, 14

*Lauzon v. Senco Prods., Inc.*,
    270 F.3d 681 (8th Cir. 2001) ....................................................................5

*Luitpold Pharms., Inc. v. Ed. Geistlich Sohne A.G. Fur Chemische Industrie*,
    2015 WL 5459662 (S.D.N.Y. Sept. 16, 2015) ......................................19

*Micro Chem., Inc. v. Lextron, Inc.*,
    317 F.3d 1387 (Fed. Cir. 2003) ...........................................................9, 14

*NetFuel, Inc. v. Cisco Sys. Inc.*,
    2020 WL 1274985 (N.D. Cal. Mar. 17, 2020)........................................................13

*Omega Patents, LLC v. CalAmp Corp.*,
    13 F.4th 1361 (Fed. Cir. 2021) ........................................................................11

*Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc*,
    904 F.3d 965 (Fed. Cir. 2018)................................................................8, 11, 12

*Realtime Data, LLC v. Oracle America, Inc.*,
    2017 WL 11574028 (E.D. Tex. Mar. 30, 2017) ...............................................10

*ResQNet.com, Inc. v. Lansa, Inc.*,
    594 F.3d 860 (Fed. Cir. 2010)........................................................................19

*Riles v. Shell Expl. & Prod. Co.*,
    298 F.3d 1302 (Fed. Cir. 2002)....................................................................7, 18

*Rite-Hite Corp. v. Kelley Co.*,
    56 F.3d 1538 (Fed. Cir. 1995)......................................................................9, 15

*Rolls-Royce PLC v. United Techs. Corp.*,
    No. 10-cv-457, 2011 WL 1740143 (E.D. Va. May 4, 2011) .................................10

*Shopify Inc. v. Express Mobile, Inc.*,
    2021 WL 4288113 (D. Del. Sept. 21, 2021).....................................................13

*Studiengesellschaft Kohle m.b.H. v. Dart Indus., Inc.*,
    666 F. Supp. 674 (D. Del. 1987).....................................................................17

*Summit 6, LLC v. Samsung Elecs. Co.*,
    802 F.3d 1283 (Fed. Cir. 2015)................................................................15, 17

*TASER Int'l, Inc. v. Karbon Arms, LLC*,
    2013 WL 6773663 (D. Del. Dec. 19, 2013).....................................................18

*Uniloc USA, Inc. v. Microsoft Corp.*,
    632 F.3d 1292 (Fed. Cir. 2011)............................................................7, 15, 17

*Versata Software Inc. v. SAP Am., Inc.*,
    2011 WL 4017939 (E.D. Tex. Sept. 9, 2011) ..................................................14

*Via Vadis, LLC et al. v. Amazon.com, Inc.*,
    1:14-cv-813, Dkt. No. 230 (W.D. Tex. Jan. 3, 2022) .......................................8, 14

*Virnetx, Inc. v. Cisco Sys., Inc.*,
    767 F.3d 1308 (Fed. Cir. 2014)............................................................6, 8, 14

*Wagner v. Hesston Corp.*,
    450 F.3d 756 (8th Cir. 2006) ....................................................................................5

*Whitserve, LLC v. Comput. Packages, Inc.*,
    694 F.3d 10 (Fed. Cir. 2012).............................................................................15, 18

*Wood v. Minn. Mining & Mfg. Co.*,
    112 F.3d 306 (8th Cir. 1997) ....................................................................................5

**Statutes**

35 U.S.C. § 284 .........................................................................................................5

**Other Authorities**

Federal Rule of Evidence 702 ................................................................................1, 5

Federal Rule of Evidence 703 ..................................................................................1

Provisur offers the opinions of Ms. Julie L. Davis as its purported expert on damages. While Ms. Davis may have economic credentials, she does not provide the requisite analysis utilizing that expertise. Instead, she defers entirely to Provisur's technical expert, Dr. Keith Vorst for the underlying economic analysis on the value of the patented technology. Ms. Davis's opinion has previously been excluded for this same fatal error. Furthermore, Ms. Davis's sole theory of damages employs the "entire market value rule," a narrow exception to established patent damages law that has all but been overturned by the Federal Circuit. Ms. Davis fails to justify her reliance on this rule and claims ignorance of governing law. In doing so, Ms. Davis's damages opinion fails to apportion the royalty rate to the value of the asserted technology, another error for which Ms. Davis's opinion has been excluded in the past, and the kinds of error for which the Federal Circuit has repeatedly vacated damages awards. Her testimony regarding damages should be excluded under Rules 702, 703, and *Daubert*.

## I.   *Statement of Facts*

In 2005, Formax Holdings, Inc. ("Formax") was purchased by Max Acquisition Corp, a corporation formed by the owners of CC Industries (CCI) (otherwise known as the Crown Family) in order to purchase Formax. *See* Ex. 1, Green Dep. 32:13-21. Provisur was formed in 2009 to consolidate the food processing companies owned by the Crown family, including Formax. *See* Ex. 2, Cohen Dep. 165:10-168:13. The acquisition of Formax included acquisition of Formax's portfolio of over 50 issued patents and pending applications, trade secrets, and other institutional know-how. Ex. 3, Duff and Phelps Estimation of the Fair Value of Certain Identifiable Intangible Assets ("Duff and Phelps Document"), DP_0001; Ex. 4, Formax Acquisition Memo, PR00203366 at PR00203381.

At the time of its acquisition, CCI valued Formax's entire intellectual property portfolio (including all issued patents and pending applications) at around $25 million. Duff and Phelps

Document, DP_00001 at DP_00061. That number was based on the estimation that all of the patented technology would have garnered about a 3% royalty rate (on average) if Provisur were to license it. *Id.* at DP_00062. Provisur is still managed by the Crown Family through an entity named "HCC Manager." *See* Green Dep. 24:2-11; 26:9-18. Since 2009, Provisur has continued to sell the food processing machinery developed by Formax and continued pursuing patents on its technology. *See* D.I. 15, Amended Compl. ¶¶ 24-26.

Weber was founded in 1983 in Germany with the aspiration to be an innovative company that developed technical solutions for local butchers and grocers processing meat for their customers. Ex. 5, Tobias Dep. 113:10-115:9. As Weber's machinery grew in sophistication, so did its business. *See id.* Weber began to expand to other countries, selling larger capacity industrial-grade food slicing and processing machines. *See id.* Weber, Inc. opened in Kansas City in 1996, which serves as the distribution, sales, and support headquarters for Weber's business in North America. *See* Ex. 6, Company History, WEBER, https://www.weberweb.com/company/history/ (last accessed Aug 25, 2022). For the past decade, Weber has been the global market leader for food product slicing, loading, and packaging lines. *See id.*

Although Weber and Provisur are competitors in the market, Provisur is not among Weber's main competitors for any of the products accused in this case. Ex. 7, Davis Dep. 279:12-280:4 (agreeing that Weber and Provisur are competitors generally, but not for the products accused in this case). Notably, Provisur does not currently practice any of the patents asserted in this case. *Id.* at 279:12-280:4 (admitting that Provisur does not practice any of the patents asserted in this case).

Before this lawsuit, Weber and Provisur had always maintained a cordial relationship. *See* Cohen Dep. 44:2-14; Ex. 8, Scriven Dep. 91:5-7. Indeed, the food processing industry is a

small community and many employees move from one company to a competing company at some point during their careers. These employees tend to maintain professional relationships with their former coworkers. *See e.g.* Scriven Dep. 92:2-15. Weber and Provisur are no different. *See id.* Weber currently employs salespeople who used to work at Provisur, and Provisur's Vice President of the Slicing Business Unit (Scott Scriven) used to be CEO at Weber. *Id.* at 9:8-10.

Pursuant to that cordial relationship, Weber and Provisur have entered into a number of cross-licensing agreements over the years. Davis Dep. 240:18-243:12 (admitting that Weber produced three past licensing agreements with Provisur). These agreements licensed Weber patents to Provisur, and in turn licensed Provisur patents to Weber. *See* Ex. 9, 2011 License Agreement, WEBER-0970717; Ex. 10, 2013 License Agreement, WEBER-0970762, Ex. 11, 2014 License Agreement, WEBER-0251270; Ex. 12, 2019 License Agreement, WEBER-0241348. The most recent of these agreements was signed in 2019, shortly before Provisur brought the present suit against Weber. *See* 2019 License Agreement, WEBER-0241348. Provisur had never sued Weber Inc. for patent infringement before.

During fact discovery, Weber produced to Provisur the sales figures for its accused products, including the sales price associated with each machine accused of infringement: Weber's 905, 906, and S6 slicers; Weber's SmartLoaders, and Weber's COW optical graders. *See, e.g.*, Ex. 13, Defendants' Response to Provisur's Interrogatory No. 2 (*Provisur I*); Ex. 14, Defendants' Dec. 10, 2021 Worldwide Sales Spreadsheet, WEBER-0931674; Ex. 15, Defendants' Response to Provisur's Interrogatory No. 2 (*Provisur II*). Provisur was not satisfied. Provisur wanted not only the sales revenue for the accused products themselves, but for the *entire lines* with which the products were sold. D.I. 249, 02/17/2022 Hearing Tr. At 23. These lines included slicers, weighers, graders, conveyors, loaders, robots, and packaging machines. *See, e.g.* Ex. 16, Quote to Olli Salumeria, WEBER-0101864. These lines include dozens of

machine components with hundreds of component parts, none of which relate to the asserted patents. *See id.* Provisur nonetheless refused to provide its damages report until this information, as well as information for non-accused worldwide sales was produced. *See* D.I. 249, 02/17/2022 Hearing Tr. at 19-20.

Provisur's damages theory is presented through two different experts. First, the *Expert Report of Dr. Keith Vorst on Damages* purports to assess whether the patented features drive demand for the accused products. Ex. 17, Vorst Rep. ¶¶ 62, 89, 95, 109. He does so based entirely on his technical assessment of the accused products, and does not rely on any customer surveys, third-party analysis of customer purchasing decisions, market analysis, customer interviews, or testimonials. Ex. 18, Vorst Dep. 190:9-192:22, Aug. 23, 2022.

The *Expert Report of Julie L. Davis on Damages* then purports to calculate damages based entirely on Dr. Vorst's opinion that the patented features drive demand for the accused products. Ex. 19, Davis Damages Report ("Davis Rep.") at 28; Davis Dep. 71:18-72:20; 103:7-11; 107:4-14. She also purports to analyze the *Georgia-Pacific* factors in the context of an *ex ante* hypothetical licensing negotiation between Weber and Provisur for the infringing technology based entirely on Dr. Vorst's opinions of the patents' value in the marketplace. *Id.*

Each asserted patent covers a discrete feature within a food processing machine (like a slicer, optical grader, or loader). *See* D.I. 165, *Provisur I* Markman Order at 15, 28-29; *See Provisur II* D.I. 95, Markman Order at 2-3. That machine is itself part of a larger slicing line, including slicers, weighers, graders, conveyors, loaders, and packaging machines. *See, e.g.* Ex. 16, Quote to Olli Salumeria, WEBER-0101864.

Provisur's proposed measure of alleged damages in this case for all asserted patents is a reasonable royalty. Davis Rep. at 23; *see also* Davis Dep. 54:7-9 (confirming that an opinion on lost profits would be speculative); 91:14-16 (confirming that Davis provides no opinion on

injunctive relief). Ms. Davis purported to calculate her proposed royalty here by determining a royalty base and multiplying it by a royalty rate. Davis Dep. 235:6-16. For each asserted patent, Ms. Davis's proposed royalty base includes not only the entire market value of the machine containing the patented feature, but also the entire market value of *the entire slicing line* sold along with the accused machine, along with all aftermarket repairs, parts, and support. Davis Rep. at 23-24; Davis Dep. 78:2-9; 99:22-100:13; 185:3-5. As discussed below, Ms. Davis's opinion is riddled with legal errors that render it unreliable, irrelevant, and inadmissible.

## II.    *Relevant legal principles*

Federal Rule of Evidence 702 governs the admission of expert testimony. *See* Fed. R. Evid. 702(a)-(d); *Wagner v. Hesston Corp.*, 450 F.3d 756, 758 (8th Cir. 2006). The court is to act as a "gatekeeper" of evidence and thus must determine whether the evidence "both rests on a reliable foundation and is relevant to the task at hand." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 597 (1993). "The proponent of the expert testimony must prove its admissibility by a preponderance of the evidence." *Lauzon v. Senco Prods., Inc.*, 270 F.3d 681, 686 (8th Cir. 2001). When an expert offers an opinion that is "so fundamentally unsupported that it can offer no assistance to the jury," *Wood v. Minn. Mining & Mfg. Co.*, 112 F.3d 306, 309 (8th Cir. 1997) (citations and quotations omitted), it can no longer be "tested by the adversary process with competing expert testimony and cross-examination," *Johnson v. Mead Jonson & Co.*, 754 F.3d 557, 562 (8th Cir. 2014), and must be excluded.

A patentee may recover as damages for infringement "the reasonable royalty he would have received through arms-length bargaining" with the defendant, or alternatively, "the patentee's lost profits." *AstraZeneca AB v. Apotex Corp.*, 782 F.3d 1324, 1330 (Fed. Cir. 2015) (internal citations omitted); 35 U.S.C. § 284. A reasonable royalty must be designed to isolate the damages that the patentee may be owed from other revenue associated with the accused

product. To do so, "'[t]he patentee' . . . . *must in every case* give evidence tending to separate or apportion the defendant's profits and the patentee's damages between the patented feature and the unpatented features, and such evidence must be reliable and tangible, and not conjectural or speculative. . . .'" *Garretson v. Clark*, 111 U.S. 120, 121 (1884) (emphasis added). In other words, there must always be an apportionment analysis, under any methodology, and it must be based on reliable and tangible evidence valuing the patented technology against the value contributed by unpatented features. *See id.*

Reasonable royalties are usually calculated using two variables. "First, [the calculation] requires the determination of a royalty base, 'or the revenue pool implicated by the infringement.' The second determination is the royalty rate, or 'the percentage of that pool adequate to compensate the plaintiff for that infringement.'" *Dynetix Design Sols., Inc. v. Synopsys, Inc.*, No. 11-cv-05973, 2013 WL 4538210 at *2 (N.D. Cal. Aug. 22, 2013) (*quoting Cornell Univ. v. Hewlett-Packard Co.*, 609 F. Supp. 2d 279, 286 (N.D.N.Y. 2009)). Where, as here, multicomponent products are involved, "the governing rule is that the ultimate combination of royalty base and royalty rate must reflect the value attributable to the infringing features of the product, and no more." *Ericsson, Inc. v. D-Link Sys., Inc.*, 773 F.3d 1201, 1226 (Fed. Cir. 2014); *see also Virnetx, Inc. v. Cisco Sys., Inc.*, 767 F.3d 1308, 1326 (Fed. Cir. 2014); Davis Dep. 109:14-110:7 (noting that "each of the accused products is but one component in a multicomponent slicing line").

An "important evidentiary principle" for patent damages is that "care must be taken to avoid misleading the jury by placing undue emphasis on the value of the entire product." *Ericsson*, 773 F.3d at 1226. Admission of evidence of the entire market value "only serve[s] to make a patentee's proffered damages amount appear modest by comparison, and to artificially inflate the jury's damages calculation beyond that which is adequate to compensate for the

infringement." *LaserDynamics, Inc. v. Quanta Comput., Inc*, 694 F.3d 51 (Fed. Cir. 2012) (citations omitted). That is why an expert opinion that fails to properly downscale the royalty base and apportion the royalty rate to the patented features is inadmissible. *Commonwealth Sci. & Indus. Rsch. Org. v. Cisco Sys.*, Inc., 809 F.3d 1295, 1301 (Fed. Cir. 2015) ("[T]o be admissible, all expert damages opinions must separate the value of the allegedly infringing features from the value of all other features.") (*citing Virnetx*, 767 F.3d at 1329). Similarly, where an expert's apportionment is not based on "sound economic and factual predicates," it is also inadmissible. *Riles v. Shell Expl. & Prod. Co.*, 298 F.3d 1302, 1311 (Fed. Cir. 2002). Allowing such opinions to be presented to the jury is reversible error and grounds for a new trial on damages. *See LaserDynamics*, 694 F.3d at 66.

### III. Argument

Ms. Davis's damages expert opinions are unfounded, unreliable, and in direct violation of Federal Circuit precedent regarding the form of admissible damages models. As a result, her opinions must be excluded in their entirety.

#### A. Ms. Davis violates the entire market value rule.

Ms. Davis's royalty base and royalty rate are premised on the "entire market value rule," in violation of extensive Federal Circuit precedent governing the way that patent damages must be calculated. The Federal Circuit has repeatedly held that where an expert bases a royalty on the entire market value rule—absent exceedingly narrow exceptions not present here—that error is so profoundly prejudicial that the presence of such testimony will nullify a jury's damages award even if the jury does not appear to rely on it. *See*, *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1320 (Fed. Cir. 2011) (vacating a damages award and remanding for new trial on damages because the plaintiff presented damages in terms of the entire value of the accused product).

"[I]t is generally required that royalties be based not on the entire product, but instead on the 'smallest salable patent-practicing unit." *LaserDynamics*, 694 F.3d at 67. The smallest salable unit is *not* the accused product or the product line that the defendant actually sells, but rather the smallest patent-practicing *component* within that product for which a market value can be determined. *Id.* "[T]he smallest salable unit approach was intended to produce a royalty base much more closely tied to the claimed invention than the entire market value of the accused products." *Virnetx*, 767 F.3d at 1327.

"The entire market value rule," is an exceedingly "narrow exception" to the general requirement of using the smallest salable patent-practicing unit as the royalty base. *LaserDynamics*, 694 F.3d at 67 (*citing Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1549 (Fed. Cir. 1995)). This exception allows the royalty base for the patented feature to be set as the revenue or profits of the entire product sold. *Id.* It is narrow because it only applies if "the patented feature *alone* drives the demand for an entire multi-component product." *Id.* (*citing Rite–Hite*, 56 F.3d at 1551); *see id.* at 69. Misapplication of the entire market value rule to the royalty base will compel a new trial on damages. *LaserDynamics*, 694 F.3d at 66.

Importantly, "proof that consumers would not want [the larger product] without [the patented feature] is not tantamount to proof that any one of those features *alone* drives the market for [the larger product]") (emphasis added). *LaserDynamics*, 694 F.3d at 68. Accordingly, "[w]hen the product contains other valuable features, the patentee must prove that those other features do not cause consumers to purchase the product," in order to use the larger product as the royalty base. *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc*, 904 F.3d 965, 979 (Fed. Cir. 2018). In other words, plaintiff bears the burden of showing that the patented feature was the *sole driver* of consumer demand, i.e., that it *alone* motivated consumers to buy the accused products. *Via Vadis, LLC et al. v. Amazon.com, Inc.*, 1:14-cv-813, Dkt. No. 230 at *5

(W.D. Tex. Jan. 3, 2022) (granting motion to exclude damages expert for using entire market value rule) (internal quotations omitted) (emphasis added).

Similarly, "convoyed sales" (ancillary purchases related to the patent-practicing product), may not be included in the royalty base unless the entire market value rule applies and the patented and unpatented components are part of "a single assembly or parts of a complete machine, or they together constituted a functional unit." *Rite-Hite*, 56 F.3d at 1550 (emphasis added); *see also Micro Chem., Inc. v. Lextron, Inc.*, 317 F.3d 1387, 1393 (Fed. Cir. 2003) ("Before trial, the district court [correctly] ruled that Micro Chemical could not include sales of non-patented items in the royalty base").

Here, Ms. Davis's opinion is inadmissible because it violates the entire market value rule—the rule on which Ms. Davis premises *all* of her damage's opinions in this case. Davis Dep. 238:14-240:6. Ms. Davis expressly uses the entire market value rule to set the royalty base as the entire revenue of the entire slicing line, including convoyed sales of aftermarket purchases unrelated to the patented technology, and as purported justification for not engaging in any apportionment analysis for the royalty base or rate:

> Q. Did you apportion damages between the patented and unpatented features in this case?
>
> A. . . . I do not think that's a necessary process given that in my view, the entire market value rule applies.
>
> Q. So you think apportionment is not necessary in this case because you could rely on the entire market value of the slicing line?
>
> A. Generally speaking, yes.

*Id.* 100:4-13. Ms. Davis's failure to apportion the damages between patented and unpatented features is flatly contrary to Supreme Court and Federal Circuit law. *See Garretson*, 111 U.S. at 121 ("the patentee *must in every case* give evidence tending to separate or apportion the defendant's profits and the patentee's damages between the patented feature and the unpatented

features"); *Commonwealth*, 809 F.3d at 1301 ("to be admissible, *all* expert damages opinions must separate the value of the allegedly infringing features from the value of all other features" (*citing Virnetx*, 767 F.3d at 1329)). The entire market value rule is a narrow exception from the smallest-salable-unit rule—not an exception from the apportionment rule. That alone is a basis to exclude Ms. Davis's opinion.

Furthermore, Ms. Davis's application of the entire market value rule relies entirely on Dr. Vorst's opinion that the patented features "drive[] demand" for the accused products.[1] Davis Dep. 179:5-17; 182:10-17; 183:12-18 ("I have relied upon Dr. Vorst for the ultimate conclusion that the patented features are driving demand."); 122:16-125:12 ("I don't have an opinion on the various components of the line and what has value and what does not. I'm relying upon Dr. Vorst for that opinion."); Davis Dep. 156:7-8 ("I have not expressed an opinion one way or the other absent Dr. Vorst's opinion."); 238:14-240:6 (explaining that both her royalty base and rate assumed the entire market value rule applied based on Dr. Vorst's opinions). Even if Dr. Vorst's opinion were reliable for that proposition (it is not) his opinion still would not support use of the entire market value rule. *See Realtime Data, LLC v. Oracle America, Inc.*, 2017 WL 11574028, *5 (E.D. Tex. Mar. 30, 2017) ("[damages experts] cannot simply rely on the technical value []

---

[1] Ms. Davis claims to observe that her royalty base is consistent with deposition testimony from Mr. McCarroll, including sales quotes discussed as exhibits. For example, Ms. Davis cites Mr. McCarroll's statement that "when you buy a car you pay $40,000 for the whole car, but when you're pricing it out at the dealership they are saying, 'I'm going to put these tires on it and they cost $2,000, and this costs this, and this costs that.' So [Weber's] offering to [its] end customer is for the whole solution, and not just the tires." But this only further highlights Ms. Davis's misunderstanding and misapplication of the law. *See Rolls-Royce PLC v. United Techs. Corp.*, No. 10-cv-457, 2011 WL 1740143 (E.D. Va. May 4, 2011) (finding that fans required for jet engines were not proper justification for applying the entire market value rule to the value of the whole engine). Weber has provided the pricing that show the price of the accused components. The fact that Weber markets the component as part of a larger customer solution is not a justification for applying the entire market value rule. *Id.*

ascribe[d] to the infringing features of the accused products in determining a proper apportionment value.").

     Dr. Vorst opines that the patented features "drive demand" for the accused products—not that they are the *sole* drivers of demand for the entire value of the slicing line. Vorst Dep. 114:7-9, 180:17-18 Aug. 23, 2022. Indeed, he describes the patented features providing a "key function" of the accused products, along with other "sophisticated features" like sensors, scanners, and conveyors that are not covered by the asserted patents. *Id.* 189:16-190:2 (testifying that the patented features "substantially *contribute* to the value" of the slicer line and "were *a* driver of those sales"). As the Federal Circuit has repeatedly held, "when the product contains multiple valuable features, it is not enough to merely show that the patented feature is viewed as essential, that a product would not be commercially viable without the patented feature, or that consumers would not purchase the product without the patented feature." *Power Integrations,* 904 F.3d at 979. It is similarly not enough to show the patented feature was "an important feature,' or 'a helpful feature,' and . . . 'was driven by a general market need.'" *Omega Patents, LLC v. CalAmp Corp.*, 13 F.4th 1361, 1378 (Fed. Cir. 2021). Rather, "the entire market value rule is appropriate *only* when the patented feature is the *sole driver* of customer demand or substantially creates the value of the component parts." *Power Integrations,* 904 F.3d at 980 (emphasis added).

     Crucially, Ms. Davis *admits* that Dr. Vorst does *not* opine that the patented features are the *sole* drivers of demand. Davis Dep. 102:6-103:6. Nor does he opine "that the patented features substantially create the value" of the entire line. *Id.* at 221:18-222:21; 223:11-18; 229:17-20. Instead, she testifies that she does not believe that the patented features must be the sole driver of demand in order for the entire market value rule to apply. *Id.* at 103:14-104:19.

That is flat wrong as a matter of law. *See Power Integrations*, 904 F.3d at 980. Indeed, Ms. Davis admits that *she does not know the legal standard* for applying the entire market value rule:

> [I]n order for the facts of the case to support the entire market value rule, you would agree that if a product contains other valuable features, the patentee must prove that those other features do not cause consumers to purchase the product?
>
> A. I don't know what the law requires the patentee to prove. . . .[2]

Davis Dep. 118:2-11; *but see Power Integrations*, 904 F.3d. at 979 ("[w]hen the product contains other valuable features, the patentee must prove that those other features do not cause consumers to purchase the product," in order to use the larger product as the royalty base).

Accordingly, Ms. Davis's misapprehension of the law renders her opinion inadmissible for at least two additional reasons. *First*, it is Ms. Davis's job as an economic expert to determine the appropriate royalty base for the product. She cannot rely entirely on outside instruction as a substitute for an economic analysis. Misapplying the law to another expert's opinions does not assist the jury. *Second*, there is no evidentiary support for the notion that the patented feature accounts for "almost all of the value of the product as a whole," and she cites none. *See Power Integrations*, 904 F.3d at 978. Ms. Davis does not identify what the "generic" or "conventional" other features of the products are or why they do not influence customer purchasing decisions.

To the contrary, Ms. Davis admitted being aware of evidence that, for example, a slicer's footprint is an important factor in customer purchasing decisions, and that this feature is not related to the asserted patents. Davis Dep. 125:14-126:13; 127:13-128:10. She also admits that throat size is an important factor in customer purchasing decisions that is not patented and was

---

[2] It does not even appear that Ms. Davis made the determination to use the entire market value royalty base herself. *See* Davis Rep. at 27 ("*I have been advised* that it is appropriate to use the entire value of the product because the patented feature accounts for almost all of the value of the product as a whole and the other features are simply generic and/or conventional and hence of little distinguishing character[.]") (emphasis added).

not accounted for in her opinions or Dr. Vorst's. *Id*. at 128:11-134:1. She admits the slicing blade

is an important unpatented feature that influences customer purchasing decisions. *Id*. at 138:7-

139:10. She also admits that Dr. Vorst opines that components like PickRobots, which were

previously accused in this case, drive demand for the entire slicing line. *Id*. at 138:7-139:10;

166:14-169:7. Now that those products are no longer accused, Ms. Davis ignores their

contribution to consumer demand for the entire slicing line, attributing all of the value of the

entire line to the accused product, even where the line also includes a PickRobot or interleaver.

Ms. Davis essentially admits that she has no evidentiary basis for applying the entire market

value rule, but applies it anyway because she does not care to understand what the law requires.

*Id.* at 118:2-11. Her opinions cannot go to a jury.

Ms. Davis's treatment of the *Provisur II* patents further illustrates her lack of analysis and

defeats her reliance on the entire market value rule. She explains that "[a]ccording to Dr. Vorst,

the contributions made by the *Provisur II* patents can be considered of equal value to those made

by the *Provisur III* patents . . . it would be reasonable to apply a factor of 50% in determining the

reasonable royalty for the Accused Gripper Stop Gate Products." Davis Rep. at 49; Vorst Rep.

¶129 fn. 8, ¶130 (describing *multiple* patented features within each slicing line as

"independently" and "equally" driving a sale). There are two problems with this 50% factor.

*First*, there is no fact-based analysis in either Dr. Vorst's or Ms. Davis's reports as to

how the *Provisur II* patents are exactly equal in value to the *Provisur III* patent. *See NetFuel, Inc.*

*v. Cisco Sys. Inc.,* 2020 WL 1274985, at *6-7 (N.D. Cal. Mar. 17, 2020) (excluding an expert

opinion that the benefits of the patent made up 33% of the value of the products, where "neither

his opening nor reply report explain the features that comprise the 67% of remaining value."). In

other words, an expert must "provide[] a specific analysis explaining why he assigned each

particular percentage value." *Shopify Inc. v. Express Mobile, Inc.*, 2021 WL 4288113, *21 (D.

Del. Sept. 21, 2021). Without that analysis, Ms. Davis's 50% factor is arbitrary and unsupported. *LaserDynamics*, 694 F.3d at 69 (finding valuations "pulled out of thin air" fundamentally unreliable). *Second*, it cannot be said that where multiple patents cover the same accused product, that each of the patents *alone* is the *sole driver* of demand and therefore entitled to an entire market value royalty base. *Via Vadis*, 1:14-cv-813, Dkt. No. 230 at *5.

Accordingly, Ms. Davis's proposed royalty violates the entire market value rule and the requirement that all royalties be properly apportioned. *Versata Software Inc. v. SAP Am., Inc.*, 2011 WL 4017939, at *4 (E.D. Tex. Sept. 9, 2011) ("at no time does any expert attempt to apportion the contribution of the patented invention to SAP's product . . . the Court finds that [plaintiff's] experts [1] failed to perform an appropriate apportionment analysis and [2] utilized the Entire Market Value Rule in violation of Federal Circuit precedent and this Court's prior rulings."). Because the entire market value rule does not apply as a matter of law, the aftermarket sales, also erroneously included in the proposed royalty as convoyed sales, *see* Davis Rep. at 31; Davis Dep. 195:3-15; 198:5-199:20, must similarly be excluded. *Micro Chemical*, 317 F.3d at 1393 (excluding convoyed sales under an entire market value rule analysis). Ms. Davis has no alternative theory that does not use the entire market value of the slicing line as *both* the royalty base and rate. Davis Dep. 238:14-240:6. Her opinion must be excluded entirely.

### B. Ms. Davis fails to tie her royalty analysis to the facts of the case.

Even within her flawed application of the law, Ms. Davis fails to tie her royalty to the facts of the case, an additional reason it must be excluded. *Virnetx*, 767 F.3d at 1327-28 ("Where the smallest salable unit is [] a multi-component product containing several non-infringing features . . . the patentee *must do more* to estimate what portion of the value of that product is attributable to the patented technology. To hold otherwise would permit the entire market value exception to swallow the rule.") (emphasis added). The royalty must rely on "data . . .

sufficiently tied to the facts of the case." *Commonwealth*, 809 F.3d at 1302; *Uniloc*, 632 F.3d at 1317 ("To be admissible, expert testimony opining on a reasonable royalty rate must 'carefully tie proof of damages to the claimed invention's footprint in the market place.'") (emphasis added) (quoting *ResQNet.com , Inc. v. Lansa, Inc.*, 594 F.3d 860, 869 (Fed. Cir. 2010)).

One way in which an expert can tie a royalty rate to the facts of the case is through application of the *Georgia-Pacific* factors. *Rite–Hite.*, 56 F.3d at 1554 (en banc); *Georgia-Pacific Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970). A *Georgia-Pacific* analysis must start with a comparable royalty rate based on the evidence, which is then adjusted upwards or downwards based on specific facts. *Commonwealth*, 809 F.3d at 1302. A comparable royalty rate starting point can be derived from "the royalty rate from sufficiently comparable licenses, value [of] the infringed features based upon comparable features in the marketplace, or value [of] the infringed features by comparing the accused product to non-infringing alternatives." *Summit 6, LLC v. Samsung Elecs. Co.*, 802 F.3d 1283, 1296 (Fed. Cir. 2015) (*citing Apple Inc. v. Motorola, Inc.*, 757 F.3d 1286, 1315 (Fed. Cir. 2014)). A "superficial recitation of the *Georgia-Pacific* factors, followed by conclusory remarks" is not sufficient. *Whitserve, LLC v. Comput. Packages, Inc.*, 694 F.3d 10, 31 (Fed. Cir. 2012).

Ms. Davis makes no attempt to apportion her royalty rate to reflect the value that the patented features contribute to the accused products. Instead, her opinion effectively sets the upper bound of her royalty rate to capture Weber's entire profit margin on sales of the entire product line. Davis Dep. 238:14-240:6. She relies upon Dr. Vorst's vague statements and Provisur's alleged policy of not licensing to competitors to excuse her lack of apportionment analysis. *Id.* at 122:16-125:12 ("I don't have an opinion on the various components of the line and what has value and what does not. I'm relying upon Dr. Vorst for that opinion."); 252:4-253:11 (relying entirely on Ms. Scriven's statements that Provisur had a policy of not licensing

to competitors to set her royalty rate based on a noncomparable license); 243:9-244:7 (admitting she did not consider Weber's and Provisur's past licenses).

Ms. Davis has previously had a damages expert report excluded on similar grounds. In *Biedermann Techs. GmbH & Co. KG v. K2M, Inc.*, the court excluded Ms. Davis's testimony on the following reasoning:

> Ms. Davis engages in little analysis accounting for the [comparative value between the patented technology and market benchmarks] or explaining why such an accounting is not required. Consistent with her statements about not independently analyzing the value of the patented features in the accused products relative to non-patented features, and knowing of no basis for doing so, Ms. Davis apparently relies upon BT's licensing policy to attempt to fill the gaps on comparative value.
>
> For example, Ms. Davis attempts to normalize the [plaintiff's] purported [Redacted] effective royalty rate to the hypothetical negotiation via [plaintiff's] statements. She recites that "according to Mr. Biedermann, [Redacted] he expects this agreement would have carried a royalty rate of [Redacted]." . . . Ms. Davis needed to do more accounting and less relying upon generic licensing policies as a substitute for the task of apportionment.

2021 WL 6034269, at *17–18 (E.D. Va. Dec. 10, 2021) (internal cites omitted).

Likewise here, Ms. Davis engages in no analysis accounting for the comparative value between the patented technology and unpatented features. *See id. (*citing *Exmark Mfg. Co., Inc. v. Briggs & Stratton Power Prods. Grp., LLC*, 879 F.3d 1332, 1349–51 (Fed. Cir. 2018) (finding error in failure to exclude damages expert's conclusory and unexplained opinions and royalty rate lacking sufficient ties to the facts)). Her purported explanation for not doing such an accounting (the entire market value rule) is flat wrong on the law. Ms. Davis relies upon Dr. Vorst's vague statements about technical value, and Mr. Scriven's statements about Provisur's licensing policy to fill the gaps in comparative value. Davis Dep. 252:4-253:11.

One of the *Georgia-Pacific* factors is the outcome of a hypothetical negotiation between a willing patentee and a willing infringer for a license to the patented technology right before the

infringement started. *Id*.; *see also Studiengesellschaft Kohle m.b.H. v. Dart Indus., Inc.*, 666 F. Supp. 674, 680 (D. Del. 1987). Ms. Davis attempts to normalize her purported royalty rate to the hypothetical negotiation via Weber's generic sales-team pep-talk emails like "do whatever it takes" to make the sale. Such emails are not even probative of a hypothetical negotiation, and do not relate to the accused products at all, much less the patented features at issue here. Ms. Davis needed to do more accounting and less relying upon vague qualitative statements as a substitute for the task of apportionment. *See id.* (citing *Omega Patents, LLC*, 13 F.4th at 1379).

Ms. Davis also fails to address Provisur and Weber's long history of mutual licensing agreements. *See* Ex. 20, Thomas Rep. ¶¶ 113-116; *Summit 6*, 802 F.3d at 1296 (explaining methods for determining royalty starting points). Ms. Davis attempts to excuse this failing by stating that "Weber has disclosed minimal information regarding any of its licenses" which "limits my ability to effectively compare any of Weber's licenses to the hypothetical license between Provisur and Weber at this time." Davis Rep. at 32. In doing so, she ignores all of the patent licensing agreements between Weber and Provisur in evidence—the most probative licenses in the record—without any explanation for why they are excluded from her analysis. Davis Dep. 244:8-247:6. She instead discusses a Weber license for patents owned by a *different* company solely for the form of the royalty. Davis Rep. at 32-33; Davis Dep. 247:12-248:22.

Ms. Davis's reliance on non-comparable licenses and flawed data to support an un-apportioned royalty rate are not merely deficiencies to be explored on cross-examination; they render an expert's damages opinion inadmissible. *Uniloc*, 632 F.3d at 1317 ("It is of no moment that [a rate] is offered merely as a starting point to which the *Georgia-Pacific* factors are then applied to bring the rate up or down. Beginning from a fundamentally flawed premise and adjusting it based on legitimate considerations specific to the facts of the case nevertheless results in a fundamentally flawed conclusion.").

Finally, Ms. Davis's *Georgia-Pacific* analysis itself is legally inadequate. She walks through the *Georgia-Pacific* factors at only a cursory level, spending barely a paragraph on each and failing to tie any of her royalty rate adjustments to the facts of the case. The Federal Circuit has made clear that a "superficial recitation of the *Georgia-Pacific* factors, followed by conclusory remarks" is not sufficient to support a proposed royalty rate. *Whitserve*, 694 F.3d at 31. Without adequate explanation for her analysis, demonstrating sound economic and factual predicates, Ms. Davis's royalty rate opinions are inadmissible. *Riles*, 298 F.3d at 1311.

**C.      Ms. Davis's reliance on Weber's "Pillage and Protect" sales strategy is irrelevant to patent damages and should be excluded.**

 Ms. Davis's reliance on Weber's sales strategies is unrelated to the patented technology or accused sales. While she claims to have considered them, she does not articulate any role that they actually played in her analysis or the quantitative relevance they have to her royalty. "[N]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert." *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 137 (1997). Expert opinions also must be excluded when there is "too great an analytical gap between the data and the opinion proffered." *Id.* at 146; *see also TASER Int'l, Inc. v. Karbon Arms, LLC*, 2013 WL 6773663, at *1 (D. Del. Dec. 19, 2013) ("[The expert] offers almost no basis as to how he arrived at his royalty rate other than that he considered the above numbers and factors. This is the quintessential *ipse dixit* justification.").

The emails Ms. Davis cites regarding Weber's "Pillage and Protect" moniker are not from the relevant timeframe and do not refer to sales of the accused products. Davis Rep. at 36-38. Other emails she cites with statements like "do whatever it takes" to close deals with the customer are similarly unrelated to the value of the patented technology. *See* Davis Dep. 271:12-277:5. This evidence is not admissible for proving damages because it is not relevant to

compensation for infringement, and is not the kind of evidence on which economics experts rely. *See ResQNet.com*, 594 F.3d at 869 ("Any evidence unrelated to the claimed invention does not support compensation for infringement but punishes beyond the reach of the statute."). Ms. Davis's discussion of evidence unrelated to the claimed inventions improperly urges the jury to punish Weber beyond the reach of the statute.

Additionally, Provisur's objective in presenting evidence of Pillage and Protect—a sales strategy that had nothing to do with the accused products or the patented technology—through its damages expert is a blatant attempt to use an expert witness to narrate facts for the jury. *See Davis Rep. at 41-42 (providing an advocacy-style narration of the record). The jury will hear from fact witnesses about Weber's relationship with Provisur and the interactions of the parties' employees. The jury will also hear from fact witnesses about Weber's knowledge of Provisur's patents and the parties' past patent negotiations. Provisur's attempt to use an expert to select certain facts and pieces of evidence in the record and present a narration suggesting Weber's (or Provisur's) state of mind regarding the value of the accused products is improper. *See Luitpold Pharms., Inc. v. Ed. Geistlich Sohne A.G. Fur Chemische Industrie*, 2015 WL 5459662, at *3 (S.D.N.Y. Sept. 16, 2015) (explaining that "narration of the facts" based on documents is not "traceable to a reliable methodology," and concluding that such "narration thus fails to fulfill *Daubert*'s most basic requirements."). These portions of Ms. Davis's opinions are inadmissible for this additional reason. *Id.*

## IV.    *Conclusion*

The Court should exclude Ms. Davis's damages opinions and testimony from trial.

Dated: August 29, 2022

**LEVY CRAIG LAW FIRM**
A PROFESSIONAL CORPORATION

By */s/ Jason S. Leiker*
Jason S. Leiker     MO #53973
Levy Craig Law Firm
A Professional Corporation
4520 Main Street, Suite 1600
Kansas City, Missouri 64111
816.460.1835
Fax: 816.382.6606
jleiker@levycraig.com

Daniel E. Yonan
Donald R. Banowit
Kyle E. Conklin
Deirdre M. Wells
Daniel S. Block
Jonathan Tuminaro, Ph.D.
STERNE, KESSLER, GOLDSTEIN & FOX P.L.L.C.
1100 New York Avenue
Washington, D.C. 20005
Tel: (202) 371-2600
Fax: (202) 371-2540
dyonan@sternekessler.com
dbanowit@sternekessler.com
kconklin@sternekessler.com
dwells@sternekessler.com
dblock@sternekessler.com
jtuminar@sternekessler.com
*Pro Hac Vice*
*Attorneys for all Defendants*

## CERTIFICATE OF SERVICE

    The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule 5.1 on August 29, 2022.

                                                               */s/ Jason S. Leiker*
                                                 *Attorney for all Defendants*

## Page 1

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
ST. JOSEPH DIVISION

_____

PROVISUR TECHNOLOGIES,   )
INC.,                 )
                 )
    Plaintiff,     )
                 )
   v             ) Civil Action
                 ) No. 5:19-cv-06021-SRB
WEBER, INC., et al.,     )
                 )
    Defendants.     )
_____)

CONFIDENTIAL
Video-recorded Deposition of DR. KEITH VORST
taken at Willkie Farr & Gallagher LLP, 40th Floor,
300 North LaSalle Street, Chicago, Illinois,
stenographically reported by Cynthia J. Conforti,
License No. 084-003064, commencing at the hour of
9:32 a.m. on Tuesday, August 23, 2022.

_____

DIGITAL EVIDENCE GROUP
1730 M Street, NW, Suite 812
Washington, D.C. 20036
(202) 232-0646

## Page 2

```
 1    A P P E A R A N C E S :
 2
 3    ON BEHALF OF THE PLAINTIFF:
 4      HUSCH BLACKWELL LLP
 5      4801 Main Street, Suite 1000
 6      Kansas City, Missouri 64112
 7      816.983.8000
 8      BY:  JEFFREY J. SIMON, ESQ.
 9         jeff.simon@huschblackwell.com
10    - also -
11      WILLKIE FARR & GALLAGHER LLP
12      300 North LaSalle Street
13      Chicago, Illinois 60654-3406
14      312.728.9000
15      BY:  MICHAEL S. BABBITT, ESQ.
16         mbabbitt@willkie.com
17         HENRY THOMAS, ESQ.
18         hthomas@willkie.com
19         SAMUEL J. GAMER, ESQ.
20         sgamer@willkie.com
21
22
```

## Page 3

```
 1    A P P E A R A N C E S, CON'T:
 2
 3    ON BEHALF OF THE DEFENDANTS:
        STERNE KESSLER GOLDSTEIN & FOX
 4      1100 New York Avenue NW, Suite 600
        Washington, DC 20005
 5      202.371.2600
        BY:  DANIEL S. BLOCK, ESQ.
 6         dblock@sternekessler.com
           JONATHAN TUMINARO, Ph.D., ESQ.
 7         jtuminar@sternekessler.com.
 8         PAIGE E. CLOUD, ESQ.
 9         pcloud@sternekessler.com
10    - also -
11      LEVY CRAIG LAW FIRM
        4520 Main Street, Suite 1600
12      Kansas City, Missouri 64111
        816.474.8181
13      BY:  JASON S. LEIKER, ESQ.
14         jleiker@levycraig.com
15
16    ALSO PRESENT:
17      Joseph Salinas, Videographer
18      Vincent Thomas
19
20
21
22
```

## Page 4

```
 1              INDEX
 2
 3    TESTIMONY OF DR. KEITH VORST        PAGE
 4    Examination by Mr. Block:           7
 5    Examination by Mr. Babbit:          485
 6    Further Examination by Mr. Block:   489
 7
 8         VORST DEPOSITION EXHIBITS
 9    NUMBER    DESCRIPTION           PAGE
10    Exhibit 1  Expert Report of       19
              Dr. Keith Vorst
11    Exhibit 2  U.S. Patent 10,625,436  74
12    Exhibit 3  U.S. Pub 2019/0105794   74
13    Exhibit 4  Certificate and Request 90
              for Prioritized Examination
14              PR00081851 - PR00082170
15    Exhibit 5  U.S. Patent 7,065,936  215
              PR00080398 - PR00080407
16    Exhibit 6  Court Order            229
17    Exhibit 7  U.S. Patent 6,997,089  313
              PR00089618 - PR00089625
18    Exhibit 8  U.S. Patent 10,639,812 336
19    Exhibit 9  Weber publication      406
20              "Complete Cheese Line
21              Dominance"
22              WEBER 0350149
```

1 (Pages 1 to 4)

www.DigitalEvidenceGroup.com Digital Evidence Group C'rt 2022     202-232-0646
Case 5:19-cv-06021-SRB    Document 381-18 *SEALED*    Filed 08/29/22    Page 2 of 126

Appx32165

---

Page 121

1   BY MR. BLOCK:
2     Q   So you don't think that the type of
3   slicing blade would ever influence a customer's
4   decision in purchasing a slicing line?
5     MR. BABBITT: Objection.
6     THE WITNESS: I think all kinds of
7   decisions influence a -- all kinds of properties
8   on the slicing line would -- would determine
9   whether or not a customer's going to buy a line,
10   but it is my experience, having been in these
11   facilities, having worked with these folks -- I
12   means, this is -- this is what we do -- that when
13   you're at this level of a -- of a Weber or a -- or
14   a Provisur, those are -- are -- it is assumed that
15   how they've got a great slicing blade, we don't
16   need to focus on that, what's going to separate
17   them apart. Not generic or conventional features
18   like a slicing blade, not generic or conventional
19   features, you know, that -- that would be on any
20   of the stainless steel type.
21     I mean, you know, the hygiene, those are
22   somewhat standard and generic features at this

---

Page 122

1   point. I mean, they're made of stainless. I
2   mean, if you're going to -- using them on food, I
3   mean, that's expected.
4   BY MR. BLOCK:
5     Q   So you've mentioned all kinds of features
6   on a slicing line influence customers' purchasing
7   decisions. Can you give us some examples?
8     MR. BABBITT: Objection, misstates
9   testimony, vague question.
10     THE WITNESS: I just gave you an example.
11   A lot of generic features -- so it's -- I'll make
12   a good analogy here to a slicing line. I've got a
13   couple good analogies here.
14     So I'm in the middle right now of
15   qualifying a company for some new equipment for a
16   processing line. We went up and qualified their
17   equipment. It's a standard separator, right, food
18   separator. We're not going up there and
19   qualifying that for that company because it
20   contains metal, it contains a drive; we're going
21   up there because it's got a patented feature on
22   the hammers they use. They call them hammers.

---

Page 123

1   They assume it's going to separate. It's how
2   efficiently it separates; it's what separates it
3   apart.
4     It's the same thing as going and buying a
5   car. I assume it's going to have a steering
6   wheel, I assume it's going to have wheels, I
7   assume it's going to have brakes. What separates
8   is the tech- -- the new technology in that car.
9   It's the same thing with my wife. She wants the
10   newest Android Auto. Those are the technological
11   benefits of that car. She wants to be able to
12   have lane avoidance.
13     It's the same thing here. These companies
14   produce quality equipment; no question about that.
15   They're on a level playing field, but when -- when
16   I talk to my -- my companies, and when I work with
17   them, and when they come to us to do research,
18   they're coming to us and saying, Hey, there's a
19   new feature on this. This separates it from the
20   other ones.
21     This is something we're interested in.
22   You know, we don't talk at length about blades or

---

Page 124

1   all these conventional other features.
2     Do they influence the sale? Well,
3   absolutely. I mean, how can you buy a slicing
4   line without a slicer blade? I mean, that's just
5   expected.
6     But when I looked at -- when I arrived at
7   my opinions in this report, I considered all these
8   options, and I considered what is going to be the
9   difference, what's going to drive that sale, what
10   in my previous experience drove that sale.
11     And in my previous experience -- like I
12   said, I've been doing this for 30 years -- the
13   patented features that I saw were the driver of
14   those sales.
15   BY MR. BLOCK:
16     Q   Does the -- does the type of blade add
17   value to the customer when purchasing a slicer?
18     MR. BABBITT: Objection, vague.
19     THE WITNESS: That would depend on the
20   customer, but in the conversations I've had and
21   the work I've done, you know, again, you know,
22   these are not someone making a slicer out of their

---

31 (Pages 121 to 124)

www.DigitalEvidenceGroup.com Digital Evidence Group C'rt 2022      202-232-0646
Case 5:19-cv-06021-SRB   Document 381-18 *SEALED*   Filed 08/29/22   Page 32 of 126

Appx32195

Page 125

1  garage.  These companies all make quality slicer
2  blades.  It's kind of a generic feature at this
3  point.  It's conventional.
4  BY MR. BLOCK:
5      Q  Does hygiene of the line add value to
6  customers when purchasing slicing lines?
7      A  Absolutely.
8      MR. BABBITT:  Same objection.
9      THE WITNESS:  Absolutely.
10  BY MR. BLOCK:
11      Q  Does the speed of slicing add value to
12  customers when purchasing slicing lines?
13      A  Sure.
14      MR. BABBITT:  Same objections.
15      THE WITNESS:  Sure.  Yeah.
16      MR. BABBITT:  Dr. Vorst --
17      THE WITNESS:  I'm sorry.
18  BY MR. BLOCK:
19      Q  Does the footprint of the machines add
20  value to customers when pricing -- when purchasing
21  slicing lines?
22      MR. BABBITT:  Objection.

Page 126

1      THE WITNESS:  I have seen evidence that a
2  footprint will, ones I've been involved in, yes.
3  BY MR. BLOCK:
4      Q  Does the throat width of a slicer add
5  value to customers when purchasing slicing lines?
6      A  I consider throat width to be somewhat of
7  a generic feature at this point.
8      Q  I'm not asking whether it's generic, just
9  so we're clear.
10      I'm asking does the throat width add value
11  to customers when purchasing slicing lines?
12      MR. BABBITT:  Same objection.
13      THE WITNESS:  I don't think it adds value.
14  I think it's an expected feature that you can have
15  an adjustable throat width.
16  BY MR. BLOCK:
17      Q  So you think a customer finds no value in
18  adjustable throat width?
19      A  I think it's expected at this point.
20  That's why I don't -- it would not be a driver of
21  a decision to purchase or not purchase.
22      Q  How about an interleaver?  Does an

Page 127

1  interleaver add value to customers when purchasing
2  cheese slicing lines?
3      MR. BABBITT:  Same objection.
4      THE WITNESS:  I think it could be an added
5  feature.  And I -- you know, interleavers have
6  been around for, what, a couple decades now.  You
7  know, you get to a point where this technology
8  matures and it's just an expected feature.
9      If someone wants to add, you know, paper,
10  or something, they're going to want to an
11  interleaver.  I mean, it's -- it's not something
12  where they say, Oh, wow, check this out, we got a
13  new interleaver.  I mean, they've been around for
14  a while.  I consider it to be a conventional
15  feature.
16  BY MR. BLOCK:
17      Q  How about a Pick Robot?  Does a Pick Robot
18  add value to a slicing line if a customer is
19  purchasing --
20      MR. BABBITT:  Same objection.
21  BY MR. BLOCK:
22      Q  -- a slicing line with a Pick Robot?

Page 128

1      A  The Pick Robot, you know, is part of the
2  food product pathway.  I could see where some
3  customers might find that to be a relevant and
4  useful tool as part of the -- as part of the
5  system, yeah.
6      Q  So what's your methodology in this case
7  for determining whether something is conventional
8  or generic?
9      MR. BABBITT:  Objection, vague, overbroad.
10      THE WITNESS:  So my methodology is pretty
11  straightforward.  I looked at the products, I
12  looked at the patented features, determined
13  whether or not those patented features would
14  separate it or drive the demand for the sale of
15  the slicing line.
16      If some of the other features have been
17  around or I find evidence or if I've known about
18  them for a couple decades, you know, you're not
19  going to go to a trade show and say, Hey, now look
20  at our new interleaver.  Well, everybody's got an
21  interleaver.  Look at our new slicing blade.
22  Well, that's pretty cool, but we all have slicing

32  (Pages 125 to 128)

www.DigitalEvidenceGroup.com Digital Evidence Group C'rt 2022    202-232-0646
Case 5:19-cv-06021-SRB   Document 381-18 *SEALED*   Filed 08/29/22  Page 33 of 126

Appx32196

Page 129

```
 1   blades.
 2       But the patented features that I have
 3   discussed in my report absolutely would
 4   have -- you know -- like I said, I haven't seen
 5   these type of features in over 30 years.  It's
 6   been -- these type of features I see as
 7   absolutely, you know, critical and important, and
 8   would have driven these sales.
 9   BY MR. BLOCK:
10       Q  So is it your opinion in this case that
11   everything but the patented features on a slicing
12   line is conventional?
13       A  From the lines that I've seen, most of the
14   features on these lines were conventional.
15       Q  Okay.  And so how did you go about
16   determining that each of the features on the line
17   were conventional?
18       A  Well, actually, I think Weber did a pretty
19   good job when I looked at sales documentation of
20   determining what was conventional and what wasn't.
21       Q  So you think Weber's sales documents
22   indicate what's conventional?
```

Page 130

```
 1       A  No, I think it -- I'm not saying that any
 2   one piece.  I'm saying I draw upon a wealth of
 3   experience, I draw upon documentation provided in
 4   the case, I draw upon visiting, meet with the
 5   companies, as I said earlier.
 6       But I think, you know, Weber uses terms
 7   like basic in their -- in some of their sales
 8   documentation and then they out -- they highlight
 9   their features with a "smart," like the
10   SmartLoader, and, you know -- so they're trying to
11   push some of these innovative materials and these
12   innovative patented features.  I think it's
13   well-recognized that every slicing line is going
14   to have a slicer blade.
15       Q  So -- just so we're clear, your basis for
16   saying a slicing blade is conventional is what?
17       A  My basis was looking at all the
18   documentation provided to me, years of experience
19   going back working with processing companies,
20   designing slicers.  I did.  I went and I helped
21   identify different ways of cleaning and reducing
22   contamination loads on slicers.
```

Page 131

```
 1       So I mean, I'm pretty good at recognizing
 2   what would be an innovative feature.
 3       Q  So outside of your opinion that something
 4   is innovative or not, how do Weber sales documents
 5   tell you whether a slicing blade is conventional?
 6       A  They used -- so in some of the sales
 7   documentation, I -- and some of the material I
 8   reviewed, I saw indications that there was, you
 9   know, an addition of a SmartLoader.  They actually
10   used the word "basic."
11       Q  So you think the word "basic" indicates
12   something is conventional?
13       A  I think it's one of the things that can be
14   used, yeah.  I mean, what's basic mean to you?
15       Q  It doesn't mean not conventional?
16       A  So if I say I have a basic tire, you would
17   say, oh, that must be a new and innovative tire?
18       Q  I just think it means simple.
19       A  So you're telling me Weber, being a large
20   company, would not highlight its newest technology
21   and if they did, they would use the term "basic"?
22       Q  So is that -- I'm just trying to
```

Page 132

```
 1   understand your opinion.
 2       You're telling me that your opinion
 3   whether something is conventional is influenced
 4   whether Weber uses the word "basic" or "smart"?
 5       MR. BABBITT:  Objection to form.
 6       THE WITNESS:  No, I never said that, did
 7   I?
 8   BY MR. BLOCK:
 9       Q  Yeah, you did --
10       A  I said I -- I said it was one of the
11   metrics I used when I looked through the sales
12   documentation, the orders, the invoices, the
13   purchase orders.  But I used a lot more than that.
14       Q  So --
15       A  I mean, I'd be pretty silly to say I
16   relied on one piece or one -- it would be silly
17   for me to say I didn't rely on my industry
18   experience, I didn't rely on the companies I
19   worked with, I didn't rely on the patents.  I
20   relied on everything in forming my opinion.
21       Q  So these so-called conventional features
22   of the line you keep referring to, are you telling
```

33 (Pages 129 to 132)

Case 5:19-cv-06021-SRB   Document 381-18 *SEALED*   Filed 08/29/22   Page 34 of 126

Appx32197

Page 133

1    me that customers find no value in any of them?
2        MR. BABBITT: Objection, vague.
3        THE WITNESS: I'd like you to produce some
4    these features, and let's walk through them.
5    BY MR. BLOCK:
6      Q Well, I'm asking you just generically,
7    right, are you saying that anything on a slicing
8    line that is conventional a customer would find no
9    value in?
10       MR. BABBITT: Objection, vague.
11    BY MR. BLOCK:
12      Q Is that your opinion?
13      A That's not my opinion at all.
14      So there's value in all these features,
15    right? Absolutely. But that value doesn't
16    necessarily drive the sale. They're not -- they
17    didn't give the slicers -- the slicing lines away.
18    There's value in them.
19      But that's not -- that's not what I'm here
20    for. I'm here to talk about how the patented
21    features drove those sales.
22      Q So --

Page 134

1      A And so if I'm walking into a sales floor
2    and I see a generic slicing line, and then right
3    next to it I see something with a SmartLoader,
4    vision grading or any of the patented features we
5    talk about, am I going to say, yeah, you know, I'm
6    not interested in the new technology. I don't see
7    value in that; I see value in the standard slicing
8    line that you have.
9      So it is my opinion that, you know, all of
10    these things influence the sale. It is expected
11    again -- if this -- if it was Key4 slicing
12    company, I'd have a tough time competing with
13    Weber or Provisur.
14      Q So that's the part -- when you say "All of
15    these things influence the slicing sale," what are
16    these things you're referring to?
17      A It is assumed, when I walk into a Provisur
18    showroom, a Weber showroom, the slicer's going to
19    move product along a food product pathway, it's
20    going to slice product, it's going to slice
21    product at some speed that the customer wants or
22    some specification the customer wants. It's going

Page 135

1    to do it in a hygienic manner. It's going to do
2    it with an efficient yield. That's what these
3    companies built their representation on. I mean,
4    that is -- that is not something where I'm going
5    to -- where a customer is going to call up Weber
6    or Provisur and say, Hey, do you guys -- you know,
7    do your slicing lines have a slicing blade?
8      Q So I just want to -- because this is the
9    part I'm having trouble following.
10      So you agree then that there are things
11    besides the patented features that influence
12    customers' purchasing decisions?
13       MR. BABBITT: Objection to form.
14       THE WITNESS: Sure, right, I -- I do agree
15    with that.
16    BY MR. BLOCK:
17      Q And they could substantially influence
18    customers' purchasing decisions, right?
19       MR. BABBITT: Objection, vague, form,
20    misstates testimony.
21       THE WITNESS: Are you talking with respect
22    to the accused products?

Page 136

1    BY MR. BLOCK:
2      Q I'm -- I'm just saying generally speaking,
3    right, like, the things besides the patented
4    features could have a big effect on customers'
5    purchasing decisions.
6       MR. BABBITT: Same objections.
7       THE WITNESS: I'm not going to say that
8    because I don't have all that information. I
9    don't have that documentation. I don't know what
10    drove those sales. I know what drove the sales on
11    the accused products because I have that
12    information. So you're asking me to provide an
13    opinion on something I don't have documentation to
14    support.
15    BY MR. BLOCK:
16      Q Okay. So let's ask about the accused
17    products.
18      A Okay.
19      Q Besides the patented features in the
20    accused slicing lines, would you agree that there
21    were other factors that influence customers'
22    purchasing decisions?

34  (Pages 133 to 136)

www.DigitalEvidenceGroup.com Digital Evidence Group C'rt 2022       202-232-0646
Case 5:19-cv-06021-SRB   Document 381-18 *SEALED*   Filed 08/29/22   Page 35 of 126

Appx32198

Page 137

1    A  No.
2      MR. BABBITT:  Objection to form.
3      THE WITNESS:  I apologize.  No.  I believe
4  it was the patented features that drove the sales
5  of these products.
6  BY MR. BLOCK:
7    Q  Are you telling me that the patented
8  features of the accused slicing lines entirely
9  drove the sales of the slicing lines?
10    A  I want you to define "entirely," sir.
11    Q  That the entire reason the customer
12  purchased that slicing line was because of the
13  patented features?
14    A  So by your logic, Dan, the only thing that
15  mattered was those patented features, right?
16    Q  That's what I'm asking you.
17    A  That's a silly question again, right?
18    Q  I -- I don't think it's a silly question.
19    A  I think it's a very silly question because
20  we already answered that.
21    Q  So I'll try to ask you --
22    A  So if I go into an auto dealer and I ask

Page 138

1  for a car, and I say, I just want the patented
2  features of that car.  I don't want the wheels,
3  steering wheel, the brakes, the seats, we're good.
4  That's not going to influence my decision.  I just
5  want the shell and the patented the features.
6    That is ridiculous.  Of course they expect
7  a slicing blade of stainless grade that's
8  acceptable of yield.  That's -- that's expected.
9  That's part of the sale.  That's part of the
10  decision purchasing.
11    What influenced the overall -- the driver
12  of that final sale is patented features for sure.
13    Q  Right.  I get it.  I think you're
14  answering a different question than what I was --
15    A  No, I'm answering your question for sure.
16    Q  So what I'm trying to understand is you'd
17  agree, then, that other things influence the
18  customers' decision in purchasing the accused
19  slicing lines besides the patented features?
20  That's just a yes or no.
21    MR. BABBITT:  Objection to form.
22    THE WITNESS:  I want to go back to are we

Page 139

1  on the accused products.
2  BY MR. BLOCK:
3    Q  We're on the accused products.  I'm simply
4  asking you:
5    Were there other things in your opinion
6  that influenced the customers' purchasing decision
7  besides the patented features; yes or no?
8    MR. BABBITT:  Same objections.
9    THE WITNESS:  My opinion holds on the
10  accused product.  It was the patented features
11  that drove the sale of that product.
12  BY MR. BLOCK:
13    Q  So I'll ask it differently then:
14    Are you really telling me that the entire
15  reason the customer purchased an accused slicing
16  line was because of the patented features, the
17  entire reason?
18    MR. BABBITT:  Objection to form.
19    THE WITNESS:  It is my -- the -- what
20  influenced the customer on that sale, again, were
21  the generic features of a -- of a slicing line,
22  the conventional features, which are expected, but

Page 140

1  if they were looking at improving sales or pushing
2  that customer over, it was the patented features
3  that drove that.
4  BY MR. BLOCK:
5    Q  So, again, I'll -- I just -- just because
6  like -- I'm not sure I -- you're answering my
7  question, maybe you are.
8    So you are telling me then that with
9  respect to the accused slicing lines, besides the
10  patented feature, there were other things that
11  influenced the customers' decision?
12    MR. BABBITT:  Objection, vague, form.
13    THE WITNESS:  I think I answered this like
14  ten times, but I'll do it again.
15    A customer's decision to purchase
16  something is influenced by other features in a
17  sense that they are expected and conventional.
18  It's the same question I answered five
19  minute -- or 30 -- a minute ago.
20    They're buying a Weber or Provisur line.
21  There are expectations of that line or they
22  wouldn't be talking to them at all.

Appx32199

Page 141

1      I'm not going to go -- again, I'm not
2  going to go buy a car -- I'm not going to ask
3  them, Does it have a steering wheel?  That's
4  expected.
5      If it didn't have a steering wheel or that
6  conventional feature, that would influence my
7  decision, right?  You wouldn't go do that.
8      You would say, Hey, you know, I'm going to
9  go look at a car today, but it doesn't have a
10  steering wheel.  Well, I don't care about the
11  steering wheel.
12  BY MR. BLOCK:
13    Q  I'm not asking you about steering wheels.
14    A  But that's a conventional feature, right?
15    Q  I'm not asking you about cars.  I'm not
16  asking you about steering wheels.  I'm asking
17  you --
18    A  But it's the same --
19    Q  -- about slicing lines, Dr. Vorst.
20     MR. BABBITT:  Let's make sure that we're
21  making a clean record and not talking over each
22  other, Dan.

Page 142

1     MR. BLOCK:  Yeah, right --
2     THE REPORTER:  I didn't get that.
3     MR. BABBITT:  So please let Dr. Vorst
4  finish his answer --
5     MR. BLOCK:  Yes, so --
6     MR. BABBITT:  -- before you inject your
7  commentary, Dan.
8     MR. BLOCK:  Yeah, I apologize, and I'll
9  slow down.  I apologize.
10  BY MR. BLOCK:
11    Q  But can we just -- while I -- while I have
12  the floor here, can you avoid talking about things
13  that have nothing to do with this case, like cars
14  and steering wheels?  We're talking about slicers.
15     MR. BABBITT:  He's giving you his opinion,
16  Dan.
17     MR. BLOCK:  He's got opinions about cars.
18     MR. BABBITT:  And he can say however he
19  wants to explain himself.
20     THE WITNESS:  Dan, you asked how I arrived
21  at my opinion.
22

Page 143

1  BY MR. BLOCK:
2    Q  Okay.  So --
3    A  Okay.  So let me finish.
4     To make it simple for people to
5  understand, because this case is not that
6  difficult, there were patented features on these
7  lines that drove the sales of those lines.  Folks
8  may not understand the patented features and may
9  not even understand the slicing lines, but they do
10  understand that when they go in to make -- what
11  influences a purchasing decision, which is what
12  you asked.  And if someone goes in to purchase a
13  slicing line, a home slicer, let's say a small
14  kitchen slicer -- we'll keep it to slicers.  We
15  don't have to use a slicing line.  When I go to
16  purchase a home slicing unit or like my wife
17  purchased an InstaPot [sic] -- I'll draw direct
18  conclusions -- still food for you, so we'll keep
19  it in the food realm.  You know what drove her
20  sale in that InstaPot?  The freaking Bluetooth.
21  They're all the same.  The features were all the
22  same, and I actually tried talking her out of it.

Page 144

1  I said, Why the heck do you need Bluetooth on an
2  InstaPot?
3     And she said, Well, that -- because, you
4  know, I really like that because the other ones
5  were all the same.  They all provided the same
6  function.  We could substitute InstaPot for Weber,
7  and say they all provided the same function.  They
8  all sliced it.  At this level of the game, this is
9  the pro level, these are pro players in the field.
10  They slice the meat.  They slice the cheese.  They
11  do it at a good yield.  What separated this apart?
12  Patented features.  It's the same -- it doesn't
13  matter if it's an InstaPot, a car, or a Weber
14  slicing line.
15    Q  Right.
16    A  Otherwise, Dan, what would be the
17  evolution of technology?  Why would we have --
18  what would be the -- why bother innovating?
19    Q  So I'm not asking you why bother to
20  innovate, I'm not asking you about Bluetooth, I'm
21  not asking you about InstaPots, I'm not talking
22  about automobiles, right?  None of that is about

36 (Pages 141 to 144)

www.DigitalEvidenceGroup.com  Digital Evidence Group C'rt 2022     202-232-0646
Case 5:19-cv-06021-SRB   Document 381-18 *SEALED*   Filed 08/29/22   Page 37 of 126
Appx32200