# United States Court of Appeals for the Federal Circuit

______________________

**PROVISUR TECHNOLOGIES, INC.,**
*Plaintiff-Appellee*

**v.**

**WEBER, INC., TEXTOR, INC., WEBER FOOD TECHNOLOGY GMBH, FKA WEBER MASCHINENBAU GMBH BREIDENBACH, TEXTOR MASCHINENBAU GMBH,**
*Defendants-Appellants*

______________________

2023-1438

______________________

Appeal from the United States District Court for the Western District of Missouri in No. 5:19-cv-06021-SRB, Judge Stephen R. Bough.

______________________

Decided: October 2, 2024

______________________

CRAIG C. MARTIN, Willkie Farr & Gallagher LLP, Chicago, IL, argued for plaintiff-appellee. Also represented by MICHAEL BABBITT, REN-HOW HARN, SARA TONNIES HORTON, HENRY CROSS THOMAS.

WILLIAM MILLIKEN, Sterne Kessler Goldstein & Fox PLLC, Washington, DC, argued for defendants-appellants. Also represented by DONALD BANOWIT, KRISTINA CAGGIANO KELLY, RICHARD CRUDO, DANIEL YONAN.

---

Before MOORE, *Chief Judge*, TARANTO, *Circuit Judge*, and CECCHI, *District Judge*.[1]

MOORE, *Chief Judge*.

Weber, Inc., Textor, Inc., Weber Maschinenbau GmbH Neubrandenburg, Textor Maschinenbau GmbH, and Weber Maschinenbau Breidenbach (collectively, Weber) appeal the United States District Court for the Western District of Missouri's denial of judgment as a matter of law of noninfringement and no willfulness of claims 9–12 and 16 of U.S. Patent No. 10,625,436, claims 1, 7, and 8 of U.S. Patent No. 10,639,812, and claim 14 of U.S. Patent No. 7,065,936. Weber also appeals the denial of a motion for a new trial on infringement, willfulness, and damages. For the following reasons, we affirm-in-part, reverse-in-part, and remand for further proceedings.

## BACKGROUND

Provisur Technologies, Inc. (Provisur) owns the '436, '812, and '936 patents, which generally relate to food-processing machinery. The '436 and '812 patents, which share a common specification, relate to high-speed mechanical slicers used in food-processing plants to slice and package food articles, such as meats and cheeses. '812 patent at Abstract. Figure 1B, annotated below, illustrates the slicer, which contains a food article loading apparatus (blue) with a lift tray assembly (220) into which food is placed. *Id.* at 4:33–43. The lift tray pivots upward and the grippers (green), which are located on the food article feed

---

[1] Honorable Claire C. Cecchi, District Judge, United States District Court for the District of New Jersey, sitting by designation.

apparatus (yellow), guide the food forward for slicing. *Id.* at 4:33–43, 9:60–10:4.




Appellants Op. Br. at 12.

The ’936 patent relates to a fill and packaging apparatus for loading sliced foods into packages. ’936 patent at Abstract. Figure 1 illustrates a slicing and packaging line. *Id.* at 3:20–21, Fig. 1. The slicing machine (20) “cuts slices from a loaf and deposits the slices on an output conveyor assembly” (30). *Id.* at 3:39–42. The conveyor assembly (30) moves drafts of the appropriate weight onto a staging conveyor (44). *Id.* at 3:50–58. The staging conveyor (44) delivers the rows of drafts onto a shuttle conveyor (52), which delivers the drafts into pockets made of film. *Id.* at 3:59–4:6.

The ’936 patent describes two alternative ways to fill the pockets: retract-to-fill and advance-to-fill. The retract-to-fill embodiment begins with the shuttle conveyor in the extended position and fills the pockets starting farthest from the slicer until the conveyor is fully retracted. *Id.* at

5:33–38. The claims covering the retract-to-fill embodiment, unasserted claims 1–4, 6–13, and 15–20, were found invalid over the prior art. *Provisur Techs., Inc. v. Weber, Inc.*, No. 21-1851, 2022 WL 17688071, at *5 (Fed. Cir. Dec. 15, 2022). The asserted claim covers the advance-to-fill embodiment. The advance-to-fill embodiment begins with the shuttle conveyor in the retracted position and fills the pockets closest to the slicer and advances until the conveyor is fully extended. ’936 patent at 5:39–44. The annotated figure below shows the advance-to-fill embodiment.




Appellants Op. Br. at 17.

Claim 14, the only asserted claim for the ’936 patent, recites:

> 14. The apparatus according to claim 10, wherein said shuttle conveyor is configured to fill plural rows of pockets while said web is stationary in said fill station, and *said shuttle conveyor is configured to retract from an extended position to a retracted position to fill a new first row of a group of empty pockets while said web advances* to locate a succeeding plural row of pockets in said fill station.

Relevant to this appeal, Provisur sued Weber for willfully infringing the ’812, ’436, and ’936 patents. Provisur alleged Weber’s 905, 906, 908, and S6 food slicers infringed the ’812 and ’436 patents and Weber’s SmartLoader products infringed the ’936 patent.

A jury trial was held in October 2022. The jury found Weber willfully infringed claims 9–12 and 16 of the ’436 patent, claims 1, 7, and 8 of the ’812 patent, and claim 14 of the ’936 patent. J.A. 61–62.[2] The jury awarded Provisur $3,013,068 for the ’936 patent, $3,747,046.50 for the ’436 patent, and $3,747,046.50 for the ’812 patent. J.A. 63. Following the verdict, Weber moved for judgment as a matter of law (JMOL) on the issues of infringement and willfulness, and a new trial on infringement, willfulness, and damages, but the district court denied both motions. J.A. 69–72.[3]

Weber appealed. We have jurisdiction under 28 U.S.C. § 1295(a)(1).

## DISCUSSION

We review a district court’s grant or denial of JMOL under the standard of the regional circuit. *Apple Inc. v. Wi-LAN Inc.*, 25 F.4th 960, 969 (Fed. Cir. 2022). The Eighth Circuit reviews JMOL rulings de novo, applying the same standard as the district court. *Penford Corp. v. Nat’l Union Fire Ins. Co. of Pittsburgh, PA*, 662 F.3d 497, 503 (8th Cir. 2011). “A court may render judgment as a matter of law when there is no legally sufficient evidentiary basis for a reasonable jury to find for the nonmoving party on an issue and all of the evidence directs against a finding for the nonmoving party.” *Jones v. TEK Indus., Inc.*, 319 F.3d 355, 358 (8th Cir. 2003).

---

[2] The jury also found no infringement of claim 12 of U.S. Patent No. 6,997,089. J.A. 61. This issue is not before us.

[3] The district court also granted Provisur’s motion for enhanced damages, doubling the jury’s award. J.A. 73–86. This issue is not before us.

## I. INFRINGEMENT

Infringement is a question of fact that is reviewed for substantial evidence when tried to a jury. *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1309 (Fed. Cir. 2009). "A factual finding is supported by substantial evidence if a reasonable jury could have found in favor of the prevailing party in light of the evidence presented at trial." *Godo Kaisha IP Bridge 1 v. TCL Commc'n Tech. Holdings Ltd.*, 967 F.3d 1380, 1383 (Fed. Cir. 2020).

With respect to the '812 and '436 patents, Weber conceded its noninfringement arguments are no longer available in this appeal in light of an intervening decision.[4] Rule 28(j) Citation of Supplemental Authority, No. 23-1438 (Fed. Cir. Apr. 1, 2024), ECF No. 57 (citing *Weber, Inc. v. Provisur Techs., Inc.*, 92 F.4th 1059 (Fed. Cir. 2024)); *see also* Oral Arg. at 0:51–4:05, https://oralarguments.cafc.uscourts.gov/default.aspx?fl=23-1438_06052024.mp3. We therefore affirm the district court's denial of JMOL for noninfringement for the '812 and '436 patents.

With respect to the '936 patent, the jury found Weber's SmartLoader infringes claim 14. J.A. 61. After post-trial briefing, the district court determined Weber was not entitled to judgment as a matter of law or a new trial. J.A. 70–71. Weber contends the district court erred in denying JMOL for noninfringement because Provisur failed to prove Weber's SmartLoader satisfies the claimed advance-to-fill limitation. Appellants Op. Br. at 43–54.

Claim 14 requires an advance-to-fill conveyor. J.A. 30862. The record indisputably shows Weber's SmartLoader is sold to customers as a retract-to-fill conveyor.

---

[4] Weber's concession of infringement for purposes of this appeal should have no impact on the pending *inter partes* review, which could affect liability in this case on remand.

J.A. 66993; J.A. 42045 (Trial Tr. 1559:5–15), J.A. 41439 (Trial Tr. 953:12–14); J.A. 89412. There are no pictures or videos showing the SmartLoader operating as an advance-to-fill conveyor. Provisur's expert Dr. Keith Vorst conceded as much. J.A. 41441, 41443 (Trial Tr. 955:7–12, 957:8–16). He also admitted he found no evidence that any Weber customer ever used the SmartLoader to operate as an advance-to-fill conveyor. J.A. 41443 (Trial Tr. 957:21–25).

Provisur's infringement theory relied on establishing Weber's SmartLoader could be reprogrammed to operate as an advance-to-fill conveyor. Provisur did not proffer sufficient evidence to meet its burden. Dr. Vorst testified the SmartLoader can be configured to operate as an advance-to-fill conveyor by manipulating certain parameters of the conveyor. J.A. 41396 (Trial Tr. 910:10–13). He testified the SmartLoader includes a human machine interface (HMI) that allows someone to create a new program and adjust the parameters of the conveyor to advance or retract it. J.A. 41396–400 (Trial Tr. 910:18–913:14, 914:6–10). He specifically relied on a demonstrative of the HMI screens that allegedly enable configuration of these parameters (shown below). J.A. 41396–400 (Trial Tr. 910:18–913:14). Dr. Vorst testified that by adjusting parameters, such as the front and rear position, the SmartLoader can be

configured as an advancing conveyor. J.A. 41400 (Trial Tr. 914:6–10).




J.A. 93782.

"An accused device may be found to infringe if it is reasonably capable of satisfying the claim limitations." *Hilgraeve Corp. v. Symantec Corp.*, 265 F.3d 1336, 1343 (Fed. Cir. 2001). "But a device does not infringe simply because it is possible to alter it in a way that would satisfy all the limitations of a patent claim." *High Tech Med. Instrumentation, Inc. v. New Image Indus., Inc.*, 49 F.3d 1551, 1555 (Fed. Cir. 1995). We have held an accused device to meet the capability standard if it is readily configurable to infringe. *See, e.g.*, *Fantasy Sports Props., Inc. v. Sportsline.com, Inc.*, 287 F.3d 1108, 1118 (Fed. Cir. 2002) (explaining the accused device infringes where the user must only activate the functions already present); *Finjan, Inc. v. Secure Computing Corp.*, 626 F.3d 1197, 1205 (Fed. Cir. 2010) (same).

Here, Provisur proffered no evidence that Weber's customers could readily activate the alleged advance-to-fill functionality. Dr. Vorst testified about configuring the SmartLoader through the HMI, but he had access to screens that Weber's customers do not. Indeed, Dr. Vorst explained that during his inspection he had to ask Weber

technicians for permission to access certain HMI screens. J.A. 41259–60 (Trial Tr. 773:19–774:2); *see also* J.A. 41403–04 (Trial Tr. 917:16–918:9). Dr. Vorst further testified that at least two of these screens, including the screens for configuring the rear and front position of the loading conveyor and for configuring the products positions, are necessary to reconfigure the SmartLoader to advance-to-fill. J.A. 41404 (Trial Tr. 918:13–19). But Weber's source code expert Dr. Valerdi testified that only one screen of the HMI is available to Weber's customers. J.A. 41893–94 (Trial Tr. 1407:19–1408:23 ("Q: And so just which of these four screens is available to the customer? A: Only the bottom right screen that has the configurable number of loadings and some adjustment parameters. That's the only one that's available to a customer of Weber.")). Weber's technical expert Dr. Reinholtz similarly testified that most of the HMI screens are only available to Weber's service technicians, but not customers. J.A. 42133 (Trial Tr. 1647:2–6); *see also* J.A. 42121 (Trial Tr. 1635:2–5). The screens required to reconfigure the SmartLoader according to Dr. Vorst's theory are not available to Weber's customers.

This is not an infringement scenario where customers can simply activate the infringing configuration. *See Fantasy Sports*, 287 F.3d at 1118; *Finjan*, 626 F.3d at 1205. Dr. Vorst is an expert who was provided access to Weber's products during an inspection. Weber's customers do not have access to the screens Provisur contends are necessary for the SmartLoader to be reconfigured to operate as an advance-to-fill conveyor. Only Weber and its technicians have access to the configurable parameters. Provisur has not identified any evidence in the record that puts this fact genuinely in dispute. Given these facts, Weber's SmartLoader is not readily configurable to infringe claim 14 of the '936 patent. The SmartLoader can only infringe if Weber modifies it to operate as an advance-to-fill conveyor.

Even with access provided by Weber, Dr. Vorst only testified that he *could have* reconfigured the SmartLoader.

He did not testify that he was able to configure it to advance-to-fill. *See* J.A. 41441 (Trial Tr. 955:7–12), J.A. 42542 (Trial Tr. 2056:19–22), J.A. 43386 (Provisur's opposition to Weber's motion for a new trial). Dr. Vorst provided no evidence Weber's SmartLoader ever was configured to advance-to-fill and no evidence that he configured it to advance-to-fill. He admitted as much, explaining that he was unable to demonstrate the advance-to-fill configuration because he ran out of time. J.A. 41441–43 (Trial Tr. 955:7–12, 956:21–957:16). And Provisur did not request additional inspections. J.A. 41443 (Trial Tr. 957:18–20).

Dr. Vorst's testimony is therefore not substantial evidence demonstrating Weber's SmartLoader infringes claim 14 of the '936 patent. The district court erred in denying Weber's motion for judgment as a matter of law for noninfringement for claim 14 of the '936 patent. We therefore reverse the district court's denial of judgment as a matter of law for noninfringement of claim 14 of the '936 patent and remand for further proceedings.

## II. WILLFULNESS

Willful infringement is a question of fact reviewed for substantial evidence following a jury trial. *Polara Eng'g Inc v. Campbell Co.*, 894 F.3d 1339, 1353 (Fed. Cir. 2018). "To establish willfulness, a patentee must show that the accused infringer had a specific intent to infringe at the time of the challenged conduct." *BASF Plant Sci., LP v. Commonwealth Sci. and Indus. Rsch. Org.*, 28 F.4th 1247, 1274 (Fed. Cir. 2022).

Weber appeals the district court's denial of JMOL of no willfulness. Specifically, Weber contends the district court erred in admitting testimony in violation of 35 U.S.C. § 298, and the remaining evidence is insufficient to support the jury's verdict of willful infringement. We agree.

Section 298 states:

> The failure of an infringer to obtain the advice of counsel with respect to any allegedly infringed patent, or the failure of the infringer to present such advice to the court or jury, may not be used to prove that the accused infringer willfully infringed the patent or that the infringer intended to induce infringement of the patent.

Patentees are prohibited from using the accused infringer's failure to obtain the advice of counsel as an element of proof that the accused infringer willfully infringed.

Prior to trial, Weber moved to exclude testimony from Provisur's expert, Mr. John White, that Provisur asserted willful infringement based in part on Weber's failure to present evidence of advice of counsel. J.A. 6. The district court granted Weber's motion to exclude Mr. White's testimony on Weber's alleged failure to obtain advice of counsel. J.A. 8.

During trial, however, Mr. White testified about Weber's failure to consult a third party to evaluate the allegedly infringed patents. J.A. 41138–43 (Trial Tr. 652:17–657:8). Specifically, Mr. White testified that Weber did not provide any evidence that it performed a number of evaluation steps, such as a freedom to operate analysis. J.A. 41140–41 (Trial Tr. 654:24–655:5). In his expert report, Mr. White explained a freedom to operate analysis is "typically reviewed by a qualified patent attorney" which may include "'opinions' as to which patents may be problematic." J.A. 9040–41 ¶ 57. Mr. White's testimony referenced other potentially legal services that Weber allegedly failed to seek.

Mr. White's testimony violated 35 U.S.C. § 298. Provisur argues Mr. White's testimony is about industry standards for intellectual property management. Appellee Br. 41. But Mr. White, an attorney, did not distinguish

between legal and non-legal services when testifying about consulting a third party. Provisur cannot circumvent § 298 by substituting advice from a third party for advice of counsel. The district court thus erred in admitting the portion of Mr. White's testimony related to seeking advice from a third party.

The remainder of Mr. White's testimony is admissible, but insufficient as a matter of law to establish willfulness. Mr. White testified about Weber's patent matrix that tracked patents in related food processing technologies, including the asserted patents. J.A. 41112 (Trial Tr. 626:11–21). He explained software and Weber personnel provided a rating out of 3 for each patent in the matrix. *Id.* These ratings were described as indicating whether the patent was relevant for purposes of further evaluation. J.A. 41113 (Trial Tr. 627:3–16). For the asserted patents, Mr. White testified each one was provided a high score of 3. J.A. 41127 (Trial Tr. 641:8–16) ('936 patent), J.A. 41130–31 (Trial Tr. 644:23–645:17) ('812 patent), J.A. 41136–37 (Trial Tr. 650:19–651:5) ('436 patent).

At most, the patent matrix demonstrates Weber's knowledge of the asserted patents and their relevance to Weber's business in general. The patent matrix and corresponding testimony do not provide any level of specificity as to the relevance of the tracked patents for any of Weber's products. There is no dispute Weber knew of the asserted patents. J.A. 31387–88. The issue here is whether Weber knew of its alleged infringement and had a specific intent to infringe. *BASF Plant Sci*, 28 F.4th at 1274. There is no evidence Weber knew of its alleged infringement. We have held "knowledge of the asserted patent and evidence of infringement is necessary, but not sufficient, for a finding of willfulness." *Bayer Healthcare LLC v. Baxalta Inc.*, 989 F.3d 964, 988 (Fed. Cir. 2021). Provisur's evidence as a matter of law is not enough to establish deliberate or intentional infringement. *Id.* The district court should have

granted Weber's motion for judgment as a matter of law. We reverse the district court's willfulness finding.

## III. DAMAGES

When reviewing damages, we apply the law of the regional circuit. *Exmark Mfg. Co. Inc. v. Briggs & Stratton Power Prods. Grp., LLC*, 879 F.3d 1332, 1347 (Fed. Cir. 2018). The Eighth Circuit reviews a denial of a motion for a new trial on damages for abuse of discretion. *See Harrison v. Purdy Bros. Trucking Co.*, 312 F.3d 346, 351 (8th Cir. 2002). Evidentiary rulings, including the admissibility of damages expert evidence, are also reviewed for abuse of discretion. *See Barrett v. Rhodia, Inc.*, 606 F.3d 975, 980 (8th Cir. 2010). "A district court abuses its discretion when its decision is based on clearly erroneous findings of fact, is based on erroneous interpretations of the law, or is clearly unreasonable, arbitrary or fanciful." *Whitserve, LLC v. Comput. Packages, Inc.*, 694 F.3d 10, 26 (Fed. Cir. 2012).

The jury awarded Provisur about $10.5 million in the form of a reasonable royalty. J.A. 63. Provisur accused certain features on Weber's slicers and SmartLoader of infringement. These features are parts of a larger component, either the slicer or automation component, which themselves are each just one component of an entire multicomponent slicing line (see below).



Appellant Op. Br. at 62.

The damages verdict rests on Provisur's reliance on the entire market value rule. Weber argues the district court erred by permitting Provisur to use the entire market value rule. We agree. The district court abused its discretion and should have granted a new trial on damages.

"A patentee is only entitled to a reasonable royalty attributable to the infringing features." *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 904 F.3d 965, 977 (Fed. Cir. 2018). We have required any royalties be apportioned between infringing and noninfringing features of the accused product. *Id.* An apportionment analysis generally requires determining a royalty base to which a royalty rate will be applied. *Id.* For elements of multi-component products accused of infringement, the royalty base should be based on the smallest salable patent-practicing unit. *LaserDynamics, Inc. v. Quanta Comput., Inc.*, 694 F.3d 51, 67 (Fed. Cir. 2012). A necessary condition for using "an entire multi-component product" as the base is that the patentee proves the patented feature is the basis for customer demand. *Id.*; *see also Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1336 (Fed. Cir. 2009).

Provisur's use of the entire market value rule was impermissible because it failed to present sufficient evidence demonstrating the patented features drove the demand for the entire slicing line. Provisur's damages expert, Ms. Julie Davis, used the value of the entire slicing line as the royalty base and applied a royalty rate to calculate the reasonable royalty damages. J.A. 41524–27 (Trial Tr. 1038:16–1041:22). Ms. Davis relied on Dr. Vorst's testimony to support using the entire market value as the royalty base. J.A. 41554–55 (Trial Tr. 1068:3–1069:1). Dr. Vorst testified that the patented features drive the demand or substantially create the value of Weber's accused products. J.A. 41310 (Trial Tr. 824:17–24). But Dr. Vorst's testimony was conclusory and did not provide any evidence,

*e.g.*, evidence from customers, to show the patented features drove the demand for the entire slicing line.

For example, for the ’812 and ’436 patents, Dr. Vorst testified that various features on the slicing machines are considered conventional, and the patented features are unique selling points. J.A. 41311–12 (Trial Tr. 825:2–826:19). The “conventional” features he discusses include the slicing blade, guards, conveyors, and other components of the slicer. *Id.* His testimony does not explain why these “conventional” features do not provide any value or drive customer demand.[5]

Provisur failed to proffer sufficient evidence that other features of the slicing line do not cause customers to purchase the accused products. On cross-examination, Dr. Vorst agreed that Weber has patents that cover the features of its slicing lines. J.A. 41445–46 (Trial Tr. 959:24–960:11). He also agreed that Weber’s customers buy slicing lines for different reasons. J.A. 41447–48 (961:24–962:10). Dr. Vorst did not conduct any market studies or consumer surveys to determine whether the demand for Weber’s

---

[5] For the ’936 patent, infringement of which is no longer at issue for damages purposes, *see supra*, Dr. Vorst’s testimony was similarly conclusory and only states the configurable feature of the SmartLoader as substantially creating the value of Weber’s slicing lines. J.A. 41406 (Trial Tr. 920:3–7). Asserted claim 14, however, only covers an advance-to-fill conveyor, not any configuration of a smart conveyor. J.A. 30862. Additionally, Dr. Vorst does not point to any evidence of Weber or Weber’s customers using the device in an infringing manner. It is inconceivable how the advance-to-fill conveyor feature is a driver of customer demand where Weber’s customers have not used the feature.

slicing lines was driven by the patented features. There is simply no evidence at all that the patented features drove customer demand or substantially created the value of the entire slicing lines. No one type of evidence is needed to show the patented features drove customer demand, but here there is none. We have explained that "[w]hen the product contains other valuable features, the patentee must prove that those other features do not cause consumers to purchase the product." *Power Integrations*, 904 F.3d at 979. The district court should have granted a new trial on damages because there is no evidence, apart from conclusory expert testimony, that supports invoking the entire market value rule. While expert testimony alone may be sufficient, in this case, where the entire slicing line includes multiple separate machines (see Figure above) from the preparation machinery to the slicing machinery to the automation machinery to the packaging machinery to the end-of-line machinery, and the patented technology is just one small component of one of the machines, and no other evidence supports the notion that this small component of just one portion of such a large system ever drove customer demand, it was an abuse of discretion to allow this case to proceed on the entire market value rule. We therefore reverse the district court's denial of a new trial on damages.

## CONCLUSION

We have considered the parties' remaining arguments and find them unpersuasive. We affirm the district court's denial of judgment as a matter of law of noninfringement with respect to the '812 and '436 patents and reverse the denial as to the '936 patent. We reverse the district court's denial of judgment as a matter of law of willfulness. We reverse the district court's denial of a new trial on damages. We remand for further proceedings consistent with this decision.

**AFFIRMED-IN-PART, REVERSED-IN-PART, AND REMANDED**

COSTS

Costs awarded to Weber.